IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**B.P.J., by her next friend and mother,
HEATHER JACKSON,**
    **Plaintiff,**

v.                                    Civil Action No. 2:21-cv-00316
                                         Honorable Joseph R. Goodwin, Judge

**WEST VIRGINIA STATE BOARD OF EDUCATION,
HARRISON COUNTY BOARD OF EDUCATION,
WEST VIRGINIA SECONDARY SCHOOL
ACTIVITIES COMMISION, W. CLAYTON BURCH
in his official capacity as State Superintendent, and
DORA STUTLER in her official capacity as
Harrison County Superintendent,**
    **Defendants.**

## WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Now comes West Virginia Secondary School Activities Commission (WVSSAC), by counsel, Roberta F. Green, Anthony E. Nortz, Kimberly M. Bandy and Shuman McCuskey Slicer PLLC, in response to Plaintiff's Motion for a Preliminary Injunction. While preserving all legal defenses relative to Plaintiff's underlying claim and reserving the right to respond thereto (including with dispositive motion), WVSSAC responds to Plaintiff's Motion for a Preliminary Injunction, as follows. WVSSAC takes no position relative to the preliminary injunction because, by the express terms of HB 3293, WVSSAC has no role and is not envisioned as having a role in enforcing West Virginia's law at this time. Indeed, Plaintiff has not alleged WVSSAC has taken any actions whatsoever toward enforcing the challenged law and, conversely, has identified WVSSAC's policies and forms as gender and therefore transgender neutral. As Intervenor State of West Virginia has advised this Court, WVSSAC is not and has been adjudged not to be a State

actor. For these reasons, the preliminary injunction will not affect WVSSAC, and, therefore, WVSSAC takes no position relative to its imposition.

### I. By its express terms, HB 3293 does not include WVSSAC in its enforcement or in any relief thereunder.

The language of H.B. 3293, in describing those entities against which relief may be sought for any statutory violation, does not reference WVSSAC in any way. The express terms of H.B. 3293 contemplate that the State Board of Education, the Higher Education Policy Commission, and the Council for Community and Technical College Education shall promulgate rules to implement its provisions.[1] On information and belief, the State Board has not promulgated regulations as envisioned in H.B. 3293; however, the statute itself occasions no changes in WVSSAC policies nor imposes any new duties on WVSSAC. In fact, as Plaintiff's Complaint indicates, the legislature considered including WVSSAC in H.B. 3293 but ultimately chose not to include it. *See* Complaint at ¶¶ 45, 46, 61-69. Per the statute as passed, by logical conclusion, then, given the focus on the Boards and the express omission of WVSSAC, any determinations to be made as to the assignment of a particular student to either a girls' or boys' team will be made at the State or County level and resolved prior to submission of rosters to WVSSAC.

Further, the statute does not envision a cause of action against WVSSAC for any statutory violation (no doubt because enjoining or not enjoining WVSSAC does not affect outcome under this statute):

> (d) Cause of Action. -
> (1) Any student aggrieved by a violation of this section may bring an action against a county board of education or state institution of higher education alleged to be responsible for the alleged violation. The aggrieved student may seek injunctive relief and actual damages, as well as reasonable attorney's fee and court costs, if the student substantially prevails.
> (2) In any private action brought pursuant to this section, the identity of a minor student shall remain private and anonymous.

---

[1] W. Va. Code §18-2-25d(e) (effective July 8, 2021).

2

(e) The State Board of Education shall promulgate rules, including emergency rules, pursuant to §29A-3B-1 *et. seq.* of this code to implement the provisions of this section. The Higher Education Policy Commission and the Council for Community and Technical College Education shall promulgate emergency rules and propose rules for legislative approval pursuant to §29A-3A-1 *et. seq.* of this code to implement the provisions of this section.[2]

Given that the statute does not reference nor involve WVSSAC in any way and the legislature affirmatively removed mention of WVSSAC from the subject statute, WVSSAC takes no position on the preliminary injunction.

## II. Plaintiff asserts that WVSSAC's policies and forms are not at issue.

Plaintiff avers that WVSSAC's involvement is gender and transgender neutral.[3] Plaintiff does not assert that WVSSAC's regulations or programs violate her rights in any way. In the Memorandum in Support of Plaintiff's Motion for Preliminary Injunction ("Memorandum", ECF 19), Plaintiff states that, prior to H.B. 3293, West Virginia had "separate sports teams for boys and girls and did not categorically bar girls like B.P.J. from competing in school sports on girls' teams."[4] In particular, as relates to cross-country and track, all WVSSAC regulations are uniform across the board in providing one set of regulations for boys and girls.[5] Further, Heather Jackson

