IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J., by her next friend and mother,
HEATHER JACKSON,

    Plaintiff,

    v.                                            **Civil Action No. 2:21-cv-00316**
                                                   **Honorable Joseph R. Goodwin**

WEST VIRGINIA STATE BOARD OF
EDUCATION; HARRISON COUNTY BOARD
OF EDUCATION; WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION; W. CLAYTON BURCH, in his
official capacity as State Superintendent; and
DORA STUTLER, in her official capacity as
Harrison County Superintendent,

    Defendants.

**DEFENDANTS WEST VIRGINIA STATE BOARD OF EDUCATION
AND SUPERINTENDENT W. CLAYTON BURCH'S RESPONSE IN
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>**

      **NOW COME** Defendants West Virginia State Board of Education and Superintendent W.

Clayton Burch, by and through counsel, Kelly C. Morgan, Michael W. Taylor, Kristen V.

Hammond, and the law firm of Bailey & Wyant, P.L.L.C., and for their response in opposition to

Plaintiff's Motion for a Preliminary Injunction, hereby state as follows:

## I.      <u>SUMMARY OF ARGUMENT</u>

      Defendants West Virginia State Board of Education and Superintendent W. Clayton Burch

(both Defendants are hereinafter collectively referred to as "WVBOE") hereby request that the

Court enter an Order denying Plaintiff's Motion for a Preliminary Injunction against WVBOE for

several reasons.  First, Plaintiff does not have standing to maintain this action against WVBOE.

WVBOE did not cause and will not cause Plaintiff to be denied participation on a West Virginia

public secondary school's athletic team of her choice.  Second, the issues raised by Plaintiff against WVBOE are not ripe for judicial review until such time as WVBOE promulgates rules and regulations pursuant to *West Virginia Code* § 29A-3B-1, et seq.  Third, if the Court considers the actual merits of Plaintiff's claim alleging violation of the Equal Protection Clause, Plaintiff cannot succeed in challenging the constitutionality of West Virginia House Bill 3293, codified at *West Virginia Code* § 18-2-25d (hereinafter "H.B. 3293"), because she cannot establish that the statute does not substantially achieve its important governmental purpose.  While Plaintiff cites to and relies on *Hecox v. Little*, 479 F. Supp. 3d 930 (D. Idaho 2020) in support of her request for injunction in this case, the statute at issue in *Hecox* is broader than the statute in West Virginia. Idaho's statute specifically sets forth a mechanism for sex-based challenges which is not applicable in this case.  Fourth, Plaintiff cannot prevail on her claim for violation of Title IX because, again, WVBOE did not cause and will not cause Plaintiff to be denied participation on the athletic team of her choice.  Should the Court consider the actual merits of the Title IX claim, prior adjudication by the United States Department of Education's Office for Civil Rights found a Title IX violation when a scholastic sports policy permitted two transgender females to participate in a female track event because said participation denied female student-athletes athletic opportunities.  The law at issue here is consistent with this prior adjudication.  Therefore, WVBOE requests that Plaintiff's Motion for a Preliminary Injunction be denied.

## II.    FACTUAL BACKGROUND

Plaintiff B.P.J., by her next friend and mother, commenced this civil action on May 26, 2021, upon filing a Complaint against the West Virginia State Board of Education; Harrison County Board of Education; West Virginia Secondary School Activities Commission; W. Clayton Burch, in his official capacity at State Superintendent; and Dora Stutler, in her official capacity as

Harrison County Superintendent.  [ECF No. 1].  Plaintiff is an 11-year-old transgender student who will start middle school this Fall at Bridgeport Middle School in Harrison County, West Virginia, and who plans to try out for and participate in the girls' cross-country and track teams. [*Id.*].  Plaintiff's Complaint seeks an Order declaring that *West Virginia Code* § 18-2-25d violates Plaintiff's rights under Title IX, 20 U.S.C. § 1681, et seq., and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and enjoining its enforcement by Defendants.  [*Id.*].  Plaintiff also filed a Motion for a Preliminary Injunction which seeks an Order preliminarily enjoining Defendants from enforcing *West Virginia Code* § 18-2-25d.  [ECF Nos 2, 19].  After the filing of the Complaint, Defendant Harrison County Board of Education and Plaintiff reached an agreement regarding Plaintiff's participation in athletic conditioning for the cross-country team at Bridgeport Middle School until August 2, 2021.  [ECF No. 36, at *4-5].

