IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON, <br><br> *Plaintiff*, <br><br> v. <br><br> WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, PATRICK MORRISEY in his official capacity as Attorney General, and THE STATE OF WEST VIRGINIA, <br><br> *Defendants*. | Civil Action No. 2:21-cv-00316 <br><br> Hon. Joseph R. Goodwin |

**CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT (Dkts. 70, 72, and 74.)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.    B.P.J.'s Injuries Are Traceable To The State Board Defendants And Her
          Claims Against Them Are Ripe. ................................................................. 3

          A.    B.P.J. Has Standing To Pursue Her Claims Against The State
                 Board Defendants. ......................................................................... 3

          B.    B.P.J.'s Claims Against The State Board Defendants Are Ripe. .............. 6

    II.    B.P.J. Has Adequately Pled Title IX And Equal Protection Claims Against
          The Defendants Named In Each Claim. ..................................................... 7

          A.    B.P.J.'s Title IX Claim Is Properly Pled Against All Named
                 Defendants. ................................................................................... 8

                 1.    B.P.J. Has Properly Stated A Title IX Claim Against The
                      State Board. .................................................................... 9

                 2.    B.P.J. Has Properly Stated A Title IX Claim Against The
                      County Board. ................................................................. 9

                 3.    B.P.J. Has Properly Stated A Title IX Claim Against The
                      School Activities Commission. ..................................... 12

          B.    B.P.J.'s Equal Protection Claim Is Properly Pled Against All
                 Named Defendants. ..................................................................... 15

                 1.    B.P.J. Has Properly Stated An Equal Protection Claim
                      Against Superintendent Burch. ..................................... 15

                 2.    B.P.J. Has Properly Stated An Equal Protection Claim
                      Against Superintendent Stutler. .................................... 17

CONCLUSION ..................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Cheatham*,
   910 F.3d 751 (4th Cir. 2018) ..............................................................5, 6

*Alston v. Va. High Sch. League, Inc.*,
   144 F. Supp. 2d 526 (W.D. Va. 1999) ...................................................13

*Bailey v. Truby*,
   174 W. Va. 8 (1984) ...........................................................................5, 6

*Baynard v. Malone*,
   268 F.3d 228 (4th Cir. 2001) ................................................................11

*Bostic v. Schaefer*,
   760 F.3d 352 (4th Cir. 2014) ................................................................18

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
   531 U.S. 288 (2001).............................................................................19

*Charter Fed. Sav. Bank v. Off. of Thrift Supervision*,
   976 F.2d 203 (4th Cir. 1992) ..................................................................7

*Communities for Equity v. Mich. High Sch. Athletic Ass'n*,
   80 F. Supp. 2d 729 (W.D. Mich. 2000) ................................................13

*Condiff v. Hart Cnty. Sch. Dist.*,
   770 F. Supp. 2d 876 (W.D. Ky. 2011)...................................................11

*Duke Power Co. v. Carolina Env't. Study Grp., Inc.*,
   438 U.S. 59 (1978).................................................................................6

*Fitzgerald v. Barnstable Sch. Comm.*,
   555 U.S. 246 (2009).............................................................................10

*Franks v. Ross*,
   313 F.3d 184 (4th Cir. 2002) ..................................................................7

*Israel by Israel v. W. Va Secondary Sch. Activities Comm'n*,
   182 W. Va. 454 (1989) ........................................................................18

*Jones v. W. Va. State Bd. of Educ.*,
   218 W. Va. 52 (2005) ................................................................. *passim*

*Kentucky v. Graham*,
    473 U.S. 159 (1985)................................................................................16, 17

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009) ..............................................................................3

*State ex rel. Lambert by Lambert v. W. Va. State Bd. of Educ.*,
    191 W. Va. 700 (1994) ...............................................................................5, 9, 16

*LaPeer Cnty. Med. Care Facility v. State of Mich.*,
    No. 1:91–CV–333, 1992 WL 220917 (W.D. Mich. Feb. 4, 1992) .........................12

*Larson v. Valente*,
    456 U.S. 228 (1982)...........................................................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..............................................................................................3

*Libertarian Party of Va. v. Judd*,
    718 F.3d 308 (4th Cir. 2013) ..............................................................................4

*Litman v. George Mason Univ.*,
    186 F.3d 544 (4th Cir. 1999) ............................................................................17

*Make the Rd. N.Y. v. McAleenan*,
    405 F. Supp. 3d 1 (D.D.C. 2019) .......................................................................7

*Martin v. Duffy*,
    858 F.3d 239 (4th Cir. 2017) ..............................................................................8

*McGee v. Cole*,
    115 Supp. 3d 765 (S.D. W.Va. 2015) ............................................................15, 18

*Md. Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) ..............................................................................3

*Miller v. Brown*,
    462 F.3d 312 (4th Cir. 2006) ..........................................................................6, 7

*Monell v. Dep't of Soc. Servs*,
    436 U.S. 658 (1978)..........................................................................10, 11, 17, 18

*N.C. State Conf. of NAACP v. N.C. State Bd. of Elections*,
    283 F. Supp. 3d 393 (M.D.N.C. 2017) .............................................................12

*Preston v. Com. of Va. ex rel. New River Cmty. Coll.*,
    31 F.3d 203 (4th Cir. 1994) ...............................................................................8

