IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J., by her next friend and mother,
HEATHER JACKSON,
    Plaintiff,

v.                                  Civil Action No. 2:21-cv-00316
                                  Honorable Joseph R. Goodwin, Judge

WEST VIRGINIA STATE BOARD OF EDUCATION,
HARRISON COUNTY BOARD OF EDUCATION,
WEST VIRGINIA SECONDARY SCHOOL
ACTIVITIES COMMISION, W. CLAYTON BURCH
in his official capacity as State Superintendent, and
DORA STUTLER in her official capacity as
Harrison County Superintendent, PATRICK MORRISEY
In his official capacity as Attorney General, and THE
STATE OF WEST VIRGINIA,
    Defendants.

**WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION'S
REPLY IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Now comes West Virginia Secondary School Activities Commission (WVSSAC), by counsel, Roberta F. Green, Anthony E. Nortz, Kimberly M. Bandy and Shuman McCuskey Slicer PLLC, and replies to Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (DKTS. 70, 72 and 74) (Consolidated Response), as follows.

As an initial and fundamental fact, it is clear on the record that WVSSAC has not caused harm to B.P.J. There are absolutely no grounds for Plaintiff to recover damages or attorney's fees from WVSSAC because WVSSAC did not cause enactment of the law that she claims to be the source of potential harm to her, and WVSSAC has done nothing to enforce that law against B.P.J. Plaintiff identifies no enforcement action that WVSSAC has taken or is slated to take relative to H.B. 3293. As an unavoidable consequence, then, Plaintiff's Consolidated Response does not and

cannot change the fact that, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, dismissal as a matter of law is the necessary and proper resolution for WVSSAC at this time because Plaintiff's First Amended Complaint fails to state a claim against WVSSAC upon which relief can be granted.[1] In the Consolidated Response, Plaintiff supports her Title IX claim as against WVSSAC by relying upon the Commission's enabling statute, West Virginia Code Section 18-2-25, which Plaintiff glosses as "authoriz[ing WVSSAC] to control, supervise, and regulate interscholastic athletic events alongside county boards."[2] However, previously before this Court, several parties including the Plaintiff have cited and relied upon the precise regulations at issue here – the middle school cross-country and track regulations – which even Plaintiff has conceded are neutral. Given that the Court has determined that Plaintiff's claim is exceedingly narrow, given that the rules of statutory construction provide that specific regulations trump a general statute, given Plaintiff's admissions against interest, and given the demonstrated fact of the regulations themselves as they pertain to this Plaintiff, the inescapable fact and law of this litigation is that the WVSSAC regulations at issue are gender and therefore transgender neutral, such that Plaintiff's Title IX claims find no purchase here.

Plaintiff further alleges that West Virginia law has changed and that, by necessity, WVSSAC's regulations must change. However, given the narrow scope of Plaintiff's claim and the neutrality of the middle school cross-country and track regulations, Plaintiff is participating now under the existing regulations without impediment, without any recent or mandated particularization to her circumstances. Once again, given the narrow scope of Plaintiff's claim and the neutrality of WVSSAC's regulations, Plaintiff can and is participating fully under the

---

[1] *See, e.g.*, *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 570 (2007).
[2] Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (Dkts. 70, 72, and 74) (Consolidated Response) at 13, ECF No. 80.

regulations as they existed before and during this litigation. Once again, it remains uncontested that WVSSAC was dropped from an earlier draft of the legislation and that WVSSAC appears nowhere in the statute as enrolled and signed into law.

Further, Plaintiff alleges without proving that WVSSAC is a federally funded program[3] and further alleges that WVSSAC is properly a party for her Equal Protection Claim because WVSSAC is a state actor. Plaintiff asserts that WVSSAC, first, has been adjudged to be a state actor in *Israel v. West Virginia Secondary Schools Activities Commission,* 182 W. Va. 454, 388 S.E.2d 480 (1989),[4] and *Jones v. West Virginia State Board of Educ. et al.,* 218 W. Va. 52, 622 S.E.2d 289 (2005).[5] However, neither *Israel* nor *Jones* specifically addresses the issue of whether WVSSAC is a state actor for purposes of Equal Protection claims or otherwise. The *Jones* Court considers whether the *plaintiff's claims* sound in Equal Protection so as to mandate a finding of 'state action or actor,'[6] and the *Israel* Court cites organizations in other jurisdictions without ever undertaking any analysis whatsoever of WVSSAC under the 'state actor' rubric.[7] It would be an overstatement to assert that the West Virginia Supreme Court has considered and decided these issues.

