IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J, by her next friend and mother,
HEATHER JACKSON

*Plaintiff,*

v.

WEST VIRGINIA STATE BOARD OF
EDUCATION, HARRISON COUNTY BOARD
OF EDUCATION, WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION, W. CLAYTON BURCH in his
official capacity as State Superintendent,
DORA STUTLER in her official capacity as
Harrison County Superintendent, PATRICK
MORRISEY in his official capacity as Attorney
General, and THE STATE OF WEST
VIRGINIA

*Defendants.*

Case No. 2:21-cv-00316

Hon. Joseph R. Goodwin

Oral Argument Requested

**PROPOSED INTERVENOR LAINEY ARMISTEAD'S
MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................iii

Introduction ......................................................................................................... 1

Facts ...................................................................................................................... 1

Argument ............................................................................................................. 3

    I.  Armistead satisfies the requirements for intervention as of right because her request is timely, her interests are directly affected by this litigation, and her arguments differ from those of the State. ......................................................... 4

        A.  Armistead's motion to intervene is timely. ................................................... 4

        B.  Armistead has a significant, protectible interest in fair and safe competition because she is a female athlete protected by the Sports Act and benefits from the equal opportunities for women safeguarded by the Act. .............................................................................................................. 6

        C.  Armistead's interest could be impaired by this litigation which threatens to invalidate the Sports Act and to undermine equal opportunity for women. ....................................................................................................... 9

        D.  The existing parties to the action do not adequately represent Armistead's interests. ...................................................................................... 10

    II.  Alternatively, this Court should grant Armistead permissive intervention because her legal position shares a common question of law and fact with this litigation. ....................................................................................................... 16

Conclusion ......................................................................................................... 17

Certificate of Service ....................................................................................... 19

# Table of Authorities

**Cases**

*Alt v. U. S. Environmental Protection Agency,*
 758 F.3d 588 (4th Cir. 2014) ........................................................................ 4

*Citizens United v. Federal Election Commission,*
 558 U.S. 310 (2010) ...................................................................................... 9

*City of New Martinsville, West Virginia v. Public Service Commission of West Virginia,*
 2012 WL 6694078 (S.D.W.Va. 2012) ........................................................... 5

*Clark, ex rel. Clark v. Arizona Interscholastic Association,*
 695 F.2d 1126 (9th Cir. 1982) ...................................................................... 6

*Cohen v. Brown University,*
 991 F.2d 888 (1st Cir. 1993) ......................................................................... 6

*D.N. v. Desantis,*
 No. 0:21-cv-61344-RKA (S.D. Fla. filed June 29, 2021) ............................. 10

*Equity In Athletics, Inc. v. Department of Education,*
 639 F.3d 91 (4th Cir. 2011) .......................................................................... 6

*Feller v. Brock,*
 802 F.2d 722 (4th Cir. 1986) ............................................................. 3, 13, 17

*Forest Hills Early Learning Center, Inc. v. Lukhard,*
 728 F.2d 230 (4th Cir. 1984) ........................................................................ 7

*Gloucester County School Board v. Grimm,*
 --S. Ct.--, 2021 WL 2637992 (2021) ........................................................... 15

*Grimm v. Gloucester County School Board,*
 972 F.3d 586 (4th Cir. 2020) ....................................................................... 15

*Grutter v. Bollinger,*
 88 F.3d 394 (6th Cir. 1999) ....................................................................... 7, 8

*Hecox v. Little,*
 479 F.Supp.3d 930 (D. Idaho 2020) .................................................. 7, 10, 13

*In re Sierra Club v. State of South Carolina,*
 945 F.2d 779 (4th Cir. 1991) ...................................................................... 13

*JLS, Inc. v. Public Service Commission of West Virginia,*
 321 F. App'x 286 (4th Cir. 2009) ................................................................ 13

*John Doe No. 1 v. Reed,*
 561 U.S. 186 (2010) ...................................................................................... 9

*Mayo v. West Virginia Secondary School Activities Commission*,
 672 S.E.2d 224 (W. Va. 2008) ................................................................................. 11

*McCormick ex rel. McCormick v. School District of Mamoreneck*,
 370 F.3d 275 (2d Cir. 2004) ............................................................................... 6, 14

*Michigan State AFL-CIO v. Miller*,
 103 F.3d 1240 (6th Cir. 1997) ................................................................................ 11

