**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON, | |
| *Plaintiff*, | Civil Action No. 2:21-cv-00316 |
| v. | Hon. Joseph R. Goodwin |
| WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, PATRICK MORRISEY in his official capacity as Attorney General, and THE STATE OF WEST VIRGINIA, | **PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE [Dkt. 94]** |
| *Defendants*. | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.     ARMISTEAD IS NOT ENTITLED TO INTERVENTION AS OF RIGHT. .................. 2

      A.    Armistead's Motion To Intervene Is Not Timely. ................................................ 2

      B.    Armistead Lacks A Significantly Protectable Legal Interest That Could Be
          Impaired By This Action. .................................................................................... 7

          1.    Armistead's Personal Ability To Compete Is Not At Risk. ...................... 7

          2.    Armistead's Alleged Interest On Behalf Of All "Female Athletes"
              Is Not Significantly Protectable. ............................................................. 10

      C.    Armistead Cannot Meet Her Burden To Show That Her Interests Are Not
          Adequately Represented By The Attorney General ........................................... 11

II.    ARMISTEAD SHOULD NOT BE GRANTED PERMISSIVE INTERVENTION. ...... 16

CONCLUSION .............................................................................................................. 20

-i-

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alt v. U.S. EPA*,
    758 F.3d 588 (4th Cir. 2014) .............................................................................2, 6

*Am. Fed'n of Tchrs. - W. Va., AFL-CIO v. Kanawha Cty. Bd. of Educ.*,
    No. 2:08-cv-01406, 2009 WL 10705182 (S.D.W. Va. Jan. 14, 2009) ..............7, 8, 9

*Canada v. Hall*,
    No. 18-CV-2121, 2019 WL 1294660 (N.D. Ill. Mar. 21, 2019)..............................18

*City of Los Angeles, Ca. v. Patel*,
    576 U.S. 409 (2015)...........................................................................................8

*City of New Martinsville, W. Va v. Public Services Commission of W. Va.*,
    No. 2:12-CV-1809, 2012 WL 6694078 (S.D.W. Va. 2012)...................................4

*Commonwealth of Va. v. Westinghouse Electrical Corp.*,
    542 F.2d 214 (4th Cir. 1976) ............................................................................13

*Gould v. Alleco, Inc.*,
    833 F.2d 281 (4th Cir. 1989) .......................................................................2, 4, 5

*Gratz v. Bollinger*,
    183 F.R.D. 209 (E.D. Mich. 1998) ....................................................................11

*Grimm v. Gloucester City Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) ..................................................................5, 17, 18

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) ............................................................................11

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*,
    797 F.2d 85 (2d Cir. 1986)..................................................................................9

*Hecox v. Little*,
    479 F. Supp. 3d 930 (D. Idaho 2020) .................................................7, 11, 15, 18

*Houston Gen. Ins. Co. v. Moore*,
    193 F.3d 838 (4th Cir. 1999) ..............................................................................2

*Hunter v. Underwood*,
    471 U.S. 222 (1985)...........................................................................................8

*JLS, Incorporated v. Public Serv. Comm'n of W. Va.*,
   321 F. App'x 286 (4th Cir. 2009) .......................................................12

*League of Women Voters of Va. v. Va. State Bd. of Elections*,
   458 F. Supp. 3d 460 (W.D. Va. 2020) ...............................................10

*LeMaster v. Hackney*,
   No. 2:19-CV-00763, 2020 WL 4196730 (S.D. W. Va. July 21, 2020) ....................................2

*Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*,
   No. 8:18-CV-00961-PWG, 2018 WL 5846816 (D. Md. Nov. 8, 2018) .................................15

*Morgantown Energy Associations. v. Public Serv. Comm'n of W. Va.*,
   No. 2:12-CV-6327, 2013 WL 140235 (S.D.W. Va. 2013) ........................................4

*N.C. State Conf. of NAACP v. Berger*,
   999 F.3d 915 (4th Cir. 2021) (en banc) .............................................2, 11, 13, 20

*N.C. State Conf. of NAACP v. Cooper*,
   332 F.R.D. 161 (M.D.N.C. 2019) ......................................................17

*N.C. State Conf. of the NAACP v. Cooper*,
   No. 1:18-CV-1034, 2021 WL 3639493 (M.D.N.C. Aug. 17, 2021) .......................................3

*Ohio Valley Env't Coal. Inc. v. McCarthy*,
   313 F.R.D. 10 (S.D.W. Va. 2015).........................................................4, 10, 16, 17

*Prescott v. Rady Children's Hosp.-San Diego*,
   265 F. Supp. 3d 1090 (S.D. Cal. 2017)................................................18

*Purcell v. Bank Atlantic Fin. Corp.*,
   85 F.3d 1508 (11th Cir. 1996) ..........................................................9

*RLI Ins. Co. v. Nexus Servs., Inc.*,
   No. 5:18-CV-00066, 2018 WL 5621982 (W.D. Va. Oct. 30, 2018) .......................................10

*S.C. Elec. & Gas Co. v. Whitfield*,
   No. 3:18-cv-01795-JMC, 2018 WL 3613932 (D.S.C. July 28, 2018)......................................3

*Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*,
   No. 3:20-cv-00201, 2021 WL 1617206 (D. Conn. Apr. 25, 2021) ...............................7, 18, 19

*Stuart v. Huff*,
   706 F.3d 345 (4th Cir. 2013) ........................................................ *passim*

*T.B. Jr. v. Prince George's Cty. Bd. of Educ.*,
   897 F.3d 566 (4th Cir. 2018) ..........................................................17

