**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J, by her next friend and mother, HEATHER JACKSON, <br><br> *Plaintiff,* <br><br> v. <br><br> WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, PATRICK MORRISEY in his official capacity as Attorney General, and THE STATE OF WEST VIRGINIA, <br><br> *Defendants.* | Case No. 2:21-cv-00316 <br><br> Hon. Joseph R. Goodwin <br><br> Oral Argument Requested |

**PROPOSED INTERVENOR LAINEY ARMISTEAD'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................... iii

Introduction ............................................................................................................... 1

Argument ................................................................................................................... 1

    I.    Armistead is entitled to intervene as of right. ............................................... 1

        A.  Armistead's motion is timely. .................................................................. 2

        B.  Armistead has a protectable interest in seeing the Sports Act upheld. ...... 4

        C.  Armistead's differing underlying litigation objectives are more than mere strategy differences................................................................................ 8

    II.   Armistead has shown permissive intervention is appropriate. ..................... 9

Conclusion ............................................................................................................... 10

Certificate of Service............................................................................................... 12

# Table of Authorities

**Cases**

*American Federation of Teachers – West Virginia, AFF-CIO v. Kanawha County Board of Education,*
No. 2:08-CV-01406, 2009 WL 10705182 (S.D.W. Va. Jan. 14, 2009) ...................... 5

*Citizens United v. Federal Election Commission,*
558 U.S. 310 (2010) .................................................................................................. 7

*Feller v. Brock,*
802 F.2d 722 (4th Cir. 1986) .................................................................................... 1

*Gould v. Alleco, Inc.*
883 F.2d 281 (4th Cir. 1989) .................................................................................... 3

*Grimm v. Gloucester County School Board,*
972 F.3d 586 (4th Cir. 2020) .................................................................................... 9

*Grimm v. Gloucester County School Board,*
976 F.3d 399 (4th Cir. 2020) .................................................................................... 9

*Grutter v. Bollinger,*
188 F.3d 394 (6th Cir. 1999) .................................................................................... 7

*H.L. Hayden Co. of New York, Inc. v. Siemens Medical System, Inc.,*
797 F.2d 85 (2d Cir. 1986) ....................................................................................... 5

*Hecox v. Little,*
479 F. Supp. 3d 930 (D. Idaho 2020) ............................................................... 4, 5, 6

*JLS, Inc. v. Public Service Commission of West Virginia,*
321 F. App'x 286 (4th Cir. 2009) .............................................................................. 8

*John Doe No. 1 v. Reed,*
561 U.S. 186 (2010) .................................................................................................. 7

*North Carolina State Conference of the NAACP v. Cooper,*
No. 1:18-CV-1034, 2021 WL 3639493 (M.D.N.C. Aug. 17, 2021) ........................... 2

*Soule by Stanescu v. Connecticut Association of Schools, Inc.,*
No. 3:20-cv-00201, 2021 WL 1617206 (D. Conn. Apr. 25, 2021) ........................... 5

*South Carolina Electric & Gas Co., v. Whitfield,*
No. 3:18-cv-01795-JMC, 2018 WL 3613932 (D.S.C. July 28, 2018) .................... 2, 9

*Stuart v. Huff,*
706 F.3d 345 (4th Cir. 2013) .................................................................................... 3

*United States v. Texas Eastern Transmission Corp.,*
923 F.2d 410 (5th Cir. 1991) .................................................................................... 5

*Uzuegbunam v. Preczewski,*
  141 S. Ct. 792 (2021) .................................................................................................... 6

**Statutes**

W. Va. Code § 18-2-25d ................................................................................................... 1

## Introduction

Lainey Armistead is directly protected by West Virginia Code § 18-2-25d ("the Sports Act") and will suffer adverse consequences if the protections of that Act are enjoined. Unlike the State of West Virginia and the other defendants in this case, Armistead is in the class of persons directly impacted, and directly injured, by the relief sought by Plaintiff in this case. While some preliminary briefing and motions practice has taken place, this case has yet to be meaningfully discovered or litigated. Indeed, the Court's scheduling order recognizes this. Armistead filed her motion to intervene on September 10, 2021, two days after a scheduling order was entered and well over one month before the deadline for joinder for new parties on October 26, 2021. Scheduling Order at 1, ECF 93. None of Plaintiff's arguments, nor Plaintiff's irrelevant and spurious personal attacks on Armistead's counsel can overcome the timely filing of Armistead's motion and her personal, significant interest in the Sports Act. This Court should allow Armistead to intervene, both as of right and permissively.

