**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J, by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**DEFENDANT-INTERVENOR LAINEY ARMISTEAD'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING VIRTUAL DEPOSITIONS IN LIGHT OF THE COVID-19 PANDEMIC**

TABLE OF CONTENTS

Table of Authorities ....................................................................................................................... iii

Introduction ..................................................................................................................................... 1

Argument ........................................................................................................................................ 1

    I.   The Omicron Variant, Standing Alone, Does Not Justify a Blanket Exemption from In-Person Depositions.................................................................................................................. 2

    II.   Witnesses Requesting a Remote Deposition Should Be Required to Show that an In-Person Deposition Presents an Undue and Unusual Risk to Their Health and Safety. .................. 4

    III.   The Court Should Extend the Time Limit of any Remote Depositions........................... 6

Conclusion ...................................................................................................................................... 7

Certificate of Service ...................................................................................................................... 9

**TABLE OF AUTHORITIES**

**Cases**

*Austin Air Systems, Ltd. v. Sager Electric Supply Company, Inc.*,
    No. 19-CV-562Si(F), 2021 WL 2416837 (W.D.N.Y. June 14, 2021).............................2, 5

*Crawford v. Blue Ridge Metals Corporation*,
    No. 1:19-CV-206 MOC WCM, 2020 WL 4001093 (W.D.N.C. July 15, 2020) .............4, 5

*Dubuc v. Cox Communications Kansas, LLC*,
    No. 21-2041-EFM, 2021 WL 4050855 (D. Kan. Sept. 5, 2021) .................................2, 3, 5

*In re Zantac (Ranitidine) Products Liability Litigation*,
    No. 20-MD-2924, 2020 WL 12442782 (S.D. Fla. Oct. 5, 2020).........................................7

*Lashley v. Spartanburg Methodist College*,
    No. 7:18-cv-2957-JD-KFM, 2021 WL 5991774 (D.S.C. Sept. 9, 2021) ....................5, 6, 7

*Macias v. Monterrey Concrete, LLC*,
    No. 3:19cv830, 2020 WL 6386861 (E.D. Va. Oct. 30, 2020) ........................................5, 7

*Manley v. Ballendir*,
    No. 18-cv-1220-EFM-TJJ, 2020 WL 2766508 (D. Kan. May 28, 2020) ...........................4

*Masimo Corporation v. Apple, Inc.*,
    No. 8:20-cv-00048-JVS (JDEx), 2021 WL 4618601 (C.D. Cal. May 11, 2021) ................5

*Pruco Life Insurance Company v. California Energy Development, Inc.*,
    No. 3:18-cv-02280-DMS-AHG, 2021 WL 5043289 (S.D. Cal. Oct. 29, 2021)..............2, 5

*Robinson v. Brennan*,
    No. 3:18-3460-MGL-PJG, 2020 WL 6469268 (D.S.C. Nov. 3, 2020) ...............................5

*Shaw v. DePhillips*,
    No. 20-cv-02528-AJB-KSC, 2021 WL 5862102 (S.D. Cal. Nov. 5, 2021) ................2, 4, 5

*Sutphin v. Ethicon, Inc.*,
    No. 2:14-cv-01379, 2020 WL 5229448 (S.D.W. Va. Sept. 1, 2020)...................................5

**Statutes**

Fed. R. Civ. P. 30.......................................................................................................................1, 2

**Other Authorities**

A. Pawlowski, *Is It Safe to Fly Right Now? What to Know about Air Travel and COVID-19*, Today, Dec. 17, 2021, https://on.today.com/3HVIMNK .............................................4

Centers for Disease Control and Prevention, *Domestic Travel During COVID-19*, Jan. 4, 2022, https://bit.ly/3JXyEFY ...................................................................................................3

David Leonhardt, *Omicron Is Milder*, New York Times, Jan. 5, 2022, https://nyti.ms/33c8rCV ........................................................................................................3

Erika Edwards, *Omicron Cases Could Fall Just as Quickly as They Rose, CDC Says*, NBC News, Jan. 7, 2022, https://nbcnews.to/3K3ddDy ......................................................4

