IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**B. P. J., by her next friend and mother, HEATHER JACKSON,**

    Plaintiff,

v.

**WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH, in his official Capacity as State Superintendent, DORA STUTLER, in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,**

    Defendants.

**and LAINEY ARMISTEAD,**

    Intervenor Defendant.

**CIVIL ACTION NO. 2:21-cv-00316**
**Judge Joseph R. Goodwin**

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING VIRTUAL DEPOSITIONS IN LIGHT OF COVID-19 PANDEMIC

NOW COMES Defendant, State of West Virginia (the "State"), by counsel, and, respectfully submits its response in opposition to "Plaintiff's Motion for Protective Order Regarding Virtual Depositions in Light of COVID-19 Pandemic" (the "Motion").

### INTRODUCTION

On January 6, 2022, Plaintiff filed the Motion asking this Court to require the depositions of Plaintiff, Plaintiff's mother, and Plaintiff's father to proceed virtually. *See* Plaintiff's Motion at p. 1. The stated reason for this motion is "to avoid undue risk of COVID-19 transmission." *Id.* The Motion states that COVID-19, particularly the Omicron variant, poses severe risks, noting that "Governor Jim Justice has encouraged West Virginians to take reasonable precautions to avoid the

spread of this disease." *Id.* at p. 2-4.

Plaintiff is an 11-year-old child and Plaintiff's parents are both medical professionals. *Id.* at p. 4.[1] In regards to providing their deposition testimony, the Motion relates that Plaintiff and Plaintiff's parents are "concerned about the risk of COVID-19 exposure and infection posed by sitting in close quarters with a large group of people (*i.e.* questioning attorney, defending attorney, court reporter, videographer, etc.) for an extended period of time." *Id.* at p. 4-5.

The State appreciates and understands such concerns and has striven to find reasonable and appropriate accommodations to address and mitigate the potential risk of transmission of COVID-19 for these depositions. The State has already communicated to Plaintiff the reasonable measures they are willing to take and that can be taken here in order to conduct safe, efficient, and effective in-person depositions. Despite these measures (detailed herein below), the Motion insists that the only means by which to safely conduct deposition is entirely virtual, except for one defending counsel in the room with the witness during questioning. *Id.* at p. 12. There is a variety of factors and conditions to consider and, in many ways, control when evaluating whether safe depositions can be conducted as we trend toward the beginning of year 3 living with COVID-19. One end of that spectrum is an entirely virtual forum but it must still include reasonable accommodations for in-person depositions when possible. It is within the area of reasonable accommodation that the State raises their objections to the relief argued by the Motion as the only way forward.

**ARGUMENT**

Federal Rule of Civil Procedure 26(c)(1) provides that the court may, for good cause, issue an order protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense" in the discovery process. Fed. R. Civ. P. 26(c)(1). *See Lashley v. Spartanburg Methodist College,* No. 7:18-CV-2957-JD-KFM, 2021 WL 5991774, at *3 (D.S.C. Sept. 9, 2021). The

---

[1] It is presumed that Plaintiff attends in-person schooling and that Plaintiff's parents attending to their respective job duties in-person.

2

burden of demonstrating good cause is on the party seeking relief, who must make a specific showing of fact to demonstrate good cause, rather than "stereotyped and conclusory statements." *See Lashley* quoting 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure § 2035* (3d ed. 2020). The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *See Lashley* citing to *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Federal Rule of Civil Procedure 30(b)(4) provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." *Id.* While Rule 30 "does not specify the showing that a party must make to support a motion for a remote deposition[,] . . . courts generally have held that the moving party must put forward 'a legitimate reason' to conduct the deposition remotely." *Macias v. Monterrey Concrete LLC*, C.A. No. 3:19-CV-0830, 2020 WL 6386861, at *2 (E.D. Va. Oct. 30, 2020) (citations and internal marks omitted). If the movant makes this showing, the opposing party then bears the burden of demonstrating how prejudice inures from "if the deposition were taken in that way. *Id.* (citation and internal quotation marks omitted). The court, of course, may exercise its discretion in resolving such a motion for a remote deposition. *Id.* (citation omitted).

