IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>                    *Plaintiff*,<br>      v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>                    *Defendants*,<br><br>                    and<br><br>LAINEY ARMISTEAD,<br><br>                  *Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin<br><br>**PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING VIRTUAL DEPOSITIONS IN LIGHT OF COVID-19 PANDEMIC** |

**INTRODUCTION**

      As Plaintiff demonstrated in her Motion, the heightened risk of COVID-19 transmission from the three in-person depositions currently noticed in this case to be held next week presents serious health and safety concerns, including to Plaintiff, her parents, and her parents' patients. (Motion at 8–10.) To mitigate that serious risk, Plaintiff has proposed that the parties utilize an oft-used virtual deposition format to protect herself, her family, and everyone else involved. Although multiple Defendants are amenable to proceeding virtually, the State has insisted that Plaintiff and her parents be forced to gather indoors for hours with several other people—and with questioner and deponent maskless—at the very moment that daily new COVID-19 cases are the

1

highest they have ever been. The State has failed to point to any facts or law to support its unreasonable position and as a result has failed to satisfy its burden under the applicable framework.

Both Plaintiff and the State agree on the standard governing this issue. *First*, Plaintiff must demonstrate a "legitimate reason" to request a virtual deposition. *Second*, once Plaintiff meets her burden, the State has the burden to show how it would be "prejudiced" by the virtual format. (State Op. at 3.)[1] Plaintiff satisfied her initial burden—a serious infectious disease that is easily transmitted during in-person meetings, has killed nearly 850,000 Americans, and has manifested in a new variant, Omicron, that is more dangerous for children than previous variants, is evading vaccination, and is causing widespread staffing shortages in hospitals across the country, including West Virginia. Even before the emergence of Omicron, this Court explained that the COVID-19 pandemic "presents perhaps the most compelling reason yet to authorize" virtual testimony. *See Sutphin v. Ethicon, Inc.*, No. 2:14-cv-01379, 2020 WL 5229448, at *2 (S.D. W. Va. Sept. 1, 2020) (Goodwin, J.). That conclusion, which the State nowhere acknowledges, remains apt. The State, on the other hand, has failed to meet its burden. Not only does the State fail to distinguish *any* of the authority Plaintiff presented regarding prejudice, but its primary proffered basis for opposing virtual depositions—establishing "rapport" with the deponent—has been squarely rejected in this exact same context: "the fact that Defendants' ability to assess the plaintiffs' demeanors by video conference is less than it would be in person does not itself establish the prejudice necessary to defeat a motion for remote depositions." *Macias v. Monterrey Concrete LLC*, C.A. No. 3:19-CV-

---

[1] Plaintiff prospectively agreed to notice all of Plaintiff's depositions as virtual to ensure there is no perceived advantage with the three presently noticed depositions (of Plaintiff and her parents) being held virtually. (Motion at 1, n.1.) This alone should defeat the State's argument that it will be prejudiced by proceeding virtually, as all parties will be similarly situated.

0830, 2020 WL 6386861, at *5 (E.D. Va. Oct. 30, 2020) (authorizing virtual depositions because of COVID-19).

For the reasons set forth herein and in Plaintiff's Motion, this Court should grant Plaintiff's Motion and require the upcoming depositions of Plaintiff and her parents to proceed virtually.[2]

**ARGUMENT**

**I.    Plaintiff Has Shown a "Legitimate Reason" for This Court to Authorize Remote Depositions.**

As an initial matter, Plaintiff has met her burden under Rule 30(b)(4) to show a "legitimate reason" for the three upcoming depositions to be conducted virtually. The desire to avoid undue risk posed by in-person meetings during the COVID-19 pandemic (particularly where, as here, the State insists on questioner and witness being maskless), when the alternative virtual format is adequate and available, is clearly a "legitimate reason" to request remote proceedings. *See Sutphin*, 2020 WL 5229448, at *2; *Lashley*, 2021 WL 5991774, at *3; *Macias*, 2020 WL 6386861, at *2.

Since Plaintiff's filing just one week ago, conditions have deteriorated, providing even further justification for proceeding virtually.[3] Governor Justice now has COVID-19, demonstrating that even vaccinations and boosters cannot reliably prevent transmission of the new

---

[2] Plaintiff's Motion clearly states that she currently seeks relief only with respect to the depositions of B.P.J. and her parents, given that those are the only presently noticed depositions. (Motion at 1 & n.1.) Defendant-Intervenor's opposition brief misconstrues Plaintiff's Motion as seeking a "blanket exemption" from in-person depositions, including future expert depositions (*see* Int. Op. at 2–6), and thus concerns questions that are not currently before this Court.

