IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**B.P.J., by her next friend and mother,
HEATHER JACKSON,**

        **Plaintiff,**

**v.**                                   **Civil Action No. 2:21-cv-00316**

**WEST VIRGINIA STATE BOARD OF
EDUCATION, et al.,**

        **Defendants.**

**ORDER**

This matter is before the Court on Plaintiff's "*Motion for Protective Order Regarding Virtual Depositions in Light of Covid-19 Pandemic.*" (ECF No. 169.) The motion has been fully briefed and is ripe for adjudication. (ECF No. 174; ECF No. 178.)[1] For the reasons set forth herein, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND**

Defendant, the State of West Virginia ("Defendant" or the "State") noticed the depositions of minor B.P.J., as well as B.P.J.'s mother and father, for the week of January 17, 2022. (*See* ECF No. 160; ECF No. 169 at 1.) Plaintiff's subject motion seeks a protective order requiring Defendant to conduct the depositions virtually "via videoconference and a remote court reporting service, such as Veritext Virtual[], in order to avoid the undue

---

[1] In addition to the State of West Virginia's brief in response (ECF No. 174), Defendant-Intervenor Lainey Armistead filed a "*Response in Opposition to Plaintiff's Motion for Protective Order Regarding Virtual Depositions in Light of the COVID-19 Pandemic*" (ECF No. 173); the undersigned has taken Defendant-Intervenor's submission into consideration in the adjudication of the subject motion.

risk of COVID-19 transmission." (ECF No. 169 at 1.) Plaintiff also requests that one of her counsel be present in the same room with the witness, and that one of B.P.J.'s parents be present in the room with her during her deposition. (*See id.*)

In support of Plaintiff's request for the depositions to be remote rather than in person, she cites to the "recent surge in COVID-19 cases due to the Omicron variant" resulting in "an unprecedented risk of COVID-19 transmission and infection for those traveling and attending in-person meetings." (ECF No. 169 at 1-2.) Noting that B.P.J. is eleven years old, the motion asserts the Omicron variant is "highly transmissible" and that "children appear to be particularly susceptible to infection by Omicron." (*Id.* at 4.) Further, the motion asserts that B.P.J.'s parents wish to avoid potential exposure not only to protect their child, but as they "are both medical professionals who routinely interact with immunocompromised patients," they seek to protect their patients as well. (*Id.*) (*See also* ECF No. 169-1 at 3) (declaring that "Plaintiff's mother routinely works with patients who have undergone chemotherapy, and Plaintiff's father works with geriatric patients".) The motion also notes that the majority of Plaintiff's counsel are located out of state, necessitating travel for an in-person deposition. (ECF No. 169 at 5.) Finally, the motion asserts that the State would "not agree that all deposition participants be masked, instead requesting that 'those speaking in depositions do so without masks.'" (*Id.* at 6) (quoting ECF No. 169-1 at 24.)

The State objected to conducting the depositions of B.P.J. and her parents remotely, arguing that, without more, the mere risk of COVID-19 alone was not enough to warrant a blanket ban on in-person depositions when "reasonable accommodations" such as social distancing can be made. (ECF No. 174 at 5-6.) Further, the State argued that "[t]he fully-virtual deposition format will prejudice the Defendant." (*Id.* at 7.) Specifically,

2

the State argued, *inter alia*, that "depositions are more effective in-person because the deposing party can monitor a person's facial and body expressions, develop a deposition rapport, and also be aware and mindful of verbal and non-verbal communications from others in the room." (ECF No. 169-1 at 21.) Additionally, Defendant asserted that an in-person deposition "facilitates handling of exhibits, confidential communications between counsel when needed, and other communications between different parties' counsels, which sometimes need occur outside of a deponent's presence." (*Id.*) Counsel also expressed that in-person depositions eliminate "the potential for technology issues," and that the State's accommodations—including "leaving significant space for social distancing" in a large conference room—would "appropriately address[] the (now-familiar) potential for exposure/transmission." (*Id.*)

Plaintiff's counsel certified that Plaintiff appropriately conferred with Defendants prior to the filing of the subject motion to compel in accordance with Local Rule 37.1(b), but that the parties were not able to reach an agreement. (*Id.* at 6-7; ECF No. 169-1 at 1, 23.) Plaintiff requests that the Court order the depositions of B.P.J., her mother, and her father to occur (1) fully virtually, by videoconference; (2) with one of Plaintiff's counsel to be in the room with the witness; (3) with one of B.P.J.'s parents to be in the room with her during B.P.J.'s deposition; and (4) with all other individuals appearing remotely for each deposition. (ECF No. 169 at 12.)

