IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J., by her next friend and mother,
HEATHER JACKSON,
     Plaintiff,

v.                            Civil Action No. 2:21-cv-00316
                                 Honorable Joseph R. Goodwin, Judge

WEST VIRGINIA STATE BOARD OF EDUCATION,
HARRISON COUNTY BOARD OF EDUCATION,
WEST VIRGINIA SECONDARY SCHOOL
ACTIVITIES COMMISION, W. CLAYTON BURCH
in his official capacity as State Superintendent, and
DORA STUTLER in her official capacity as
Harrison County Superintendent,
     Defendants,

And

LAINEY ARMISTEAD,
     Defendant-Intervenor.

### WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Now comes West Virginia Secondary School Activities Commission (WVSSAC), by counsel, Roberta F. Green, Kimberly M. Bandy, Shannon M. Rogers and Shuman McCuskey Slicer PLLC, and, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, hereby moves this Court to dismiss all claims asserted against it with prejudice as a matter of law because Plaintiff has failed to prove an essential element of the case she has the burden to prove.[1] Additionally, judgment as a matter of law is the necessary and proper outcome in favor of WVSSAC, as,

---

[1] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In this matter, Plaintiff has alleged that enactment of H.B. 3293 has resulted in violations of Title IX and the Equal Protection Clause of the Fourteenth Amendment when a principal within the Harrison County Board of Education system indicated that, pursuant to H.B. 3293, Plaintiff could not run on the girls' track team. Plaintiff is seeking an order and judgment that H.B. 3293 and its enforcement by Defendants collectively violate her rights under Title IX and the Equal Protection Clause of the Fourteenth Amendment.[2] Plaintiff further asks this Court to permanently enjoin Defendants from enforcing H.B. 3293 or any other law, custom or policy "that precludes Plaintiff's participation on girls' school sports teams in West Virginia."[3]

Plaintiff alleges but has failed to prove that WVSSAC is a federally funded program.[4] Further, Plaintiff has failed to prove that WVSSAC could be a proper party for either her Title IX or her Equal Protection claims because, once again, Plaintiff has failed to prove that WVSSAC is

---

[2] First Amended Complaint (ECF No. 64) at Prayer:

> A. Declaring that the provisions of and enforcement by Defendants of H.B. 3293 as discussed above violate Plaintiff's rights under Title IX;
>
> B. Declaring that the provisions of and enforcement by Defendants of H.B. 3293 as discussed above violate Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment;
>
> C. . . . [P]ermanently enjoining Defendants, their officials, agents, employees, assigns, and all persons acting in concert or participating with them from enforcing H.B. 3293 or any other law, custom, or policy that precludes Plaintiff's participation on girls' school sports teams in West Virginia;

[3] First Am. Compl. (ECF No. 64) at Prayer at (c).
[4] First Am. Compl. (ECF No 64) at ¶ 91. *See also* Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (ECF No. 80) (Consolidated Response) at 18.

a state actor.[5]  Although Plaintiff alleges in the First Amended Complaint that "B.P.J. is irreparably harmed by Defendants' illegal conduct" in violation of Title IX and in violation of the Equal Protection Clause,[6] she has not identified any illegal conduct on the part of WVSSAC.  Plaintiff points to no action by WVSSAC that has resulted in discrimination against B.P.J., and thus no basis on which to find that an Equal Protection or Title IX violation has occurred, or that B.P.J. has been damaged by any action of WVSSAC.

Plaintiff has failed to introduce any evidence whatsoever to undercut her initial admission against interest that WVSSAC's policies are gender neutral.[7] Plaintiff has adduced in discovery what West Virginia statutory law provides -- that member schools delegate authority to WVSSAC and that WVSSAC has some level of enforcement power. Yet neither that delegation nor that enforcement power, absent more, is sufficient as a matter of law for any liability to attach to WVSSAC based on future speculative possibilities. Here H.B. 3293 provides for rules to be promulgated,[8] but the evidence adduced in discovery is that State Board rules are neither promulgated nor enforced by WVSSAC but rather are embedded in WVSSAC's rule books, where only the State Board can revise, amend, provide waivers.[9] As a matter of law, none of this converts WVSSAC into a state actor so as to have a role before this Court. None of the allegations nor the facts adduced renders this matter fit for adjudication as against WVSSAC, given that the possibility

---

[5] First Am. Compl. (ECF No. 64) at ¶ 91.

[6] First Am. Compl. (ECF No. 64) at ¶¶ 99, 110.

[7] Declaration of Heather Jackson (ECF No. 2-1) (Jackson Declaration) at ¶25 (p. 23); *see also* First Am. Compl. (ECF No. 64) at ¶ 73.

[8] W. Va. Code Section 18-2-25d(e).

[9] Videotaped Remote Zoom 30(b)(6) Deposition West Virginia Secondary School Activities Commission Bernard Dolan, Friday, February 11, 2022 (Dolan Dep.) (appended hereto as Exhibit A) at 62, testifying that the State Board's 2.0 Rule is embedded in WVSSAC's regulation book but remains the State Board's Rule). *See also* Virtual Videoconference Video-Recorded Deposition of Michele Blatt (2.14.22) (appended hereto as Exhibit B) at 132-33.

of Plaintiff's injury by WVSSAC is remote and the issues presented as to WVSSAC, abstract. Plaintiff has failed to prove any facts which would make a claim against WVSSAC ripe for pre-enforcement review, as "balance[ing] the fitness of the issues [as relates to WVSSAC] for judicial decision with the hardship to the parties of withholding court consideration" relative to WVSSAC precludes its inclusion here.[10] As a result of Plaintiff's admissions and failures, it remains true at the close of discovery that WVSSAC has no actionable role under H.B. 3293 and, therefore, never has had and does not now have a role in this litigation.

Specifically, Plaintiff has alleged that "[t]he State Board of Education's supervisory role, which includes extracurricular activities such as interscholastic athletics, has been delegated to 'county boards of education and the West Virginia Secondary School Activities Commission.' *Jones*, 218 W. Va. at 61 (citing W. Va. Code § 18-2-25)."[11]  Plaintiff alleges on information and belief that "the County Board of Education has delegated its control, supervision, and regulation of Bridgeport Middle School's interscholastic athletics to the School Activities Commission."[12] Yet, as a matter of law, that delegation does not convert a private corporation into a state actor, and Plaintiff has failed to demonstrate more.

In a nutshell, WVSSAC has never been adjudicated a state actor. WVSSAC receives no federal funds such as to convert it to a state actor. As a matter of law, WVSSAC's determinations of eligibility and the schools' delegation of authority, absent more, do not anchor these claims. Beyond that, WVSSAC is differently situated than the athletics or activities organizations in other jurisdictions who have been adjudicated to be state actors. WVSSAC has no role under H.B. 3293, and the evidence adduced in discovery is that its role would be limited to delegation and

---

[10] *Air Evac. EMS, Inc., v. Cheatham,* 260 F. Supp. 3d 628, 636-37 (S.D. W. Va. 2017).
[11] Fist Am. Compl. (ECF No. 64) at ¶ 9.
[12]  First Am. Compl. (ECF No. 64) at ¶ 9, citing in part W. Va. Code § 18-2-25.

enforcement, which, once again, are insufficient as a matter of law to convert this private corporation into a state actor. For these reasons and those set out further below, dismissal is the necessary and proper outcome at this time.

