# Exhibit 2

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

 3                      CHARLESTON DIVISION

 4                    *  *  *  *  *  *  *  *

 5   B.P.J., by her next friend and    *

 6   Mother, HEATHER JACKSON,          *

 7        Plaintiff                    *  Case No.

 8        vs.                          *  2:21-CV-00316

 9   WEST VIRGINIA STATE BOARD OF      *

10   EDUCATION, HARRISON COUNTY        *

11   BOARD OF EDUCATION, WEST          *

12   VIRGINIA SECONDARY SCHOOL         *

13   ACTIVITIES COMMISSION, W.         *

14   CLAYTON BURCH in his official     *

15   Capacity as State Superintendent,* VIDEOTAPED

16   DORA STUTLER in her official      * VIDEOCONFERENCE

17   Capacity as Harrison County       * DEPOSITION

18   Superintendent, PATRICK MORRISEY  *      OF

19   In his official capacity as       * HEATHER JACKSON

20   Attorney General, and THE STATE   * January 19, 2022

21   OF WEST VIRGINIA,                 *

22        Defendants                   *

23              Any reproduction of this transcript
                is prohibited without authorization
24                 by the certifying agency.
```

1                    VIDEOTAPED VIDEOCONFERENCE DEPOSITION

2                                OF

3       HEATHER JACKSON, taken on behalf of the Defendant, State

4       of West Virginia herein, pursuant to the Rules of Civil

5       Procedure, taken before me, the undersigned, Nicole

6       Montagano, a Court Reporter and Notary Public in and for

7       the State of West Virginia, on Wednesday, January 19,

8       2022, beginning at 4:02 p.m.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                A P P E A R A N C E S

 2

 3     JOSHUA BLOCK, ESQUIRE

 4     American Civil Liberties Union Foundation

 5     125 Broad Street

 6     New York, NY  10004

 7     COUNSEL FOR PLAINTIFF

 8

 9     LOREE STARK, ESQUIRE

10     ACLU of West Virginia

11     P.O. Box 3952

12     Charleston, WV  25339

13         COUNSEL FOR PLAINTIFF

14

15     KATHLEEN R. HARTNETT, ESQUIRE

16     ANDREW BARR, ESQUIRE

17     JULIE VEROFF, ESQUIRE

18     ZOE HELSTROM, ESQUIRE

19     Cooley, LLP

20     3 Embarcadero Center

21     20th Floor

22     San Francisco, CA  94111-4004

23         COUNSELS FOR PLAINTIFF

24
```

```
 1              A P P E A R A N C E S (cont'd)

 2

 3   SRUTI SWAMINATHAN, ESQUIRE

 4   Lambda Legal

 5   120 Wall Street

 6   19th Floor

 7   New York, NY  10005-3919

 8        COUNSEL FOR PLAINTIFF

 9

10   DAVID TRYON, ESQUIRE

11   CURTIS R.A. CAPEHART, ESQUIRE

12   State Capitol Complex

13   Building 1, Room E-26

14   Charleston, WV  25305

15        COUNSEL FOR STATE OF WEST VIRGINIA

16

17   ROBERTA F. GREEN, ESQUIRE

18   Shuman McCuskey Slicer, PLLC

19   1411 Virginia Street East

20   Suite 200

21   Charleston, WV  25301

22        COUNSEL FOR WEST VIRGINIA SECONDARY SCHOOL

23        ACTIVITIES COMMISSION

24
```

```
 1              A P P E A R A N C E S (cont'd)

 2

 3    SUSAN DENIKER, ESQUIRE

 4    Steptoe & Johnson

 5    400 White Oaks Boulevard

 6    Bridgeport, WV  26330

 7        COUNSEL FOR HARRISON COUNTY BOARD OF EDUCATION and

 8        HARRISON COUNTY SUPERINTENDENT DORA STUTLER

 9

10    KELLY C. MORGAN, ESQUIRE

11    KRISTEN V. HAMMOND, ESQUIRE

12    Bailey Wyant

13    500 Virginia Street East

14    Suite 600

15    Charleston, WV  25301

16        COUNSEL FOR WEST VIRGINIA BOARD OF EDUCATION and

17        SUPERINTENDANT W. CLAYTON BURCH

18

19    TIMOTHY D. DUCAR, ESQUIRE

20    Law Office of Timothy D. Ducar

21    7430 East Butherus Drive

22    Suite E

23    Scottsdale, AZ  85260

24        COUNSEL FOR INTERVENOR, LAINEY ARMISTEAD
```

1                          I N D E X

2

3    DISCUSSION AMONG PARTIES                      11 - 14

4    WITNESS: HEATHER JACKSON

5    EXAMINATION

6       By Attorney Tryon                         15 - 75

7    DISCUSSION AMONG PARTIES                      75 - 76

8    CERTIFICATE                                        77

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                         EXHIBIT PAGE

 2

 3                                               PAGE

 4     NUMBER    DESCRIPTION                   IDENTIFIED

 5     Exhibit 1   Davis Medical Records         --*

 6     Exhibit 1R  Davis Medical Records         --*

 7     Exhibit 2   Davis Medical Records         --*

 8     Exhibit 3   WVU Medical Records           --*

 9     Exhibit 4   UPMC Children's Medical

10                 Records                       --*

11     Exhibit 5   UPMC Children's Medical

12                 Records                       --*

13     Exhibit 6   UPMC Children's Medical

14                 Records                       --*

15     Exhibit 7   UPMC Children's Medical

16                 Records

17     Exhibit 8   UPMC Children's Medical

18                 Records                       --*

19     Exhibit 9   UPMC Children's Medical

20                 Records                       --*

21     Exhibit 11A Progress Notes               --*

22     Exhibit 11B Progress Notes               --*

23     Exhibit 11C Progress Notes               --*

24     Exhibit 11D Progress Notes               --*
```

```
1                            EXHIBIT PAGE

2

3                                              PAGE

4    NUMBER        DESCRIPTION               IDENTIFIED

5    Exhibit 12   UPMC Children's Medical

6                 Records                     --*

7    Exhibit 13   UMPC Children's Medical

8                 Records                     --*

9    Exhibit 14   WVU Medical Records         --*

10   Exhibit 15   WVU Medical Records         --*

11   Exhibit 16   WVU Medical Records         --*

12   Exhibit 17   Gender Support Plan         --*

13   Exhibit 18   Preferred Name Request Form --*

14   Exhibit 19   Gender Support Plan         --*

15   Exhibit 20   Student Information         --*

16   Exhibit 20R  Student Information         --*

17   Exhibit 21   Screening Results           --*

18   Exhibit 21R  Screening Results           --*

19   Exhibit 22   Birth Certificate           --*

20   Exhibit 22R  Birth Certificate           --*

21   Exhibit 23   Heart Walk Article          --

22   Exhibit 23R  Heart Walk Article          --

23   Exhibit 24   Photo                       --

24   Exhibit 24R  Photo                       --
```

```
 1                      EXHIBIT PAGE

 2

 3                                             PAGE

 4    NUMBER          DESCRIPTION            IDENTIFIED

 5    Exhibit 25   WV Record                    --

 6    Exhibit 26   Photo of Mom and BPJ         --

 7    Exhibit 27   Article                      --

 8    Exhibit 28   Article                      --

 9    Exhibit 29   Lambda Legal Article         --

10    Exhibit 30   Declaration of Heather

11                 Jackson                      --

12    Exhibit 31   Declaration of BJP           --

13    Exhibit 32   First Amended Complaint      --

14    Exhibit 33   Standards of Care            --

15    Exhibit 34   House Bill 3293              --

16

17

18

19

20

21

22

23    * CONFIDENTIAL EXHIBITS

24
```

1        OBJECTION PAGE

2

3    ATTORNEY                                    PAGE

4    Block    20, 22, 26, 28, 28, 29, 30, 31, 31, 32, 33, 33,

5    33, 34, 34, 35, 35, 36, 36, 37, 38, 38, 39, 39, 40, 40,

6    41, 41, 41, 42, 42, 43, 43, 43, 44, 44, 45, 45, 45, 46,

7    46, 47, 47, 47, 48, 48, 49, 49, 49, 50, 50, 50, 51, 52,

8    52, 52, 53, 53, 54, 54, 55, 55, 55, 56, 56, 57, 58, 58,

9    58, 59, 59, 60, 60, 60, 61, 61, 62, 62, 62, 63, 63, 63,

10   64, 64, 65, 66, 67, 67, 67

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1              S T I P U L A T I O N
 2     ---------------------------------------------------------
 3     (It is hereby stipulated and agreed by and between
 4     counsel for the respective parties that reading,
 5     signing, sealing, certification and filing are not
 6     waived.)
 7     ---------------------------------------------------------
 8              P R O C E E D I N G S
 9     ---------------------------------------------------------
10              VIDEOGRAPHER: We are now on the record.
11     My name is Jacob Stock.  I'm a Certified Legal Video
12     Specialist employed by Sargent's Court Reporting
13     Services.  The date today is January 19th, 2022.  The
14     time on the video monitor currently reads 4:02 p.m.
15     This deposition is being taken remotely by Zoom
16     conference.  The caption of this case is in the United
17     States District Court for the Southern District of West
18     Virginia, Charleston Division, BPJ by her Next Friend
19     and Mother, Heather Jackson, versus West Virginia State
20     Board of Education, et al.  Civil Action Number
21     2:21-CV-00316.  The name of the witness is Heather
22     Denise Jackson.  Will the attorneys present state their
23     names and the parties they represent.
24              ATTORNEY TRYON:  This is David Tryon,
```

1   representing the State of West Virginia.  And with me

2   is ---.

