# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON, <br><br> *Plaintiff*, <br><br> v. <br><br> WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA, <br><br> *Defendants*, <br><br> and <br><br> LAINEY ARMISTEAD, <br><br> *Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316 <br><br> Hon. Joseph R. Goodwin |

**RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION TO DEFENDANT, STATE OF WEST VIRGINIA**

Pursuant to Federal Rules of Civil Procedure 33 and 36 and the applicable Local Rules of the Southern District of West Virginia and this Court, the Defendant, State of West Virginia (the "State"), provides these responses to Plaintiff's Second Set of Requests for Admission to Defendant, State of West Virginia ("Second Set of RFAs").

**GENERAL OBJECTIONS**

The State objects to the definitions of the terms "Cisgender," "Gender Identity," "Transgender," and "Transgender Girl" in the Second Set of RFAs' instructions. Those terms have no definitive legally recognized definition, and those terms do not have an agreed or stipulated meaning in this matter. Any requests for admissions based on these disputed and unproven definitions would necessarily be admissions as to Plaintiff's definitions, which the State declines to do at this point in the litigation.

1

Objecting further, Plaintiff's instructions state: "3. GENDER IDENTITY is synonymous with the meaning used in Plaintiff's First Amended Complaint, paragraphs 19-23." Yet those paragraphs do not contain any definition of the term "gender identity." Accordingly, the instructions for the Second Set of RFAs, even if otherwise acceptable, are vague and unclear.

Further objecting, the Defendant State objects to the definition of "YOU," "YOUR," and "YOURS." As previously discussed in this case, the State of West Virginia alone intervened and was then added as a named defendant via the Amended Complaint, and the Attorney General represents only the State of West Virginia. The Attorney General does not represent any of the other entities or individuals listed in the definition of "YOU, YOUR or YOURS" in these requests and cannot speak on behalf of those entities and individuals here. Accordingly—and consistent with other discovery responses in this matter—any responses are on behalf of the State only.

Further objecting, to the extent that the RFAs ask that the Defendant State admit to its awareness, it is unclear how "awareness" is meant to be applied to the State of West Virginia as (i) "awareness" is distinct from "knowledge" and (ii) the State is an entity which does not have "awareness" as that term is typically understood. Any RFAs seeking such an admission are unclear and consequently seem inappropriate.

Further objecting, the Defendant State objects to any instructions which go beyond Federal Rule 36 and will follow that rule in the event the instructions conflict or go beyond that rule.

## RESPONSES TO REQUESTS FOR ADMISSION

Defendant State of West Virginia incorporates by reference all of the foregoing objections into each of the responses below. Any admission in the responses below are made without waiver of the foregoing objections.

**REQUEST NO. 5:** **Admit that Plaintiff B.P.J. has been diagnosed with gender dysphoria.**

**RESPONSE:** The State objects to this request as it is vague in the sense that the term "diagnosed" suggests a medical diagnosis. The assertion of a diagnosis of gender dysphoria relates to a subjective psychological diagnosis, and it is the State's understanding that the standards for such diagnosis vary and that different medical providers reach such a diagnosis differently. Further responding, the State denies for lack of knowledge. The State acknowledges and admits that there are medical records that record and reflect a diagnosis of gender dysphoria for BPJ that was provided by Dr. Montano and that there has been deposition testimony consistent with these records, but denies all other requests included within this Request.

**REQUEST NO. 6:** **Admit that in 2021 Plaintiff B.P.J. was a member of Bridgeport Middle School's girls' cross-country team.**

**RESPONSE:** The State admits this Request.

**REQUEST NO. 7:** **Admit that Plaintiff B.P.J. placed 51 out of 66 competitors in the girls' middle school cross country Mountain Hollar MS Invitational meet in 2021.**

**RESPONSE:** The State denies this Request for lack of knowledge. The State has no knowledge of the source of this information or the validity of such information.

**REQUEST NO. 8:** Admit that Plaintiff B.P.J. placed 123 out of 150 competitors in the girls' middle school cross country Doddridge Invitational meet in 2021.

**RESPONSE:** The State denies this Request for lack of knowledge. The State has no knowledge of the source of this information or the validity of such information.

