Exhibit 10

## IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

**B.P.J., by her next friend and mother,**
**HEATHER JACKSON,**
    **Plaintiff,**

**v.**                       **Civil Action No. 2:21-cv-00316**
                             **Honorable Joseph R. Goodwin, Judge**

**WEST VIRGINIA STATE BOARD OF EDUCATION,**
**HARRISON COUNTY BOARD OF EDUCATION,**
**WEST VIRGINIA SECONDARY SCHOOL**
**ACTIVITIES COMMISION, W. CLAYTON BURCH**
**in his official capacity as State Superintendent, and**
**DORA STUTLER in her official capacity as**
**Harrison County Superintendent,**
    **Defendants.**

### CERTIFICATE OF SERVICE

I hereby certify that I, Roberta F. Green, have this day, the 9th day of March, 2022, filed a true and

exact copy of the Certificate of Service for **"WVSSAC'S RESPONSES TO SECOND SET OF**

**REQUESTS FOR ADMISSION"** with the Clerk of Court using the CM/ECF System, and have

served by electronic transmission the pleading upon the following counsel of record:

Loree Beth Stark                              Kathleen R. Hartnett
Nicholas Ward                               Julie Veroff
ACLU of WV FOUNDATION             COOLEY LLP
P.O. Box 3952                           101 California St. – 5th Floor
Charleston, WV  25339-3952           San Francisco, CA 94111-5800
lstark@acluwv.org                      khartnett@cooley.com
nward@acluwv.org                      jveroff@cooley.com

Katelyn Kang                              Elizabeth Reinhardt
COOLEY LLP                             COOLEY LLP
55 Hudson Yards                        500 Boylston St., 14th Floor
New York, NY 10001-2157             Boston, MA  02116-3736
kkang@cooley.com                      ereinhardt@cooley.com

Andrew Barr
COOLEY LLP
1144 15th St., Suite 2300
Denver, CO 80202-5686
abarr@cooley.com

Joshua Block
Chase Strangio
ACLU FOUNDATION
125 Broad Street
New York, NY 10004
jblock@aclu.org

Sruti Swaminathan
LAMBDA LEGAL
120 Wall St., 19th Floor
New York, NY 10005
sswaminathan@lambdalegal.org

Kelly C. Morgan
Michael W. Taylor
Kristen Vickers Hammond
BAILEY & WYANT, PLLC
500 Virginia St., East, Suite 600
Charleston, WV 25301
kmorgan@baileywyant.com
mtaylor@baileywyant.com
khammond@baileywyant.com

Douglas P. Buffington, II
Curtis R.A. Capehart
Jessica A. Lee
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220
Curtis.R.A.Capehart@wvago.gov

Taylor Brown
American Civil Liberties Union
125 Broad St., 18th Floor
New York, NY 10004
tbrown@aclu.org

Avatara Smith-Carrington
LAMBDA LEGAL
3500 Oak Lawn Ave., Suite 500
Dallas, TX 75219
asmithcarrington@lambdalegal.org

Carl Charles
LAMBDA LEGAL
1 West Court Square, Suite 105
Decatur, GA 30030
ccharles@lambdalegal.org

Susan Llewellyn Deniker
Jeffrey M. Cropp
STEPTOE and JOHNSON, LLC
400 White Oaks Boulevard
Bridgeport, WV 26330
susan.deniker@steptoe-johnson.com
jeffrey.cropp@steptoe-johnson.com

Tara Borelli
LAMBDA LEGAL
1 West Court Square, Suite 105
Decatur, GA 30030
tborelli@lambdalegal.org

David C. Tryon
West Virginia Atty. General's Office
1900 Kanawha Blvd., E.
Bldg. 1, Rm 26E
Charleston, WV 25305
David.C.Tryon@wvago.gov

Brandon S. Steele
Joshua D. Brown
Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Ste 100
Beckley, WV 25801
bsteelelawoffice@gmail.com
joshua_brown05@hotmail.com

