Exhibit 35

# West Virginia House of Delegates Education Committee Discussion of H.B. 3293

## March 18, 2021

| | | |
|---|---|---|
| Chairman Ellington: | 00:00:00 | And some of the potential witnesses today or testimony today. Um, clerk, uh, will take us out on quorum and we do have a quorum. So, uh, Vice Chair make a motion to accept the minutes from the previous meeting. |
| Vice Chair: | 00:00:16 | Uh, Mr. Chairman, I move the minutes as presented in the packet, be approved. |
| Chairman Ellington: | 00:00:23 | Uh, you heard the Vice Chair. Any, uh, questions, additions, deletions, directions? Chair here is now all in favor of accepting the minutes from the previous meeting, say aye. |
| Audience: | 00:00:32 | Aye. |
| Chairman Ellington: | 00:00:34 | Those opposed, nay. Ayes appear to have it. Ayes do have it. Minutes adopted. First on the agenda will be an originating bill. Is there any interest in the bill? |
| Counsel: | 00:00:43 | Chairman Ellington, I move the bill. |
| Chairman Ellington: | 00:00:45 | All right, Counsel. Counsel, explain the bill. |
| Counsel: | 00:00:47 | Thank you Chairman Ellington. This bill uh, mens' current code with regard to admission and, uh, participation in single-sex sports. Uh, the bill provides that the birth certificate required for admission to public school must confirm the pupil's sex at the time of birth and the birth certificate. If a birth certificate cannot be obtained, a signed physician's statement indicating the pupil's sex based solely on the pupil's unaltered internal and external reproductive anatomy must be submitted.<br><br>The sex confirmed at the time of admission shall be the pupil's sex for the purposes of participating in SSAC, single-sex interscholastic athletic events. Prior to the students' participation, uh, the SSAC must verify with the county board that each student participating in the single-sex athletics is participating according to, uh, sex listed according to, um, the county provision. And this requirement does not require, it does not apply to co, coed sports, and that's the bill, Mr. Chairman. |
| Chairman Ellington: | 00:01:51 | All right. Any questions of the bill of Counsel? Gentlemen from the, uh, was it 43rd? |
| Del. Thompson: | 00:02:00 | Yep. |

| | | |
|---|---|---|
| Chairman Ellington: | 00:02:01 | I got it right this time. |
| Del. Thompson: | 00:02:10 | Thank you Chairman Ellington. Counsel, would this, if this was adopted, would this apply to, um, all ages, middle school and high school? |
| Counsel: | 00:02:19 | Middle school and high school, not elementary. |
| Del. Thompson: | 00:02:21 | Mm-hmm (affirmative). |
| Counsel: | 00:02:21 | So secondary. |
| Del. Thompson: | 00:02:22 | Okay. Um, how would, the way this bill is written and drafted, you mentioned birth certificate, but, um, so are we going to re-have to require a birth certificate for every time a student wants to play basketball or football? |
| Counsel: | 00:02:41 | No, if you, if you look at the, um, the originating bill, I'm on page one, "Birth certificate is required upon admission to public school." So this just requires that the sex be identified at that time. And then uh, that is the sex that the county would follow, when the student is participating in sports. So know that, that that's already done at the enrollment admissions stage. |
| Del. Thompson: | 00:03:14 | Okay. And correct me if I'm wrong on this, but would this preclude any student from actually participating in a sport? |
| Counsel: | 00:03:25 | It would preclude an opposite sex person from participating in, like in, in, in the opposite sex sport. |
| Del. Thompson: | 00:03:33 | Okay. So would this, like so if a, uh, a person who was born biologically male, um, let me rephrase. A person was born biologically female, but later in life, um, they have began the transition process to identify and become a male. With this bill, and they're taking testosterone, they are taking, they're under medical care and, uh, they're transitioning. So this bill would require them to play, even if they're taking testosterone, they'd be required to play, uh, girls basketball versus boys basketball, which is what they would identify with? |
| Counsel: | 00:04:14 | Right. If I understood, if the person was born as a female, yes. That person would under this, under this bill as it is, would have to apply. |
| Del. Thompson: | 00:04:23 | Even though they're, they're transitioning take it. They might even, they, uh, you know, they appear masculine, they are taking testosterone, they would have to play female sports? |
| Counsel: | 00:04:34 | Correct. |

