## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

**B. P. J., by her next friend and mother,**
**HEATHER JACKSON,**

      **Plaintiff,**

**v.**

**WEST VIRGINIA STATE BOARD OF**
**EDUCATION, HARRISON COUNTY**
**BOARD OF EDUCATION, WEST VIRGINIA**
**SECONDARY SCHOOL ACTIVITIES**
**COMMISSION, W. CLAYTON BURCH, in**
**his official Capacity as State Superintendent,**
**DORA STUTLER, in her official capacity as**
**Harrison County Superintendent, and THE**
**STATE OF WEST VIRGINIA,**

      **Defendants.**

**and LAINEY ARMISTEAD,**

      **Intervenor Defendant.**

**CIVIL ACTION NO. 2:21-cv-00316**
**Judge Joseph R. Goodwin**

### Response to Plaintiff's Statement of Undisputed Material Facts

Now comes Defendant State of West Virginia (the "State"), who in response to Plaintiff's

Statement of Undisputed Material Facts (ECF No. 290) ("Plaintiff's SUF"), states the following:

1. The State objects to Plaintiff's SUF because it was not contemplated as a permissible

filing in conjunction with dispositive motions.  The Court allowed the Plaintiff to file a combined

Brief in Support to its Motion for Summary Judgment with a page limit of 60 pages.  Order, ECF

No. 275.  Plaintiff's Brief in Support of its Motion for Summary Judgment ("Pl. Brief," ECF No.

291) is 37 pages and the Plaintiff's SUF is 25 pages.  Combined this exceeds the permitted page

length.

2. The State objects to the characterization of the 137 itemized "facts" as undisputed

because the State has not agreed to them.

1

3.  The State does not stipulate to or agree with the 137 itemized "facts," does not concede that they are undisputed, and does not waive the right to contest them at any stage of this litigation, including at the dispositive motion stage, trial, or appeal.

4.  The Federal Rules of Civil Procedure do not anticipate such a document and such a document cannot function as either a request for admissions or as a pleading requiring an admission or denial.  Further, the State reserves the right to object to testimony on any statements in the Plaintiff's SUF at any hearing or trial.

5.  The State generally objects to and disputes the Plaintiff's use of certain terminology, such as "girl who is transgender" and "sex assigned at birth" as scientifically inaccurate and/or potentially confusing.

6.  Stipulations between other Defendants and the Plaintiff are not binding on the State and admissions by other Defendants are not binding on the State.

7.  The State incorporates by reference hereat its Motion for Summary Judgment and Memoranda in support thereof (ECF Nos. 285 and 287), as well as other briefs or memoranda filed with the court concurrently herewith or hereafter.

8.  Plaintiff's SUF relies extensively throughout on the Expert Reports, Declarations or deposition testimony of Joshua Safer, Deana Adkins, Mary Fry, and Aron Janssen.  The State is filing *Daubert* motions challenging these experts.  Accordingly, the State disputes any facts which rely on those experts.

9.  Plaintiff improperly includes in a "Statement of Undisputed Facts" subtitles and narratives that are argumentative and not statements of facts.  Herein the State uses subtitles or headings that reflect the State's view of the facts of the case.

10.  Many of the "undisputed facts" are arguments, not facts.

11. The State specifically disputes the statements as set forth below but does not waive or agree to any other "facts" not specifically disputed:

**I.      B.P.J. Is A Biological Male Who Identifies As A Female.**

a)   ¶ 1– Contested.  B.P.J. is a biological boy (Heather Jackson Dep. at 98:14-99:3, ECF No. 285-2) with XY chromosomes and reproductive anatomy typical of the male sex who identifies as a girl.  Intervenor's Appx at 1440-41 (B.P.J Responses to Intervenor's RFA 1, 3, 4), ECF No. 286-1.

b)   ¶ 2 – Contested.  This is irrelevant and not material.

