IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>     *Plaintiff*,<br><br>   v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>     *Defendants*,<br><br>   and<br><br>LAINEY ARMISTEAD,<br><br>     *Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECONSIDER THE GRANT OF LAINEY ARMISTEAD'S PERMISSIVE INTERVENTION**

## TABLE OF CONTENTS

Page

INTRODUCTION AND BACKGROUND ................................................................................ 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT .................................................................................................................................. 4

    I.    Ms. Armistead No Longer Has A Significantly Protectable Interest At Stake And Does Not Provide A Unique Perspective. ............................................ 4

        A.    Ms. Armistead Graduated From WVSU In May 2022. ............................ 4

        B.    Ms. Armistead's Briefing Does Not Align With Her Personal Views Expressed At Her Deposition. ......................................................... 6

        C.    Reconsideration Is Warranted In Light Of These Developments. .............. 7

    II.    Ms. Armistead Significantly Burdened The Discovery Process And Keeping Her In This Case Will Continue To Add Undue Complications. ............. 8

    III.    Ms. Armistead Has Not Made Unique Arguments. ............................................. 11

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acceptance Indem. Ins. Co v. Se. Forge, Inc.*,
  209 F.R.D. 697 (M.D. Ga. 2002) ................................................................................................2

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003) .....................................................................................................2

*Carlson v. Bos. Sci. Corp.*,
  856 F.3d 320 (4th Cir. 2017) .....................................................................................................3

*City of Greensboro v. Guilford Cnty. Bd. of Elections*,
  No. 15 Civ. 559, 2015 WL 12752936 (M.D.N.C. Oct. 30, 2015) .........................................3, 4

*Grimm v. Gloucester County School Board*,
  972 F.3d 586 (4th Cir. 2020) ..............................................................................................11, 12

*Illinois v. City of Chicago*,
  No. 17 Civ. 6260, 2018 WL 3920816 (N.D. Ill. Aug. 16, 2018) ...............................................3

*Mallory v. Eyrich*,
  922 F.2d 1273 (6th Cir. 1991) ...................................................................................................2

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
  No. 9 Civ. 2502, 2012 WL 4717814 (N.D. Cal. Sept. 28, 2012) ......................................7, 8, 9

*Morgan v. McDonough*,
  726 F.2d 11 (1st Cir. 1984) .......................................................................................................2

*Penn. Higher Edu. Assistance Agency v. Hoh*,
  No. 14 Civ. 748, 2016 WL 815287 (S.D. W.Va. Feb. 29, 2016) ..............................................3

*Pinney v. Nokia, Inc.*,
  402 F.3d 430 (4th Cir. 2005) .....................................................................................................3

*State v. City of Chicago*,
  912 F.3d 979 (7th Cir. 2019) .....................................................................................................8

*Sutphin v. Ethicon, Inc.*,
  No. 14 Civ. 1379, 2020 WL 5269409 (S.D. W.Va. Sept. 3, 2020) ...........................................3

*United States v. First Trust & Sav. Bank, Clarksville, Tenn.*,
  No. 77 Civ. 3296, 1977 WL 1265 (M.D. Tenn. Aug. 29, 1977) ...............................................8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Other Authorities**

Federal Rule of Civil Procedure
    54(b) ................................................................................................................................ 2, 3, 7
    59(e) ............................................................................................................................................ 3

**INTRODUCTION AND BACKGROUND**

Lainey Armistead's status as Defendant-Intervenor in this case is no longer appropriate. Ms. Armistead sought to intervene on the premise that, as a female athlete in West Virginia, she has a significant interest that could be affected by this litigation; that she would not burden or prejudice the proceedings; and that she would offer legal arguments different from those advanced by the named Defendants. (Dkt. No. 95 (Memo. ISO Mot. to Intervene).) This Court granted her motion, finding that "Ms. Armistead plans to defend H.B. 3293 as a member of the class of people for whom the law was written" and so "will add a perspective not represented by any of the current defendants"; that she "will not significantly add to the parties' discovery burdens"; and that she would make "several arguments . . . that will differ from those of the current defendants." (Dkt. No. 130 (Intervention Order) at 6.) Since the Court issued its order, however, changed circumstances have nullified the first consideration, and the realities of the case's litigation have disproved the second and third.

