IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>    v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>    and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION TO EXCLUDE EXPERT TESTIMONY OF MARY FRY**

TABLE OF CONTENTS

Table of Authorities .................................................................................................... iii

Introduction .............................................................................................................. 1

Argument ................................................................................................................... 2

     I.  B.P.J admits that Dr. Fry has nothing to say about the central issue in this case: whether the Sports Act advances the State's interests in equal athletic opportunity and athlete safety. ......................................................... 2

    II.  B.P.J. now disclaims Dr. Fry's opinion that the Sports Act is "arbitrary." ... 4

    III.Dr. Fry's opinion on the ideal sports climate lacks any connection to the Sports Act. .......................................................................................................... 7

Conclusion ................................................................................................................. 10

Certificate of Service ................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Vinoskey,*
    310 F. Supp. 3d 662 (W.D. Va. 2018) ....................................................................... 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ................................................................................................. 3

*Eskridge v. Pacific Cycle, Inc.,*
    556 F. App'x 182 (4th Cir. 2014) ............................................................................ 4

*In re C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation,*
    948 F. Supp. 2d 589, (S.D.W. Va. 2013) ................................................................ 3

*In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices. & Products
    Liability Litigation,*
    174 F. Supp. 3d 911 (D.S.C. 2016) ......................................................................... 9

*McCormick ex rel. McCormick v. School District of Mamaroneck,*
    370 F.3d 275 (2d Cir. 2004) ................................................................................... 8

*Mississippi University for Women v. Hogan,*
    458 U.S. 718 (1982) ................................................................................................. 3

*National Association for Advancement of Colored People, Inc. v. City of Myrtle
    Beach,*
    504 F. Supp. 3d 513 (D.S.C. 2020) ......................................................................... 4

*Oliver v. Baity,*
    208 F. Supp. 3d 681 (M.D.N.C. 2016) .................................................................... 5

*Sardis v. Overhead Door Corp.,*
    10 F.4th 268 (4th Cir. 2021) ................................................................................... 5

*Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.,*
    318 F.3d 592 (4th Cir. 2003) .................................................................................. 8

*West Virginia Coal Workers' Pneumoconiosis Fund v. Bell,*
    781 F. App'x 214 (4th Cir. 2019) ............................................................................ 8

*Wu v. Mississippi State University,*
    No. 1:13-CV-00002-DMB-DAS, 2014 WL 5799972 (N.D. Miss. Nov. 7, 2014) ....... 6

## INTRODUCTION

When girls play school sports, they deserve to compete on a fair and safe playing field. Those objectives—fairness and safety for female athletes—animate West Virginia's Sport Act (W. Va. Code § 18-2-25d), which ensures that, beginning in middle school, only biological females may compete on women's sports teams. The question before this Court is whether the Sports Act advances those objective sufficient to satisfy intermediate scrutiny.

Dr. Mary Fry, one of Plaintiff B.P.J.'s proposed experts, cannot help the Court answer that question. Instead, her expert report discusses her view that sports teams should foster a so-called "task oriented" climate focused on participation and self-improvement, rather than an "ego oriented" climate focused on athletic performance. From this general discussion—and *not* from any engagement with academic literature on athletes with gender dysphoria—she opines that "arbitrary" exclusions of these athletes will harm both the excluded athletes and others on the team.

In her motion to exclude Dr. Fry's testimony, Defendant-Intervenor Lainey Armistead demonstrated that Dr. Fry's opinions are neither reliable nor relevant to any issues before the Court. Indeed, Dr. Fry herself disavowed any connection between the Sports Act and fostering a "task oriented" climate, and she further admitted that she could not explain what made an athletic exclusion "arbitrary." Even more to the point, none of her opinions address the objectives of the Sports Act: fairness and safety.

B.P.J. responded to the motion by disavowing the substance of Dr. Fry's opinions. Indeed, B.P.J. now fully admits that Dr. Fry has nothing to say about fairness or safety. That alone demonstrates that her opinions are of no use to the Court in evaluating the Sports Act's permissibility.

B.P.J. further admitted that Dr. Fry is *not* providing an opinion that the Sports Act is "arbitrary." This admission eliminates any potential connection between Dr.

Fry's opinion and the Sports Act. If Dr. Fry is not speaking to whether the Sports Act is arbitrary, then the only opinion she can offer is the generic one that a child who doesn't participate in sports doesn't receive the benefits from participating.

