**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR AND THE STATE WEST VIRGINIA'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. ARON JANSSEN**

TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

Introduction ............................................................................................................. 1

Argument ................................................................................................................. 3

    I. Vague appeals to "clinical experience" do not salvage Dr. Janssen's unsupported opinion that the Sports Act causes harm. ................................ 3

    II. Dr. Janssen cited nothing that would allow a reasonable inference of causation between social transition and improved mental health ................ 4

    III. Neither the research Dr. Janssen cited nor the research he ignored supports his opinion that puberty suppression is beneficial. ......................... 7

    IV. The admission that "persistence" cannot be predicted further demonstrates the irrelevance of Dr. Janssen's discussion of that subject ..... 9

Conclusion ............................................................................................................. 10

Certificate of Service ............................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Eghnayem v. Boston Scientific Corp.*,
   57 F. Supp. 3d 658 (S.D.W. Va. 2014).................................................................. 4, 7

*Funderburk v. South Carolina Electric & Gas Co.*,
   395 F. Supp. 3d 695 (D.S.C. 2019) ........................................................................... 3

*Grimm v. Gloucester County School Board*,
   972 F.3d 586 (4th Cir. 2020) .................................................................................... 7

*Huss v. Gayden*,
   571 F.3d 442 (5th Cir. 2009) .................................................................................... 5

*In re Bair Hugger Forced Air Warming Device Product Liability Litigation*,
   9 F.4th 768 (8th Cir. 2021)..................................................................................... 6, 8

*In re Lipitor (Atovastatin Calcium) Marketing, Sales Practices & Products Liability
Litigation*,
   174 F. Supp. 3d 911 (D.S.C. 2016) ............................................................ 6, 7, 8, 9

*Milward v. Acuity Specialty Products Group*,
   639 F.3d 11 (1st Cir. 2011)..................................................................................... 6, 8

*Modern Holdings, LLC v. Corning, Inc.*,
   Civ. No. 5:13-cv-00405, 2022 WL 710174 (E.D. Ky. March 9, 2022) ...................... 5

*Navarro v. Procter & Gamble Co.*,
   Case No. 1:17-cv-406, 2021 WL 868586 (S.D. Ohio Mar. 8, 2021) ......................... 5

*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006) .................................................................................... 8

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) .................................................................................... 8

*Winebarger v. Boston Scientific Corp.*,
   Civ. A. No. 2:13-cv-28892, 2015 WL 1887222 (S.D.W. Va. Apr. 24, 2015) ............ 4

*Wood v. Showers*,
   822 F. App'x 122 (3d Cir. 2020)................................................................................ 7

**Rules**

Fed. R. Evid. 702................................................................................................................ 4

**INTRODUCTION**

The parties appear to agree that Dr. Aron Janssen's expert report is irrelevant to any issues presented in this case. According to Plaintiff B.P.J., Dr. Janssen was named as an expert solely to respond to testimony from Drs. Levine and Cantor, experts named by the State of West Virginia and Lainey Armistead (Defendants), about the proper medical treatment for young people who experience gender dysphoria. Pl.'s Opp'n to Def.-Intervenor and Def. State of W. Va.'s Mot. to Exclude the Expert Test. of Dr. Aron Janssen (Pl.'s Janssen Resp.) 1, ECF No. 348. But B.P.J. recognizes that this testimony is not pertinent to the case and claims that Dr. Janssen "will not present any testimony at all" if the Court properly excludes irrelevant material from other experts. Pl.'s Janssen Resp. 4.

