IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>     *Plaintiff*,<br><br>   v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>     *Defendants*,<br><br>   and<br><br>LAINEY ARMISTEAD,<br><br>     *Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF CHAD T. CARLSON**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    Dr. Carlson's Opinions Regarding Prepubertal Children and Transgender Girls Who Receive Puberty-Delaying Medication Should Be Excluded. ............. 1

    II.   Dr. Carlson's Opinion That The Existing Data Supports A Categorical Ban On Transgender Girls and Women Should Be Excluded. ............................. 3

CONCLUSION ...................................................................................................................... 5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CCM Rochester, Inc. v. Federated Invs., Inc.*,
   No. 14-CV-3600 (VEC), 2016 WL 11617452 (S.D.N.Y. Aug. 31, 2016) ................................2

*In re Wright Med. Tech., Inc. Conserve Hip Implant Prods. Liab. Litig.*,
   127 F. Supp. 3d 1306 (N.D. Ga. 2015) ......................................................................................2

**Other Authorities**

Rule 702 ..........................................................................................................................................2

Plaintiff B.P.J. respectfully submits this reply memorandum of law in support of her motion to exclude the proffered expert testimony of Chad T. Carlson, M.D., FACSM from consideration at summary judgment or trial.

## INTRODUCTION

In her motion to exclude Dr. Carlson's testimony, B.P.J. explained why Dr. Carlson has no expert basis to offer an opinion regarding the effects of puberty-delaying medication on transgender girls, and no expert basis to offer policy recommendations. Defendants' opposition brief concedes both points. Although Dr. Carlson engaged in speculation during his deposition about the effects of puberty-delaying medication for transgender girls, Defendants now concede that "consistent with his expert report, Dr. Carlson will not offer any opinions about the effects of puberty blockers." (Dkt. No. 340 (Carlson Opp.) at 11 n.8.) And although Dr. Carlson explicitly stated that "policymakers have an important and pressing duty" to act now to exclude transgender women in the name of safety, (Dkt. No. 289-32 (Carlson Rep.) at 59-60), Defendants do not defend those opinions and instead deflect attention to *other* opinions from Dr. Carlson that are not the subject of B.P.J.'s motion, (Dkt. No. 340 (Carlson Opp.) at 16-17).

Plaintiff's motion should, therefore, be granted and Dr. Carlson should be precluded from offering the challenged opinions at summary judgment or trial.

## ARGUMENT

**I.   Dr. Carlson's Opinions Regarding Prepubertal Children and Transgender Girls Who Receive Puberty-Delaying Medication Should Be Excluded.**

The Court should exclude any testimony from Dr. Carlson about transgender girls who receive puberty-delaying medication. Although Dr. Carlson engaged in speculation during his deposition about the effects of puberty-delaying medication for transgender girls, Defendants now concede that "consistent with his expert report, Dr. Carlson will not offer any opinions about the

1

effects of puberty blockers." (Dkt. No. 340 (Carlson Opp.) at 11 n.8.) The Court should accordingly enter an order memorializing that concession.

The Court should also exclude the portions of Dr. Carlson's report relying on the testimony of Dr. Brown. (*See* Dkt. No. 328 (Carlson *Daubert* Mot.) at 6) citing Dkt. No. 289-32 (Carlson Rep.) ¶ 17.)) Defendants contend that Dr. Carlson's reliance on Dr. Brown's report is proper because "'[t]he facts and data upon which an expert may rely in reaching an expert opinion includes the opinions and findings of other experts, if experts in their respective field would reasonably rely on other expert's opinions and findings.'" (Dkt. No. 340 (Carlson Opp.) at 8) (quoting *In re Wright Med. Tech., Inc. Conserve Hip Implant Prods. Liab. Litig.*, 127 F. Supp. 3d 1306, 1320 (N.D. Ga. 2015)). But as explained in the separate motion to exclude the testimony of Dr. Brown, the literature review and data compilations presented in Dr. Brown's expert report fall far below professional standards of reliability. Even Defendants have now abandoned Dr. Brown's exaggerated claims. For all the same reasons why Dr. Brown's opinions on these issues are unreliable under Rule 702, those opinions are also unreliable for Dr. Carlson to rely upon—"their opinions rise and fall together." *CCM Rochester, Inc. v. Federated Invs., Inc.*, No. 14-CV-3600 (VEC), 2016 WL 11617452, at *7 (S.D.N.Y. Aug. 31, 2016).[1]

---

[1] Defendants also note that Dr. Brown recently published data about the performance of prepubertal youth on the editor-reviewed blog for the Physiology Educators Community of Practice, and argue that the publication shows that Dr. Brown's opinions are "deemed reliable by the scientific community." (Dkt. No. 340 (Carlson Opp.) at 8 n.6) (citing Dkt. No. 343-1 (*Daubert* Response App.) at 69.) But as discussed in B.P.J.'s reply brief in support of the motion to exclude Dr. Brown's testimony, a comparison between Dr. Brown's expert report and his published blog only highlights the ways that Dr. Brown's report falls far below professional standards.

