IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON | |
| *Plaintiff,* | |
| v. | |
| WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA | Case No. 2:21-cv-00316  Hon. Joseph R. Goodwin |
| *Defendants,* | |
| and | |
| LAINEY ARMISTEAD | |
| *Defendant-Intervenor.* | |

**DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO RECONSIDER THE GRANT OF LAINEY ARMISTEAD'S PERMISSIVE INTERVENTION**

## INTRODUCTION

According to B.P.J., Ms. Armistead has somehow managed to add too much and too little to this case. She purportedly added too much to the discovery process and too little to the summary judgment briefing. Based on these complaints, and Ms. Armistead's recent graduation, B.P.J. asks this Court to terminate her intervention.

But B.P.J. mistakes the standard for permissive intervention. A permissive intervenor does not need to maintain a "significant protectible interest" in this litigation—that's required for intervention of right. Nor must Ms. Armistead demonstrate Article III standing. She must simply share with the litigation a "common question of law or fact" and not cause undue burden or delay.

Ms. Armistead easily satisfies that standard. She provides factual context and legal arguments defending the Sports Act (W. Va. Code § 18-2-25d)—the very thing at issue in this suit. She offers a unique perspective as the only party who is biologically female, has competed in West Virginia women's sports, and has competed against male athletes. In a case of first impression that implicates the safety and fairness of women's sports in West Virginia, Ms. Armistead's continued participation will contribute not only to the robust development of the factual and legal issues, but will also further judicial economy.

Further, B.P.J.'s complaints about what Ms. Armistead has added to this litigation are meritless. Ms. Armistead's contributions to the summary judgment briefing are apparent from the extraordinary amount of space B.P.J. spent responding to her arguments. B.P.J.'s own briefing belies the argument that Ms. Armistead added too little. As to the contention that Ms. Armistead added too much to the discovery process, Ms. Armistead simply propounded discovery like every other party (including B.P.J.), and B.P.J. answered it. Nothing prevented B.P.J. from seeking protection if Ms. Armistead's discovery was objectionable, but no such protection was requested. And Ms. Armistead took care to streamline expert

discovery by naming the same experts as the State and by combining the *Daubert* briefing where possible. In short, there is nothing remotely improper about Ms. Armistead's participation in discovery. B.P.J.'s extraordinary request to exclude Ms. Armistead after the conclusion of discovery, after summary judgment briefing, and on the eve of trial should be denied.

## ARGUMENT

### I.   B.P.J. relies on the wrong standard for permissive intervention.

B.P.J. argues that Ms. Armistead no longer has a "significantly protectable interest" at stake in this litigation. Pl.'s Mem. of Law in Supp. of Mot. to Reconsider the Grant of Lainey Armistead's Permissive Intervention (Pl.'s Mem.) 4-5, ECF No. 354. But she doesn't need one. A significantly protectable interest is required of intervenors *of right*. *See Nw. Nat'l Life Ins. Co. v. Zimbro*, Nos. 89-2838, 89-2858, 1990 WL 86206, at *2 (4th Cir. June 14, 1990) (per curium). Ms. Armistead, however, was granted *permissive* intervention. Intervention Order 6, ECF No. 130.

Permissive intervenors need only a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also N. C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 927 (4th Cir. 2021). In fact, the heart of the inquiry is whether allowing the intervention will cause undue delay or prejudice, not the "significance" of the intervenor's interest. *McHenry v. Comm'r of Internal Revenue*, 677 F.3d 214, 225 (4th Cir. 2012) (calling "'undue delay' and 'prejudice'" "the core considerations delineated for consideration by Rule 24(b)(3)").[1] Absent delay or prejudice, "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with

---

[1] This also means that unlike B.P.J., Ms. Armistead does not need standing to participate. *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998) ("party who lacks standing can nonetheless take part in a case as a permissive intervenor"); *accord Grutter v. Bollinger,* 188 F.3d 394, 398 (6th Cir. 1999) ("[A]n intervenor need not have the same standing necessary to initiate a lawsuit.").

efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (cleaned up). As this Court noted, permissive intervention is proper if it will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." Intervention Order 5 (quoting *Students for Fair Admissions v. Univ. of N.C.*, 319 F.R.D. 490, 496 (M.D.N.C. 2017)).

