# EXHIBIT 2

```
 1            IN THE UNITED STATES DISTRICT COURT
 2        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 3                   CHARLESTON DIVISION
    _____
 4  B.P.J. by her next friend and)
 5  mother, HEATHER JACKSON,      )
 6            Plaintiff,          )
       vs.                       ) Case No.
 7  WEST VIRGINIA STATE BOARD OF ) 2:21-cv-00316
 8  EDUCATION, HARRISON COUNTY    )
    BOARD OF EDUCATION, WEST      )
 9  VIRGINIA SECONDARY SCHOOL     )
10  ACTIVITIES COMMISSION, W.     )
    CLAYTON BURCH in his official)
11  capacity as State             )
12  Superintendent, DORA STUTLER,)
    in her official capacity as   )
13  Harrison County
14  Superintendent, and THE STATE)
15  OF WEST VIRGINIA,             )
16            Defendants.         )
            And                   )
17  LAINEY ARMISTEAD,             )
18            Defendant-Intervenor.)
    _____)
19            REMOTE VIDEOTAPED DEPOSITION OF
20                   DORA STUTLER
                       AND
21                  DAVE MAZZA
               Tuesday, March 8, 2022
22                  Volume I
    Reported by:
23  ALEXIS KAGAY, CSR No. 13795
24  Job No. 5079542
25  PAGES 1 - 240
```

Page 1

```
 1      folder, I'm going to introduce to you a document
 2      that's been marked as Exhibit 24.  Please let me
 3      know when you have it.
 4              (Exhibit 24 was marked for identification
 5          by the court reporter and is attached hereto.)   12:42:27
 6          THE WITNESS:  It's there.  I have that.
 7   BY MS. REINHARDT:
 8      Q   Is this -- I'll let you flip through it for a
 9   moment, if you would like to, but my question is, is
10   this the document that you reviewed yesterday?          12:42:43
11      A   Yes.
12      Q   Have you prepared to testify regarding the
13   topics listed on the 30(b)(6) notice?
14      A   Yes.
15      Q   Do you understand --                             12:42:59
16          MS. DENIKER:  Excuse me, Ms. Reinhardt, just
17   to -- just to clarify, we had a discussion off the
18   record, Ms. Stutler will be testifying with regard
19   to topics except those topics the plaintiff has
20   agreed to withdraw, which were topics 3, 6, 9, 12      12:43:16
21   and 15.  And she also will not be testifying with
22   regard to topics 10 and 11, as another witness will
23   be testifying on those topics.
24          MS. REINHARDT:  Understood.  Thank you for
25   putting that on the record.                            12:43:36
```

Page 21

```
 1    BY MS. REINHARDT:

 2        Q    I'll only be asking you about the topics your

 3    attorney has just confirmed, but I'd like to go

 4    through them now to make sure that you understand

 5    each of these topics, if that's okay with you, Mrs.      12:43:46

 6    Stutler.

 7        A    Yes.

 8        Q    Wonderful.  So let's look at topic 1.

 9             Do you understand this topic?

10        A    I do.                                           12:44:03

11        Q    Did you review any documents related to this

12    topic?

13        A    We had a discussion about --

14             MS. DENIKER:  I'm going to -- so, again, I'm

15    going to instruct you not to answer and provide any      12:44:11

16    information about communications you had with

17    counsel about --

18             THE WITNESS:  Okay.

19             MS. DENIKER:  -- this matter.

20    BY MS. REINHARDT:                                        12:44:24

21        Q    As I understand it, you reviewed several

22    documents yesterday with your counsel, as well as a

23    few other folks related to this case.

24             Were there any documents or conversations not

25    with your counsel that helped you prepare for this       12:44:34
```