---

[2] W. Va. Code §18-2-25d(d) and (e) (effective July 8, 2021).
[3] Declaration of Heather Jackson at ¶25, ECF No. 2-1 at p. 23; *See Communities,* 459 F.3d at 695, finding that "[d]isparate treatment does not arise from any and all differences in treatment; it occurs only where the offending party '*treats some people less favorably* than others because of their race, color, religion, sex, or national origin'" (emphasis in original).
[4] *See* Memorandum at 7, citing §127-2-3.8 (Eligibility), which states in pertinent part "School may sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill."
[5] Of note, Plaintiff does not challenge sex-separated teams. *See* Memorandum at 16. *See also* WVSSAC Track Coaches Packet (appended hereto as Exhibit A):

**§127-3-22. Cross Country (Boys and Girls).**
22.1. Rules: Cross country rules published by the National Federation of State High School Associations are the official rules for all interscholastic competition unless otherwise provided by Commission modification.
22.2. Organized team practice will begin on Monday Week 5 and first meet may be held on Saturday of Week 7.
22.3. Length of Season: The cross country season will end for each team or individual at tournament elimination.

3

admits that "verification of 'reproductive biology and genetics' is not part of the routine sports physical exam required by Defendant WVSSAC."[6] WVSSAC's physical examination form, the sole registration form WVSSAC requires from athletes for participation, is not impacted by H.B. 3293 and does not have the athletes identify themselves by gender.[7] WVSSAC does not have

---

22.4. Maximum Team Contests: A cross country team will be permitted 16 meets exclusive of regional and state contests.

22.5. Scrimmages: Two cross country scrimmages with another high school may be conducted. See Glossary.

22.6. Individual students of a team must have practiced on 14 SEPARATE days, exclusive of the day of a contest, before participating in an interscholastic contest.

22.7. A student may accept awards in WVSSAC sanctioned events and non sanctioned events during the entire year. These awards must be consistent with the items specified in the Awards Rule.

**§127-3-29. Track and Field (Boys and Girls)**
29.1. Rules: Track and Field rules published by the National Federation of State High School Associations are the official rules for all interscholastic competition unless otherwise provided by Commission modification.

29.2. Organized Team Practice: Organized team practice will begin on Monday of Week 35 and the first contest may be on Wednesday of Week 37.

29.3. Length of Season: The track and field season will end for each team or individual by WVSSAC tournament elimination.

29.4. Maximum Team Contests: track and field team will be permitted 16 meets exclusive of sectional, regional, and state contests.

29.5. Participation Limitations: Maximum of 4 events per participant per meet.

29.6. Scrimmages: Not permitted

29.7. Individual students of a team must have practiced on 14 SEPARATE days, exclusive of the day of a contest, before participating in an interscholastic contest.

29.8. A student may accept awards in WVSSAC sanctioned events and non-sanctioned events during the entire year. These awards must be consistent with the items specified in the Awards Rule.

29.9. Middle School/9th Grade - The above will apply for Middle School/9th Grade with the following adaptations:

    29.9.1. Middle school/9th grade teams will be permitted 14 meets and only 2 meets per week.

    29.9.2. Middle school/9th grade season will be completed by Thursday of Week 46.

    29.9.3. Participation limitation: Middle school/9th grade students, regardless of grade levels (6, 7, 8, or 9), may compete in a maximum of four events, of which only three may be running events including relays.

[6] *See* Memorandum at n.6.
[7] *See* Exhibit B.

4

regulations that categorically ban transgender athletes nor does WVSSAC's enrollment paperwork (physical exam) ask athletes to select or identify themselves by gender.

Where Plaintiff relies upon *Grimm* and *Bostock* for the exclusion on the basis of her biological gender that, therefore, "remains a but-for cause for the Board's actions,"[8] here, WVSSAC is not envisioned by HB 3293 as being called upon to determine the appropriate team for B.P.J. but, as cast, will only receive the rosters for cross-country with her name in place, that is, per the express provisions of HB 3293 (which, without State's regulations, is all that can be known at this time). At this time, WVSSAC will not drive the outcome and is not identified or called upon in H.B. 3293 to do anything whatsoever.

Plaintiff alleges that H.B. 3293 "very publicly brand[s]" [her] and "all transgender students with a scarlet 'T'"—stigmatizing transgender students and marking them, publicly, as different from their peers[,]"[9] yet H.B. 3293 itself includes no role for WVSSAC, whose current regulations and forms Plaintiff cites as neutral. As a matter of fact and law, WVSSAC's role therefore remains unchanged by HB 3293 at this time.

Because WVSSAC's policies and forms, as recognized by Plaintiff, are gender and therefore transgender neutral, because they are not impacted by HB 3293, a preliminary injunction would not affect WVSSAC in any way; therefore, it takes no position on its entry.