It is important to note that Defendants West Virginia State Board of Education and Superintendent W. Clayton Burch did not request a bill of this nature and played no role in the introduction and initial drafting of House Bill 3293.  This bill was sponsored by Delegate Caleb Hanna and cosponsored by Delegates Jordan Bridges, Wayne Clark, Joe Ellington, Chuck Horst, D. Rolland Jennings, Todd Longanacre, Margitta Mazzocchi, Heather Tully, Chris Phillips, and Adam Burkhammer.  WVBOE in no way participated in the enactment of *West Virginia Code* § 18-2-25d.  Instead, WVBOE only answered specific questions posed to it during House of Delegates Education and Committee meetings and hearings.

### III.    <u>STANDARD OF REVIEW</u>

The Supreme Court of the United States established the standard for imposing a preliminary injunction in *Winter v. NRDC, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed 2d 249, 261 (2008). *Winter* requires parties seeking preliminary injunctions to demonstrate that (1)

they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) the injunction is in the public interest.  *Id*.  In analyzing these facts, the United States Court of Appeals for the Fourth Circuit requires that each preliminary injunction factor be "satisfied as articulated."  *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds, Citizens United v. FEC*, 558 U.S. 310, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010), *aff'd, The Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010) (per curiam); *see also Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013).  In other words, if a party seeking a preliminary injunction cannot satisfy one element of this standard, an injunction should not be issued.

## IV.   ARGUMENT

### A.   Plaintiff lacks standing against WVBOE.

Before the Court considers issuing a preliminary injunction against WVBOE, the Court must determine whether it has jurisdiction over WVBOE.  "It is well established that standing is a threshold jurisdictional issue that must be determined first because '[w]ithout jurisdiction the court cannot proceed at all in any cause.'"  *Covenant Media of N.C., LLC v. City of Monroe, N.C.*, 285 Fed. App'x 30, 34 (4th Cir. 2008) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)).  To establish standing, a party must meet three requirements:

> (1) [the party] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)).

4

"The party attempting to invoke federal jurisdiction bears the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

Here, Plaintiff cannot establish that the injury alleged is "fairly traceable to the challenged action of the defendant." The "fairly traceable" component requires a causal connection between the alleged injury and the defendant's assertedly unlawful conduct. *Allen v. Wright*, 468 U.S. 737, 753, 104 S. Ct. 3315, 3325, 82 L. Ed. 2d 556 (1984). A plaintiff can establish a sufficient causal connection between injury and challenged action if he/she can make a reasonable showing that the alleged injury would not have occurred "but for" the defendant's challenged conduct. *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 74-75, 98 S. Ct. 2620, 2631, 57 L. Ed. 2d 595, 612 (1978).

The injury alleged by Plaintiff in this matter is the inability to participate on an athletic team of the gender for which she identifies. The actual enforcement of *West Virginia Code* § 18-2-25d, which Plaintiff asserts results in her injury, is not and will not be by WVBOE. *West Virginia Code* § 18-2-25d(d)(1) is clear that any disputes regarding its enforcement must be filed against the enforcing body, the county board of education. As a result, under *West Virginia Code* § 18-2-25d, WVBOE has not enforced the statute against Plaintiff and it will not be the party enforcing the statute against Plaintiff in the future.

Plaintiff will likely assert that standing is appropriate because WVBOE has a mandatory duty to promulgate rules to implement *West Virginia Code* § 18-2-25d. While at some point in the future, WVBOE "shall promulgate rules, including emergency rules, pursuant to §29A-3B-1 et. seq. of this code to implement the provisions of this section[,]" at no point in the future will enforcement of *West Virginia Code* § 18-2-25d or rules promulgated be the responsibility of WVBOE. This concept is not novel as WVBOE has previously promulgated one other rule relating

5

to participation in an extracurricular activity.  This rule, commonly called the "2.0 Rule", W. Va. 12 C.S.R. 26, WVBOE Policy 2436.10, Participation in Extracurricular Activities, provides that "[i]n order to participate in the extracurricular activities to which this policy applies, a student must meet all state and local attendance requirements and . . . [m]aintain a 2.0 [grade point] average." However, the 2.0 Rule contains no provisions regarding monitoring or enforcement.  As a result, neither WVBOE State Superintendent nor WVBOE play any role in the monitoring or enforcement for any aspect of extracurricular athletics eligibility.  Instead, monitoring and enforcement are the responsibility of other entities (i.e. county boards of education and/or WVSSAC).  Similarly, *West Virginia Code* § 18-2-25d likewise confers no duty upon WVBOE to monitor or enforce this statute even after WVBOE promulgates rules pursuant to §29A-3B-1 et. seq.