*Robertson v. Jackson*,
    972 F.2d 529 (4th Cir. 1992) ..................................................................4, 5

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..............................................................................7

*Vitek v. Jones*,
    445 U.S. 480 (1980) ..............................................................................12

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ..............................................................................16, 17

*Ex parte Young*,
    209 U.S. 123 (1908) ..............................................................................15, 18

**Statutes**

42 U.S.C. § 1983 .....................................................................................*passim*

W. Va. Code
    § 18-2-5 ..............................................................................................5
    § 18-2-25 .........................................................................................*passim*
    § 18-3-3 ............................................................................................15
    § 18-4-10 ..........................................................................................17

**Other Authorities**

Federal Rule of Civil Procedure
    12(b)(1) .........................................................................................2, 3, 9
    12(b)(6) .........................................................................................3, 7, 8

# INTRODUCTION

On April 28, 2021, the State of West Virginia ("State") passed H.B. 3293, which targets B.P.J. and other women and girls who are transgender for categorical exclusion from women's and girls' sports. In preliminarily enjoining H.B. 3293, this Court held that H.B. 3293 is likely unconstitutional and likely violates Title IX. (Dkt. 67.) This Court noted that Defendants have provided "scant evidence that this law addresses any problem at all, let alone an important problem" and further concluded that the law "is not substantially related to protecting girls' opportunities in athletics or their physical safety when participating in athletics." (*Id*. at 1, 11.) Accordingly, this Court enjoined all Defendants from enforcing the law against B.P.J. and expressly stated that during the pendency of this action "[s]he will be permitted to sign up for and participate in school athletics in the same way as her girl classmates." (*Id*. at 15.)

All Defendants except for the State now ask this Court to dismiss them from this action, relying heavily on arguments previously raised in their unsuccessful oppositions to Plaintiff's preliminary injunction motion.[1] (*Compare* Dkts. 47, 48, 50 *with* 71, 73, 75.) This Opposition addresses the motions filed by the State Board and Superintendent Burch ("State Board Defendants") (Dkt. 74), the County Board and Superintendent Stutler ("County Defendants") (Dkt. 72), and the West Virginia School Activities Commission ("School Activities Commission") (Dkt. 70).[2] This Court should deny those motions. *First*, this Court has subject-matter jurisdiction because B.P.J. has standing and her claims are ripe. *Second*, B.P.J. has properly named each Defendant, each of which has a role in enforcing H.B. 3293. Notably, each Defendant asserting

---

[1] All defined terms have the same meaning as set forth in B.P.J.'s Memorandum in Support of Her Motion for a Preliminary Injunction (Dkt. 19) and her First Amended Complaint (Dkt. 64), unless otherwise noted.

[2] B.P.J. responds to the Attorney General's motion to dismiss (Dkt. 76) under separate cover.

that it has no role in enforcing H.B. 3293 as a basis for dismissal is identified by one of its co-Defendants as having such a role. This collective finger pointing only confirms that in order for B.P.J. to obtain sufficient protection against enforcement of H.B. 3293, each Defendant must be enjoined. *Finally*, with respect to the County Defendants' arguments that B.P.J.'s Title IX and Equal Protection Clause claims fail on the merits, this Court has already held that B.P.J. is likely to succeed on the merits of each claim, and the County Defendants make no effort to acknowledge or engage with that decision.

Defendants go to great lengths to avoid responsibility for H.B. 3293, but their efforts to distance themselves from this discriminatory law does not preclude B.P.J.'s claims against them or provide B.P.J. sufficient protection from the law's discriminatory effect. This Court should deny Defendants' motions, which will ensure that all official actors responsible for H.B. 3293 and its implementation are subject to injunction and judgment against it.[3]  (*See id*.)

## ARGUMENT

B.P.J.'s First Amended Complaint ("Complaint") sufficiently alleges two causes of action against appropriate Defendants for each claim:  (1) violation of her Title IX rights by the State, the State Board of Education, the County Board of Education, and the School Activities Commission; and (2) violation of her Equal Protection Rights, enforceable pursuant to 42 U.S.C. §1983, by State Superintendent Burch, County Superintendent Stutler, and the School Activities Commission.

Instead of defending the lawfulness of H.B. 3293 on the merits, all moving Defendants except the County Defendants move for dismissal based on two general arguments, addressed in

---

[3] The history of H.B. 3293's enactment, the details of H.B. 3293's various provisions, and H.B. 3293's impact on B.P.J. are set out at length in B.P.J.'s motion for preliminary injunction, (Dkt. 19), and are addressed in this Court's memorandum and opinion, (Dkt. 67).  B.P.J. thus does not repeat those facts here.

turn.  *First*, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), the State Defendants claim that this Court lacks subject matter jurisdiction over B.P.J.'s claims for lack of traceability and ripeness.  These arguments fail because H.B. 3293, which took effect on July 8, 2021, is fully operative against B.P.J. and—but for this Court's preliminary injunction—would immediately exclude B.P.J. from participating on school sports teams with other girls.  *Second*, all moving Defendants argue pursuant to Federal Rule of Civil Procedure 12(b)(6) (albeit with arguments that sound in Rule 12(b)(1)) that they are improper defendants.  These arguments also fail.  B.P.J. has properly named Defendants for each of her claims—namely, the entities or individuals responsible for H.B. 3293 and its implementation.  Accordingly, Defendants' motions should be denied in full.