Whereas Plaintiff addresses all defendants collectively, consolidating not only her Response but her arguments, WVSSAC is differently situated in terms of its lack of a role under the statute, its neutral regulations that need not change and have not changed in order to allow Plaintiff to participate fully, and in terms of its funding, which has never been the subject of discovery and which does not include federal funds.

---

[3] Consolidated Response at 14.
[4] Consolidated Response at 18.
[5] Consolidated Response at 18.
[6] *Jones,* 218 W. Va. at 57, 622 S.E.2d at 294.
[7] *Israel,* 182 W. Va. at 458 n.4, 388 S.E.2d at 484 n.4.

Dismissal is the necessary and proper resolution at this time. Once again, Plaintiff identifies no enforcement action that WVSSAC has taken or is slated to take relative to H.B. 3293. Plaintiff still attempts to sidestep her admissions against interest that WVSSAC's regulations and forms are gender and therefore transgender neutral, which she cited in reliance on the precise regulations and forms as placed before this Court. Plaintiff ignores the basic rules of statutory construction in relying on the broad statement of possible authority rather than the Commission's precise, particularized regulations that apply to Plaintiff here. And Plaintiff assumes without providing a scintilla of proof that WVSSAC is federally funded and a state actor, none of which has been addressed, let alone proven, before this Court or, on information and belief, any other.

To reiterate and thereby emphasize, it is clear on the record that WVSSAC has not caused any harm to B.P.J. There are absolutely no grounds for Plaintiff to recover damages or attorney's fees from WVSSAC because WVSSAC did not cause enactment of the law that she claims to be the source of potential harm to her, and WVSSAC has done nothing to enforce that law against B.P.J. Additionally, Plaintiff's amended claims against WVSSAC should be dismissed because there is no potential remedy as against WVSSAC that would result in the relief Plaintiff seeks. WVSSAC's regulations are identified by Plaintiff as neutral and are not challenged by her. WVSSAC stands outside these determinations as a matter of law and fact, such that dismissal as a matter of law is the necessary and proper resolution at this time.[8]

In further support of its Motion to Dismiss, WVSSAC asserts as follows.

### I. Plaintiff has failed to plead viable claims as against WVSSAC.

Pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6), Plaintiff has failed to raise a claim for relief that would be available as against this defendant, such that dismissal is the

---

[8] WVSSAC does not waive any other factual or legal defenses to the First Amended Complaint.

necessary and proper outcome at this time. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, (citing *Twombly,* 550 U.S. at 556). The Consolidated Response fails to raise more than unsupported allegations, the sheer possibility that a defendant has acted unlawfully and more than allegations that are merely consistent with liability. *Id.*, (citing *Twombly,* 550 U.S. at 557). Specifically, Plaintiff sidesteps the regulations she once espoused as neutral in favor of the broad statutory language, seeking refuge in derogation of the rules of statutory construction. Plaintiff makes an unsupported allegation that WVSSAC is federally funded without providing this Court with the first evidence of same. Plaintiff asserts that WVSSAC is a state actor and further asserts that the issue has been raised and decided by the West Virginia Supreme Court of Appeals – which is inaccurate as a matter of law and fact. Once again, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

The fact and law here mandate dismissal of WVSSAC at this time.

### A. Plaintiff recognizes WVSSAC's regulations as neutral and is participating under them now, without intervention or amendment.