*Morgantown Energy Associates v. Public Service Commission of West Virginia*,
 2013 WL 140235 (S.D.W.Va. 2013) ........................................................................ 5

*North Carolina State Conference of NAACP v. Berger*,
 999 F.3d 915 (4th Cir. 2021) ............................................................................ 11, 16

*Northwestern National Life Insurance Co. v. Zimbro*,
 Nos. 89-2838, 89-2858, 1990 WL 86206 (4th Cir.June 14, 1990) ........................... 6

*Ohio Valley Environmental Coalition Inc. v. McCarthy*,
 313 F.R.D. 10 (S.D.W.Va. 2015) ..................................................................... 5, 6, 9

*Roberts v. Colorado State Board of Agriculture*,
 998 F.2d 824 (10th Cir.1993) ................................................................................. 14

*Soule v. Connecticut Association of Schools, Inc.*,
 2021 WL 1617206 (D.Conn. 2021) .................................................................... 7, 10

*Teague v. Bakker*,
 931 F.2d 259 (4th Cir. 1991) .................................................................................... 6

*Trbovich v. United Mine Workers*,
 404 U.S. 528 (1972) ................................................................................................ 11

*Virginia v. Westinghouse Electric Corporation*,
 542 F.2d 214 (4th Cir. 1976) .................................................................................. 11

## Statutes

W. Va. Code § 18-2-25d .............................................................................................. 8

## Other Authorities

6 Moore's Federal Practice § 24.03[4][a] (3d ed. 1997) ............................................. 11

Wright & Miller, 7C *Fed. Pract. & Proc. Civ.* § 1909 (3d ed.) ................................... 11

## Rules

Fed. R. Civ. P. 24(a)(2) ............................................................................................... 4

Fed. R. Civ. P. 24(b) ................................................................................................. 16

**Regulations**

44 Fed. Reg. 71,417–418 .................................................................................... 14

## Introduction

In May of this year, Plaintiff B.P.J. filed this lawsuit challenging West Virginia's recently enacted H.B. 3293 (the "Sports Act"), W. Va. Code § 18-2-25d, which seeks to ensure equal opportunities for women in sports. One of those women is female athlete Lainey Armistead, a college soccer athlete at West Virginia State University. Because this lawsuit seeks to undermine the Sports Act and thereby imperil her interests, Armistead asks to intervene in this litigation under Federal Rule of Civil Procedure 24, either as of right or permissively. This request should be granted for three reasons.

First, Armistead's request is timely. This matter is still in the very early stages. No discovery has occurred, and the Court issued a scheduling order two days before this filing. Second, Armistead has a significant interest in preserving equal athletic opportunities for female athletes. She currently competes in collegiate soccer at a public university and benefits from a system designed to advance athletic opportunities for women. B.P.J.'s request to limit or entirely invalidate the Sports Act directly and personally impairs Armistead's interest in fair and safe competition and puts her at risk of competing head-to-head with male athletes in competition against other teams and for playing time and positions on her own team. And third, the Defendants cannot adequately represent Armistead's interests because she puts forward different litigation goals and different legal arguments. Allowing Armistead to intervene ensures a full-throated defense of the Sports Act. This Court deserves to hear from the very parties most protected by the Sports Act, most affected by attempts to  eviscerate its protections, and most motivated to aggressively defend the law.

## Facts

Proposed intervenor Lainey Armistead is a West Virginia female athlete for

whom soccer is a passion and life-defining pursuit. *See* Ex. A, Armistead Decl. ¶ 2. Armistead kicked her first soccer ball almost as soon as she could walk, *id.* ¶ 4, and since that time has pursued the joy of athletic training and competition. She now competes in women's soccer on scholarship at West Virginia State University (WVSU) in Charleston. *Id.* ¶ 12. She is committed to ensuring that women's sports are both fair and safe, and therefore enthusiastically supports West Virgnia's Sports Act,  W. Va. Code § 18-2-25d. *Id.* ¶¶ 34-35.

As one who grew up in a house full of brothers who played soccer and a dad who coached soccer, Armistead is well-acquainted with the physical differences that give males an athletic performance advantage. *Id.* ¶¶ 3-4, 30. She has seen that males typically have greater strength, speed, and size that gives them an undeniable advantage in soccer. *Id.* ¶ 31. Soccer is a rough contact sport: concussion, knee, and ankle injuries are common among female players. *Id.* ¶ 28. Add into the mix a male who races down the field at a faster pace, kicks the ball harder, and slams into other players with a larger physical frame, and the risk of injury to girls and women increases dramatically. *Id.* ¶¶ 31-32.