*Teague v. Bakker*,
    931 F.3d 259 (4th Cir. 1991) ...................................................................7

*United States v. North Carolina*,
    No. 1:13CV861, 2014 WL 494911 (M.D.N.C. Feb. 6, 2014) ................................14

*United States v. Tex. E. Transmission Corp.*,
    923 F.2d 410 (5th Cir. 1991) ...................................................................9

## Other Authorities

Br. of *Amici Curiae* 176 Athletes in Women's Sports, The Women's Sports
    Foundation, and Athlete Ally in Support of Plaintiffs-Appellees, *Hecox v.
    Little*, Nos. 20-35813, 20-35815, Dkt. 72 (9th Cir. Dec. 21, 2020)........................11

Br. for Appellants, *Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*, No. 21-1365,
    Dkt. 40 (2d Cir. July 9, 2021) ...............................................................19

7C Charles Alan Wright et al., *Federal Practice and Procedure*
    § 1909 (3d ed. 2007) ..........................................................................13

Mountain East Women's Soccer, 2021 Women's Soccer Overall Statistics (last
    visited September 24, 2021) ....................................................................9

West Virginia State University, 2021 Women's Soccer Schedule (last visited
    September 24, 2021) ............................................................................9

Fed. R. Civ. P.

    24(b).............................................................................................16
    24(b)(3)........................................................................................20

## PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE

### INTRODUCTION

Nearly four months ago, Plaintiff B.P.J., an 11-year-old girl seeking to run on her middle school cross-country team, filed this lawsuit challenging West Virginia's H.B. 3293, a state law that bars girls who are transgender from playing school sports.  B.P.J.'s lawsuit is being defended by several state and county Defendants represented by four different sets of counsel, including Attorney General Patrick Morrisey on behalf of the State of West Virginia.

Now, Lainey Armistead, a 21-year-old NCAA college soccer player, seeks to intervene to defend the law and prevent B.P.J. from participating on her middle school cross-country team. Armistead does so after this Court has already granted a preliminary injunction against enforcement of H.B. 3293 against B.P.J.; received and has under consideration multiple motions to dismiss B.P.J.'s amended complaint; and entered a scheduling order covering discovery through trial.

Armistead's belated request to intervene should be denied.  Armistead is not entitled to intervene as of right under Federal Rule of Civil Procedure 24(a) because her motion is not timely, she lacks a significantly protectable interest in the litigation, and any interests are adequately defended by multiple governmental Defendants who are already vigorously defending the law. *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013).  Permissive intervention under Rule 24(b) is also unwarranted because her motion is not timely and intervention would delay and prejudice the existing parties without providing any benefit to the court.

## ARGUMENT

**I.     Armistead Is Not Entitled To Intervention As Of Right.**

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), a movant must make a "timely request" and establish "'an interest in the subject matter of the action,'" "'that the protection of this interest would be impaired because of the action,'" and "'that the applicant's interest is not adequately represented by existing parties to the litigation.'" *N.C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 927 (4th Cir. 2021) (en banc) (quoting *Stuart*, 706 F.3d at 349). "Importantly, all these requirements must be met before intervention is mandatory; a failure to meet any one will preclude intervention as of right." *Id.* These "standards for intervention . . . must be observed and applied thoughtfully by courts," and doubts should *not* be "resolved in favor of the intervenor." *LeMaster v. Hackney*, No. 2:19-CV-00763, 2020 WL 4196730, at *1 (S.D. W. Va. July 21, 2020) (quotation marks omitted).  Armistead's request fails at every juncture.

A.     Armistead's Motion To Intervene Is Not Timely.

"A party seeking to intervene under either Federal Rule of Civil Procedure 24(a) or 24(b) may do so only upon the filing of a 'timely motion.'" *Alt v. U.S. EPA*, 758 F.3d 588, 591 (4th Cir. 2014) (quoting Rule 24); *see also Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) ("[T]imeliness is a cardinal consideration of whether to permit intervention.").  To determine whether an intervention motion is timely, a court "should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould v. Alleco, Inc.*, 833 F.2d 281, 286 (4th Cir. 1989).  Here, "[e]ach of these considerations militates against the motion." *Id.*

*First*, this case has progressed significantly since it was filed nearly four months ago. Notably, the Court has granted a preliminary injunction addressing both the Title IX and Equal

Protection Clause claims, after the parties (with permission) filed overlength briefs accompanied by multiple declarations and exhibits.  ECF Nos. 19, 47, 48, 49, 50, 53, 67.  In addition, the Court granted the State of West Virginia's motion to intervene, ECF No. 44; Plaintiff filed an amended complaint, ECF No. 64; the State filed its answer asking that the amended complaint be dismissed with prejudice, ECF No. 78; and the other Defendants filed motions to dismiss, which are now fully briefed, ECF Nos. 71, 73, 75, 80, 83, 84, 85; Plaintiff, the State, and Attorney General Patrick Morrisey jointly moved to dismiss B.P.J.'s Equal Protection Clause claim against the Attorney General, ECF No. 82; and Plaintiff moved to strike the State's jury demand, which is now fully briefed, ECF Nos. 81, 88, 91.  The parties met and conferred several times to reach agreement on each aspect of Rule 26, after which the Court entered a scheduling order governing discovery through trial.  ECF No. 93.  Consistent with that scheduling order, the parties are now preparing Rule 26(a)(1) initial disclosures, drafting discovery, and identifying experts.  This case is hardly, as Armistead claims, "in its infancy."  ECF No. 95 at 4.