## Argument

### I. Armistead is entitled to intervene as of right.

The Fourth Circuit embraces a liberal reading of Federal Rule 24 in favor of intervention: ". . . liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (citation omitted). Based on that liberal standard, Armistead's request for intervention should be granted.

### A. Armistead's motion is timely.

Plaintiff filed this case on May 26, 2021 and sought a preliminary injunction. Approximately three and one-half months later, the parties have not conducted any discovery, and only one substantive motion has been ruled upon.

The Court's Scheduling Order sets the deadline to amend pleadings and join parties on October 26, 2021. *See* Scheduling Order at 1, ECF 93. Armistead's request to intervene is not untimely when the Court ordered a deadline of October 26, 2021 to join parties and amend pleadings and Armistead filed her intervention request six weeks before that deadline. *Id.*

The case law that Plaintiff cites to the contrary misses the mark. In *North Carolina State Conference of the NAACP v. Cooper*, for instance, the proposed intervenor filed a motion to intervene approximately fifteen months after the case was initiated, after several motions had been filed and ruled upon, after a trial date had been set, and according to the court, after trial preparations commenced. No. 1:18-CV-1034, 2021 WL 3639493 *2 (M.D.N.C. Aug. 17, 2021). There, the litigation was "in an advance [sic] state." *Id.* Here, the timing is much different. Armistead sought intervention less than four months after suit was filed; the plaintiff in *Cooper* waited nearly an additional year more. Moreover, this Court has ruled upon only one substantive motion and discovery has not commenced. The procedural posture of this case is not "advanced."

Similarly, Plaintiff cites *South Carolina Electric & Gas Co., v. Whitfield*, No. 3:18-cv-01795-JMC, 2018 WL 3613932 (D.S.C. July 28, 2018). But intervention was denied in that case because the suit had progressed significantly, motions to dismiss were heard and ruled upon, and the potential intervenor did not satisfy the remaining elements for permissive intervention. *Id.* at *3. There, the length of time the lawsuit was pending was not a deciding factor.

Plaintiff also claims that "extensive litigation" has occurred, citing *Gould v. Alleco, Inc.* 883 F.2d 281, 286 (4th Cir. 1989). But in *Gould*, "extensive litigation" equated to two years of litigation and settlement negotiations, which resulted in a settlement proposal submitted to the court. But here, Armistead sought to intervene after only three and one-half months. In *Gould*, after over two years of battling, and after a settlement, the court found the case had been extensively litigated. Two years of litigation resulting in a settlement agreement typically can be described as extensive and is a far cry from the three and one-half months of litigation that has occurred in this suit.

Plaintiff next argues that Plaintiff "likely" would have sought a different scheduling order had Armistead's desire to intervene been known at the time. *See* Pl.'s Opp'n to Mot. to Intervene at 5, ECF 99. But Plaintiff has advanced no palpable change to the Scheduling Order Plaintiff might have desired, likely because no such modification would have occurred at this early juncture. Plaintiff points to dicta suggesting that additional parties can complicate routine cases but provides no specific evidence of such risk here. *Id.*, quoting *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013). Plaintiff's suggestion that the Court might *sua sponte* enter a modified scheduling order if it knew an additional party sought to be added is pure conjecture. That Armistead intends to advance a statement of the law that Attorney General Morrissey, Superintendent Burch, the State Board of Education, and the State of West Virginia acknowledged, but did not suggest was wrongly decided, does not interject an issue that would warrant a different scheduling order. There is no reason, or evidence, that Armistead's legal contention cannot be addressed within the confines of the schedule the parties agreed upon.