Gabrielle Masson, *Omicron Patients Less Likely to be Hospitalized, Have Shorting Stays: 6 Study Findings*, Becker's Hospital Review, Jan. 4, 2022, https://bit.ly/3ngb3qc .............3

Leana S. Wen, *Omicron Is Bad. But We Don't Need to Resort to Lockdowns*, Washington Post, Jan. 3, 2022, https://wapo.st/3FirRD2 ................................................................3

Michaeleen Doucleff, *What We Know about the Symptoms—and the Severity—of the Omicron Variant*, NPR, Jan. 6, 2022, https://n.pr/3FfxemD .............................................3

Peter Russell, *Hospitalization Risk from Omicron "Around a Third of Delta,"* WebMD, Jan. 5, 2022, https://wb.md/3tjeEaW ..................................................................................3

West Virginia Department of Health & Human Resources Data, https://bit.ly/31SBuLm .............3

#### INTRODUCTION

Intervenor Lainey Armistead opposes Plaintiff B.P.J.'s motion for a protective order and disputes B.P.J.'s contention that *all depositions* should be held remotely.[1] Pl.'s Mot. for Protective Order ("Pl.'s Mot.") 1 n.1, ECF No. 169. The contention that all depositions be remote is misplaced and should play no part in the ruling on B.P.J.'s limited motion about three particular depositions.

Instead, in keeping with the approach followed by courts across the country, this Court should evaluate requests for remote depositions on a witness-by-witness basis. And B.P.J. should be required to demonstrate reasons specific to each witness that render an in-person deposition with appropriate COVID protocols unworkable. In particular, this Court should consider whether an in-person deposition poses materially more risk than the witness's normal daily activities and only allow a remote deposition if that witness can make such a showing. Further, should a witness actually justify a remote deposition, this Court should relax the usual time limits to account for the inevitable delays associated with technology and remote documents presentation. This is especially true for the expert depositions in this case, which will involve numerous and complex documents.

This case-by-case approach preserves in-person depositions as the standard mode for taking depositions set forth in Fed. R. Civ. P. 30. And it ensures that deviations from that norm are for legitimate, witness-specific health and safety reasons—not simply for witness or counsel convenience. By adopting this approach and rejecting any blanket request for remote depositions, this Court can provide a framework to guide the parties in hopefully agreeing to deposition parameters going forward.

#### ARGUMENT

B.P.J.'s approach to the Motion is backwards. In effect, B.P.J., citing nothing but generalized concerns about the pandemic, requests that this Court make remote depositions the default and require Defendants or Armistead to demonstrate the need for in-person depositions. But under Fed.

---

[1] Armistead adopts the State's arguments in opposition to Plaintiff's Motion with respect to the three depositions current scheduled for January 19-21, 2022.

R. Civ. P. 30(b)(4), it is B.P.J. who must demonstrate the need to depart from the general rule that depositions occur in person. The default rule in favor of in-person depositions accords with the mandate in Rule 30(c)(1) that deposition examinations "proceed as they would at trial," where in-person testimony is the standard. *Shaw v. DePhillips*, No. 20-cv-02528-AJB-KSC, 2021 WL 5862102, at *2 (S.D. Cal. Nov. 5, 2021) (rejecting request for remote deposition and noting that the district was conducting in-person jury trials).

Further, courts routinely recognize the benefits of in-person depositions, including the ability to personally assess the witness, engage and build rapport with the witness, easily examine the witness on key documents, and judge the witness's demeanor and body language. *See, e.g.*, *Pruco Life Ins. Co. v. Cal. Energy Dev., Inc.*, No. 3:18-cv-02280-DMS-AHG, 2021 WL 5043289, at *4 (S.D. Cal. Oct. 29, 2021) (denying request for remote deposition and outlining benefits of in-person depositions); *Austin Air Sys., Ltd. v. Sager Elec. Supply Co., Inc.*, No. 19-CV-562Si(F), 2021 WL 2416837, at *1 (W.D.N.Y. June 14, 2021) (denying request for remote deposition and noting "a deposing party has a valid interest in personally assessing the credibility of the deponent during the conduct of an oral deposition as reasonably necessary to the effective conduct of the deposition").