The Motion asserts that a legitimate reason for a Protective Order exists because COVID-19, including its most recent variant, continues to be a persistent public (and personal) health threat. Further, the Motion asserts that the State will not be prejudiced by conducting the depositions of Plaintiff and Plaintiff's parents virtually. The State clearly acknowledges that COVID-19 remains extant—that is obvious. But the State counters that, first, the continued presence of COVID-19, including the Omicron variant, itself is not sufficient to demonstrate a legitimate reason to entirely prohibit depositions in-person. Second, the State would be prejudiced by a protective order as there are advantages to in-person depositions over virtual ones, as the Motion itself acknowledges. *See* Plaintiff's Motion at p. 10 and 12.

I.   **The Motion has not demonstrated a legitimate reason to forgo all in-person depositions.**

As with any transmissible disease, COVID-19 has presented a concern of risk for everyone from the time the pandemic began to dawn 3 years ago. In the context of a controlled and planned in-person event, such as trial or deposition, the consideration of those concerns often seems to be driven by "what-if" worst-case scenarios that may or may not be reasonable. There is a possibility that anyone at any event, activity, or location with other people may be exposed to COVID-19. In West Virginia, this potential risk has not resulted in renewed lockdowns of public spaces or activity in locations with practically no mandatory controls, like mask requirements. Regardless, there are other controlled environments with measures in place to deal with the evaluated risk potential, such as mask requirements in Harrison County public schools.[2] Protective and preventive measures like this reflect an evaluative determination of overall risk and appropriate measures to ameliorate that risk based on what is known presently about COVID-19. The CDC's recent media release on December 27, 2021, is another example; the CDC determined, based on what is known about COVID-19 and the Omicron variant, that isolation time for the public with COVID-19 should be reduced to 5 days instead of 10.[3]

Increased knowledge, experience, and understanding empower heightened capacity to evaluate and manage the risk of exposure to COVID-19. Consider, for example, that at the in-person trial conducted here in the Southern District (Huntington Division) during summer 2020 for *Nelson v. Warner* (Case No. 3:19-cv-898), a plaintiff's expert witness was permitted to testify remotely from California due only to a health condition and the unquestionably high risk of exposure via lengthy air travel that, at that time, was extremely difficult to mitigate. By contrast, under the "Public Health Guidance for Potential COVID-19 Exposure Associated with Travel"

---

[2] https://www.harcoboe.net/article/619604
[3] https://www.cdc.gov/media/releases/2021/s1227-isolation-quarantine-guidance.html

available on the CDC's website (last checked January 11, 2021), the CDC states that fully vaccinated domestic travelers do not need to self-quarantine due to travel and should only isolate and get tested if they develop COVID-19 symptoms.[4] The CDC has not indicated that a severe risk of exposure from domestic travel exists, which illustrates the impact of knowledge and advancement in mitigation options and also stands contrary to the Motion's argument that out-of-state counsel would endanger "all individuals involved in the proceeding" if the depositions were conducted in-person. Plaintiff's Motion at p. 5.

During the two years since COVID-19 was first identified, authorities and health professionals have developed several means to combat and reduce the threat of the virus (*i.e.* social distancing, vaccinations, therapeutics, and other treatments). Yet in-person depositions do not present an inherently greater risk of exposure than attending work or school. Despite the greater transmissibility of Omicron, the Motion does not articulate an actual increase risk to participant's actual health from attending an in-person deposition other than conclusory statements concerning the risk of COVID-19 transmission.

The Motion declares that the only means by which to safely conduct depositions is virtually. The State believes that appropriate and reasonable accommodations can be made and are presently available to safely hold in-person depositions using a hybrid model of both in-person and virtual forums, which had been previously discussed by all parties as the best approach here. As all parties are aware, counsel for two of the other defendants has graciously agreed to provide a facility of 1600-plus square feet, and, thanks to use of technology to allow virtual attendance of all counsel other than those of the questioning party and the counsel defending the deposition (which had been agreed in December), the number of people physically attending can feasibly be limited to 5 (for parent deposition) or 6 (for Plaintiff's deposition). The State never presented 6 feet as a ceiling on distancing as seemingly asserted by the Motion, *see* Plaintiff's Motion at p. 9,

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/php/risk-assessment.html

and in the January 6, 2021, email attached to the Stark Declaration, see Stark Declaration, Ex. C, at p. 1. To the contrary, the State suggested the now-familiar 6 feet of spacing as a minimum, even stating "6, 8, or even more feet of separation" that can be accommodated in this spacious, secured facility along with physical barriers between attendants, as well as requiring masks for everyone other than deponent and questioner. These accommodations are not unreasonable, align with CDC recommendations as well as local guidelines, help to further mitigate an already low risk of threat to any attendant's health, and allow for the best forum of in-person depositions while also permitting as many counsel to attend remotely as would like.