[3] When Plaintiff filed her motion on January 6, 2022, West Virginia's 14-day change in infection was up nearly 135%. Today, it is up 209%. The New York Times, *Tracking Coronavirus in West Virginia: Latest Map and Case Count* (Jan. 13, 2022), https://www.nytimes.com/interactive/2021/us/west-virginia-covid-cases.html.

Omicron variant.[4] Moreover, the situation in West Virginia is worsening every day, as the Omicron variant is expected to peak in West Virginia in the coming weeks, forcing hospitals and health officials to consider extreme measures to deal with the anticipated influx of new patients, including potentially enlisting the National Guard to work at hospitals.[5] Indeed, the head of the State's COVID-19 Joint Interagency Task Force, Major General James Hoyer (Ret.), recently "warned that the U.S. supply chain is not currently keeping up with the need for monoclonal antibodies and antivirals, with West Virginia now typically getting only about half of what it asks for on a regular basis."[6]

The risks of COVID-19 transmission are plainly acute for all West Virginians, but they are especially so for Plaintiff and her parents. Plaintiff is an 11-year-old child, and West Virginia "COVID-19 Czar Dr. Clay Marsh has warned that Omicron may be harder on children than previous variants of COVID-19."[7] Plaintiff's parents are health care workers who serve

---

[4] Timothy Bella, *West Virginia Gov. Jim Justice says he's extremely unwell after testing positive for coronavirus*, The Washington Post (Jan. 12, 2022, 9:03AM), https://www.washingtonpost.com/politics/2022/01/12/jim-justice-covid-extremely-unwell-wv/.

[5] JoAnn Snoderly, *West Virginia hospitals brace for Omicron surge*, WV News (Jan. 11, 2022), https://www.wvnews.com/west-virginia-hospitals-brace-for-omicron-surge/article_489cbbe4-7247-11ec-9fd8-676733205871.html. In fact, the very articles cited by Defendant-Intervenor (*see* Int. Op. at 2–4) highlight the undue burden that is and will be placed on society as a result of Omicron. Leana S. Wen, *Opinion: Omicron is bad. But we didn't need to resort to lockdowns*, The Washington Post (Jan. 3, 2022, 6:36PM), https://www.washingtonpost.com/opinions/2022/01/03/omicron-lockdowns-covid-2022/ (stating "the situation facing hospitals is particularly dire" and emphasizing at least one city has declared a state of emergency due to emergency medical personnel being out due to COVID-19); Michaeleen Doucleff & Will Stone, *What we know about the symptoms-and the severity-of omicron variant*, NPR (Jan. 6, 2022, 5:09PM), https://www.npr.org/sections/health-shots/2022/01/06/1070622880/what-we-know-about-the-symptoms-and-the-severity-of-the-omicron-variant (noting "emergency rooms are busier than ever" and "[j]ust like other variants, omicron is hospitalizing people and it is killing people").

[6] Snoderly, *supra* note 5.

[7] Snoderly, *supra* note 5 (noting "a doubling of the average number of children admitted to hospitals on a daily basis over the week"); *see also* Travis Caldwell & Mallika Kallingal, *Child*

immunocompromised and elderly patients. If they were to become infected, they could jeopardize their patients' lives.

In short, Omicron is highly contagious, hospitals are nearing their breaking point, and already scarcely available treatments are becoming harder to find. All of these risks can be easily avoided through the use of a tried-and-true virtual deposition format that multiple Defendants do not oppose.

Ignoring reality, the State argues that the current status of the pandemic is not a "legitimate reason" to hold virtual depositions, claiming that "in-person depositions do not present an inherently greater risk of exposure [to COVID-19] than attending work or school." (State Op. at 5.) This is entirely beside the point. Plaintiff is required to go to school (which, as the State acknowledges, has a mask mandate in place). And Plaintiff's parents likewise must work; they cannot afford not to, nor can the medical sector function during a pandemic without the contributions of frontline workers like Plaintiff's parents.[8] Their necessary interactions (work and school) are entirely distinct from the avoidable exposure at issue here.