II. **ANALYSIS**

With respect to any type of discovery, on motion "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Court exercises "broad discretion . . . to decide when a protective order is appropriate and what degree of

protection is required." *Johnson v. Ford Motor Co.*, 3:13-cv-06529, 2015 WL 3687854, at *8 (S.D. W. Va. June 12, 2015). The Court's protective order may, *inter alia*, (1) "specify[] terms, including time and place . . . for the disclosure or discovery;" (2) "prescrib[e] a discovery method other than the one selected by the party seeking discovery;" and (3) designat[e] the persons who may be present while the discovery is conducted[.]" Fed. R. Civ. P. 26(c)(1)(B), (C), (E). Likewise, with respect to depositions specifically, the "court may on motion order[] that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4).

The Court agrees with Defendant that the mere continuation of the COVID-19 pandemic—without more—does not constitute good cause for a blanket rule against in-person depositions. (ECF No. 174 at 6) (stating that COVID-19 "is not an unassailably-sufficient reason to prohibit in-person depositions.) *See Macias v. Monterrey Concrete LLC*, 3:19-cv-830, 2020 WL 6386861, at *5 (E.D. Va. Oct. 30, 2020) (noting "that the moving party must put forward a legitimate reason to conduct the deposition remotely") (citations omitted). Rather, the question of good cause based upon COVID-19 concerns must be determined on a case-by-case basis depending upon the circumstances at the time of the noticed depositions. *See id.*

Here, Plaintiff has shown good cause that a protective order in this matter—requiring the depositions of B.P.J. and B.P.J.'s parents to be conducted by remote means—is warranted under the current circumstances. The Court finds that, in light of the recent and alarming spike in cases caused by the potent Omicron variant of COVID-19, a protective order is necessary to prevent undue burden and minimize unnecessary risk to eleven-year-old B.P.J., as well as the vulnerable patient populations with whom B.P.J.'s parents interact, and the overtaxed, understaffed health care system.

The COVID-19 pandemic has been dynamic, with risk of infection changing over time; currently, the risk is spiking. The Court takes judicial notice that, beginning approximately the first week of January, 2022, "[t]he United States is facing an unprecedented surge of COVID-19 infections, driven in large part by the very highly contagious Omicron variant." Katia Hetter, *Dr. Leana Wen explains the latest risks Omicron poses to family and children*, CNN (Jan. 5, 2022), https://www. cnn.com/ 2022/01/04/health/omicron-risks-families-wen-wellness/index.html. Further, the Center for Disease Control and Prevention ("CDC") published an interpretive summary for January 7, 2022 on its website, where it stated:

> COVID-19 cases continue to increase rapidly across the United States. This surge is driven by the Omicron variant, which CDC's Nowcast model projects may account for approximately 95% of cases. On January 5, 2022, over 705,264 new cases were reported, more than doubling the January 2021 peak. The entire country is now experiencing high levels of community transmission. Hospitalizations are also on the rise. While early data suggest Omicron infections might be less severe than those of other variants, the increases in cases and hospitalizations are expected to stress the healthcare system in the coming weeks.

*COVID Data Tracker Weekly Review*, CDC (Jan. 7, 2022), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html. West Virginia hospitals have reached a "breaking point" due to staffing shortages, prompting Governor Jim Justice to deploy the West Virginia National Guard recently to supply nonclinical support. Moriah Davis, *West Virginia National Guard deploys to area hospitals*, Nexstar Media Group, Inc. (Jan. 13, 2022), https://www.wowktv.com/news/west-virginia/west-virginia-national-guard-deploys-to-area-hospitals/.