In sum, even now, after the close of discovery, none of the pleadings, depositions, interrogatories and admissions have provided Plaintiff with evidence that either Title IX or the Equal Protection Clause of the Fourteenth Amendment is enforceable as against WVSSAC as a matter of law.  Conversely, as a matter of fact and law, WVSSAC is not a 'state actor' and does not act under color of law so as to fall within the rubric of either Title IX or Equal Protection. It is undisputed that WVSSAC is a non-profit private corporation and has been since 1916.[13] Where WVSSAC elects voluntarily to follow Title IX given that its members (the member schools) are recipients of federal funding and therefore bound by Title IX,[14] where WVSSAC espouses the ideals of Title IX and voluntarily elects to bind itself,[15] finally, WVSSC does not receive federal funding directly nor is it targeted receive federal moneys from its member schools in the form of dues or otherwise.[16] Whereas WVSSAC received two forms of governmental pandemic assistance and returned a portion of said moneys to the member schools,[17] courts reviewing that assistance have failed to find that its receipt federalizes the recipient or converts the recipient into a 'state actor'[18] – certainly, to all of us who received assistance through that process, up to and including

---

[13] Dolan Dep. (Exhibit A), at 38.
[14] Dolan Dep. (Exhibit A) at 86-87. Whereas WVSSAC knows its member public schools are required to follow Title IX and whereas Mr. Dolan *believes* WVSSAC is as well, *see* First Am. Compl. (ECF No. 64) at ¶81, stating that "Title IX provides that '[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.' 20 U.S.C. § 1681(a)."
[15] Dolan Dep. (Exhibit A) at 133-34.
[16] Dolan Dep. (Exhibit A), at 39. *Smith v. NCAA*, 266 F.3d 152, 156-57 (3d Cir. 2001).
[17] Dolan Dep. (Exhibit A) at 81-82. *Rowan Blvd. Assoc. LLC v. Republic First Bank*, 2021 U.S. Dist. LEXIS 151890 (Aug. 12, 2021); *Barnes v. Gorman*, 536 U.S. 181, 186 (2002).
[18] *Rowan Blvd. Assoc. LLC v. Republic First Bank*, 2021 U.S. Dist. LEXIS 151890 (Aug. 12, 2021); *Barnes v. Gorman*, 536 U.S. 181, 186 (2002).

vaccine subsidy, it would be a slippery slope to so find.[19]   Whereas Plaintiff's First Amended Complaint relies repeatedly on what it alleges to be control, supervision, regulation, rulemaking, and a delegation of duties and authority, that process (even assuming it exists, which WVSSAC does not concede and rather refutes) has been expressly found to be insufficient to turn WVSSAC's actions into 'color of law' such as to convert WVSSAC into a 'state actor.'[20]

As an initial and fundamental fact, it is clear on the record that WVSSAC has not caused harm to B.P.J. At the close of discovery, absolutely no grounds exist for Plaintiff to recover damages or attorney's fees from WVSSAC because WVSSAC's regulations relative to B.P.J. are gender identical, neutral, non-actionable.[21] Indeed, Plaintiff identifies no enforcement action that WVSSAC has taken or is slated to take relative to H.B. 3293 – and as a matter of law, WVSSAC's enforcement actions (eligibility[22]) are insufficient to federalize WVSSAC.   In her First Amended Complaint, Plaintiff supports her Title IX claim as against WVSSAC by relying upon the Commission's enabling statute, West Virginia Code Section 18-2-25, which Plaintiff glosses as "authoriz[ing WVSSAC] to control, supervise, and regulate interscholastic athletic events alongside county boards."[23] However, previously before this Court, several parties including the

---

[19] U.S. Small Business Association, Frequently Asked Questions Regarding Participation Of Faith-Based Organizations In The Paycheck Protection Program (PPP) And The Economic Injury Disaster Loan Program (EIDL) (April 3, 2020).
Chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/viewer.html?pdfurl=https%3A%2F%2Fwww.sba.gov%2Fsites%2Fdefault%2Ffiles%2F2020-04%2FSBA%2520Faith-Based%2520FAQ%2520Final.pdf&clen=108239&chunk=true
[20] *Smith v. NCAA*, 266 F.3d 152, 155ff (3d Cir. 2001).
[21] Plaintiff does not challenge sex-separated teams. *See* Mem. in Supp. of Pl.'s Mot. Prelim. Inj. (ECF No. 19), at 11 [hereinafter Mem.] at 16. *See also* WVSSAC Track Coaches Packet (appended to West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 47-1) at Exhibit A at §127-3-22. Cross Country (Boys and Girls), §127-3-29; Track and Field (Boys and Girls).
[22] Dolan Dep. (Exhibit A) at 33-34.
[23] Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (Dkts. 70, 72, and 74) (Consolidated Response) (ECF No. 80) at 13.

Plaintiff have cited and relied upon the precise regulations at issue here – the middle school cross-country and track regulations – which even Plaintiff concedes are neutral. Given that that the rules of statutory construction provide that specific regulations trump a general statute,[24] given that WVSSAC is not a 'state actor,'[25] given Plaintiff's admissions against interest,[26] and given the demonstrated fact of the regulations themselves as they pertain to Plaintiff,[27] the inescapable fact and law of this litigation is that the WVSSAC regulations at issue are gender and therefore transgender neutral, such that Plaintiff's Title IX and Equal Protection claims find no purchase here. Further, the delegation of controlling authority over activities and athletics, even the enforcement of eligibility, has been found to be insufficient to convert the alleged controlling entity into a state actor, absent more.[28]

It remains uncontested that WVSSAC was dropped from an earlier draft of the legislation and that WVSSAC appears nowhere in the statute as enrolled and signed into law.  Indeed, the First Amended Complaint details that transition fully.[29] Plaintiff alleges that West Virginia law has changed and that, by necessity, WVSSAC's regulations must change. Indeed, H.B. 3293 does provide for the State Board to promulgate rules to implement the section,[30] yet the evidence adduced in discovery is that State Board rules are neither promulgated nor enforced by WVSSAC but rather are embedded in WVSSAC's rule books, where only the State Board can revise, amend,

---

[24] *S.C. Dept. of Health & Evtl. Control v. Commerce & Indus.,* 372 F.2d 245, 258 (4th Cir. 2004).
[25] *Rowan Blvd. Assoc. LLC v. Republic First Bank,* 2021 U.S. Dist. LEXIS 151890 (Aug. 12, 2021); *Barnes v. Gorman,* 536 U.S. 181, 186 (2002); *Smith v. NCAA,* 266 F.3d 152, 156ff (3d Cir. 2001).
[26] Jackson Declaration (ECF No. 2-1) at ¶25 (p. 23).
[27] *See e.g.,* WVSSAC Track Coaches Packet (appended to West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 47-1) at Exhibit A at §127-3-22. Cross Country (Boys and Girls), §127-3-29; Track and Field (Boys and Girls).
[28] *Smith v. NCAA,* 266 F.3d 152, 156ff (3d Cir. 2001).
[29] First Am. Compl. (ECF No. 64) at 49-50.
[30] W. Va. Code Section 18-2-25d(e).

provide waivers.[31] Further, given the neutrality of the middle school cross-country and track regulations, Plaintiff is participating now under the existing regulations without impediment, without any recent or mandated particularization to her circumstances, without blunting or revision per the injunction. Once again, given the neutrality of WVSSAC's regulations, Plaintiff can and is participating fully under the regulations as they existed before and during this litigation. Plaintiff does not object to sex separation in sports, and the schools determine their own rosters. Therefore, WVSSAC's role, if any, would be relegated to eligibility, which, absent more, is insufficient to hold it here under Title IX, even assuming WVSSAC were a state actor, which it is not.