3                    ATTORNEY CAPEHART:  Curtis Capehart also

4   representing the State of West Virginia.

5                    ATTORNEY BLOCK:  This is Josh Block.  I'm

6   representing Plaintiff BPJ and the witness.  And with

7   folks' indulgence, I will have my co-counsel from Cooley

8   announce themselves followed by my co-counsel's from

9   Lambda Legal.

10                    ATTORNEY HARTNETT:  Hi.  This is Kathleen

11  Hartnett from Cooley for BPJ and the witness.

12                    ATTORNEY BARR:  This is Andrew Barr from

13  Cooley for BPJ and the witness.

14                    ATTORNEY VEROFF:  This is Julie Veroff

15  from Cooley for BPJ and the witness.

16                    ATTORNEY HELSTROM:   This is Zoe Helstrom

17  from Cooley, LLP, for BPJ and the witness.

18                    ATTORNEY SWAMINATHAN:   This is Scruti

19  Swaminathan for BPJ and the witness from Lambda Legal.

20                    ATTORNEY GREEN:  Roberta Green, Schuman

21  McCuskey, Slicer here on behalf of West Virginia

22  Secondary School.

23                    ATTORNEY DENIKER:  Good afternoon.  I'm

24  Susan Deniker from Steptoe and Johnson, PLLC,

1   representing Defendants Harrison County Board of

2   Education and Harrison County Superintendant Dora

3   Stutler.

4              ATTORNEY MORGAN:  This is Kelly Morgan

5   with Bailey and Wyant as well as Kristen Hammond on

6   behalf of the West Virginia Board of Education and

7   Superintendant Burch.

8              ATTORNEY DUCAR:  Good afternoon.  Timothy

9   Ducar on behalf of Intervenor, Lainey Armistead.

10             ATTORNEY TRYON:  Go ahead.

11             VIDEOGRAPHER:  I was just going to say,

12  if that's everybody, the court reporter can swear in the

13  witness and we can begin.

14             ATTORNEY TRYON:  Before you do that, the

15  communications are very garbled on our end.  Is anyone

16  else experiencing that?

17             ATTORNEY GREEN:  Very what?  I'm sorry.

18             ATTORNEY TRYON:  My point.  I couldn't

19  understand anything that you just said.  I think we're

20  going to log off and log back in.  Get somebody to help

21  me do that.  So I will be back in just a couple of

22  minutes here okay.

23             VIDEOGRAPHER:  Other counsel, I'm

24  assuming we want to go off the record until he is back.

```
 1                    ATTORNEY GREEN:  Yes.

 2                    VIDEOGRAPHER:  Going off the record.

 3   Current time reads 4:05 p.m.

 4   OFF VIDEOTAPE

 5                         ---

 6   (WHEREUPON, A SHORT BREAK WAS TAKEN.)

 7                         ---

 8   ON VIDEOTAPE

 9                    VIDEOGRAPHER:  We are back on the record.

10   The current time reads 4:09 p.m.

11                    ATTORNEY STARK:  My name is Loree Stark,

12   and I'm with the ACLU of West Virginia and I'm here on

13   behalf of Plaintiff.

14                    VIDEOGRAPHER:  And if that's everybody,

15   the court reporter can swear in the witness so we can

16   begin.

17                    COURT REPORTER:  Ms. Jackson, would you

18   raise your right hand?

19                         ---

20                    HEATHER JACKSON,

21   CALLED AS A WITNESS IN THE FOLLOWING PROCEEDING, AND

22   HAVING FIRST BEEN DULY SWORN, TESTIFIED AND SAID AS

23   FOLLOWS:

24                         ---
```

```
 1              COURT REPORTER:  Thank you.

 2                        ---

 3                    EXAMINATION

 4                        ---

 5  BY ATTORNEY TRYON:

 6      Q.    Hello, Ms. Jackson, my name is David Tryon.  I'm

 7  an attorney from the State of West Virginia.  Thank you

 8  for taking your time to --- for this deposition today.

 9            Can you please state your name for the record?

10      A.    Heather Jackson.

11      Q.    And do you prefer that I call you Mrs. Jackson

12  or Ms. Jackson or something else?

13      A.    Ms. Jackson is fine.

14      Q.    Okay.

15            So first of all, can you tell me if you are

16  represented by counsel today?

17      A.    I'm represented by counsel, yes.

18      Q.    And can you tell me who your attorneys are?

19      A.    The names or their groups?

20      Q.    Either one.

21      A.    Well, ACLU and the Cooley law, Lambda Legal.

22      Q.    Okay.

23            And do you have any formal engagement letter or

24  retainer letter with any of those attorneys?
```

```
 1     A.    I don't understand the question.

 2     Q.    Sure.  At the time that you retained those

 3  attorneys or they became your attorneys, did you have a

 4  written document that you signed with them saying you

 5  are my attorneys?

 6     A.    Yes.

 7     Q.    Okay.

 8           And how long ago was that signed?

 9     A.    I don't know the date.

10     Q.    Was it before or after this lawsuit was filed?

11     A.    Before.

12     Q.    Was it before or after the Law House Bill 3293

13  was passed?

14     A.    After.

15     Q.    And who else is on that besides you?  Is your

16  child BPJ on that?

17     A.    BPJ.

18     Q.    And is your husband Wesley on that?

19     A.    I believe so.

20     Q.    Okay.

21           Have you ever been deposed before?

22     A.    No.

23     Q.    Have you ever been sued before?

24     A.    No.
```

```
1      Q.     Have you received some guidance on how a
2   deposition works?
3      A.     I've been told how it works.
4      Q.     Okay.  Great.
5             Well, I'm just going to go through some of the
6   rules.  And you may have heard them before, but we'll go
7   through anyways.  So first of all, the Federal Rules of
8   Civil Procedure apply here.  And just so you know how
9   this works with objections, the specific rule involved,
10  which is Rule 30(c)(2) says an objection at the time of
11  the examination, whether to evidence, to a party's
12  conduct, to the officer's qualifications, to the manner
13  of taking the deposition or to any other aspect of the
14  deposition must be noted on the record but the
15  examination still proceeds.  The testimony is taken
16  subject to any objection.  An objection must be stated
17  concisely in a non-argumentative and non-suggestive
18  manner.  That's the rule.
19            So in other words, if your counsel objects to
20  any of my questions or any of the other lawyers'
21  questions, they can object, they can state the reason
22  why, but they can't --- but you still need to answer the
23  question unless they specifically instruct you to not
24  answer it.
```

```
 1              Do you understand that?

 2     A.    Yes.

 3     Q.    Okay.

 4              And so in the context of this deposition, the

 5     deposition is a little odd, which is where we ask you

 6     questions about information that you might have about

 7     this lawsuit that you filed on behalf of BPJ, and so you

 8     will just answer those questions as far as to the best

 9     of your ability.

10              Okay?

11     A.    Okay.

12     Q.    And if you don't understand my question and

13     would like me to clarify it, please ask me to clarify it

14     and I will do my best to do so.

15              Okay?

16     A.    Okay.

17     Q.    Also, I would like you to answer orally as you

18     have been doing rather than nodding or shaking your

19     head.

20              Okay?

21     A.    Okay.

22     Q.    And also, if you need a break during this

23     deposition, let me know.  This is not designed to be an

24     endurance contest, so let us know if you need to take a
```

```
 1   break.
 2           I want to ask you first, during your husband's
 3   --- your understanding is that your husband --- his
 4   deposition was just taken.
 5           Right?
 6   A.      Correct.
 7   Q.      Were you able to listen into it or watch it in
 8   any fashion?
 9   A.      No.
10   Q.      After his deposition, did he tell you about it?
11   A.      No.
12   Q.      And during the course of his deposition or
13   after, did anybody send you texts or emails telling you
14   about it?
15   A.      No.
16   Q.      So before we get actually started with any
17   questions, I just want to let you know that we, as
18   counsel, are not here to try and cause you any heartburn
19   or to judge you or anyone in your family.  These are
20   situations which are, you know, obviously a little
21   different than some of us have experienced and they're
22   sometimes challenging, but in this situation your ---
23   BPJ has followed this lawsuit through you to challenge
24   the State's law, and so we have an obligation on behalf
```

1   of the State to defend that law.  And so, as a result,

2   we have an obligation to then ask you questions about

3   your rationale, about the facts that are involved with

4   this.  And so that's the background for this.  I just

5   want to tell you that's why we're asking these questions

6   of you.  Does that sound fair so far?

7                        ATTORNEY BLOCK:  Objection to the extent

8   that you're asking her to agree with your legal

9   interpretation of what the law requires you to do.  You

10  can answer it.

11                       THE WITNESS:  Yes.

12  BY ATTORNEY TRYON:

13     Q.    In preparation for your deposition today did you

14  look at any documents?

15     A.    I have documents, yes.

16     Q.    Have you looked at those as you prepared for

17  this deposition today?