**REQUEST NO. 9:** Admit that you have not received any complaints associated with Plaintiff B.P.J.'s membership on Bridgeport Middle School's girls' cross country team.

**RESPONSE:** The State objects to this request as it would not be the recipient of such complaints. Without waiver of the foregoing, the State admits this Request.

**REQUEST NO. 10:** Admit that no middle school girl was harmed as a result of B.P.J.'s participation on Bridgeport Middle School's girls' cross country team in 2021.

**RESPONSE:** The State objects to this request as the term "harmed" is vague and has multiple meanings. Without waiver of the foregoing, the State denies for lack of knowledge and further states that it is perhaps unknowable what effect B.P.J.'s participation on Bridgeport Middle School's girls' cross country team in 2021 has had on other participants on that team, participants on other teams, or on others who wanted to participate in this or other events but were dissuaded from such participation or otherwise felt harmed in some way, psychologically or otherwise. Further responding, the State has no knowledge of any physical harm to any middle school girl as a result of Plaintiff B.P.J.'s participation on Bridgeport Middle School's girls' cross country team in 2021.

**REQUEST NO. 11:** Admit that no middle school girl was injured as a result of Plaintiff B.P.J.'s participation on Bridgeport Middle School's girls' cross country team in 2021.

**RESPONSE:** The State objects to this request as the term "injured" is vague and has multiple meanings. Without waiver of the foregoing, the State denies for lack of knowledge and further states that it is perhaps unknowable what effect B.P.J.'s participation on Bridgeport Middle School's girls' cross country team in 2021 has had on other participants on that team, participants on other teams, or on others who wanted to participate in this or other events but were dissuaded from such participation or otherwise felt injured in some way, psychologically or otherwise. Further responding, the State has no knowledge of any physical injury to any middle school girl as a result of Plaintiff B.P.J.'s participation on Bridgeport Middle School's girls' cross country team in 2021.

**REQUEST NO. 12:** Admit that no Bridgeport Middle School girl student was prohibited from joining Bridgeport Middle School's girls' cross-country team in 2021.

**RESPONSE:** The State denies this Request for lack of knowledge. This type of information is not within the knowledge of the State.

**REQUEST NO. 13:** Admit that Bridgeport Middle School's girls' cross-country team did not turn anyone away from participating due to lack of space on the roster in 2021.

**RESPONSE:** The State denies this Request for lack of knowledge. This type of information is not within the knowledge of the State.

**REQUEST NO. 14:** Admit that Plaintiff B.P.J. does not have an unfair athletic advantage over other girls participating on the Bridgeport Middle School girls' cross-country team.

**RESPONSE:** The State objects to this Request as the use of the word "over" makes the meaning of this request unclear. Without waiving the foregoing, the State denies this Request. As expert witness testimony has or will show, biological boys statistically have an athletic advantage over biological girls, even at 11 years of age. The State views this as an unfair advantage. Because B.P.J. is a biological boy, B.P.J. does have an advantage.

**REQUEST NO. 15:** Admit that Plaintiff B.P.J. does not have an unfair athletic advantage over girls competing against the Bridgeport Middle School girls' cross-country team.

**RESPONSE:** The State objects to this Request as the use of the word "over" makes the meaning of this request unclear. Without waiving the foregoing, the State denies this Request. As expert witness testimony has or will show, biological boys statistically have an athletic advantage over biological girls, even at 11 years of age. The State views this as an unfair advantage. Because B.P.J. is a biological boy, B.P.J. does have an advantage.

**REQUEST NO. 16:** Admit that cross country is a sport that requires "competitive skill" as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)).

**RESPONSE:** The State admits this Request.

**REQUEST NO. 17:** Admit that cross country is a sport that requires "competitive skill" as that phrase is used in 34 C.F.R.§ 106.41(b).

**RESPONSE:** The State admits this Request.

**REQUEST NO. 18:** Admit that cross country is not a "contact sport" as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)).

**RESPONSE:** The State admits this Request.

**REQUEST NO. 19:** Admit that cross country is not a "contact sport" as that phrase is used in 34 C.F.R.§ 106.41(b).

**RESPONSE:** The State admit this Request.

**REQUEST NO. 20:** Admit that, but for the injunction issued in this case (Dkt. 67), Plaintiff B.P.J. would not have been permitted to be a member of Bridgeport Middle School's girls' cross-country team in 2021 because of H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)).