Jonathan Scruggs
Roger Greenwood Brooks
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
jscruggs@adflegal.org
rbrooks@adflegal.org

Christiana Holcomb
Rachel Csutoros
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
cholcomb@adflegal.org
rcsutoros@adflegal.org

Timothy D. Ducar
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
tducar@azlawyers.com

Meredith Taylor Brown
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
tbrown@aclu.org

Anthony E. Nortz
Kesner & Kesner
112 Capitol Street
Charleston, WV 25301
anortz@kesnerlaw.com

Michael W. Taylor
BAILEY & WYANT PLLC
500 Virginia St., E. – Suite 600
Charleston, WV 25301
mtaylor@baileywyant.com

Aria S. Vaughan
U.S. Department of Justice
Civil Rights Division
Educational Opportunities Section
950 Pennsylvania Ave., NW
4CON, 10th Floor
Washington, DC 20530
aria.vaughan@usdoj.gov

Fred B. Westfall, Jr.
Jennifer M. Mankins
United States Attorney's Office
300 Virginia Street, East
Room 400
Charleston, WV 25301
fred.westfall@usdoj.gov
Jennifer.mankins@usdoj.gov

*/S/ Roberta F. Green*

Roberta F. Green, Esquire (WVSB #6598)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street E., Suite 200 (25301)
Charleston, West Virginia
Phone: (304) 345-1400
Facsimile: (304) 343-1826
*Counsel for Defendant WVSSAC*
rgreen@shumanlaw.com

20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**B.P.J., by her next friend and mother,**
**HEATHER JACKSON,**
     **Plaintiff,**

**v.**
                         **Civil Action No. 2:21-cv-00316**
                         **Honorable Joseph R. Goodwin, Judge**

**WEST VIRGINIA STATE BOARD OF EDUCATION,**
**HARRISON COUNTY BOARD OF EDUCATION,**
**WEST VIRGINIA SECONDARY SCHOOL**
**ACTIVITIES COMMISSION, W. CLAYTON BURCH**
**in his official capacity as State Superintendent,**
**DORA STUTLER in her official capacity as**
**Harrison County Superintendent, and**
**THE STATE OF WEST VIRGINIA,**
     **Defendants,**

     **and**

**LAINEY ARMISTEAD,**
     **Intervenor Defendant.**

**WVSSAC'S RESPONSES TO SECOND SET**
**OF REQUESTS FOR ADMISSION**

Now comes West Virginia Secondary School Activities Commission (WVSSAC), by counsel, and responds to Plaintiff's Second Set of Requests for Admission, as follows. Defendant West Virginia Secondary School Activities Commission has not completed discovery in this civil action and has not completed its preparation for trial.  For these reasons, the Defendant's responses are based upon only such information and documents as are presently available and known to WVSSAC.  Further discovery and independent investigation may lead to other responsive information and/or documents. The following responses are given in good faith but without prejudice to the Defendant's right to produce evidence of subsequently discovered facts or documents.

The Defendant avails itself of all rights under the Federal Rules of Civil Procedure and such other applicable rules and law, and objects to the instructions contained in Plaintiff's discovery requests to the extent such instructions attempt to impose burdens on the Defendant that are outside the scope of the Rules or the law generally. The Defendant is not bound to follow any instructions which may be contrary to the Rules and other law. Further, WVSSAC objects to Plaintiff's Definitions as subjective, without appellation to an authoritative or objective source, and outside this Defendant's knowledge, such that Defendant has insufficient information, knowledge or belief to admit or deny any assertions based upon them. *See Lynn v. Monarch Recovery Mgmt.,* 28 F.R.D. 350, 368 (2012).

With these objections in place, WVSSAC responds as follows.

## REQUESTS FOR ADMISSION

REQUEST NO. 5: Admit that Plaintiff B.P.J. has been diagnosed with gender dysphoria.