| | | |
|---|---|---|
| Del. Thompson: | 00:04:35 | Okay. Um, have any other states adopted this? |
| Counsel: | 00:04:43 | Uh, to my knowledge, no other states have. Um, well actually, I, I think there are a couple of states that may have passed similar laws. Um, but in most cases, a lot of those are pending. Uh- |
| Del. Thompson: | 00:04:56 | Am I correct in North Carolina? Did they, did they attempt to pass something similar to this? |
| Counsel: | 00:05:05 | Just a second. |
| Del. Thompson: | 00:05:06 | I believe so. Like maybe around like 2016 or 2017, I thought. |
| Counsel: | 00:05:12 | Uh, hmm. I don't, I don't know about North Carolina. I know there are other states that have, um, introduced various types of legislation. And I don't, that doesn't mean that I think there, there definitely are other states that have looked at different sides of the issue and, um, some have addressed it in policy or have attempted to address it in the legislation. But, um, I don't know specifically about North Carolina. |
| Del. Thompson: | 00:05:37 | So currently, um, students right now who identify, um, with an opposite sex of what they were assigned at birth, they can play whatever sport that they identify with. Is that correct? |
| Counsel: | 00:05:51 | Uh, I, the way I understand it is that, a student would participate in whatever way they're identified in WVEIS. And so that would actually be up to how the county identifies the students. So- |
| Del. Thompson: | 00:06:06 | So this would— |
| Counsel: | 00:06:07 | I'm not sure, I think the answer would be, it depends on how the county identified the student in WVEIS. |
| Del. Thompson: | 00:06:11 | Okay. Um, at, at the appropriate time Chairman Ellington, I don't know who would be appropriate to maybe to really clarify that question for me and is there, maybe the SSAC or, uh, maybe someone from the State Department to kind of get a better understanding of that particular question at the appropriate time. |
| Chairman Ellington: | 00:06:31 | Will do. |
| Del. Thompson: | 00:06:31 | Um, thank you. And then, uh, Counsel is, to your knowledge, um, would this apply to, uh, would this apply only, uh, like you said, secondary school in middle school and high school. Would this have any implications to collegiate sports? |
| Counsel: | 00:06:54 | No, it would not. |

| | | |
|---|---|---|
| Del. Thompson: | 00:06:55 | Okay. Uh, no further questions at this time. I may have some later though. |
| Chairman Ellington: | 00:07:01 | All right. Gentleman from the 67th. |
| Del. Doyle: | 00:07:04 | Uh, thank you, Chairman Ellington. Uh, Counsel, to follow up on that. Um, the uh, and, and as background, um, some of us, some may be aware that this past football season Vanderbilt University had a female place kicker. Uh, she kicked in several games and is, am I correct that if we pass this bill, that would be prohibited, say for a high school football team in West Virginia, but it would be okay for a college team? |
| Counsel: | 00:07:39 | I believe that in an, I'm, maybe someone from the, um, department will be able to um, clarify this. But- |
| Del. Doyle: | 00:07:39 | Yeah, I, I- |
| Counsel: | 00:07:47 | Even under title, Title IX, if there is not a female sport that the female, that the females must be able to join a male team. |
| Del. Doyle: | 00:07:59 | So- |
| Counsel: | 00:07:59 | So I don't think that is correct. |
| Del. Doyle: | 00:08:01 | So if a high school had a female football team, uh, that person would have to kick for the female football team? |
| Counsel: | 00:08:08 | Correct. |
| Del. Doyle: | 00:08:09 | But would not be prohibited from kicking for the male football team? Uh, do you know of any high schools in West Virginia that have female football teams? |
| Counsel: | 00:08:19 | I don't. |
| Del. Doyle: | 00:08:19 | Thank you. Uh, and, and as background, what had happened here was, two of the place kickers for Vanderbilt, were injured. And the, the woman, uh, this woman was, was a first-rate soccer player and a number of the male football players went to the coach and said, "Listen, we need a kicker and she can do it." This would be prohibited for a high school in West Virginia. Is that correct if this bill passed? |
| Counsel: | 00:08:44 | I don't think so, no. Not according to Title IX. |
| Del. Doyle: | 00:08:48 | So you think Title IX might override this, uh, the, the statute? |
| Counsel: | 00:08:55 | When there is not a female sport, um, federal law- |

Page 4 of 19

| | | |
|---|---|---|
| Del. Doyle: | 00:09:01 | Okay. |
| Counsel: | 00:09:01 | States that a female- |
| Del. Doyle: | 00:09:02 | Okay. |
| Counsel: | 00:09:02 | Has to be allowed to play, then becomes a coed team. And so that, that and under this bill a coed team is not [crosstalk 00:09:09]. |
| Del. Doyle: | 00:09:08 | So you're, you're . . . Yes, okay. So you are saying that federal law would trump this in that kind of a situation? |
| Counsel: | 00:09:13 | Yes. |
| Del. Doyle: | 00:09:14 | Thank you. |
| Chairman Ellington: | 00:09:16 | Further questions of Counsel, Gentleman from 16th. |
| Del. Hornbuckle: | 00:09:20 | Uh, thank you Mr. Chair. And so to piggyback off the, off the gentleman's question and the Gentleman from the 43rd. If there was a transgender male, uh, that started out life as a male, uh, one years old becomes a female and they're playing for their high school and they are competing in we'll just say, uh, swimming. And there is only a male team, will, will that individual be permitted to, to be on the, on the male team? |
| Counsel: | 00:10:00 | The individual was born male? |
| Del. Hornbuckle: | 00:10:01 | Mm-hmm (affirmative). |
| Counsel: | 00:10:01 | Yes. |
| Del. Hornbuckle: | 00:10:04 | And, and vice versa? |
| Counsel: | 00:10:07 | If there was, if there was a female? |
| Del. Hornbuckle: | 00:10:09 | Yes ma'am. |
| Counsel: | 00:10:11 | If there's not a female team, then that female would be allowed to participate on the male team. |
| Del. Hornbuckle: | 00:10:16 | So, so- |
| Counsel: | 00:10:17 | And then it would become coed. |
| Del. Hornbuckle: | 00:10:19 | Okay. So the, the, the, the, the, what the Gentleman from the 43rd said, uh, a, uh, the individual that started out as a female, uh, then became a male, was taking the hormones and all those |