c)   ¶ 3 – Contested. Social transition is not a passive measure by which a child is "allowed" to live and be recognized in accordance with a gender identity different from the child's natal sex.  Rather, social transition is "the active affirmation of transgender identity" which is "a powerful psychotherapeutic intervention."  *See* Levine Decl. at pp. 6-7, attached as Ex. D to the State's Memorandum in Opposition to the Pl. Brief ("State's Memo. in Op."), filed concurrently herewith.  The World Professional Association for Transgender Health (WPATH) does not take a position on whether social transition is appropriate for pre-pubertal children and calls it a "controversial" measure.  *Id.* at p. 24).

d)   ¶ 13 – Contested.  Heather Jackson has no qualifications to opine as to the Endocrine Society's clinical guidelines.  The State does not concede that the administration of puberty blockers at Tanner Stage 2 is appropriate.  Expert opinion to the contrary has been presented here (e.g., Levine Decl. at ¶¶ 78-89, Ex. D to State's Memo. in Opp.), and the issues with Plaintiff's experts' opinions concerning the administration of puberty blockers are addressed in the State's *Daubert* motions.

e)   ¶¶ 13 through 18 – Contested.  The specifics of Plaintiff's puberty suppressing treatment or potential future treatment are not material.  As set forth in the State's Memo. in Op.,

the permissibility of the Save Women's Sports Act does not turn on Plaintiff's individual

characteristics, as that is not how intermediate scrutiny works.  Thus, the facts

surrounding Plaintiff's use of puberty suppressing medication are not relevant or material

to the pending dispositive motions.  Further, uncontested studies show significant

differences in prepubescent boys and girls, both in athletic performance and pre-pubertal

testosterone.  Actual data show that pre-pubertal biological boys consistently outperform

girls in jumping, running, and upper body strength events.  Brown Decl. at ¶¶ 71-109,

ECF No. 285-7.  At 0-5 months males' testosterone levels exceed female levels by as

much as 500 percent.  *Id.* at ¶ 68 (citing Mayo Clinic Laboratories).

f)  ¶ 18 – Contested.  This paragraph does not contain statements of fact.  Rather, it contains

statements of what Plaintiff thinks will happen *if* Plaintiff receives cross-sex hormone

therapy sometime in the future.  This is speculative, not factual, and therefore is not

material.  Further, the Plaintiff's experts' opinions concerning the effects of cross-sex

hormones are subject to the State's *Daubert* motions, and the State is proffering expert

testimony to the contrary.

## II.     B.P.J. Wishes To Participate In And Experience The Benefits Of School Sports Only By Being On Girls Sports Teams Rather Than Boys Teams.

g)  ¶¶ 19 through 22 – Contested.  These statements concerning Plaintiff's individual

characteristics and circumstances are not relevant to the issues in this case and therefore

are not "material."

h)  ¶¶ 22 through 28 – Contested.  These paragraphs refer to and rely on the proffered expert

testimony of Professor Mary Fry, who is subject to a *Daubert* motion being filed

contemporaneously herewith.  They are also immaterial and unreliable for the reasons set

forth in the State's *Daubert* motion.

i)   ¶¶ 29 and 30 – Contested.  Plaintiff's individual characteristics are not material as set forth in the State's Summary Judgment briefing.

### III.    Prior To H.B. 3293, West Virginia Had A Policy Of Sex Separation In School Sports And Did Not Resolve The Potential For Students Seeking To Participate On Teams Other Than Those Matching Their Natal Sex.

j)   ¶ 36 – Contested.  None of the policies or rules cited by Plaintiff reference "cisgender" boys.  They merely reflect that members of the male sex have long been prohibited from playing on women's sports teams in West Virginia.

k)   ¶ 38 – Contested.  This is contradicted by ¶¶ 31 and 36.  The policy referenced in ¶ 31 anticipated the separation of boys and girls into their own sex-segregated teams, as stated in ¶ 36.  *See also Gregor v. W.V. Secondary Sch. Activities Comm'n*, No 2:20-cv-00654, 2020 WL 5997057, at *3 (S.D.W. Va. Oct. 9, 2020).