Critically, Ms. Armistead is no longer "a member of the class of people for whom the law was written." She graduated from West Virginia State University ("WVSU") in May 2022 and will soon move to Florida to attend law school, where she has no plans to play on a scholastic women's soccer team. (Dkt. No. 300 (Supp. Armistead Decl.) at 5 ¶¶ 5–7.) Even before this development, when she was still a West Virginia student athlete, her briefing barely made any mention of her personal perspective. In addition, Ms. Armistead's conduct during the discovery period prejudiced Plaintiff, and, despite her promise to do so, she has not offered the Court any legal arguments in support of H.B. 3293 that are not also advanced by Defendant State of West Virginia ("State").

Ms. Armistead suggests that because she "is already a party to this case," she is entitled to continue to participate in this action. (Dkt. No. 302 (Int. MSJ Opp.) at 25–26.) But intervention does not signify "absolute entitlement to continue as a party until termination of the suit." *Morgan v. McDonough*, 726 F.2d 11, 14 (1st Cir. 1984). Courts can and do revisit decisions granting intervention when circumstances change or predicted facts are not borne out. This Court should re-examine its order granting Ms. Armistead's permissive intervention and rescind her status as Defendant-Intervenor.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," and "a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). That power includes the ability to reconsider orders granting intervention. *See, e.g.*, *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("If the plaintiffs should seek reconsideration of the order granting intervention, the district court has authority to reexamine the question of intervention of right, hold whatever hearings it deems advisable, and redetermine the issue in light of its findings and conclusions.").[1]

---

[1] An order granting a motion to intervene is interlocutory in nature. *See Acceptance Indem. Ins. Co v. Se. Forge, Inc.*, 209 F.R.D. 697, 701 (M.D. Ga. 2002) (citation omitted).

The power to reconsider an interlocutory order "is committed to the discretion of the district court." *Penn. Higher Edu. Assistance Agency v. Hoh*, No. 14 Civ. 748, 2016 WL 815287, at *4 (S.D. W.Va. Feb. 29, 2016) (citing *Am. Canoe Ass'n*, 326 F.3d at 515). "[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (cleaned up); *see also Sutphin v. Ethicon, Inc.*, No. 14 Civ. 1379, 2020 WL 5269409, at *1 (S.D. W.Va. Sept. 3, 2020) (Goodwin, J.) (similar); *Pinney v. Nokia, Inc.*, 402 F.3d 430, 452 (4th Cir. 2005) (noting that "newly discovered (material) evidence" can support reconsideration). "Compared to motions to reconsider *final* judgments pursuant to Rule 59(e)[,] . . . Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson*, 856 F.3d at 325.

In the context of intervention, if an intervenor's "participation fails to produce expected benefits, causes unexpected delays or problems, unnecessarily expands the case, or otherwise interferes with or complicates resolution of the issues, the [c]ourt may re-examine its decision." *City of Greensboro v. Guilford Cnty. Bd. of Elections*, No. 15 Civ. 559, 2015 WL 12752936, at *1 n.1 (M.D.N.C. Oct. 30, 2015); *see also Illinois v. City of Chicago*, No. 17 Civ. 6260, 2018 WL 3920816, at *11 n.5 (N.D. Ill. Aug. 16, 2018) ("[I]f the assumptions about the future course of this litigation . . . should turn out to be radically incorrect, nothing in the rules or the case law . . . would prevent re-examination of the matter of intervention.").

Here, reconsideration is warranted "to account for new evidence," *Sutphin*, 2020 WL 5269409, at *1, as well as the resulting "problems" and the absence of "expected benefits" from

3

Ms. Armistead's participation, *City of Greensboro*, 2015 WL 12752936, at *1 n.1—namely, Ms. Armistead's graduation from WVSU and her imminent departure from West Virginia, the record of discovery complications created by Ms. Armistead's participation, and the fact that Ms. Armistead did not make arguments different from those of the named Defendants.

## ARGUMENT

This Court should reconsider its order granting Ms. Armistead's status as Defendant-Intervenor for three reasons: (1) Ms. Armistead's recent graduation nullifies her asserted interests and claimed added value to this case; (2) Ms. Armistead's participation in this case as Defendant-Intervenor unduly complicated discovery and her continued participation in this proceeding will further consume court and party resources; and (3) Ms. Armistead has not presented the Court with distinct arguments in defense of H.B. 3293.