This whittled-down opinion is as unhelpful as it is uncontroversial. No one disputes that young people benefit from participating in sports. But the Sports Act doesn't exclude anyone from participating in sports—it just requires that they participate in accordance with their biological sex. And simply knowing that sports are beneficial does not answer whether separating sports based on biological sex advances the State's interests in fairness and safety. Thus, Dr. Fry's opinion is irrelevant and inadmissible.

Dr. Fry also admitted that there is no connection between the Sports Act and the promotion of a particular athletic climate. In response, B.P.J. tries to argue, *contra* Dr. Fry's own testimony, that the Sports Act promotes a climate that places winning and performance above inclusion and participation. This new opinion is untimely and unfounded. Plainly, B.P.J. cannot salvage Dr. Fry as an expert by disavowing her own deposition testimony. Regardless, the new opinion is supported by nothing. If anything, the academic literature shows that fairness and safety are key components of building a positive athletic climate—evidence that Dr. Fry ignored without explanation. For all of these reasons, her opinions are inadmissible, and she should not be permitted to testify.

## ARGUMENT

### I. B.P.J admits that Dr. Fry has nothing to say about the central issue in this case: whether the Sports Act advances the State's interests in equal athletic opportunity and athlete safety.

West Virginia passed the Sports Act "to protect athletes from harm or unfairness because of physical abilities." App. to Def.-Intervenor's Mot. for Summ. J.

(App.) 1096, ECF No. 286-1 (Dolan Dep. 117:12–14).[1] The issue before the Court is whether the Sports Act is "substantially related to the achievement of those objectives." *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982) (citation omitted).

Dr. Fry has nothing to say on this question. In her deposition, Dr. Fry testified over and over that she was not an expert in fairness or safety and was not testifying to those issues. App. 508 (Fry Dep. 64:7–17) (admitted she has "no expertise in sports safety); App. 518 (Fry Dep. 105:9–11) (admitted she has not "done any research on the issue of fairness and sports"); App. 519 (Fry Dep. 107:8–11) (admitted she is "not offering any expert opinion on fairness in sports"); App. 519–520 (Fry Dep. 109:22–110:2) (when asked her qualifications to determine fairness, she responded that she "was called as an expert to look at the benefits of sports"); App. 534 (Fry Dep. 166:20–23) (testified that she is "not an expert on safety issues"). And B.P.J. now admits that "Dr. Fry is not, and never claimed to be, an expert in fairness and safety." Pl.'s Opp'n. to Def. State of W. Va. and Def.-Intervenor's Mots. to Exclude the Expert Test. of Dr. Mary Fry (Pl.'s Fry Resp.) 5, ECF No. 346; *id.* at 16 (she is "not offering expert testimony on fairness").

This admission highlights the uselessness of Dr. Fry's proposed testimony. If she cannot speak to whether the Sports Act furthers the State's interests in promoting fairness and safety in youth sports, then her opinion is unnecessary and unhelpful. *In re C.R. Bard, Inc.*, *Pelvic Repair Sys. Prods. Liab. Litig.*, 948 F. Supp. 2d 589, 602 (S.D.W. Va. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993)) ("expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). Since her opinion does not "logically advance[ ] the central argument" of this case, it should be excluded. *Nat'l Ass'n for*

---

[1] All citations to documents filed in this case are to the document's original or Bates stamped page number.

*Advancement of Colored People, Inc. v. City of Myrtle Beach*, 504 F. Supp. 3d 513, 518 (D.S.C. 2020).

## II.    B.P.J. now disclaims Dr. Fry's opinion that the Sports Act is "arbitrary."

The centerpiece of Dr. Fry's expert report was her opinion that the "arbitrary" exclusions of athletes who identity as transgender harms both the excluded athletes and the others on the team. App. to Def.-Intervenor and the State of W. Va.'s Mots. to Exclude Expert Test. of Drs. Adkins, Fry, Janssen, and Safer (Daubert App.) 81–82, ECF No. 307-2 (Fry Rep. ¶¶ 37–39). As noted in Armistead's motion to exclude, this opinion suffered three key problems. *First*, the Sports Act doesn't exclude anybody, so that opinion was irrelevant. *Second*, Dr. Fry couldn't explain what she meant by "arbitrary," much less what made the Sports Act "arbitrary." Indeed, Dr. Fry testified that "sex separation in sports generally is non-arbitrary."[2] Pl.'s Fry Resp. 15; App. 534 (Fry Dep. 166:13–18). And *third*, Dr. Fry cited nothing linking the Sports Act—or any sex-based separation in sports—to harmful outcomes for young athletes. Mem. in Supp. of Def.-Intervenor's Mot. to Exclude Expert Test. of Mary Fry (Intervenor's Fry Br.) 16–17, ECF No. 310.