Defendants agree—as long as the exclusion is properly framed and applied to all sides. Throughout this case, B.P.J. has introduced matters that have no bearing on the validity of West Virginia's Sports Act (W. Va. Code § 18-2-25d). For example, B.P.J. has presented evidence for the purported need of "gender affirming care," including a state-supported early social transition. And B.P.J. has named experts—Drs. Adkins, Safer, and now Janssen—to opine about the "affirmation only" treatment regimen allegedly necessary for B.P.J. and other young people experiencing gender dysphoria.[1]

But none of this has anything to do with the Sports Act, which draws lines based on biology, not gender identity. The question before this Court is whether the Sports Act substantially advances the State's obvious interests in equal athletic opportunity and safety for biological females in furtherance of Title IX's concerns

---

[1] The irrelevance of B.P.J.'s experts' proposed testimony is discussed in more detail in Defendants' *Daubert* motions concerning Drs. Adkins and Safer, as well as Defendants' response to the *Daubert* motion filed concerning Dr. Levine, and will not be repeated in detail here. Defs.' Adkins Br, ECF No. 308; Defs.' Safer Br., ECF No. 314.

1

regarding female sports. Answering that question does not require the Court to determine anything at all about the nature of transgender identity or the proper medical treatment for gender-dysphoric youth.

Accordingly, if the Court determines that neither side may present evidence on irrelevant matters, much of the testimony from B.P.J.'s experts—and all of Dr. Janssen's testimony—would fall away. The primary expert testimony left would be from Drs. Brown and Carlson, the only experts who directly and reliably address the State's interests in equal athletic opportunity and athlete safety.

But should this Court consider Dr. Janssen's testimony on its merits, his opinions are unreliable, unhelpful, and worthy of exclusion. As set forth in Defendants' motion to exclude, Dr. Janssen's opinions contain myriad methodological errors—from citing studies that do not support his opinions to ignoring contrary evidence to making sweeping conclusions based on nothing but his own say so. *See* Mem. in Supp. of Def.-Intervenor and the State of W. Va.'s Mot. to Exclude Expert Test. of Aron Janssen (Defs.' Janssen Br.), ECF No. 312.

B.P.J.'s response fails to address these problems. Instead of shoring up Dr. Janssen's opinions with peer-reviewed evidence, B.P.J. appeals to "clinical experience" that Dr. Janssen admitted he doesn't have. Instead of explaining how Dr. Janssen bridges the well-recognized analytical gap between correlation and causation, B.P.J. tries to bridge that gap simply with Dr. Janssen's own declaration. And instead of linking Dr. Janssen's opinions to a question before the Court, B.P.J. merely highlights how poorly his opinions fit the facts of this case. In short, Dr. Janssen's opinions are still not reliable or helpful and should be excluded.

## ARGUMENT

**I. Vague appeals to "clinical experience" do not salvage Dr. Janssen's unsupported opinion that the Sports Act causes harm.**

Dr. Janssen's ultimate opinion, reflected in the final three paragraphs of his report, is that the Sports Act harms young people who express a transgender identity. App. to Def.-Intervenor and the State of W. Va.'s. Mots. to Exclude Expert Test. of Drs. Adkins, Fry, Janssen, and Safer (Daubert App.) 131–32, ECF No. 307-2 (Janssen Rep. ¶¶ 50–52).[2] But, as noted in Defendants' motion to exclude, this opinion cited to a grand total of two academic sources, neither of which remotely supports the opinion. Defs.' Janssen Br. 18–21.

In response, B.P.J. does not attempt to defend these citations. Instead, B.P.J. simply asserts that Dr. Janssen's testimony "is a rebuttal report" and appeals to his "clinical experience." Pl.'s Janssen Resp. 11. B.P.J. also cites an organization's position statement on youth sports. *Id.* None of this transforms Dr. Janssen's pure *ipse dixit* into reliable scientific opinion.

As an initial matter, Dr. Janssen's status as a rebuttal expert is irrelevant. After all, "a rebuttal expert is still subject to the scrutiny of *Daubert* and must offer both relevant and reliable opinions." *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 716 (D.S.C. 2019). Thus, the fact that Dr. Janssen's opinion "is a rebuttal report" does not lower the standard or B.P.J.'s burden.