## II. Dr. Carlson's Opinion That The Existing Data Supports A Categorical Ban On Transgender Girls and Women Should Be Excluded.

In the Conclusion section of his expert report, Dr. Carlson offered an explicit policy recommendation:

> [I]t is my view as a medical doctor that **policymakers have an important and pressing duty not to wait** while avoidable injuries are inflicted on girls and women, but instead to proactively establish policies governing participation of biological males in female athletics that give proper and scientifically-based [sic] priority to safety in sport for these girls and women. Separating participants in contact sports based on biological sex preserves competitive equity, but also promotes the safety of female athletes by protecting them from predictable and preventable injury. Otherwise, the hard science that I have reviewed in this white paper leaves **little doubt that eligibility policies based on ideology or gender identity rather than science, will, over time, result in increased, and more serious, injuries** to girls and women who are forced to compete against biologically male transgender athletes. When basic science and physiology both predict increased injury, then leagues, **policymakers, and legislators have a responsibility to act** to protect girls and women before they get hurt.

(Dkt. No. 289-32 (Carlson Rep.) at 59-60) (emphases added).) Dr. Carlson offered this policy recommendation despite admitting during his deposition that he has no expert basis for making policy recommendations or for opining on which groups of athletes should, or should not, be excluded to promote safety. (*See* Dkt. No. 328 (Carlson *Daubert* Mot.) at 9-10.)

In opposing B.P.J.'s motion to exclude, Defendants assert—in disregard of Dr. Carlson's own words—that Dr. Carlson's statements that "policymakers have an important and pressing duty not to wait" was not, in fact, "a policy recommendation." (Dkt. No. 340 (Carlson Opp.) at 12.) Defendants contend that instead of offering policy recommendations, Dr. Carlson was merely proffering "an opinion about injury risk based on the science of sex-based physiological and performance differences and the science and mechanics of sports injury." (Dkt. No. 340 (Carlson Opp.) at 16.) But B.P.J. did not seek to exclude Dr. Carlson's testimony about the existence of injury risks. She moved to exclude Dr. Carlson's opinions in his conclusion section that

"policymakers, and legislators have a responsibility to act" by excluding girls and women who are transgender. Defendants do not even attempt to defend those statements as proper expert testimony.

Defendants also do not attempt to defend Dr. Carlson's statements that injuries to cisgender women will soon increase because the number of transgender participants "up till now have been small" and "recent studies have reported very large increases in the number of children and young people identifying as transgender compared to historical experience." (Dkt. No. 289-32 (Carlson Rep.) at 59.) Instead, in a footnote, Defendants assert that Dr. Brown's "opinion does not depend on the number of biological males who play women's sports." (Dkt. No. 340 (Carlson Opp.) at 15 n.11.) But Dr. Carlson plainly thought the number of transgender women competing in sports is relevant. The entire premise of Dr. Carlson's policy recommendation is that allowing girls who are transgender to participate creates "an increased possibility that a statistical outlier in terms of size, weight, speed, and strength—and potentially an extreme outlier—is now entering the [cisgender] female pool." (Dkt. No. 289-32 (Carlson Rep.) at 45.) Given the small number of transgender girls and women who compete in sports when compared to the much larger number of cisgender girls and women who compete, Dr. Carlson has no reliable basis to assert that a cisgender girl is more likely to encounter a "statistical outlier" who is transgender than a "statistical outlier" who is cisgender. Because "contact and collision sports are inherently risky," (Dkt. No. 340 (Carlson Opp.) at 17), any argument that transgender women should be categorically excluded in the name of safety must be assessed within the broader context of all the other aggregate risks that are tolerated.

5

Because Dr. Carlson concedes he is not qualified to offer policy recommendations—and Defendants do not defend his ability to do so—the Court should strike the Conclusion section of Dr. Carlson's report and preclude him from offering those opinions at summary judgment or trial.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an order excluding the proffered expert testimony of Chad T. Carlson, M.D., FACSM from consideration at summary judgment or trial.

Dated: June 2, 2022

Joshua Block*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: (214) 219-8585
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
ccharles@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO 80202-5686
Phone: (720) 566-4000
abarr@cooley.com

Respectfully submitted,

/s/ *Loree Stark*

Loree Stark (Bar No. 12936)
Nick Ward (Bar No. 13703)
AMERICAN CIVIL LIBERTIES UNION OF WEST
VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
lstark@acluwv.org

Kathleen Hartnett*
Julie Veroff*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com

Katelyn Kang*
Valeria M. Pelet del Toro*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com
**Visiting Attorneys*
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

## CERTIFICATE OF SERVICE

I, Loree Stark, do hereby certify that on this 2nd day of June, 2022, I electronically filed a true and exact copy of ***Plaintiff's Reply Memorandum of Law in Support of Motion to Exclude the Expert Testimony of Chad T. Carlson*** with the Clerk of Court and all parties using the CM/ECF System.

*/s/ Loree Stark*
Loree Stark
West Virginia Bar No. 12936

7