As a few courts have observed, district courts retain the authority to reconsider an intervention in extraordinary circumstances. *See, e.g., City of Greensboro v. Guilford Cnty. Bd. of Elections*, 1:15-cv-559, 2015 WL 12752936, at *1 n.1 (M.D.N.C. Oct. 30, 2015). But the dearth of caselaw on this point demonstrates how rare this is. And a *permissive* student-intervenor's graduation does not call for such extraordinary measures—especially when the intervenor continues to meet all the requirements for permissive intervention.

Here, circumstances do not warrant reconsidering Ms. Armistead's intervention. As discussed below, Ms. Armistead continues to provide factual context and legal arguments relevant to the validity of the Sports Act; her participation has and will continue to contribute to the full development of the underlying factual issues and just adjudication of the law; and she has not caused delay or prejudice.

## II. Ms. Armistead has a valid interest in remaining in this case.

Ms. Armistead still represents the perspective of a West Virginia female athlete and has not caused undue delay or prejudice. Her continued permissive intervention at this late stage in the proceedings is necessary to promote judicial economy and ensure a full and robust understanding of the factual and legal issues at stake.

### A. Ms. Armistead still represents the perspective of a West Virginia female athlete—graduation does not change that fact.

In granting Ms. Armistead's intervention, this Court stated that "Ms. Armistead plans to defend H.B. 3293 as a member of the class of people for whom the law was written" and "[s]he will add a perspective not represented by any of the current defendants." Intervention Order 6.

All of that remains true. Ms. Armistead provides a perspective not represented by any of the other parties: that of a West Virginia female collegiate athlete. She is the only participant who has ever been—or could be[2]—a member of the class of people for whom the Sports Act was written. She is the only biologically female athlete in this case. *See* App. to Def.-Intervenor's Mot. for Summ. J. (App.) (Armistead Decl.) 1, ECF No. 286-1; *see also* App. 1440-41 (Nos. 1-4) (admitting B.P.J. is biologically male). Ms. Armistead alone has experience competing against males. *See* App. 6 (¶¶ 30-32). She alone has experience competing in a contact sport. *See id*. at 2-4. She alone has experience competing in West Virginia collegiate sports. *See id.* at 4-6.

Ms. Armistead's unexpected early graduation from WVSU does not change these facts.[3] Ms. Armistead intends to continue playing soccer in some capacity

---

[2] Ms. Armistead currently has three years of NCAA eligibility left and is open to utilizing it after law school should the right opportunity present itself. Suppl. App. to Def.-Intervenor's Mot. for Summ. J. (Supp. App.) 5 (¶ 8), ECF No. 300.

[3] As Ms. Armistead repeatedly informed B.P.J.'s counsel at her deposition, she was conflicted about whether to graduate from WVSU and pursue law school, or whether to stay at WVSU to play soccer and earn a master's degree. *See* Second Suppl. App. to Def.-Intervenor's Mot. for Summ. J. (Second Suppl. App.) 16 (50:23-24) ("I am not sure of my exact graduation plans yet."); *id*. at 18 (59:4-7) ("Because I am interested in possibly getting a Master's degree at [WVSU], and I still have three years of NCAA eligibility, which would mean I can continue playing in the fall."); *id*. at 20 (69:1-2) ("Sitting here today, I am not sure what my future holds yet.").

As Ms. Armistead also testified, she experienced unexpected health complications in the 2021-22 academic year that caused her to consider graduating early, and she

during law school, *see* Supp. App. 5 (¶ 7), and she has nearly a lifetime of experience playing soccer—including three years as a collegiate athlete at WVSU—to draw from. *See* App. 2 (¶ 4); *id.* at 3-5. Ms. Armistead has personally benefitted from fair and safe competition and wants to see single-sex competition protected for future female athletes. She cares deeply about her sport, and the future of women's sports in her adopted state.[4] Ms. Armistead's perspective as a female athlete will allow for a full factual and legal adjudication of the Sports Act.