Page 22

```
 1    the record at 2:54 p.m., and this is the beginning
 2    of Media Unit No. 3.
 3          Go ahead.
 4    BY MS. REINHARDT:
 5       Q   Have you heard -- I'll rephrase.              02:53:57
 6          Have you, as Dora Stutler, heard of
 7    West Virginia Secondary School Activities
 8    Commission?
 9       A   Yes.
10       Q   Can you tell me what it is?                   02:54:06
11          MS. GREEN:  Object to the form.
12          This is Roberta Green on behalf of WVSSAC.
13          THE WITNESS:  It's -- it's a governing body,
14    but it's made up of member -- members of the -- of
15    the schools.  It's a principals organization with    02:54:26
16    the governing body of the SSAC.
17    BY MS. REINHARDT:
18       Q   Is it okay if I refer to it as "WVSSAC" going
19    forward?
20       A   Yes.                                          02:54:42
21       Q   Is the county board able to delegate powers
22    to another body?
23       A   Can you rephrase that or ask that in another
24    way?
25       Q   Of course.  I can ask a more direct question. 02:54:55
```

Page 71

```
 1          Has the county board delegated any of its
 2     powers, as it relates to sports, to WVSSAC?
 3          MS. DENIKER:  Object to the form.
 4          MS. GREEN:  Also object to the form.
 5          THE WITNESS:  No.                          02:55:13
 6     BY MS. REINHARDT:
 7       Q   Has the county board delegated any of its
 8     powers, as it relates to sports, to any other entity
 9     other than the County itself?
10          MS. DENIKER:  Objection to the form.       02:55:31
11          MS. GREEN:  Object to the form.
12          THE WITNESS:  Can we talk about what the
13     SSAC -- I mean, how it -- the oversight of the SSAC
14     for counties in general?  Because the confusion is,
15     is we don't -- my board, delegating authority -- I   02:55:53
16     mean, my board, we're following state policy and
17     guideline.  That's what we do.
18          The West Virginia SSAC is an oversight board
19     and provides guidance for our schools and our
20     athletic programs.  It's a guiding body.          02:56:11
21          So I don't know that my board, if you're --
22     well, see, I'm thinking elected members.  You're --
23     you're thinking of the board in general.
24          I'm trying to just explain the relationship.
25     I mean, we -- we have members of the SSAC.         02:56:28
```

Page 72

```
 1    They're -- it's a member body.  It's our principals.
 2          MS. DENIKER:  This is Susan Deniker.  I just
 3    want to also state that to the extent we're talking
 4    about the relationship between the Harrison County
 5    board and the WVSSAC, I believe that that is topic     02:56:43
 6    10, and we've designated a different witness for
 7    that.
 8          MS. REINHARDT:  Understood.  I am asking
 9    Superintendent Stutler questions as it relates to
10    topic 8 at this moment.                                02:56:54
11    BY MS. REINHARDT:
12       Q    Does WVSSAC have any powers as it relates to
13    sports?
14          MS. GREEN:  Object to the form.
15          MS. DENIKER:  Same objection.                    02:57:09
16          THE WITNESS:  Yes.  They set guidelines for
17    us to follow.
18    BY MS. REINHARDT:
19       Q    When you say "us," they set guidelines for
20    the County Board of Education to follow?               02:57:18
21          MS. GREEN:  Object to the form.
22          THE WITNESS:  There are athletic -- yes, for
23    our athletics, in each -- our programs need to
24    follow.  There's certain examples.  Transfer of a --
25    of a student from one school to another.  There's      02:57:34
```

Page 73

```
1     guidelines.  They have to follow that.  There's

2     eligibility requirements.  Those are all -- but

3     those are all rules that were voted on as the -- the

4     principals vote on that as members of the West

5     Virginia SSAC.  But there is a governing body that        02:57:53

6     govern all of our sport programs.

7   BY MS. REINHARDT:

8       Q   I apologize if I'm not quite understanding.

9     So if I can just have a little bit of clarity, I'm

10     wondering -- so I'll ask several questions and maybe   02:58:06

11     that will help get me to the point of understanding.

12          WVSSAC provides guidelines, and those are

13     presented to the county board, and the county board

14     must follow those guidelines.

15          Is that a correct summary of what you've          02:58:26

16     said?

17          MS. DENIKER:  Object to the form.

18          MS. GREEN:  Objection to the form.

19          THE WITNESS:  I guess my frustration is I'm

20     not sure what you're asking me.  I know how the        02:58:40

21     West Virginia SSAC works.  I know how it governs our

22     sporting events.  And they work with our

23     administrators and our ADs to put programs together

24     for our kids and their athletics.  It's -- it's a --

25     it's a guide.  They provide guidelines for them.       02:58:59
```