---

[8] Memorandum at 12 quoting and citing *Grimm*, 140 S. Ct. at 1741. *But see Bostock v. Clayton Cty,*, 140 S. Ct. 1731, 1753 (2020), limiting the ruling to Title VII, as that is the only question before the Court. *See also Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. p2021), relying upon the express language of *Bostock* and declining to extend its ruling from Title VII to ADEA.

[9] Memorandum at 15, quoting *Grimm* at 617–18 (internal quotation marks and alterations omitted); *cf. J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 142 (1994) (explaining that when a juror is excluded based on sex "[t]he message it sends to all those in the courtroom, and all those who may later learn of the discriminatory act, is that certain individuals, for no reason other than gender, are presumed unqualified").

### III. WVSSAC is not a State Actor or Agency.

Further, the Supreme Court of Appeals of West Virginia has expressly found that WVSSAC is not a state agency on the basis that it has been a voluntary association since 1916 (and was not created nor empowered by the Legislature); it is not funded by public moneys; and not all public or private schools in West Virginia have elected to belong. See Syl. pt. 2, 3, *Mayo v. WVSSAC,* 233 W. Va. 88, 96, 872 S.E.2d 224, 232 (2008). *See also* State of West Virginia's Memorandum of Law in Support of its Motion to Intervene and For Proposed Response Deadline, ECF 41, at 6, *citing Mayo v. W. Va. Secondary Sch. Activities Comm'n,* 672 S.E.2d 224, 233 (W. Va. 2008).

### IV. CONCLUSION.

For the reasons discussed above, WVSSAC takes no position relative to imposition of a preliminary injunction.

**WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION,**
**By Counsel.**

/S/ Roberta F. Green

Roberta F. Green (WVSB #6598)
Anthony E. Nortz (WVSB #12944)
Kimberly M. Bandy (WVSB #10081)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street East, Suite 200 (25301
Charleston, WV 25339
(304) 345-1400
(304) 343-1826 FAX
rgreen@shumanlaw.com
anortz@shumanlaw.com
kbandy@shumanlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J., by her next friend and mother,
HEATHER JACKSON,
    Plaintiff,

v.                                    Civil Action No. 2:21-cv-00316
                                    Honorable Joseph R. Goodwin, Judge

WEST VIRGINIA STATE BOARD OF EDUCATION,
HARRISON COUNTY BOARD OF EDUCATION,
WEST VIRGINIA SECONDARY SCHOOL
ACTIVITIES COMMISION, W. CLAYTON BURCH
in his official capacity as State Superintendent, and
DORA STUTLER in her official capacity as
Harrison County Superintendent,
    Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that I, Roberta F. Green, have this day, the 22nd day of June 2021, served a true and exact copy of *"West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction"* with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following counsel of record:

Loree Stark
ACLU of WV FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
lstark@acluwv.org

Katelyn Kang
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
kkang@cooley.com

Andrew Barr
COOLEY LLP
1144 15th St., Suite 2300
Denver, CO 80202-5686
abarr@cooley.com

Kathleen R. Hartnett
Julie Veroff
COOLEY LLP
101 California St., 5th Floor
San Francisco, CA 94111-5800
khartnett@cooley.com

Elizabeth Reinhardt
COOLEY LLP
500 Boylston St., 14th Floor
Boston, MA 02116-3736
ereinhardt@cooley.com

Avatara Smith-Carrington
LAMBDA LEGAL
3500 Oak Lawn Ave., Suite 500
Dallas, TX 75219
asmithcarrington@lambdalegal.org

Joshua Block
Taylor Brown
Chase Strangio
ACLU FOUNDATION
125 Broad Street
New York, NY 10004
jblock@aclu.org

Sruti Swaminathan
LAMBDA LEGAL
120 Wall St., 19th Floor
New York, NY 10005
sswaminathan@lambdalegal.org

Kelly C. Morgan
BAILEY & WYANT, PLLC
500 Virginia St., East, Suite 600
Charleston, WV 25301
kmorgan@baileywyant.com

Carl Charles
Tara Borelli
LAMBDA LEGAL
730 Peachtree Street NE., Suite 640
Atlanta, GA 30308-1210
ccharles@lambdalegal.org

Susan Llewellyn Deniker
STEPTOE and JOHNSON, LLC
400 White Oaks Boulevard
Bridgeport, WV 26330
susan.deniker@steptoe-johnson.com

*/S/ Roberta F. Green*

Roberta F. Green, Esquire (WVSB #6598)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street E., Suite 200 (25301)
Charleston, West Virginia
Phone: (304) 345-1400
Facsimile: (304) 343-1826

8