*West Virginia Code* § 18-2-25d will go into effect on July 8, 2021, and WVBOE will then enact rules in the future; however, the enforcement of the provisions of *West Virginia Code* § 18-2-25d will not fall upon WVBOE.  This will not change with the enactment of rules by WVBOE, as *West Virginia Code* § 18-2-25d clearly contemplates a county board of education as the party responsible with its enforcement.  As a result, Plaintiff cannot meet her burden of establishing that the alleged injury would not have occurred "but for" any past or future conduct by WVBOE.  Since Plaintiff does not have standing to sue WVBOE, the Court lacks jurisdiction and cannot enter an injunction against it.

### B.    Plaintiff's claims against WVBOE are not ripe for judicial review.

Plaintiff's claims against WVBOE are not ripe for judicial review.  As with standing, ripeness is a question of subject matter jurisdiction. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013).  The question of whether a claim is ripe "turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pac. Gas*

& *Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 103 S. Ct. 1713, 1720, 75 L. Ed. 2d 752, 763 (1983) (citation omitted).  In the context of claims challenging agency actions, the purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 1515, 18 L. Ed. 2d 681, 691 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. #d. 2d 192 (1977).  Finally, to be fit for judicial review, a controversy should be presented in a "clean-cut and concrete form." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citation omitted).  This occurs when the action is "final and not dependent on future uncertainties or intervening agency rulings." *Franks v. Ross*, 313 F.3d 184, 195 (4th Cir. 2002) (citation omitted).

Here, the only action mandated by *West Virginia Code* § 18-2-25d and directed at WVBOE is to promulgate rules regarding the statute.  *West Virginia Code* § 18-2-25d does not place a timeframe upon the promulgation of the rules.  To date, no rules have been promulgated.  The West Virginia Legislative session ended in April 2021, and the enactment of new rules requires time for preparation, public comment, and final approval.  As a result, challenging WVBOE's conduct in this matter is clearly not ripe for judicial review under the precedent discussed above.  There is no "final" action by WVBOE and there are no rules promulgated by WVBOE in a "clean-cut and concrete form" for the Court to review as it relates to WVBOE.  Therefore, the Court lacks jurisdiction over WVBOE because the claims against it are not ripe for judicial review,

      **C.**    **Plaintiff is not likely to succeed on the merits on her claim alleging violation of the Equal Protection Clause against WVBOE.**

Should the Court find that Plaintiff has standing to maintain this action and her claims

against WVBOE are ripe for review, Plaintiff cannot establish that she will prevail on the merits of the claim alleging violation of the Equal Protection Clause against WVBOE.  WVBOE has not engaged in any action and will not engage in any action that deprives Plaintiff of her Equal Protection rights.  As previously discussed, the first element that Plaintiff must establish in order for the Court to issue a preliminary injunction is that she is likely to succeed on the merits.  *See Pashby*, 709 F.3d at 320-21.  Since Plaintiff cannot establish that she is likely to proceed on the merits of her Equal Protection claim against WVBOE, the preliminary injunction cannot be issued against WVBOE.

To the extent the Court considers Plaintiff's claim for violation of the Equal Protection Clause as it relates to WVBOE, it must analyze whether *West Virginia Code* § 18-2-25d violates the Equal Protection Clause.  Here, based upon precedent of the United States Court of Appeals for the Fourth Circuit, *West Virginia Code* § 18-2-25d is to be analyzed under heightened scrutiny.  *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020).  However, *Grimm* is pending *cert* before the Supreme Court of the United States.  As the dissent in *Grimm* noted, because plaintiff was not "similarly situated," then heightened review was not appropriate.  *See id.*, 972 F.3d at 636 (Niemyer, J., dissenting).  Therefore, for purposes of preserving the record in this action, WVBOE asserts that the appropriate standard of review is rational basis.  This position is based upon two factors:  First, Plaintiff was not treated differently than someone *similarly situated* as her, thereby subjecting her claim to rational basis review.  *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (a plaintiff asserting a violation of the Equal Protection Clause must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."); *see also Grimm*, 972 F.3d at 636 (Niemyer, J., dissenting).  Second, the Fourth