I.    **B.P.J.'s Injuries Are Traceable To The State Board Defendants And Her Claims Against Them Are Ripe.**

Pursuant to Rule 12(b)(1), the State Board Defendants argue that B.P.J.'s injuries are not traceable to their conduct and that her claims are not ripe.  Because the State Board Defendants have not proffered any evidence outside of the pleadings to support their Rule 12(b)(1) motion, B.P.J. "is afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration"—"the facts in the alleged complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal citation omitted).  Because B.P.J. has standing and her claims are ripe, the Rule 12(b)(1) motion to dismiss should be denied.

A.    **B.P.J. Has Standing To Pursue Her Claims Against The State Board Defendants.**

Article III standing "requires only that the Plaintiff's injury be fairly traceable to the defendant's conduct."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).  Traceability does not require the challenged action to be "the sole or even immediate cause of th[e] injury."  *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 212 (4th Cir. 2020), as

amended (Aug. 31, 2020) (quoting *Sierra Club v. Dep't of the Interior*, 899 F.3d 260, 283–84 (4th Cir. 2018)).  A defendant's action need only be "at least in part responsible" for the plaintiff's injury.  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013).

Here, H.B. 3293's requirement that the State Board promulgate rules to implement the law's categorical exclusion of girls who are transgender from school sports places the State Board directly in the causal chain of B.P.J.'s harm, conferring Article III standing.  Specifically, as the State Board Defendants concede, H.B. 3293 *requires* them to promulgate rules to implement the law's categorical exclusion of girls who are transgender from school sports.  *See* W. Va. Code § 18-2-25d(e); (Dkt. 75 at 2, 6).  Despite this statutory mandate to implement H.B. 3293, the State Board Defendants assert that B.P.J. lacks standing to sue them because the County Board (as opposed to the State Board) is charged with enforcing the rules promulgated by the State Board Defendants and thus B.P.J.'s injuries are not "fairly traceable" to their conduct.  (Dkt. 75 at 5–8.)

The State Board Defendants' attempt to disclaim responsibility for enforcing H.B. 3293 squarely conflicts with Fourth Circuit precedent.  In *Robertson v. Jackson*, 972 F.2d 529 (4th Cir. 1992), as amended (Aug. 12, 1992), the Fourth Circuit held that a state official was properly enjoined in a case alleging violations of federal regulations governing the acceptance and processing of applications of food stamp assistance, where the state official's role was to "supervise[] and manage[]" the organization overseeing the administration of Virginia's public aid and assistance programs, even though local officials were the ones directly administering the food stamp program.  *Id.* at 530–31.  Put another way, even though *enforcement* of the policy was handled at the local level, the injunction also bound the state official due to its supervisory and managerial role in the causal chain of enforcement.  *See id*.

The State Board Defendants try to distinguish *Robertson* by arguing that in that case, the

4

state official was "ultimately responsible for compliance with federal law," *id.* at 533, whereas in this case the State Board Defendants allegedly lack any "ultimate" responsibility to enforce H.B. 3293. (State Board Mot. at 7.) But that is simply not true. The Supreme Court of Appeals of West Virginia has long been clear that "the ultimate control over the county boards of education, as well as the [School Activities Commission], rests with the [State] Board." *State ex rel. Lambert by Lambert v. W. Va. State Bd. of Educ.*, 191 W. Va. 700, 709 (1994) (discussing W. Va. Code §§ 18-2-5, 18-2-25). The State Board's "ultimate control" over local boards and the School Activities Commission stems from its constitutional duty "to generally supervise the schools in this state," and extends to any efforts to supervise or regulate extracurricular activities undertaken by the county boards or the School Activities Commission, *Jones v. W. Va. State Bd. of Educ.*, 218 W. Va. 52, 61 (2005); W. Va. Code § 18-2-25 (stating that any rule issued by the School Activities Commission "shall, in all instances be subject to the prior approval of the [State Board]").

Because the State Board has "ultimate control" over the County Board and School Activities Commission, the State Board Defendants are part of the causal chain of B.P.J.'s injuries. The State Board Defendants have ultimate control over the County Board and School Activities Commission, and the County Board and School Activities Commission must enforce H.B. 3293 against B.P.J. (Dkt. 75 at 6, 8.) B.P.J.'s injuries therefore are traceable to the State Board Defendants, and the State Board Defendants are properly subject to suit. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (explaining that a "defendant's conduct need not be the last link in the causal chain" for an injury to be traceable to that conduct); *see also Robertson*, 972 F.3d at 530; *Bailey v. Truby*, 174 W. Va. 8, 17 (1984) ("[T]he Legislature intended to permit

county board of education regulation of extracurricular activities subject to the general supervision of the State Board of Education").[4]

Finally, the State Board Defendants appear to argue that they cannot be sued to enjoin enforcement of H.B. 3293 because they are not listed as potential defendants in H.B. 3293's "cause of action" provision. (Dkt. 75 at 6.)  But the "cause of action" provision in H.B. 3293 contemplates a situation in which a student claims to be "aggrieved" by the *inclusion* of a transgender girl on a girls' team and files a lawsuit against a defendant for failing to enforce H.B. 3293.  *See* W. Va. Code § 18-2-25d(d)(1).  That provision has nothing to do with which state actors can be sued to *stop* H.B. 3293 from being enforced due to its unlawfulness.