Plaintiff's Complaint and motions practice to date have sought narrow relief, focusing on the impact of West Virginia law on this Plaintiff. Specifically, Plaintiff's Prayer for Relief is cast in terms of Plaintiff's experience and remedy, and the "[t]he motion for a preliminary injunction that accompanies her complaint seeks relief only insofar as this law applies to her."[9] In attempting

---

[9] Compl. (ECF No. 1). *See also* Memorandum Opinion and Order (Dkt. 67) at 4.

to include WVSSAC as a Defendant in this action and to sidestep her admissions against interest as to the neutrality of WVSSAC's regulations, Plaintiff in her Consolidated Response focuses solely on WVSSAC's enabling statute.[10] Plaintiff does not dispute that WVSSAC is not cited in H.B. 3293, nor does Plaintiff dispute that the rules of statutory construction provide that, in this instance, WVSSAC's exclusion from the enrolled legislation is meaningful, that the Legislature is presumed to have included or excluded knowingly.[11] Plaintiff does not attempt to refute her admission in her First Amended Complaint that the Legislature specifically removed language from H.B. 3293 that would have required WVSSAC to participate in determinations made in accordance with the law[12] nor does Plaintiff do more than toss off the pronouncement that her reading of H.B. 3293 is that it includes a "new directive [presumably, to WVSSAC] to discriminate." Plaintiff states without appellation that the Commission will have a role in implementing H.B. 3293, which role Plaintiff also presumes without proving will be discriminatory. On all of these points, Plaintiff overlooks that the WVSSAC regulations under which Plaintiff is now participating have been neutral and inclusive at all times and required no engineering or adjustment to allow for Plaintiff's participation, whether with or without the injunction in place. Once again, as relates to cross-country and track, all WVSSAC regulations are uniform across the board in providing one set of regulations for boys and girls.[13] Further, Heather

---

[10] Consolidated Response at 13, citing W. Va. Code § 18-2-25.

[11] West Virginia's Code Chapter 18 elsewhere cites WVSSAC, but WVSSAC is expressly excluded in W. Va. Code § 18-2-25d(e). "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23 (1983).

[12] *See, e.g.,* Am. Compl. at ¶ 50.

[13] Of note, Plaintiff does not challenge sex-separated teams. *See* Mem. in Supp. of Pl.'s Mot. Prelim. Inj., ECF 19, at 11 [hereinafter Mem.] at 16. *See also* WVSSAC Track Coaches Packet (appended to West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 47-1) at Exhibit A:

Jackson admits that "verification of 'reproductive biology and genetics' is not part of the routine sports physical exam required by Defendant WVSSAC."[14] WVSSAC's physical examination

---

**§127-3-22. Cross Country (Boys and Girls).**
22.1. Rules: Cross country rules published by the National Federation of State High School Associations are the official rules for all interscholastic competition unless otherwise provided by Commission modification.
22.2. Organized team practice will begin on Monday Week 5 and first meet may be held on Saturday of Week 7.
22.3. Length of Season: The cross country season will end for each team or individual at tournament elimination.
22.4. Maximum Team Contests: A cross country team will be permitted 16 meets exclusive of regional and state contests.
22.5. Scrimmages: Two cross country scrimmages with another high school may be conducted. See Glossary.
22.6. Individual students of a team must have practiced on 14 SEPARATE days, exclusive of the day of a contest, before participating in an interscholastic contest.
22.7. A student may accept awards in WVSSAC sanctioned events and non sanctioned events during the entire year. These awards must be consistent with the items specified in the Awards Rule.

**§127-3-29. Track and Field (Boys and Girls)**
29.1. Rules: Track and Field rules published by the National Federation of State High School Associations are the official rules for all interscholastic competition unless otherwise provided by Commission modification.
29.2. Organized Team Practice: Organized team practice will begin on Monday of Week 35 and the first contest may be on Wednesday of Week 37.
29.3. Length of Season: The track and field season will end for each team or individual by WVSSAC tournament elimination.
29.4. Maximum Team Contests: track and field team will be permitted 16 meets exclusive of sectional, regional, and state contests.
29.5. Participation Limitations: Maximum of 4 events per participant per meet.
29.6. Scrimmages: Not permitted
29.7. Individual students of a team must have practiced on 14 SEPARATE days, exclusive of the day of a contest, before participating in an interscholastic contest.
29.8. A student may accept awards in WVSSAC sanctioned events and non-sanctioned events during the entire year. These awards must be consistent with the items specified in the Awards Rule.
29.9. Middle School/9th Grade - The above will apply for Middle School/9th Grade with the following adaptations:
    29.9.1. Middle school/9th grade teams will be permitted 14 meets and only 2 meets per week.
    29.9.2. Middle school/9th grade season will be completed by Thursday of Week 46.
    29.9.3. Participation limitation: Middle school/9th grade students, regardless of grade levels (6, 7, 8, or 9), may compete in a maximum of four events, of which only three may be running events including relays.