Armistead also firmly believes that facing a male in a soccer game would change the entire dynamics on the field of play—and not for the better. *Id.* ¶ 38. There are only 11 players per team on the field at any given time. *Id.* ¶ 15. Because of differences in physical strength and speed, female soccer players depend more upon passing and teamwork than male soccer players. *Id.* ¶ 26. Any male on the women's soccer field displaces a deserving woman. *Id.* ¶ 40.

And this is not just hypothetical. A few years ago, Armistead first heard how two male atheltes were allowed to compete in Connecticut girls' track and field and dominated the field. *Id.* ¶ 33. From 2017-2019 alone, those two male-bodied individuals won 15 women's state championship titles. *Id.* Similarly, a male athlete who competed on the men's team at the University of Montana began competing

2

in—and winning—women's cross-country and track events in the NCAA Division I
Big Sky Conference. *Id.* ¶ 34. And these are not isolated examples. Even one girl
displaced from the women's podium, or the field, or the team by a male individual
takes away an opportunity from a woman.

Soccer—and striving to win in soccer—taught Armistead so much more than just
how to kick a ball. She learned perseverance and how to overcome adversity. *Id.* ¶
27. She learned leadership skills and good sportsmanship. *Id.* And she developed
mental and physical toughness and self-confidence. *Id.* Being an elite soccer athlete
required many sacrifices. *Id.* ¶ 22. But those sacrifices were worth it to win—not
just for herself, but for her team. *Id.* ¶ 23. Eventually, those sacrifices and hard
work paid off with an athletic scholarship, which paved the way for her to attend
college at WVSU and join its women's soccer team. *Id.* ¶¶ 10-12. It also brought her
one step closer to her dream of being a lawyer. *Id.* ¶ 12.

To Armistead, allowing a male to displace a woman in a starting position on the
field, or for an athletic scholarship, or for another recognition defies the purpose of
women's sports. *Id.* ¶ 42. She fears that too many women feel pressured to keep
their real views silent, and she fears that girls might consider not playing sports at
all if they feel they cannot win against a physically superior male. *Id.* ¶ 45.

## Argument

Federal Rule of Civil Procedure 24 authorizes both intervention as of right and
with permission from the court. The Fourth Circuit generally favors liberal
intervention to "dispose of as much of a controversy involving as many apparently
concerned persons as is compatible with efficiency and due process." *Feller v. Brock*,
802 F.2d 722, 729 (4th Cir. 1986) (cleaned up). Armistead satisfies the requirements
for intervention as of right because her request is timely, her interests are directly
affected by this litigation, and her arguments differ from those of other parties. She

also satisfies the requirements for permissive intervention because her legal interests share a common question of law and fact with this case.

## I. Armistead satisfies the requirements for intervention as of right because her request is timely, her interests are directly affected by this litigation, and her arguments differ from those of the State.

Under Fed. R. Civ. P. 24(a)(2), a person can intervene as of right when (1) her motion is timely; (2) the intervenor claims an interest relating to the property or transaction that is the subject of the action; (3) the intervenor is "so situated that disposing of the action may as a practical matter impair or impede" the intervenor's ability to protect her interest; and (4) no other party in the action can adequately protect the intervenor's interests. *Alt v. U.S. Env't Prot. Agency*, 758 F.3d 588, 591 (4th Cir. 2014). Armistead satisfies each factor.

### A. Armistead's motion to intervene is timely.

Armistead's motion to intervene is timely because this lawsuit is in its infancy. Courts evaluate the timeliness of intervention to "prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Alt*, 758 F.3d at 591 (citation omitted). To make this determination, courts consider (1) how far the suit has progressed prior to the motion; (2) the prejudice which delay might cause other parties; and (3) the reason for any tardiness in moving to intervene. *Id.*

Armistead clears the timeliness hurdle because this lawsuit began just three months ago. It is nowhere near "sight of the terminal." *Id.* The original complaint was filed on May 26, 2021, and an amended complaint on July 16, 2021. A preliminary injunction was briefed and issued without oral argument. The State Board of Education and County Defendants have filed motions to dismiss the amended complaint, which have not yet been decided. The parties have not exchanged discovery, and the Court issued a scheduling order just two days ago, on September 8, 2021. Intervention at this early juncture would not stall the lawsuit.