Courts in this circuit regularly find motions to intervene untimely at this point in litigation. *See, e.g.*, *N.C. State Conf. of the NAACP v. Cooper*, No. 1:18-CV-1034, 2021 WL 3639493, at *2 (M.D.N.C. Aug. 17, 2021) (denying intervention as untimely when motion was filed after parties had briefed motions to dismiss and a motion for a preliminary injunction, and a trial date had been set); *S.C. Elec. & Gas Co. v. Whitfield*, No. 3:18-cv-01795-JMC, 2018 WL 3613932, at *2 (D.S.C. July 28, 2018) (denying intervention as untimely because, "[w]hile a relatively short period of time has elapsed since the commencement of this suit, the suit has progressed significantly in that time"—namely, "[t]he court has already heard and ruled on Defendants and Intervenor Defendants' Motions to Dismiss").

The three cases Armistead cites to argue that her motion is timely are not to the contrary. ECF No. 95 at 5.  Two involved *unopposed* motions to intervene, and none involved a motion to intervene filed after a preliminary injunction had issued or a dispositive motion had been fully briefed, let alone both.  In *City of New Martinsville, West Virginia v. Public Services Commission of West Virginia*, the unopposed motion to intervene was preceded only by a complaint, answer, and scheduling order.  No. 2:12-CV-1809, 2012 WL 6694078, at *3 (S.D.W. Va. 2012).  In *Morgantown Energy Associations. v. Public Service Commission of West Virginia*, the unopposed motion to intervene was filed before the Court entered a scheduling order, before any discovery occurred, and before any dispositive motion had been fully briefed.  No. 2:12-CV-6327, 2013 WL 140235, at *4 (S.D.W. Va. 2013).  And in *Ohio Valley Environmental Coalition Incorporated v. McCarthy*, the Court emphasized in its timeliness analysis that nothing other than the complaint, amended complaint, and answer had been filed prior to the motion to intervene.  313 F.R.D. 10, 17 (S.D.W. Va. 2015).  The Court noted that "[n]o other person or entity moved to intervene prior to [the proposed intervenor's] motion," it "ha[d] yet to issue a scheduling order," and "the suit had not progressed beyond the pleadings."  *Id.*  Here, by contrast, Armistead's opposed motion to intervene was filed after "extensive litigation" has occurred.  *Gould*, 883 F.3d at 286.

*Second*, Armistead's delayed request for intervention will likely prejudice the non-intervening parties.  Armistead says that she will comply with this Court's September 8, 2021, scheduling order, but that order was entered without consideration of the impact of an intervenor like Armistead.  The schedule the parties proposed to the Court was the product of multiple telephone conferences and e-mails involving nearly a dozen attorneys and sought to balance those parties' needs.  *See* ECF No. 92 at 1–2.  Had Plaintiff known there might be an additional party in the case, who might present additional witnesses and experts, make additional discovery requests,

file an additional motion for summary judgment, and so forth, Plaintiff likely would have sought a different schedule. *See Stuart*, 706 F.3d at 350 ("Additional parties can complicate routine scheduling orders, prolong and increase the burdens of discovery and motion practice, thwart settlement, and delay trial."). Likewise, this Court might have entered a different schedule. *See id.* ("It is incontrovertible that motions to intervene can have profound implications for district courts' trial management functions."). It is especially likely that Plaintiff and the Court may have taken a different approach given that Armistead has said she will advance legal arguments squarely foreclosed by Circuit precedent, *see* ECF No. 95 at 14–15 (explaining she will ask this Court to ignore binding Circuit precedent, such as *Grimm v. Gloucester City Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020), *cert. denied*, 2021 WL 2637992 (June 28, 2021), and hold that discrimination based on transgender status does not trigger heightened scrutiny), and given that Armistead's counsel has a history of causing delays and inefficiencies, including due to their disrespectful treatment of transgender individuals and attempts to disqualify judges who do not permit them to misgender parties to the litigation, *see infra* at II. Armistead should not be allowed to essentially force the parties and this Court to absorb the impact of her delay by waiting to file her motion until after the parties' negotiation process concluded and this Court entered its order.

*Third*, Armistead offers no persuasive reason for her "tardiness in moving to intervene." *Gould*, 883 F.3d at 286. Armistead claims that she has been following the public debate around the participation of transgender women and girls in sports for years. *See* ECF No. 95-1 ¶¶ 33–34. She also acknowledges learning at the relevant times that H.B. 3293 passed and that this lawsuit was filed. *Id.* ¶¶ 35–36. The only explanation she offers in her declaration for waiting nearly four months to seek to intervene while this case significantly progressed is that "[g]etting involved in

this lawsuit was a weighty decision" and she "sought a lot of counsel and considered [her] options carefully." *Id.* ¶ 37. Armistead's personal desire to enjoy a long period of reflection is not a sufficient excuse, however, and she offers no case law supporting her claimed justification for delay. This Court should not endorse such a basis for delaying intervention, or else every proposed intervenor could overcome the timeliness bar.

Finally, Armistead's brief offers an additional claimed reason for her delay not supported by her declaration—that the alleged harm to her interests "only became likely after the plaintiff won a preliminary-injunction motion and this Court decided that it may facially enjoin the Sports Act in the future." ECF No. 95 at 5; *see* ECF No. 95-1 (making no mention of this Court's preliminary-injunction decision, generally or as a reason for her intervention). By her own admission, however, Armistead "was not at all unaware of what was transpiring in the district court." *Alt.*, 758 F.3d at 591; *see* ECF No. 95-1 ¶ 36 (confirming knowledge of this lawsuit). Thus, to the extent she "made a strategic decision not" to get involved "at an earlier stage, believing the court would" deny the preliminary-injunction motion or grant a motion to dismiss, and is now "admit[ting] that [she] gambled and lost in the execution of [her] litigation strategy," the Fourth Circuit has made clear that "[s]uch deliberate forbearance understandably engenders little sympathy." *Alt*, 758 F.3d at 591. That principle is properly applied here.