Plaintiff also argues that this Court cannot entertain an argument that Fourth Circuit precedent was wrongly decided. While this Court may be duty-bound to follow Fourth Circuit precedent, there is no other way to elevate a wrongly decided case to

3

the Fourth Circuit and, if necessary, to the U.S. Supreme Court than to raise it in the trial court. Plaintiff's characterization that such an argument could not provide any benefit to the process or litigants is misplaced.[1]

Plaintiff next takes Armistead to task for not attempting to intervene earlier because of the weighty decision litigation involves. Taking a public stand on the issues herein is not for the faint of heart; Armistead should have been allowed to reasonably contemplate whether she wanted to participate. And that is precisely what she did.

In all, Plaintiff will not be prejudiced by Armistead's addition to this lawsuit. With no scheduling or procedural downside, Armistead's motion to intervene is timely.

### B. Armistead has a protectable interest in seeing the Sports Act upheld.

#### 1. The statute was intended to protect athletes like Armistead.

As set out within Armistead's Memo, Armistead has a personal protectable legal interest because the Sports Act was written to protect athletes like Armistead. *See* Mem. in Supp. of Mot. to Intervene at 8, ECF 95.

Plaintiff responds by pointing to case law that considers whether potential intervenors with *no relation* to the underlying issue have a protectable interest. For example, Plaintiff cites *American Federation of Teachers – West Virginia, AFF-CIO v. Kanawha County Board of Education*, No. 2:08-cv-01406, 2009 WL 10705182

---

[1] Plaintiff has leveled an unwarranted and unfortunate personal swipe at counsel for Armistead. Counsel have neither said nor intended anything discourteous. They have written with necessary accuracy as the Sports Act addresses objective, physical differences between the sexes. Moreover, ad hominin attacks on counsel are not legitimate objections to Armistead's intervention. In fact, such a personal attack against counsel to dissuade intervention was expressly rejected in an analogous female athlete intervention in *Hecox v. Little*. There, the district court rejected arguments that intervenor athletes should be excluded because plaintiffs objected to counsel's language, saying that it was "not a reason to deny" the female athletes the "opportunity to intervene in support of a law to which they are intended beneficiaries." 479 F.Supp.3d 930, 957 (D. Idaho 2020).

4

(S.D.W. Va. Jan. 14, 2009). In *Kanawa*, this court found that Metro 911 did not have a protectable interest in rulings related to the Kanawa County Board of Education Employee Drug Use Prevention Policy. That was because any ruling on Kanawa's policy would not have a direct impact on Metro 911's drug policy, which no party in the suit was challenging. Here, Armistead's concern is not a drug policy unrelated to her employer, but a statute designed to protect her.

Plaintiff also cites *United States v. Texas Eastern Transmission Corp.*, 923 F.2d 410 (5th Cir. 1991), but in that case, Pennsylvania desired to intervene to object to a proposed settlement agreement between the Environmental Protection Agency and the State of Texas. The court pointed out that Pennsylvania was explicitly not included within the consent decree, and the decree did not affect Pennsylvania's ability to protect its citizens from environmental issues. Here, the Sports Act is a different animal; it is not a decree, but a statute written intending to affect student athletes like Armistead.

Further, Plaintiff relies upon *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 797 F.2d 85 (2d Cir. 1986), in which the Second Circuit confirmed a lower court's refusal to allow New York to intervene in a private action against two companies to attempt to modify a protective order entered into between private parties. A state's challenging a protective order between two private parties has little similarity with a statute designed to protect a proposed intervenor.