Here, B.P.J. cannot provide a valid reason for a blanket prohibition on in-person depositions. The Omicron variant alone provides no such reason. To the contrary, it is milder than prior variants of COVID-19, and public health experts are not recommending the suspension of normal business activities. Thus, for every remote deposition request, B.P.J. must make a specific showing that an in-person deposition poses a specific and unusual risk to the requesting witness. And in the unlikely event that B.P.J. can make such a showing, the Court should relax the seven-hour time limit to reduce prejudicial loss of questioning time inevitably attendant to a remote deposition.

I. **The Omicron Variant, Standing Alone, Does Not Justify a Blanket Exemption from In-Person Depositions.**

Throughout the pandemic, and particularly since the wide availability of vaccines, courts have ruled that parties can conduct in-person depositions safely. *See, e.g.*, *Dubuc v. Cox Commc'ns*

*Kan., LLC*, No, 21-2041-EFM, 2021 WL 4050855, at *2 (D. Kan. Sep. 5, 2021) (noting that an in-person deposition "can be conducted consistent with the CDC guidelines").

This remains true. With the Omicron variant, the risks of severe disease, hospitalization, and death are distinctly lower for vaccinated people[2] than they were with prior variants. *See, e.g.*, Peter Russell, *Hospitalization Risk from Omicron "Around a Third of Delta"*, WebMD, Jan. 5, 2022, https://wb.md/3tjeEaW; Michaeleen Doucleff, *What We Know about the Symptoms—and the Severity—of the Omicron Variant*, NPR, Jan. 6, 2022, https://n.pr/3FfxemD; Gabrielle Masson, *Omicron Patients Less Likely to be Hospitalized, Have Shorting Stays: 6 Study Findings*, Becker's Hosp. Rev., Jan. 4, 2022, https://bit.ly/3ngb3qc. West Virginia's data bears out these trends, as hospitalizations, ICU admissions, ventilator use, and deaths all remain lower than they were this fall when Delta was the dominant variant, despite a higher number of infections. *See* West Virginia Dep't of Health & Hum. Res. Data, https://bit.ly/31SBuLm.

These data explain why public health experts are recommending vaccination, masking, and social distancing, rather than avoiding normal professional and social obligations. *See, e.g.* David Leonhardt, *Omicron Is Milder*, N.Y. Times, Jan. 5, 2022, https://nyti.ms/33c8rCV (noting that Omicron "present[s] less threat to most vaccinated elderly people than the annual flu does"); Leana S. Wen, *Omicron Is Bad. But We Don't Need to Resort to Lockdowns*, Wash. Post, Jan. 3, 2022, https://wapo.st/3FirRD2 ("[I]t's unreasonable to ask vaccinated people to refrain from pre-pandemic activities."). Accordingly, Omicron alone is not a reason to avoid an in-person deposition.

In the same vein, the CDC is **not** recommending against domestic air travel for vaccinated people. It is merely recommending that people delay travel until they are fully vaccinated, which is entirely within each deposition participant's control. Centers for Disease Control and Prevention, *Domestic Travel During COVID-19*, Jan. 4, 2022, https://bit.ly/3JXyEFY. Indeed, it does not appear that domestic air travel is any more dangerous than other everyday activities like

---

[2] Armistead assumes that Plaintiff's counsel and witnesses have access to vaccination.

going to the grocery store. *See, e.g.*, A. Pawlowski, *Is It Safe to Fly Right Now? What to Know about Air Travel and COVID-19*, Today, Dec. 17, 2021, https://on.today.com/3HVIMNK. Thus, the need for air travel does not justify precluding in-person depositions.[3]

Further, public health officials expect Omicron to be short-lived. Dr. Rochelle Walensky, director of the Centers for Disease Prevention and Control, recently described Omicron's likely trajectory as an "ice pick" rather than a "wave." Erika Edwards, *Omicron Cases Could Fall Just as Quickly as They Rose, CDC Says*, NBC News, Jan. 7, 2022, https://nbcnews.to/3K3ddDy. Under the current Scheduling Order, the parties' deposition deadline is not until late March and expert depositions may not take place for several months. So any suggestion that in-person depositions should be taken off the table in early January is particularly misplaced.