The State has been most aware of Plaintiff's concerns and has been very willing to make reasonable accommodations to mitigate the risks with the ultimate goal of preserving in-person depositions. For example, traditionally, depositions are conducted in the jurisdiction in which the Plaintiff has filed the cause of action. *See Clayton v. Velociti, Inc.*, No. 08-2298-CM/GLR, 2009 WL 1033738 (D. Kan. Apr. 17, 2009). The State deferred the convenience of holding depositions in Charleston, West Virginia—where this action was filed—instead setting them to be held in Bridgeport in Harrison County, close to Plaintiff's home.[5] The State has been sensitive to Plaintiff's concerns and has been accommodating and reasonable in order to hold depositions in-person.[6] That being said, considering the protective measures and other factors in totality for these depositions, the limited unmasking does not appear to present the type of reason to justify no version of in-person depositions.

For the past two years, COVID-19 has been a cause for health concern for everyone. However, as the circumstances exist today, COVID-19 and its series of variants is not an unassailably-sufficient reason to prohibit in-person depositions when reasonable actions can be

---

[5] This and other efforts are outlined in a January 6, 2022, email from the State's counsel continuing the deposition logistics discussion. *See* Stark Declaration, Exhibit C, at p. 2-3.
[6] The State's understanding following the January 4, 2022, meet and confer was that the only issue to be resolved for in-person depositions was regarding whether or not all person present should be masked at all times. *See* Stark Declaration, Exhibit C, at p. 2-3.

taken to mitigate risk and preserve safety. The Motion does not establish how deponents will be at increased risk of exposure to COVID-19 under the conditions that would be present in the 1600-plus square foot space available for in-person depositions; it seems like the risk potential there would be significantly below that experienced in deponents' daily lives. The Motion does not present any medical reason (*i.e.* doctor's note, medical history, or diagnosis) indicating that deponents personally would be at any greater risk to COVID-19 in attending a deposition in an expansive space with a small number of people, who will be wearing masks save for one distant individual.[7] The Motion points out that Plaintiff's parents are both medical professionals and an in-person deposition would put them at risk of potential COVID-19 exposure. As explained above, the risk protection measures that would be present are very robust, and the Motion does not detail how these measures would not manage exposure risk sufficiently.[8]

**II.     Defendant will experience prejudice with only-virtual depositions.**

The fully-virtual deposition format will prejudice the Defendant. The conclusion of the Motion requests that the depositions of Plaintiff and Plaintiff's parents occur fully virtually by video conferencing, which completely disregards any mitigating factors that could easily be put in place to facilitate in-person depositions. The Motion contemplates all participants to appear remotely, except for one defending counsel to be in the room with the witness and one of B.P.J's parents to be in the room when Plaintiff is deposed. First, the exception for Plaintiff's counsel to be present in the room contradicts the arguments presented in the Motion concerning an unacceptable risk of exposure due to travel. Plaintiff's counsel will have to travel to attend the deposition, which, according to the Motion, endangers "all individuals involved in the proceeding." *See* Plaintiff's Motion at p. 5. Plaintiff's format would seemingly create a group of people

---

[7] By comparison, the plaintiff in *Lashley* had a doctor's communication informing of that person's autoimmune disease as a basis for the necessity of remote deposition. *See Lashley* 2021 WL 5991774, at *3.