It cannot be seriously disputed that Plaintiff has met her burden of demonstrating a "legitimate reason" for seeking a remote deposition. As this Court and courts around the country have recognized, mitigating the risk of exposure to COVID-19 is a legitimate reason to avoid in-

---

*Hospitalization Rates Hit Record Highs as Omicron Variant Becomes Prevalent*, CNN (Jan. 12, 2022, 12:45AM), https://www.cnn.com/2022/01/07/health/us-coronavirus-friday/index.html.
[8] Jen Easterly, *ADVISORY MEMORANDUM ON ENSURING CRICICAL INFRASTRUCTURE WORKERS' ABILITY TO WORK DURING THE COVID-19 RESPONSE*, U.S Dept. of Homeland Security (Aug. 10, 2021), https://www.cisa.gov/sites/default/files/publications/essential_critical_infrastructure_workforce-guidance_v4.1_508.pdf ("As the Nation continues to respond to COVID-19, it remains vital that essential critical infrastructure workers can perform their jobs safely, securely, and without interruption from COVID-19 and the new variants of the virus. Doing so is not only fundamentally good for our individual essential workers and communities, it is also critical to the resilience of our National Critical Functions.").

person meetings when possible. *See Sutphin*, 2020 WL 5229448, at *2; *Lashley*, 2021 WL 5991774, at *3; *Macias*, 2020 WL 6386861, at *2. The burden thus shifts to the State.[9]

## II. The State Will Suffer No Prejudice if Plaintiff's Request Is Granted.

The State has failed to meet its burden of demonstrating that it will be prejudiced through the use of a remote deposition format. Its proffered reasons have been squarely rejected in prior opinions and lack any factual support.

*First*, the State expresses the misguided belief that it will be able to establish a better "rapport" with Plaintiff and her parents by forcing them into a room with several other individuals against their will and requiring them to be unmasked. Plainly, compelling people to proceed with maskless, in-person depositions given the current state of the pandemic will hardly contribute to positive rapport. In any event, such "rapport" arguments have been squarely rejected. *See, e.g.*, *Macias*, 2020 WL 6386861, at *5 (authorizing virtual depositions because of COVID-19 and stating that "the fact that Defendants' ability to assess the plaintiffs' demeanors by video conference is less than it would be in person does not itself establish the prejudice necessary to

---

[9] Defendant-Intervenor contends that Plaintiff must provide "more than generalized statements of risk" to justify virtual depositions. (Int. Op. at 4.) This Court did not so require in *Sutphin*, but in any event, Plaintiff has satisfied any such requirement by noting the specific risks Omicron presents to children and health care workers. Defendant-Intervenors' string of cases all pre-date Omicron and are otherwise distinguishable. *See, e.g.*, *Manley v. Bellendir*, No. 18-CV-1220-EFM-TJJ, 2020 WL 2766508, at *3 (D. Kan. May 28, 2020) (denying plaintiff's request for virtual deposition where defendant committed to "wear[ing] full PPE, including gloves and masks," defendant had legitimate concerns about plaintiff's ability to focus remotely given plaintiff's "past substance abuse," and plaintiff delayed two months in raising concerns about the deposition); *Pruco Life Ins. Co. v. California Energy Dev. Inc.*, No. 3:18-CV-02280-DM-SAHG, 2021 WL 5043289, at *3 (S.D. Cal. Oct. 29, 2021) (denying request for virtual deposition where "credibility of the parties" was "a key substantive issue in the case" and there was "an exceedingly high level of distrust among all parties, as evidenced by the near-constant stream of accusations of bad faith and dishonest conduct the Court has faced from all sides").

6

defeat a motion for remote depositions"). The State fails to distinguish *Macias* or otherwise explain why its reasoning does not apply here.

*Second*, the State claims that "in-person deposition allows for the questioner and deponent to read non-verbal ques [sic] such as body language, posture, and interaction with others and the environment." (State Op. at 8.) Courts also have squarely rejected this argument, explaining that "in the context of the COVID-19 pandemic, depositions conducted by video conference may allow counsel to better assess a deponent's demeanor than they could in person." *Lashley*, 2021 WL 5991774, at *3–4 (emphasis added). Indeed, "[d]uring a remote deposition, the deponent need not wear a mask to prevent the spread of COVID-19 among in person participants." *Id*. This is precisely what Plaintiff has explained to Defendants in her written correspondence, the parties' meet-and-confers, and her Motion itself.[10] In a virtual setting, no person need be masked and facial expressions and other body language will be more apparent. Thus, the interest proffered by the State is *better* served in the virtual format.