Based upon the current spike in cases caused by the highly-contagious Omicron variant, the Court finds that the risk of infection posed by travel and in-person

5

proceedings is unreasonable. In-person depositions would expose all individuals present to an increased risk of infection; likewise, the family members, coworkers, and other people these individuals closely interact with would also face an increased risk of infection. Further, in-person depositions unduly threaten to tax an already-stressed healthcare system. Therefore, the Court finds Plaintiff has demonstrated that in-person depositions of B.P.J. and her parents would be unduly burdensome at this time.

In contrast to the unreasonable risk posed by in-person depositions at this time, the risk of prejudice to Defendant by moving forward with remote depositions is minimal. The State may be correct that there is a litigation advantage to in-person depositions. (ECF No. 174 at 8.) However, those advantages are overstated. Many courts recognize that remote technology has developed so significantly since March 2020 in response to the COVID-19 pandemic that today they are fairly routine. *See, e.g., Grupo Petrotemex, S.A. de C.V. v. Polymetrix AG*, 16-CV-2401, 2020 WL 4218804, at *2 (D. Minn. July 23, 2020) (citing *In re Broiler Chicken Antitrust Litig.*, 16-CV-08637, 2020 WL 3469166, at *5 (N.D. Ill. June 25, 2020) (collecting cases)).

The State's objection to conducting the depositions remotely based upon the difficulty of sharing and introducing exhibits remotely is unavailing, particularly when Plaintiff has agreed to use a skilled third-party vendor such as Veritext. As other courts have noted, while depositions involving many documents may take longer and present practical challenges, capable counsel can make such depositions work effectively nonetheless. *See, e.g., Macias*, 2020 WL 6386861, at *5; *United States ex rel. Chen v. K.O.O. Constr., Inc.*, 445 F. Supp.3d 1055, 1057 (S.D. Cal. 2020) (recognizing "the challenges to the legal community during this pandemic" but finding that "voluminous and highly detailed exhibits" do not preclude remote depositions). The Court encourages

6

the parties to work together and come to an agreement as to additional time to complete a deposition should the remote nature of proceedings cause appreciable delay.

Likewise, the State's objection that in-person depositions allow it to better assess the deponents' demeanors and "establish . . . rapport" is unavailing. (ECF No. 174 at 8.) As the *Macias* court noted, "the fact that Defendants' ability to assess the plaintiffs' demeanors by video conference is less than it would be in person does not *itself* establish the prejudice necessary to defeat a motion for remote depositions." *Macias*, 2020 WL 6386861, at *5 (emphasis added). To hold otherwise "would render Rule 30(b)(4) meaningless." *See id*. To the contrary, while remote depositions do not allow counsel to assess a deponent's demeanor to the same *extent* as an in-person deposition, "[m]any courts have held that remote videoconference depositions offer the deposing party a sufficient opportunity to evaluate a deponent's nonverbal responses, demeanor, and overall credibility." *Id.* at 6 (citing *Learning Res., Inc. v. Playgo Toys Enters. Ltd.*, 19-cv-00660, 335 F.R.D. 536, 2020 WL 3250723, at *3 (N.D. Ill. June 16, 2020) (collecting cases)). In fact, "in the context of the COVID-19 pandemic, depositions conducted by video conference may allow counsel to better assess a deponent's demeanor than they could in person [because] . . . the deponent need not wear a mask" during a remote deposition. *Macias*, 2020 WL 6386861, at *6 (citing *Sonrai Sys., LLC v. Romano*, 16-cv-3371, 2020 WL 3960441, at *4 (N.D. Ill. July 13, 2020)). Therefore, "courts have found that the health risks related to the ongoing COVID-19 pandemic are good cause to conduct depositions remotely," particularly when special circumstances make in-person presence riskier to the deponent than the general population. *Macias*, 2020 WL 6386861, at *3; *see also Sutphin v. Ethicon, Inc.*, 2:14-cv-01379, 2020 WL 5229448 (S.D. W. Va. Sept. 1, 2020) (finding good cause to authorize remote trial testimony in light of the "potential

risk of COVID-19," coupled with the added risk that the physical presence of the witnesses, who were health care providers, "would create for them and their patients").