Further, no evidence has been adduced that WVSSAC itself has taken or would be called upon to take any action to enforce H.B. 3293 and/or that any of its 'enforcement actions' (read: eligibility appeals[32]) would cause it to become a 'state actor' in so doing. Plaintiff has conceded throughout this litigation that the WVSSAC regulations under which Plaintiff is now participating have been neutral and inclusive at all times and required no engineering or adjustment to allow for Plaintiff's participation, whether with or without the injunction in place. Once again, as relates to cross-country and track, all WVSSAC regulations are uniform across the board in providing one set of regulations for boys and girls.[33] Further, Heather Jackson admits "verification of 'reproductive biology and genetics' is not part of the routine sports physical exam required by Defendant WVSSAC."[34] WVSSAC's physical examination form, the sole registration form

---

[31] Dolan Dep. (Exhibit A) at 62, testifying that the State Board's 2.0 Rule is embedded in WVSSAC's regulation book but remains the State Board's Rule). *See also* Blatt Dep. (Exhibit B) at 132-33.

[32] Dolan Dep. (Exhibit A) at 43, 60, testifying that eligibility determinations start at the school level and are appealed to Mr. Dolan at WVSSAC.

[33] Of note, Plaintiff does not challenge sex-separated teams. *See* Mem. (ECF No. 19) at 11, 16. *See also* WVSSAC Track Coaches Packet (appended to West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 47-1) at Exhibit A at §127-3-22. Cross Country (Boys and Girls), §127-3-29. Track and Field (Boys and Girls).

[34] *See* Mem. (ECF No. 19) at n.6. *See also* Jackson Declaration (ECF No. 2-1) at Exhibit A at ¶ 26.

WVSSAC requires from athletes for participation, is not impacted by H.B. 3293 and does not have the athletes identify themselves by gender.[35] Indeed, WVSSAC has no access to records to determine a student athlete's gender at any time and knows nothing beyond the rosters prepared and submitted by the member schools.[36] The only regulation that will be adopted will be adopted by the State Board and embedded whole into the WVSSAC regulations (as with the State Board's 2.0 Rule).[37] WVSSAC's only involvement will be to determine disputed eligibility,[38] which, as a matter of law, absent more, does not make it a state actor.

WVSSAC is not mentioned within H.B. 3293.  WVSSAC's policies as currently crafted do not and would not impede this Plaintiff from proceeding with middle school Cross-Country or Track as she envisions,[39] nor would they impede other athletes as a matter of law. Plaintiffs do not object to sex separation in sports, and it is WVSSAC's member schools who determine how to roster the students, with the only WVSSAC action relative to that process being anchored in eligibility.[40] As a matter of law, WVSSAC's determination of eligibility, absent more, does not convert it into a state actor,[41] and no modification in the WVSSAC system would be occasioned by any outcome here. As such, Plaintiff's claims against WVSSAC should be dismissed because there is no relief Plaintiff needs from or through WVSSAC and no relief available as against WVSSAC, as it is not a state actor so as to fall within the rubrics of this process.

---

[35] West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 47-2) at Exhibit B.

[36] Remote Videotaped Deposition of Dora Stutler and Dave Mazza (3.8.22) (HCBOE Dep.) (Exhibit C) at 215; Dolan Dep. (Exhibit A) at 46, 155-56.

[37] Dolan Dep. (Exhibit A) at 54-55, 61, 139-40. *See also* Blatt Dep. (Exhibit B) at 132-33.

[38] Dolan Dep. (Exhibit A) at 60.

[39] *See Grimm v. Gloucester County School Board,* 972 F.3d 586, 619–20 (4th Cir. 2020).

[40] Dolan Dep. (Exhibit A) at 119-20; HCBOE Dep. (Exhibit C) at 216, testifying that "The athletic director puts the information on the boy roster or the girl roster."

[41] *Smith v. NCAA*, 266 F.3d 152, 156ff (3d Cir. 2001).

Whereas Plaintiff has addressed all defendants collectively,[42] WVSSAC is differently situated in terms of its lack of a role under the statute, its neutral regulations that need not change and have not changed in order to allow Plaintiff to participate fully, and in terms of its funding, which does not include federal funds such as to anchor a 'state actor' determination.

In support of this Motion, Defendant states as follows:

## I.    FACTS

Plaintiff B.P.J. is an 11-year-old girl who started middle school in fall 2021 and wished to participate on the girls' cross-county team. First Am. Compl. at ¶ 1. In April of 2021, the West Virginia Legislature passed H.B. 3293, which purports to recognize the inherent differences between biological males and biological females and the valid justification for sex-based classifications in sports. W. Va. Code § 18-2-25d(a). Additionally, H.B. 3293 prohibits participation of biological males, individuals whose biological sex as determined at birth is male, in sports designated for biological females. W. Va. Code § 18-2-25d(c)(2). H.B. 3293 does not mention Defendant WVSSAC and does not create any duties for WVSSAC.[43] H.B. 3293 does establish that the State Board of Education shall promulgate rules, including emergency rules, pursuant to § 29A-3B-1 *et. seq.* of the West Virginia Code to implement the provisions of this section. W. Va. Code § 18-2-25d(e). The undisputed evidence is that State Board rules are embedded in WVSSAC's regulations, and only the State Board can amend, revise, modify, waive its rules.[44]

Plaintiff alleges she was angered and saddened by the passage of H.B. 3293, believing it would prevent her from participating on girls' sports teams in middle school. First Am. Compl. at

---

[42] *See, e.g.,* Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (ECF No. 80).
[43] See, e.g., First Am. Compl. (ECF No. 64) at ¶¶ 49-50.
[44] Dolan Dep. (Exhibit A) at 139; Blatt Dep. (Exhibit B) at 132-33.

¶ 78. In May of 2021, Plaintiff states that she was told by the Principal at Bridgeport Middle School that she would not be allowed to run on the girls' cross-country team due to H.B. 3293. *Id.* at ¶ 81. Plaintiff's First Amended Complaint includes no allegations that anyone from WVSSAC informed her that she would be unable to participate in girls' cross-country, and Plaintiff and her family confirmed that no one contacted WVSSAC about her eligibility or otherwise.[45]

Through the course of discovery, Plaintiff has adduced no evidence that WVSSAC's role or funding is such that, as a matter of law, WVSSAC becomes a state actor or a rightful party to this action. For the reasons set forth herein, dismissal as a matter of law is the necessary and proper resolution at this time.

## II.    **STANDARD OF REVIEW**

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of "pointing out to the district court . . .that there is an absence of evidence to support the non-moving party's case." *Celotex Corp,* 477 U.S. at 325. If the moving party satisfies this burden, then the non-moving party must set forth specific facts, admissible in evidence, that demonstrate the existence of a genuine issue of material fact for trial. *See id.* at 322-23; Fed. R. Civ. P. 56(c), (e). A "genuine" dispute of

---

[45] *See* Videotaped Videoconference Deposition of BPJ (1.21.22) (BPJ Dep.) (Exhibit D) at 123; Videotaped Deposition of Wesley Scott Pepper (1.19.21) (Pepper Dep.) (Exhibit E) at 127-28; Videotaped Videoconference Deposition of Heather Jackson (1.19.22) (Jackson Dep.) (Exhibit F) at 228-29:

> Q  And do you know whether at any time, like up
> until today, you have contacted WVSSAC to notify them of
> BPJ's interest in running on the girls cross-country
> team?
> A. I have not.

material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). On the other hand, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby,* 477 U.S. at 248.. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

Here, Plaintiff has failed to prove an essential element of the case she has the burden to prove, in pertinent part, that WVSSAC is a state actor such that Title IX and the Equal Protection Clause are enforceable against it as a matter of law.[46] Additionally, judgment as a matter of law is the necessary and proper outcome as against WVSSAC, as, pursuant to Federal Rule of Civil Procedure 56*,* summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here, Plaintiff has failed to show that, as a matter of law, the authority delegated to it or its duty to determine eligibility make it a state actor so as to be open to enforcement before this Court. Further, Plaintiff has failed to demonstrate that WVSSAC's actions will affect outcome in any way here, as its only potential role might be determining eligibility, to the extent that would occur, which, absent more, is insufficient to bind WVSSAC here.