18     A.    A while back.

19     Q.    Okay.

20           In the past week have you looked at any in

21  anticipation of this deposition?

22     A.    No.

23     Q.    Have you had ample time to discuss this --- to

24  prepare for this deposition in consultation with your

1    attorneys?

2        A.    Yes.

3        Q.    In connection with preparing for this

4    deposition, did you have any discussions with either BPJ

5    or with your husband?

6        A.    Can you repeat that, please?

7        Q.    Yes.  In preparation for this deposition, did

8    you talk to either your husband or BPJ?

9        A.    No.

10       Q.    And just so you know, the reason I'm using the

11   initials BPJ is twofold.  First of all, because it is

12   the name of the Plaintiff in the deposition --- excuse

13   me, in the Complaint that was filed.  And also, because

14   whenever there's a minor involved, we typically in court

15   documents and court proceedings use the initials of the

16   minor.  And so I'm not suggesting that you need to use

17   those initials.  You can refer to BPJ in any manner that

18   you feel comfortable, but I want you to understand why

19   I'm using those initials.

20            Okay?

21       A.    Yes.

22       Q.    First of all, let me ask you about the law

23   itself.  HB 3293, are you familiar with that law?

24       A.    Yes.

```
 1      Q.     Have you read it?

 2      A.     Full on, no.

 3      Q.     Okay.

 4             But certain parts you've read?

 5      A.     Just to get the extent of the knowledge that it

 6 would not allow my daughter to participate in girls

 7 sports.

 8      Q.     Okay.

 9             And what's your basis for that understanding?

10      A.     The law, as I've read it, from what I've read.

11      Q.     And from what you can remember, what about the

12 law would prevent your --- prevent BPJ from

13 participating in girls sports?

14      A.     Because she is a transgender female, she

15 wouldn't be permitted to play with the female sports

16 teams.

17      Q.     Okay.

18             You've read part of the law you said but not

19 all.

20             Is that right?

21      A.     Correct.

22      Q.     Are you aware of any place in that law where it

23 uses the terms transgender?

24                    ATTORNEY BLOCK:  Objection to the extent
```

```
1    that you're asking her about the text of the document
2    that she doesn't have in front of her.  I would like ---
3    I request you provide her the document unless you're
4    testing her memory.
5                        ATTORNEY TRYON:  My question stands.
6                        Can the court reporter please read back
7    my question?
8                        COURT REPORTER:  Are you aware of any
9    place in that law where it --- where it uses the term
10   transgender?
11                       THE WITNESS:  I don't know.
12   BY ATTORNEY TYRON:
13        Q.    Well, let's take a look at that.
14                       ATTORNEY TRYON:  I'll have the court
15   reporter pull up Exhibit 34, please.
16   BY ATTORNEY TRYON:
17        Q.    So I would like to briefly go through this so
18   you can see the extent of it.  So this is the first page
19   of House Bill 3293.  And this is the second page.  And I
20   will just go through it quickly.  And if you want me to
21   go back and show you any particular page, I'm happy to
22   do that.
23             Okay.
24             This is the next page.  That's the final page
```

1    of the text and then there's a blank page for some

2    reason and then there is the last page, which has

3    signatures --- signature lines for various parties.  So

4    let me go back up to the beginning.  And what I'd like

5    to ask you is can you tell me what parts of it you have

6    read prior to today, starting at page one?

7                        ATTORNEY BLOCK:  Objection.  Can you give

8    the witness a chance to read the entire document before

9    answering your question as to parts of it?

10   BY ATTORNEY TRYON:

11      Q.    Sure.  You can tell me when you're ready to move

12   to the next page.

13      A.    Okay.  Next page.

14      Q.    Okay.

15            Going down on this page.  That is the remainder

16   of that page.  Go ahead.

17      A.    Okay.

18      Q.    This is the top of the second page of the text?

19      A.    Okay.

20      Q.    All right.

21            That is the bottom half of the first page of

22   the text?

23      A.    Okay.

24      Q.    And this is the top of the next page of the

 1    text?

 2         A.    Okay.

 3         Q.    And scrolling down to the last half of the full

 4    text of the --- on that page of the text.

 5         A.    Okay.

 6         Q.    Would you agree with me that the term or the

 7    word transgender does not appear anywhere in this bill?

 8         A.    It does not.

 9         Q.    And can you tell me what portions of this bill

10    that you believe prevents BPJ from participating in girl

11    sports?

12         A.    The references to biological sex being male at

13    birth.

14         Q.    So you are referring to line 25 and 26 on the

15    --- what is marked as page two of the bill?

16         A.    Can you go up to the first page?

17         Q.    Well, the first page --- yes, this is the first

18    page.

19         A.    Okay.

20               There where it is talking about defining

21    biological sex as female and male.

22         Q.    Okay.

23               You're looking at line four on the first page?

24         A.    Yeah.

```
1     Q.    On the left side there's lines?

2     A.    I see --- I see the line numbers, okay.  Yes.

3     Q.    Okay.

4           Anything else in here that you saw?  Tell me if

5     you want me to scroll down or anything.

6     A.    Just the references to the biological sex of

7     female and male.

8     Q.    Okay.

9           So you're saying the reference to biological

10    sex of female and male as referenced throughout the

11    bill?

12    A.    Correct.

13    Q.    So under the terminology of this bill would you

14    agree that BPJ has the biological sex of male?

15    A.    Biological sex as male, correct.

16    Q.    Just to be clear we are communicating, so the

17    biological sex of BPJ is male.

18          Right?

19                ATTORNEY BLOCK:  Objection to the extent

20    --- I'm sorry.

21                THE WITNESS:  She was born a male.

22    BY ATTORNEY TYRON:

23    Q.    Okay.

24          And specific to this bill, under this bill BPJ
```

1    is defined --- would be defined as a biological male.

2          Right?

3    A.    Correct.

4    Q.    These are not trick questions.  I'm just trying

5    to establish a baseline for us to communicate.  But if

6    you think they are trick questions, you just tell me and

7    we'll try to clarify the questions.

8          So let me scroll down and --- so what parts of

9    this had you, in fact, read?

10   A.    Parts of the first page and then the parts where

11   it says that if the --- it's like down on the third

12   page, I believe.

13   Q.    I'll scroll down and you tell me when to stop.

14   A.    Maybe it's not on the third page.  Where it

15   talks about if there's ---.

16   Q.    Well, this is page two right here of the bill.

17   A.    Okay.  Line 48.

18   Q.    Line 48.  So line 48 says any student aggrieved

19   by a violation of this section may bring an action

20   against a County Board of Education or state institution

21   of higher education alleged to be responsible for the

22   alleged violation.  Is that what you're referring to?

23   A.    Yes.

24   Q.    Do you believe that's the provision under which

1  your lawsuit has been filed?

2                    ATTORNEY BLOCK:  Objection, misstates her

3  testimony.

4                    ATTORNEY TRYON:  I'm asking the question.

5                    THE WITNESS:  I believe that my child is

6  harmed by this bill, which is why we are filing this.

7  BY ATTORNEY TYRON:

8     Q.    Okay.

9           In what way is your child harmed by this bill?

10    A.    She cannot participate on female sports.

11    Q.    And how is that harmful?  To use your words, how

12  is that a harm to BPJ?

13    A.    She is being denied the opportunity to

14  participate.

15    Q.    The opportunity to participate in what?

16    A.    In female sports.

17    Q.    Under this bill would BPJ be permitted to

18  participate in male sports?

19    A.    She wouldn't participate in male sports.

20    Q.    Okay.

21          But that's not my question.  My question is

22  under this bill would BPJ be permitted to participate in

23  male sports?

24                    ATTORNEY BLOCK:  Objection.  Calls for a

```
 1   legal conclusion.
 2   BY ATTORNEY TYRON:
 3        Q.    Go ahead.
 4        A.    She could participate in male sports.
 5        Q.    And --- okay.
 6             I'm now looking at page one as marked at the
 7   bottom of the bill.  In line one it says the legislature
 8   hereby finds and then it lists a number of findings by
 9   the legislature.  Prior to today have you read those
10   findings?
11        A.    No.
12        Q.    Starting on line two, on page one it says there
13   are inherent differences between biological males and
14   biological females and that these differences are cause
15   for celebration as determined by the Supreme Court of
16   the United States in the United States versus Virginia,
17   1996.  Do you agree with that statement?
18                  ATTORNEY BLOCK:  Objection to vagueness
19   of the terms.
20                  THE WITNESS:  I don't understand a lot of
21   the lawyer --- the legalese.
22   BY ATTORNEY TRYON:
23        Q.    What part of that sentence do you not
24   understand?
```

1    A.    The inherent differences.  I mean, there's are

2  differences yes, but it's not telling me what the

3  inherent difference are.

4    Q.    Very good.  So do you agree that there are

5  inherent differences between biological males and

6  biological females?

7               ATTORNEY BLOCK:  Objection again to the

8  vagueness of the terms biological males and biological

9  females.

10              ATTORNEY TRYON:  Counsel, I would just

11  appreciate if you just state objection, vagueness,

12  something along those lines, rather than your extended

13  objection.