4

**RESPONSE:** The State objects to this Request relative to the terms "permitted" and "because of." Further responding, the State admits that H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)) directs that biological males, such as B.P.J, are not eligible to be members of any athletic teams designated for females, such as Bridgeport Middle School's girls' cross-country team.

**REQUEST NO. 21:** Admit that, but for the injunction issued in this case (Dkt. 67), Plaintiff B.P.J. would not be permitted to be a member of any girls' athletic team offered at Bridgeport Middle School because of H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)).

**RESPONSE:** The State objects to this Request relative to the terms "permitted" and "because of." Further responding, the State admits that H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)) directs that biological males, such as B.P.J, are not eligible to be members of any athletic teams designated for females, including girls' athletic teams offered at Bridgeport Middle School.

**REQUEST NO. 22:** Admit that H.B. 3293 prohibits Plaintiff B.P.J. from participating on girls' athletic teams at all public secondary schools located in West Virginia.

**RESPONSE:** The State admits this Request.

**REQUEST NO. 23:** Admit that the State Board of Education and the State Superintendent must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:** The State admits this Request.

**REQUEST NO. 24:** Admit that H.B. 3293 prohibits the State Board of Education and the State Superintendent from adopting or enforcing a policy that would allow B.P.J. to participate on girls' athletic teams at Bridgeport Middle School.

**RESPONSE:** The State denies that H.B. 3293 contains an express prohibition to this effect, but, responding further, admits that the State Board and State Superintendent must comply with the statute.

**REQUEST NO. 25:** Admit that the Harrison County Board of Education and the Harrison County School Superintendent must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:** The State admits this Request.

**REQUEST NO. 26:** Admit that H.B. 3293 prohibits the Harrison County Board of Education and the Harrison County Superintendent from adopting or enforcing a policy that would allow B.P.J. to participate on girls' athletic teams at Bridgeport Middle School.

**RESPONSE:** The State denies that H.B. 3293 contains an express prohibition to this effect, but, responding further, admits that the County Board and Harrison County Superintendent must comply with the statute.

**REQUEST NO. 27:**  Admit that the West Virginia Secondary School Athletic Commission must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:**  The State admits this Request.

**REQUEST NO. 28:**  Admit that H.B. 3293 prohibits the West Virginia Secondary School Athletic Commission from adopting or enforcing a policy that would allow B.P.J. to participate on girls' athletic teams at Bridgeport Middle School.

**RESPONSE:**  The State denies that H.B. 3293 contains an express prohibition to this effect, but, responding further, admits that the West Virginia Secondary School Activities Commission must comply with the statute.

**REQUEST NO. 29:**  Admit that there are no athletic teams designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C)), offered at Bridgeport Middle School.

**RESPONSE:**  The State denies this Request based on the testimony of the County Board that some teams are coed or mixed.

**REQUEST NO. 30:** Admit that there are no athletic teams designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C)), that compete interscholastically offered at any public secondary school located in West Virginia.

**RESPONSE:**  The State denies this Request based on the testimony of the West Virginia Secondary Schools Activities Commission that some teams are coed or mixed.

**REQUEST NO. 31:**  Admit that there are no cross-country teams designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C)), that compete interscholastically offered by any member school of the West Virginia Secondary School Activities Commission.

**RESPONSE:**  The State denies this Request for lack of knowledge. This information is not within the knowledge of the State.  The State understands that the Plaintiff is seeking this information directly from the State Board and West Virginia Secondary School Activities Commission, which are in a position to respond to this inquiry.

**REQUEST NO. 32:**  Admit that there are no athletic leagues designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C)), that comprise teams from more than one school supervised by the West Virginia Secondary School Activities Commission.

**RESPONSE:**  The State denies this Request for lack of knowledge. This information is not within the knowledge of the State.  The State understands that the Plaintiff is seeking this information directly from the State Board and West Virginia Secondary School Activities Commission, which are in a position to respond to this inquiry.

**REQUEST NO. 33:** Admit that there are no athletic teams designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C))," that compete interscholastically offered by any public secondary school under the supervision of the West Virginia State Board of Education.