**RESPONSE:**

**WVSSAC admits that Plaintiff has produced medical records that reflect a diagnosis of 'gender dysphoria" and admits that Plaintiff and her prior treater Dr. Montano both testified to that diagnosis under oath. However, beyond that, WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny this statement, and therefore denies same.**

REQUEST NO. 6: Admit that in 2021 Plaintiff B.P.J. was a member of Bridgeport Middle School's girls' cross-country team.

**RESPONSE:**

**Admitted on information and belief. WVSSAC is aware that Bridgeport Middle School has posted a roster that includes B.P.J. Beyond that, Plaintiff and Plaintiff's witnesses testified to B.P.J.'s participation on that team. While WVSSAC has no independent knowledge of the participation, it has notice of the roster, which is an official document in its course of business. In reliance thereon, WVSSAC admits this assertion on information and belief.**

2

REQUEST NO. 7: Admit that Plaintiff B.P.J. placed 51 out of 66 competitors in the girls' middle school cross country Mountain Hollar MS Invitational meet in 2021.

**RESPONSE:**

**WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 8: Admit that Plaintiff B.P.J. placed 123 out of 150 competitors in the girls' middle school cross country Doddridge Invitational meet in 2021.

**RESPONSE:**

**WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 9: Admit that you have not received any complaints associated with Plaintiff B.P.J.'s membership on Bridgeport Middle School's girls' cross-country team.

**RESPONSE:**

**On information and belief, admitted.**

REQUEST NO. 10: Admit that no middle school girl was harmed as a result of B.P.J.'s participation on Bridgeport Middle School's girls' cross-country team in 2021.

**RESPONSE:**

**Objection; unclear, undefined term 'harmed.' Beyond that, WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 11: Admit that no middle school girl was injured as a result of Plaintiff B.P.J.'s participation on Bridgeport Middle School's girls' cross-country team in 2021.

**RESPONSE:**

**Objection; unclear, undefined term 'injured.' WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

3

REQUEST NO. 12: Admit that no Bridgeport Middle School girl student was prohibited from joining Bridgeport Middle School's girls' cross-country team in 2021.

**RESPONSE:**

**WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 13: Admit that Bridgeport Middle School's girls' cross-country team did not turn anyone away from participating due to lack of space on the roster in 2021.

**RESPONSE:**

**WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 14: Admit that Plaintiff B.P.J. does not have an unfair athletic advantage over other girls participating on the Bridgeport Middle School girls' cross-country team.

**RESPONSE:**

**WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 15: Admit that Plaintiff B.P.J. does not have an unfair athletic advantage over girls competing against the Bridgeport Middle School girls' cross-country team.

**RESPONSE:**

**WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 16: Admit that cross country is a sport that requires "competitive skill" as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)).

**RESPONSE:**

**WVSSAC has insufficient knowledge of this assertion in this context, in particular, of the term 'competitive skill' relative to middle school cross country, so as to allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 17: Admit that cross country is a sport that requires "competitive skill" as that phrase is used in 34 C.F.R.§ 106.41(b).

**RESPONSE:**

**On information and belief, admitted that in some instances cross country can be seen as requiring competitive skill, although (also on information and belief) persons may participate in some instances with varying skill levels with or without 'competitive' skill involved.**

REQUEST NO. 18: Admit that cross country is not a "contact sport" as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)). 7

**RESPONSE:**

**Admitted.**

REQUEST NO. 19: Admit that cross country is not a "contact sport" as that phrase is used in 34 C.F.R.§ 106.41(b).

**RESPONSE:**

**Admitted.**

REQUEST NO. 20: Admit that, but for the injunction issued in this case (Dkt. 67), Plaintiff B.P.J. would not have been permitted to be a member of Bridgeport Middle School's girls' cross-country team in 2021 because of H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)).

**RESPONSE:**

**Objection; calls for a legal conclusion; incomplete hypothetical. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables, WVSSAC denies same.**

REQUEST NO. 21: Admit that, but for the injunction issued in this case (Dkt. 67), Plaintiff B.P.J. would not be permitted to be a member of any girls' athletic team offered at Bridgeport Middle School because of H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(2)).