Page 5 of 19

|  |  | things, if there was no, uh, I guess there was only a, a female team, then they would, they would be able to be on that or a male team, I guess, any of the team they would have to be allowed, correct? |
|---|---|---|
| Counsel: | 00:10:43 | Uh, I, I, I'm not, I didn't follow on- |
| Chairman Ellington: | 00:10:47 | Clarify your question. |
| Del. Hornbuckle: | 00:10:48 | The question would be, they, they would be permitted to, to participate on any team, if there was only one team. So regardless of the individual, if there was only a male team, they will be permitted to participate on a female team? |
| Counsel: | 00:11:01 | The federal law is designed to help women excel in sports. So the, the way that it works if there's not a female team, that female can participate on the male, in the male sport, which then becomes coed, but it does not go the other way around. |
| Del. Hornbuckle: | 00:11:19 | Okay. Okay. Thank you. |
| Chairman Ellington: | 00:11:26 | Gentleman from the 19th. |
| Del. Griffith: | 00:11:31 | Thank you Mr. Chairman. And I'm trying to think of scenarios here, whereby this might be um, unclear. And one is, there are many schools who have volleyball programs for girls only, would this mean that any boy who so claimed would be able to go out for the volleyball team, because there was no equivalent male team. Uh, would that be a possible scenario? |
| Counsel: | 00:12:01 | No. |
| Del. Griffith: | 00:12:03 | Why would that be? Uh. |
| Counsel: | 00:12:08 | Currently, uh, a female sports are female sports, and males are not included in that. And this bill would preclude a person who was born male, who then identi—, that person would have to continue to play as a male. |
| Del. Griffith: | 00:12:23 | Okay. |
| Counsel: | 00:12:24 | Does that answer your question? |
| Del. Griffith: | 00:12:25 | Yes. Thank you. |
| Chairman Ellington: | 00:12:27 | [inaudible 00:12:27] the gentlemen that has been challenged before, and they were told they need to start a male team if they were gonna have the male play on it. So further questions to Counsel? Lady from 51st. |

| | | |
|---|---|---|
| Del. Walker: | 00:12:38 | Thank you, Mr. Chairman. Thank you, Counsel. So I have a question, because we do have a foster care system here, and we do have trans individuals in that foster care system. And as you know and we all know, all of those documents don;t come with the student. So, if we had a trans student in a new foster home that did not have the documents, it takes even a while to get a, a doctor's visit scheduled with how we are, so with DHHR. So would the coach assume what this person's identity is, gender? |
| Counsel: | 00:13:21 | According to statute, uh, in order to be admitted in the current statute, I'm on page one, the pupil has to have either a birth certificate or an affidavit of why they don't, which I think would be the secondary case, the case in this with the foster child. Um, and then they need the signed, the, if they didn't have the birth certificate, would need the physician statement. |
| Del. Walker: | 00:13:47 | So we would not allow this child to play because we didn't have that documentation, and they may not have a, a doctor's appointment at that time? |
| Counsel: | 00:13:57 | I, in order to be admitted, that's, that's the way this bill reads. |
| Del. Walker: | 00:14:02 | So, and I'm not sure if you can answer this question for me. What do we do with children that are born with both sex organs? |
| Counsel: | 00:14:15 | I do not know. |
| Del. Walker: | 00:14:17 | At the appropriate time, Mr. Chair, if we have anyone to answer that question? |
| Chairman Ellington: | 00:14:24 | [inaudible 14:23] Any further questions Counsel? Gentleman from the 43rd. |
| Del. Thompson: | 00:14:35 | Thank you Mr. Chairman. Counsel, on page one of the bill under, uh, section two, line 10 and 11. "So a signed physician statement indicating the pupil's sex based solely on the pupil's unaltered internal and external reproductive anatomy." So if we, I'm assuming this is if that a birth certificate cannot be obtained? |
| Counsel: | 00:15:02 | Correct. |
| Del. Thompson: | 00:15:03 | So we're gonna subject the child to go to the, a doctor and essentially show them their genitalia to prove their, what genitals they have. Is that what this says? |
| Counsel: | 00:15:16 | And I'm assuming that doctors have those types of exams in a [crosstalk 00:15:21]. |