l)   ¶ 39 – Contested.  The referenced "policy" was not formalized and was not adopted by the SSAC.  Dolan Dep. at 124:12-25, ECF No. 285-1.  Rather, when officials learned that males who identified as female competing in women's sports was becoming "an issue," *Id.* at 118:18-20, they proposed a "temporary stopgap measure" to ensure safety and fairness for students, but that proposal never became an official rule, nor was it ever used or enforced.  *Id.* at 117:12-14; 118:8-9; 119:10-11; 124:12-18; 233:14-15.

m)  ¶ 40 – Contested.  There is evidence in the record of male students in West Virginia seeking to participate on girls' teams.  *See Id.* at 120-21.

n)   ¶ 41 – Contested.  As the 2011 NCAA policy is no longer current, and it is not the case that the NCAA has a blanket policy allowing males who identify as transgender to participate in women's sports after one year of testosterone suppression.  Brown Decl. at ¶ 176, ECF No. 285-7.

**IV.      H.B. 3293 Provides For Student Athletes Participating On School Sports Teams According To The Students Sex.**

o)  ¶ 44 – Contested.  H.B. 3293 is not a ban and it does not contain the word "transgender"; it provides: "Athletic teams or sports designated for females, women, or girls shall not be open to students of the male sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport."  WV Code §18-2-25d. It allows biological males, regardless of gender identity, to participate on any male or co-ed teams, and it does not prohibit their participation on female teams unless "selection for such teams is based upon competitive skill or the activity involved is a contact sport."  *Id.*

p)  ¶ 49 – Contested.  H.B. 3293 does not categorically exclude anyone from participating in sports. Plaintiff is a biological male as defined by H.B. 3293 and can therefore play on any team designated for males or designated co-ed.  Further, H.B. 3293 does not prohibit Plaintiff's participation on female teams unless "selection for such teams is based upon competitive skill or the activity involved is a contact sport."  *Id.* Further, H.B.3293 uses categories consistent with those used by the National Institute of Health.[1]  The term "transgender girl" was used for convenience in the Fry deposition after Professor Fry could not understand the terms "biological sex," "biological male," or "cisgender."  Fry defined "transgender" as "someone who may have been classified at birth as one gender but identifies as another."  Fry Dep. at 32:16-41:13, Ex. E to the State's Memo. in Op.

q)  ¶ 50 – Contested.  H.B.3293 does not use the word "cisgender," nor does it make any classifications based on whether a person is "cisgender."  It makes classifications based

---

[1] NAT'L INSTS. OF HEALTH, OFF. OF RSCH. ON WOMEN'S HEALTH, HOW SEX AND GENDER INFLUENCE HEALTH AND DISEASE, https://orwh.od.nih.gov/sites/orwh/files/docs/SexGenderInfographic_11x17_508.pdf (last visited May 11, 2022).

on biological sex.  Thus, H.B.3293 does not prohibit any biological female, regardless of gender identity, from joining a female athletic team.

r)  ¶¶ 51 and 53 – Contested.  Melissa White's hearsay statements are not legislative history and not considered admissible "facts."  *See* State's Memo. in Opp. at 19-21.

s)  ¶¶ 54 through 57 – Contested.  Statements by individual legislators are not admissible as "facts."  *Id*.

t)  ¶ 58 – Contested.  This is not fact—it is argumentative.  H.B. 3293's preamble and the findings speak for themselves.  They also reference "contact sports" and use language very similar to Title IX in explaining the purpose of the law.

u)  ¶ 59 – Contested.  This is not fact—it is argumentative.  What Plaintiff is calling "additional rationalizations" were already implicit or explicit in the bill.  *See* State's Memo. in Opp. at 16-18.

v)  ¶¶ 60 through 62 – Contested.  Plaintiff cherry-picks statements made by the Governor and during various legislative hearings, which are not material in isolation.

w)  ¶¶ 63 through 66 and 68 – Contested.  There were issues with the potential for males who identify as females to try to participate in women's sports in West Virginia. West Virginia officials were aware that this was an issue based on national trends and other information.  *See* ECF 287 at 1-5.

x)  ¶¶ 67 and 69 – Contested.  The West Virginia Department of Education's political position on H.B. 3293 is not a "fact" which is material or relevant to whether the law is a permissible exercise of state authority.