### I. Ms. Armistead No Longer Has A Significantly Protectable Interest At Stake And Does Not Provide A Unique Perspective.

#### A. Ms. Armistead Graduated From WVSU In May 2022.

Ms. Armistead justified her request for intervention based on her status as a female athlete in West Virginia whose "ability to compete" would be affected by an injunction against H.B. 3293. (Dkt. No. 95 (Memo. ISO Mot. to Intervene) at 7; *see also id.* at 8 ("Armistead has a substantial legal interest in ensuring her equal opportunity to compete in collegiate athletics."); *id.* at 9 ("This litigation could eviscerate Armistead's ability to compete fairly and safely and to participate in a system designed to protect women."); *id.* at 10 ("Were the Sports Act facially invalidated, Armistead would be stripped of her legal protections under the Act.").) Consistent with those representations, this Court, in its Order allowing Ms. Armistead to permissively intervene, stated, "Ms. Armistead plans to defend H.B. 3293 as a member of the class of people for whom the law

4

was written. She will add a perspective not represented by any of the current defendants." (Dkt. No. 130 (Intervention Order) at 6.)

Facts have since changed. Ms. Armistead submitted an application to graduate from WVSU sometime before March 25, 2022 (*see* Dkt. No. 289-22 (Armistead Dep. Tr.) at 67:22-23) and graduated earlier this month (Dkt. No. 300 (Supp. Armistead Decl.) at 5 ¶ 5.) She will begin law school in Florida in August 2022. (*Id.* at 5 ¶ 6.) Ms. Armistead has no "inten[tion] to play soccer on the university's women's soccer team." (*Id.* at 5 ¶ 7.) Because she is no longer a student athlete in West Virginia, nor even an out-of-state student athlete who will compete against women's teams from West Virginia, Ms. Armistead has no protectable interest implicated by this litigation.

Ms. Armistead did not affirmatively alert Plaintiff of these facts, nor did she allow Plaintiff to discover these facts in a timely manner. She was evasive when answering questions about her graduation plans during her deposition,[2] even though she had already applied to out-of-state law

---

[2] (*See* Dkt. No. 289-22 (Armistead Dep. Tr.) at 50:23-24 ("I am not sure of my exact graduation plans yet."), 59:4-7 ("Because I am interested in possibly getting a Master's degree at [WVSU], and I still have three years of NCAA eligibility, which would mean I can continue playing in the fall."), 61:12-21 ("I'm not sure if I would be able to play soccer and do law school."), 62:17-24 ("Q. If you get into law school, are you going to try out for the team, or that's the end of soccer? . . . . THE WITNESS: I don't know."), 64:5-16 ("Q. Well, you've applied to three of them [law schools], and you're waiting to hear back, right? . . . . THE WITNESS: I want to play soccer at [WVSU]. BY [Plaintiff's counsel] MR. BARR: Q. But you couldn't do that if you were in law school; right? . . . . THE WITNESS: I could not do that if I was in law school, correct."), 66:21-25 ("Q. When do you expect that you'll know if you're going to graduate in May? . . . . THE WITNESS: I don't know. Hopefully before May."), 68:16-22 ("Q. Do you have any plans to withdraw the form you've already filed to graduate in two months? A. Filing the form doesn't automatically mean that I graduate. Q. I'm just asking if you have any plans to withdraw the form. A. I don't know what my plans are yet."), 69:1-2 ("Sitting here today, I am not sure what my future holds yet.").)

schools[3] and submitted an application to graduate from WVSU.[4] She only confirmed the facts of her graduation and plans to attend law school in Florida in a supplemental declaration accompanying her summary-judgment opposition brief (Dkt. No. 300 (Supp. Armistead Decl.) at 5 ¶¶ 5–6) following Plaintiff's identification of Ms. Armistead's graduation plans in Plaintiff's Statement of Undisputed Material Facts (Dkt. No. 290 (Pl.'s SUF) ¶ 137.)

In short, Ms. Armistead is not "a member of the class" H.B. 3293 purports to protect and will not offer that perspective to the Court. The Court should rescind her status as Defendant-Intervenor on this basis alone.