Now, instead of responding to these flaws, B.P.J. disavows the meat of Dr. Fry's opinion, admitting that Dr. Fry will not "offer[] expert testimony as to whether [the Sports Act] is arbitrary." Pl.'s Fry Resp. 14. But in the next breath, B.P.J. states that Dr. Fry will offer the opinion "that a categorical, *arbitrary* exclusion of an entire group of people is harmful to young athletes." *Id.* (emphasis added).

---

[2] B.P.J. tries to pass this problem off as Dr. Fry's mere "personal opinion," and faults Respondents for probing what Dr. Fry meant by calling certain exclusions "arbitrary." Pl.'s Fry Resp. 15. But saying Dr. Fry's "opinion was a personal opinion does not somehow mean it was not a professional one." *Eskridge v. Pac. Cycle, Inc.*, 556 F. App'x 182, 191 (4th Cir. 2014). Regardless, B.P.J.'s response makes it clear that Dr. Fry cannot and will not offer any opinions that the Sports Act—or sex separation in sports generally—is arbitrary.

B.P.J. can't have it both ways. If Dr. Fry will not opine that the Sports Act is "arbitrary," then her opinion that arbitrary exclusions are harmful lacks any connection to this case. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) ("Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded."). Since Dr. Fry cannot connect her claim about arbitrary exclusions causing harm to the Sports Act, she has no opinion that "will help the trier of fact to … determine a fact in issue." *Acosta v. Vinoskey*, 310 F. Supp. 3d 662, 666–67 (W.D. Va. 2018) (cleaned up). Thus, based on B.P.J.'s own admission, Dr. Fry's opinion should be excluded.[3]

Following the logical consequences of B.P.J.'s admission, all that remains of Dr. Fry's opinion is the tautology that people who don't participate in sports don't gain the benefits of participating in sports. But that does not help the factfinder resolve any issues before the Court. As noted, the Sports Act does not prevent anyone from participating in sports. Moreover, there are myriad reasons a young person may not participate in sports—lack of space on a team, lack of sufficient athletic talent, lack of commitment to the team, poor grades, or simply lack of interest—that do not implicate the Equal Protection Clause or Title IX. The generic opinion that people only obtain the benefits of sports if they participate does not assist the factfinder in determining whether the Sports Act is permissible.

---

[3] What's more, Dr. Fry should not be permitted to speak of "arbitrary" exclusions at all. As set forth more fully in Armistead's motion to exclude, she provided no methodology for determining what makes an exclusion "arbitrary," and B.P.J.'s response to the motion contains none. Intervenor's Fry Br. 15. The issue is therefore conceded. *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("party's failure to address an issue in its opposition brief concedes the issue"). Likewise, Dr. Fry should not be permitted to suggest that exclusions of athletes who identify as transgender will cause any particular harms, as she has articulated none. The motion to exclude catalogued her failure to cite to any sources that studied athletes who identify as transgender, Intervenor's Fry Br. 18, and B.P.J.'s response does not address this deficiency. *See Oliver*, 208 F. Supp. 3d at 690.

Further, no party disputes that sports participation is beneficial. B.P.J. contends that Armistead refused to identify the benefits of sports in discovery, but that is not true. Pl.'s Fry Resp. 11–12. Armistead spoke directly to the benefits of sports in her declaration, including "building teamwork" (Pl.'s Fry Resp. 11) (App. 5 (Armistead Decl. ¶ 26 – soccer takes "incredible teamwork"), camaraderie (Pl.'s Fry Resp. 11) (Decl. ¶ 26 – "my teammates have become some of my closest friends"), mental skills (Pl.'s Fry Resp. 11) (Decl. ¶ 27 – "soccer also taught me life skills like mental and physical toughness, perseverance, and good sportsmanship"); goal setting (Pl.'s Fry Resp. 11) (Decl. ¶ 27 – soccer "has given me something to strive for"); and planning for their future after their sport career ends (Pl.'s Fry Resp. 11) (Decl. ¶ 27 – "It provided leadership opportunities that will benefit my future career"). The same is true for the other parties in this case.[4] And it is "inappropriate and unnecessary" for an expert to offer an opinion on a matter that is not in dispute. *Wu v. Miss. State Univ.*, No. 1:13-CV-00002-DMB-DAS, 2014 WL 5799972, at *11 (N.D. Miss. Nov. 7, 2014) (citation omitted).