In addition, B.P.J.'s appeal to "clinical experience" does not help Dr. Janssen because he admitted his "clinical experience" in this area is negligible. In his entire career, he's treated "less than two or three" patients affected by not being able to play sports consistent with their professed gender identity. App. to Def.-Intervenor's Mot. for Summ. J. (App.) 978, ECF No. 286-1 (Janssen Dep. 293:13–18). At his deposition, Dr. Janssen's memory of these couple of patients was minimal, and he did not testify

---

[2] All citations to documents filed in this case are to the document's original or Bates stamped page number.

3

that any of them suffered the "profoundly harmful impact" on mental health his report claims will occur. *Id.*; Daubert App. 132 (Janssen Report ¶ 51). An expert relying on clinical experience must demonstrate "why that experience is a sufficient basis for the opinion." *Winebarger v. Boston Sci. Corp.*, Civ. A. No. 2:13-cv-28892, 2015 WL 1887222, at *41 (S.D.W. Va. Apr. 24, 2015). Here, experience with "less than two or three" patients—none of whom suffered deleterious effects—is plainly insufficient to support Dr. Janssen's broad opinion that the Sports Act will cause profound harm. *Id.* at *35 (disqualifying expert with minimal clinical experience).

Finally, B.P.J.'s citation to an organizational position statement on school sports is unhelpful because "position statements are not expert opinions." Pl.'s Janssen Resp. 11; *Eghnayem v. Boston Sci. Corp.*, 57 F. Supp. 3d 658, 720 (S.D.W. Va. 2014). As this Court has recognized, simply repeating an organization's position statement does not use a witness's "scientific, technical, or other specialized knowledge," and does not qualify as expert testimony under Fed. R. Evid. 702. *Id.* (cleaned up). Accordingly, Dr. Janssen cannot salvage his otherwise unsupported expert opinion simply by citing to an organization's position statement.

In sum, Dr. Janssen's opinion that the Sports Act will cause harm is not properly grounded in the academic literature or his own professional experience and should be excluded.

## II. Dr. Janssen cited nothing that would allow a reasonable inference of causation between social transition and improved mental health.

As set forth in the motion to exclude, Dr. Janssen's opinion that social transition improves mental health is based entirely on three studies that expressly disavowed any causal relationship between these factors. Defs.' Janssen Br. 8–10. In response, B.P.J. agrees that these sources do not establish causation, but contends

4

that they somehow magically give rise to an "inference of causation."[3] Pl.'s Janssen Resp. 5. This argument misreads caselaw.

"It is axiomatic that causation testimony is inadmissible if an expert relies upon studies or publications, the authors of which were themselves unwilling to conclude that causation had been proven." *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009). That is exactly what happened here. All three of Dr. Janssen's sources purported to show an *association* between social transition and positive mental health outcomes, and they all expressly stated that they did not establish causation.[4]

---

[3] B.P.J. also conflates Dr. Janssen's opinion that social transition causes positive mental-health outcomes with his opinion that puberty suppression causes positive mental-health outcomes. These are separate opinions cited to different sources. *Compare* Daubert App. 124 (Janssen Rep. ¶ 35) (social transition) *with* Daubert App. 126–27 (Janssen Rep. ¶ 40) (puberty suppression). Accordingly, they must be considered separately. *Navarro v. Procter & Gamble Co.*, Case No. 1:17-cv-406, 2021 WL 868586, at *23 (S.D. Ohio Mar. 8, 2021) (noting that *Daubert* requires an "opinion-by-opinion inquiry").