### B. Ms. Armistead has consistently expressed her personal views about the Sports Act.

B.P.J. tries to discredit Ms. Armistead's perspective by constructing a conflict between Ms. Armistead's deposition testimony and her briefing. Pl.'s Mem. 6-7. This is baseless. Ms. Armistead has consistently presented her personal perspective in her deposition and briefing. Her years as a competitive athlete have informed her opinions about soccer, fairness, safety, women's sports, Title IX, and other relevant topics that Plaintiff's counsel avoided during her deposition. Ms. Armistead is not, as B.P.J. claims, unfamiliar with the "basic facts of this case." *Id.*

---

struggled to make that decision. *See id.* at 16 (51:14-17) ("My plans aren't set in stone yet. I had health concerns this past semester. So as long as I can figure that out and my body allows it, I would definitely want to continue playing soccer."); *see also id.* (53:20-22) ("I am not sure what the future holds yet because of the health concerns, and I have to carefully see and weigh the options."). Once Ms. Armistead made her final decision to graduate from WVSU and pursue law school, her counsel promptly notified all parties and this Court. Def.-Intervenor's Resp. to Pl.'s Mot. for Summ. J. 25 (Armistead's SJ Resp.), ECF No. 302; Supp. App. 5 (¶¶ 4-7).

[4] "Women have worked so hard to be taken seriously on the field of play, and to enjoy the same quality of opportunities as their male counterparts. I want to protect those hard-earned gains for future little girls—including, perhaps, my own future daughters. And that's why I continue to care deeply about this case and will do what's necessary to remain a part of it." Supp. App. 5 (¶10); *see also* App. 8 (¶ 47); Proposed Intervenor Lainey Armistead's Mem. in Supp. of Mot. to Intervene 13, ECF No. 95.

For example, Ms. Armistead offered her thoughts regarding the physical differences between the sexes, Second Supp. App. 25 (88:19-21) ("Women are built different than biological men. Biological men are stronger, fitter, faster, have a bigger stature, in general, than women."); the effect of the Sports Act, *id.* at 23 (81:8-10) ("I believe that keeping this law in place will result in fair and equitable playing for women in—in sports."); what she expects will happen if the Sports Act stays in place, *id.* at 24 (82:13-17) ("Again, that's not what I said. I understand that if—if this law stays in place, that women will be protected and it will keep the playing field even and equitable for women in sports."); and why she chose to intervene, *id.* at 38 (141:19-24) ("I'm aware of my blessings and opportunities that I was able to have because of the fair playing that I have seen throughout my life, and I want to make sure that I fight for that for other women, to make sure that they are not having to compete with biological males, in whatever sport that they do.").

The "facts" Ms. Armistead declined to testify to under oath were those outside her personal knowledge or expertise. Because she's "not an attorney," *id.* at 25 (86:23-24, 87:11-25), Ms. Armistead did not opine about the legal effect of a loss, *id.* at 24 (82:2-3) ("I can't speculate on what will happen if I lose. I'm not sure."); or whether the Sports Act was accomplishing its goals, *id.* at 26 (90:5-9) ("That's not for me to interpret."). Ms. Armistead also declined to testify about sports other than soccer. *Id.* at 40 (149:14-15) ("Correct. I don't run cross-country. I do know about soccer, though."); *id.* at 41 (151:3-4) ("As stated, I am not a cross-country runner, so no, I don't know."). And since Ms. Armistead does not know and has never met B.P.J., *see id.* at 22 (74:8-9), 37 (136:13-16), Ms. Armistead declined to testify to personal facts about B.P.J, *id.* at 22 (74:1-2) ("There's nothing that I know for certain about B.P.J.

other than she's the plaintiff."); *see also id.* at 39 (143:19-23) ("I am not certain for specifics on … B.P.J., but I do know that this law promotes fairness and equality for all women, including those who run cross-country at age 11 and college athletes in a contact sport, such as myself.").

### III. Ms. Armistead's participation in the case promotes judicial economy, not undue burden or prejudice.

Ms. Armistead's perspective as the sole female athlete in this litigation is "desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller*, 802 F.2d at 729 (cleaned up). As this Court noted in grating her intervention, Ms. Armistead "will add a perspective not represented by any of the current defendants." Intervention Order 6. That continues to be the case. And it would thwart judicial economy to exclude Ms. Armistead at the eleventh hour before trial—after the close of extensive discovery, following summary judgment briefing, and at the conclusion of significant *Daubert* briefing.