Page 74

1          And there are -- if we do not follow certain

2     things, and there is a -- someone says, hey, I don't

3     agree with that, yes, there are ways to appeal that,

4     and there could be hearings for athletes.

5     BY MS. REINHARDT:                                      02:59:17

6        Q   So --

7        A   But there are rules that we have to follow

8     for our athletic programs.

9        Q   And those rules are provided by WVSSAC?

10           MS. GREEN:  Object to the form.                 02:59:31

11           MS. DENIKER:  Objection to the form.

12           THE WITNESS:  Yes.

13    BY MS. REINHARDT:

14       Q   And can you please describe the process to me

15    if the county board doesn't agree with a guideline     02:59:40

16    or a rule set by WVSSAC?

17           MS. GREEN:  Object to the form.

18           THE WITNESS:  Well, I -- I think you have to

19    go back to what the -- how their -- their rules come

20    to us.  You have your administrators all as a          02:59:56

21    part -- they're members of this.  So they're the

22    ones creating these rules, voting on these rules.

23           So we -- once those rules are passed by a

24    majority of those members, we follow the rules.

25    ///

Page 75

```
 1     BY MS. REINHARDT:

 2        Q   And what happens if there's a dispute about

 3     implementing a certain rule?

 4            MS. GREEN:  Object to the form.

 5            MS. DENIKER:  Objection to the form.          03:00:25

 6            I also believe that this is a topic 10 issue.

 7            MS. REINHARDT:  I'm going to ask the witness

 8     to continue to answer, as I believe this falls under

 9     topic 8.

10            MS. DENIKER:  And I will permit her to answer   03:00:37

11     with the understanding that I will not permit

12     multiple witnesses to be asked the same questions

13     with regards to the same issues.

14            MS. REINHARDT:  Understood.  Thank you.

15     BY MS. REINHARDT:                                     03:00:53

16        Q   Would you like me to repeat my question?

17        A   Yes, please.

18            MS. REINHARDT:  Could the court reporter

19     please read back my last question?

20            THE REPORTER:  Yes.                            03:01:11

21            (Record read.)

22            MS. GREEN:  Object to the form.

23            MS. DENIKER:  Same objections I've already

24     raised.

25            THE WITNESS:  I can tell you, in Harrison      03:01:23
```

Page 76

```
 1    County, our ADs and our administrators are following

 2    those rules.

 3    BY MS. REINHARDT:

 4       Q   So all of the rules set by WVSSAC are

 5    currently being followed by the County Board of        03:01:38

 6    Education?

 7           MS. GREEN:  Object to the form.

 8           MS. REINHARDT:  I can also --

 9           THE WITNESS:  That I'm aware of.

10           MS. REINHARDT:  Oh, I apologize.              03:01:51

11           Would Mrs. Deniker and Mrs. Green make a

12    standing objection to these topics?

13           MS. GREEN:  I'm perfectly fine to keep

14    objecting.  It's possible some of them would be,

15    yeah.  But my -- my objections go to foundation and   03:02:05

16    scope, and I'm not sure what else, so...

17           MS. DENIKER:  At this point, I don't see a

18    need for a continuing objection, but if we get to a

19    place where I think that that is appropriate, I will

20    -- we can discuss that.  Thank you for that offer.    03:02:25

21           MS. REINHARDT:  No problem.

22    BY MS. REINHARDT:

23       Q   You may answer, Superintendent Stutler.

24       A   Are you asking if a -- an administrator has

25    an objection to the rule or the athlete has an        03:02:36
```

Page 77

1   objection to the rule?