Circuit, in *United States v. Biocic*, 928 F.2d 112, 115 (4th Cir. 1991), assumed, but did not decide that a classification based on "anatomical differences between male and female" qualifies as a gender-based distinction in the context of the equal protection analysis. *United States v. Biocic*, 928 F.2d 112, 115 (4th Cir. 1991).  Other jurisdictions have found that classifications based upon anatomical differences are subject to rational basis review. *See Eline v. Town of Ocean City, Md*., 452 F. Supp. 3d 270, 278 (D. Md. 2020) (citing *Ways v. City of Lincoln*, 331 F.3d 596, 600 n.3 (8th Cir. 2003) (finding "the higher standard would not apply because the discrimination was based on a real physical difference between men and women's breasts, thus men and women were not similarly situated for equal protection purposes."); *State v. Lilley*, 171 N.H. 766, 204 A.3d 198, 208 (N.H. 2019), *cert. denied*, 140 S. Ct. 858, 205 L. Ed. 2d 456 (2020) (finding that challenge to ban on exposure of female but not male breasts was not a gender-based classification and applying rational basis review)).

Under the heightened scrutiny standard, the party defending a gender-based classification must show that the "classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1690, 198 L Ed. 2d 150, 163 (2017) (internal quotations and citations omitted).  However, a law subject to heightened review does not mandate that all gender-based classifications must fail; rather, it recognizes that "[p]hysical differences between men and women . . . are enduring."  *United States v. Virginia,* 518 U.S. 515, 533, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996).  Accordingly, laws may acknowledge the physical differences between men and women, so long as such gender-based classifications do not "create or perpetuate the legal, social, and economic inferiority of women." *Id.* 518 U.S. at 534.  *See e.g., Nguyen v. INS*, 533 U.S. 53, 121 S. Ct. 2053, 150 L. Ed. 2d 115 (2001) (upholding

law requiring unmarried citizen fathers, but not unmarried citizen mothers, to officially acknowledge relationship to foreign-born child in order to pass United States citizenship to such child because of biological differences between the sexes related to childbirth). In fact, the Court should not disregard the physiological differences between men and women. *Michael M. v. Superior Court*, 450 U.S. 464, 481, 101 S. Ct. 1200, 1210-1211, 67 L. Ed. 2d 437, 450 (1981).

Moreover, with respect to laws regarding sex:

> a legislature may not "make overbroad generalizations based on sex which are entirely unrelated to any differences between men and women or which demean the ability or social status of the affected class." *Parham* v. *Hughes*, 441 U.S. 347, 354 (1979) (plurality opinion of STEWART, J.). But because the Equal Protection Clause does not "demand that a statute necessarily apply equally to all persons" or require "'things which are different in fact . . . to be treated in law as though they were the same,'" *Rinaldi* v. *Yeager*, 384 U.S. 305, 309 (1966), quoting *Tigner* v. *Texas*, 310 U.S. 141, 147 (1940), this Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances. *Parham* v. *Hughes, supra; Califano* v. *Webster*, 430 U.S. 313 (1977); *Schlesinger* v. *Ballard*, 419 U.S. 498 (1975); *Kahn* v. *Shevin*, 416 U.S. 351 (1974). As the Court has stated, a legislature may "provide for the special problems of women." *Weinberger* v. *Wiesenfeld*, 420 U.S. 636, 653 (1975).

*Michael M.,* 450 U.S. at 469.

When analyzing this case, the stated purpose for *West Virginia Code* § 18-2-25d is "[c]lassification of teams according to biological sex is necessary to promote equal athletic opportunities for the female sex." *W. Va. Code* § 18-2-25d(a)(5). No one seriously disputes that the State lacks an important governmental interest in promoting equal athletic opportunities for the female sex. *See Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 104 (4th Cir. 2011) (citing *Kelley v. Bd. of Tr., Univ. of Ill.*, 35 F.3d 265, 272 (7th Cir. 1994)). Consistent with this purpose, case law establishes that "males" may be excluded from participating on a sports team comprised solely of "females." *See generally Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982). This is because prohibiting "males" from participating on a sports team comprised

solely of "females" has been held to achieve the result of promoting equal athletic opportunities for the female sex. *Id.,* at 1131 (The situation here is one where there is clearly a substantial relationship between the exclusion of males from the team and the goal of redressing past discrimination and providing equal opportunities for women."). The proponents of the injunction do not request a disturbance of this understanding.