## B.     B.P.J.'s Claims Against The State Board Defendants Are Ripe.

The ripeness argument made by the State Board Defendants likewise fails.  (Dkt. 75 at 8–9.)  To start, the constitutional component of the ripeness inquiry is coextensive with the injury-in-fact prong of standing analysis.  *See Duke Power Co. v. Carolina Env't. Study Grp., Inc.*, 438 U.S. 59, 81 (1978); *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).  Because B.P.J. has adequately pled that she will be immediately injured by H.B. 3293 should it go into effect and thus has adequately pled an injury-in-fact, her claims are constitutionally ripe for review.

---

[4] The effort by the State Board Defendants to disclaim any causal connection to B.P.J.'s injuries by analogizing to the State Board's "2.0 Rule" requiring student-athletes to maintain a 2.0 grade point average to play likewise fails.  (Dkt. 75 at 6–7.)  Even though the State Board does not have an enumerated role in monitoring or enforcing the 2.0 Rule, the State Board's issuance of that rule is a necessary "link in the causal chain" of any student barred from interscholastic athletics for failing to maintain a 2.0 average.  *Air Evac EMS*, 910 F.3d at 760.  To Plaintiff's knowledge, no court has ever held that an action against the State Board challenging the 2.0 Rule would fail for lack of traceability.  And in fact, the State Board acknowledged its causal relationship with the 2.0 Rule in its briefing in *Jones*, a case that discussed the 2.0 Rule in the course of assessing the legality of excluding homeschooled children from interscholastic athletics.  *See Jones*, 174 W. Va. 8 (1984), Br. of Appellees at 13, 2004 WL 3262491 (Aug. 9, 2004) (explaining that the requirement that "a student must maintain a 2.0 grade point average in order to be eligible for sports" is "[p]ursuant to the West Virginia Board of Education Policy 2436.10").

B.P.J.'s claims are also prudentially ripe for review.  Prudential ripeness depends on (i) "the fitness of the issues for judicial decision" and (ii) "the hardship to the parties of withholding court consideration." *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002) (internal quotation marks and citations omitted).  "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319 (internal citations omitted).  "The hardship prong is measured by the immediacy of the threat and the burden imposed on the petitioners . . . under threat of enforcement of the challenged law." *Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 208–09 (4th Cir. 1992).

B.P.J.'s claims against the State Board are fit for review under this standard.  H.B. 3293's legality involves a "pure[] legal question." *Miller*, 462 F.3d at 319.  There also is no uncertainty as to whether the State Board will issue rules implementing H.B. 3293; its duty to do so is mandatory under the law.  *See, e.g.*, *Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 34 (D.D.C. 2019), *rev'd on other grounds & remanded sub nom. Make the Rd. N.Y. v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020) ("It is well established that, with respect to Article III standing, 'threatened' agency action in the form of an announced policy change must be taken just as seriously as already-completed injury.") (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014)).  And critically, as this Court has already found, "B.P.J. has demonstrated that she will be irreparably harmed if this law were to take full effect."  (Dkt. 67 at 13.)  Not only is there no legal basis to withhold decision in this matter, but doing so would inflict unnecessary and irreparable harm on an 11-year-old girl.

## II.  **B.P.J. Has Adequately Pled Title IX And Equal Protection Claims Against The Defendants Named In Each Claim.**

Each moving Defendant argues that B.P.J. has failed to state a claim for relief pursuant to Rule 12(b)(6).  When considering a motion to dismiss for failure to state a claim under Rule

12(b)(6), this Court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw all reasonable factual inferences from those facts in the plaintiff's favor." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (internal citations omitted).   A complaint should be dismissed under Rule 12(b)(6) only when "it appears certain that the plaintiff cannot prove any set of facts in support of h[er] claim entitling h[er] to relief." *Id.*   Defendants' arguments under Rule 12(b)(6) for dismissal fail:  B.P.J. has adequately pled Title IX and Equal Protection Claims against H.B. 3293 with respect to the Defendants named in each claim.

A.   **B.P.J.'s Title IX Claim Is Properly Pled Against All Named Defendants.**

B.P.J. brings her Title IX challenge to H.B. 3293 against the State (which has answered and is not moving to dismiss), the State Board, the County Board, and the School Activities Commission.[5]  (Dkt. 64 ¶¶ 88–99.)  To prevail on this claim, B.P.J. must establish (1) that she was excluded from participation in an education program offered by an educational institution that received federal financial assistance; (2) that the discrimination occurred "on the basis of sex"; and (3) that the discrimination caused her harm.  *See Grimm*, 972 F.3d at 616 (citing *Preston v. Com. of Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994)).  B.P.J.'s Complaint adequately alleges each of these elements against each named Defendant.  (Dkt. 64 ¶¶ 88–99.)

Notably, only the County Defendants seek dismissal on the merits of the Title IX claim, and these arguments necessarily fail based on the Court's preliminary injunction order, which recognized the likely success of B.P.J.'s claims.  Instead, the moving Defendants largely focus their dismissal arguments on claims that they are improper defendants to B.P.J.'s Title IX claims.