[14] *See* Mem. at n.6.

form, the sole registration form WVSSAC requires from athletes for participation, is not impacted by H.B. 3293 and does not have the athletes identify themselves by gender.[15]

Where Plaintiff now embraces the broad statute and speculates what authority WVSSAC may embrace from that vantage point, the more particularized regulations remain in place without any indication that the Plaintiff's inclusion would mandate change. Where both a broad statute and more specific regulations apply, the general rules of statutory construction provide guidance, whether directly or by analogy:

> Pursuant to elementary principles of statutory construction, unless the legislature has indicated that it intends otherwise, a specific statutory provision controls a more general one. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 375, 107 L. Ed. 2d 782, 110 S. Ct. 680 (1990) ("It is an elementary tenet of statutory construction that 'where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one ….'" (*quoting Morton v. Mancari,* 417 U.S. 535, 550-51, 41 L. Ed. 2d 290, 94 S. Ct. 2474 (1974*))); see also Warren v. N.C. Dep't of Human Res.,* 65 F.3d 385, 390 (4th Cir. 1995) ("It is an elementary principle of statutory construction that a specific statutory provision controls a more general one.").[16]

Here, where Plaintiff is participating in cross-country pursuant to precise, particularized WVSSAC regulations and form, Plaintiff's reliance on the more generalized enabling statute and on suggestions and specters of what is yet to come would be improper. The elemental rules of statutory construction would not allow that upstream migration. Here, where WVSSAC's statute has produced precise and event specific regulations as recognized by Plaintiff as neutral, the Commission's reliance on its regulations would be supportable as well as a matter of law. *Chevron, USA v. NRDC, Inc.,* 104 S. Ct. 2778, 2782 (1984).

Plaintiffs' allegations as they relate to WVSSAC speak only in terms of future speculative possibilities, which are not sufficient to maintain a cause of action. Plaintiff points to no action by

---

[15] West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 47-2) at Exhibit B.
[16] *S.C. Dept. of Health & Evtl. Control v. Commerce & Indus.,* 372 F.2d 245, 258 (4th Cir. 2004).

WVSSAC that has resulted in discrimination against B.P.J., and thus no basis on which to find that an Equal Protection or Title IX violation has occurred, or that B.P.J. has been damaged by any action of WVSSAC. Though Plaintiff alleges in the First Amended Complaint that "B.P.J. is irreparably harmed by Defendants' illegal conduct" in violation of Title IX and in violation of the Equal Protection Clause,[17] she has not identified any illegal conduct on the part of WVSSAC.

Plaintiff bends statutory construction and envisions future problems and regulations to hold WVSSAC in this litigation. Plaintiff fails to raise more than unsupported allegations, the sheer possibility that WVSSAC may one day act unlawfully; Plaintiff has failed to do more than allege potential future acts that are merely consistent with liability. *Id.*, (citing *Twombly,* 550 U.S. at 557)*.* For these reasons, Plaintiff's claim as against WVSSAC must fail.

### B. WVSSAC is not a state actor so as to fall within Plaintiff's Equal Protection Claims.

All of the evidence, admissions and law before this Court at this time demonstrate that WVSSAC is differently situated. It is true, as Plaintiff asserts, that, in other instances, federal courts have considered Title IX and Fourteenth Amendment challenges brought as against what might appear to be parallel athletic associations. *See, e.g., Communities for Equity v. Michigan High School Athletic Association,* 80 F. Supp. 2d 729 (W. D. Mich. 2000) (alleging that MHSAA discriminated against female athletes based on inequities in programs including non-traditional and/or shorter seasons and different rules); *Alston v. Virginia High School League, Inc.,* 144 F. Supp.2d 526 (W. D. Va. 1999) (alleging that VHSL denied certain female public school athletes equal treatment, opportunities and benefits based on their sex in violation of Title IX[18]). Beyond those instances, the United States Court of Appeals for the Sixth Circuit considered *Yellow Springs*

---

[17] Am. Compl. at ¶¶ 99, 110.
[18] *But see Yellow Springs,* 647 F. Supp. 2d at 658, finding that any resolution by necessity involves the Fourteenth Amendment as well.