4

Indeed, courts regularly grant intervention requests made in the same timeframe or even later than Armstead's request. *See Ohio Valley Env't Coal. Inc. v. McCarthy*, 313 F.R.D. 10, 17–18 (S.D.W.Va. 2015) (intervention timely when filed approximately four months after the complaint); *City of New Martinsville, W. Va. v. Pub. Serv. Comm'n of W. Va.*, 2012 WL 6694078, at *3 (S.D.W.Va. 2012) (intervention timely when motion filed two days after court entered scheduling order and no discovery had occurred); *Morgantown Energy Assocs. v. Pub. Serv. Comm'n of W. Va.*, 2013 WL 140235, at *4 (S.D.W.Va. 2013) (intervention timely when motion filed prior to court's entry of scheduling order and no discovery had occurred).

Nor has Armstead delayed in moving for intervention. Choosing to intervene in a case like this is a weighty decision. Armstead only became aware that this lawsuit endangered her rights when she learned of it. Armstead Decl. ¶ 36. And that harm only became likely after the plaintiff won a preliminary-injunction motion and this Court decided that it may facially enjoin the Sports Act in the future. *See*, Order at 2, 4, ECF 67. So, Armstead sought counsel and weighed her options carefully before deciding she should intervene and only intervened when absolutely necessary. Armstead Decl. ¶ 37. Once she decided to intervene, she moved forward quickly.

Because Armstead did not delay and moved to intervene so early in this case, no party suffers from her intervention request. Armstead has filed a proposed answer to the amended complaint concurrently with this motion (Ex. B) and will comply with the scheduling deadlines established by this Court's September 8, 2021, order. Her motion is therefore timely.

### B. Armistead has a significant, protectible interest in fair and safe competition because she is a female athlete protected by the Sports Act and benefits from the equal opportunities for women safeguarded by the Act.

The intervenor's interest must be "significantly protectable." *Nw. Nat'l Life Ins. Co. v. Zimbro*, Nos. 89-2838, 89-2858, 1990 WL 86206, at *2 (4th Cir. June 14, 1990) (per curiam) (citation omitted). Though the Fourth Circuit has not articulated a single test for defining significantly protectable interests, an interest typically qualifies if the intervenor "stands to gain or lose by the direct legal operation of a judgment in that action." *Ohio Valley Env't Coal.,* 313 F.R.D. at 18 (quoting *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)) (internal brackets and quotation marks omitted).

What's more, the Fourth Circuit and other circuit courts have found that women have a legitimate and important interest in ensuring they receive equal athletic opportunities. *See Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 104 (4th Cir. 2011) (noting that "[t]here is no doubt" that promoting equal athletic opportunities for the female sex is an important interest); *see also Clark, ex rel. Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982) ("[t]here is no question" that redressing past discrimination against women in athletics and promoting equality of athletic opportunity between the sexes is a legitimate and important government interest); *Cohen v. Brown Univ.*, 991 F.2d 888, 897 (1st Cir. 1993) ("Equal opportunity to participate lies at the core of Title IX's purpose"); *McCormick ex rel. McCormick v. Sch. Dist. of Mamoreneck*, 370 F.3d 275, 286-95 (2d Cir. 2004) (Title IX's purpose is ensuring women have "[e]qual opportunity" to participate in educational programs and activities).

Given this consensus, federal courts have unanimously granted intervention requests in situations like this case. For example, in *Hecox v. Little*, a male-bodied athlete challenged a substantially similar sports-equity law in Idaho. 479 F.Supp.3d

6

930, 952 (D. Idaho 2020). Two Idaho collegiate athletes moved to intervene to defend the law, and the court granted their motions both permissively and as of right. *Id.* at 955, 958. In doing so, the court noted that the proposed female athlete intervenors undoubtedly have a protectable interest in equal athletic opportunity. *Id.* at 952. In fact, to find otherwise would mean that no one—the transgender plaintiff included—had a protectable interest in the litigation's subject matter. *Id.*

Similarly, three female athletes challenged a Connecticut athletic association policy that allowed males to compete in the female category, thereby depriving female athletes of honors, recognitions, advancement opportunities, and championship titles. *See Soule v. Connecticut Association of Schools, Inc.*, 2021 WL 1617206 (D. Conn. 2021). The court found that the two male-bodied athletes had a legally protectible interest in the litigation and granted their intervention. Order Granting Motion to Intervene, *Soule v. Connecticut Association of Schools, Inc.*, 2021 WL 1617206 (D. Conn. 2021), ECF No. 93.