In sum, given how far this case has progressed, the prejudice that Armistead's delayed intervention will likely cause, and Armistead's failure to offer any satisfactory reason for her tardiness, Armistead's intervention motion fails for the independent reason that it is untimely.

B.     Armistead Lacks A Significantly Protectable Legal Interest That Could Be
       Impaired By This Action.

Armistead's request for intervention as of right fails for an additional reason: she lacks a

significantly protectable legal interest that could be impaired by this action.  To support her motion

to intervene, Armistead proffers two supposed interests: (1) a "personal legal interest" in

"ensur[ing] her equal opportunity to compete in collegiate athletics," ECF No. 95 at 8, and (2) an

interest allegedly on behalf of "female athletes generally in West Virginia" to exclude women and

girls who are transgender from women's and girls' competition, *id*.  Neither of these alleged

interests is sufficient to confer intervention as of right

        1.     *Armistead's Personal Ability To Compete Is Not At Risk.*

Armistead's first asserted interest regarding her personal ability to compete in collegiate

athletics fails because Armistead does not "stand[] to gain or lose by the direct legal operation" of

this Court's judgment.  *See Am. Fed'n of Tchrs. - W. Va., AFL-CIO v. Kanawha Cty. Bd. of Educ.*,

No. 2:08-cv-01406, 2009 WL 10705182, at *3 (S.D.W. Va. Jan. 14, 2009) (Goodwin, C.J.) (citing

*Teague v. Bakker*, 931 F.3d 259, 261 (4th Cir. 1991)).

Armistead does not attempt to argue that an order granting as-applied relief to B.P.J. would

directly affect her.  As a third-year college student at West Virginia State who plays soccer,

Armistead cannot plausibly argue that she would ever compete with or against B.P.J., an eleven-

year old girl at Bridgeport Middle School who runs cross country.  ECF No. 95, Ex. A ¶¶ 1–2.[1]

---

[1] The facts here are thus different from those alleged in *Hecox* and *Soule*, which involved plaintiffs
and intervenors playing at the *same level*, in the *same sport*, and in the *same competitions* in the
same state.  *See Hecox v. Little*, 479 F. Supp. 3d 930, 947 (D. Idaho 2020) (plaintiff and intervenors
all competing in running at the college level); *Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*, No.
3:20-cv-00201, 2021 WL 1617206, at *1 (D. Conn. Apr. 25, 2021) (plaintiffs and intervenors
competed in running at the high school level and previously competed against each other).
Moreover, in *Soule*, the plaintiffs' prayer for relief, if granted, would have directly impacted the

Instead Armistead argues that her interest could be impaired if this Court issues a broader ruling to "facially enjoin" H.B. 3293 in the future. ECF No. 95 at 5. But that argument confuses the potential breadth of the Court's *reasoning* with the potential breadth of the *injunctive relief*. B.P.J does not seek to "facially enjoin" H.B. 3293. She seeks as-applied injunctive relief preventing Defendants "from enforcing H.B. 3293 or any other law, custom, or policy that precludes *Plaintiff's* participation on girls' school sports teams in West Virginia." ECF No. 64 at 24 (emphasis added). Thus, the ultimate relief in this case will be "confined" to B.P.J. and will have no direct impact on Armistead. *Kanawha Cty. Bd. of Educ.*, 2009 WL 10705182, at *3.

To be sure, the Court may ultimately grant relief to B.P.J. based on the conclusion that H.B. 3293 "is facially unconstitutional." ECF No. 67 at 4. For example, B.P.J. contends that H.B. 3293 is motivated by a constitutionally impermissible purpose, and a statute motivated by an unconstitutional purpose is invalid in all its applications. *Cf. Hunter v. Underwood*, 471 U.S. 222, 233 (1985). But even if the Court agrees with B.P.J. that H.B. 3293 is infected by an unconstitutional purpose, it would still not "facially enjoin" the statute. Although "the reasoning of [such] a decision may suggest that there is no permissible application of [H.B. 3293] . . . the facial invalidation of a statute [would be] a logical consequence of the Court's opinion, not the immediate effect of its judgment." *City of Los Angeles, Ca. v. Patel*, 576 U.S. 409, 429–30 (2015) (Scalia, J., dissenting) (emphasis removed).

Armistead's contingent interest based on the precedential effect of the Court's decision is not enough to support intervention. As this Court has held, an interest that "depend[s] on how broad or narrow the wording" is in the "final determination of [a] case is too attenuated and

---

intervening athletes, as plaintiffs sought to expunge the intervenors' athletic records and take their titles away. 2021 WL 1617206, at *3.

uncertain of a claim to allow intervention as of right." *Kanawha City Bd. of Educ.*, 2009 WL 10705182, at *3. Nor is a proposed intervenor's interest "in the outcome of this case due to its precedential value" "significantly protectable" for purposes of intervention of right. *Id.*; *see also United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991) (argument that "a future judge" could apply precedent against intervenor was "theoretical possibility [that] cannot constitute the requisite practical impairment" for intervention); *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (finding "no direct interest in the underlying litigation" where reason for intervention "was to eliminate whatever precedential value" results from the case). Were it otherwise, this basic fact of "how our common law system works—judicial decisions on constitutional issues have precedential value bearing on future cases"—would swallow the requirements for intervention. *Kanawha City Bd. Of Educ.*, 2009 WL 10705182, at *3 n.2; *cf. Purcell v. Bank Atlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (concluding that "measured against the Rule 24 requirement that it be a direct, substantial, legally protectable interest" the proposed intervenor's "interest in the collateral estoppel effect of the jury's verdict [was] too collateral, indirect, and insubstantial to support intervention as of right") (citations omitted).