Plaintiff also cites *Hecox v. Little*, 479 F. Supp. 3d 930 (D. Idaho 2020) and *Soule by Stanescu v. Conn. Ass'n of Sch.*, Inc., No. 3:20-cv-00201, 2021 WL 1617206 (D. Conn. Apr. 25, 2021). Plaintiff argues those cases are factually different from this case, but all three cases involve similar issues. In *Hecox*, a male identifying as a female challenged Idaho's law guaranteeing equal opportunities for female athletes and the Court allowed female athletes to intervene to defend the law. 479 F. Supp. 3d at 952, 955, 958. In *Soule*, the court allowed male athletes who identify as females

5

to intervene to defend a school policy forcing female athletes to compete against male athletes. *Soule*, 2021 WL 1617206. If male athletes can intervene to defend the law enabling them to compete against female athletes, then surely Armistead can intervene to defend the law protecting her ability to compete on a fair, level playing field against other women in West Virginia. And if Plaintiff succeeds in striking down the Sports Act, Armistead's protection under the Sports Act will be destroyed. It does not matter that Armistead will not be involved in sports directly opposing Plaintiff. If the Sports Act is rescinded Armistead will be forced to play against physically advantaged biological males, and she will be directly impacted.

Plaintiff also suggests that Armistead may be subject to competing against other male athletes from other states. *See* Pl.'s Resp. in Opp'n to Mot. to Intervene at 9, ECF 99. But the fact that a particular law only partially protects an intervenor from a narrow harm does not mean—either logically or legally—that the intervenor has no interest in preserving that partial protection. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 794 (2021) (holding that "the partial remedy satisfies the redressability requirement"). The Sports Act provides protection for women and girls against unfair competition in West Virginia. The fact the Sports Act does not protect against all unfair competition from surrounding states does not mean that the Sports Act is invalid. If this were the case, no party could ever intervene as there would always be a possibility that the intervenor will not receive complete relief.

What's more, the Sports Act *does* protect Armistead from having to compete against men *for her spot on the team*. Even though she may have to compete against men identifying as women when competing against out of state schools, she will not have to compete directly against a male to secure a spot on her team. Making the team is a meaningful benefit and a meaningful risk if the law is undone. Armistead's interest in making her school's soccer team is protectable by the Sports Act.

6

And Armistead's interests are also relevant as this Court could still strike down the Sports Act on its face. Regardless of the relief Plaintiff seeks, facial relief is still on the table because "[t]he label is not what matters." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). After all, "the distinction between facial and as-applied challenges is not so well defined." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). This Court could provide broader facial relief to Plaintiff and even previously stated that it may still find the Sports Act "facially unconstitutional." Mem. Op. & Order, ECF 67. So Armistead's interests are still relevant as the Court could strike down her protections under the Sports Act.

### 2. Armistead should be allowed to speak on behalf of others who would also be harmed by not upholding the Sports Act.

In Armistead's Memo, Armistead argued that she has an interest in preserving competitions for female athletes personally and generally, just like the intervenors in *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999) had an interest in attending certain schools personally, but also ensuring the entire educational system was fair, equitable, promoted equal access, and was diverse. *See* Mem. in Supp. of Mot. to Intervene 7, ECF No. 95. In Plaintiff's Response, Plaintiff does not refute this argument. Rather, Plaintiff argues that because some other women athletes do not object to men who identify as women competing in women's sports, Armistead does not speak for all women. Plaintiff cites to an Amicus Brief in *Hecox v. Little*, No. 20-35813, 20-35815 (9th Cir. Dec. 21. 2020), Dkt. 72. (signed by several male athletes who identify as female) and notes one of the plaintiffs in *Hecox* is a female athlete who identifies as female. While Plaintiff is technically correct in that, at a minimum, an underlying plaintiff in *Hecox* is female, Armistead would like to speak for the substantial percentage of women who would be reluctant to compete against males who identify as female.

7

What's more, in addition to protecting sports generally, the Sports Act itself seeks to protect the female athletes who do object. The relevant question this Court has to answer is whether Armistead has an interest in seeing the law upheld. She does.