In sum, Omicron alone does not justify holding all depositions in this case remotely, as it is well established that normal COVID protocols[4] are sufficient for vaccinated people to travel and carry on with their usual professional lives.

**II. Witnesses Requesting a Remote Deposition Should Be Required to Show that an In-Person Deposition Presents an Undue and Unusual Risk to Their Health and Safety.**

In evaluating requests for remote depositions during the COVID pandemic, courts have typically required "more than generalized statements of risk" to justify a departure from the general rule that depositions are in person. *Shaw*, 2021 WL 5862102, at *2; *accord Manley v. Ballendir*, No. 18-cv-1220-EFM-TJJ, 2020 WL 2766508, at *3 (D. Kan. May 28, 2020) (rejecting request for remote deposition where deponent failed to demonstrate deponent-specific risk associated with COVID); *Dubuc*, 2021 WL 4050855, at *2 (same); *Crawford v. Blue Ridge Metals Corp.*, No. 1:19-CV-206 MOC WCM, 2020 WL 4001093, *2 (W.D.N.C. July 15, 2020) (same).

---

[3] Given that all parties to this case have counsel in West Virginia, air travel is not required in any event for any in-person depositions.

[4] It is Armistead's understanding that the State has offered to hold the depositions with limited in-person attendance in a room that is more than 1,600 square-feet large, allowing for more than adequate distancing among attendees.

Instead, courts have considered the specific risks to the witness at issue.[5] Where the risks caused by in-person deposition do not meaningfully differ from those risks the witness would otherwise encounter in her daily life, courts have required in-person attendance. *See, e.g.*, *Crawford*, 2020 WL 4001093, at *2 (witness regularly worked 7.5-hour in-person shift at factory); *Pruco Life Ins. Co.*, 2021 WL 5043289, at *4 (witness attended court hearings and business meetings). Likewise, when deponents could not demonstrate that an in-person deposition caused risks different than those deponents normally encounter, courts have denied their request for remote depositions. *See, e.g.*, *Dubuc*, 2021 WL 4050855, at *2 (no indication that deposition presented unusual risk to deponent); *Masimo Corp. v. Apple, Inc.*, No. 8:20-cv-00048-JVS (JDEx), 2021 WL 4618601, at *2 (C.D. Cal. May 11, 2021) (requiring certification that deponents had not worked in person or attended any work meetings in prior 30 days before permitting remote depositions); *Austin Air Sys.*, 2021 WL 2416837, at *1 (holding plaintiff "failed to particularize an overriding safety or health related concern"); *Shaw*, 2021 WL 5862102, at *2 (rejecting deponent's "generalized statements of risk"); *Robinson v. Brennan*, No. 3:18-3460-MGL-PJG, 2020 WL 6469268, at *2 (D.S.C. Nov. 3, 2020) (rejecting "generalized [COVID] concerns not specific to the witnesses").

A witness-specific assessment is particularly apt in this case, where Armistead will seek to depose B.P.J.'s experts. Presumably, these experts are engaging in normal professional activities that carry a risk level similar to or greater than that of an in-person deposition. While B.P.J.'s expert deadline has not yet run, Armistead presumes B.P.J. will name at least the three experts presented in the Motion for a Preliminary Injunction: Joshua Safer, Deanna Adkins, and Mary Fry.

---

[5] Notably, even the cases Plaintiff cites included an individual assessment of risk and far different facts than anything Plaintiff has presented here. *See, e.g.*, *Macias v. Monterrey Concrete, LLC*, No. 3:19cv830, 2020 WL 6386861, at *3 (E.D. Va. Oct. 30, 2020 ) (deponents were in Mexico subject to travel restrictions); *Sutphin v. Ethicon, Inc.*, No. 2:14-cv-01379, 2020 WL 5229448, at *2 (S.D.W. Va. Sept. 1, 2020) (allowing remote trial testimony where courtroom would involve far more people than an attendance-limited deposition); *Lashley v. Spartanburg Methodist Coll.*, No. 7:18-cv-2957-JD-KFM, 2021 WL 5991774, at *3 (D.S.C. Sept. 9, 2021) (allowing second deposition of party to be conducted remotely where counsel already had the opportunity to assess witness in person).