[8] Also, to the extent the Court finds it informative for its evaluation, the CDC has provided interim guidance for managing healthcare personnel ("HCP") vis-à-vis concerns for COVID-19 or exposed to COVID-19. As updated on December 23, 2021, the CDC's key points state that "[i]n asymptomatic HCP who have had a higher-risk exposure do not require work restriction if they have received all COVID-19 vaccine doses, including booster dose, as recommended by CDC and do not develop symptoms or test positive for SARS-CoV-2." *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/guidance-risk-assesment-hcp.html.

sitting in close quarters for an extended period of time, a condition which (according to the Motion) is cause for concern of COVID-19 exposure. *Id* p. 4-5. Second, the Motion seeks for all depositions to be held virtually "such that no side would have any arguable advantage from differential deposition formats." *Id.* at p. 10. Hence, this statement implicitly acknowledges that there are advantages and disadvantages between different deposition formats. Although Plaintiff is willing to accept prejudice created by entirely virtual depositions, the State is not obligated to do so.

Clearly, as the Motion recognized, there are advantages and disadvantages between remote and in-person depositions. Plaintiff presents some observations as advantages of virtual depositions, such as no need to travel, purportedly complete safety from exposure to COVID-19, and better view of facial expressions since no one will need to wear a mask. However, Defendant contends that these advantages do not outweigh the disadvantages inherent to depositions via video conferencing. Remote depositions lack the opportunity for the depth of human interaction that an in-person proceeding would allow. It is more challenging if not impossible to establish the same type of rapport between questioner and deponent through a computer monitor as compared to in-person, a fact which is heightened when one deponent is a child. Additionally, in-person deposition allows for the questioner and deponent to read non-verbal ques such as body language, posture, and interaction with others and the environment. Accordingly, in-person depositions provide a controlled setting with little to no distractions. Several concerning problems can easily arise from remote depositions: lack of a controlled and distraction-free environment, the deponent may have access to and may avail themselves of materials and information outside of what the questioner is presenting, greater opportunity for improper communications between deponent and deponent's counsel or for a third-party to become involved off-screen. Some additional concerns that arise from virtual depositions is that speaking through a computer screen creates a barrier between questioner and deponent that can result in parties being less than civil with each other. Typically, people speaking to face tend to be more polite and responsive to one another.

Finally, depositions taken via video conferencing are relying on the technology available, including broad band internet, to function seamlessly over the course of many hours for several days for every party. Unfortunately, this is not a certainty that can be taken for granted. Technological problems have notable

potential to cause undue delays within an already abbreviated discovery period, let alone create potential concern over the accuracy of words and images that may be impacted by necessary electronic transmission. A virtual deposition is successful and efficient if, at minimum the witness is civil; answers questions when asked; has appropriate and fully-functional technology to facilitate the deposition, including internet, camera, lighting, and sound; can avoid distraction from the surrounding environment; and is not presented with any verbal or non-verbal influence by those in attendance yet off-screen.  The disadvantages of remote depositions under the circumstances of this case are sufficient to prejudice the State should the Plaintiff's Motion for a Protective Order be granted.

## CONCLUSION

WHEREFORE, for all the reasons set forth above, Defendant respectfully requests that the Plaintiff's Motion for Protective Order Regarding Virtual Depositions in Light of COVID-19 Pandemic be denied and the depositions be allowed to proceed in-person.

Respectfully submitted by counsel:

STATE OF WEST VIRGINIA,

By counsel,
PATRICK MORRISEY,
ATTORNEY GENERAL

*/s/ Curtis R. A. Capehart*
Douglas P. Buffington, II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Curtis R. A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
David C. Tryon (visiting attorney admitted pro hac vice)
  *Special Assistant to the Attorney General*
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220
Email: Curtis.R.A.Capehart@wvago.gov
Telephone: (304) 558-2021
Facsimile: (304) 558-0140

*Counsel for Defendant,*
*STATE OF WEST VIRGINIA*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**B. P. J., by her next friend and mother, HEATHER JACKSON,**

    Plaintiff,

v.

**WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH, in his official Capacity as State Superintendent, DORA STUTLER, in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,**

    Defendants.

**and LAINEY ARMISTEAD,**

    Intervenor Defendant.

CIVIL ACTION NO. 2:21-cv-00316
Judge Joseph R. Goodwin

## CERTIFICATE OF SERVICE

    I hereby certify that, on this 11th day of January, 2022, I electronically filed the foregoing "*Response in Opposition to Plaintiff's Motion for Protective Order Regarding Virtual Depositions in Light of COVID-19 Pandemic*" with the Clerk of Court and all parties using the CM/ECF System.

                                                       */s/ Curtis R. A. Capehart*
                                                       Curtis R. A. Capehart