*Third*, the State speculates that in-person depositions provide "a controlled and distraction-free environment" as compared to virtual depositions. (State Op. at 8.) It is unclear what distractions the State is concerned with, but Plaintiff respectfully submits that being forced to appear in person at close range with unmasked strangers, despite stating her fear and concern about doing so, is likely to be far more distracting than proceeding virtually.

---

[10] Notably, the State also objects to a requirement that the deponent and questioner be masked, and objects to a requirement that those in the room who are masked wear higher-quality masks. (Stark Decl. ¶¶ 6–7.) This anti-masking position is inconsistent with the latest guidance from the CDC Director. *See* Anne Flaherty, *CDC says it will update mask information amid COVID surge: "Any mask is better than no mask"*, Eyewitness News (Jan. 12, 2022, 1:28PM), https://abc7ny.com/cdc-mask-recommendations-2022-n95-masks-kn95-face/11458730/; (Int. Op. at 3 (noting that "public health experts are recommending . . . masking")).

7

*Fourth*, the State claims that a virtual format is problematic because "the deponent may have access to and may avail themselves of materials and information outside of what the questioner is presenting" and provides a "greater opportunity for improper communications between deponent and deponent's counsel or for a third-party to become involved off-screen." (State Op. at 8.) In other words, the State is arguing, baselessly, that Plaintiff and her counsel will engage in sanctionable conduct if a virtual format is required. Such baseless allegations are improper. Although the State's speculation of misconduct is entirely unfounded, undersigned counsel confirms that Plaintiff, her parents, and their counsel will not engage in any such conduct.

*Finally*, the State suggests a concern that virtual depositions will "be[] less than civil." (State Op. at 8.) Again, there is no basis for this concern. Counsel for all parties have met and conferred virtually several times and each of those instances were conducted in a civil manner. There is no reason to think that the parties will not be able to behave themselves during a remote deposition.

At bottom, the State admits that "[a] virtual deposition is successful and efficient if . . . the witness is civil; answers questions when asked; has appropriate and fully-functional technology to facilitate the deposition . . . ; can avoid distraction from the surrounding environment; and is not presented with any verbal or non-verbal influence by those in attendance yet off-screen." (State Op. at 9.) Those are exactly the circumstances Plaintiff is proposing. Courts routinely authorize remote depositions; during this pandemic trials and arbitrations have been conducted virtually with no issue; this Court has authorized *trial* testimony to occur virtually; and Plaintiff has agreed to conduct all depositions virtually to assuage any concern of unfairness only to one side. All of the State's arguments regarding prejudice have been squarely rejected by courts or are belied by commonsense. The State has failed to meet its burden under Rule 30(b)(4).

**III.     The Court Should Not Preemptively Extend the Duration of Remote Depositions.**

Defendant-Intervenor's assertion that this Court should preemptively extend the seven-hour limit for remote depositions is incorrect as a matter of fact and law, and is premature.

*First*, any preemptive relaxation of time restraints is unwarranted here, where Defendant-Intervenor has expressly stated that she will "defer[] to the State with respect to how much additional time" is needed for the depositions of B.P.J. and her parents (Int. Br. at 7), and where the State has not asked for an extension of time on *any* depositions.

*Second*, Defendant-Intervenor has offered no specific arguments for why the remote depositions of B.P.J. and her parents would warrant any additional time, let alone any preemptive extension of time. *See Oppenheimer v. Scarafile*, No. CV 2:19-3590-RMG, 2021 WL 5902738, at *2 (D.S.C. July 30, 2021) (denying extension of deposition where party failed to demonstrate "good cause"). Indeed, although the relief sought by Plaintiff's Motion would apply only to three depositions—the deposition of B.P.J., B.P.J.'s mother, and B.P.J.'s father (Motion at 1 n.1)—Defendant-Intervenor's concerns are all directed at expert depositions, which are not at issue here, rendering the extension request misplaced.[11]

*Finally*, Defendant-Intervenor's request to extend the duration of depositions in this action—especially for those that have not yet been noticed—has not been raised in any