Here, the current surge in COVID-19 cases due to the Omicron variant presents a legitimate reason to minimize interstate travel and conduct the deposition remotely. *See Berkeley\*IEOR v. Teradata Operations, Inc.*, 17-C-7472, 2021 WL 3566596, at \*3 (N.D. Ill. Aug. 12, 2021) ("The wisdom under the present circumstances of a party demanding a live deposition of a witness and requiring opposing counsel to make four 1800-mile airline trips is questionable—to say the least."). Additionally, the particular circumstances of the deponents in this case make in-person depositions riskier. B.P.J. herself is an eleven-year-old minor, and the Court is concerned with prioritizing her health and safety—particularly when the Omicron variant is thought to be more dangerous for children than previous iterations of the virus. Further, an increased risk of exposure to B.P.J.'s parents not only places B.P.J. at risk, but also the immunocompromised patients these medical providers treat.

Weighing the potential prejudice caused by the slight litigation disadvantage imposed on the State by a remote deposition against the increased risk to the health and safety of a child and to immunocompromised patients, as well as additional strain on a healthcare system at its "breaking point," the Court finds that the mode of discovery sought by the Defendant presents an undue burden and is not proportionate to the needs of the case. Plaintiff has shown good cause for entry of a protective order; accordingly, the Court finds that at this time, the depositions of B.P.J. and her parents are appropriate subjects of a remote deposition under the circumstances.[2]

---

[2] Plaintiff's motion expresses that "Plaintiff also is willing to take all depositions in this matter . . . remotely." (ECF No. 169 at 2; *see also* ECF No. 169-1 at 22.) While granting Plaintiff's request with respect to the three depositions at issue under the specific circumstances discussed herein, the Court cautions Plaintiff that the

However, Plaintiff's additional requests—that the Court permit one of Plaintiff's counsel to be in the room with the witness, and permit one of B.P.J.'s parents to be in the room with her during her deposition—require a separate balancing. The Court agrees with the State that Plaintiff has not met her burden to show good cause for allowing her counsel to be present in the room with the witness under the circumstances—particularly when one of the bases for Plaintiff's objection to an in-person deposition is the increased risk of infection caused by out-of-state counsel's travel to the deposition. (ECF No. 174 at 7.) Further, due to the age of B.P.J. the Court finds it appropriate to permit a parent to be present during the deposition; however, to minimize the risk of unfair prejudice, Defendants shall be entitled to the identification of the designated parent prior to the depositions, shall be entitled to take that parent's deposition prior to B.P.J.'s deposition should Defendants so elect, and shall be entitled to request that the parent's face be visible on the screen during B.P.J.'s deposition.

### III. <u>CONCLUSION</u>

Accordingly, Plaintiff's "*Motion for Protective Order Regarding Virtual Depositions in Light of Covid-19 Pandemic*" (ECF No. 169) is **GRANTED IN PART AND DENIED IN PART**, and **IT IS ORDERED** as follows:

(1) The depositions of B.P.J., B.P.J.'s mother, and B.P.J.'s father **SHALL** proceed virtually, by videoconference using an application and/or court reporting/teleconferencing service agreed upon by the parties. All other individuals involved in the taking of the depositions, including the court

---

risk presented by the COVID-19 pandemic is dynamic; therefore, the Court declines to issue any "blanket" order with respect to further depositions in this civil action.

reporter, Plaintiff's counsel, and all other counsel of record who plan to appear, must do so remotely.

(2) One of B.P.J.'s parents may be present in the room with B.P.J. during her deposition, provided that:

(a) Prior to the start of the depositions as scheduled, Plaintiff's counsel must disclose to Defendants' counsel which parent shall be present during B.P.J.'s deposition;

(b) Defendants may elect to conduct the deposition of that parent prior to the deposition of B.P.J.; and

(c) Defendants may request that the designated parent's face be visible on the screen during B.P.J.'s deposition.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: January 17, 2021

Dwane L. Tinsley
United States Magistrate Judge