### III.    <u>ANALYSIS</u>

---

[46] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Plaintiff alleges that H.B. 3293 discriminates against B.P.J. in violation of Title IX and the Equal Protection Clause of the 14th Amendment; however, Defendant WVSSAC has taken no action to discriminate against B.P.J. and has no control over the actions of entities that will determine West Virginia law pursuant to or related to H.B. 3293. Further, WVSSAC's actions, if any, taken pursuant to H.B. 3293 (determination of eligibility) fail as a matter of law to bring WVSSAC within the scope of Plaintiff's Title IX or Equal Protection claims.  Also, Plaintiff has not alleged that WVSSAC has taken any actions whatsoever toward enforcing the challenged law and, conversely, has identified WVSSAC's policies and forms as gender and therefore transgender neutral.[47] By the express terms of H.B. 3293 itself, WVSSAC has no role and is not envisioned by the Legislature as having a role in enforcing West Virginia's law or establishing regulations regarding its implementation. For these reasons, it is unclear that this pre-enforcement action can remain viable as against WVSSAC.[48]  For these reasons and those set out further below, WVSSAC should be dismissed from this action as a matter of law.

---

[47] *See* Jackson Declaration (ECF No. 2-1) at ¶ 25 (p. 23).

[48] *Air Evac. EMS, Inc., v. Cheatham,* 260 F.Supp. 3d 628, 636-37 (S.D. W. Va. 2017):

> To determine whether a case is ripe for pre-enforcement review, courts "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Miller,* 462 F.3d at 319 (4th Cir. 2006*)* (citation omitted); *see Nat'l Park Hosp. Ass'n v. Dep't of the Interior,* 538 U.S. 803, 808, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003) (setting forth fitness and hardship as the two predominant factors in determining ripeness). With respect to fitness, a claim is unfit for adjudication where the possibility of injury is remote and the issues presented abstract. *Texas v. United States,* 523 U.S. 296, 301, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) ("A claim is not ripe . . . if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Thomas v. Union Carbide Agric. Products Co.,* 473 U.S. 568, 580-81, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985))); *Miller,* 462 F.3d at 319 (to be ripe, an action in controversy must not be "dependent on future uncertainties.").

**Plaintiff has failed to prove that WVSSAC is a state actor, such that neither Title IX nor the Equal Protections clause is enforceable against her here.**

**I.        WVSSAC is not a State Actor or Agency.**

The Supreme Court of Appeals of West Virginia has considered WVSSAC on multiple occasions and never determined it to be a state actor.  Conversely, West Virginia's Supreme Court expressly found that WVSSAC is not a state agency on the basis that it has been a voluntary association since 1916 (and was not created nor empowered by the Legislature); it is not funded by public moneys; and not all public or private schools in West Virginia have elected to belong. See Syl. pt. 2, 3, *Mayo v. WVSSAC,* 233 W. Va. 88, 96, 872 S.E.2d 224, 232 (2008).[49]

**A. WVSSAC is not a state actor so as to fall within Plaintiff's Equal Protection Claims.**

All of the evidence, admissions and law before this Court at this time demonstrate that WVSSAC is differently situated. Plaintiff has raised claims pursuant to Title IX as against WVSSAC.[50]  However, in order to fall within the mandates of Title IX, WVSSAC would need to be a recipient of federal financial assistance. 20 U.S.C. § 1681, stating that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[51]  WVSSAC's uncontroverted sworn testimony in this matter is that its sources of funding are as follows:

---

[49] *See also* State of West Virginia's Memorandum of Law in Support of its Motion to Intervene and For Proposed Response Deadline (ECF No. 41) at 6, *citing Mayo v. W. Va. Secondary Sch. Activities Comm'n*, 672 S.E.2d 224, 233 (W. Va. 2008).

[50] First Am. Compl. (ECF No. 64) at Count I.

[51] *Davison v. Randall*, 912 F.3d 666, 679 (2019):

> To state a claim under [Title IX], a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant "under color of . . . state law." *Philips v. Pitt Cty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009). "The traditional definition of acting under color of state law requires that the defendant in a [Title

West Virginia's Secondary School Activities Commission (WVSSAC) receives no dues whatsoever from member schools and has not for more than a decade. WVSSAC sustains itself with corporate sponsorships, advertising revenue and gate proceeds from championship meets and tournaments. WVSSAC's corporate sponsorships, which change over time, from 2019 to the present have included West Virginia Dairy Association/Milk Producers, Farmers & Mechanics, U.S. Army, MetroNews, Midstate Automotive, Field Turf, Spalding, and Caresource.[52]

Whereas WVSSAC might receive de minimis fines or fees from schools or coaches, those moneys have never been demonstrated or determined to be federal funds. Assuming *arguendo* that they could be found to be federal funds, they would be indirectly received, such that no contractual privity exists between WVSSAC and the federal source of those funds.[53]  Pandemic relief[54] has been an evolving area of  consideration relative to 'federal funding,' but courts that have considered the scope of that and similar funding have declined to find that its receipt federalizes the recipient or converts the recipient into a 'state actor.'[55] Applying a contract-based framework to an analysis based in Title VI but including Title IX, the Supreme Court considered whether the recipient had notice of the effect of receiving those moneys, the commensurate obligations, in time to knowingly accept or reject same.[56] Other courts have noted as meaningful that pandemic relief

---

IX] action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)).

[52] WVSSAC's Responses to Plaintiffs First Set of Interrogatories (ECF No. 115) appended hereto as Exhibit G.

[53] *Smith v. NCEAA*, 266 F.3d 152, 162 (2001), declining to apply Title IX on the basis of indirect funding when the recipient did not assume control the program that directly received the funds and was not in the position to expressly reject/receive the funds dependent upon the obligations inherent in that receipt.

[54] Dolan Dep. (Exhibit A) at 81-82. *Rowan Blvd. Assoc. LLC v. Republic First Bank,* 2021 U.S. Dist. LEXIS 151890 (Aug. 12, 2021); *Barnes v. Gorman,* 536 U.S. 181, 186, 122 S. Ct. 2097, 2100 (2002).

[55] *Rowan Blvd. Assoc. LLC v. Republic First Bank,* 2021 U.S. Dist. LEXIS 151890 (Aug. 12, 2021); *Barnes v. Gorman,* 536 U.S. 181, 186 (2002).