14  BY ATTORNEY TYRON:

15    Q.    So ma'am, I'll ask you one more time.  Do you

16  agree with the statement there are inherent differences

17  between biological males and biological females?

18    A.    Do you mean physical differences?

19    Q.    I'm reading the bill.  I don't mean anything.

20  I'm asking if you agree with that statement that there

21  are inherent differences between biological males and

22  biological females?

23    A.    I don't know what it means by inherent

24  differences, if it's talking about physical differences.

1    Q.    Do you know what the word inherent means?

2    A.    Apparently not.

3    Q.    Do you know what the word differences mean?

4    A.    Yes.

5    Q.    Okay.

6          Do you believe that there are differences

7    between biological males and biological females?

8    A.    There are physical differences, correct.

9    Q.    Do you believe there are other differences

10   between biological males and biological females other

11   than physical differences?

12                ATTORNEY BLOCK:  Objection, vagueness.

13                THE WITNESS:  I'm not a physician here.

14   I'm just --- I mean, there's differences between males

15   and females.

16   BY ATTORNEY TRYON:

17   Q.    Correct.  And you are suing to have this law

18   overturned, so I'm asking --- I want to understand

19   specifically what parts of the law you agree with and

20   what parts you disagree with because that's very

21   important in a lawsuit where you're challenging the

22   constitutionality of a law.  And that's why I'm asking

23   what you understand the differences are between

24   biological males and biological females?

```
 1                    ATTORNEY BLOCK:  Objection.
 2   Argumentative, vague.
 3                    THE WITNESS:  There are differences
 4   between biological males and biological females.
 5   BY ATTORNEY TRYON:
 6      Q.    What's your understanding of what those
 7   differences are?
 8      A.    Well, males have penises and females have
 9   vaginas and ovaries.
10      Q.    Are there any other differences?
11      A.    Those are what I would consider biological
12   markers or what my child was judged at at birth.  She
13   was born with a penis, so therefore she was judged as
14   male.
15      Q.    Are there any other differences between
16   biological males and biological females that you are
17   aware of?
18      A.    No.
19                    ATTORNEY BLOCK:  Objection.  Objection,
20   vagueness.
21   BY ATTORNEY TRYON:
22      Q.    The next part of that statement says and these
23   --- that these differences are cause for celebration.
24   Do you agree that the differences between biological
```

1   males and biological females are cause for celebration?

2                   ATTORNEY BLOCK:  Objection, vagueness.

3                   THE WITNESS:  Yes.

4   BY ATTORNEY TRYON:

5       Q.    The next statement at line five says these

6   inherent differences are not a valid justification for

7   sex-based classifications that make overbroad

8   generalizations or perpetuate the legal, social and

9   economic inferiority of either sex.

10          Do you agree with that sentence?

11                  ATTORNEY BLOCK:  Objection, legal

12  conclusion.

13                  THE WITNESS:  There's a lot of legal

14  jargon in that sentence.

15  BY ATTORNEY TRYON:

16      Q.    Do you want me to read it again?

17      A.    No, I can read it.  I just don't necessarily

18  understand the whole sentence.

19      Q.    Well, let's break it down.  It says these

20  inherent differences are not valid justification for

21  sex-based classification that makes overbroad

22  generalizations.

23          Do you agree with that much?

24                  ATTORNEY BLOCK:  Objection, legal

```
 1    conclusion.

 2                    THE WITNESS:  Yes.

 3    BY ATTORNEY TRYON:

 4       Q.    The next part says or perpetuates the legal,

 5    social and economic inferiority of either sex.

 6             Do you agree with that?

 7                    ATTORNEY BLOCK:  Objection, legal

 8    conclusion.

 9                    THE WITNESS:  Perpetuate or perpetuate

10    the legal, social?  Can you explain that to me?

11    BY ATTORNEY TRYON:

12       Q.    My understanding of the term perpetuate is that

13    a --- to promote or conclude or to move forward the

14    legal, social and economic inferiority of either sex.

15    In other words, this statement, as I read it, is saying

16    that these inherent differences are not valid

17    participation for legal, social and economic inferiority

18    of either sex.

19       A.    Okay.

20       Q.    Do you agree with that?

21       A.    Okay.  Yeah.

22                    ATTORNEY BLOCK:  Objection, legal

23    conclusion.

24    BY ATTORNEY TRYON:
```

1    Q.    You can answer, but take your time.

2    A.    From what I understand that sentence to mean,

3    yes, but I don't know that I fully understand all the

4    legal jargon in that sentence.

5    Q.    Okay.  Fair enough.

6          The next sentence at line seven says, rather

7    these inherent differences are a valid justification for

8    sex-based classifications when they realistically

9    reflect the fact that the sexes are not similarly

10   situated in certain circumstances as recognized by the

11   Supreme Court.  But forgetting about whether or not the

12   Supreme Court recognized it, do you agree with that

13   statement?

14              ATTORNEY BLOCK:  Objection, objection.

15   That doesn't read the complete sentence.  It calls for a

16   legal conclusion.

17              THE WITNESS:  I don't feel that it's a

18   valid justification for sex-based classifications, no.

19   BY ATTORNEY TRYON:

20   Q.    Under any circumstances whatsoever?

21              ATTORNEY BLOCK:  Objection, calls for a

22   legal conclusion.

23              THE WITNESS:  There are valid

24   justifications for sex-based classifications?  I'm

```
 1   unable to imagine all possible situations.

 2   BY ATTORNEY TRYON:

 3      Q.    Can you imagine any situation where a sex-based

 4   classification is a valid justification?

 5      A.    No.

 6                  ATTORNEY BLOCK:  Objection, calls for a

 7   legal conclusion.

 8   BY ATTORNEY TRYON:

 9      Q.    So for example, you think that men should always

10   be allowed to use women's bathrooms at any time, no

11   matter what?

12                  ATTORNEY BLOCK:  Objection.

13   Argumentative.

14                  THE WITNESS:  Can you repeat the

15   question?

16   BY ATTORNEY TRYON:

17      Q.    Do you believe that any man should be allowed to

18   use any female bathroom at any time for any reason?

19                  ATTORNEY BLOCK:  Same objection.

20                  THE WITNESS: I have no problem with

21   people using the restrooms that they want to use.

22   BY ATTORNEY TRYON:

23      Q.    Okay.

24               Do you believe that it's appropriate to
```

```
 1   require ---?

 2      A.    Can you repeat that?

 3      Q.    Yes.  I'm thinking.  I'm sorry.

 4      A.    Okay.

 5            I didn't know if it cut out or ---.

 6      Q.    No.  Your last answer surprised me a little bit,

 7   so --- and do you believe that in your child's school

 8   that any boy should be allowed to enter a girls' locker

 9   room or shower at any time for any reason?

10            ATTORNEY BLOCK:  Objection.  Calls for

11   speculation.

12            THE WITNESS:  If there is a bathroom

13   emergency and there's a --- somebody needs to use the

14   restroom, they should be able to use the restroom.

15   BY ATTORNEY TRYON:

16      Q.    So if there's a bathroom --- bathroom emergency,

17   as you classified it, then a boy should be allowed to go

18   into a girl's bathroom, if necessary.

19            Is that your testimony?

20      A.    No, I wouldn't say that's accurate.  I have no

21   problem with people using whichever restroom they want

22   to use.

23      Q.    How about locker rooms?  You have no problems

24   with a boy in high school going in naked into a girls'
```

1 shower with naked girls?

2               ATTORNEY BLOCK:  Objection, that calls

3 for speculation.

4               THE WITNESS:  That is a bit extreme.

5 BY ATTORNEY TRYON:

6    Q.    That is my question, though.  Do you have --- do

7 you think that's --- there's a justification to prohibit

8 that?

9    A.    I would think that that should be prohibited,

10 yes, if they're walking in there naked.

11    Q.    Okay.

12        So at least in one situation there's a valid

13 justification for sex-based classifications.

14        Right?

15               ATTORNEY BLOCK:  Objection, calls for a

16 legal conclusion.

17 BY ATTORNEY TRYON:

18    Q.    I'm not asking you, by the way, on any of these

19 questions for a legal conclusion.  I'm asking for your

20 viewpoint as a Plaintiff or representing as the parent

21 of the Plaintiff on whose behalf you filed this lawsuit.

22 I'm asking for your opinion on this law on all these

23 questions.