**RESPONSE:** The State denies this Request based on the testimony of the West Virginia Secondary Schools Activities Commission that some teams are coed or mixed.

**REQUEST NO. 34:** Admit that H.B. 3293 does not prohibit a cisgender girl student at Bridgeport Middle School from joining a girls' athletic team offered at Bridgeport Middle School.

**RESPONSE:** The State objects as the terms utilized in this Request are not included in H.B 3293, and therefore the State denies this Request. Without waiver of the foregoing, the State admits that H.B. 3293 does not prohibit a biological girl student at Bridgeport Middle School from joining a girls' athletic team offered at Bridgeport Middle School.

**REQUEST NO. 35:** Admit that H.B. 3293 does not prohibit a cisgender girl student at any public secondary school in West Virginia from joining a girls' athletic team offered by her public secondary school.

**RESPONSE:** The State objects as the terms utilized in this Request are not included in H.B 3293, and therefore the State denies this Request. Without waiver of the foregoing, the State admits that H.B. 3293 does not prohibit a biological girl student at any secondary school in West Virginia from joining a girls' athletic team offered at the public secondary school where such biological girl attends.

**REQUEST NO. 36:** Admit that H.B. 3293 prohibits a Bridgeport Middle School transgender girl student from joining a girls' athletic team offered at Bridgeport Middle School.

**RESPONSE:** The State objects to this Request as H.B. 3293 does not use the term "transgender girl," and therefore the State denies this Request. Without waiver of the foregoing, the State admits that H.B. 3293 prohibits a biological boy attending Bridgeport Middle School from joining a girls' athletic team offered at Bridgeport Middle School.

**REQUEST NO. 37:** Admit that H.B. 3293 prohibits any transgender girl secondary school student located in West Virginia from joining a girls' athletic team offered by her public secondary school.

**RESPONSE:** The State objects to this Request as H.B. 3293 does not use the term "transgender girl," and therefore the State denies this Request. Without waiver of the foregoing, the State admits that H.B. 3293 prohibits a biological boy attending a secondary school in West Virginia from joining a girls' athletic team offered at the school where such biological boy attends.

**REQUEST NO. 38**:  Admit that prior to the enactment of H.B. 3293, cisgender boy students at Bridgeport Middle School were prohibited from joining girls' athletic teams offered at Bridgeport Middle School.

**RESPONSE**:  The State objects to this Request as it appears to seek a legal opinion on the legal question of whether a biological boy was permitted to participate on a girls' athletic team under West Virginia law prior to the enactment of H.B 3293.  The following cases may contain legal analysis which may have been used to address this issue:  *Gregor v. W. Virginia Secondary Sch. Activities Comm'n*, No. 2:20-CV-00654, 2020 WL 5997057, at *1 (S.D.W. Va. Oct. 9, 2020); *Israel by Israel v. W. Virginia Secondary Sch. Activities Comm'n,* 182 W. Va. 454, 388 S.E.2d 480 (1989).  Further objecting.  Accordingly, the State denies this Request.

**REQUEST NO. 39**:  Admit that prior to the enactment of H.B. 3293, a cisgender boy student at any public secondary school in West Virginia was prohibited from joining girls' athletic teams offered at his public secondary school.

**RESPONSE**:  The State objects to this Request as it appears to seek a legal opinion on the legal question of whether a biological boy was permitted to participate on a girls team under West Virginia law prior to the enactment of H.B 3293.  The following cases may contain legal analysis which may have been used to address this issue:  *Gregor v. W. Virginia Secondary Sch. Activities Comm'n*, No. 2:20-CV-00654, 2020 WL 5997057, at *1 (S.D.W. Va. Oct. 9, 2020); *Israel by Israel v. W. Virginia Secondary Sch. Activities Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989).   Further objecting, this seeks the answer to a hypothetical question.  Accordingly, the State denies this Request.

**REQUEST NO. 40**:  Admit that prior to the enactment of H.B. 3293, you are not aware of any transgender student athlete participating on an athletic team offered by Bridgeport Middle School.

**RESPONSE**:  To the extent that the State is capable of having "awareness," the State admits that, prior to the enactment of H.B. 3293, the State was not aware of any biological male students claiming to identify as female,  any biological female students claiming to identify as male, or any students describing themselves as "transgender" participating on an athletic team offered by Bridgeport Middle School.