**RESPONSE:**

**Objection; calls for a legal conclusion; incomplete hypothetical. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables, WVSSAC denies same.**

REQUEST NO. 22: Admit that H.B. 3293 prohibits Plaintiff B.P.J. from participating on girls' athletic teams at all public secondary schools located in West Virginia.

**RESPONSE:**

**Objection; calls for a legal conclusion; incomplete hypothetical. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables, WVSSAC denies same. However, WVSSAC admits that H.B. 3293 as codified at West Virginia Code Section 18-2-25d provides that "Athletic teams or sports designated for females, women, or girls shall not be open to students of the male sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport."**

REQUEST NO. 23: Admit that the State Board of Education and the State Superintendent must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:**

**Objection; calls for a legal conclusion; incomplete hypothetical. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables, WVSSAC denies same while admitting the general principle that all individuals, entities must comply with any and all State laws that apply to them.**

REQUEST NO. 24: Admit that H.B. 3293 prohibits the State Board of Education and the State Superintendent from adopting or enforcing a policy that would allow B.P.J. to participate on girls' athletic teams at Bridgeport Middle School.

**RESPONSE:**

**Objection; calls for a legal conclusion; incomplete hypothetical. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables, WVSSAC denies same while admitting the general principle that all individuals, entities must comply with any and all State laws that apply to them.**

REQUEST NO. 25: Admit that the Harrison County Board of Education and the Harrison County School Superintendent must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:**

**Objection; calls for a legal conclusion; incomplete hypothetical. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables, WVSSAC denies same while admitting the general principle that all individuals, entities must comply with any and all State laws that apply to them.**

REQUEST NO. 26: Admit that H.B. 3293 prohibits the Harrison County Board of Education and the Harrison County Superintendent from adopting or enforcing a policy that would allow B.P.J. to participate on girls' athletic teams at Bridgeport Middle School.

**RESPONSE:**

**Objection; calls for a legal conclusion; incomplete hypothetical. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables, WVSSAC denies same while admitting the general principle that all individuals, entities must comply with any and all State laws that apply to them.**

REQUEST NO. 27: Admit that the West Virginia Secondary School Athletic Commission must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:**

**Admitted and denied. WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC. However, WVSSAC admits that it must follow all laws that include a duty for it.**

REQUEST NO. 28: Admit that H.B. 3293 prohibits the West Virginia Secondary School Athletic Commission from adopting or enforcing a policy that would allow B.P.J. to participate on girls' athletic teams at Bridgeport Middle School.

**RESPONSE:**

**Objection; calls for a legal conclusion; incomplete hypothetical. Further, WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC, including, by example only, adopting or enforcing related policies. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables as relates to this student, WVSSAC admits only that it cannot adopt or enforce any policy that conflicts with state law.**

REQUEST NO. 29: Admit that there are no athletic teams designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C)), offered at Bridgeport Middle School.

**RESPONSE:**

**Denied. On information and belief as to the use of the phrase in HB 3293, football, cheer, wrestling, baseball.**

REQUEST NO. 30: Admit that there are no athletic teams designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C)), that compete interscholastically offered at any public secondary school located in West Virginia.

**RESPONSE:**

**Denied. On information and belief as to the use of the phrase in HB 3293, football, cheer, wrestling, baseball.**

8

REQUEST NO. 31: Admit that there are no cross-country teams designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C)), that compete interscholastically offered by any member school of the West Virginia Secondary School Activities Commission.

**RESPONSE:**

**Admitted.**

REQUEST NO. 32: Admit that there are no athletic leagues designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C)), that comprise teams from more than one school supervised by the West Virginia Secondary School Activities Commission.

**RESPONSE:**

**Objection; form of the question (which WVSSAC does not understand). In a good faith effort to respond and reserving all rights to amend, revise, retract or other upon clarification, WVSSAC asserts that the coed or mixed sports of football, cheer, wrestling, baseball allow for competition between schools.**

REQUEST NO. 33: Admit that there are no athletic teams designated as "coed or mixed," as that phrase is used in H.B. 3293 (codified at Code of West Virginia §18-2-25d(c)(1)(C))," that compete interscholastically offered by any public secondary school under the supervision of the West Virginia State Board of Education.