| | | |
|---|---|---|
| Del. Thompson: | 00:15:22 | Well, I'm sure, I'm sure they do for medical purposes, not just to, you know, show and tell. But, um, is that, is that what that reads that they would, they would have to show their genitals to a doctor to prove their? |
| Counsel: | 00:15:35 | I'm not a doctor. I don't know what a doctor would require. |
| Chairman Ellington: | 00:15:46 | I assume the Gentleman wants to ask the chair questions. |
| Del. Thompson: | 00:15:49 | Yeah. (laughs) |
| Chairman Ellington: | 00:15:50 | Um, there are ways to tell on exam what their gender is. |
| Del. Thompson: | 00:15:55 | Without? |
| Chairman Ellington: | 00:15:57 | Well, I mean, you do an exam, pediatricians do exams all the time. |
| Del. Thompson: | 00:16:00 | Right. |
| Chairman Ellington: | 00:16:00 | Children, and- |
| Del. Thompson: | 00:16:01 | I'm talking about like a— |
| Chairman Ellington: | 00:16:02 | Adolescents, you would do an exam and they do have a physical exams at those ages too. So yes, you would probably have to determine whether it was altered or not. |
| Del. Thompson: | 00:16:11 | By like physical— |
| Chairman Ellington: | 00:16:12 | Right. |
| Del. Thompson: | 00:16:13 | Observation? Okay. Uh, thank you Mr. Chair and Counsel. |
| Chairman Ellington: | 00:16:21 | Lady from the 30th, 41st? |
| Del. Tully: | 00:16:24 | The uh, Counsel, do you, are you aware if the WVSSAC requires a physical, sports physical for participation in sports at the secondary level in West Virginia? |
| Counsel: | 00:16:37 | I don't know if it's the SSAC or the county. Um, I'll, I'll defer to the department on that. |
| Del. Tully: | 00:16:41 | Okay. I believe it's the WVSSAC, 'cause I think it's a pretty standard form. Actually, I have it right here. And, um, it also talks about a physical exam and it talks about actually, when you do the physical exam for the G, the genital urinary system, it talks about like actually doing a physical exam for inguinal |

|  |  | hernias, which are down in the groin folds for those that don't know, and also looking for bilaterally descended testicles. |
|---|---|---|
|  |  | So there's, those students aren't gonna be put through probably an unnecessary exam that they wouldn't already get to play sports. Would that be a correct assumption based upon this? |
| Counsel: | 00:17:18 | If, if that's what it says, yes. |
| Del. Tully: | 00:17:20 | Thank you. |
| Chairman Ellington: | 00:17:22 | Gentleman from 26th? |
| Del. Evans: | 00:17:28 | Thank, thank you Mr. Chairman. Um, are there any girls in West Virginia currently playing the high school football? |
| Counsel: | 00:17:38 | I believe that the Delegate just said that there was. Maybe that was a college. I'm not sure. |
| Chairman Ellington: | 00:17:44 | [inaudible 00:17:44]. Yeah. |
| Counsel: | 00:17:44 | I, I'm not sure. |
| Del. Evans: | 00:17:46 | I believe there definitely are. I stood on the football field this year against a team that definitely had a girl on the football field. We went to Webster County at one time, Webster County had a kicker female. So, I guess it is true that girls can play male sports. |
| Counsel: | 00:18:04 | Yes. |
| Del. Evans : | 00:18:05 | But males cannot play female sports? |
| Counsel: | 00:18:09 | That's currently the way, the current law— |
| Del. Evans: | 00:18:10 | So how does this, how does this bill then affect them, or does it affect it at all? |
| Counsel: | 00:18:17 | This bill would affect those that changed their sex after birth. |
| Del. Evans: | 00:18:22 | Okay. So it has nothing to do with current sex or like, like I'm a guy, I'm not going to change that. So it would not affect me? |
| Counsel: | 00:18:30 | It would not affect you. |
| Del. Evans: | 00:18:31 | Okay, that's all I want to know. Thank you. |
| Chairman Ellington: | 00:18:34 | Further questions to Counsel? I believe by leave of the committee, we had requests from the school system. Uh, Ms. |

|  |  |  |
|---|---|---|
|  |  | Sarah, would you like to come on up and . . Ms. Stewart, you've been sworn in before. I think there was a question regarding the school system, as far as what's currently practiced. Um, Gentleman from 43rd, do you have questions and Sarah, if you would just state name and title for the people listening in on. |
| Sarah Stewart: | 00:19:05 | Sarah Stewart, West Virginia Department of Education. |
| Chairman Ellington: | 00:19:09 | Gentleman. |
| Del. Thompson: | 00:19:10 | Thank you Mr. Chairman, thank you Sarah. I appreciate you being here again. Um, So my question was, currently what is in place? This bill, it's gonna change? Uh, currently right now, if a student who was born um, biologically female, but is a, a high school student and is transitioning, identifies as a male and is transitioning taking hormones, uh, and she wants to play or he wants to play basketball. How, how is that working right now? Is that a county by county decision? Is it a school decision? Uh, is there, what, what is currently working or in place? |
| Sarah Stewart: | 00:19:49 | Let me be clear that I am a representative from the Department of Education and not a representative from the WVSSAC. |
| Del. Thompson: | 00:19:57 | Correct, I understand that. And I, I, I might have a question for them about that as well, but from your perspective from that. |
| Sarah Stewart: | 00:20:02 | I just, I wanted to make that clear and I, 'cause I don't want to speak for them. It is my understanding, that currently there is no specific rule that address, squarely addresses, transgender student participation in extracurricular activities. Um, there are Title IX considerations that do come into play with, um, coed sports. |
|  |  | And if there is only one sport at a, at a, um, particular school that, that we have to be mindful of Title IX and make sure those opportunities are made available. I do believe there is also a rule that if separate teams are maintained, for example a girl's basketball team and a boy's basketball team, that they, I believe there is an SSAC rule, SSAC guidance that directs that, um, that you play on the, on this, um, whatever sex, um, that the, that the students is, that does not address however, any transgender student issues. |
| Del. Thompson: | 00:21:01 | Okay. Does your department have any policy on transgender students at all or has that not been addressed? |
| Sarah Stewart: | 00:21:09 | Uh, we, um, there is currently a Fourth Circuit decision that is being appealed to the, the United States Supreme Court, dealing with, um, guidance relating to transgender students. Um, as we are in the Fourth Circuit, we are bound at least at this point, by |