**V.      H.B. 3293's Reliance On "Biological Sex" Is Based On Long, Easily, and Well-Understood Identifiers Demarcating Males and Females And Is Consistent With The History and Policy Of Sex Separation In School Sports In The State.**

y)  ¶ 71 – Contested.  The contention that H.B. 3293's definition of "biological sex" is scientifically inappropriate is wrong for the reasons set forth in the State's Memo. in Op., the *Daubert* motions concerning the opinions of Drs. Adkins and Safer, and the expert opinions proffered by the State.

z)  ¶ 72 – Contested.  "[T]here is substantial evidence that the "biological basis" theory is incorrect[.]"  Levine Decl. at ¶ 97, and *generally* at ¶¶ 92-105, Ex. D. to the State's Memo. in Op.  This is further addressed in the *Daubert* motion concerning the opinions of Dr. Janssen.

aa) ¶ 73 – Contested.  This is argumentative, not a fact, and does not cite any facts.  H.B. 3293 is not a "stark departure from the prior policy in West Virginia," as West Virginia has a long history of sports separation by biological sex as set forth above and in the State's Memo. in Op.  Also, the statement that separation by biological sex "is not the rule used by elite sporting organizations" is unsupported and does not define or specify any "elite sporting organizations."

bb) ¶ 74 – Contested.  The NCAA recently abandoned its former policy allowing males to compete in women's sports after a year of suppressing testosterone and instead adopted a sport-by-sport approach that defers to the policy of the national governing body for that sport.  Brown Decl. at ¶ 176, ECF No. 285-7.  It is therefore incorrect to state that they permit participation provided a certain level or duration of testosterone suppression, as not every sports-governing body grants such permission.  World Rugby, for example, does not allow such participation despite testosterone suppression.  *Id.* at ¶ 171.

cc) ¶¶ 75 through 84 – Contested.  Sports organization's policies are not determinative of whether the Sports Act is a permissible exercise of state authority.

dd) ¶ 85 – Contested.  Dr. Safer's opinions are subject to a *Daubert* motion, and Plaintiff's

    statement is contradicted by the actual data.  *See supra* at (f).  *See also* Brown expert

    report, ECF 285-7 (detailing performance differences between biological males and

    biological females).

ee) ¶¶ 86 through 88 – Contested.  The use of the word "may" is speculative and not a fact

    and not permissible for expert testimony.  Further, as set forth more fully in the Summary

    Judgment briefing and the *Daubert* motions concerning Drs. Adkins and Safer, disorders

    of sexual development like CAIS are not material to this case.

ff) ¶ 89 – Contested.  Dr. Gregory Brown shows that circulating testosterone is not the only

    biological cause of differences in athletic performance between males and females.  *See*

    Brown Expert Report, ECF 285-7.

gg) ¶90 - Contested.  The Handelsman study in fact shows competitively significant male

    advantages over females before puberty.  *See* Safer Dep. at 89:6-90:24; 94:18-95:3; 95:6-

    11; 103:4-10, ECF No. 285-6;  *see also* Brown Decl. at ¶¶ 68, 71-109, ECF No. 285-7

    (performance data of prepubescent children shows the same male advantages over

    females before puberty).  Further, Dr. Safer's opinions are subject to a *Daubert* motion

    and are clearly disputed.

hh) ¶ 91 – Contested.  Dr. Brown provided evidence that there is a biological component to

    the performance differences between pre-pubertal males and females and copious data

    that such differences are often decisive in head-to-head competition.  *See* State's Memo.

    in Supp. of MSJ at 14-15, ECF No. 287, and Brown Decl. at ¶¶ 68-109, ECF No. 285-7.

**VI.**    **Plaintiff Argues that H.B. 3293 Harms B.P.J.**

ii)  ¶¶ 96 through 104 – Contested.  These are arguments, not facts.  Moreover, as noted above and in the State's Memo. in Op. and ECF 287, Plaintiff's individual characteristics are not relevant or material to whether H.B. 3293 is a permissible exercise of state authority.