### B. Ms. Armistead's Briefing Does Not Align With Her Personal Views Expressed At Her Deposition.

Even when Ms. Armistead was a student athlete on a women's team in West Virginia, however, that personal perspective was lacking from her briefing in this case. Instead, her briefs largely focus on the views and experiences of *other* athletes. (*See, e.g.*, Dkt. No. 288 (Int. MSJ) at 1-4; Dkt. No. 302 (Int. MSJ Opp.) at 13, 20.)

The strident defense of H.B. 3293 and opposition to B.P.J.'s participation on her school's girls' cross-country and track teams advanced in Ms. Armistead's briefing also stands in stark contrast to some of the positions Ms. Armistead took in her deposition. Ms. Armistead testified in her deposition that she lacked familiarity with the basic facts of this case—she did not know that B.P.J. is a middle school student who ran on her school's girls' cross-country team (Dkt. No. 289-22 (Armistead Dep. Tr.) at 74:10-25); she did not know whether H.B. 3293 would prohibit B.P.J.

---

[3] (*Id.* at 60:10-14 ("Q. Have you applied to law school? A. Yes. Q. Where did you apply? A. I applied to [three law schools].").)
[4] (*Id.* at 67:22-25 ("Q. Did you file a form to graduate [from WVSU] in May? A. Yes. Q. When did you file that form? A. Sometime before the due date.").)

6

from playing on her school's girls' cross-country team (*id.* at 80:2-25, 91:3-12); she did not know what would happen if she won this lawsuit (*id.* at 81:2-4); and she did not know "anything" about H.B. 3293, including any of its claimed objectives (*id.* at 86:22-24, 90:5-18). Ms. Armistead also testified that she was not sure whether B.P.J. should, in fact, be excluded from playing on her girls' sports teams. She stated that she did not know of any safety or fairness concern resulting from B.P.J.'s participation on her school's girls' cross-country team (*id.* at 139:25–140:4, 143:14–144:11), and that she did not know whether she "object[ed] to B.P.J. playing on the Bridgeport Middle School girls' cross-country team" (*id.* at 170:18-22.).[5]

### C. Reconsideration Is Warranted In Light Of These Developments.

Because this new evidence and the absence of expected benefits undercut Ms. Armistead's main argument for intervention and a key basis of this Court's decision to permit intervention, this Court should reconsider its prior order and revoke Ms. Armistead's status as Defendant-Intervenor. Doing so is consistent with the values of Federal Rule of Civil Procedure 54(b) and judicial practice. Federal courts can and do reconsider and revoke a party's status as intervenor in light of new facts or changed circumstances. For example, in *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, the district court removed an intervenor's status when the intervenor could not maintain its asserted interests. No. 9 Civ. 2502, 2012 WL 4717814, at *6 (N.D. Cal. Sept. 28, 2012). There, the plaintiff Tribe made a land request to the Secretary of the Interior to take into trust public lands held by the Department of the Interior for the benefit of the Tribe. *Id.* at *1. Two Counties asked and were allowed to permissively intervene to protect their interests in the public lands. *Id.* at *3.

---

[5] Perhaps given this conflict between Ms. Armistead's personal perspective and the views being championed in her filings, the State has sought to downplay the notion that Ms. Armistead herself has a valuable perspective to offer in this case. (*See* Dkt. No. 330 (State Resp. Pl.'s SUF) at 10 (asserting that Ms. Armistead "has no reason to have a developed opinion on middle schoolers").)

7

As the case progressed, however, the Tribe amended its complaint to include only federal lands, which were not under the Counties' control. *Id.* at *4. The amended complaint rendered the Counties' interests "not viable" and "too remote" to sustain permissive intervention. *Id.* The *Mishewal* court reasoned that the Counties' interests "[we]re not claims that ha[d] much of anything in common with the actual issues." *Id.* at *6. *See also United States v. First Trust & Sav. Bank, Clarksville, Tenn.*, No. 77 Civ. 3296, 1977 WL 1265, at *2 (M.D. Tenn. Aug. 29, 1977) (rescinding a taxpayer's intervenor status following the discovery of new evidence that undermined the intervenor's interests).

As in these cases, subsequent developments in the litigation have undermined the reasoning driving prior decisions to permit Ms. Armistead's intervention. The purpose of granting Ms. Armistead's motion to intervene was to allow her to present her perspective as a West Virginia student athlete. Because she is no longer a West Virginia student athlete and she has not provided that perspective, the Court should reconsider its order granting intervention and revoke Ms. Armistead's status as intervenor.