In sum, without holding an opinion on whether the Sports Act is arbitrary, Dr. Fry's opinion is reduced to the truism that to obtain the benefits of participating in sports, one must participate in sports. This testimony has nothing to do with the issue before the Court—whether the Sports Act advances the State's interests in equal athletic opportunity and athlete safety—and will not assist the factfinder. It should therefore be excluded.

---

[4] Daubert App. 257 (WVSSAC's Resp. to Pl.'s Second Reqs. for Admis., ¶ 44); Daubert App. 277–78 (W. Va. State Bd. of Educ.'s Resp. to Pl.'s Second Reqs. for Admis., ¶ 44); Daubert App. 304–05 (Burch's Resp. to Pl.'s Second Reqs. for Admis., ¶ 44); Daubert App. 329 (Harrison Cnty. Bd. of Educ.'s Resp. and Obj. to Pl.'s Second Set of Req. for Admis., ¶ 44); Daubert App. 353 (Stutler's Resp. and Obj. to Pl.'s Second Reqs. for Admis., ¶ 44); Daubert App. 368 (W. Va.'s Resp. to Pl.'s Second Reqs. for Admis., ¶ 44).

### III.  Dr. Fry's opinion on the ideal sports climate lacks any connection to the Sports Act.

Dr. Fry believes school sports teams should promote a "task-involving and caring" environment that focuses on participation. Daubert App. 80–81 (Fry Rep. ¶ 34); App. 526 (Fry Dep. 135:13–136:16). She opines that a "task involving" climate focused on self-improvement is more beneficial to young athletes than an "ego-involving" climate focused on performance outcomes. *See* Daubert App. 76–81 (Fry Rep. ¶ 18–36). Thus, she posits that schools should avoid a "myopic focus on winning" and instead prioritize a climate "geared to include all participants." Daubert App. 76, 83 (Fry Rep. ¶¶ 18, 41).

As noted in the motion to exclude, this opinion has nothing to do with the Sports Act. Intervenor's Fry Br. 7–8. And Dr. Fry disavowed any contention that it does. She testified in her deposition that nothing in the Sports Act "says there should be a sole or myopic focus on winning in any of the sports it covers." App. 523 (Fry Dep. 124:4–9). She also testified that no West Virginia sports organization "has adopted an ego promoting philosophy." App. 542 (Fry Dep. 198:6–9). She further conceded that she is "not advocating for laws requiring a task oriented environment." App. 526 (Fry Dep. 136:17–23). And she testified that the Sports Act does not focus solely on performance outcomes, does not have a focus on winning, and does not deny that athletics have other benefits beyond winning. App. 523 (Fry Dep. 122:4–124:15). She even admitted that sex-separated female-only teams can have the very task-oriented climate she prefers. App. 542 (Fry Dep. 198:18–199:8).

Now, however, B.P.J. seeks to gin up relevance by introducing an opinion that Dr. Fry never gave. Specifically, B.P.J. argues that the Sports Act "imposes a particular climate that tells student athletes that performance and winning are more important than inclusion and participation." Pl.'s Fry Resp. 10. B.P.J. further contends the Sports Act promotes a "singular focus on performance" and "fosters the ego-involving climate … on all athletes performing under the law." *Id.*

7

This opinion appears nowhere in Dr. Fry's report and is flatly contradicted by her deposition testimony. Even if counsel had properly supplemented Dr. Fry's report with this new opinion (and they did not), the time for disclosing expert opinions has long passed. *See S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595–96 (4th Cir. 2003) (requirement of "party to supplement its experts' reports and deposition testimony when the party learns of new information."). And even B.P.J.'s briefing fails to explain the purported connection between the Sports Act and an "ego involving climate," much less does it cite any academic literature making that connection.

Further, the new opinion flies in the face of decades of case law acknowledging the value of protecting and promoting women's sports. West Virginia passed the Sports Act to promote equal athletic opportunity and safety for female athletes. *See* App. 1096 (Dolan Dep. 117:12–14) (West Virginia formulated a policy "to protect athletes from harm or unfairness because of physical abilities."). In the same vein, a core purpose of Title IX is to "creat[e] a more level playing field for female athletes." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 288 (2d Cir. 2004) (cleaned up). Yet no court has suggested that, by promoting women's athletic opportunities, Title IX evinces a "myopic focus on winning." Daubert App. 76 (Fry Rep. ¶ 18). If Dr. Fry thinks that it does (and her deposition testimony suggests otherwise), that is nothing more than a personal or policy opinion and is not the proper subject of expert testimony. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 853 (E.D. Mich. 2010) (rejecting "policy-type" arguments from an expert); *Sec. and Exch. Comm'n v. Ambassador Advisors*, Civ. No. 5:20-cv-02274-JMG, 2021 WL 6052589, at *6 (E.D. Pa. Dec. 21, 2021) (rejecting public policy opinions).