[4] B.P.J. continues to misrepresent the statistical problems with the 2016 Olson study. In 2019 and 2020, Schumm published two peer-reviewed critiques of Olson's statistical analysis showing that, when corrected, the Olson study did not even show a *correlation* between social transition and positive mental health outcomes. Neither Olson nor Dr. Janssen has engaged with this criticism. Instead, Dr. Janssen labelled the criticism "unsuccessful[ ]" by pure *ipse dixit*. Daubert App. 124 (Janssen Rep. ¶ 35 n.9). Now, B.P.J. claims that "the only actual error that Schumm identified in Olson's raw data requiring a correction was a missing comma," citing to an errata that Olson published in 2018—*a year before Schumm had even critiqued Olson's analysis*. Pl.'s Janssen Resp. 8. This timing doesn't add up. The fact remains that there has been no response to Schumm's substantive critiques. Likewise, B.P.J. notes that a state court judge in Florida rejected Schumm's analysis of different data on a different issue in a different case, as if that justifies refusing to address Schumm's peer-reviewed critique in this case. *Id.* It doesn't. *Cf. Modern Holdings, LLC v. Corning, Inc.*, Civ. No. 5:13-cv-00405, 2022 WL 710174, at *12 n.9 (E.D. Ky. March 9, 2022) (fact that expert was excluded in another case does not relieve court of obligation to independently review testimony for reliability). Dr. Janssen made no effort to address the published, peer-reviewed problems with the Olson study, and he cannot avoid that obligation by calling Schumm's critique "unsuccessful[ ]" without support or explanation. Pl.'s Janssen Resp. 8.

Daubert App. 479 (Gibson et al. (2021)), Daubert App. 647 (Olson et al., (2016)), App. 465 (Durwood et al., (2017)).

B.P.J. counters that a study unable to prove causation can nonetheless be combined with other evidence to show a reliable inference of causation. Pl.'s Janssen Resp. 5–6. That's true, but it doesn't help Dr. Janssen because he failed to "do[] the work to bridge the gap between association and causation," as the caselaw requires. *In re Bair Hugger Forced Air Warming Device Prod. Liab. Litig.*, 9 F.4th 768, 779 (8th Cir. 2021) (cleaned up); *In re Lipitor (Atovastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 916 (D.S.C. 2016) ("[W]ork is needed to bridge the gap between association and causation.") (cleaned up).

The *Milward* case cited by B.P.J. illustrates the point. *Milward v. Acuity Specialty Prods. Grp.*, 639 F.3d 11, 17 (1st Cir. 2011). There, a toxicologist could not cite any studies establishing a causal link between benzene and a particular form of leukemia. Instead, he carefully applied a well-recognized, six-part epidemiological methodology for getting from association to causation. *Id.* The methodology required him to (1) identify an association, (2) consider a range of plausible explanations for the association, (3) rank the explanations by plausibility, (4) seek more evidence to identify which explanations were more plausible, (5) consider the available evidence, and (6) use his professional judgment to reach a conclusion as to which explanation was best. *Id.* at 17–18. The toxicologist reported on his performance of each step of that analysis, using peer-reviewed evidence at every turn. *Id.* at 18–26.

Dr. Janssen, by contrast, did nothing of the sort. He did not provide any method at all for getting from association to causation; he just cited three associational studies and declared they were sufficient. Daubert App. 124 (Janssen Rep. ¶ 35 n.9). That is not science, and it does not reliably bridge the analytical gap between association and causation. *In re Lipitor*, 174 F. Supp. 3d at 934 ("[I]t is … well established in case law that an association is insufficient to prove causation.").

B.P.J. tries to make up for the lack of evidence of causation by vaguely appealing to the views of unnamed medical associations and to the amicus briefs filed in the *Grimm* case. Pl's Janssen Resp. at 7 (citing *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020). But, as noted above, organizational "position statements are not expert opinions." *Eghnayem*, 57 F. Supp. 3d at 720; *Wood v. Showers*, 822 F. App'x 122, 124 (3d Cir. 2020) (affirming the rejection of an expert because of reliance on a professional organization's policies without "establish[ing] the reliability of the policies" or explaining "the process by which they developed their standards.") Likewise, amicus briefs plainly are not expert opinions and thus cannot salvage Dr. Janssen's unsupported assertion of causation. The opinion, therefore, should be excluded.

### III. Neither the research Dr. Janssen cited nor the research he ignored supports his opinion that puberty suppression is beneficial.