In support of the motion to reconsider, B.P.J. repeats many of the same arguments Plaintiff previously raised to oppose Ms. Armistead's intervention. *See generally* Pl.'s Opp'n to Mot. to Intervene, ECF No. 99. A "motion for reconsideration is not, however, an opportunity to relitigate issues already ruled upon simply because a party is dissatisfied with the outcome. *Regan v. City of Charleston*, 40 F.Supp.3d 698, 702 (D.S.C. 2014). The Court found B.P.J.'s arguments to be "mere speculation" then and should find so again now. Intervention Order 6.

First, B.P.J. complains that Ms. Armistead has unduly burdened the proceedings. Pl.'s Mem. 8-10. But unlike the county intervenors in *Mishewal*, B.P.J. does not allege that Ms. Armistead has derailed "fruitful settlement negotiations" or

become the sole "driving force" of this litigation. *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 5:09-cv-02502 EJD, 2012 WL 4717814, at *6 (N.D. Cal. Sept. 28, 2012). B.P.J. instead grumbles about Ms. Armistead's "burdensome and voluminous discovery requests," citing eighty-two requests for admission. Pl's Mem. 9. But Ms. Armistead's discovery requests were proportional to the needs of the case—even B.P.J. issued nearly fifty such requests—and neither the federal rules nor this Court's local rules numerically limit requests for admission. Ms. Armistead's interrogatories and five requests for production were likewise reasonable.[5]

Second, B.P.J. claims that Ms. Armistead's involvement "significantly increased the amount of expert discovery." *Id.* But every expert named by Ms. Armistead (Drs. Levine, Cantor, Brown, and Carlson) was first named by the State of West Virginia in June 2021—more than two months before Ms. Armistead moved to intervene, and six months before the Court granted her intervention. *See* State of W. Va's Resp. in Opp. to Pl.'s Mot. for Prelim. Inj. Exs. A, B, E, G, ECF Nos. 49-1, 49-2, 49-5, 49-7. Two of those expert witnesses—Drs. Levine and Cantor—were named to rebut B.P.J.'s four irrelevant and unqualified experts. *See* Def.-Intervenor and State of W. Va.'s Mem. in Resp. to Pl.'s Mot. To Exclude Dr. Levine 1-2, ECF No. Doc 341 (noting Dr. Levine was produced in rebuttal). The other two experts "supported" by Ms. Armistead—Drs. Carlson and Brown—are the only two experts in this litigation who testify to sports science and safety, and both were also named by the State. *See* App. 116-275 (Expert Reports of Dr. Brown and Dr. Carlson). To avoid

---

[5] Notably, B.P.J. did not seek contemporaneous relief from any of the discovery issued by Ms. Armistead. Instead, the parties worked through their various objections to each other's discovery requests without anyone filing a motion to compel or a motion for a protective order. It is therefore disingenuous for B.P.J. now to complain about discovery that was willingly answered.

redundancy, Ms. Armistead and the State used the same expert witnesses and filed combined *Daubert* briefs on all parties' experts except for Dr. Fry, when differences in argument required separate briefs. *Compare* Mem. in Supp. of Def.-Intervenor's Mot. to Exclude Expert Testimony of Mary Fry 10-12, ECF No. 310 (arguing that Dr. Fry's opinion about school's prioritizing participation over performance is an inadmissible public-policy opinion); 12-14 (arguing that the relevant literature relied upon by Dr. Fry undermines her position) *with* Mem. by State of W. Va. in Supp. of Mot. to Strike Expert Opinion of Mary Fry Br. 5-7, ECF No. 306 (arguing that Dr. Fry's opinions on sports benefits are irrelevant and unreliable); 7-10 (arguing that Dr. Fry's opinions on fairness are beyond her expertise and irrelevant). It is therefore clear that Ms. Armistead worked diligently *not* to add to the burden of expert discovery except where necessary.

Finally, B.P.J. has not been prejudiced in any way. As Ms. Armistead previously explained in her Reply in Support of Motion for Summary Judgment 9-10, ECF No. 347, the female athlete declarations were both timely disclosed and appropriate. She will not reiterate those arguments here. Moreover, B.P.J. chose to bring a case "where there are [] four Defendants and four separate sets of defense counsel"—and has vigorously opposed dismissing any Defendant—so some overlap is to be expected. Pl.'s Mem. 10. But B.P.J. has failed to identify any actual prejudice suffered due to Ms. Armistead's participation. The Court should not credit this assertion.