2       Q    I'm asking about the County Board of

3   Education.  So if -- if it makes more sense, an

4   administrator.

5           MS. DENIKER:  Objection to the form.          03:02:54

6           THE WITNESS:  I am unaware of any objections

7   to the SSAC rules in Harrison County from our

8   administrators.

9   BY MS. REINHARDT:

10      Q    Thank you.  Does the County determine player   03:03:05

11  eligibility?

12          MS. GREEN:  Object to the form.

13          MS. DENIKER:  Also object to the form.

14          And again, I'm going to object that this is

15  beyond the scope of topic 9, and I believe that it    03:03:27

16  clearly falls within -- within topic 10.

17  BY MS. REINHARDT:

18      Q    I'm going to ask you to go into the "Marked

19  Exhibit" folder and please pull up Exhibit 24.

20          Please let me know once you have it up.        03:03:56

21      A    Yes, it's there.

22      Q    So if you look at topic 8, which I believe,

23  at the bottom, is page 7, it states (as read):

24          "The Harrison County Board and the

25          County Superintendent's current              03:04:15

Page 78

```
 1          and/or expected role in

 2          implementing, monitoring,

 3          supervising, regulating, and

 4          enforcing H.B. 3293, including any

 5          delegation of authority to or          03:04:24

 6          supervision over the West Virginia

 7          Secondary School Activities

 8          Commission."

 9          Did you prepare for this topic?

10     A    I did.                                 03:04:34

11     Q    And can you please remind us what you did in

12   preparation of topic 8?

13          MS. DENIKER:  And again, I will instruct you

14   not to answer about any communications you had with

15   counsel.                                      03:04:49

16          THE WITNESS:  Reading over documents in -- in

17   prep for this meeting today.

18   BY MS. REINHARDT:

19     Q    And --

20     A    And House Bill 3293.                    03:05:00

21     Q    And which documents were those?

22     A    I read the house bill, 3293.

23     Q    That was the only document you read related

24   to this topic?

25          MS. DENIKER:  Objection to the extent that  03:05:16
```

Page 79

```
 1    this has been asked and answered.
 2           MR. TRYON:  Objection.
 3           David Tryon.
 4    BY MS. REINHARDT:
 5       Q   Were there any additional documents that you    03:05:25
 6    reviewed?
 7           MS. DENIKER:  Same objection.
 8           THE WITNESS:  Information on the secondary
 9    school activities commission.
10    BY MS. REINHARDT:                                       03:05:37
11       Q   What information on the West Virginia
12    Secondary School Activities Commission?
13       A   When they're governing body and how they
14    interact with counsels in their role.
15           MS. REINHARDT:  So, Susan, I believe these      03:05:54
16    fall directly under the questions that I'm asking,
17    and it sounds like Superintendent Stutler is
18    prepared to answer these questions.
19           MS. DENIKER:  Well, I object to that because
20    I believe that topic 8 is in the context of House      03:06:06
21    Bill 3293.  You're asking general questions with
22    regard to the relationship between Harrison County
23    Board of Education and the WVSSAC, which I believe
24    are within the scope of topic 10.  I -- I understand
25    topic 8 to be in the context solely of House Bill      03:06:23
```

Page 80

```
1     3293.

2          MS. REINHARDT:  I will continue to set a

3     foundation, and I will allow you to have a standing

4     objection, if you would like, or you can continue to

5     object.                                          03:06:36

6     BY MS. REINHARDT:

7        Q   But I would ask you, Superintendent Stutler,

8     if the county board determines player eligibility.

9          MS. GREEN:  Object to the form.

10         MS. DENIKER:  I object to the form, too.      03:06:48

11         And I just want to say one more time that I

12    will object to you asking these general questions of

13    a different witness if you get -- if you have these

14    questions asked and answered of this witness.

15         MS. REINHARDT:  Understood.                   03:07:01

16         MS. DENIKER:  And to the extent you do not

17    know the answers to the question --

18         THE WITNESS:  Just say "I don't know"?

19         MS. DENIKER:  -- you may answer accordingly.

20         THE WITNESS:  Eligibility is -- there's a      03:07:13

21    guideline for what eligibility -- the requirements

22    for eligibility for a student athlete.

23    BY MS. REINHARDT:

24       Q   And is that guideline through the County

25    Board of Education?                                03:07:23
```