Because "males" may be excluded from participating on a sports team comprised solely of "females" to provide equal athletic opportunities for females, the West Virginia Legislature set forth a law defining what constitutes a "male" and "female." *W. Va. Code* § 18-2-25d. Under the definitions in *West Virginia Code* § 18-2-25d, the West Virginia Legislature defined "male" as "an individual whose biological sex determined at birth is male. As used in this section, 'men' or 'boys' refers to biological males." *W. Va. Code* § 18-2-25d(b)(3). "Female" is defined to mean "an individual whose biological sex determined at birth is female. As used in this section, 'women' or 'girls' refers to biological females." *Id.* at 18-2-25d(b)(2). Proponents of the injunction do not dispute that the definitions are factually inaccurate; or that the definitions are arbitrary; or that the definitions are capricious; or that the definitions are not objective. Rather, proponents of the injunction assert that the *effect* of these otherwise valid definitions have a discriminatory effect on less than 1% of the United States population. *See Hecox*, 479 F. Supp. 3d at 977 ("less than one percent of the population is transgender.").

As previously discussed, laws that relate to sex may have some discriminatory effect so long as the discriminatory means are substantially related to the achievement of an important governmental objective. *Sessions*, 198 L. Ed. 2d at 163. If States can prohibit "males" from participating in "female" sports to promote equal athletic opportunities for females, a law defining what constitutes a "male" and a "female" in a factual and objective manner *clearly* is substantially

related to achieve those objectives. In fact, *West Virginia Code* § 18-2-25d not only substantially relates to achieve those objectives, but rather it *directly* achieves those objectives. Under *West Virginia Code* § 18-2-25d, "males" is defined by the State in a manner that is not unconstitutional, but based upon objective criteria, in that "males" cannot participate on a sports team comprised solely of "females", as defined by the statute. By Plaintiff's own account, the law here has no discriminatory effect in over 99% of the cases, as less than 1% of the United States population identifies as a gender other than their biological sex. *See Hecox*, 479 F. Supp. 3d at 977 ("less than one percent of the population is transgender."). To strike down a law under heightened scrutiny where the law at issue *directly* achieves the acknowledged important governmental interest is without binding precedent. As a result, because *West Virginia Code* § 18-2-25d clearly meets heightened scrutiny then Plaintiff is not likely to succeed on the merits.

Because of the above, proponents of a preliminary injunction in this case attack the motivations of some of West Virginia lawmakers regarding *West Virginia Code* § 18-2-25d. However, the Supreme Court of the United States "has long recognized that '[inquiries] into congressional motives or purposes are a hazardous matter,' *United States* v. *O'Brien*, 391 U.S. 367, 383-384 (1968); *Palmer* v. *Thompson*, 403 U.S. 217, 224 (1971), and the search for the 'actual' or 'primary' purpose of a statute is likely to be elusive. *Arlington Heights* v. *Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 (1977); *McGinnis* v. *Royster*, 410 U.S. 263, 276-277 (1973)." *M. v. Superior Court*, 450 U.S. 464, 469-470, 101 S. Ct. 1200, 1204, 67 L. Ed. 2d 437, 44 (1981). Here, *West Virginia Code* § 18-2-25d, as adopted, has a stated purposed. As a result, this legislative purpose is entitled to great deference. *Reitman* v. *Mulkey*, 387 U.S. 369, 373-374, 87 S. Ct. 1627, 1630, 18 L. Ed. 2d 830, 833-834 (1967).

In addition to attacking the motivations of some of West Virginia lawmakers, which is irrelevant pursuant to precedent of the Supreme Court of the United States, proponents of the injunction request the Court follow the United States District Court for the District of Idaho's decision in *Hecox v. Little*, 479 F. Supp. 3d 930.  In *Hecox*, the Idaho District Court reviewed a law passed by the State of Idaho that relates to restricting biological males from participating in sports teams that are solely for biological females.  *See Idaho Code Ann.* § 33-6201, et seq. Ultimately, the Idaho District Court in *Hecox* enjoined the enforcement of the Idaho law.  The matter is pending on appeal before the United States Court of Appeals for the Ninth Circuit. While the Idaho law in *Hecox* has some similarities, the law is not identical.  The most glaring difference is that the Idaho law creates a dispute process to determine the biological sex of a student, which is not part of the statute at issue in this case.