---

[5] The County Defendants' arguments that B.P.J.'s Title IX and Equal Protection claims fail on the merits recycle their arguments in opposition to B.P.J.'s preliminary injunction motion, but without noting this Court's holding that B.P.J. is likely to succeed on her claims or responding to this Court's reasoning as to why B.P.J. is likely to succeed.  (Dkt. 73 at 15–20.)  For the same reasons that B.P.J. is likely to succeed on the merits of her claims, she has properly stated both Title IX and Equal Protection claims on the merits.

This collective effort to disclaim liability under Title IX fails as to each Defendant.

        1.        <u>B.P.J. Has Properly Stated A Title IX Claim Against The State Board.</u>

The State Board repackages its standing argument to assert that B.P.J. has failed to state a Title IX claim against it.  The State Board's reframing of its Rule 12(b)(1) argument fares no better when presented as a 12(b)(6) issue and should be rejected.

The State Board claims that B.P.J. has failed to state a Title IX claim against it because it has not and will not "rely upon its own notions of what 'sex' means with respect to [B.P.J.] in this action."  (Dkt. 75 at 11.)  Seeking to further distance itself from the discrimination required by H.B. 3293, the State Board states that it will not enforce H.B. 3293 against B.P.J. and that it has not engaged in any intentional wrongdoing or deliberate indifference with respect to B.P.J.  (*Id.*)  But whether the State Board supports discrimination against girls who are transgender or otherwise agrees with the law's "notions of what 'sex' means" is beside the point.  What matters for purposes of B.P.J.'s Title IX claim is whether the State Board has a role in implementing H.B. 3293's discrimination against B.P.J., and, as explained above, it plainly does.  *See supra* I(A).

Specifically, by law the State Board supervises the public-school system (a recipient of federal financial assistance) and is responsible for implementing education policies and programs in West Virginia, including H.B. 3293.  *See* W. Va. Const. art. XII, § 2; W. Va. Code § 18-2-25; *Jones*, 218 W. Va. at 61.  Moreover, as explained *supra* at 5, the State Board has "ultimate control" over the County Board and the School Activities Commission, and there is no question that these entities will play an enforcement role if H.B. 3293 is not enjoined.  *Lambert*, 191 W. Va. at 709.  As the entity with "ultimate control" over the supervision and enforcement of H.B. 3293, the State Board is clearly a proper defendant under Title IX.  *See id*.

        2.        <u>B.P.J. Has Properly Stated A Title IX Claim Against The County Board.</u>

The County Board does not dispute that regulation and supervision of interscholastic

athletic events at the secondary school level are delegated to "county boards of education . . . subject to the West Virginia State Board of Education's duty . . . to generally supervise the schools in the state." *Jones*, 218 W. Va. at 61.  In fact, the County Board admits that it is "undisputedly compelled to comply" with H.B. 3293 and that its role in enforcing the law is "mandatory, not merely optional." (Dkt. 73 at 6; *see also id.* at 2 (admitting that "it is tasked with enforcing [H.B. 3293] to the extent that it goes into effect")).

Nonetheless, seeking to distance itself from H.B. 3293's discrimination, the County Board argues that it did not play a part in passing H.B. 3293. (*Id.* at 2, 15.)  But whether the County Board participated in the enactment of H.B. 3293 is of no consequence for purposes of B.P.J.'s Title IX claim against the County Board.  Rather, the question is whether the County Board will knowingly subject B.P.J to discrimination on the basis of sex as a result of its role in enforcing H.B. 3293.  It will, and the County Board therefore is properly named.

The County Board argues that the discrimination will occur due to a State policy and not a municipal policy, relying on inapposite cases involving whether a municipality can be held liable for enforcing a state law under *Monell v. Dep't of Soc. Servs*, 436 U.S. 658 (1978). (*See* Dkt. 73 at 7 (citing *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998)).) But unlike *Monell*, Title IX merely requires intentional discrimination by a school administrator, not a municipal policy or custom.  "For example, a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference.  A plaintiff stating a similar claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009) (citations omitted).  "Defendants'

application of the *Monell* 'policy or custom' standard to Title IX claims is incorrect and not supported by the case law." *Condiff v. Hart Cnty. Sch. Dist.*, 770 F. Supp. 2d 876, 881 n.3 (W.D. Ky. 2011).

The County Board's citation to *Baynard v. Malone*, 268 F.3d 228, 238 (4th Cir. 2001), is not to the contrary.  (Dkt. 73 at 6.)  Because *Baynard* involved unlawful harassment by a teacher— not a school administrator—the school board in that case could be held liable only if a school board official had actual knowledge that the unlawful harassment was occurring.  *See Baynard*, 268 F.3d at 238 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)).  The school board in *Baynard* escaped liability because no supervisory official had "actual notice" of the discrimination—not because a state policy was at issue.  268 F.3d at 238.  Without "actual notice," the municipality could not "knowingly" discriminate in violation of Title IX.  *Id.*  Here, by contrast, it is indisputable that the County Board has "actual notice" of H.B. 3293 and its application to and effect on B.P.J., and as soon as its "mandatory" role of enforcing the law is triggered it will "knowingly" discriminate against B.P.J.  *Baynard* thus offers the County Board no refuge from liability.