*Exempted Village School District Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651 (6th Cir. 1981) (challenging coeducational teams in contact sports as a violation of Title IX), and *Brentwood Academy v. Tennessee Secondary School Athletic Association,* 180 F.3d 758 (6th Cir. 1999), *rev'd* 531 U.S. 208 (2001), cited by the Plaintiff. Among the factors these courts considered in determining the propriety of holding the associations accountable under federal law were sources of funding and whether the associations adopted the provisions that were alleged to be violations of federal law. That is, more particularly, the courts considered whether the associations are federally funded or receive support or dues from federally funded programs and/or whether the associations further the objectives of federally funded programs. In terms of Equal Protection, the United States Supreme Court in *Brentwood* considered whether the Tennessee association was a 'state actor' given the depth with which its operations were intertwined with a single state's (Tennessee's) activities (as compared to the interstate impact of the NCAA[19]). The District Courts in both *Alston* and *Communities* (relied upon by Plaintiff) addressed Equal Protection, considering whether the athletic (as opposed to activities) associations were 'state actors,' whether they served a public function, and/or whether they had a symbiotic relationship with the State and the regulated activity.[20]

In determining whether the associations were subject to Title IX, then, the courts considered whether the source of funding was public, including flow-through funding from school dues, and/or whether the associations controlled programs or practices in the member school and/or whether the associations held functions at school facilities and/or whether the associations

---

[19] *Nat'l Collegiate Ath. Ass'n v. Tarkanian,* 109 S. Ct. 454 (1988), finding *inter alia* that NCAA "was not a state actor because it was acting under the color of its own policies rather than under the color of state law and because university did not delegate power to petitioner to take specific action against university or respondent."
[20] *See Alston,* 144 F. Supp. 2d 526, 537.

10

were involved in some manner with every school within the state (as opposed to organizations or programs across more than one state). In overview, Michigan High School Athletic Association (Michigan), Ohio High School Athletic Association (Ohio), Tennessee Secondary School Athletic Association (Tennessee) and WVSSAC are private non-profit or not-for-profit corporations, yet Ohio, Tennessee and Michigan receive some funding through member schools. Virginia High School League (Virginia) is a public, for-profit corporation that has only public schools as members and is funded by member dues.[21] Unlike Michigan, Tennessee, Ohio and Virginia,[22] however, West Virginia's SSAC receives no dues whatsoever from member schools and has not for more than a decade.[23] WVSSAC sustains itself with corporate sponsorships, advertising revenue and gate proceeds from championship meets and tournaments. Also, conversely to the Virginia High School League, WVSSAC includes parochial schools among its number, including a significant number of them at the middle school level, which schools receive no federal funds and yet who participate in WVSSAC programs.[24]

In considering the Fourteenth Amendment, the Supreme Court found in *Brentwood* that the Tennessee Association was inextricably bound and intertwined with its member schools so as to be a 'state actor.' Here, WVSSAC does not receive federal funds and does not mandate membership (nor include in its membership every public or parochial school in the state). WVSSAC's policies and regulations make no gender determinations. WVSSAC does not build or

---

[21] *Id.* at 527.
[22] *Yellow Springs,* 647 F.2d at 658 (finding that OHSAA issues regulations that reach deep into school administration, including regulating the member of school administration to handle sports finances; *Alston,* 144 F Supp. 2d at 527 (accepting dues from federally funded School); *Communities,* 80 F. Supp. 2d at 732 (noting that *the bulk* of the money is from gate receipts but that MSHAA regulates within its member School by requiring that the member School adopt the "Handbook as their own and agree to be primarily responsible for their enforcement").
[23] *See, e.g.,* Exhibit A hereto (redacted).
[24] www.wvssac.org/school-directory

challenge rosters, and, perhaps most pointedly, WVSSAC does not have a role under H.B. 3293 (nor is there a cause of action against it included there).