As these cases show, courts recognize that athletes have an interest in intervening to defend government policies that affect their ability to compete. And that fits the liberal intervention principles in the Fourth Circuit. When a policy greatly affects or benefits a particular group, the Fourth Circuit counts that in favor of intervention. *See Forest Hills Early Learning Center, Inc. v. Lukhard,* 728 F.2d 230, 245-46 (4th Cir. 1984) (remanding to provide opportunity for religiously affiliated childcare center to intervene in defense of law that provided religious groups a regulatory exemption).

This logic applies with particular force when a law ensures equal opportunities. For example, in *Grutter v. Bollinger*, the Sixth Circuit allowed minority students and one minority coalition to intervene in lawsuits challenging race-conscious admission policies at the University of Michigan. 188 F.3d 394, 396 (6th Cir. 1999). The Sixth Circuit did so because the case would affect qualified minority students'

access to public higher education. Accordingly, it gave those minority students a "substantial legal interest in educational opportunity" which includes preventing a decline in enrollment of minority students. *Id.* at 398. In short, the minority students were beneficiaries of the equal-access law and therefore had a protectable interest in defending it.

Like those minority students in *Grutter*, Armistead has a substantial legal interest in ensuring her equal opportunity to compete in collegiate athletics. Armistead is a competitive soccer athlete with a direct and experiential interest in the operation of West Virginia's Sports Act. As the State has repeatedly said, the Sports Law exists to protect athletes like her. *See, e.g.*, State Defs.' Opp. to MPI 1, ECF 49. And as a female athlete who competes on a women's athletic team at a public university that is a member of the NCAA, Armistead and women like her are the Act's primary beneficiaries. *See* W. Va. Code § 18-2-25d; see also Armistead Decl. ¶¶ 11-14. She wishes to maintain female-only competition and a competitive environment shielded from physiologically advantaged male participants who could compromise both the fairness and safety of her sport. *See id.* ¶ 41-42. Her desire to protect her own personal legal interest in equal athletic opportunities is unquestionably a significant and protectible interest.

And like the intervenors in *Grutter*, Armistead also has a legally protectible interest in preserving fair competition for female athletes generally in West Virginia. In *Grutter*, the intervenors not only had an interest in personally attending certain schools but also in ensuring that the entire educational system was fair and equitable and promoted equal access and diversity in general. So too, Armistead has an interest in ensuring fair and equitable participation and athletic opportunity for athletes like her.

### C. Armistead's interest could be impaired by this litigation which threatens to invalidate the Sports Act and to undermine equal opportunity for women.

The "significantly protectible interest" requirement is closely linked with the third requirement for intervention of right—that the litigation may impair the intervenor's interest. Once a court determines that an intervenor has a protectable interest in the litigation, it should have little difficulty concluding that the litigation may impair that interest. *See, e.g. Ohio Valley Env't Coal.*, 313 F.R.D. at 18 ("An applicant has a significantly protectible interest in an action if it 'stand[s] to gain or lose by the direct legal operation' of a judgment in that action.") (citation omitted).

That general principle holds here. This litigation could eviscerate Armistead's ability to compete fairly and safely and to participate in a system designed to protect women. B.J.P. has challenged the law on constitutional and Title IX grounds. Though couched as an as-applied claim, "[t]he label is not what matters." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). After all, "the distinction between facial and as-applied challenges is not so well defined." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010). So this Court could provide broader facial or semi-facial relief no matter what labels B.P.J. used to describe the claims brought—just as the Supreme Court did in *Citizens United*. *Id.* at 330 (expressing skepticism whether, on appeal, "a party could somehow waive a facial challenge while preserving an as-applied challenge").

To make matters clearer, B.P.J has already made broad facial arguments for invaliding the Sports Act throughout the complaint. *See, e.g.* First Am. Compl. ¶¶ 4, 39-42, 85-87, 97-98, 104-108, ECF 64. And this Court has already confirmed that whether the Sports Act is *facially* unconstitutional "is an issue raised in the Complaint and *will* be resolved at a later stage of litigation." Order 4, ECF 67 (emphasis added); *see also id.* at 10 (noting that arguments about testosterone suppression "may be relevant to a facial challenge of the statute.").