Moreover, H.B. 3293—and accordingly, any order by this Court regarding H.B. 3293—cannot actually prevent Armistead from the claimed harm she seeks to avoid: having to compete against women who are transgender. Armistead plays soccer for West Virginia State, which is in an NCAA Conference that includes schools outside West Virginia, against which it regularly competes.[2] Because those out-of-state schools comply with the NCAA's rules permitting women

---

[2] Mountain East Women's Soccer, 2021 Women's Soccer Overall Statistics (last visited September 24, 2021), https://mountaineast.org/stats.aspx?path=wsoc&year=2021 (listing schools in the Mountain East Conference); West Virginia State University, 2021 Women's Soccer Schedule (last

who are transgender to play on women's soccer teams, *see* ECF No. 65 at 3 n.5, 10 & n.6, Armistead will therefore continue to face the prospect of competing against women who are transgender irrespective of H.B. 3293's legality or whether any relief runs beyond B.P.J.[3]  *See Ohio Valley Env't Coal., Inc.*, 313 F.R.D. at 23 (finding that interest was not significantly protectable where a "ruling either way carries no certainty of harm or benefit" to proposed-intervenor's interests).

>### 2.    *Armistead's Alleged Interest On Behalf Of All "Female Athletes" Is Not Significantly Protectable.*

Armistead's second alleged interest is also not significantly protectable.  She claims to represent all "female athletes generally in West Virginia" in an effort to exclude women and girls who are transgender from competition, but Armistead's free-floating, alleged interest on behalf of "female athletes generally" is not an interest "particularized" to her that would allow her to intervene, and she cites no caselaw supporting this notion.  To the contrary, "a general interest in the subject matter of pending litigation does not constitute a protectable interest within the meaning of Rule 24(a)(2)."  *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2018 WL 5621982, at *3 (W.D. Va. Oct. 30, 2018) (quotation marks omitted); *accord League of Women Voters of Va. v. Va. State Bd. of Elections*, 458 F. Supp. 3d 460, 465 (W.D. Va. 2020) (explaining that courts in this circuit are "typically disinclined to allow intervenors who merely assert a 'generalized public

---

visited September 24, 2021), https://wvsuyellowjackets.com/sports/womens-soccer/schedule/2021 (showing West Virginia State's schedule of games against out-of-state schools).

[3] Even as to schools within West Virginia, Armistead's interests are not affected.  This Court has already recognized that the State was unable to adduce any evidence that a "problem" involving transgender student athletes exists, and Armistead similarly cannot point to any women who are transgender that she will compete against. *Cf.* ECF No. 67 at 1 ("At this point, I have been provided with scant evidence that this law addresses any problem at all, let alone an important problem.").

policy interest shared by a substantial portion of the population'"). Thus, Armistead's generalized claimed interest on behalf of "female athletes generally in West Virginia" is not a sufficient interest to warrant intervention here.[4]

Further, although Armistead claims to seek to represent "female athletes generally," by which she actually means "cisgender female athletes generally," Armistead fails to account for the reality that "cisgender female athletes generally" do not all oppose the participation of girls and women who are transgender in girls' and women's sports. *See, e.g.*, Br. of *Amici Curiae* 176 Athletes in Women's Sports, The Women's Sports Foundation, and Athlete Ally in Support of Plaintiffs-Appellees, *Hecox v. Little*, Nos. 20-35813, 20-35815, Dkt. 72 (9th Cir. Dec. 21, 2020); *Hecox*, 479 F. Supp. 3d at 946 (cisgender female athlete plaintiff challenged Idaho's law discriminating against transgender female athletes).

In short, Armistead provides no factual or legal support for her claim that seeking to generally exclude transgender women and girls entitles her to intervention.

C. Armistead Cannot Meet Her Burden To Show That Her Interests Are Not Adequately Represented By The Attorney General.

Even assuming Armistead has a legally protected interest impacted by this litigation, she would still be unable to carry her "heightened burden" of establishing that the State of West Virginia, represented by the Attorney General, does not adequately protect her interest. *N.C. State Conf. of NAACP*, 999 F.3d at 933.

---

[4] Contrary to Armistead's assertions, the intervenors in *Grutter* did not allege a generalized interest in ensuring "that the entire educational system was fair and equitable as a whole." ECF No. 95 at 8 (citing *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999)). Rather, the intervenors in *Grutter*, who were a group of potential applicants to the University of Michigan, alleged a specific interest in *their* educational opportunity to the University they had applied to, and an interest in preserving their ability to enroll at the University. *Grutter*, 188 F.3d at 400; *Gratz v. Bollinger*, 183 F.R.D. 209, 211 (E.D. Mich. 1998), *rev'd*, 188 F.3d 394 (6th Cir. 1999).