### C. Armistead's differing underlying litigation objectives are more than mere strategy differences.

To show Armistead's differing interests, Armistead does not have to show that the existing defendants' representation of Armistead's interests will be inadequate. Rather, Armistead needs only to show defendant's representation of Armistead's interests "may be" inadequate. *JLS, Inc. v. Public Service Comm'n of West Virginia*, 321 F. App'x 286, 289 (4th Cir. 2009) (citation omitted). A potential intervenor's burden to show other defendants' representation of Armistead's interests may be inadequate is only "minimal." *Id.*

Armistead easily meets that burden. She will be seeking the following explicit rulings that no other party intends to advance:

1. Title IX *requires* separate female sports teams that involve contests of strength or speed, which clearly furthers the underlying purpose of Title IX. *See* Mem. in Supp. of Mot. to Intervene at 14, ECF 95.;

2. Gender-identity discrimination may not correctly trigger heightened scrutiny. *Id.*;

3. West Virginia should provide different treatment for women athletes to advance equal athletic opportunities for all athletes. *See Id.* at 15.;

4. affording Plaintiff's requested relief discriminates based on gender identity, because men who identify as men cannot join women/girls' sports teams. *Id.*; and

5. the Court should not re-write the Sports Act to replace biological sex with gender identity. *Id.*

8

Plaintiff clearly acknowledges that Armistead is making different arguments than the State Defendants. Plaintiff references Armistead's cite to *Grimm v. Gloucester County School Board* and claims this new argument will slow down the litigation. 972 F.3d 586 (4th Cir. 2020), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020). Plaintiff cannot simultaneously claim that Armistead is making the same arguments as the State Defendants and also claim that Armistead is making different arguments from the State Defendants that will slow the case down. Plaintiff's contradictory arguments prove that the State Defendants do not perfectly represent Armistead's interests. But the State Defendants and Armistead's arguments are alike and will not slow the resolution of this case.

Plaintiff tries to couch Armistead's underlying desired specific rulings as "tactical disagreements." Specific rulings on the five above-listed issues are not tactical, but are additional, different issues, separate from the overall issue of upholding the Sports Act. Because none of these additional arguments will be made without Armistead being allowed to intervene, Armistead's interests are not adequately represented. That is, Armistead's interests are distinct and not fully aligned with the State Defendants.

## II. Armistead has shown permissive intervention is appropriate.

Courts should liberally construe requests for permissive intervention in favor of granting intervention. *South Carolina Electric & Gas Company v. Whitfield*, No. 3:18-cv-01795-JMC, 2018 WL 3613932, at *2. Permissive intervention should be granted when the party "has a claim or defense that shares with the main action a common question of law or fact." *Id.*

As Armistead has detailed above, her intervention is timely. Specifically, the case is in its early stages and the deadline to add claims or parties is weeks away.

9

Plaintiff suggests that because Plaintiff and Armistead are playing different sports, compete at different levels, and have different ages, including Armistead within this litigation, it would likely result in significant delays. Plaintiff's argument is pure conjecture; Plaintiff has no basis for suggesting these factors would cause any delay. And while Fed. R. Civ. P. 24(b) recognizes, and courts have suggested, that additional parties can cause delay, *see* Mem. in Supp. of Mot. to Intervene at 16, ECF 95, no such factual evidence or tangible arguments have been advanced to show delay is likely, or even possible. The factual differences here are also irrelevant if the Court facially enjoins the Sports Act. The Court should hear from the voices most protected by West Virginia's Sports Act and most affected if the Act is invalidated.

## Conclusion

Armistead deserves to be heard, for herself, and for other women in her position. Armistead has shown that she meets the test for intervention as a matter of right and permissive intervention. For these reasons, Armistead respectfully requests that this Court grant her application to intervene.

Respectfully submitted this 1st day of October, 2021.

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com

*Visiting Attorneys

Attorneys for Proposed Intervenor

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J, by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, PATRICK MORRISEY in his official capacity as Attorney General, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**Certificate of Service**

I, Brandon Steele, hereby certify that on October 1, 2021, I electronically filed a true and exact copy of ***Proposed Intervenor Lainey Armistead's Reply Memorandum in Support of Motion to Intervene*** with the Clerk of Court and all parties using the CM/ECF system.

/s/ Brandon S. Steele
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com

*Attorney for Proposed Intervenor*