Drs. Safer and Adkins are both practicing physicians at large medical centers who, at least from the information available, appear to be seeing patients in person. Safer Information, attached hereto as <u>Exhibit A</u>; Adkins Information, attached hereto as <u>Exhibit B</u>. Likewise, Dr. Fry is a professor at the University of Kansas who, from the information available, appears to be scheduled to teach at least one in-person lecture class this semester, as well as to supervise other student work and research.[6] Fry Information, attached hereto as <u>Exhibit C</u>.

These are precisely the kinds of activities that militate against allowing a witness to demand a remote deposition. Serving as an expert witness is a professional commitment, and experts who are fulfilling other in-person professional commitments should not be heard to complain about attending an in-person deposition with appropriate COVID protocols. Their example brings into sharp relief the need for an individualized assessment of any request for remote depositions and the impropriety of B.P.J.'s suggestion that all depositions be remote.

## III. The Court Should Extend the Time Limit of any Remote Depositions.

If B.P.J. can justify holding a specific witness's deposition remotely, the Court should extend the usual seven-hour deadline to address the additional time that remote depositions inevitably take. Such an extension is particularly needed for expert witnesses, which typically involve a large value of documents and a great deal of time spent flipping among different documents.

While remote technology certainly allows witnesses to review documents electronically, or to have them printed out in advance, nothing replaces the ease and seamlessness of handing a witness a document, flipping through it as the witness does, directing a witness among documents that are sitting in front of both questioner and witness, and glancing over a table to make sure the questioner and witness are on the same page. Thus, courts—including those cited by B.P.J.—regularly acknowledge that document-intensive remote depositions take longer than their in-person equivalent and allow additional time. *See, e.g.*, *Lashley*, 2021 WL 5991774, at *3 (refusing

---

[6] If these witnesses can certify by affidavit that they are not, in fact, conducting any in-person professional activities, then Armistead would be willing to entertain other options, such as delaying in-person expert depositions, unusual in-person protocols, or holding expert depositions remotely with the additional time limits discussed in Section III, *infra*.

deponent's request to impose a time limit on remote deposition, even though deponent's first deposition approached traditional seven-hour limit); *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2020 WL 12442782, at *6 (S.D. Fla. Oct. 5, 2020) (ordering parties to allow each other "adequate additional time to conduct a fair examination" during remote depositions); *Macias*, 2020 WL 6386861, at *6 (acknowledging validity of concerns that remote depositions will take longer).

The specific need for additional time will naturally vary by deposition. Accordingly, at this stage, Armistead defers to the State with respect to how much additional time would be needed for the three witnesses currently scheduled for January 19-21, 2022. As for other witnesses, Armistead would simply request that, in the event the Court orders other depositions to occur remotely, the Court should expressly note that the usual time restraints are relaxed and order the parties to try to come to agreement on the amount of additional time.

## CONCLUSION

For the foregoing reasons, Armistead respectfully requests that B.P.J.'s Motion be denied, that B.P.J.'s statement that all depositions in the case should be conducted remotely play no part in the Court's consideration of B.P.J.'s Motion, that B.P.J. be required to present witness-specific reasons for any request for remote depositions going forward, and that the usual seven-hour time restraints be relaxed for any depositions that are ordered to be conducted remotely.

7

Respectfully submitted this 11th day of January, 2022.

                                                              */s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com

*\*Visiting Attorneys*

*Attorneys for Defendant-Intervenor*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J, by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Brandon S. Steele, hereby certify that on January 11, 2022, I electronically filed a true and exact copy of ***Defendant-Intervenor's Response in Opposition to Plaintiff's Motion for Protective Order Regarding Virtual Depositions in Light of the COVID-19 Pandemic*** with the Clerk of Court and all parties using the CM/ECF system.

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com

*Attorney for Proposed Intervenor*