---

[11] In any event, none of Defendant-Intervenor's cited cases supports her argument that remote depositions require extending the seven-hour time limit provided for in the Federal Rules for *any* of the depositions in this matter. Neither *Macias* nor *Lashley* stand for this proposition—and indeed, the court in *Lashley* expressly limited the remote deposition there to "the seven-hour duration as provided in Rule 30(d)(1)." *Lashley v. Spartanburg Methodist Coll.*, No. 7:18-CV-2957-JD-KFM, 2021 WL 5991774, at *3 (D.S.C. Sept. 9, 2021). Defendant-Intervenor's other cited case, *In re Zantac*, likewise declined to extend the seven hours allotted for on the record, unlike what Defendant-Intervenor is seeking here. (*Compare* Int. Br. at 6 (seeking to "extend the usual seven-hour deadline" on the record) with *In re Zantac (Ranitidine) Prod. Liab. Litig. This*

correspondence between the parties, and this Court's consideration of the issue prior to any meet and confer would be premature. (*See* Motion at Exs. A-C); *see also* Federal Rule of Civil Procedure 37(a)(1) (requiring parties to meet and confer in good faith before seeking to obtain court action). To the extent that Defendant-Intervenor has any particular concerns about un-noticed depositions, including expert depositions, the parties are free to continue discussion. At this juncture, however, there is no need for this Court to resolve what is currently a hypothetical concern.

## CONCLUSION

For the reasons stated herein, and for those in Plaintiff's opening brief, Plaintiff's motion for protective order should be granted, and the upcoming depositions of Plaintiff and her parents should be ordered to proceed virtually.

---

*Document Relates To: All Cases,* No. 20-MD-2924, 2020 WL 12442782, at *6 (S.D. Fla. Oct. 5, 2020) (declining to extend the "length of record time").)

| | |
|---|---|
| Dated: January 13, 2022 | Respectfully submitted,<br>/s/ *Loree Stark* |
| Joshua Block*<br>Taylor Brown*<br>Chase Strangio*<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br>125 Broad St.<br>New York, NY 10004<br>Phone: (212) 549-2569<br>jblock@aclu.org<br>tbrown@aclu.org<br>cstrangio@aclu.org | Loree Stark (Bar No. 12936)<br>AMERICAN CIVIL LIBERTIES UNION OF WEST<br>VIRGINIA FOUNDATION<br>P.O. Box 3952<br>Charleston, WV 25339-3952<br>Phone: (914) 393-4614<br>lstark@acluwv.org |
| Avatara Smith-Carrington*<br>LAMBDA LEGAL<br>3500 Oak Lawn Avenue, Suite 500<br>Dallas, TX 75219<br>Phone: (214) 219-8585<br>asmithcarrington@lambdalegal.org | Kathleen Hartnett*<br>Julie Veroff*<br>COOLEY LLP<br>3 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111<br>Phone: (415) 693-2000<br>khartnett@cooley.com<br>jveroff@cooley.com |
| Carl Charles*<br>Tara Borelli*<br>LAMBDA LEGAL<br>158 West Ponce De Leon Ave., Ste. 105<br>Decatur, GA 30<br>Phone: (404) 897-1880<br>ccharles@lambdalegal.org<br>tborelli@lambdalegal.org | Katelyn Kang*<br>COOLEY LLP<br>55 Hudson Yards<br>New York, NY 10001-2157<br>Phone: (212) 479-6000<br>kkang@cooley.com |
| Sruti Swaminathan*<br>LAMBDA LEGAL<br>120 Wall Street, 19th Floor<br>New York, NY 10005<br>Phone: (212) 809-8585<br>sswaminathan@lambdalegal.org | Elizabeth Reinhardt*<br>COOLEY LLP<br>500 Boylston Street, 14th Floor<br>Boston, MA 02116-3736<br>Phone: (617) 937-2305<br>ereinhardt@cooley.com<br><br>**Visiting Attorneys*<br><br>*Attorneys for Plaintiff* |
| Andrew Barr*<br>COOLEY LLP<br>1144 15th St. Suite 2300<br>Denver, CO 80202-5686<br>Phone: (720) 566-4000<br>abarr@cooley.com | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin<br><br>**CERTIFICATE OF SERVICE** |

**CERTIFICATE OF SERVICE**

    I, Loree Stark, do hereby certify that on this 13th day of January, 2022, I electronically filed a true and exact copy of the ***Plaintiff's Consolidated Reply in Support of Motion for Protective Order Regarding Virtual Depositions in Light of COVID-19 Pandemic*** with the Clerk of Court and all parties using the CM/ECF System.

                                                    */s/ Loree Stark*
                                                    Loree Stark
                                                    West Virginia Bar No. 12936