[56] *Barnes v. Gorman,* 536 U.S. 181, 186 (2002), positing that "much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions." The Court declined to impose conditions in the instance of 'vague language' within the act or unintentional violations by persons or entities without knowledge of the imposition of conditions. *Id.* 536 U.S. at 187.

moneys or some of them were processed through private lenders prior to reaching end recipients, such that the moneys themselves were indirectly received and without a clear exploration of notice and knowing acceptance of any burden.[57] Plaintiff has done nothing to demonstrate a knowing acceptance of any burden, and the only extant evidence is that WVSSAC's sources of funding do not include federal moneys.[58]

Plaintiff's Equal Protection Clause claims are equally dependent on WVSSAC's being a 'state actor.'[59] That is,

> in a claim under the Fourteenth Amendment, the defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). Put another way, "private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* at 507 (citation omitted).[60]

As demonstrated above, WVSSAC is not a recipient of public moneys so as to convert this private corporation into a 'state actor.' Beyond that, however, Plaintiff has alleged that the delegation of the State's authority to WVSSAC converts WVSSAC into a 'state actor' as relates to athletics and activities.[61] Specifically, Plaintiff asserts that "Defendants are all governmental actors acting under color of state law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment."[62] Conversely, WVSSAC is differently situated as a matter of law. Whereas the State and County Boards delegate

---

[57] *Rowan Blvd. Assoc. LLC v. Republic First Bank,* 2021 U.S. Dist. LEXIS 151890
[58] Dolan Dep. (Exhibit A) at 39;  *Smith v. NCEAA*, 266 F.3d 152, 156-57 (2001
[59] "[R]ights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority. The Equal Protection Clause does not . . . add anything to the rights which one citizen has under the Constitution against another." *United Bhd. Of Carpenters* & *Joiners, Local 610 v. Scott,* 463 U.S. 825, 831 (1983) (internal quotation marks and citations omitted).
[60] *Shipman v. Balt. Police Dept.,* 2014 U.S. Dist. Lexis 59733.
[61] *See* First Am. Compl. (ECF No. 64) at 7, 9, 102, citing in pertinent part W. Va. Code § 18-2-5; *Jones v. W.Va. State Bd. of Educ.*, 218 W. Va. 52, 61 (2005).
[62] *See* First Am. Compl. (ECF No. 64) at 102.

authority to WVSSAC, the key distinction for determining that WVSSAC would be a 'state actor' is whether WVSSAC truly assumes control of a federally funded program.[63] Reviewing courts have found expressly that giving WVSSAC the power to enforce the eligibility rules adopted by the State Board and member schools directly against the students does not constitute "ced[ing] authority."[64] Here, the schools have a voluntary relationship with WVSSAC and have retained the authority to withdraw from the association – also found to be a key determinant and a factor mitigating against any finding of control.[65] WVSSAC testified that schools can indeed withdraw, and private schools have done so.[66] While withdrawal means that the member schools would be excluded from the championships, they nonetheless may participate in sports and activities as long as they remain a 'school.'[67] However, reviewing courts have found that even if resignation meant no participation, even if it would 'thwart' the schools' desire to 'remain a powerhouse' among the schools against which it competes, nonetheless, the ability to withdraw is a "'practical alternative to compliance with [WVSSAC's] demands,'" such that WVSSAC does not *control* any of the member programs.[68]  No school is forced to join, another key determinant,[69] and each school must elect to participate.[70] The fact that each member school has an opportunity for input on the rules has been found insufficient to demonstrate *control,* just has their voluntary decision to follow them.[71] As for the eligibility enforcements, should member schools or athletes risk sanctions by violating the regulations or rules, that choice on their part demonstrates a lack of *control* by WVSSAC. The fact that "'options [may be] unpalatable does not mean that they were nonexistent.'"[72] And it is the option to be a member or

---

[63]  *Smith v. NCEAA*, 266 F.3d at 157.
[64] *Id.*
[65] *Id*. at 159.
[66] Dolan Dep. (Exhibit A) at 69.
[67] Dolan Dep. (Exhibit A) at 70.
[68] *Smith*, 266 F.3d at 159, quoting *Cureton v. NCAA,* 198 F.3d 107, 116-18 (3d Cir. 1999).
[69] *Smith*, 266 F.3d at 159.
[70] Dolan Dep. (Exhibit A) at 39.
[71] *Smith*, 266 F.3d at 159, quoting *NCAA v. Tarkanian*, 488 U.S. 179, 195 (1988).
[72] *Smith*, 266 F.3d at 156, quoting *NCAA v. Tarkanian*, 488 U.S. 179, 198 n.19 (1988).

withdraw, the option to follow the rules or face sanctions that undercuts any actionable understanding of control in which to anchor Plaintiff's Equal Protection claim. Finally, the same analysis applies whether the nomenclature is controlling authority, pervasive entwinement, public entwinement – the analysis of *control* "is no less rigorous."[73]

In other instances, federal courts have considered Title IX and Fourteenth Amendment challenges brought as against what might appear to be parallel athletic associations. *See, e.g., Communities for Equity v. Michigan High School Athletic Association,* 80 F. Supp. 2d 729 (W. D. Mich. 2000) (alleging that MHSAA discriminated against female athletes based on inequities in programs including non-traditional and/or shorter seasons and different rules); *Alston v. Virginia High School League, Inc.,* 144 F. Supp.2d 526 (W. D. Va. 1999) (alleging that VHSL denied certain female public school athletes equal treatment, opportunities and benefits based on their sex in violation of Title IX[74]). Beyond those instances, the United States Court of Appeals for the Sixth Circuit considered *Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651 (6th Cir. 1981) (challenging coeducational teams in contact sports as a violation of Title IX), and *Brentwood Academy v. Tennessee Secondary School Athletic Association,* 180 F.3d 758 (6th Cir. 1999), *rev'd* 531 U.S. 208 (2001), cited previously by the Plaintiff.  Among the factors these courts considered in determining the propriety of holding the associations accountable under federal law were sources of funding and whether the associations adopted the provisions that were alleged to be violations of federal law. That is, more particularly, the courts considered whether the associations are federally funded or receive support or dues from federally funded programs and/or whether the associations further the objectives of

---

[73] *Smith*, 266 F.3d at 160.
[74] *But see Yellow Springs,* 647 F. Supp. 2d at 658, finding that any resolution by necessity involves the Fourteenth Amendment as well.

federally funded programs. In terms of Equal Protection, the United States Supreme Court in *Brentwood* considered whether the Tennessee association was a 'state actor' given the depth with which its operations were intertwined with a single state's (Tennessee's) activities (as compared to the interstate impact of the NCAA[75]). The District Courts in both *Alston* and *Communities* (relied upon by Plaintiff) addressed Equal Protection, considering whether the athletic (as opposed to activities) associations were 'state actors,' whether they served a public function, and/or whether they had a symbiotic relationship with the State and the regulated activity.[76]

In determining whether the associations were subject to Title IX, then, the courts considered whether the source of funding was public, including flow-through funding from school dues, and/or whether the associations controlled programs or practices in the member school and/or whether the associations held functions at school facilities and/or whether the associations were involved in some manner with every school within the state (as opposed to organizations or programs across more than one state). In overview, Michigan High School Athletic Association (Michigan), Ohio High School Athletic Association (Ohio), Tennessee Secondary School Athletic Association (Tennessee) and WVSSAC are private non-profit or not-for-profit corporations, yet Ohio, Tennessee and Michigan receive some funding through member schools. Virginia High School League (Virginia) is a public, for-profit corporation that has only public schools as members and is funded by member dues.[77] Unlike Michigan, Tennessee, Ohio and Virginia,[78]

---

[75] *Nat'l Collegiate Ath. Ass'n v. Tarkanian,* 109 S. Ct. 454 (1988), finding *inter alia* that NCAA "was not a state actor because it was acting under the color of its own policies rather than under the color of state law and because university did not delegate power to petitioner to take specific action against university or respondent."

[76] *See Alston,* 144 F. Supp. 2d 526, 537.

[77] *Id.* at 527.