24               ATTORNEY TRYON:  So you don't need to

```
 1    keep saying calls for a legal conclusion.  I'm not
 2    asking for a legal conclusion.
 3                    ATTORNEY BLOCK:  You're citing case law
 4    that's quoted in the bill.
 5    BY ATTORNEY TRYON:
 6       Q.    So I will ask you again ---.
 7                    ATTORNEY TRYON:  Well, could the court
 8    reporter please read back my question?
 9                    COURT REPORTER:  Okay.  So you at least
10    in one situation there is a valid justification for
11    sex-based classification.  Right?
12                    THE WITNESS:  I also don't think that
13    they should walk around naked in the hallway either.
14                    ATTORNEY TRYON:  Court Reporter?
15                    THE WITNESS:  So I don't understand.
16                    ATTORNEY TRYON:  Court Reporter, could
17    you please read my question one more time, please?
18                    COURT REPORTER:  Okay.  So you're --- at
19    least in one situation there is a valid justification
20    for a sex-based classification.  Right?
21                    ATTORNEY BLOCK:  Objection, asked and
22    answered.
23    BY ATTORNEY TRYON:
24       Q.    It's a simple yes or no.
```

```
 1                    ATTORNEY BLOCK:  Objection, asked and

 2   answered.

 3                    THE WITNESS:  I don't know how to answer

 4   this because I'm picturing the kid walking around naked

 5   in the school at this point.

 6   BY ATTORNEY TRYON:

 7      Q.    Forget --- don't --- don't picture that.  You

 8   had said that you believe it's --- as I understand your

 9   testimony, is that there is valid justifications for

10   sex-based classification to prohibit a male to --- in

11   from walking into a girls' shower naked when there's

12   other naked girls in there?

13                    ATTORNEY BLOCK:  Objection.  Are you

14   finished with the question?  I didn't mean to cut you

15   off.

16                    THE WITNESS:  Yes, I don't think that a

17   male should walk around naked in a female locker room.

18   BY ATTORNEY TRYON:

19      Q.    So a law or rule saying that would be

20   reasonable.

21            Right?

22      A.    The school ---?

23                    ATTORNEY BLOCK:  Objection, calls for a

24   legal conclusion.
```

```
 1                    THE WITNESS:  Schools have rules for
 2     that, yes.
 3     BY ATTORNEY TRYON:
 4        Q.    And that would be a validly justified rule.
 5              Right?
 6                    ATTORNEY BLOCK:  Objection, legal
 7     conclusion.
 8                    THE WITNESS:  Yes.
 9     BY ATTORNEY TRYON:
10        Q.    Okay.
11              Do you think there might be other valid
12     justifications for sex-based classifications ---
13        A.    I don't know.
14        Q.    --- to reflect the fact that the sexes are not
15     similarly situated in certain circumstances?  Is that a
16     possibility?
17                    ATTORNEY BLOCK:  Objection.  Calls for
18     legal conclusion, misstates prior testimony.
19                    THE WITNESS:  I don't know.  I don't know
20     of all possible situations.
21     BY ATTORNEY TRYON:
22        Q.    Neither do I but I'm asking if you think there
23     might be other situations?
24                    ATTORNEY BLOCK:  Objection asked and
```

```
 1    answered.
 2                    THE WITNESS:  I don't know.  You probably
 3    have to be on a case by case basis.  I'm not sure of all
 4    possible situations.
 5    BY ATTORNEY TRYON:
 6       Q.    Okay, let's move on, line 12 says in the context
 7    of sports involving competitive skill or contact
 8    biological males and biological females are not in fact
 9    similarly situated.  Do you agree with that statement?
10                    ATTORNEY BLOCK:  Objection, vague, calls
11    for a legal conclusion.
12                    THE WITNESS:  I don't agree with that.
13    BY ATTORNEY TRYON:
14       Q.    Do you believe that in the context biological
15    males and biological females are always similarly
16    situated?
17                    ATTORNEY BLOCK:  Objection, vague, calls
18    for legal conclusion?
19                    THE WITNESS:  I believe they are
20    similarly situated.
21    BY ATTORNEY TRYON:
22       Q.    Under all circumstances?
23       A.    As far as my knowledge goes, yes.
24       Q.    Okay.
```

```
 1            So if we are talking about a biological male
 2  who is 18 as compared to a biological female who is 18
 3  you believe that they are both similarly situated?
 4            ATTORNEY BLOCK:  Objection,
 5  mischaracterizes testimony.  Vague.  Calls for legal
 6  conclusions.
 7            THE WITNESS:  In regard to competitive
 8  skill?
 9  BY ATTORNEY TRYON:
10     Q.    Correct.
11     A.    Then they are similarly situated.
12     Q.    So do you --- is it your position that there was
13  no difference between boys and girls playing high school
14  sports?
15            ATTORNEY BLOCK:  Objection.
16  Mischaracterizes the previous testimony.
17            ATTORNEY TRYON:  I'm not
18  mischaracterizing her testimony I'm asking her a new
19  question, counsel.
20            THE WITNESS:  I believe ---.
21            ATTORNEY BLOCK:  Same objection.
22            THE WITNESS: I believe a girl can run as
23  fast as a boy can run.
24  BY ATTORNEY TRYON:
```

```
 1      Q.    So you believe that a --- in a mile run you
 2  believe that an 18-year-old girl would be able to run
 3  just as fast as a boy?
 4                ATTORNEY BLOCK:  Objection calls for
 5  speculation.
 6                THE WITNESS:  Yes, I do.
 7  BY ATTORNEY TRYON:
 8      Q.    Do you have any statistics to back that up?
 9      A.    No, I do not.
10      Q.    Have you ever looked at any statistics?
11      A.    No, I do not.
12      Q.    What is the basis for your belief of what you
13  just expressed?
14      A.    With proper training they both have adequate
15  training they can both run.
16      Q.    So do you believe that in high school sports the
17  differentiation between --- strike that.
18            Do you believe that in both middle school and
19  high school that there is no difference between males
20  and females in sports?
21                ATTORNEY BLOCK:  Objection
22  mischaracterizes testimony.  Argumentative?
23                THE WITNESS:  I believe the girls are as
24  capable as the boys.
```

BY ATTORNEY TRYON:

Q.    So there is no difference between them in either middle school or high school in sports?

A.    Agreed.

Q.    Is that your testimony?

ATTORNEY BLOCK:  Objection vague.

THE WITNESS:  I think the males and the females can do just as well.

BY ATTORNEY TRYON:

Q.    So do you believe that there should be no difference --- there should be no male teams and female teams but they should all be together in elementary, middle school and high school?

ATTORNEY BLOCK:  Objection, vague.

THE WITNESS:  I believe that she should be able to participate on the team that they identify with.

BY ATTORNEY TRYON:

Q.    Well right now, there are different teams. There is a boys team and a girls team in many sports, do you believe that there is any reason at all that there should be a differentiation between boys and girls designation of sports?

A.    No, I think ---.

1          ATTORNEY BLOCK:  Objection.

2          THE WITNESS: I think if a girl wants to

3    wrestle, the girl should be allowed to wrestle.

4    BY ATTORNEY TRYON:

5      Q.    And if a boy wants to run on a girls team ---

6    well let me back up.

7          So do you think there is any reason at all that

8    there should be a boys teams and a girls team in any

9    sports?

10          ATTORNEY BLOCK:  Objection, vague.

11          THE WITNESS:  I think that they should be

12   able to participate on the team that they identify with.

13   BY ATTORNEY TRYON:

14     Q.    Okay.

15          But that is not my question that is a totally

16   different question.  The question is are you saying that

17   there should not be a differentiation at all in the

18   middle school or high school sports between men ---

19   between boys and girls?

20          ATTORNEY BLOCK:  Objection.  Vague.

21          THE WITNESS:  I don't know the answer to

22   that.

23   BY ATTORNEY TRYON:

24     Q.    Well you said there is no justification for any

```
 1    differentiation between biological males and biological

 2    females and I'm trying to understand how that applies to

 3    the context of sports?

 4                    ATTORNEY BLOCK:  Objection, misstates

 5    prior testimony, argumentative.

 6                    ATTORNEY TRYON:  You're right I did make

 7    a mistake there, I apologize.

 8    BY ATTORNEY TRYON:

 9       Q.    In the context ever sports involving competitive

10    sports or contact you told me that biological males and

11    biological females are similarly situated and there is

12    no reason for them to have different designations of

13    sports.  Is that consistent with your testimony?

14       A.    I believe they are similarly situated.

15       Q.    And so there is no reason to have a boys team,

16    right?

17                    ATTORNEY BLOCK:  Objection, vague,

18    argumentative.

19                    THE WITNESS:  I don't know what the

20    reason would be to have a boys team.

21    BY ATTORNEY TRYON:

22       Q.    So all teams should just be coed, right?

23                    ATTORNEY BLOCK:  Objection, vague,

24    argumentative?
```

1              THE WITNESS:  I don't know the answer to

2    that.

3    BY ATTORNEY TRYON:

4       Q.    Okay.

5              So since there is no difference between

6    biological males and females on sports teams than why is

7    it that BPJ can't or won't run on what's designated as

8    the boys cross-country team?

9                   ATTORNEY BLOCK:  Objection misstates

10   prior testimony, vague, compound question,

11   argumentative?

12                  THE WITNESS:  Because she is a girl.

13   BY ATTORNEY TRYON:

14      Q.    Okay.

15             But you just told me there is no difference

16   between boys and girls.  So why shouldn't BPJ run on the

17   boys teams if there is no difference between boys and

18   girls?

19                  ATTORNEY BLOCK:  Objection, misstates

20   prior testimony, argumentative?

21                  THE WITNESS:  The fact is that there are

22   boys and girls teams and she should be able to run on

23   the girls team because she is a girl.