**REQUEST NO. 41**:  Admit that prior to the enactment of H.B. 3293, you are not aware of any transgender student athlete participating on an athletic team offered by a public secondary school in West Virginia.

**RESPONSE**:  To the extent that the State is capable of having "awareness," the State admits that, prior to the enactment of H.B. 3293, the State was not aware of any biological male students claiming to identify as female, any biological female students claiming to identify as male, or any students describing themselves as "transgender" participating on an athletic team offered by a public secondary school in West Virginia.

**REQUEST NO. 42**:  Admit that other than Plaintiff B.P.J., you are not aware of a transgender student athlete participating on an athletic team offered by Bridgeport Middle School.

**RESPONSE:** To the extent that the State is capable of having "awareness," the State admits that, other than Plaintiff B.P.J., it is not aware of any biological male students claiming to identify as female, any biological female students claiming to identify as male, or any students describing themselves as "transgender" participating on an athletic team offered by Bridgeport Middle School.

**REQUEST NO. 43:** Admit that other than Plaintiff B.P.J., you are not aware of a transgender student athlete participating on an athletic team offered by a public secondary school in West Virginia.

**RESPONSE:** To the extent that the State is capable of having "awareness," the State admits that, other than Plaintiff B.P.J., it is has no awareness of any biological male students identifying as female, any biological female students identifying as male, or any students describing themselves as "transgender" participating on an athletic team offered by a public secondary school in West Virginia.

**REQUEST NO. 44:** Admit that students derive social benefits from participation on athletic teams offered by public secondary schools in West Virginia.

**RESPONSE:** The State objects to this Request as it is vague, overbroad and speculative in that it seeks to include all students and the State would have to speculate as to whether any or all students "derive social benefits" and what are "social benefits." Without waiver of the foregoing, the State states that it is likely that some students who participate in athletic teams feel that they have benefited in some fashion or fashions and it is likely that some students who participate in athletic teams feel that they have not so benefited.

**REQUEST NO. 45:** Admit that students derive psychological benefits from participation on athletic teams offered by public secondary schools in West Virginia.

**RESPONSE:** The State objects to this Request as it is vague, overbroad and speculative in that it seeks to include all students and the State would have to speculate as to whether any or all students "derive psychological benefits" and what are "psychological benefits." Without waiver of the foregoing, the State states that it is likely that some students who participate in athletic teams feel that they have benefited in some fashion or fashions and it is likely that some students who participate in athletic teams feel that they have not so benefited.

**REQUEST NO. 46:** Admit that interscholastic athletic competition benefits middle school students.

**RESPONSE:** The State objects to this Request as it is vague, overbroad and speculative in that it seeks to include all students and what constitutes a benefit for students. Further, the State would have to speculate as to whether it benefits any or all middle school students. Without waiver of the foregoing, the State states that it is likely that interscholastic athletic competition benefits some middle school students in some fashion or fashions but also may not benefit other students.

**REQUEST NO. 47:** Admit that middle school students who participate in interscholastic athletics receive benefits regardless whether they win or lose.

**RESPONSE:** The State objects to this Request as it is vague, overbroad and speculative in that it seeks to include all participating students and what constitutes a benefit for students. Each student would likely have an opinion unique to that student. Further, the State would have to speculate as to the answer for each and every child. Further objecting, the terms "win" or "lose" are somewhat vague and may or may not apply to all athletic situations. Without waiver of the foregoing, the State states that it is likely that some middle school students who participate in interscholastic athletics feel that they receive benefits regardless whether they outright "win" or "lose" and that others do not.

Respectfully,

STATE OF WEST VIRGINIA,

By counsel,
PATRICK MORRISEY,
ATTORNEY GENERAL

/s/ Curtis R. A. Capehart
Douglas P. Buffington, II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Curtis R. A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
David C. Tryon (WV Bar # 14145)
  *Deputy Solicitor General*
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220
Email: Curtis.R.A.Capehart@wvago.gov
Telephone: (304) 558-2021
Facsimile: (304) 558-0140

*Counsel for Defendant, STATE OF WEST VIRGINIA*