**RESPONSE:**

**Denied. On information and belief as to the use of the phrase in HB 3293, football, cheer, wrestling, baseball.**

REQUEST NO. 34: Admit that H.B. 3293 does not prohibit a cisgender girl student at Bridgeport Middle School from joining a girls' athletic team offered at Bridgeport Middle School.

**RESPONSE:**

**Objection; calls for a legal conclusion. Without waiving that objection, on information and belief, admitted.**

REQUEST NO. 35: Admit that H.B. 3293 does not prohibit a cisgender girl student at any public secondary school in West Virginia from joining a girls' athletic team offered by her public secondary school.

**RESPONSE:**

**Objection; calls for a legal conclusion. Beyond that, on information and belief, admitted.**

REQUEST NO. 36: Admit that H.B. 3293 prohibits a Bridgeport Middle School transgender girl student from joining a girls' athletic team offered at Bridgeport Middle School.

**RESPONSE:**

**Objection; calls for a legal conclusion. Beyond that, on information and belief, admitted.**

REQUEST NO. 37: Admit that H.B. 3293 prohibits any transgender girl secondary school student located in West Virginia from joining a girls' athletic team offered by her public secondary school.

**RESPONSE:**

**Objection; calls for a legal conclusion. Beyond that, on information and belief, admitted.**

REQUEST NO. 38: Admit that prior to the enactment of H.B. 3293, cisgender boy students at Bridgeport Middle School were prohibited from joining girls' athletic teams offered at Bridgeport Middle School.

**RESPONSE:**

**Admitted, both before and after H.B. 3293.**

REQUEST NO. 39: Admit that prior to the enactment of H.B. 3293, a cisgender boy student at any public secondary school in West Virginia was prohibited from joining girls' athletic teams offered at his public secondary school.

**RESPONSE:**

**Admitted, both before and after H.B. 3293.**

REQUEST NO. 40: Admit that prior to the enactment of H.B. 3293, you are not aware of any transgender student athlete participating on an athletic team offered by Bridgeport Middle School.

**RESPONSE:**

**Admitted and denied. While WVSSAC admits that it is not aware of any transgender student athlete who participated on an athletic team offered by Bridgeport Middle School prior to the enactment of H.B. 3293, WVSSAC denies that it would have any reason to know of same, as the only information WVSSAC has about students is what is recorded on the rosters, i.e., boys, girls.**

REQUEST NO. 41: Admit that prior to the enactment of H.B. 3293, you are not aware of any transgender student athlete participating on an athletic team offered by a public secondary school in West Virginia.

**RESPONSE:**

**Admitted and denied. While WVSSAC admits that it is not aware of any transgender student athlete who participated on an athletic team offered by a public secondary school prior to the enactment of H.B. 3293, WVSSAC denies that it would have any reason to know of same, as the only information WVSSAC has about students is what is recorded on the rosters, i.e., boys, girls.**

REQUEST NO. 42: Admit that other than Plaintiff B.P.J., you are not aware of a transgender student athlete participating on an athletic team offered by Bridgeport Middle School.

**RESPONSE:**

**Admitted and denied. While WVSSAC admits that it is not aware of any other transgender student athlete participating on an athletic team offered by Bridgeport Middle School, WVSSAC denies that it would have any reason to know of same, as the only information WVSSAC has about students is what is recorded on the rosters, i.e., boys, girls.**

11

REQUEST NO. 43: Admit that other than Plaintiff B.P.J., you are not aware of a transgender student athlete participating on an athletic team offered by a public secondary school in West Virginia.