| | | |
|---|---|---|
| | | that guidance. The department has not put out any specific guidance, but it will just be mindful of, of the courts' um, direction in that regard. And should that change, we'll appropriately revise and advise the counties appropriately. |
| Del. Thompson: | 00:21:39 | If this bill is passed and we later learn, I don't know, whether the outcome of that court decision may or may not be, could this bill then potentially be in violation of that? |
| Sarah Stewart: | 00:21:47 | I don't want to speculate on what the US Supreme Court would take. |
| Del. Thompson: | 00:21:54 | Right. But not speculation, but is it a possibility that this bill would be in violation? |
| Sarah Stewart: | 00:21:59 | It, it could be. |
| Del. Thompson: | 00:22:00 | Okay. Has, has your office received, um, calls, concerns, complaints regarding anything remotely related to this about students participating in, in sports or extracurricular activities that you know, that they're . . .? |
| Sarah Stewart: | 00:22:17 | Surrounding the conversation today, no, we have not. |
| Del. Thompson: | 00:22:20 | Okay. Um, that's all I have for you Sarah. Thank you. I appreciate it. |
| Chairman Ellington: | 00:22:28 | Gentleman, from the 16th. |
| Del. Hornbuckle: | 00:22:33 | Thank you Mr. Chair. Um, and thank you for being here today. Uh, giving your legal expertise, um, would the WVSSAC have the ability, uh, uh, to set a guideline concerning transgender participation in sports on their own? |
| Sarah Stewart: | 00:22:50 | I do not want to speak for whether or not the WVSSAC— I'm not um, comfortable talking to their authorizing statute and where, where their rulemaking ability lies and ends. Potentially they could, but I think it's a better question addressed to them. |
| Del. Hornbuckle: | 00:23:04 | And are they here today? Oh, I guess not. Oh, thank you. |
| Chairman Ellington: | 00:23:11 | I have a copy of the uh, SSA, WVSSAC um, physical exam certificate, um, Delegate from the 41st asked that it be submitted as a, as an addendum. So, if anyone wants to look at it, they can afterwards. Lady from the 51st. |
| Del. Walker: | 00:23:33 | Thank you Mr. Chairman. Thank you, Sarah for being in here. So we just heard that . . . So, I have a question. When there's a transgender student that is entering K-12 public education, do |

| | | |
|---|---|---|
| | | you require besides when that student first entered school, a birth certificate and that student is going through transition, do they need to report anything to the school system? |
| Sarah Stewart: | 00:24:00 | No. |
| Del. Walker: | 00:24:03 | Would that WVEIS, will WVEIS change the identification of the child, once they start their transition, if that child and parent wanted that to be changed? |
| Sarah Stewart: | 00:24:13 | I do not believe at the state level that we have any hard rules or regulations regarding, um, if a, a transgender student wishes to change their designation in WVEIS. Um, I believe counties perhaps have encountered this and have handled it on the local level, um, and appropriately we have not received any complaints at our office regarding that. |
| Del. Walker: | 00:24:40 | Okay. Thank you very much. |
| Chairman Ellington: | 00:24:42 | Further questions? Gentleman from the 65th? |
| Del. Clark: | 00:24:49 | Yes. I've got a current question in regards to, um, we're hearing a lot of talk about, uh, uh, a child born as a female and is transitioning to a male. |

PART 1 OF 4 ENDS [00:25:04]

| | | |
|---|---|---|
| Del. Clark: | 00:25:01 | In high school, on the Board of Education, is, is it a suspendable offense for taking performance enhancing drugs? |
| Sarah Stewart: | 00:25:15 | Counties do have, um, illegal or controlled substance and illegal substance abuse policies. Um, I think it should be, I rel- I hesitate to speculate and make a broad statement. If you are taking something under the supervision of a physician, um, I, I, I'm not sure. Um, there would have to be a conversation between the county board and the parents about whether or not it was appropriate. But I'm hesitant to say that a, a student that is taking something that's prescribed by a physician could then be disciplined on the school level for that. |
| Del. Clark: | 00:25:47 | Okay. Um, I reserve my right to ask the same question later. |
| Chairman Ellington: | 00:25:52 | Okay. Further questions of, uh, Ms. Stewart? None. Thank you, Ms. Stewart. Further questions of Counsel? Other questions? Any amendments? Lady from the 51st, uh, questions or amendment? |
| Del. Walker: | 00:26:13 | Question. |