**VII.    B.P.J.'s Lawsuit Challenges Being Excluded from Female Sports Teams and Limited to Male Sports Teams Under H.B. 3293.**

**VIII.   This Court's Preliminary Injunction Allowed B.P.J. To Participate On The Bridgeport Middle School's Cross Country And Track Teams, Resulting In B.P.J Beating Biological Female Athletes, Displacing Them From Higher Finishing Spots.**

jj)  ¶¶ 120 through 130 – Contested.  Plaintiff's individual characteristics, including the specifics of Plaintiff's participation in girls' sports, are not material or relevant to whether H.B. 3293 is a permissible exercise of state authority, as set forth more fully in the State's summary judgment briefing.

kk) ¶ 122 – Contested.   B.P.J. displaced 9 participants in the Mountain Hollar Invitational, some of whom were biological females.

ll)  ¶ 123 – Contested.  B.P.J. displaced 27 participants in the Doddridge Invitational, some of whom were biological females.  B.P.J. also displaced teammates in the October 1, 2021, Ritchie County meet.  Stutler Dep. at 183-184, Ex. F to the State's Memo. in Op.

mm)        ¶ 129 through 130 – Contested.  The Intervenor, as a college student, has no reason to have a developed opinion on middle schoolers.

nn) ¶ 131 – Contested.  This is a misstatement of Dr. Carlson's testimony, as Dr. Carlson noted that sports organizations do not track participation by males who identify as females so as to create reportable statistics on injury rates.  *See, e.g.*, Carlson Dep. at 124:25-125:4; 155:11-156:16, ECF No. 285-5.

oo) ¶¶ 132-34 – Contested.  This is argumentative, not a fact, and if use of proper safety equipment addressed all safety concerns, then there would be no reason to make other

10

types of segregations in sports, such as segregating middle schoolers from high schoolers

in contact sports.  Dr. Carlson's report details the categorical differences between

biological males and biological females and how those differences affect the safety of

biological males playing female sports.  *Id.* at ¶¶ 42-97.  And Dr. Carlson testified that

those risks cannot be eliminated through rule changes without changing the essence of

the sport.  *Id.* at 134:8-16.  Dr. Safer also admitted that allowing someone who has gone

through male puberty to play women's contact sports created a safety concern.  Safer

Dep. at 168:12-170:16, ECF No. 285-6.

pp) ¶ 135 – Contested.  The safety concerns attendant to men who identify as women playing

women's contact sports are matters to be addressed by experts, not by Lainey Armistead,

a college student, and have been addressed by Respondent's expert, Dr. Chad Carlson.

*See*, *generally*, Carlson Decl., ECF No. 285-5.

<div style="margin-left: 40%;">

Respectfully submitted,

PATRICK MORRISEY
  *West Virginia Attorney General*

/s/ *Curtis R. A. Capehart*
Douglas P. Buffington II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Curtis R.A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
David C. Tryon (WV Bar #14145)
  *Deputy Solicitor General*
OFFICE OF THE WEST VIRGINIA ATTORNEY
GENERAL
State Capitol Complex
1900 Kanawha Blvd. E, Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email:  David.C.Tryon@wvago.gov

*Counsel for Plaintiff, STATE OF WEST VIRGINIA*

</div>

DATE: May 12, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**B. P. J., by her next friend and mother,
HEATHER JACKSON,**

  **Plaintiff,**

**v.**

**WEST VIRGINIA STATE BOARD OF
EDUCATION, HARRISON COUNTY
BOARD OF EDUCATION, WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION, W. CLAYTON BURCH, in
his official Capacity as State Superintendent,
DORA STUTLER, in her official capacity as
Harrison County Superintendent, and THE
STATE OF WEST VIRGINIA,**

  **Defendants.**

**and LAINEY ARMISTEAD,**

  **Intervenor Defendant.**

**CIVIL ACTION NO. 2:21-cv-00316
Judge Joseph R. Goodwin**

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that, on this 12th day of May 2022, I electronically filed the foregoing Response with the Clerk of Court and all parties using the CM/ECF System.

           */s/ Curtis R. A. Capehart*

           Curtis R. A. Capehart