**II. Ms. Armistead Significantly Burdened The Discovery Process And Keeping Her In This Case Will Continue To Add Undue Complications.**

In granting permissive intervention, this Court found "that allowing Ms. Armistead to intervene will not cause undue delay or prejudice" and would "not significantly add to the parties' discovery burdens." (Dkt. No. 130 (Intervention Order) at 6.) In addition to the changed circumstances rendering Ms. Armistead disconnected from the issues in this case, this Court should re-examine Ms. Armistead's status as intervenor because "the balance of interests [has] shift[ed]"—Plaintiff's "fears [of prejudice] are [now] substantiated." *State v. City of Chicago*, 912 F.3d 979, 988 (7th Cir. 2019); *see also Mishewal Wappo Tribe*, 2012 WL 4717814, at *6 (revoking

8

permissive intervention where the intervenors' "actions have significantly impacted the proceedings"); (Dkt. No. 99 (Pl.'s Opp. to Int. Mot. to Intervene) at 16–17 (describing concern that Ms. Armistead's intervention would "prolong and increase the burdens of discovery and motion practice") (quoting *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013)).

Since joining this lawsuit as Defendant-Intervenor, Ms. Armistead has issued burdensome and voluminous discovery requests. For example, whereas the other Defendants submitted only two requests for admission, Ms. Armistead sought admissions to *eighty-two* statements. Of those, almost fifty requests sought responses to hypothetical questions regarding the treatment of various endocrine conditions not at issue in this case and/or that had not yet been (and in many cases, have not been) the subject of expert testimony.[6] Her approach to interrogatories was similarly burdensome and undiscerning.

Ms. Armistead's involvement in the case has also significantly increased the amount of expert discovery. She supported four expert witnesses, all of which are unqualified, irrelevant, or both,[7] and she filed a motion to exclude the testimony of one of Plaintiff's experts that is duplicative of the State's motion to exclude the same expert.[8]

---

[6] (Pelet del Toro Decl., Ex. A ¶¶ 13–61.) Some of these hypothetical questions included: "[a]dmit that Histrelin is used to treat biological males with idiopathic short stature[]"; "[a]dmit there are high-school aged biological males who, because of hypogonadism, have circulating testosterone comparable to that of biological females of their same age[]"; and "[a]dmit that for purposes of participating on sex separated school athletic teams, high school male-identifying biological males who experienced endogenous male puberty but have since received hormone therapy sufficient to bring their circulating testosterone down into the range typical for biological females of their same age are similarly situated to female-identifying biological females of the same age who have received no puberty blocking or other hormone therapy." (*Id.* ¶¶ 11, 23, 44.)

[7] (Dkt. Nos. 316 (Brown *Daubert* Mot.), 320 (Cantor *Daubert* Mot.), 324 (Levine *Daubert* Mot.), 328 (Carlson *Daubert* Mot.).)

[8] (Dkt. Nos. 306 (State Mot. to Exclude Fry Expert Test.), 310 (Int. Mot. to Exclude Fry Expert Test.).)

9

Moreover, Ms. Armistead now seeks to rely on the irrelevant testimony from ten individuals she failed to timely disclose. (*See* Dkt. No. 288 (Int. MSJ) at 2–3.) Specifically, in support of her motion for summary judgment, Ms. Armistead offers declarations from out-of-state athletes, parents of out-of-state athletes, and former athletes, none of whom have any connection to B.P.J.'s challenge here. These ten individuals are from the list of at least *thirty-seven* individuals Ms. Armistead identified in "supplemental" disclosures provided to Plaintiff's counsel four months after Ms. Armistead's initial disclosures and three days after the deadline for written discovery had closed. Despite repeated requests from Plaintiff's counsel that she identify which witnesses she reasonably believed she might use to support her claims or defenses, Ms. Armistead refused to engage, leaving Plaintiff unable to depose these potential witnesses. (Dkt. Nos. 332-18 (Ltr. to Int. from Pl., Mar. 17, 2022), 332-19 (Email from Int. to Pl., Mar. 23, 2022).)