Finally, this new opinion does not change the fact that Dr. Fry totally ignored the academic literature showing that fairness and safety are inextricably linked to a

positive sports climate. Intervenor's Fry Br. 12–13. And B.P.J.'s response to the motion to exclude concedes this argument by failing to address it. *W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 227 (4th Cir. 2019) ("failure to address an issue" reflects a conscious issue that "a party has voluntarily chosen to concede."). Even Dr. Fry's own sources show that fair competition and safety each matter a great deal to sub-elite athletes and are part and parcel of creating a positive athletic environment. Daubert App. 640 (Newton et al. (2007)) (Newton study shows that athletes feel cared for when they perceive they are "treated fairly."); Daubert App. 620 (MacDonald et al. (2011)) (MacDonald's study shows that "competitive excitement" is the strongest predictor of initiative); App. 519 (Fry Dep. 106:11–24) (students' perceptions of fairness in a sport is a critical factor in their attitude and continued participation in the sport). Dr. Fry herself admitted that she could "imagine" that embracing fairness is a critical factor influencing student athletes' attitudes towards sport. *Id.*

An expert simply cannot cherry-pick data she likes and ignore data she doesn't. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 932 (D.S.C. 2016) ("[F]ailing to adequately account for contrary evidence is not reliable or scientifically sound"). Here, Dr. Fry reported at length on the importance of a positive athletic climate, but she ignored the literature demonstrating that fairness and safety are key building blocks of a positive climate. Intervenor's Fry Br. 12–13. She went so far as to disavow any expertise on fairness or safety, even though both are featured in the very literature she cites. App. 534 (Fry Dep. 166:20–23) (testified that she is "not an expert on safety issues"); App. 519 (Fry Dep. 107:8–11) (admitted she is "not offering any expert opinion on fairness in sports"). "Such cherry-picking of data is unreliable and fails to satisfy the scientific method and *Daubert*." *In re Lipitor*, 174 F. Supp. 3d at 931 (cleaned up).

9

In sum, Dr. Fry herself disclaimed any connection between the Sports Act and her opinion about the importance of a "task involving" climate. B.P.J.'s briefing cannot change that testimony, nor can it save Dr. Fry from failure to account for the importance of fairness and safety on the athletic climate. Accordingly, Dr. Fry's opinion should be excluded.

## CONCLUSION

The heart of Dr. Fry's expert report is that an "arbitrary" exclusion from sports is harmful to young athletes. But B.P.J. now admits that Dr. Fry cannot testify that the Sports Act contains any such "arbitrary" exclusion, so her opinion is irrelevant to any issues before the Court. And B.P.J.'s attempt to connect her opinion about athletic climate to the Sports Act falls flat because it contradicts Dr. Fry's own deposition testimony. For all of these reasons, Dr. Fry's testimony should be excluded in its entirety.

Respectfully submitted this 2nd day of June, 2022.

/s/ *Brandon S. Steele*

Tyson C. Langhofer, VA Bar No. 95204*
Rachel A. Csutoros, MA Bar No. 706225*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-2119
(571) 707-4790 Fax
tlanghofer@adflegal.org
rcsutoros@adflegal.org

Travis C. Barham, GA Bar No. 753251*
Alliance Defending Freedom
1000 Hurricane Shoals Road NE, Ste D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-0774 Fax
tbarham@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com

Brandon Steele, WV Bar No. 12423
Joshua D. Brown, WV Bar No. 12652
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com
joshua_brown05@hotmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Roger G. Brooks, NC Bar No. 16317*
Henry W. Frampton, IV, SC Bar No. 75314*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org
rbrooks@adflegal.org
hframpton@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

***Visiting Attorneys**
*Attorneys for Defendant-Intervenor*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>   v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>   v.<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Brandon Steele, hereby certify that on June 2, 2022, I electronically filed a true and exact copy of ***Reply Memorandum in Support of Defendant-Intervenor's Motion to Exclude Expert Testimony of Mary Fry*** with the Clerk of Court and all parties using the CM/ECF system.

                                       */s/ Brandon S. Steele*
                                       Brandon Steele, WV Bar No. 12423
                                       The Law Offices of Brandon S. Steele
                                       3049 Robert C. Byrd Drive, Suite 100
                                       Beckley, WV 25801
                                       (304) 253-1230
                                       (304) 255-1520 Fax
                                       bsteelelawoffice@gmail.com

                                       *Attorney for Defendant-Intervenor*

12