Dr. Janssen's opinion that puberty suppression improves mental health has this same problem and more. In their motion to exclude, Defendants discussed the eight sources Dr. Janssen cited for his opinion and Defendants demonstrated that none of them establish the causal link that Dr. Janssen asserts. Defs.' Janssen Br. 10–13. B.P.J. does not challenge this analysis, instead arguing (without explanation) that sources that do not demonstrate causation nonetheless generate an "inference of causation." (citation omitted). Pl.'s Janssen Resp. 5.

But again, Dr. Janssen provides no method—beyond his own say so—to get from the studies he cites to an opinion on causation. And those studies have serious problems. Some merely find an association; some lack statistical significance; and some fail to isolate the effects of puberty suppression from other treatments provided. Defs.' Janssen Br. 11–13. The caselaw recognizes each of these shortcomings and readily excludes expert opinions based on them. *See, e.g.*, *In re Lipitor*, 174 F. Supp. 3d at 926, 934 (excluding expert opinions because association does not imply

7

causation and because they relied on evidence that was not statistically significant); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999) ("[a] differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.").

To be sure, an expert can overcome a lack of direct causation evidence by applying a rigorous scientific method for inferring causation, as the toxicologist did in *Milward*. 639 F.3d at 17–22. And medical doctors may even use a reliable process of elimination for inferring causation. *See, e.g.*, *United States v. Sandoval-Mendoza*, 472 F.3d 645, 652–53 (9th Cir. 2006) (holding district court should have admitted neurologist's testimony that tumor-related brain damage best explained patient's low IQ because his pre-tumor school and work history were inconsistent with low IQ).

But that's not what Dr. Janssen did here. He just catalogued a series of studies that do not show causation and declared that they do. Daubert App. 126–27 (Janssen Rep. ¶ 40). Thus, he failed to "do[] the work to bridge the gap between association and causation." *In re Bair*, 9 F.4th at 781 (cleaned up).

What's more, Dr. Janssen ignored the growing international consensus that puberty suppression has *not* been shown to be beneficial, as demonstrated by published evidence from Sweden, Finland, and the United Kingdom. Defs.' Janssen Br. 13–14. Dr. Janssen testified that he was aware of this growing literature; he just chose to ignore it. App. 931–32 (Janssen Dep. 103:8–15, 107:3–8 (Sweden)); *id.* (Janssen Dep. 105:6–106:10 (United Kingdom)); *id.* at 933 (Janssen Dep. 110:2–10 (Finland)). This failure to "account for contrary evidence is not reliable or scientifically sound." *In re Lipitor*, 174 F. Supp. 3d at 932.

In response, B.P.J. still fails to address this international evidence in any meaningful fashion. Instead, B.P.J. merely quibbles with the translations used at Dr. Janssen's deposition and claims the international evidence conflicts with the "consensus views of mainstream medical associations in America." Pl.'s Janssen

8

Resp. 8–9. But these are not serious criticisms. Translations aside, Dr. Janssen acknowledged that major gender clinics and national health authorities around the world are now disallowing puberty suppression based on the available scientific evidence. App. 931–32 (Janssen Dep. 103:8–15, 107:3–8 (Sweden)); *id.* (Janssen Dep. 105:6–106:10 (United Kingdom)); *id.* at 933 (Janssen Dep. 110:2–10 (Finland)). Dr. Janssen just chose not to address the evolving science. And whether certain American organizations agree or disagree with the evolving science, nothing excuses Dr. Janssen's ostrich-like refusal to account for it. *In re Lipitor*, 174 F. Supp. 3d at 932.

At bottom, Dr. Janssen asserts a causal link between puberty suppression and mental health benefits that the scientific literature does not support. And no amount of *ipse dixit* or unexplained alchemy can reliably bridge the chasm between that literature and Dr. Janssen's opinion. Thus, Dr. Janssen's opinion should be excluded.

**IV. The admission that "persistence" cannot be predicted further demonstrates the irrelevance of Dr. Janssen's discussion of that subject.**

In his expert report, Dr. Janssen prevaricated on the extent to which a child's persistence in expressing a transgender identity is predictable. In one breath, he admitted it is not, while in the next he claimed that a child is likely to persist if the child's cross-sex identification is "strong," "persistent," "insistent," and "consistent." Daubert App. 120–21, 123–24 (Janssen Report ¶¶ 26, 29, 34).