## IV. Ms. Armistead has made arguments that are unique from other Defendants.

Unique arguments are a not required of permissive intervenors. But Ms. Armistead has nonetheless contributed to the factual and legal development of the

issues through her own testimony and unique arguments. For example, Ms. Armistead was the only Defendant to argue that—regardless of B.P.J.'s physiology, gender identity, or medical history—the Sports Act can constitutionally be applied to B.P.J. because the Act provides more than a "reasonable fit" with the State's significant interests. *See* Def.-Intervenor's Mem. in Supp. of Mot. for Summ. J. (Armistead's SJ Br.) 15, ECF No. 288; Armistead's SJ Resp. 19. Ms. Armistead was also the only defendant to discuss the *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256 (1979), "twofold inquiry" framework, under which courts first consider whether the statutory classification overtly or covertly preferred a particular class and second consider whether the effects reflected invidious discrimination. *See* Armistead's SJ Br. 19 (Doc. 288). But perhaps most notably, B.P.J. spends considerable time briefing points uniquely raised by Ms. Armistead, *see* Consolidated Mem. in Opp'n to Defs.' Mots. for Summ. J. 33, 34, 36, 40, ECF No. 331, and Consolidated Reply in Supp. of Pl.'s Mot. for Summ. J.  14, 15, 16, 17, 25, 29, 35, 36, ECF No. 357—which is a curious choice if Ms. Armistead's arguments merely mimicked the State's. In reality, it is clear from the briefing that Ms. Armistead *has* added substantially to the legal arguments made in this case, and this motion is a transparent attempt to avoid Ms. Armistead's contribution by kicking her out. Nothing in the law of permissive intervention justifies such a request.

## CONCLUSION

Ms. Armistead continues to have a valid interest in remaining in this case. She has a personal perspective unique from the other Defendants, has contributed to the full factual and legal development of this case, and has not burdened or prejudiced the proceedings. As discovery has closed and this case is currently on the eve of trial, it is in the best interests of judicial economy to allow Ms. Armistead to remain a permissive intervenor.

Respectfully submitted this 9th day of June, 2022.

*/s/ Brandon S. Steele*

Tyson C. Langhofer, VA Bar No. 95204*
Rachel A. Csutoros, MA Bar No. 706225*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-2119
(571) 707-4790 Fax
tlanghofer@adflegal.org
rcsutoros@adflegal.org

Travis C. Barham, GA Bar No. 753251*
Alliance Defending Freedom
1000 Hurricane Shoals Road NE, Ste D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-0774 Fax
tbarham@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com

Brandon Steele, WV Bar No. 12423
Joshua D. Brown, WV Bar No. 12652
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com
joshua_brown05@hotmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Roger G. Brooks, NC Bar No. 16317*
Henry W. Frampton, IV, SC Bar No. 75314*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org
rbrooks@adflegal.org
hframpton@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

*Visiting Attorneys*
*Attorneys for Defendant-Intervenor*

11

**I**N THE **U**NITED **S**TATES **D**ISTRICT **C**OURT
**F**OR THE **S**OUTHERN **D**ISTRICT OF **W**EST **V**IRGINIA
**C**HARLESTON **D**IVISION

B.P.J., by her next friend and mother,
HEATHER JACKSON

*Plaintiff,*

v.

WEST VIRGINIA STATE BOARD OF
EDUCATION, HARRISON COUNTY BOARD
OF EDUCATION, WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION, W. CLAYTON BURCH in his
official capacity as State Superintendent,
DORA STUTLER in her official capacity as
Harrison County Superintendent, and THE
STATE OF WEST VIRGINIA

*Defendants,*

and

LAINEY ARMISTEAD

*Defendant-Intervenor.*

Case No. 2:21-cv-00316

Hon. Joseph R. Goodwin

**C**ERTIFICATE OF **S**ERVICE

I, Brandon Steele, hereby certify that on June 9, 2022, I electronically filed a true and exact copy of ***Defendant-Intervenor's Response in Opposition to Plaintiff's Motion to Reconsider the Grant of Lainey Armistead's Permissive Intervention*** with the Clerk of Court and all parties using the CM/ECF system.

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com

*Attorney for Defendant-Intervenor*