Page 81

```
 1              MS. DENIKER:  Objection to form.

 2              THE WITNESS:  No.  It's SSAC rules.

 3      BY MS. REINHARDT:

 4          Q    What happens if there's a dispute between the

 5      county board and WVSSAC as it pertains to player        03:07:32

 6      eligibility?

 7              MS. GREEN:  Object to the form.

 8              MS. DENIKER:  Objection to the form.

 9              THE WITNESS:  I am unaware of any objections

10      with my ADs, my school administrators, with SSAC        03:07:49

11      rules.

12      BY MS. REINHARDT:

13          Q    Is there a process in place for a dispute

14      between the county board and WVSSAC regarding their

15      guidelines?                                              03:08:06

16              MS. GREEN:  Object to the form.

17          A    There is a process for a student

18      athlete or -- yeah, an athlete.  If they disagree

19      with something that the AD or the coach or the

20      administrator has said, they can ask for a hearing.     03:08:28

21      BY MS. REINHARDT:

22          Q    And would this also be true for H.B. 3293?

23              MS. GREEN:  Object to the form.

24              MS. DENIKER:  Objection to the form.

25              MR. TRYON:  I'm going to join the objection.     03:08:48
```

Page 82

```
 1              THE WITNESS:  I think I've said this.  When

 2     the county board gets a new law, we -- we have to

 3     abide by that rule.  It was not our rule.  And the

 4     county board is given those rules; we have to abide

 5     by those, period.                                04:50:27

 6     BY MS. REINHARDT:

 7         Q   I'm wondering if the county board supported

 8     H.B. 3293 when it was being considered by the

 9     legislation.

10              MS. DENIKER:  Same objection to the form.  04:50:43

11              THE WITNESS:  I'm not going to -- I don't

12     know how to really answer that other than we support

13     all of our students in the sense that we need to

14     make them comfortable and aware and -- and support

15     them in their surroundings.                        04:50:58

16     BY MS. REINHARDT:

17         Q   So you are not aware of any rule prior to

18     H.B. 3293 in West -- where a school in West Virginia

19     had to follow the gender in WVEIS in order for a

20     student to participate on a sports team?           04:51:14

21              MR. TRYON:  Objection.

22              MS. GREEN:  Object to the form.

23              THE WITNESS:  I'm not aware of any other

24     school in West Virginia.

25     ///
```

Page 145

```
 1    BY MS. REINHARDT:

 2        Q   Is there a school in West Virginia that you

 3    know had to review WVEIS in order to determine which

 4    sports team a student would play on?

 5            MS. DENIKER:  Objection to form.            04:51:39

 6            THE WITNESS:  I -- I believe you're asking

 7    if -- and I'm -- tell me if I'm wrong -- if all

 8    schools follow the same rules when they're

 9    rostering.  I'm -- I'm unaware of anything that

10    would be different.  We're -- we're given guidelines   04:51:55

11    when we roster students.

12    BY MS. REINHARDT:

13        Q   And --

14        A   And I would believe that ADs and

15    administrators would be following those rules.        04:52:05

16        Q   And so in accordance with those rules,

17    rosters are reviewed before students are designated

18    to a specific sports team?

19            MS. GREEN:  Object to the form.

20            THE WITNESS:  I -- I just -- I -- I think I    04:52:19

21    just want to say, I -- the only thing I know about

22    rostering is that there's a bulk of information

23    that's pulled over to that roster from that student,

24    for student information.  I am not an expert on

25    rostering and sports by no means.                     04:52:32
```