While proponents of the injunction place great reliance upon *Hecox*, the Court should not blindly follow the Idaho Court for numerous reasons.  First, the law at issue in Idaho is different than *West Virginia Code* § 18-2-25d, particularly with regard to challenging an individual's gender.  Second, clearly a District Court opinion from the Ninth Circuit is not binding upon the Court, particularly when that decision is on appeal.  Moreover, the Idaho District Court spent substantial time discussing the effect of the Ninth Circuit's decision in the *Clark*, 695 F.2d 1126. Here, the Court need not fully analyze *Clark*, as no one disputes that "males" may be excluded from participating on a sports team comprised solely of "females."  Because of this, the only issue is whether the definitions of "male" and "female" as defined by the West Virginia Legislature in *West Virginia Code* § 18-2-25d substantially achieve the objective of providing equal athletic opportunities for female athletes.  There can be no dispute that the definitions in *West Virginia Code* § 18-2-25d achieve this result.  Therefore, *Hecox* is inapplicable to this case.

In sum, *West Virginia Code* § 18-2-25d *substantially* achieves the result of the important governmental purpose of providing athletic opportunities for female athletes.  No matter how proponents of the injunction wish to argue, there is no valid dispute that the law at issue *substantially* achieves the result of creating athletic opportunities for female athletes, as it prohibits "males" from participating in "female" athletic events..  Therefore, Plaintiff cannot show a violation of the Equal Protection Clause against WVBOE, and thus, she is not entitled to a preliminary injunction in this case.

**D.      Plaintiff is not likely to succeed on the merits on her Title IX against WVBOE.**

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681. To prevail on a claim under Title IX, this Court must find (1) that he was excluded from participation in an education program "on the basis of sex"; (2) that the educational institution was receiving federal financial assistance at the time; and (3) that improper discrimination caused him harm.  *Grimm*, 972 F.3d at 616.  Here, as explained under the standing argument above, WVBOE was not and will not be the entity excluding Plaintiff from participation on the sports team that she chooses.  As a result, Plaintiff cannot establish a Title IX violation by WVBOE.  Therefore, Plaintiff is not likely to prevail in her Title IX claim against WVBOE.

As for the merits of Plaintiff's Title IX claim, the United States Department of Education's Office for Civil Rights (hereinafter "Office of Civil Rights") previously found in 2020 that the participation of two transgender individuals in a female athletic event denied female student-athletes athletic benefits and opportunities in violation of Title IX.  *See* Exhibit 1, Office of Civil Rights Findings Letter regarding Connecticut Interscholastic Athletic Conference, et al., dated

14

May 15, 2020; Exhibit 2, Office of Civil Rights Findings Revised Letter regarding Connecticut Interscholastic Athletic Conference, et al., dated August 31, 2020; Exhibit 3, Office of Civil Rights Withdrawal Letter dated February 23, 2021.  While the 2020 findings of the Office of Civil Rights were withdrawn when a new administration came into power, *see* Exhibit 3, this back and forth highlights the ambiguity of the position asserted by the United States as to what may constitute a Title IX violation.  These contradictory positions highlight that Title IX does not define sex and the United States has never sought to define it through its rule-making process.  But, certainly the parties would agree that the displacement of a "female" by a "male" in an athletic competition may constitute a violation of Title IX.  The law at issue, *West Virginia Code* § 18-2-25d, simply attempts to define "female" and "male" in a manner that is otherwise objective.  Therefore, because *West Virginia Code* § 18-2-25d seeks to "close a gap" in Title IX that exists due to a failure to define "female" and "male", the definition of which changes with the political party in power, it is unclear whether there is an actual Title IX violation.  Thus, it is not "likely" that Plaintiff will succeed on the merits of her Title IX claim and preliminary injunction should be denied against WVBOE.

**WHEREFORE**, based upon the foregoing, Defendants West Virginia State Board of Education and Superintendent W. Clayton Burch hereby pray that the Honorable Court will enter an Order denying Plaintiff's Motion for a Preliminary Injunction and awarding such other relief deemed necessary and appropriate.