Next, the County Board and Superintendent Stutler argue that they are not proper defendants to the Title IX and Equal Protection Clause claims, respectively, because they can only provide B.P.J. relief locally, as opposed to statewide.  (Dkt. 73 at 7.)  This argument downplays that B.P.J. resides in Harrison County and attends middle school there, thus making "local" relief quite necessary and significant.  In any case, it is well-established that a defendant is a proper party even if it can only provide partial relief.  *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when [s]he shows that a favorable decision will relieve a discrete injury to [her]self.  [S]he need not show that a favorable decision will relieve

11

[her] *every* injury"). B.P.J. has shown that enjoining the County Defendants from enforcing H.B. 3293 will relieve a "discrete injury" to her by allowing her to participate on sports teams at Bridgeport Middle School. No further showing of redressability is necessary.

Finally, the County Board and Superintendent Stutler argue that they are not proper defendants because, thanks to this Court's preliminary injunction, they are not currently enforcing H.B. 3293 against B.P.J. and so cannot be responsible for any injury to her. (Dkt. 73 at 7–8.) That argument, however, would turn every preliminary injunction into a pyrrhic victory, for defendants could always use the existence of an injunction to disclaim any responsibility for future injury. Appropriately, that is not the law: "Compliance with the provisions of a preliminary injunction . . . does not render moot [a plaintiff's] underlying claims" because "[i]f the injunction is dissolved without a decision on the merits, there is nothing to keep defendants from resuming the activity that had been restrained by the preliminary injunction." *LaPeer Cnty. Med. Care Facility v. State of Mich.*, No. 1:91–CV–333, 1992 WL 220917, at *7 (W.D. Mich. Feb. 4, 1992); *cf. Vitek v. Jones*, 445 U.S. 480, 487 (1980) (explaining that abating challenged activity pursuant to court order does not moot a plaintiff's claims unless it is "absolutely clear, absent the injunction, that the allegedly wrongful behavior could not reasonably be expected to recur") (internal quotation marks omitted); *N.C. State Conf. of NAACP v. N.C. State Bd. of Elections*, 283 F. Supp. 3d 393, 406 n.12 (M.D.N.C. 2017) ("Mootness addresses whether the claims remain live—not whether preliminary injunctive relief has been satisfied, complied with, or violated").

        3.        <u>B.P.J. Has Properly Stated A Title IX Claim Against The School Activities Commission.</u>

Finally, the School Activities Commission seeks dismissal of B.P.J.'s Title IX claim, joining the chorus of Defendants claiming "no role associated with the law created by H.B. 3293."

(Dkt. 71 at 11.)   The School Activities Commission's bold assertion of non-involvement is unfounded and must be rejected.

In West Virginia, the School Activities Commission is authorized to control, supervise, and regulate interscholastic athletic events alongside county boards.  W. Va. Code § 18-2-25; *Jones*, 218 W. Va. at 61.[6]  Consistent with that authority, the School Activities Commission's Rules and Regulation Handbook lists B.P.J.'s school, Bridgeport Middle School, as a "Member," meaning that Bridgeport Middle School has agreed to "delegate the control, supervision, and regulation of the interscholastic athletic . . . activities" to the Commission, and adhere to the Commission's policies and procedures governing interscholastic athletics.[7]  Accordingly, the School Activities Commission plays a role in B.P.J.'s eligibility to participate on the girls' sports team at Bridgeport Middle School.[8]  (*See also* Dkt. 71 at 9 (stating that the School Activities Commission will maintain the student-athlete rosters for the cross-country and track teams).)

The School Activities Commission does not dispute that it is the entity entrusted with "controlling authority" over Bridgeport Middle School's athletics program.  (Dkt. 71 at 2.)  That role alone ensures that the School Activities Commission is a proper defendant to B.P.J.'s Title IX claim.  *See Alston v. Va. High Sch. League, Inc.*, 144 F. Supp. 2d 526, 533 (W.D. Va. 1999) (holding that an association is brought "into the scope of Title IX" when member schools cede to it the authority to regulate interscholastic athletics); *see also Communities for Equity v. Mich. High Sch. Athletic Ass'n*, 80 F. Supp. 2d 729, 735 (W.D. Mich. 2000) (holding that "any entity that

_____

[6]  *See also Rules and Regulations Handbook* ("Handbook") at 1, WVSSAC, https://www.wvssac.org/rules-and-regulations/.

[7]  Handbook, at V, 2.

[8]  The School Activities Commission's website directs the "Athletic Director or Principal" of a governed school to inquire with WVSSAC regarding any particular student's eligibility to participate in interscholastic athletics.   https://www.wvssac.org/ (explaining "Procedure for Obtaining Answers to Eligibility Questions") (last visited Aug. 12, 2021).

exercises controlling authority over a federally funded program is subject to Title IX, regardless of whether that entity is itself a recipient of federal aid").