In *Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651 (6th Cir. 1981), the Appeals Court considered the applicability and enforcement of Title IX relative to co-educational sports, that is, whether boys and girls may play basketball on the same team. In considering whether Title IX applied to OHSAA, the Court found that

> the focus of both Title IX and the regulations is on "recipients." It is federal aid to "recipients" that will be cut off if Title IX is not complied with. "Recipients" bear ultimate responsibility for providing an equal educational opportunity. The OHSAA is not a "recipient," and does not bear the burden of non-compliance, so may not adopt a rule which limits the ability of recipients to furnish girls the same athletic opportunities it provides for boys. The OHSAA has not claimed that it attempted to frame rules with an eye to achieving the goal of universally applicable equal athletic opportunity. Thus, based on this record, we conclude that the determination as to compliance with Title IX must be made by individual School, not the OHSAA.[25]

Likewise here, pursuant to the direct language of the statute, WVSSAC will not promulgate the regulations envisioned under the statute. Plaintiff has admitted that WVSSAC is unnecessary to the relief she seeks and that the relief she seeks is unavailable through WVSSAC when she cited WVSSAC's regulations, protocols, forms as gender (and therefore transgender) neutral – certainly she has not asserted that relative to any of the other Defendants.[26]

WVSSAC does not receive federal funding, does not regulate the internal operations of member schools, and does not normally challenge team rosters. Conversely, WVSSAC opens its membership to public and parochial schools, functions outside any concept of 'state,' and operates

---

[25] *Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651, 656 (6th Cir. 1981)
[26] Of note, WVSSC is an *activities* commission, as it oversees extracurricular activities beyond traditional 'sports,' such as cheerleading.

in conjunction with regional boards, drawing officials from both West Virginia and Ohio, relying on two local boards of officials that are intrastate: Mid-Ohio Valley Local Board and the West Virginia Ohio Local Board. Further, contrary to Plaintiff's unfounded assertions under *Israel* and *Jones,* the Supreme Court of Appeals of West Virginia has expressly found that WVSSAC is not a state agency on the basis that it has been a voluntary association since 1916 (and was not created nor empowered by the Legislature); it is not funded by public moneys; and not all public or private schools in West Virginia have elected to belong.[27] Here, where WVSSAC's regulations on cross-country are not impacted or addressed in anyway by H.B. 3293, and where, in particular, as relates to cross-country and track, all WVSSAC regulations are uniform across the board in providing one set of regulations for boys and girls,[28] not even Plaintiff finds WVSSAC an obstacle to accomplishing federal objectives.

For all these reasons and those set out in WVSSAC's Motion to Dismiss, WVSSAC should not be a party to this action. Once again, Plaintiff claims as against WVSSAC rise no further than to suggest the "sheer possibility that a defendant has acted unlawfully and [even then, still fails even to raise] allegations that are . . . consistent with liability."[29] WVSSAC has not caused any harm to B.P.J. There are absolutely no grounds for Plaintiff to recover damages or attorney's fees from WVSSAC because WVSSAC did not cause enactment of the law that she claims to be the source of potential harm to her, and WVSSAC has done nothing to enforce that law against B.P.J.

---

[27] Syl. pt. 2, 3, *Mayo v. WVSSAC,* 233 W. Va. 88, 96, 872 S.E.2d 224, 232 (2008).
[28] Of note, plaintiff does not challenge sex-separated teams. *See* Memorandum at 16. *See also* note 13, above.
[29] *See* Mem., *supra* note 14, at 8 n.6, ECF No. 19; *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 557); *see also* Pl.'s Consolidated Reply in Supp. Of Mot. for Prelim. Inj. at 16, ECF No. 53 (stating that "West Virginia already had a long-standing and unchallenged policy of establishing separate school sports teams for boys and girls, as well as no law or policy categorically prohibiting girls who are transgender from playing on girls' teams."); W. Va. Code § 127-2-3.8; Statement of Interest of the United States at 6, ECF No. 42.

There is no potential remedy as against WVSSAC that would result in the relief Plaintiff seeks. WVSSAC's regulations are identified by Plaintiff as neutral and are not challenged by her. WVSSAC stands outside these determinations as a matter of law and fact, such that dismissal as a matter of law is the necessary and proper resolution at this time. Therefore, WVSSAC should be dismissed from this action due to Plaintiff's failure to state a claim upon which relief can be granted.

### IV. CONCLUSION.

Where there are no actions of WVSSAC that could lead to a finding of liability for damages or attorney's fees against WVSSAC, and no actions of WVSSAC that could provide the relief sought by the Plaintiff, WVSSAC should be dismissed as a matter of law.

**WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION,**
**By Counsel.**

*/S/ Roberta F. Green*

Roberta F. Green (WVSB #6598)
Anthony E. Nortz (WVSB #12944)
Kimberly M. Bandy (WVSB #10081)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street East, Suite 200 (25301
Charleston, WV 25339
(304) 345-1400
(304) 343-1826 FAX
rgreen@shumanlaw.com
anortz@shumanlaw.com
kbandy@shumanlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**B.P.J., by her next friend and mother,
HEATHER JACKSON,**
    **Plaintiff,**

**v.**                                              **Civil Action No. 2:21-cv-00316
Honorable Joseph R. Goodwin, Judge**

**WEST VIRGINIA STATE BOARD OF EDUCATION,
HARRISON COUNTY BOARD OF EDUCATION,
WEST VIRGINIA SECONDARY SCHOOL
ACTIVITIES COMMISION, W. CLAYTON BURCH
in his official capacity as State Superintendent, and
DORA STUTLER in her official capacity as
Harrison County Superintendent, PATRICK MORRISEY
In his official capacity as Attorney General, and THE
STATE OF WEST VIRGINIA,**
    **Defendants.**

## **CERTIFICATE OF SERVICE**

I hereby certify that I, Roberta F. Green, have this day, the 20th day of August, 2021, served a true and exact copy of ***"West Virginia Secondary School Activities Commission's Reply in Support of Motion to Dismiss Plaintiff's First Amended Complaint"*** with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Loree Stark<br>ACLU of WV FOUNDATION<br>P.O. Box 3952<br>Charleston, WV  25339-3952<br>lstark@acluwv.org | Kathleen R. Hartnett<br>Julie Veroff<br>COOLEY LLP<br>101 California St., 5th Floor<br>San Francisco, CA 94111-5800<br>khartnett@cooley.com |
| Katelyn Kang<br>COOLEY LLP<br>55 Hudson Yards<br>New York, NY 10001-2157<br>kkang@cooley.com | Elizabeth Reinhardt<br>COOLEY LLP<br>500 Boylston St., 14th Floor<br>Boston, MA  02116-3736<br>ereinhardt@cooley.com |

Andrew Barr
COOLEY LLP
1144 15th St., Suite 2300
Denver, CO 80202-5686
abarr@cooley.com

Joshua Block
Chase Strangio
ACLU FOUNDATION
125 Broad Street
New York, NY 10004
jblock@aclu.org

Sruti Swaminathan
LAMBDA LEGAL
120 Wall St., 19th Floor
New York, NY 10005
sswaminathan@lambdalegal.org

Kelly C. Morgan
BAILEY & WYANT, PLLC
500 Virginia St., East, Suite 600
Charleston, WV 25301
kmorgan@baileywyant.com

Douglas P. Buffington, II
Curtis R.A. Capehart
Jessica A. Lee
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220
Curtis.R.A.Capehart@wvago.gov

Taylor Brown
American Civil Liberties Union
125 Broad St., 18th Fl.
New York, NY 10004
tbrown@aclu.org

Avatara Smith-Carrington
LAMBDA LEGAL
3500 Oak Lawn Ave., Suite 500
Dallas, TX 75219
asmithcarrington@lambdalegal.org

Carl Charles
LAMBDA LEGAL
730 Peachtree Steet NE., Suite 640
Atlanta, GA 30308-1210
ccharles@lambdalegal.org

Susan Llewellyn Deniker
STEPTOE and JOHNSON, LLC
400 White Oaks Boulevard
Bridgeport, WV 26330
susan.deniker@steptoe-johnson.com

Tara Borelli
LAMBDA LEGAL
158 West Ponce De Leon Avenue,
Suite 105
Decatur, GA 30030

David C. Tryon
West Virginia Atty. General's Office
1900 Kanawha Blvd., E.
Bldg. 1, Rm 26E
Charleston, WV 25305
David.C.Tryon@wvago.gov

***/S/ Roberta F. Green***

Roberta F. Green, Esquire (WVSB #6598)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street E., Suite 200 (25301)
Charleston, West Virginia
Phone: (304) 345-1400; Fax: (304) 343-1826
*Counsel for Defendant WVSSAC*