9

Were the Sports Act facially invalidated, Armistead would be stripped of her legal protections under the Act. She would likely face the Hobson's choice of competing for a place on her team against a male athlete, competing against a team with a male athlete, or not competing at all. Armistead Decl. ¶ 39. This risk is not hypothetical, as evidenced by males competing in women's sports in Connecticut, Idaho, Florida, and even here in West Virginia. Order Finding as Moot Pl.'s Motion for Prelim. Inj., *Soule v. Connecticut Association of Schools, Inc.*, 2021 WL 1617206 (D. Conn. 2021), ECF No. 176 (Connecticut); Mem. Decision and Order, *Hecox v. Little,* 479 F.Supp.3d 930, 952 (D. Idaho 2020), ECF No. 63 (Idaho);  Compl. for Declaratory and Injunctive Relief, ECF No. 1, *D.N. v. Desantis,* No. 0:21-cv-61344-RKA (S.D. Fla. filed June 29, 2021) (Florida); First Am. Compl., ECF 64 (West Virginia). And if Armistead is not permitted to intervene, she would have few options to challenge a permanent injunction imposed by this Court against the Sports Act. She therefore has significant, protectible interests that are at risk of being impaired by this litigation.

Even if the Court grants only as-applied relief, Armistead's interests are still imperiled. The rationale proposed by B.P.J. to invalidate the Sports Act—if successful—could be used by any male athlete seeking to compete in the female category in West Virginia. These arguments are not unique to this plaintiff and also imperil Armistead's interests protected by the Sports Act. *See, e.g. Hecox*, 479 F.Supp.3d at 988-89 (facially enjoining a similar Sports Act based on equal protection arguments).

### D. The existing parties to the action do not adequately represent Armistead's interests.

Finally, the Defendants' representation is inadequate to represent Armistead's interests. The "burden of showing an inadequacy of representation" is generally minimal and is satisfied if the applicants show that the representation of their

interests *may* be inadequate. *Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). A proposed intervenor "should be treated as the best judge of whether the existing parties adequately represent his or her interests, and … any doubt regarding adequacy of representation should be resolved in [movant's] favor." 6 Moore's Federal Practice § 24.03[4][a] (3d ed. 1997); *see also* Wright & Miller, 7C *Fed. Pract. & Proc. Civ.* § 1909 (3d ed.) ("Since [Rule 24(a)] is satisfied if there is serious possibility that the representation may be inadequate, all reasonable doubts should be resolved in favor of allowing [intervention] so that [the absentee] may be heard in his own behalf.")

It "may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenors' arguments." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997). To be sure, a heightened presumption of adequacy applies when the proposed intervenor seeks to intervene on the side of a governmental defendant. *See North Carolina State Conference of NAACP v. Berger*, 999 F.3d 915, 934 (4th Cir. 2021). But an intervenor can rebut that presumption by identifying adverse interests with the government party, collusion, or nonfeasance. *Id.* at 930.

Of the seven named defendants, two are Harrison County officials or entities (County Board of Education and Superintendent Stutler). And Armistead is not a resident of Harrison County. She resides in Kanawha County, *see* Armistead Decl. ¶ 1. These County Defendants do not represent her interests. A third defendant, the West Virginia Secondary School Activities Commission (WVSSAC), is a quasi-public agency that is not a state agency under state law. *See Mayo v. W. Va. Secondary Sch. Activities Comm'n*, 672 S.E.2d 224, 233 (W. Va. 2008). These three defendants have narrower interests in this litigation than Armistead, they do not purport to

11

represent her interests, and therefore Armistead's burden of showing inadequacy of representation for all three of these defendants is minimal.

The remaining four defendants are state officials (Attorney General Morrissey and Superintendent Bursch), a state agency (the State Board of Education, or "BOE"), and the State of West Virginia. Though a heightened presumption of adequacy applies when the state government is a party, Armistead has different litigation interests and different litigation arguments from these State Defendants that make her interests adverse to the State. And any doubts about the adequacy of representation should be resolved in Armistead's favor.

### 1. Armistead has different litigation interests.

First, Armistead has different litigation interests from Defendants. The County Defendants represent the interests of Harrison County residents, not Kanawha County residents (like Armistead). And the WVSSAC is a quasi-public agency and does not represent female athletes like Armistead.