As the Fourth Circuit recognizes, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Stuart*, 706 F.3d at 349 (quotation marks omitted). That presumption "can only be rebutted by a showing of adversity of interest, collusion, or nonfeasance." *Id.* (quotation marks omitted). Moreover, when "the existing defendant in [the] case is a government agency," the proposed intervenor carries an even higher burden, as "a very strong showing of inadequacy is needed to warrant intervention." *Id.* (quotation marks omitted) (explaining "a heightened burden" applies when a government official is representing the state's interest). That is because "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government." *Id.* at 352.[5]

Here, the State of West Virginia, represented by the Attorney General, has already intervened and is vigorously defending H.B. 3293's legality.[6] Armistead concedes that she has the same "ultimate objective" as the State—upholding H.B. 3293 as constitutional and lawful under Title IX. ECF No. 95 at 16; *see Stuart*, 706 F.3d at 352 (holding the government agency and would-be intervenors had "the same ultimate objective" because each "want[ed] the statute to be constitutionally sustained"). Thus, a presumption of adequacy applies, and to overcome that presumption, Armistead bears a "heightened burden" of making a "'very strong showing of

---

[5] Armistead's reliance on *JLS, Incorporated v. Public Services Commission of West Virginia*, an unpublished and non-precedential opinion that was issued prior to the Fourth Circuit's 2013 decision in *Stuart*, is misplaced. 321 F. App'x 286, 292 (4th Cir. 2009). *JLS* does not articulate the governing law for determining motions to intervene.

[6] Multiple other state and county entities and officials are also defending against Plaintiff's challenge to H.B. 3293; they are independently represented by three additional sets of counsel. Although the State's presence and defense of H.B. 3293 are dispositive of Armistead's motion, the presence of these multiple other defendants opposing Plaintiff's challenge further reinforces that H.B. 3293 is more than adequately defended without Armistead's presence.

inadequacy'" by reference to either an "'adversity of interest, collusion, or nonfeasance.'" *N.C. State Conf. of NAACP*, 999 F.3d at 930, 933; *Stuart*, 706 F.3d at 349.[7]

Armistead does not even attempt to make a showing of "collusion" or "nonfeasance." Instead, Armistead alleges that her interests are "adverse to the State" and thus that her representation is supposedly inadequate only because she "has different litigation interests" from the State, "do[es] not share unity on all litigation objectives," and will raise arguments "different from and contrary to" the State's arguments. ECF No. 95 at 12–14. But under binding Fourth Circuit precedent, none of these asserted differences is sufficient to establish inadequate representation when an Attorney General is defending a state statute. In this Circuit, the "settled rule is that disagreement over how to approach the conduct of litigation is not enough to rebut the presumption of adequacy." *Stuart*, 706 F.3d at 353. Indeed, the Fourth Circuit is especially skeptical of private parties intervening in cases involving the government's defense of a statute, as the "government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation." *Id.* at 351.

Further, Armistead's claimed desire to emphasize certain arguments over others is insufficient to rebut the strong presumption of adequacy applicable here. *See Stuart*, 706 F.3d at 353–54 (quoting 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d ed. 2007) ("'A mere difference of opinion concerning the tactics with which the litigation should be

---

[7]Armistead incorrectly argues that she need only show that representation "may" be inadequate, citing to *Commonwealth of Virginia v. Westinghouse Electrical Corp.*, 542 F.2d 214, 216 (4th Cir. 1976), in support. ECF No. 95 at 10–11. But *Westinghouse* says no such thing. Instead, *Westinghouse* itself explicitly holds that, when a party seeking intervention has the "same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented," and the party seeking intervention "*must demonstrate adversity of interest, collusion, or nonfeasance.*" 542 F.2d 214, 216 (4th Cir. 1976) (emphasis added).

handled does not make inadequate the representation of those whose interests are identical with that of an existing party.'")).   An instructive example of why Armistead's argument for intervention fails is *United States v. North Carolina*, in which the proposed intervenors argued that they were not adequately represented because, among other things, proposed intervenors would raise legal arguments not raised by the state defendants.  No. 1:13CV861, 2014 WL 494911, at *3 (M.D.N.C. Feb. 6, 2014).  The court denied their motion to intervene, noting that "[n]one of these contentions is sufficient to rebut the presumption that the State Defendants will adequately represent the Proposed Intervenors' interests," because "it is undisputed that the Proposed Intervenors and the State Defendants both seek to uphold" the statute in question.  *Id*.  As the court further explained, "Proposed Intervenors' intention to emphasize certain legal arguments at the expense of others" cannot "create adversity of interests or malfeasance." *Id.* So too here: both Armistead and the State Defendants are seeking to uphold H.B. 3293, and any differences in legal argument that Armistead proposes are at most tactical disagreements about the best way to achieve that same end result.  As the Fourth Circuit has made clear, it cannot be that such disagreements "rebut the presumption of adequacy," because "[t]here will often be differences of opinion among lawyers over the best way to approach a case."  *Stuart*, 706 F.3d at 353–54.  Indeed, "[i]t is not unusual for those who agree in principle to dispute the particulars." *Id.* at 354.  So "[t]o have such unremarkable divergences of view sow the seeds for intervention as of right risks generating endless squabbles at every juncture over how best to proceed."  *Id.*

Finally, Armistead's speculation that the existing Defendants "*could* settle this case in a manner that could harm Armistead's interests or offer a narrowing construction of the law," ECF No. 95 at 13 (emphasis added)—despite these Defendants' ongoing vigorous defense—provides no basis for intervention.  To suggest that the State "may enter a settlement . . . or may not present

a vigorous defense . . . is to indulge in speculation," and Armistead "must present a good deal more than this to rebut the presumption of adequacy." *Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*, No. 8:18-CV-00961-PWG, 2018 WL 5846816, at *5 (D. Md. Nov. 8, 2018). Here, the State has answered B.P.J.'s First Amended Complaint; has asserted several affirmative defenses; has sought dismissal with prejudice of the First Amended Complaint; and is seeking to recover all of its costs, expenses, and fees. ECF No. 78 at 18. In materially identical situations, courts have found the government's representation adequate and denied intervention. *See, e.g.*, *Makhteshim*, 2018 WL 5846816, at *5 (finding presumption of adequacy unrebutted where state agency "answered the [plaintiffs'] Complaint, has asserted several affirmative defenses, has expressly denied that the [plaintiffs] are entitled to any relief, and has urged the Court to dismiss the action with prejudice," and where proposed intervenor "ha[s] not identified any signs of half-heartedness in the [State's] defense of this suit, let alone any signs of nonfeasance or collusion").[8]

Because Armistead has not met her high burden to rebut the presumption that the State is adequately representing her interests, she is not entitled to intervene as of right.