[78] *Yellow Springs,* 647 F.2d at 658 (finding that OHSAA issues regulations that reach deep into school administration, including regulating the member of school administration to handle sports finances; *Alston,* 144 F Supp. 2d at 527 (accepting dues from federally funded School); *Communities,* 80 F. Supp. 2d at 732 (noting that *the bulk* of the money is from gate receipts but that MSHAA regulates within its

however, West Virginia's SSAC receives no dues whatsoever from member schools and has not for at least twenty years.[79] WVSSAC sustains itself with corporate sponsorships, advertising revenue and gate proceeds from championship meets and tournaments. Also, conversely to the Virginia High School League, WVSSAC includes parochial schools among its number, including a significant number of them at the middle school level, which schools receive no federal funds and yet who participate in WVSSAC programs.[80]

In considering the Fourteenth Amendment, the Supreme Court found in *Brentwood* that the Tennessee Association was inextricably bound and intertwined with its member schools so as to be a 'state actor.' As analyzed above, however, that entwinement requires a level of control and federal involvement not present with WVSSAC. Here, WVSSAC does not receive federal funds and does not mandate membership (nor include in its membership every public or parochial school in the state). WVSSAC's policies and regulations make no gender determinations. WVSSAC does not build or challenge rosters, and, perhaps most pointedly, WVSSAC does not have a role under H.B. 3293 (nor is there a cause of action against it included there).

In *Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651 (6th Cir. 1981), the Appeals Court considered the applicability and enforcement of Title IX relative to co-educational sports, that is, whether boys and girls may play basketball on the same team. In considering whether Title IX applied to OHSAA, the Court found that

> the focus of both Title IX and the regulations is on "recipients." It is federal aid to "recipients" that will be cut off if Title IX is not complied with. "Recipients" bear ultimate responsibility for providing an equal educational opportunity. The OHSAA is not a "recipient," and does not bear the burden of non-compliance, so

member School by requiring that the member School adopt the "Handbook as their own and agree to be primarily responsible for their enforcement").
[79] Dolan Dep. (Exhibit A) at 39.
[80] www.wvssac.org/school-directory

may not adopt a rule which limits the ability of recipients to furnish girls the same athletic opportunities it provides for boys. The OHSAA has not claimed that it attempted to frame rules with an eye to achieving the goal of universally applicable equal athletic opportunity. Thus, based on this record, we conclude that the determination as to compliance with Title IX must be made by individual School, not the OHSAA.[81]

Likewise here, pursuant to the direct language of the statute, WVSSAC will not promulgate the regulations envisioned under the statute.  Once again, H.B. 3293 provides for the State Board to promulgate rules to implement the section,[82] yet the evidence adduced in discovery is that State Board rules are neither promulgated nor enforced by WVSSAC but rather are embedded in WVSSAC's rule books, where only the State Board can revise, amend, provide waivers.[83] Eligibility enforcement as a matter of law is insufficient to convert WVSSAC into a state actor.[84] Further, Plaintiff has admitted that WVSSAC is unnecessary to the relief she seeks and that the relief she seeks is unavailable through WVSSAC when she cited WVSSAC's regulations, protocols, forms as gender (and therefore transgender) neutral – certainly she has not asserted that relative to any of the other Defendants.[85]

WVSSAC does not receive federal funding, does not regulate the internal operations of member schools, and does not form team rosters. Conversely, WVSSAC opens its membership to public and parochial schools, functions outside any concept of 'state,' and operates in conjunction with regional boards, drawing officials from both West Virginia and Ohio, relying on two local boards of officials that are intrastate: Mid-Ohio Valley Local Board and the West Virginia Ohio

---

[81] *Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651, 656 (6th Cir. 1981)
[82] W. Va. Code Section 18-2-25d(e).
[83] (Dolan Dep. (Exhibit A) at 62, testifying that the State Board's 2.0 Rule is embedded in WVSSAC's regulation book but remains the State Board's Rule. *See also* Blatt Dep. (Exhibit B) at 132-33.
[84] *Smith*, 266 F.3d at 159, quoting *Cureton v. NCAA,* 198 F.3d 107, 116-18 (3d Cir. 1999).
[85] Of note, WVSSC is an *activities* commission, as it oversees extracurricular activities beyond traditional 'sports,' such as cheerleading.

Local Board.  The Supreme Court of Appeals of West Virginia has expressly found that WVSSAC is not a state agency on the basis that it has been a voluntary association since 1916 (and was not created nor empowered by the Legislature); it is not funded by public moneys; and not all public or private schools in West Virginia have elected to belong.[86] The relevant WVSSAC regulations are uniform across the board in providing one set of regulations for boys and girls,[87] such that not even Plaintiff finds WVSSAC an obstacle to accomplishing federal objectives.

Because Plaintiff has failed to prove that WVSSAC is a 'state actor' such that Title IX and the Equal Protection Clause are actionable as against it,  "the plain language of Rule 56(c) mandates the entry of summary judgment . . . [on the basis that she has failed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on that party will bear the burden of proof at trial[,]" *Celotex Corp.*, 477 U.S. at 322.

> **Plaintiff has failed to prove that WVSSAC has any role or authority under H.B. 3293, and the fact remains, at the close of discovery, that WVSSAC cannot change or affect outcome here. Therefore, no viable cause of action exists as against WVSSAC.**

H.B. 3293 relies entirely upon the State Board of Education, the Higher Education Policy Commission, and the Council for Community and Technical College Education to promulgate rules to implement its provisions.[88] As Plaintiff asserts, the Legislature specifically removed language from H.B. 3293 that would have required WVSSAC to participate in determinations made in accordance with the law.[89] As such, the statute itself occasions no changes in WVSSAC policies nor does it impose any new duties upon WVSSAC. This is highlighted by the fact that Plaintiff expressly does not assert that WVSSAC's regulations or programs violate her rights in

---

[86] Syl. pt. 2, 3, *Mayo v. WVSSAC,* 233 W. Va. 88, 96, 872 S.E.2d 224, 232 (2008).
[87] Of note, plaintiff does not challenge sex-separated teams. *See* Mem. (ECF No. 19) at 16. *See also* note 13, above.
[88] W. Va. Code § 18-2-25d(e) (effective July 8, 2021).
[89] *See* First Am. Compl. (ECF No. 64) at ¶ 49.

any way and, to the contrary, currently allow inclusion regardless of gender/transgender determinations.[90] The evidence adduced in discovery is that the State Board rule mandated by the statute would be embedded in WVSSAC's rules, where WVSSAC's sole role would be eligibility determinations (which do not constitute 'state action').[91] Per the statute as passed, any determinations to be made as to the assignment of a particular student to either a girls' or boys' team will be made at the State or County level and resolved prior to submission of rosters to WVSSAC.[92] At this time, WVSSAC has no role suggested or associated with the law created by H.B. 3293, and, therefore, WVSSAC should not be a party to this action.  This position is highlighted by the fact that H.B. 3293 does not envision a cause of action against WVSSAC for any statutory violation (no doubt because WVSSAC does not affect or make determinations under the statute).[93]

Because of WVSSAC's lack of a role under H.B. 3293, Plaintiff lacks evidence to support her case as against WVSSAC. *Celotex Corp.,* 477 U.S. at 325. Therefore, WVSSAC is entitled to summary judgment because the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

**I. By its express terms, H.B. 3293 does not include WVSSAC in its enforcement or in any relief thereunder, such that Plaintiff's pre-enforcement action must fail as a matter of law.**

The language of H.B. 3293, in describing those entities against which relief may be sought for any statutory violation, does not reference WVSSAC in any way. The express terms of H.B.

---

[90] Mem. (ECF No. 19), at n.6.  *See also* Consolidated Response (ECF No. 53), stating that "West Virginia already had a long-standing and unchallenged policy of establishing separate school sports teams for boys and girls, as well as no law or policy categorically prohibiting girls who are transgender from playing on girls' teams. *See* W. Va. Code R. § 127-2-3.8; (Dkt. 42 ("U.S. SOI") at 6."