24   BY ATTORNEY TRYON:

```
 1       Q.    So in this lawsuit are you asking that the Court
 2   abolish boys teams because there is no difference?
 3                   ATTORNEY BLOCK:  Objection.  Calls for a
 4   legal conclusion, vague, misstates prior testimony.
 5                   THE WITNESS:  Can you repeat the
 6   question?
 7                   ATTORNEY TRYON:  The court reporter
 8   please repeat the question?
 9                   COURT REPORTER:  So in this lawsuit are
10   you asking that the court abolish boys' teams because
11   there is no difference?
12                   THE WITNESS:  No, that is not what.
13                   ATTORNEY BLOCK:  My objection stands.
14                   THE WITNESS:  No, that is not what I'm
15   saying.
16   BY ATTORNEY TRYON:
17       Q.    So I will ask a new question so I'm not
18   misstating your prior testimony.  Do you believe there
19   is a justification to have a boys cross-country team?
20                   ATTORNEY BLOCK:  Objection, legal
21   conclusion.
22                   THE WITNESS:  I don't know if there is a
23   justification to that.
24   BY ATTORNEY TRYON:
```

```
 1        Q.     Okay.
 2               So help me out here because you told me there
 3     is no difference between males and females.  What would
 4     be the justification for having a different boys teams
 5     and girls team in track?
 6                    ATTORNEY BLOCK:  Objection, misstates her
 7     prior testimony.  Vague, argumentative.
 8                    THE WITNESS:  I just know that there are
 9     girls teams and boys teams in track.
10     BY ATTORNEY TRYON:
11        Q.     But you don't agree there's justification for
12     it.
13               Is that correct?
14                    ATTORNEY BLOCK:  Objection misstates
15     prior testimony?
16                    THE WITNESS:  I don't know what the
17     justification is.
18     BY ATTORNEY TRYON:
19        Q.     You don't believe there's a justification, do
20     you?
21                    ATTORNEY BLOCK:  Objection, asked and
22     answered misstates prior testimony?
23                    THE WITNESS:  I just know that there is
24     male teams and there is female teams in school and in
```

```
 1   professional sports.
 2   BY ATTORNEY TRYON:
 3       Q.    You mean professional sports, do you believe
 4   there is a justification for that?
 5                    ATTORNEY BLOCK:  Objection, vague.
 6                    THE WITNESS:  I think a girl should be
 7   allowed to play football.
 8   BY ATTORNEY TRYON:
 9       Q.    How do you think a girl would fare in
10   professional football?
11       A.    I don't know.
12       Q.    Do you watch professional football?
13       A.    I do.
14       Q.    And have you ever seen --- are you aware of any
15   females that compete with males in the professional
16   football?
17       A.    Not in the NFL.
18       Q.    Any other football league?
19       A.    I don't watch any other football league.
20       Q.    Let's go back to line 12 on the second page of
21   the exhibit.  It says in the context of sports involving
22   competitive skill or contact biological place and
23   biological females are not in fact similarly situated.
24   Do you agree with that --- I'm sorry we already asked
```

1    that my apologies.  The next sentence is biological

2    males would displace females to a substantial extent if

3    permitted to be on teams designated for biological

4    females as recognized in the court case.  Do you believe

5    that is a correct statement?

6        A.    I don't.

7                    ATTORNEY BLOCK:  Objection, calls for a

8    legal conclusion, vague.

9                    THE WITNESS:  I don't agree with that

10   statement.

11   BY ATTORNEY TRYON:

12       Q.    If the boys track team were to suddenly be

13   consolidated with the girls track team do you think that

14   the biological boys would displace the female, the

15   biological females or not?

16       A.    I don't know.

17                    ATTORNEY BLOCK:  Objection.  Vague, calls

18   for speculation.

19   BY ATTORNEY TRYON:

20       Q.    You don't know?

21       A.    I wouldn't know it would be completely a guess

22   on my point.

23       Q.    So it is possible that there is a difference

24   then?

```
 1                    ATTORNEY BLOCK:  Same objections.
 2                    THE WITNESS:  There is possible there is
 3   not a difference is what I'm saying.
 4   BY ATTORNEY TRYON:
 5      Q.    And it's possible that there is a difference?
 6      A.    Not a difference.
 7      Q.    I'm sorry?
 8      A.    I'm saying that they would not displace females.
 9      Q.    You are absolutely certain they would not, is
10   that what you are saying?
11                    ATTORNEY BLOCK:  Objection, misstates
12   prior testimony, vague, calls for speculation.
13                    THE WITNESS:  It's just my opinion.
14   BY ATTORNEY TRYON:
15      Q.    Okay.
16            And your opinion --- is your opinion based on
17   any facts?
18      A.    No, it is my opinion.
19      Q.    Is your opinion based on any facts?
20                    ATTORNEY BLOCK:  Objection, asked and
21   answered.
22                    THE WITNESS:  I don't know of a case
23   where a biological male has displaced females.
24                    ATTORNEY TRYON:  Could you read my
```

1    question again please, Court Reporter?

2                COURT REPORTER:  Is your opinion based on

3    any facts?  Do you want the question before that?

4                ATTORNEY TRYON:  Yes.  I might be

5    helpful.  Maybe the answer before that and the question.

6                COURT REPORTER:  Okay.  And is your

7    opinion based on any facts.  And, no, sir, it it my

8    opinion.  Question, is your opinion based on any facts?

9                ATTORNEY BLOCK:  Same objections, asked

10   and answered.

11               THE WITNESS:  It's my opinion.

12   BY ATTORNEY TRYON:

13      Q.    So you're not aware of any --- have you read any

14   books, articles, analysis that would support your

15   opinion?

16      A.    No.

17      Q.    There is a statement on line 17 that says,

18   gender identity is separate and distinct from biological

19   sex to the extent that an individual's biological sex is

20   not determinative or indicative of the individual's

21   gender identity.  Do you agree with that statement?

22      A.    I don't understand.

23               ATTORNEY BLOCK:  Objection, calls for a

24   medical opinion.

```
 1                    THE WITNESS:  I don't understand that

 2    statement.

 3    BY ATTORNEY TRYON:

 4      Q.    Great.  Let's break it down.  Gender identity is

 5    separate and distinct from biological sex.  Do you agree

 6    with that?

 7                    ATTORNEY BLOCK:  Objection, vague, calls

 8    for medical opinion.

 9    BY ATTORNEY TRYON:

10      Q.    I'm not asking for your medical opinion, ma'am,

11    I'm just asking if you agree with that statement, gender

12    identity is separate and distinct from biological sex?

13      A.    Yes.

14                    ATTORNEY BLOCK:  Objection, vague.

15                    THE WITNESS:  Yes, it's separate.

16    BY ATTORNEY TRYON:

17      Q.    And on line 19 in the bill it says,

18    classification is based on gender identity, serve no

19    legitimate relationship to the State of West Virginia's

20    interest in promoting equal athletic opportunities for

21    female sex.  Do you agree with that statement?

22      A.    I don't ---.

23                    ATTORNEY BLOCK:  Objection, calls for a

24    legal conclusion, vague.
```

```
1              THE WITNESS:  I don't understand that

2    sentence.

3    BY ATTORNEY TRYON:

4       Q.    Okay.

5              Well and I'm not asking for a legal conclusion

6    I'm just asking if you agree with the statement because

7    we're not asking --- because you're not a lawyer and you

8    can't make a legal conclusion so let's break it down.

9    Classifications based on gender identity serve no

10   legitimate relation slip to the State of West Virginia's

11   interest in promoting equal athletic opportunities for

12   the female sex.  What about that do you not understand?

13                   ATTORNEY BLOCK:  Same objections.

14                   THE WITNESS:  I don't than stand the

15   whole sentence.  I don't understand the sentence.

16   BY ATTORNEY TRYON:

17      Q.    On line 25 it says biological sex means that the

18   individuals physical form as a male or female based

19   solely on the individual's reproductive biology and

20   genetics at birth.  Is that a reasonable definition of

21   biological sex in your mind?

22                   ATTORNEY BLOCK:  Objection, vague, calls

23   for a medical opinion.

24                   THE WITNESS:  Biological sex means that
```

```
 1   they were born with a penis or a vagina, yes.
 2   BY ATTORNEY TRYON:
 3       Q.    Okay.
 4            And number two says, biological sex means an
 5   individual's physical form as a male or female based
 6   solely on the individual's reproductive biology and
 7   genetics at birth.  I'm not are asking for a medical
 8   opinion, I'm asking if that is a reasonable biological
 9   definition of sex?
10                    ATTORNEY BLOCK:  Objection, vague.
11                    THE WITNESS:  Biological sex means an
12   individual's physical form is male or female based
13   solely on individual's reproductive biology.  So it's
14   saying that the biological sex is based on whether they
15   have a penis or a vagina, then yes.
16   BY ATTORNEY TRYON:
17       Q.    Okay.
18            And the rest of that sentence says and
19   genetics.  Do you understand what genetics are?
20       A.    To a certain extent genetics are your DNA.
21       Q.    Okay.
22            Do you understand what the different genetic
23   differences between males and --- biological males and
24   biological females?
```

```
 1      A.    Chromosomes.
 2                  ATTORNEY BLOCK:  Objection vague calls
 3    for medical opinion.
 4    BY ATTORNEY TRYON:
 5      Q.    And do you know what those chromosomes are?  And
 6    I know you're not a doctor so if you don't know that is
 7    okay?
 8                  ATTORNEY BLOCK:  Same objections.
 9                  THE WITNESS:  The X and Y chromosomes.
10    BY ATTORNEY TRYON:
11      Q.    Do you know which pertains to which?
12      A.    No.
13      Q.    That's okay.
14            And the next one of course says, female means
15    an individual whose biological sex is --- sex determined
16    at birth is female as used in this section, women or
17    girls are first biological females.  Is that a
18    reasonable definition in your mind?
19                  ATTORNEY BLOCK:  Objection, vague, calls
20    for legal conclusion, calls for medical conclusion?
21                  THE WITNESS:  In regards to this document
22    females means individual whose biological sex determined
23    at birth is female and in regards to this document?
24    BY ATTORNEY TRYON:
```

1     Q.    Yes.

2     A.    If that is what they are referring to in this

3  document?