**RESPONSE:**

**Admitted and denied. While WVSSAC admits that it is not aware of any other transgender student athlete participating on an athletic team offered by a public secondary school in West Virginia, WVSSAC denies that it would have any reason to know of same, as the only information WVSSAC has about students is what is recorded on the rosters, i.e., boys, girls.**

REQUEST NO. 44: Admit that students derive social benefits from participation on athletic teams offered by public secondary schools in West Virginia.

**RESPONSE:**

**Objection; form of the question – undefined term ('social benefits'). Beyond that, however, on information and belief only, WVSSAC admits that, in general, participation in athletics and activities provides an opportunity for leadership, personal health, camaraderie and cooperation.**

REQUEST NO. 45: Admit that students derive psychological benefits from participation on athletic teams offered by public secondary schools in West Virginia.

**RESPONSE:**

**Objection; form of the question – undefined term ('psychological benefits') and beyond the specialization of WVSSAC. However, on information and belief only, WVSSAC admits that, in general, participation in athletics and activities provides an opportunity for leadership, personal health, camaraderie and cooperation.**

REQUEST NO. 46: Admit that interscholastic athletic competition benefits middle school students.

**RESPONSE:**

**Objection; form of the question – overly broad, vague ('benefits'). However, on information and belief only, WVSSAC admits that, in general, participation in interscholastic athletic competition 'benefits' middle school students by providing provides an opportunity for leadership, personal health, camaraderie and cooperation.**

REQUEST NO. 47: Admit that middle school students who participate in interscholastic athletics receive benefits regardless whether they win or lose.

**RESPONSE:**

**Objection; form of the question – overly broad, vague ('benefits'). However, on information and belief only, WVSSAC admits that, in general, participation in interscholastic athletics 'benefits' middle school students, win or lose, by providing provides an opportunity for leadership, personal health, camaraderie and cooperation.**

REQUEST NO. 48: Admit that after H.B. 3293 was signed into law you decided that, for athletic eligibility purposes, a student athlete's gender would be determined by referring to the gender identified in West Virginia Education Information System ("WVEIS").

**RESPONSE:**

**Denied. The extent to which WVSSAC relied upon WVEIS was not changed by H.B. 3293. However, of note, WVSSAC has no access to and therefore no direct reliance upon WVEIS.**

REQUEST NO. 49: Admit that Plaintiff B.P.J.'s gender is identified in WVEIS as "male."

**RESPONSE:**

**WVSSAC has no independent knowledge of this assertion that would allow it to admit or deny same. Therefore, based upon that lack of knowledge, WVSSAC denies the assertion.**

REQUEST NO. 50: Admit that, as long as H.B. 3293 is in effect, you will not permit a student designated as "male" in WVEIS to participate on Bridgeport Middle School's girls' cross-country team unless ordered to permit that student to participate by a court.

**RESPONSE:**

**WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC, including, by example only, adopting or enforcing related policies. For these reasons and based upon the fact that WVSSAC has insufficient first-hand information on these issues and the underlying variables in WVEIS as relates to the referenced student, WVSSAC admits that it cannot adopt or enforce any policy that conflicts with state law.**

REQUEST NO. 51: Admit that, under your Rules and Regulations, the WVSSAC is composed of secondary schools which have certified in writing to the State Superintendent of Schools of West Virginia that they have elected to delegate the control, supervision, and regulation of their interscholastic athletic and band activities to you. See WVSSAC0000134.

**RESPONSE:**

**Admitted, although WVSSAC's area of control is limited by the same Rules and Regulations, and state law.**

REQUEST NO. 52: Admit that, under your Rules and Regulations, the WVSSAC shall supervise and control interscholastic athletics and band activities among member schools. See WVSSAC0000133.

**RESPONSE:**

**Admitted, although WVSSAC's area of control is limited by the same Rules and Regulations, and state law.**

REQUEST NO. 53: Admit that Bridgeport Middle School has delegated control, supervision, and regulation of its interscholastic athletics to you.

**RESPONSE:**

**Admitted, although WVSSAC's area of control is limited by the same Rules and Regulations, and state law.**

REQUEST NO. 54: Admit that you cannot promulgate any rule that conflicts with H.B. 3293 unless a court enjoins enforcement of H.B. 3293.