| | | |
|---|---|---|
| Chairman Ellington: | 00:26:14 | Okay. Of who? Counsel? |
| Del. Walker: | 00:26:15 | Yeah. Can we get, um- |
| Chairman Ellington: | 00:26:19 | Speak into your mic, please. I can't hear you. |
| Del. Walker: | 00:26:21 | Can we get someone from, uh, Fairness West Virginia? I have some questions for you. Thank you. |
| Chairman Ellington: | 00:26:27 | By leave of the committee. Would you state your name and title, sir? I know you've already been sworn in. |
| Andrew Schneider: | 00:26:34 | Thank you. Um, my name is Andrew Schneider, and I'm the Executive Direction of Fairness West Virginia. |
| Chairman Ellington: | 00:26:40 | All right Mr. Schneider. Lady from the 51st has a question. |
| Del. Walker: | 00:26:43 | Thank you, Chairman Ellington. Thank you, Andrew, for being here. |
| Andrew Schneider: | 00:26:45 | Thank you. |
| Del. Walker: | 00:26:46 | Can you tell me if any trans women have dominated any sporting events? |
| Andrew Schneider: | 00:26:53 | Not one athlete who has transitioned has been successful at the highest levels of sport. The lack of success is a strong indication of the fairness of permitting transgender women to compete against cisgender women. In fact, the problem with these bills is that they, they say that all bills, all boys are stronger than all girls. And that is just incorrect. |
| | | Uh, the, look at a young woman from North Carolina named Heaven Fitch, who won the high school state wrestling championship last year. I bring this story up because Heaven is a ci- is a cisgender girl, and yet she beat a bunch of cisgender boys. Young girls have many skills that are better than young boys. |
| | | What counts as an advantage may shift dramatically depending on the sport. For example, factors such as height, weight, and reaction time all affect a participant's advantage depending on the sport. |
| | | A young woman on the volleyball team may be very tall, and yet few people would consider that to be an unfair competitive advantage in her sport. Similarly, a man on the swimming team may have a naturally high hemoglobin count, enabling him to |

|  |  |  |
|---|---|---|
|  |  | take in more oxygen, but he would not be barred from swimming for that reason. |
|  |  | Some cisgender women, like Olymp- Olympic athlete Caster Semenya, naturally produce high levels of testosterone compared to other cisgender women. All bodies are different, and there is no single physical trait that determines if a student will excel in a sport. |
| Del. Walker: | 00:28:27 | Do you know if this has ever occurred in West Virginia? Have you received any calls from anyone in assistance with? |
| Andrew Schneider: | 00:28:38 | We have not. This appears to be a, a solution in search of a problem. Uh, there is no, uh, as I said before, there is no, uh, pattern or examples of, uh, transgender women dominating school sports in West Virginia. |
| Del. Walker: | 00:28:59 | Do you know how many, um, transgender persons that we have playing any sports in West Virginia, K through 12? Or secondary sports, sorry. |
| Andrew Schneider: | 00:29:11 | I, I'm not aware of, that, that data, that number. Um, and I don't know who would, or if that, that kind of statistic is even kept, um, by our secondary schools. Um, but I would imagine there's not many, and clearly it's not an issue, because we, no one has received any complaints about it. I mean, these, these bills come from national organizations that- |
| Chairman Ellington: | 00:29:39 | Um, limit to the question please. |
| Andrew Schneider: | 00:29:41 | Okay, sorry. |
| Del. Walker: | 00:29:41 | Thank you. |
| Chairman Ellington: | 00:29:42 | I, I told you beforehand, we're not going into a prepared speech. |
| Andrew Schneider: | 00:29:45 | Okay. |
| Del. Walker: | 00:29:47 | Thank you, Mr. Schneider. |
| Andrew Schneider: | 00:29:47 | Thank you. |
| Chairman Ellington: | 00:29:49 | Further questions [inaudible 00:29:50]? Gentleman from the 16th? |
| Del. Hornbuckle: | 00:29:53 | Thank you, Chairman Ellington. At the appropriate time, I'd like to ask somebody from the civil liberties group. |