Finally, in a case where there are already four Defendants and four separate sets of defense counsel, Plaintiff has had to respond to separate (but often overlapping) discovery requests and sets of briefs. Had Ms. Armistead timely shared her plans to graduate from WVSU this spring, Plaintiff could have raised reconsideration with this Court before Ms. Armistead's submission of a motion for summary judgment and multiple motions to exclude expert testimony, potentially saving the parties and the Court significant time.

Ms. Armistead's continued participation in this case will continue to impose additional burdens without any corresponding benefit, including separate cross-examination if there is a trial, separate post-trial briefing, and separate appellate briefing at each stage of any subsequent appeal. The added complications and burdens created by Ms. Armistead's involvement in this litigation are further reason to reconsider the grant of permissive intervention.

### III. Ms. Armistead Has Not Made Unique Arguments.

Finally, reconsideration of Ms. Armistead's intervention is warranted because she has not presented the Court with arguments that "differ from those of the current defendants." (Dkt. No. 130 (Intervention Order) at 6.) In her motion for intervention, Ms. Armistead represented that she would "advance litigation arguments different from and contrary to the State Defendants' arguments." (Dkt. No. 95 (Memo. ISO Mot. to Intervene) at 14.) But the reality is that Ms. Armistead and the State have been fully aligned in their defense of H.B. 3293 and pursuit of summary judgment.

Ms. Armistead identified five arguments that she would make that would differ from those made by the State: (1) "Title IX not only permits—but *requires*—separate sports teams for women and girls in contests of strength or speed"; (2) "gender identity is not a protected class" and *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), was wrongly decided; (3) "the State's interest in providing equal athletic opportunities for women justifies [H.B. 3293's] different treatment" based on "gender identity"; (4) B.P.J.'s requested relief would result in discrimination in violation of *Grimm*; and (5) "B.P.J. is asking the Court to replace biological sex with gender identity in the Sports Act." (Dkt. No. 95 (Memo. ISO Mot. to Intervene) at 14–15.) The State in fact makes the first, third, and fifth arguments. (*See* Dkt. No. 287 (State MSJ) at 22 ("Title IX *requires* some different treatment between the biological sexes."); *id.* at 13–17 (arguing that H.B. 3293's classification is substantially related to the State's interest in "ensuring equal opportunities for females in sports"); *id.* at 4 ("Plaintiff would base sports teams on gender identity."); *id.* at 7 ("Plaintiff's position that a student-athlete be permitted to participate on a team consistent with the athlete's gender identity rather than biological sex would be impossible given this array of gender identities.").) And Ms. Armistead has not made the second or fourth arguments. Instead, she—like

11

the State—has argued that "*Grimm* doesn't apply." (Dkt. No. 288 (Int. MSJ) at 18; *see also* Dkt. No. 287 (State MSJ) at 33 ("The holding of *Grimm* . . . does not apply here.").)

\* \* \*

In sum, Ms. Armistead no longer has personal interests at stake in this litigation and thus no longer has a personal perspective as someone supposedly protected by H.B. 3293 to offer the Court; her participation to date has complicated the proceedings and prejudiced Plaintiff and judicial economy; and she has not offered the Court the unique legal arguments promised in her intervention motion. Accordingly, this Court should grant Plaintiff's motion to reconsider and revoke Ms. Armistead's intervenor status.

## CONCLUSION

Plaintiff respectfully requests that this Court reconsider its order granting Lainey Armistead's permissive intervention and revoke her status as Defendant-Intervenor in this case.

Dated: May 26, 2022

Joshua Block*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: (214) 219-8585
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
ccharles@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO 80202-5686
Phone: (720) 566-4000
abarr@cooley.com

Respectfully submitted,
/s/ *Loree Stark*

Loree Stark (Bar No. 12936)
Nick Ward (Bar No. 13703)
AMERICAN CIVIL LIBERTIES UNION OF WEST VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
lstark@acluwv.org

Kathleen Hartnett*
Julie Veroff*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com

Katelyn Kang*
Valeria M. Pelet del Toro*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

*Visiting Attorneys*

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Loree Stark, do hereby certify that on this 26th day of May, 2022, I electronically filed a true and exact copy of ***Plaintiff's Memorandum of Law in Support of Motion to Reconsider the Grant of Lainey Armistead's Permissive Intervention*** with the Clerk of Court and all parties using the CM/ECF System.

*/s/ Loree Stark*
Loree Stark
West Virginia Bar No. 12936

14