Defendants presume the purpose of this sleight of hand is to suggest that, despite the overwhelming likelihood of desistance in young people, there are some who can be identified as needing an early social transition (including playing sports on an opposite-sex team) based on the perceived strength of their cross-sex identification. To avoid confusion or evasion on this point at trial, Defendants moved to exclude any testimony that suggests persistence is predictable.

Now, B.P.J. disclaims this opinion entirely, admitting that persistence cannot be reliably predicted. Pl.'s Janssen Resp. 10. Defendants appreciate the admission

9

since it underscores the impropriety of Dr. Janssen testifying at trial that there is a way to predict who is or is not likely to persist in expressing a transgender identity.

What is more, the admission highlights how irrelevant Dr. Janssen's discussion of persistence is to anything properly before the Court. Even if the proper treatment of gender-dysphoric youth were relevant here (and it is not), the admission that persistence is unpredictable amply demonstrates the perils of signing a child up for early social transition or puberty suppression. And Dr. Janssen's insistence that a young person is *comparatively* more likely to persist if vague descriptors like "strong," "persistent," "insistent," and "consistent" apply to the child's cross-sex identification is meaningless if it lacks predictive power, which B.P.J. now admits. Accordingly, Dr. Janssen's testimony on this point should be excluded.

## CONCLUSION

Dr. Janssen's opinions do not relate to anything properly at issue in this case. For that reason alone, they should be excluded.

But even if the opinions are reviewed on their merits, they should be excluded because they are not based on a reliable use of scientific evidence or relevant clinical experience. Instead, they are comprised of a series of poorly cited assertions held together by little more than Dr. Janssen's say so. For all of these reasons, Defendants' motion to exclude Dr. Janssen's testimony should be granted.

Respectfully submitted this 2nd day of June, 2022.

PATRICK MORRISEY
  *West Virginia Attorney General*

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
Joshua D. Brown, WV Bar No. 12652
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com
joshua_brown05@hotmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Roger G. Brooks, NC Bar No. 16317*
Henry W. Frampton, IV, SC Bar No. 75314*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org
rbrooks@adflegal.org
hframpton@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

*/s/ Curtis R. A. Capehart*
Douglas P. Buffington II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Curtis R.A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
David C. Tryon (WV Bar #14145)
  *Deputy Solicitor General*
OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
State Capitol Complex
1900 Kanawha Blvd. E, Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email: David.C.Tryon@wvago.gov

*Counsel for Defendant, STATE OF WEST VIRGINIA*

(signatures continued on next page)

Tyson C. Langhofer, VA Bar No. 95204*
Rachel A. Csutoros, MA Bar No. 706225*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-2119
(571) 707-4790 Fax
tlanghofer@adflegal.org
rcsutoros@adflegal.org

Travis C. Barham, GA Bar No. 753251*
Alliance Defending Freedom
1000 Hurricane Shoals Road NE, Ste D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-0774 Fax
tbarham@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com


*Visiting Attorneys
Attorneys for Defendant-Intervenor

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Brandon Steele, hereby certify that on June 2, 2022, I electronically filed a true and exact copy of ***Reply Memorandum in Support of Defendant-Intervenor and the State West Virginia's Motion to Exclude Expert Testimony of Dr. Aron Janssen*** with the Clerk of Court and all parties using the CM/ECF system.

                                              */s/ Brandon S. Steele*
                                              Brandon Steele, WV Bar No. 12423
                                              The Law Offices of Brandon S. Steele
                                              3049 Robert C. Byrd Drive, Suite 100
                                              Beckley, WV 25801
                                              (304) 253-1230
                                              (304) 255-1520 Fax
                                              bsteelelawoffice@gmail.com

                                              *Attorney for Defendant-Intervenor*