Page 146

```
1          MS. DENIKER:  I'll object to the form
2     belatedly because I didn't get it in in time and
3     also state that to the extent that this relates to a
4     topic to be covered by another witness, that it's
5     more appropriate to be asked of that witness.          04:52:51
6          MS. REINHARDT:  Understood.  I'll save that
7     line of questioning for another witness.  Thank you.
8          MS. DENIKER:  Thank you.
9     BY MS. REINHARDT:
10         Q    Are you familiar with Title IX?             04:53:02
11         A    I am.
12         Q    Does the county board have a Title IX policy?
13         A    It's included in our -- we have a -- a policy
14    that's a safe and supportive schools policy, and
15    it's all included in there.                           04:53:22
16         Q    And without disclosing any identities of any
17    students, has the county board received any Title IX
18    complaints from a transgender student?
19         MS. DENIKER:  I'm going to object to the
20    extent that I believe that this is beyond the scope   04:53:43
21    of the topics set forth for the 30(b)(6) deposition.
22         If you know, I'm going to allow you to answer
23    this question, but I may object to any further
24    questioning on those.
25         MS. REINHARDT:  Understood.                      04:53:58
```

Page 147

```
 1              THE WITNESS:  Yes.
 2      BY MS. REINHARDT:
 3          Q    Does -- did any of those complaints relate to
 4      student sports?
 5              MS. DENIKER:  Same objection.  I'll --        04:54:20
 6              (Simultaneous speaking.)
 7              MS. GREEN:  Object to the form.
 8              THE WITNESS:  No.
 9      BY MS. REINHARDT:
10          Q    Has the county board ever been investigated   04:54:29
11      by the Department of Education for Title IX
12      violations?
13              MS. DENIKER:  Objection to the form.  And I
14      do believe that you are now well beyond the scope of
15      the topic.  So if you can show me where this would     04:54:37
16      fall under a topic, I will reconsider my objection.
17              MS. REINHARDT:  Yes, I believe it falls under
18      two topics.  One second.
19              So I'm asking in connection, for background
20      information, as we discussed under topic 1,            04:55:04
21      Sarah Starkey was discussed, and I'm trying to get
22      more background information on the Title IX office,
23      their role and her role and what would be involved
24      of Sarah Starkey and her roles.
25              I'm also asking as it relates to topic 7,       04:55:23
```

Veritext Legal Solutions
866 299-5127

```
1    "participation of transgender students in

2    school-sponsored sports in Harrison County."

3         MS. DENIKER:  Well, I believe that that

4    question is beyond the scope of both of those

5    topics; and, therefore, I object to the line of        04:55:35

6    questioning about other Title IX complaints that may

7    have been received.

8         MS. REINHARDT:  I'm going to --

9         MS. DENIKER:  For this witness to answer a

10   question related to Title IX complaints about --       04:55:48

11   from transgender students involving school sports,

12   the witness has answered that there are not any.

13        I do not believe that further questioning on

14   other Title IX complaints is appropriate or within

15   the topics presented.                                  04:56:01

16        MS. REINHARDT:  That is my final question, if

17   the witness could please answer.

18        MS. DENIKER:  Is the question just that has

19   the County ever --

20        Please read the back the question.  I need to     04:56:17

21   hear what it is again.

22        MS. REINHARDT:  If the court reporter

23   wouldn't mind, please.

24        THE REPORTER:  Yes.  Give me one second.

25        (Record read.)                                    04:56:55
```