Respectfully Submitted,

**DEFNDANTS WEST VIRGINIA STATE BOARD OF EDUCATION and W. CLAYTON BURCH**

**By Counsel,**

**/s/ Kelly C. Morgan**
**Kelly C. Morgan (WV Bar #9519)**
**Michael W. Taylor (WV Bar #11715)**
**Kristen V. Hammond (WV Bar #9727)**
**Bailey & Wyant, PLLC**
**500 Virginia Street, East, Suite 600**
**P.O. Box 3710**
**Charleston, WV 25337-3710**
**Telephone: 304.345.4222**
**Facsimile: 304.343.3133**
**kmorgan@baileywyant.com**
**mtaylor@baileywyant.com**
**khammond@baileywyant.com**

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**B.P.J., by her next friend and mother,
HEATHER JACKSON,**

    **Plaintiff,**

**v.**

                                                 **Civil Action No. 2:21-cv-00316**

**WEST VIRGINIA STATE BOARD OF
EDUCATION; HARRISON COUNTY BOARD
OF EDUCATION; WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION; W. CLAYTON BURCH, in his
official capacity as State Superintendent; and
DORA STUTLER, in her official capacity as
Harrison County Superintendent,**

                                                 **Honorable Joseph R. Goodwin**

    **Defendants.**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing "**Defendant West Virginia State Board of Education and Superintendent W. Clayton Burch's Response in Opposition to Plaintiff's Motion for Preliminary Injunction**" was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, June 23, 2021:

Loree Stark
American Civil Liberties Union of West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
lstark@acluwv.org
*Counsel for Plaintiff*

Avatara Smith-Carrington
Lambda Legal
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
asmithcarrington@lambdalegal.org
*Counsel for Plaintiff*

Carl Charles
Tara Borelli
Lambda Legal
730 Peachtree Street NE, Suite 640
Atlanta, GA 30308-1210
ccharles@lambdalegal.org
*Counsel for Plaintiff*

Sruti Swaminathan
Lambda Legal
120 Wall Street, 19th Floor
New York, NY 10005
sswaminathan@lambdalegal.org
*Counsel for Plaintiff*

Joshua Block
Taylor Brown
Chase Strangio
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
jblock@aclu.org
*Counsel for Plaintiff*

Kathleen Hartnett
Julie Veroff
Cooley LLP
101 California Street 5th Floor
San Francisco, CA 94111-5800
khartnett@cooley.com
*Counsel for Plaintiff*

Elizabeth Reinhardt
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
ereinhardt@cooley.com
*Counsel for Plaintiff*

Andrew Barr
Cooley LLP
1144 15th St., Suite 2300
Denver, CO 80202-5686
abarr@cooley.com
*Counsel for Plaintiff*

Katelyn Kang
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
kkang@cooley.com
*Counsel for Plaintiff*

Roberta F. Green
Shuman McCuskey & Slicer PLLC
P.O. Box 3953
Charleston, WV 25339-3953
rgreen@Shumanlaw.com
*Counsel for Defendant West Virginia Secondary School Activities Commission*

Susan L. Deniker
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
susan.deniker@steptoe-johnson.com
*Counsel for Defendants Harrison County Board of Education and Dora Stutler*

Douglas P. Buffington, II
Curtis R. A. Capehart
Jessica A. Lee
Office of the Attorney General, State of West Virginia
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220
Curtis.R.A.Capehart@wvago.gov
*West Virginia Attorney General's Office*

Whitney M. Pellegrino
Aria S. Vaughan
Michelle L. Tucker
Amanda K. Dallo
United States Department of Justice
Civil Rights Division
Educational Opportunities Section
950 Pennsylvania Ave., NW
4CON, 10th Floor
Washington, DC 20530
Aria.Vaughan@usdoj.gov
*United States Department of Justice*

3

Lisa G. Johnston
Fred B. Westfall, Jr.
Jennifer M. Mankins
300 Virginia Street East, Room 4000
Charleston, WV 25301
Fred.Westfall@usdoj.gov
*United States Attorney's Office*

     **/s/ Kelly C. Morgan**
**Kelly C. Morgan (WV Bar #9519)**
**Michael W. Taylor (WV Bar #11715)**
**Kristen V. Hammond (WV Bar #9727)**
**Bailey & Wyant, PLLC**
**500 Virginia Street, East, Suite 600**
**P.O. Box 3710**
**Charleston, WV 25337-3710**
**Telephone: 304.345.4222**
**Facsimile: 304.343.3133**
**kmorgan@baileywyant.com**
**mtaylor@baileywyant.com**
**khammond@baileywyant.com**

4