Instead of contesting its authority over interscholastic athletics, including at B.P.J.'s school, the School Activities Commission repeatedly emphasizes the fruitless point that its current policies and regulations—which predated H.B. 3293—are "gender/transgender neutral" and so not "the impediment nor the means to the relief Plaintiff seeks." (Dkt. 71 at 11; *see also id.* at 2, 5, 6.) Notably, that the School Activities Commission has, to date, operated without drawing such distinctions only underscores the unfounded and unjustified nature of H.B. 3293's new directive to discriminate. But the point here is that H.B. 3293 has *changed* state law, which the School Activities Commission is now bound to follow. Because the School Activities Commission will have a role in implementing H.B. 3293 against B.P.J.—as it must concede[9]—it is a proper Defendant for her Title IX claim.[10]

\* \* \*

Title IX prohibits sex discrimination in federally funded programs. The State Board, County Board, and School Activities Commission each have a direct and non-delegable duty to control, supervise, regulate, and/or enforce rules related to interscholastic athletic events in West Virginia. They each play a critical part in determining and enforcing whether B.P.J. is eligible to

---

[9] (*See, e.g.*, Dkt. 71 at 2 "[A]ny modification in the WVSSAC system would be occasioned by outcome [here]."; *id.* at 10 "any involvement WVSSAC would have relative to B.P.J.'s running on the girls' cross-country team would arise after West Virginia law on this issue has been finalized"; *id.* at 10 "The involvement WVSSAC would have, if any, is derivative of the outcome here".)

[10] That H.B. 3293 does not provide for a cause of action for "aggrieved" students against the School Activities Commission (Dkt. 71 at 6) is beside the point, just as with respect to the State Board's traceability argument. *See supra* at 6. The question for purposes of B.P.J.'s Title IX claim is whether the School Activities Commission has a role in implementing H.B. 3293 against her, which it clearly does.

participate on girls' sports teams in West Virginia.  They thus are each proper Defendants for purposes of B.P.J.'s Title IX claim, and their motions to dismiss should be denied.

**B.    B.P.J.'s Equal Protection Claim Is Properly Pled Against All Named Defendants.**

B.P.J. brings her Equal Protection claim, pursuant to 42 U.S.C. § 1983, against the School Activities Commission, Superintendent Burch in his official capacity, and Superintendent Stutler in her official capacity.  (Dkt. 64, ¶¶ 100–10.)  To prevail on this claim, which this Court has held she is likely to do, B.P.J. must establish that each named Defendant is a governmental actor, acting under color of state law, who will discriminate against her on the basis of her transgender status and/or sex.  *See Grimm*, 972 F.3d at 607.

B.P.J.'s Complaint expressly alleges each of these elements.  (Dkt. 64, ¶¶ 100–10.)  And Defendants do not contest they are governmental actors, nor (with the exception of the County Defendants) argue that B.P.J. has failed to state an Equal Protection Clause claim on the merits. Instead, as with B.P.J.'s Title IX claim, the moving Defendants all seek to evade their enforcement role and argue that they should be dismissed as improper defendants.  Those arguments all fail for the same reasons that the nearly identical Title IX arguments fail.

**1.    B.P.J. Has Properly Stated An Equal Protection Claim Against Superintendent Burch.**

B.P.J. has adequately pled an equal protection claim against Superintendent Burch.  Under *Ex parte Young*, B.P.J. can seek injunctive relief against state officials who violate federal law. 209 U.S. 123, 161 (1908).  Superintendent Burch oversees all public schools, county superintendents, and county boards of education in West Virginia, W. Va. Code § 18-3-3, and so necessarily has a role in "enforcing or administering" H.B. 3293.  *McGee v. Cole*, 115 Supp. 3d 765, 772 (S.D. W.Va. 2015) (explaining that state and local officials responsible for enforcing or administering state law may be sued under the doctrine of *Ex parte Young*).  Moreover, he is

responsible for, and has "ultimate control" over, the County Board, which will enforce H.B. 3293 against B.P.J. if the law is not permanently enjoined. *Lambert*, 191 W. Va. at 709. That "ultimate control" ensures that Superintendent Burch is properly joined as a defendant to this suit.

Despite his argument to the contrary, the claim against Superintendent Burch is not "duplicative" of the claim against the State Board. (Dkt. 75 at 9–10.) The Title IX claim is brought solely against the State Board, not Superintendent Burch. And the equal protection claim is brought solely against Superintendent Burch in his official capacity, not the State Board. There is no duplication.

The equal protection claim is brought solely against Superintendent Burch in his official capacity because the State Board—which is an arm of the state and vested with sovereign immunity—"is not a person within the meaning of [42 U.S.C.] § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). By contrast, Superintendent Burch, when sued in his official capacity for injunctive relief, is considered "a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985)).[11]

In the inapposite cases cited by the Superintendent Burch, the official-capacity claims were "duplicative" because the plaintiffs in those cases sued political subdivisions or municipalities, which—unlike the Board—are not arms of the State and have no sovereign immunity from suit

---

[11] State Defendants offer a grossly inaccurate description of *Will* by quoting a sentence from the opinion explaining why a claim for damages cannot be brought against a state official in their official capacity. Such claims are precluded by sovereign immunity because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. But, as explained in the footnote immediately following those sentences, "official-capacity actions for *prospective* relief are *not* treated as actions against the State." *Id.* at 71 n.10 (quoting *Kentucky*, 473 U.S. at 167, n.14) (emphasis added).

and therefore are "persons" under section 1983.  *Monell*, 436 U.S. at 690; *accord Will*, 491 U.S. at 70 ("[O]ur holding here does not cast any doubt on *Monell*, and applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes."). The Supreme Court explained in *Kentucky v. Graham* that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief."  473 U.S. at 167, n.14.  By contrast, "implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are *not* treated as actions against the State."  *Id.* (emphasis added).