Meanwhile, Defendants State BOE and State Superintendent have tried to distance themselves from the introduction and enactment of the Sports Act, casting doubt on their willingness to vigorously defend it in litigation. *See* BOE Defs.' Opp. to MPI 3, ECF 48; BOE Defs.' Mem. of Law in Supp. of MTD 2, ECF 75. In fact, they have repeatedly stated that they have not "*and will not* enforce [the law] in the future as to Plaintiff." BOE Defs.' Mem. of Law in Supp. of MTD 11-12, ECF 75 (emphasis added).[1] These Defendants essentially argue that the Sports Act is not their problem. If a narrowing construction is presented or if a settlement offer comes, they will likely choose an exit strategy over  vigorously defending the law.

---

[1] These Defendants further claim they have no enforcement power. BOE Defs.' Mem. of Law in Supp. of MTD 11-12, ECF 75. Plaintiff disagrees. *See* Pl.'s Consolidated Mem. in Opp. to MTD 9, 15, ECF 80.

Armistead, by contrast, seeks the broadest possible interpretation of the law. She has a personal, competitive interest in putting forth the best possible arguments, to ensure the broadest interpretation and application of the Sports Act so that it protects not only her but future female athletes in West Virginia. The Fourth Circuit has allowed intervention when a government agency may not litigate an action with sufficient vigor to protect the intervenor's competitive interests. *See JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 290 (4th Cir. 2009) (transportation companies were allowed to intervene in a lawsuit alongside a government agency to protect their own competitive interests). The same logic applies here.

Moreover, the State Defendants' litigation interests are not co-extensive with Armistead's. The "government's position is defined by the public interest, [not simply] the interests of a particular [] citizen[]" (like Armistead). *Feller*, 802 F.2d at 730; *see In re Sierra Club v. State of S.C.*, 945 F.2d 779, 780 (4th Cir. 1991). Defendants could settle this case in a manner that could harm Armistead's interests or offer a narrowing construction of the law. *See, e.g. JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 290 (4th Cir. 2009) (movants noted that if their intervention is denied, government entity could settle the case in a way that harmed their interests); *see also Hecox*, 479 F.Supp.3d at 955 (movants allowed to intervene because state defendants offered a narrowing construction and movants did not). Armistead is the only potential party with an undivided interest in protecting her right to equal treatment.

In sum, the Defendants and Armistead do not share unity on all litigation objectives and therefore no current parties to the litigation will adequately represent Armistead's interests.

### 2.  Armistead will advance contrary litigation arguments.

Armistead will also advance litigation arguments different from and contrary to the State Defendants' arguments. For example, the State of West Virginia Defendants argue that Title IX *permits*—but does not require—separate sports teams based on biological sex to promote the interests of fairness and safety for women and girls. *See, e.g.*, State's Def.'s Opp. to Mot. for Prelim. Injun. 2, ECF 49 (noting that the law "*furthers* the goals of Title IX"); *see also id.* at 13-14 (arguing that Title IX "authorizes" separate teams for each sex).

Armistead, however, will argue that Title IX not only permits—but *requires*—separate sports teams for women and girls in contests of strength or speed. Her position is that "[t]reating girls differently regarding a matter so fundamental to the experience of sports—the chance to be champions—is inconsistent with Title IX's mandate of equal opportunity for both sexes." *McCormick ex rel. McCormick*, 370 F.3d at 295. After all, in many sports, Title IX's mandate of non-discrimination could not be achieved with sex-blind programs. Failure to provide members of the female sex with equal quality of competition that effectively accommodates their interests and abilities violates Title IX. *See* 44 Fed. Reg. 71,417–18; *see also Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 829 (10th Cir.1993).

Armistead will also put forward equal-protection arguments that differ from the State Defendants. First, Armistead will argue that even if the Sports Act discriminates based on gender identity, the Act should be upheld because gender identity is not a protected class. The State Defendants acknowledge that the Fourth Circuit has held that gender-identity discrimination triggers heightened scrutiny. State Def.'s Opp. to MPI 5, ECF 49. But the State did not argue that the Fourth Circuit got it wrong and misapplied Supreme Court precedent.[2]

---

[2] Neither Defendant State Board of Education nor Superintendent Burch argued that the Fourth Circuit wrongly elevated gender identity as a protected class. *See*

Second, even if gender identity is a protected class, Armistead will argue that the State's interest in providing equal athletic opportunities for women justifies that differential treatment. The State Defendants have raised no such argument.