---

[8] In the face of binding circuit precedent, proposed intervenors argue that the district court in *Hecox* held that differences in litigation strategy were sufficient to establish that the Attorney General of Idaho did not adequately represent the interest of cisgender girls who sought to defend the legality of Idaho's ban on transgender girls participating in women's sports. 479 F. Supp. 3d at 955; *see* ECF No. 95 at 12–13. But as a district court in the Ninth Circuit, the *Hecox* court was not bound by Fourth Circuit precedent. Moreover, even if such arguments about litigation strategy were available, Armistead has not surmounted her high burden, as none of her proposed "contrary" arguments are actually "contrary" at all. Not only does Armistead admit that both she and the State are ultimately pursuing the same goal—that H.B. 3293 is consistent with Title IX and the Equal Protection Clause, *see* ECF No. 95 at 16—but there is no allegation or basis to conclude that she and the State have different readings of what H.B. 3293 does. Thus, this case involves facts materially distinguishable from those in *Hecox*, where the State expressly offered two narrowing constructions of the challenged statute that the proposed intervenors disputed, thereby triggering the "nonfeasance" factor recognized in *Stuart*.

## II.    ARMISTEAD SHOULD NOT BE GRANTED PERMISSIVE INTERVENTION.

This Court also should deny Armistead's request for permissive intervention.  Rule 24(b)

provides that a district court "may permit" intervention on "a timely motion" by someone who

"has a claim or defense that shares with the main action a common question of law or fact," subject

to the district court's consideration of "whether the intervention will unduly delay or prejudice the

adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).  As explained above,

Armistead's motion is untimely, *see supra* at I.A, and permissive intervention should be denied on

that basis alone.

Even if her motion were timely, permissive intervention still should be denied.  In

determining whether to grant permissive intervention, "the court must balance the delay threatened

by intervention against the advantages promised by it."  *Ohio Valley Env't Coal., Inc.*, 313 F.R.D.

at 30.  "A court does not err in denying permissive intervention when undue delay exists without

a corresponding benefit to the process, the litigants, or the court, especially where an existing party

zealously pursues the same ultimate objectives as a movant."  *Id.* (quotation marks omitted).

Granting Armistead's motion to intervene in this case would cause undue delay and prejudice to

the adjudication of Plaintiff's rights in multiple respects without any corresponding benefit.

The added burdens of intervention are significant.  "It is incontrovertible that motions to

intervene can have profound implications for district courts' trial management functions."  *Stuart*,

706 F.3d at 350.  "Additional parties can complicate routine scheduling orders, prolong and

increase the burdens of discovery and motion practice, thwart settlement, and delay trial."  *Id.*

Moreover, adding another intervenor at this stage, where there are already multiple defendants

(including the State, which intervened and then was named as a Defendant in the amended

complaint) will "necessarily complicate the discovery process and consume additional resources

16

of the court and the parties." *Id.* at 355 (quoting and affirming district court's denial of permissive intervention). That is especially so given that B.P.J. and Armistead are differently situated in numerous ways—they play different sports (cross-country vs. soccer), compete at different levels (middle school vs. NCAA college athletics), and are a decade apart in age. Permitting Armistead's intervention thus "would likely 'result in undue delay in adjudication of the merits, without a corresponding benefit to existing litigants, the courts, or the process' because 'the existing [d]efendants are zealously pursuing the same ultimate objectives' as [Armistead]." *Id.*

Further, there is good reason for "significant concern" that including Armistead will "detract from, rather than enhance, the timely resolution, clarity, and focus on, solely the weighty and substantive issues to be addressed in this case." *N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 172 (M.D.N.C. 2019). For example, although the Fourth Circuit's decision in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), is binding on this Court, Armistead intends to argue that "the Fourth Circuit got it wrong and misapplied Supreme Court precedent." ECF No. 95 at 14. Armistead highlights this argument as one of the primary ways that her arguments will differ from arguments raised by the Attorney General. *Id.* Because this Court has no authority to overrule Fourth Circuit precedent, Armistead's plan to argue that "the Fourth Circuit got it wrong" cannot possible provide any "benefit to the process, the litigants, or the court." *Ohio Valley Env't Coal., Inc.*, 313 F.R.D. at 30.