[91] HCBOE Dep. (Exhibit C) at 215; Dolan Dep. (Exhibit A) at 46, 60, 155-56.; Blatt Dep. (Exhibit B) at 132-33.

[92] HCBOE Dep. (Exhibit C) at 214-16.

[93] W. Va. Code § 18-2-25d(d), (e) (effective July 8, 2021).

3293 contemplate that the State Board of Education, the Higher Education Policy Commission, and the Council for Community and Technical College Education shall promulgate rules to implement its provisions.[94] On information and belief, the State Board has not promulgated regulations as envisioned in H.B. 3293; however, the statute itself occasions no changes in WVSSAC policies nor imposes any new duties on WVSSAC. In fact, as Plaintiff's Complaint indicates, the legislature considered including WVSSAC in H.B. 3293 but ultimately chose not to do so. *See* First Am. Complaint (ECF No. 64) at ¶¶ 49. This statutory silence is reflected as well in the evidence adduced in discovery, where the State Board's rule will be embedded in WVSSAC's regulations,[95] where the schools will create the rosters,[96] where eligibility fails to rise to the level of 'state action.'[97] WVSSAC has no actionable role, and the statute does not envision a cause of action against WVSSAC for any statutory violation (no doubt because enjoining or not enjoining WVSSAC does not affect outcome under this statute).[98]

Plaintiff avers that WVSSAC's involvement is gender and transgender neutral.[99] Plaintiff does not assert that WVSSAC's regulations or programs violate her rights in any way. Plaintiff has asserted that, prior to H.B. 3293, West Virginia had "separate sports teams for boys and girls and did not categorically bar girls like B.P.J. from competing in school sports on girls' teams."[100] In particular, as relates to cross-country and track, all WVSSAC regulations are uniform across

---

[94] W. Va. Code §18-2-25d(e) (effective July 8, 2021).
[95] HCBOE Dep. (Exhibit C) at 215; Dolan Dep. (Exhibit A) at 46, 60, 155-56.; Blatt Dep. (Exhibit B) at 132-33.
[96] HCBOE Dep. (Exhibit C) at 214-16.
[97] *Smith*, 266 F.3d at 156, quoting *NCAA v. Tarkanian*, 488 U.S. 179, 198 n.19 (1988).
[98] W. Va. Code §18-2-25d(d) and (e) (effective July 8, 2021).
[99] Jackson Declaration (ECF No. 2-1) at ¶25 (p. 23). *See Communities,* 459 F.3d at 695, finding that "[d]isparate treatment does not arise from any and all differences in treatment; it occurs only where the offending party '*treats some people less favorably* than others because of their race, color, religion, sex, or national origin'" (emphasis in original).
[100] *See* Mem. (ECF No. 19) at 7, citing §127-2-3.8 (Eligibility), which states in pertinent part "School may sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill."

the board in providing one set of regulations for boys and girls.[101] Further, Heather Jackson admits that "verification of 'reproductive biology and genetics' is not part of the routine sports physical exam required by Defendant WVSSAC."[102] WVSSAC's physical examination form, the sole registration form WVSSAC requires from athletes for participation, is not impacted by H.B. 3293 and does not have the athletes identify themselves by gender.[103] WVSSAC does not have regulations that categorically ban transgender athletes nor does WVSSAC's enrollment paperwork (physical exam) ask athletes to select or identify themselves by gender. WVSSAC has not determined the appropriate team for B.P.J. but only 'received'[104] the rosters for cross-country or track with her name in place. That is, WVSSAC will not drive outcome, will not determine the solution, will not enforce H.B. 3293, and is not identified or called upon in H.B. 3293 to do anything whatsoever.

For these reasons, as against WVSSAC, Plaintiff's suit is not properly positioned for pre-enforcement review.

> To determine whether a case is ripe for pre-enforcement review, courts "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Miller [v. Brown]*, 462 F.3d [312], 319 (4th Cir. 2006) (citation omitted); *see Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003) (setting forth fitness and hardship as the two predominant factors in determining ripeness). With respect to fitness, a claim is unfit for adjudication where the possibility of injury is remote and the issues presented abstract. *Texas v. United States*, 523 U.S. 296, 301, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) ("A claim is not ripe . . . if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 580-81, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985))); *Miller*, 462 F.3d at 319 (to be ripe, an action in controversy must not be "dependent on future uncertainties.").[105]

---

[101] Of note, Plaintiff does not challenge sex-separated teams. *See* Mem. (ECF No. 19) at 16. *See also* §127-3-22. Cross Country (Boys and Girls); §127-3-29. Track and Field (Boys and Girls)

[102] *See* Mem. (ECF No. 19) at n.6.

[103] Jackson Declaration (ECF 2-1) at Exhibit A.

[104] HCBOE Dep (Exhibit C) at 218, 236.

[105] *Air Evac. EMS, Inc., v. Cheatham*, 260 F. Supp. 3d 628, 636-37 (S.D. W. Va. 2017).

For all of the reasons set forth herein, in particular, that WVSSAC's role will be nothing more than potential eligibility determinations which have been expressly to be other than 'state action,' any pre-enforcement action against it is remote, abstract, based on contingencies that no one has proven have any likelihood of occurring. Including WVSSAC creates a substantial hardship for it and yet advances Plaintiff's case not at all. Dismissal is appropriate as against WVSSAC at this time as Plaintiff's remote, abstract claim against it is unfit for adjudication at this time.

### A. Plaintiff recognizes WVSSAC's regulations as neutral and is participating under them now, without intervention or amendment.

WVSSAC's exclusion from the enrolled legislation is meaningful, that the Legislature is presumed to have included or excluded knowingly.[106] Plaintiff has not attempted to refute her admission in her First Amended Complaint that the Legislature specifically removed language from H.B. 3293 that would have required WVSSAC to participate in determinations made in accordance with the law.[107] Plaintiff has produced no evidence that WVSSAC will have a role in implementing H.B. 3293. On all of these points, Plaintiff overlooks that the WVSSAC regulations under which Plaintiff is now participating have been neutral and inclusive at all times and required no engineering or adjustment to allow for Plaintiff's participation, whether with or without the injunction in place. Once again, as relates to cross-country and track, all WVSSAC regulations are uniform across the board in providing one set of regulations for boys and girls.[108] Further, Heather Jackson admits that "verification of 'reproductive biology and genetics' is not part of the routine

---

[106] West Virginia's Code Chapter 18 elsewhere cites WVSSAC, but WVSSAC is expressly excluded in W. Va. Code § 18-2-25d(e). "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23 (1983).
[107] *See, e.g.,* First Am. Compl. at ¶ 50.
[108] Of note, Plaintiff does not challenge sex-separated teams. *See* Mem. (ECF No. 19) at 11. *See also* §127-3-22. Cross Country (Boys and Girls); §127-3-29. Track and Field (Boys and Girls).

sports physical exam required by Defendant WVSSAC."[109] WVSSAC's physical examination form, the sole registration form WVSSAC requires from athletes for participation, is not impacted by H.B. 3293 and does not have the athletes identify themselves by gender.[110]

Where Plaintiff now embraces the broad statute and speculates what authority WVSSAC may gain, the more particularized regulations remain in place without any indication that the Plaintiff's inclusion would mandate change. Where both a broad statute and more specific regulations apply, the general rules of statutory construction provide guidance, whether directly or by analogy:

> Pursuant to elementary principles of statutory construction, unless the legislature has indicated that it intends otherwise, a specific statutory provision controls a more general one. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 375, 107 L. Ed. 2d 782, 110 S. Ct. 680 (1990) ("It is an elementary tenet of statutory construction that 'where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one ….'" (*quoting Morton v. Mancari*, 417 U.S. 535, 550-51, 41 L. Ed. 2d 290, 94 S. Ct. 2474 (1974*))); see also Warren v. N.C. Dep't of Human Res.,* 65 F.3d 385, 390 (4th Cir. 1995) ("It is an elementary principle of statutory construction that a specific statutory provision controls a more general one.").[111]

Here, where Plaintiff is participating in cross-country and track pursuant to precise, particularized WVSSAC regulations and form, Plaintiff's reliance on the more generalized enabling statute and on suggestions and specters of what is yet to come is improper. The elemental rules of statutory construction would not allow that upstream migration. Here, where WVSSAC has produced precise and event specific regulations as recognized by Plaintiff as neutral, the Commission's reliance on its regulations would be supportable as well as a matter of law. *Chevron, USA v. NRDC, Inc.,* 104 S. Ct. 2778, 2782 (1984).