4     Q.    Yes.

5     A.    Because my daughter is a female but her

6  biological sex determined at birth was not female.

7     Q.    Okay.

8           And how do you define female so it would

9  include BPJ as a female?

10           ATTORNEY BLOCK:  Objection, calls for a

11  medical opinion.

12  BY ATTORNEY TRYON:

13     Q.    I'm not asking for medical opinion I'm asking

14  what you would use as a definition?

15     A.    She identifies as female.

16     Q.    Okay.

17           So the definition you would use for female is

18  and I'm just going to write this down because I want to

19  make sure that I understand this, female means anyone

20  who identifies --- who self identifies as female?

21           ATTORNEY BLOCK:  Objection.

22  Mischaracterizes her testimony.

23           ATTORNEY TRYON:  I didn't ask the

24  question yet.

```
 1    BY ATTORNEY TRYON:

 2      Q.    Is that how you would define female?

 3                  ATTORNEY BLOCK:  Objection,

 4    mischaracterizes her testimony, vague, calls for medical

 5    opinion.

 6                  THE WITNESS:  Female means as individual

 7    whose biological sex determined as birth as female or

 8    someone who identifies as female.

 9    BY ATTORNEY TRYON:

10      Q.    Okay.

11            So anyone --- under your definition anyone at

12    all that identifies as female would be a female.  Is

13    that right?

14                  ATTORNEY BLOCK:  Objection,

15    mischaracterizes her testimony, calls for medical

16    opinion, vague.

17    BY ATTORNEY TRYON:

18      Q.    Okay.

19            Let me explain it all over again because I'm

20    not asking you for a medical opinion, a legal opinion

21    and I'm not mischaracterizing your testimony.  I'm

22    asking you if you believe that the term female means

23    anyone who self identifies as female?

24                  ATTORNEY BLOCK:  Vague.
```

1          THE WITNESS:  If there is an individual

2    that identifies as female then they are a female.

3    BY ATTORNEY TRYON:

4       Q.    Okay.

5             And for someone to identify as a female do they

6    just need to say I identify as a female?

7             ATTORNEY BLOCK:  Objection, vague, calls

8    for medical opinion.

9             THE WITNESS:  If a person identifies as

10   female they're female.

11   BY ATTORNEY TRYON:

12      Q.    And they simply need to say I identify as a

13   female, no other prerequisites, no other --- nothing

14   they have to do, just say I identify as a female and in

15   your mind that would make them --- under your definition

16   that would be a female person?

17            ATTORNEY BLOCK:  Objection,

18   mischaracterizes her testimony, vague.

19            THE WITNESS:  What prerequisites?

20   BY ATTORNEY TRYON:

21      Q.    Are there any other requirements in your mind

22   under your definition?  Your definition as I understand

23   it is female means anyone who identifies as a female?

24      A.    Or someone who is born as a female and

1    identifies as female.

2        Q.    Or born as a female?

3        A.    And identifies as female.

4        Q.    And by the same token how would you define male?

5              ATTORNEY BLOCK:  Objection, vague, calls

6    for a medical opinion.

7    BY ATTORNEY TRYON:

8        Q.    Are you a doctor?

9        A.    No.

10       Q.    So I'm obviously not asking for medical opinion,

11   I'm just asking you for your opinion as the ---

12   representing the Plaintiff in this case as a parent of

13   the Plaintiff.  So how would you define male?

14             ATTORNEY BLOCK:  Objection.

15             THE WITNESS:  A male who biological sex

16   determined at birth is a male and they identify as a

17   male.

18   BY ATTORNEY TRYON:

19       Q.    It has to be both or either one?

20             ATTORNEY BLOCK:  Objection, compound

21   vague?

22             THE WITNESS:  They can be born a male and

23   identify as a male.  They have to identify as a male.

24   BY ATTORNEY TRYON:

1    Q.    Okay.

2          So if you just identify as a male whatever you

3    are born at under your definition would you be a male?

4                ATTORNEY BLOCK:  Objection,

5    mischaracterizes testimony, vague?

6                THE WITNESS:  You could be born with

7    female genitalia and identify as a male.

8    BY ATTORNEY TRYON:

9    Q.    Okay.

10         So tell me if you agree within this definition,

11   male means anyone who identifies as a male or who is

12   born with male genitalia and identifies as a male?

13               ATTORNEY BLOCK:  Objection, vague, calls

14   for a medical opinion.

15               THE WITNESS:  In my opinion that would be

16   a male.

17   BY ATTORNEY TRYON:

18   Q.    Very good.  Great.  I just wanted to make sure

19   we had our definitional information.

20         Let me then ask you if someone identifies as a

21   male today and therefore as a male would they --- that

22   person then be able to identify as a female tomorrow and

23   thereby be a female tomorrow?

24               ATTORNEY BLOCK:  Objection, vague, calls

```
 1    for a medical opinion, calls for speculation.

 2                    THE WITNESS:  If they truly --- if they

 3    identify as a female is that what you are saying?

 4    BY ATTORNEY TRYON:

 5      Q.    If they start out today identifying as a male

 6    and tomorrow they change and identify as a female, would

 7    they then be a female tomorrow?

 8                    ATTORNEY BLOCK:  Objection, vague, calls

 9    for medical opinion, calls for speculation.

10                    THE WITNESS:  Then they would be

11    transgender and female.  Is that what you are saying?

12    BY ATTORNEY TRYON:

13      Q.    I'm not saying anything about transgender.  I

14    don't --- we haven't discussed that term.  I just want

15    to know if someone says today I am male and then

16    tomorrow says I identify as female, under your

17    definition that person would then be female.

18          Correct, tomorrow?

19                    ATTORNEY BLOCK:  Objection, vague,

20    mischaracterizes testimony, calls for speculation, calls

21    for medical opinion.

22                    THE WITNESS:  If they identify as female

23    then they are female.

24    BY ATTORNEY TRYON:
```

1      Q.     Okay.

2            So today they identify as a male, tomorrow they

3      identify as female, then on the third day could they

4      then turn around and identify as a male and then be a

5      male?

6                        ATTORNEY BLOCK:  Objection, vague, calls

7      for medical opinion, calls for speculation.

8                        ATTORNEY TRYON:  Okay.

9                        Josh, this is ridiculous.  I'm not

10     calling for medical opinion and you keep on saying that.

11     It 's ridiculous, it's not an appropriate objection

12     here.  And it is very obvious I'm not asking for medical

13     opinion.  So I would appreciate that you stop doing that

14     because I think you are interfering with this

15     deposition.

16                        ATTORNEY BLOCK:  It's a totally valid ---

17     it's a totally valid objection.  You're asking medical

18     terms of,  it's a completely valid objection.

19                        ATTORNEY TRYON:  And I will give you a

20     standing ongoing objection as to all of those objections

21     as to my questions.

22                        ATTORNEY BLOCK:  If you want to preface

23     your question saying you're not calling for a medical

24     opinion, that's fine.  But as long as --- I'm entitled

```
 1    to object.
 2                    ATTORNEY TRYON:  I'm never asking you for
 3    a medical opinion and if I do I will be very clear that
 4    I'm asking for medical opinion.
 5    BY ATTORNEY TRYON:
 6       Q.    Now if I can go back to my question please.  So
 7    Ms. Jackson, again, I want to ask you if a person
 8    identifies as male today, female tomorrow and then male
 9    the following day does that person's identity --- is
10    that person shifting from male to female to male and
11    then on the third day as male again?
12       A.    They're ---.
13                    ATTORNEY BLOCK:  Objection, calls for
14    speculation.  Vague.  Calls for medical opinion.
15    BY ATTORNEY TRYON:
16       Q.    Okay.
17              Did you answer my question, ma'am?
18       A.    They are --- they identify --- they are the sex
19    they identify with.
20       Q.    On any given day; is that your testimony?
21       A.    Yes.
22       Q.    Thank you.  So in the context of sports do you
23    believe that a person should be able to switch back and
24    forth between boys and girls teams on a daily or weekly
```

1    basis?

2                    ATTORNEY BLOCK:  Objection,

3    mischaracterizes testimony, vague.

4                    THE WITNESS:  I believe they should be

5    able to participate on the team that they identify with.

6    BY ATTORNEY TRYON:

7        Q.    On any given day; is that right?

8                    ATTORNEY BLOCK:  Objection,

9    mischaracterizes testimony, vague.

10                   THE WITNESS:  Yes, if they identify as

11   female then they need to run on the female team.  If

12   they identify as male then they need to run on the male

13   team.

14   BY ATTORNEY TRYON:

15       Q.    And they can go back and forth on a weekly

16   basis, right?