**RESPONSE:**

**Objection; calls for a legal conclusion. Beyond that, admitted and denied. WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC, including, by example only, promulgating rules. On information and belief, any rule relative to H.B. 3293 would be adopted by the State Board and placed in the rule book directly, similarly to the 2.0 Rule. However, WVSSAC admits that it must follow state law.**

REQUEST NO. 55: Admit that you cannot promulgate any rule that conflicts with rules promulgated by the State Board of Education to implement H.B. 3293 unless a court enjoins enforcement of H.B. 3293.

**RESPONSE:**

**Admitted and denied. WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC, including, by example only, promulgating rules. On information and belief, any rule relative to H.B. 3293 would be adopted by the State Board and placed in the rule book directly, similarly to the 2.0 Rule. However, WVSSAC admits that it must follow state law.**

REQUEST NO. 56: Admit that you promulgate rules governing student eligibility to participate in interscholastic athletics at secondary schools in West Virginia.

**RESPONSE:**

**Admitted and denied. WVSSAC admits that it promulgates most rules governing student eligibility in interscholastic athletics at secondary schools. However, State Board rules, such as the 2.0 rule and, on information and belief, any rule promulgated pursuant to H.B. 3293, are promulgated by the State Board and placed as promulgated into the rule book.**

REQUEST NO. 57: Admit that your Executive Director is designated as the person who shall receive complaints and make investigations concerning violations of your rules regarding student eligibility.

**RESPONSE:**

**Admitted and denied. Admitted that the Executive Director is one of the persons designated to receive complaints and make investigations. Denied that it is only the Executive Director who receives complaints and makes investigations, as the three Assistant Executive Directors also participate in these processes.**

REQUEST NO. 58: Admit that your Executive Director is designated as the person who shall render decisions and impose penalties in athletic eligibility disputes related to interscholastic athletics at secondary schools in West Virginia.

**RESPONSE:**

**Admitted.**

15

REQUEST NO. 59: Admit that your Board of Directors can overturn eligibility determinations made by your Executive Director.

**RESPONSE:**

**Admitted.**

REQUEST NO. 60: Admit that in exercising his duties to receive complaints and make investigations concerning violations of your rules regarding student eligibility, your Executive Director must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:**

**Admitted and denied. WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC, including, by example only, provisions with which WVSSAC would or must comply. However, WVSSAC admits on information and belief that it could be called upon by a State Board rule to determine eligibility that could draw on the tenets of H.B. 3293.**

REQUEST NO. 61: Admit that in exercising his duties to render decisions and impose penalties in athletic eligibility disputes, your Executive Director must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:**

**Admitted and denied. WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC, including, by example only, provisions with which WVSSAC would or must comply. However, WVSSAC admits on information and belief that it could be called upon by a State Board rule to determine eligibility that could draw on the tenets of H.B. 3293.**

REQUEST NO. 62: Admit that when reviewing eligibility determinations made by your Executive Director, your Board of Directors must comply with H.B. 3293 unless enjoined from doing so by a court.

**RESPONSE:**

**Admitted and denied. WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC's Executive Director or Board of Directors, including, by example only, provisions with which WVSSAC by and/or through either its Executive Director or Board would or must comply. However, WVSSAC admits on information and belief that its Executive Director and/or its Board of Directors could be called upon by a State Board rule to determine eligibility and/or review an eligibility determination that could draw on the tenets of H.B. 3293.**

> **WEST VIRGINIA SECONDARY SCHOOL**
> **ACTIVITIES COMMISSION,**
> **By Counsel.**

*/S/ Roberta F. Green*

Roberta F. Green (WVSB #6598)
Shannon M. Rogers (WVSB #13920)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street East, Suite 200 (25301
Charleston, WV 25339
(304) 345-1400
(304) 343-1826 FAX
rgreen@shumanlaw.com
srogers@shumanlaw.com