| | | |
|---|---|---|
| Chairman Ellington: | 00:29:59 | Any further questions for Mr. Schneider? All right. Mr. Baumwell, you, uh, have been sworn in. If you would name your name and title. |
| Eli Baumwell: | 00:30:13 | Uh, thank you, Chairman Ellington. My name is Eli Baumwell and I'm the policy director for the American Civil Liberties Union of West Virginia. |
| Chairman Ellington: | 00:30:19 | All right. Gentleman from the 16th has a question. Question? Gentleman from the, uh, 16th? |
| Del. Hornbuckle: | 00:30:29 | Thank you, Mr. Chair. Um, and thank you for being here today, sir. Uh, I got a couple of questions for you. We'll try to be brief. Uh, how will this, uh, affect the state's obligations under Title IX? |
| Eli Baumwell: | 00:30:39 | Uh, Delegate, I do believe, looking at this legislation, it does risk, um, a significant amount of federal funding under Title IX. Um, looking at federal courts, um, as I've looked at some of this legislation, Idaho was enjoined from this, and as Counsel mentioned, um, here in the Fourth Circuit, following the Bo- Bostock ruling, um, we have, we have got Fourth Circuit ruling saying that transgender individuals have to, have to be given, um, access to space based on their gender identity. That's Bo- coming from Bostock.<br><br>There's also now federal executive orders, um, following from those, those ruling in in alignment, rather, with those. Um, so we do risk violating Title IX based on these federal court rulings. |
| Del. Hornbuckle: | 00:31:25 | Uh, when you speak about violations, uh, per any civil law, are there any privacy concerns here with students? |
| Eli Baumwell: | 00:31:32 | There are potential privacy concerns. While students, um, may have to go under, undergo medical examinations to clear them for sports, um, having to disclose, um, whether it be their birth sex or any, uh, gender affirming therapy they might be undergoing is a violation of their potential, is a potentially violation of their privacy. |
| Del. Hornbuckle: | 00:31:48 | Okay. Uh, uh, legally could this have a negative impact on any other students? |
| Eli Baumwell: | 00:31:55 | This particular legislation is tailored solely to, um, athletics. Uh, looking at this particular, um, bill that just originated. Um, other, other pieces of legislation have been more broad, but this one is limited just to athletics. |

| | | |
|---|---|---|
| Del. Hornbuckle: | 00:32:11 | Uh, has there been any case law on, uh, deni- denial of participation leading to any type of, uh, mental health issues with transgender youth? |
| Eli Baumwell: | 00:32:21 | Well, absolutely. There, there's been a lot of, um, research rather. I, I shouldn't say there's case law. But there is a lot of research into, um, the, the mental health of trans youth and what can be done to protect their mental health. And being treated, um, based by their gen- gender identity and being an op- given an opportunity to, um, participate in sports and participate in social activities has certainly been linked with better, uh, mental health outcomes, both in the short and long term. |
| Del. Hornbuckle: | 00:32:53 | All right. Thank you. |
| Chairman Ellington: | 00:32:55 | Further questions for Mr. Baumwell? None? Thank you, sir. |
| Eli Baumwell: | 00:33:01 | Thank you. |
| Chairman Ellington: | 00:33:01 | Further questions of any of the other witnesses? Gentleman from the 65th, who are you? |
| Del. Clark: | 00:33:06 | Do we have anybody from the, uh, West Virginia SSAC here? |
| Chairman Ellington: | 00:33:09 | Uh, unfortunately, they are over on our Senate colleagues' side, uh, working on a bill that's over there at the moment. |
| Del. Clark: | 00:33:15 | Okay. |
| Chairman Ellington: | 00:33:17 | Further questions? Any further questions of Counsel? Chair hears none. Any amendments? None? Chair recognized Vice Chair for motion. |
| Vice Chair: | 00:33:29 | Mr. Chairman, I move that originating House Bill relating to participation in single-sex secondary school winter scholastic athletic events be reported to the floor, with the recommendation that it do pass. |
| Chairman Ellington: | 00:33:42 | Gentleman uh, moved that, uh, House Bill originating on participation in single-sex secondary school ath- interco- interscholastic athletic events be reported to the floor with a recommendation it do pass. Is there any questions or discussion? Gentleman from the 43rd. |
| Del. Thompson: | 00:34:00 | I, I have a . . . Thank you, Chairman Ellington. I have a question. Would it be possible to, uh, lay this over until we could speak to someone from the, the SSAC? To like, actually hear from how that, s- since that is their, kind of, you know, what they kind of control and govern, since that would affect them? |

Page 16 of 19

| | | |
|---|---|---|
| Chairman Ellington: | 00:34:19 | Are you moving to lay it over? |
| Del. Thompson: | 00:34:21 | Yes. |
| Chairman Ellington: | 00:34:22 | If you move to lay it over, then I guess- |
| Del. Thompson: | 00:34:23 | Just one day. Or the next meeting. |
| Chairman Ellington: | 00:34:25 | Well, we don't have one day. (laughs) Um. |
| Del. Thompson: | 00:34:29 | We don't have one day? |
| Chairman Ellington: | 00:34:30 | Well, we don't have a meeting tomorrow. |
| Del. Thompson: | 00:34:32 | Oh, it's Wednesday. Thursday. |
| Chairman Ellington: | 00:34:37 | Gentleman moves that we lay this over. That takes a vote and it's non-debatable. So all in favor would say aye. |
| Del. Thompson: | 00:34:43 | Aye. |
| Chairman Ellington: | 00:34:44 | Those opposed, nay. I would say nays have a- |
| Del. Thompson: | 00:34:49 | Division? |
| Chairman Ellington: | 00:34:50 | Well, he had the s- he had the, uh, microphone, so [inaudible 00:34:53]. (laughs) |
| Del. Thompson: | 00:34:56 | Thank you. That worked. (laughs) |
| Chairman Ellington: | 00:34:58 | I could have used my microphone, too. So motion r- |
| Del. Thompson: | 00:35:02 | I did call division, though. |
| Chairman Ellington: | 00:35:03 | Motion, uh, rejected. |
| Del. Thompson: | 00:35:05 | Could I call div- I called division. |
| Chairman Ellington: | 00:35:07 | I think I had already called it, but. Well, okay, we'll call division. Is it sustained? All right, we have it sustained. The clerk will call, call the vote on that. So, if you vote yay, that means we lay it over. If you, uh, vote nay, that means it is rejected. All right.<br><br>Well, those that are in favor of the Gentleman's, uh, motion to lay it over, raise your hands. That's six. Yeah. There's six. |