Page 149

```
 1           MS. DENIKER:  And I'm going to ask for --
 2    this is Susan Deniker again.
 3           What is the scope of timing on your question,
 4    Ms. Reinhardt?
 5           MS. REINHARDT:  It will be from January 1st,      04:57:03
 6    2019, to present.
 7           THE WITNESS:  No.
 8    BY MS. REINHARDT:
 9       Q   Thank you.  And just as one last final
10    follow-up question, has the county board implemented   04:57:12
11    any Title IX policies pertaining to transgender
12    students' participation in sports?
13       A   No.
14           MS. REINHARDT:  Thank you very much,
15    Superintendent Stutler.  I believe that opposing      04:57:26
16    counsel may have a few questions for you.
17           THE WITNESS:  Thank you.
18
19                      EXAMINATION
20    BY MS. GREEN:                                          04:57:34
21       Q   Hello, Superintendent Stutler.  This is
22    Roberta Green with WVSSAC --
23           MS. GREEN:  Kelly, did -- were you guys
24    hopping on to go first?  Okay.  I'll just leap to
25    the front of the line, then.                           04:58:02
```

Page 150

```
 1              (Recess.)

 2              THE VIDEOGRAPHER:  All right.  We are back on

 3       the record at 6:19 p.m., and this is the beginning

 4       of Media Unit No. 5.

 5              Can we please swear in the witness.         06:19:02

 6              (Witness sworn.)

 7              THE VIDEOGRAPHER:  And I'll just mention,

 8       this is the beginning of David Mazza's testimony.

 9              Go ahead.  Thank you.

10

11                       DAVE MAZZA,

12       having been administered an oath, was examined and

13       testified as follows:

14                        EXAMINATION

15       BY MS. REINHARDT:

16       Q    Hi, Mr. Mazza.  How are you doing today?

17       A    Good.  How are you doing?

18       Q    I'm doing well.

19            Is it okay if I call you "Principal Mazza"

20       for the point of this deposition?              06:19:39

21       A    Yes, you can call me "Principal Mazza," yes.

22       Q    Great.  And have you ever been deposed

23       before?

24       A    I have not.

25       Q    Have you ever testified in a court of law    06:19:46
```

Page 197

```
1        Q    And did you review any documentation related

2    to topics 10 and 11 in preparation for today's

3    deposition?

4        A    I did.

5        Q    And were those the same documents that you've    06:27:15

6    already -- you've already disclosed?

7        A    I believe so, yes.

8        Q    Wonderful.  And looking at this exhibit, can

9    you please review topics 1 through 15 and let me

10   know if you've already viewed these -- reviewed       06:27:35

11   these topics with counsel.

12        MS. DENIKER:  I'm going to object to -- that

13   question calls for attorney-client privileged

14   communications.  You can ask him if he -- if he's

15   reviewed the Notice of Deposition, but I'm going to    06:28:00

16   instruct him not to answer as to whether or not he

17   reviewed topics with counsel.

18        MS. REINHARDT:  Understood.

19   BY MS. REINHARDT:

20        Q    Did you review these topics in preparation    06:28:07

21   for today's deposition?

22        A    I've looked them over.

23        Q    Thank you.  And for purposes of the record,

24   we have previously spoken with

25   Superintendent Stutler and asked her a number of       06:28:22
```

                                                    Page 204

```
 1    questions related to these topics.  Today, we'll
 2    only be asking you about topics 10 and 11.  Is that
 3    understood?
 4        A    That is understood.
 5        Q    And I'm just briefly going to go over two          06:28:34
 6    terms with you.  So the first one is the word
 7    "transgender."  When I use the word "transgender,"
 8    I'm referring to someone whose gender identity does
 9    not match the sex they were assigned at birth.
10            So, for example, if someone was assigned male     06:28:51
11    at birth, but they identify as female, that person
12    would be a transgender girl or woman.
13            Do you understand how I am referring to that
14    term?
15            MR. TRYON:  Objection.                            06:29:04
16            THE WITNESS:  I do.
17    BY MS. REINHARDT:
18        Q    Thank you.  And, likewise, I'll be asking the
19    term "cisgender."  When I use the term "cisgender,"
20    I am referring to someone whose gender identity          06:29:14
21    matches the sex they were assigned at birth.
22            So as an example, if someone was assigned
23    male at birth and they identify as male, that person
24    would be a cisgender boy or man.
25            Do you understand how I'm referring to that       06:29:28
```

Page 205