The official capacity claim against Superintendent Burch is essential.  Because the State Board is an arm of the state—not a municipality—the only way it can be enjoined from violating B.P.J.'s constitutional rights is by suing Superintendent Burch in his official capacity.[12]

### 2.   B.P.J. Has Properly Stated An Equal Protection Claim Against Superintendent Stutler.

There is no dispute that Superintendent Stutler, acting in her official capacity, will implement and enforce H.B. 3293.  As the Chief Executive Officer of the Harrison County Board of Education, Superintendent Stutler is responsible for executing educational policies, including those concerning interscholastic athletics, under the direction of the State and County Boards of Education.  W. Va. Code § 18-4-10; (Dkt. 64 ¶ 10).

Superintendent Stutler nonetheless argues that because she is a county official who has no choice but to comply with a state law, B.P.J. cannot bring suit against her for an Equal Protection Clause violation.  (Dkt. 73 at 8–9.)  To advance that argument, Superintendent Stutler relies solely

---

[12] Unlike the constitutional claims, the Title IX claims can be brought directly against the State Board because acceptance of state funds waives a state entity's sovereign immunity for suit under Title IX.  *Litman v. George Mason Univ.*, 186 F.3d 544, 555 (4th Cir. 1999).

on *Monell* and cases discussing its application.  (*Id.* at 8–11.)  But Superintendent Stutler ignores that although she is a local government official under *Monell*, she is also considered a *state official* for purposes of *Ex parte Young* when she enforces state law.  As Chief Judge Chambers explained in *McGee v. Cole*, "local and county officials may be considered state officials for purposes of an *Ex parte Young* suit where they are responsible for enforcing or administering state law rather than local or county policies."  115 F. Supp. 3d at 773.  Superintendent Stutler admits that she will be "tasked with enforcing the Act [when or if] it goes into effect."  (Dkt. 73 at 2, 7.)  In other words, H.B. 3293 requires her to discriminate against B.P.J.  (Dkt. 67 at 6–11.)  She therefore is a proper defendant for purposes of enjoining H.B. 3293.  *See Bostic v. Schaefer*, 760 F.3d 352, 371 n.3 (4th Cir. 2014) (noting that municipal court clerk could be enjoined from enforcing unconstitutional state law under *Ex parte Young* when he merely had "some connection with the enforcement of the act").  Whether Superintendent Stutler could *also* be liable under *Monell* is presently beside the point.[13]

> 3.    B.P.J. Has Stated An Equal Protection Claim Against The School Activities Commission.

The School Activities Commission is a state actor under the Fourteenth Amendment.  *See Israel by Israel v. W. Va. Secondary Sch. Activities Comm'n*, 182 W. Va. 454, 458 n.4 (1989) ("Every court that has considered the question whether associations like the [Secondary School Activities Commission] are state actors have found that these organizations are so intertwined with the state that their acts constitute state action."); *accord Jones*, 218 W. Va. at 58 (concluding that, in suit against School Activities Commission, "there is no question that the equal protection claim

---

[13] Superintendent Stutler also contends that if she does enforce H.B. 3293, she will be acting as a State official rather than as a County official and so any award assessed against her is the responsibility of the State, not the Harrison County Board of Education.  (Dkt. 73 at 12.)  Which defendant will be responsible for any award ultimately assessed against Superintendent Stutler is not a question for the motion to dismiss stage.

involves state action"); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (determining that a state interscholastic athletic association's actions qualify as "state action" under the Fourteenth Amendment).

For the same reasons stated above in relation to her Title IX claim, B.P.J. has adequately pled an equal protection claim against the School Activities Commission.  Namely, the School Activities Commission has controlling authority over Bridgeport Middle School's athletic program, will determine and enforce B.P.J.'s eligibility to play on girls' sports teams, and so will play a role in implementing H.B. 3293 if the law is not enjoined.  *See supra*, at II(A)(3).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.

19

Dated: August 13, 2021

Respectfully submitted,

*/s/ Loree Stark*

Joshua Block*
Taylor Brown*
Chase Strangio*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: (214) 219-8585
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30
Phone: (404) 897-1880
ccharles@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO  80202-5686
Phone: (720) 566-4000
abarr@cooley.com

Loree Stark (Bar No. 12936)
AMERICAN CIVIL LIBERTIES UNION OF WEST
VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
lstark@acluwv.org

Kathleen Hartnett*
Julie Veroff*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com

Katelyn Kang*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

*Visiting Attorneys*

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J., by her next friend and mother, HEATHER
JACKSON,

*Plaintiff*,

v.

WEST VIRGINIA STATE BOARD OF
EDUCATION, HARRISON COUNTY BOARD
OF EDUCATION, WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION, W. CLAYTON BURCH in his
official capacity as State Superintendent, DORA
STUTLER in her official capacity as Harrison
County Superintendent, PATRICK MORRISEY in
his official capacity as Attorney General, and THE
STATE OF WEST VIRGINIA,

*Defendants*.

Civil Action No. 2:21-cv-00316

Hon. Joseph R. Goodwin

## CERTIFICATE OF SERVICE

I, Loree Stark, do hereby certify that on this 13th day of August, 2021, I electronically filed a true

and exact copy of ***Memorandum in Opposition to Defendants' Motion to Dismiss First Amended***

***Complaint*** with the Clerk of Court and all parties using the CM/DKT. System.


*/s/ Loree Stark*
West Virginia Bar No. 12936

21