Third, the State made a passing reference in its preliminary-injunction response to the fact that B.P.J.'s requested relief requires this Court to affirmatively discriminate based on gender identity. ECF 49 at 2. But the State did not press that point. Armistead though will press that point and even argue that this discrimination violates the 4th Circuit's decision in *Grimm v. Gloucester County School Board*. 972 F.3d 586 (4th Cir. 2020) (holding that school board policy separating school restrooms based on biological sex discriminated based on transgender status). Specifically, the requested relief will necessitate discrimination by requiring sports teams to allow males who identify as women to join girls' teams yet prohibiting men who identify as men from also joining the girls' team. Which, of course, demonstrates the radical and ultimately unworkable nature of the relief Plaintiff requests.

Finally, Armistead will argue that B.P.J. is asking the Court to replace biological sex with gender identity in the Sports Act. This treats biological sex as a sex stereotype that will revolutionize sex-based protections in law, to the detriment of women and girls. No other party has raised this argument, but this Court should consider this argument as it highlights, again, the extensive repercussions of B.P.J.'s arguments.

---

Def's Opp. to Mot. for Prelim. Injun. 8, ECF 48. These Defendants argued only that rational basis is the proper standard of review "for the purposes of preserving the record" given that *Grimm v. Gloucester County School Board,* 972 F.3d 586 (4th Cir. 2020) was—at the time these Defendants opposed the preliminary injunction—pending *certiorari* before the Supreme Court. That *certiorari* petition was later denied. *Gloucester Cnty. Sch. Bd. v. Grimm*, --S. Ct.--, 2021 WL 2637992 (2021). It is unclear whether Defendants will press this argument further.

In this early stage of litigation, Armistead cannot state with certainty every strategy and argument Defendants will advance. But the caselaw does not require such certainty. It requires only what the available evidence reveals—an adequate basis to conclude that Defendants *may* not adequately represent Armistead's interest. While the government may share the general goal of defending the Sports Act, Armistead's and the government defendants' interests are still distinct. By allowing Armistead to intervene as of right, the Court will ensure it will receive the most robust arguments to reach a just, equitable, and efficient resolution of the issues.

## II. Alternatively, this Court should grant Armistead permissive intervention because her legal position shares a common question of law and fact with this litigation.

Besides satisfying the requirements for intervention of right, Armistead also qualifies for permissive intervention. Fed. R. Civ. P. 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In making this determination a court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also North Carolina State Conference of NAACP*, 999 F.3d at 927.

As discussed above, Armistead's motion is timely filed, and her participation will cause no undue delay or prejudice to the original parties. Armistead has tendered a responsive pleading (Ex. B) and her participation advances efficient litigation by ensuring a full airing of the issues in this case. Her legal position "shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1), as her interests situate and compel her to defend West Virginia's Sports Act.

Finally, Armistead —unlike the named defendants—has a personal, experiential perspective to share. As an intervenor, Armistead would provide this Court with a perspective otherwise out of view, thereby aiding in the disposition of the case. This would allow the Court to "dispose of as much of a controversy" as is possible, compatible with efficiency and due process. *Feller*, 802 F.2d at 729. She therefore satisfies the conditions for permissive intervention.

## Conclusion

This case raises important legal issues for countless citizens in West Virginia and particularly for the athletes that will be affected by whatever this Court decides. This Court should therefore hear from these voices—the voices most affected and protected by the West Virginia's Sports Act. For these reasons, Armistead respectfully requests this Court issue an order authorizing her to intervene, either as of right or permissively.

Respectfully submitted this 10th day of September, 2021.

*/s/ Brandon S. Steele*
Brandon Steele, WVBar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com

*Statement of Visiting Attorneys
forthcoming*

*Attorneys for Proposed Intervenor*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J, by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>    v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, PATRICK MORRISEY in his official capacity as Attorney General, and THE STATE OF WEST VIRGINIA<br><br>*Defendants.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**Certificate of Service**

I, Brandon Steele, hereby certify that on September 10, 2021, I electronically filed a true and exact copy of ***Proposed Intervenor Lainey Armistead's Memorandum in Support of Motion to Intervene*** with the Clerk of Court and all parties using the CM/ECF system.

/s/ Brandon S. Steele
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com

*Attorney for Proposed Intervenor*

19