Armistead's intervention would also impose a particular burden on B.P.J. because Armistead's motion to intervene demonstrates that she intends to gratuitously misgender B.P.J. and other girls who are transgender by referring to them as "males." ECF No. 95 at 14. Respecting a person's gender identity—or at least refraining from gratuitously misgendering them—is common courtesy. *T.B. Jr. v. Prince George's City Bd. of Educ.*, 897 F.3d 566, 577 (4th Cir. 2018)

17

(describing student's harassment of transgender female teacher by referring to her as "Mr.," "sir," "he," and "him," as "pure meanness").  Courts routinely respect the gender identity of litigants by referring to them with appropriate pronouns and honorifics, and require counsel to do the same. *See, e.g.*, *Grimm*, 972 F.3d at 627 (Niemeyer, J., dissenting) (dissenting from the panel opinion while still acknowledging Gavin Grimm as a "transgender male" and using male pronouns when referring to him); *Canada v. Hall*, No. 18-CV-2121, 2019 WL 1294660, at *1 n.1 (N.D. Ill. Mar. 21, 2019) (stating "the Court would be derelict if it failed to note the defendants' careless disrespect for the plaintiff's transgender identity, as reflected through implications that the plaintiff might not actually be transgender and the consistent use of male pronouns to identify the plaintiff" and further "caution[ing] counsel against maintaining a similar tone in future filings").  Misgendering can especially distressing when directed at a young child like B.P.J.  *See, e.g.*, ECF No. 2-1 (Adkins Decl.) ¶¶ 25, 28; *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1099 (S.D. Cal. 2017) (describing hospital staff's discrimination against patient "by continuously referring to him with female pronouns, despite knowing that he was a transgender boy and that it would cause him severe distress").

In other litigation representing non-transgender girls seeking to exclude girls who are transgender from sports teams, Armistead's counsel have been repeatedly admonished that referring to girls who are transgender as "males" is needlessly inflammatory and disrespectful.  *See Soule*, 2021 WL 1617206, at *2 n.3 (noting that such language is "needlessly provocative"); *Hecox*, 479 F. Supp. 3d at 957 n.11 (noting that there were other ways to "make[] counsel's point without doing so in an inflammatory and potentially harmful manner").  But the motion to intervene indicates that Armistead's counsel intends to continue engaging in the same conduct in

this case. *See* ECF No. 95 at 2, 7, 10, 15 (referring to transgender female athletes as "males"); *id.* at 10 (calling B.P.J. a "male[] competing in women's sports").

Armistead's counsel's insistence on referring to girls who are transgender as "males" would also be disruptive as a practical matter.  For example, when the district court in *Soule* admonished counsel not to refer to girls who are transgender as "males," counsel moved to disqualify the district court judge, claiming the instruction displayed bias, and the parties spent over a month briefing the recusal motion.  *See Soule*, 3:20-cv-00201-RNC, ECF Nos. 103, 113, 119, 121 (D. Conn. June 16, 2020) (order denying motion to recuse).  Resolution of the litigation was further delayed when, after the district court granted intervention and denied the recusal motion, Armistead's counsel pursued a petition for writ of mandamus to the Second Circuit compelling the district court judge to recuse himself and further proceedings in the case were stayed in the meantime.  *See Soule,* 2021 WL 1617206, at *2.  More than six months elapsed between Armistead's counsel's motion asking the district court judge to recuse and the Second Circuit's order denying the petition.  *See Soule*, 3:20-cv-00201-RNC, ECF Nos. 103, 164.  Several months later, the district court granted defendants' motion to dismiss.  *Soule*, 2021 WL 1617206, at *10.  Armistead's counsel appealed the dismissal order and have asked the Second Circuit to reassign the case on remand because of the district court judge's supposed "unfair bias that would lead an objective observer to question his impartiality."  Br. for Appellants, *Soule*, No. 21-1365, Dkt. 40 at 48 (2d Cir. July 9, 2021).

Granting Armistead's motion to intervene would likely impair this case's efficient resolution, just as it did in *Soule*.  At a minimum, intervention would likely require the parties to litigate to prevent unnecessary emotional harm to B.P.J. and abusive discovery tactics.  Accordingly, this Court should deny permissive intervention to avoid delay and prejudice to the

original parties' rights. *See* Fed. R. Civ. P. 24(b)(3); *N.C. State Conf. of NAACP*, 999 F.3d at 939 (affirming district court's denial of permissive intervention where the court found that the proposed intervenors' "litigation conduct" showed it was likely that intervention would "distract from" the case).

* * *

Lainey Armistead has not satisfied the requirements for either intervention as of right or permissive intervention. This Court therefore should exercise its judgment to deny Armistead's motion. *See Stuart*, 706 F.3d at 349–50 (explaining that a district court's intervention rulings are granted significant deference, as they require district court judges to "exercise[] judgment based on their on the 'scene presence'" and involve "[q]uestions of trial management"). Notably, this "does not leave [her] without recourse," as she can always seek leave to file an amicus brief. *Id.* at 355.

**CONCLUSION**

For the foregoing reasons, the Motion to Intervene should be denied.

20

Dated: September 24, 2021

Respectfully submitted,

*/s/ Loree Stark*

Joshua Block*
Taylor Brown*
Chase Strangio*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: (214) 219-8585
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30
Phone: (404) 897-1880
ccharles@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO  80202-5686
Phone: (720) 566-4000
abarr@cooley.com

Loree Stark (Bar No. 12936)
AMERICAN CIVIL LIBERTIES UNION OF
WEST VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
lstark@acluwv.org

Kathleen Hartnett*
Julie Veroff*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com

Katelyn Kang*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

*Visiting Attorneys*

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON, | |
| *Plaintiff*, | |
| v. | Civil Action No. 2:21-cv-00316 |
| | Hon. Joseph R. Goodwin |
| WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, PATRICK MORRISEY in his official capacity as Attorney General, and THE STATE OF WEST VIRGINIA, | **CERTIFICATE OF SERVICE** |
| *Defendants*. | |

## CERTIFICATE OF SERVICE

I, Loree Stark, do hereby certify that on this 24th day of September, 2021, I electronically filed a true and exact copy of *Opposition to Motion to Intervene* with the Clerk of Court and all parties using the CM/ECF System.

/s/ Loree Stark
West Virginia Bar No. 12936