---

[109] *See* Mem. (ECF No. 19) at n.6.
[110] Jackson Declaration (ECF No. 2-1) at Exhibits A; West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 47-2) at Exhibit B.
[111] *S.C. Dept. of Health & Evtl. Control v. Commerce & Indus.,* 372 F.2d 245, 258 (4th Cir. 2004).

Where WVSSAC's regulations are neutral, where WVSSAC will accept/embed the new regulation (not pass it), and where eligibility determinations fail to serve as 'state action,' WVSSAC has no role here, such that dismissal as a matter of law is the necessary and proper outcome at this time.

## IV.    CONCLUSION.

Because Plaintiff has failed to prove that WVSSAC is a state actor, because WVSSAC has no role under H.B. 3293, and because all of the genuine material facts in the light most favorable to the Plaintiff still cannot support a case that any fact-finder could embrace, dismissal of WVSSAC as a matter of law is the necessary and proper outcome at this time.

**WEST VIRGINIA SECONDARY SCHOOL**
**ACTIVITIES COMMISSION,**
**By Counsel.**

*/S/ Roberta F. Green*
_____
Roberta F. Green (WVSB #6598)
Kimberly M. Bandy (WVSB #10081)
Shannon M. Rogers (WVSB # 13920)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street East, Suite 200 (25301
Charleston, WV 25339
(304) 345-1400
(304) 343-1826 FAX
rgreen@shumanlaw.com
kbandy@shumanlaw.com
srogers@shumanlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**B.P.J., by her next friend and mother,
HEATHER JACKSON,**
     **Plaintiff,**

**v.**                        **Civil Action No. 2:21-cv-00316
Honorable Joseph R. Goodwin, Judge**

**WEST VIRGINIA STATE BOARD OF EDUCATION,
HARRISON COUNTY BOARD OF EDUCATION,
WEST VIRGINIA SECONDARY SCHOOL
ACTIVITIES COMMISION, W. CLAYTON BURCH
in his official capacity as State Superintendent, and
DORA STUTLER in her official capacity as
Harrison County Superintendent,**
     **Defendants,**

**And**

**LAINEY ARMISTEAD,**
     **Defendant-Intervenor.**

## CERTIFICATE OF SERVICE

I hereby certify that I, Roberta F. Green, have this day, the 21st day of April, 2022, served a true and exact copy of **"WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT"** with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following counsel of record:

Loree Beth Stark
Nicholas Ward
ACLU of WV FOUNDATION
1614 Kanawha Boulevard, East
Charleston, WV  25311
lstark@acluwv.org
nward@acluwv.org

Kathleen R. Hartnett
Julie Veroff
COOLEY LLP
101 California St. – 5th Floor
San Francisco, CA 94111-5800
khartnett@cooley.com
jveroff@cooley.com

Katelyn Kang
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
kkang@cooley.com


 Andrew Barr
COOLEY LLP
1144 15th St., Suite 2300
Denver, CO  80202-5686
abarr@cooley.com

Joshua Block
Chase Strangio
ACLU FOUNDATION
125 Broad Street
New York, NY  10004
jblock@aclu.org

Sruti Swaminathan
LAMBDA LEGAL
120 Wall St., 19th Floor
New York, NY 10005
sswaminathan@lambdalegal.org


Kelly C. Morgan
Michael W. Taylor
Kristen Vickers Hammond
BAILEY & WYANT, PLLC
500 Virginia St., East, Suite 600
Charleston, WV  25301
kmorgan@baileywyant.com
mtaylor@baileywyant.com
khammond@baileywyant.com


Douglas P. Buffington, II
Curtis R.A. Capehart
Jessica A. Lee
State Capitol Complex
Building 1, Room E-26
Charleston, WV  25305-0220
Curtis.R.A.Capehart@wvago.gov

Elizabeth Reinhardt
COOLEY LLP
500 Boylston St., 14th Floor
Boston, MA  02116-3736
ereinhardt@cooley.com


Avatara Smith-Carrington
LAMBDA LEGAL
3500 Oak Lawn Ave., Suite 500
Dallas, TX 75219
asmithcarrington@lambdalegal.org


Carl Charles
LAMBDA LEGAL
1 West Court Square, Suite 105
Decatur, GA  30030
ccharles@lambdalegal.org


Susan Llewellyn Deniker
Jeffrey M. Cropp
STEPTOE and JOHNSON, LLC
400 White Oaks Boulevard
Bridgeport, WV  26330
susan.deniker@steptoe-johnson.com
jeffrey.cropp@steptoe-johnson.com


Tara Borelli
LAMBDA LEGAL
1 West Court Square, Suite 105
Decatur, GA  30030
tborelli@lambdalegal.org


David C. Tryon
West Virginia Atty. General's Office
1900 Kanawha Blvd., E.
Bldg. 1, Rm 26E
Charleston, WV  25305
David.C.Tryon@wvago.gov

Taylor Brown
American Civil Liberties Union
125 Broad St., 18th Floor
New York, NY 10004
tbrown@aclu.org

Jonathan Scruggs
Roger Greenwood Brooks
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
jscruggs@adflegal.org
rbrooks@adflegal.org

Timothy D. Ducar
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ  85260
tducar@azlawyers.com

Anthony E. Nortz
Kesner & Kesner
112 Capitol Street
Charleston, WV 25301
anortz@kesnerlaw.com

Aria S. Vaughan
U.S. Department of Justice
Civil Rights Division
Educational Opportunities Section
950 Pennsylvania Ave., NW
4CON, 10th Floor
Washington, DC 20530
aria.vaughan@usdoj.gov

Brandon S. Steele
Joshua D. Brown
Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Ste 100
Beckley, WV  25801
bsteelelawoffice@gmail.com
joshua_brown05@hotmail.com

Christiana Holcomb
Rachel Csutoros
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
cholcomb@adflegal.org
rcsutoros@adflegal.org

Meredith Taylor Brown
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
tbrown@aclu.org

Michael W. Taylor
BAILEY & WYANT PLLC
500 Virginia St., E. – Suite 600
Charleston, WV 25301
mtaylor@baileywyant.com

Fred B. Westfall, Jr.
Jennifer M. Mankins
United States Attorney's Office
300 Virginia Street, East – Rm. 400
Charleston, WV 25301
fred.westfall@usdoj.gov
jennifer.mankins@usdoj.gov

*/S/ Roberta F. Green*

Roberta F. Green, Esquire (WVSB #6598)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street E., Suite 200 (25301)
Charleston, West Virginia
 (304) 345-1400; FAX: (304) 343-1826
*Counsel for Defendant WVSSAC*
rgreen@shumanlaw.com