17       A.    Whatever they identify as.

18       Q.    On any given --- in any given week, right?

19                   ATTORNEY BLOCK:  Objection, asked and

20   answered.

21                   THE WITNESS:  Yep.

22   BY ATTORNEY TRYON:

23       Q.    You have already stated your full name, can you

24   give us your current address and phone number.  And

```
 1    before you give me your phone number I just want it to

 2    be clear that the only time in which we would use your

 3    phone number as opposed to going to your counsel to

 4    reach you if for some reason your client (sic) could not

 5    reach you or you were no longer represented by counsel.

 6    So on that basis could you give me your current address

 7    and phone number?

 8         A.      █████████████████, Lost Creek, West Virginia

 9    26385.

10         Q.      And your phone number?

11         A.      ████████████.

12         Q.      And is that a landline or is that a cell number?

13         A.      That is a landline.

14         Q.      Not many people still have landlines.  I do.

15         A.      Yes, we have to out where we live.

16         Q.      I see.  And did you get a high school diploma?

17         A.      A high school diploma, yes.

18         Q.      Where?

19         A.      Seneca East High School.

20         Q.      Where is that?

21         A.      In Ohio.

22         Q.      What part of Ohio?  What city?

23         A.      Attica.

24         Q.      Where's Attica?
```

```
 1        A.     Let's see more towards Toledo.

 2        Q.     Okay.

 3               And after high school did you get any further

 4   education?

 5        A.     Yes.

 6        Q.     Can you please tell me what that was?

 7        A.     I got an associate of arts degree from the

 8   University of Findlay in Findlay, Ohio.

 9        Q.     And when was that?

10        A.     1996.

11        Q.     Anymore education after that?

12        A.     I went to the Nuclear Medicine Institute after

13   that, recertified in Nuclear Medicine Technology.

14        Q.     Is there a degree or certificate that you get

15   from that?

16        A.     It's a certificate.

17        Q.     And when was that?

18        A.     That would have been in 1996 as well.

19        Q.     Any other post-high school education?

20        A.     No.

21        Q.     When did you graduate from high school?

22        A.     1986.

23        Q.     What did you do between 1986 and 1996?

24        A.     I worked for a rehabilitation center.
```

1    Q.    Doing what?

2    A.    Bookkeeping.

3    Q.    Were you there for --- how long were you there?

4    A.    I don't remember.

5    Q.    What was the next job that you had after that

6  rehabilitation center?

7    A.    I went back to school after I got laid off.

8    Q.    Is that when you went to University of Findlay?

9    A.    Yes, first I went to Community College.  It

10 would have been Terra Community College.  And then I

11 went to the University of Findlay and received my

12 degree.

13    Q.    Great.  Where is Terra Community College?

14    A.    In Toledo.

15    Q.    Okay.

16          Did you get any certificates or anything there?

17    A.    No, I just transferred to the University of

18 Findlay.

19    Q.    Do you remember when you started at Terra

20 Community College?

21    A.    No, I don't.

22    Q.    Do you remember when you started at the

23 University of Findlay?

24    A.    No, I don't.

 1     Q.     How long did it take you to get your associate's
 2  degree at University of Findlay?
 3     A.     Two years.  And I had to go to the Nuclear
 4  Medicine Institute in order to practice nuclear medicine
 5  technology.
 6     Q.     So took you two years to get your associate's
 7  degree and you started somewhere around 1994?
 8     A.     Roughly.
 9     Q.     Okay.
10          So it looks like you worked as --- what was it
11  called, rehabilitation ---?
12     A.     It was the Betty Jane Rehabilitation Center.
13     Q.     Okay.
14          So it looks like that you worked there for
15  about eight years, is that fair?
16     A.     Sounds right.
17     Q.     Okay.
18          Tell me what nuclear medical --- excuse me,
19  nuclear technologist does?
20     A.     Injects radioactive material into patients in
21  order to determine a malady.
22     Q.     What is an abnormality?
23     A.     It can be anything depending on a heart issue,
24  we could be looking for a bone issue, we could be

```
 1   looking for a gallbladder issue, we could be looking for
 2   a stomach issue.
 3        Q.    Okay.
 4              So after you got that certification in 1996
 5   what did you do then?
 6        A.    I practiced nuclear medicine technology.
 7        Q.    Where was the first place you did that?
 8        A.    That would have been in Florida.
 9        Q.    Do you remember the name of the place you worked
10   for?
11        A.    Let's see, if I heard it I would know it but I
12   don't remember it off the top of my head.
13        Q.    Okay.  Fair enough.
14              That was starting in 1996 though?
15        A.    Yes.
16        Q.    And then how long were you there?
17        A.    I don't know because I went there to private
18   imaging facility and worked.
19        Q.    I'm sorry, can you repeat that I didn't
20   understand?
21        A.    I don't know how long I was there.  I left there
22   and went to a private imaging facility.
23        Q.    What was the name of that?
24        A.    RPA.
```

```
1      Q.     RPA.  And what did you do there?

2      A.     Nuclear medicine technology.

3      Q.     Okay.

4             Do you remember when you started there?

5      A.     No, I don't.

6      Q.     Do you remember when you left there?

7      A.     I left there in 2001.

8      Q.     And then what did you do?

9      A.     I'm sorry I moved to Georgia.

10     Q.     And that was in about 2001?

11     A.     Yes.

12     Q.     And what did you do in Georgia?

13     A.     Nuclear medicine technology at Kennestone

14 Hospital.

15     Q.     Can you spell that, please?

16     A.     K-E-N-N-E-S-T-O-N-E.  It's a well star facility.

17     Q.     Excuse me one second.  All right.  I guess I've

18 been talking too much today I needed a cough drop.

19 Sorry.  And how long were you there in Georgia?

20     A.     Until 2005.

21     Q.     And where did you go from there?

22     A.     West Virginia.

23     Q.     And what did you do in West Virginia in 2005?

24     A.     Positron emission technology.
```

```
 1        Q.    Where was that located?

 2        A.    First I worked at a mobile unit for Alliance

 3   Imaging.

 4        Q.    Where was that centered?

 5        A.    They're centered out of Charleston, but I was

 6   assigned to North Central West Virginia and the western

 7   panhandle and the Eastern panhandle in Maryland.

 8        Q.    And then you said initially in the mobile unit

 9   and then what?

10        A.    Then I took a stationary position with the

11   United Hospital Center.

12        Q.    And where is that?

13        A.    In Bridgeport, West Virginia.

14        Q.    And then after that what?

15        A.    I'm still there.

16        Q.    Okay.

17              And at your house at ███████████████████ who

18   lives there with you?

19        A.    My spouse and two of my three children.

20        Q.    You're married, right?

21        A.    Correct.

22        Q.    And when did you get married?

23        A.    We got married in --- oh I'm bad at

24   anniversaries, 2000, 2001.
```

1    Q.    If I recall your husband told us that your

2    anniversary is coming up in the next several days?

3    A.    It is and I never remember it.

4    Q.    Well, I didn't write down the date but it is

5    coming up so you might want to ---.

6    A.    I'll have to look at the certificate.

7                ATTORNEY BLOCK:  David, we have a 5:30

8    stop and it is 5:24 so I just want to --- I don't want

9    you to start on a line of questioning that you have to

10   stop short in the middle of.

11               ATTORNEY TRYON:  Right.  And yeah, I'm

12   just going to finish up with this background and then we

13   will suspend this until tomorrow.

14   BY ATTORNEY TRYON:

15   Q.    So is this your only marriage?

16   A.    Correct.

17   Q.    And you have no other children other than the

18   three that you mentioned?

19   A.    Correct.

20               ATTORNEY TRYON:  Okay.

21               Well now would be a good time to pause

22   until tomorrow and reconvene at 10:00 a.m. if everyone's

23   okay with that.

24               ATTORNEY BLOCK:  That is good with

1    Plaintiff's Counsel.

2                    THE WITNESS:   That's fine.

3                    VIDEOGRAPHER:   Then if that is it for

4    today we are going off the record at 5:25 p.m.

5                    ATTORNEY TRYON:   Thank you.

6                    * * * * * * * *

7         VIDEOTAPED DEPOSITION CONCLUDED AT 5:25 P.M.

8                    * * * * * * * *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

```
1    STATE OF WEST VIRGINIA  )

2                      CERTIFICATE

3           I, Nicole Montagano, a Notary Public in

4    and for the State of West Virginia, do hereby

5    certify:

6           That the witness whose testimony appears

7    in the foregoing deposition, was duly sworn by me

8    on said date, and that the transcribed deposition

9    of said witness is a true record of the testimony

10   given by said witness;

11          That the proceeding is herein recorded

12   fully and accurately;

13          That I am neither attorney nor counsel

14   for, nor related to any of the parties to the

15   action in which these depositions were taken, and

16   further that I am not a relative of any attorney

17   or counsel employed by the parties hereto, or

18   financially interested in this action.

19          I certify that the attached transcript

20   meets the requirements set forth within article

21   twenty-seven, chapter forty-seven of the West

22   Virginia.

23
                                          Nicole Montagano,
24
                                          Court Reporter
25
```

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Nicole Montagano
Sargent's Court Reporting Service, Inc.
HUB Business Center Suites
Martinsburg WV 25401
My Commission Expires November 26, 2026