Page 17 of 19

|  |  |  |
|---|---|---|
|  |  | All right. Those, uh, those opposed to the Gentleman's motion, raise your hands. All right, six to thirteen. All right, motion rejected. |
|  |  | Any further amendments? Or actually, we're on discussion. Gentleman from the, uh, 60-uh-7th? |
| Del. Doyle: | 00:36:27 | Uh, uh, thank you, Chairman Ellington. Um, I oppose the bill for, for, for two reasons. First, uh, in our questions of Counsel, uh, I think it became pretty obvious that, uh, we're on rather dangerous legal ground r- uh, relating to the feds if we pass this bill a- as it is written. So that is one. |
|  |  | A- also, uh, uh, the one, uh, person who testified, the gentleman from Fairness, mentioned, uh, something that I had heard before, as one of the arguments in favor of this, and that is that males are inherently stronger than females. And I, I just have a, a vignette I'd like to, uh, to go over. I've remembered this ever, ever since it happened. |
|  |  | When I was a, a rifle platoon leader in Vietnam, I had a guy in my platoon that weighed barely 100 pounds. He had no upper body strength whatsoever. And the rules were, we have two, what are called, uh, uh, uh, heavy machine guns there, uh, uh, uh, 7.62 machine guns, it's roughly a 30 caliber for those people who are not into metrics. And you had to carry that and 200 rounds of ammunition, and he couldn't carry it. |
|  |  | So, whenever it was his turn, somebody else just volunteered. I am a big time women's college basketball fan, and I'm telling you, every time I see a game, there are people out there playing that could have easily carried that machine gun and 200 rounds of ammunition. |
|  |  | So that's why, uh, I think is p- another part of the reason I think this is a bad bill, and I'm going vote no. Thanks. |
| Chairman Ellington: | 00:38:06 | Anyone else wish to speak? Gentleman from the 43rd? |
| Del. Thompson: | 00:38:11 | Thank you, Chairman Ellington. I also want to speak a- against this bill for a multitude of reasons. First, because, I mean, I would like to hear from the SSAC of how this would, you know, uh, impact their rules and impact and see, have a better understanding of how this would be implemented. |
|  |  | I'm also going speak against it for the reason, and I ask what I asked Counsel, pertaining to, if I have a daughter, and she's playing basketball, and she's on a basketball team, and with this bill, um, a person who was born female, identified as male, was taking testosterone, is transitioning, is going to be on the same |

|  |  | team as my daughter, outperforming her, because my daughter is not taking testosterone, this is not, this is not going to be fair to the children of West Virginia. |
|---|---|---|

I under, were there, whatever side you fall on this, it's not, that's not fair. Uh, and also, I have a major problem, and as the, the Lady from the 41st mentioned about the, the sports physicals, I played basketball and baseball through middle and high school, and um, I, I had to do a physical every year, but I never once, uh, was subjected to, I guess I could've been, to the, the hernia check. So, I have a major problem with forcing children, middle school children or high school children, uh, to, for this purpose, to specifically . . . If it's for a medical reason, I totally understand it and get it, but just to par- just to prove their gender, I don't think that's right. And I don't think any of us would want our children subjected to that.

Uh, so for those reasons, I, uh, strongly, uh, do not support this bill, and I urge you all to do the same. Thank you.

| Chairman Ellington: | 00:39:55 | Anyone else wishing to speak to the bill? Lady from the 41st. |
|---|---|---|
| Del. Tully: | 00:39:58 | I'm just want to give a point of clarification, actually, on the addendum, the thing that I provided from the WVSSAC that was the addendum. It was revised in May of 2016, so I don't know when the hernia checks, uh, first originated, but I don't . . . You probably graduated well after 2016, I would assume, sir. |
| Chairman Ellington: | 00:40:22 | Anyone else wishing to speak to the bill? All right, before us is the motion. All those in favor would say aye. Those opposed, nay. Gentleman from the 53rd? |

The Chair is undecided, so uh, let's do that again. All those in favor say aye. Those opposed, nay. (laughs) Got a loud group there. Okay. Division has been called. Yeah, I'm still undecided on that.

So, division. All those in favor, raise your hands. [inaudible 00:41:18] Those opposed, raise your hands. Fifteen, six? Fifteen to six. Motion adopted.

Next thing on the agenda is House Bill 2364. Any interest in the bill?