IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B. P. J., by her next friend and mother,
HEATHER JACKSON,

    Plaintiff,

v.

WEST VIRGINIA STATE BOARD OF
EDUCATION, HARRISON COUNTY
BOARD OF EDUCATION, WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION, W. CLAYTON BURCH, in
his official Capacity as State Superintendent,
DORA STUTLER, in her official capacity as
Harrison County Superintendent, and THE
STATE OF WEST VIRGINIA,

    Defendants.

and LAINEY ARMISTEAD,

    Intervenor Defendant.

CIVIL ACTION NO. 2:21-cv-00316
Judge Joseph R. Goodwin

**MEMORANDUM IN SUPPORT OF DEFENDANT STATE OF WEST VIRGINIA'S
MOTION IN LIMINE TO EXCLUDE SEVERAL LEGISLATORS' STATEMENTS
(HEARSAY AND RELEVANCE)**

## BACKGROUND

In April 2021, the West Virginia Legislature enacted House Bill 3293 (the "Sports Law"), which protects the integrity of female sports and the safety of biological female athletes in competitive and contact sports and furthers the purposes of Title IX. Plaintiff brought this action challenging the validity of the statute based on the Equal Protection Clause and Title IX. Plaintiff has alleged, among other things, that H.B. 3293 is the product of animus and Plaintiff has submitted motions and briefs to the Court proffering hearsay statements to support that argument.

## ARGUMENT

While the hearsay rule can present frequent challenges in application, proper application is critical in ascertaining the truth of averments or accusations. "A person who relates a hearsay is

not obliged to enter into any particulars, to answer any questions, to solve any difficulties, to reconcile any contradictions, to explain any obscurities, to remove any ambiguities; he entrenches himself in the simple assertion that he was told so, and leaves the burden entirely on his dead or absent author." KENNETH S. BROUN ET AL., *The reasons for the rule against hearsay; exceptions to the rule*, in MCCORMICK ON EVIDENCE §245 (8th ed. 2020).

In Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl. MSJ. Memo.," ECF No. 291) and Reply to the State's Brief in Opposition to its Motion for Summary Judgment ("Pl. Reply to MSJ," ECF 357), Plaintiff speculates that the Legislature enacted H.B. 3293 on a foundation of "fear and disapproval of transgender women" (Pl. MSJ. Memo. at 33; Pl. Reply to MSJ at 16) and out of "discomfort or moral disapproval." Pl. MSJ. Memo. at 34. Because of these assertions, Plaintiff further avers that the statute is a product of animus. Nevertheless, the only evidence provided in support of these serial accusations comes from statements, comments, and Facebook "likes" allegedly made by some legislators (Pl. MSJ. Memo. at 8, 21 n.8), which Plaintiff mischaracterized as "legislative history." Plaintiff has not obtained affidavits from any of these parties or sought their depositions wherein the accuracy, meaning, intent, or truthfulness of their statements could be ascertained. Rather, these isolated statements are hearsay and are not relevant. Therefore, they are not admissible.

A. **The Legislators' Statements Are Hearsay.**

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c) (1)-(2). Hearsay is inadmissible unless there is an applicable exception. Fed. R. Evid. 802.

The Plaintiff cites several Legislators' statements in an effort to show that they acted out of animus rather than for legitimate purposes. For those statements to have any relevance to that claim of animus, the statements must be truthful statements of those declarants as discussed below.

2

Some of the Plaintiff's previously proffered legislators' statements and the concerns attendant to those proffers are as follows:

1. "[D]uring the debate over the bill in the Senate, one State Senator favorably [orally] shared a constituent letter stating that the 'trans movement is an attack upon womanhood.'" Pl.'s Reply to MSJ. at 17, ECF No. 357. Plaintiff's characterization of the Senator's recitation of the quote cannot be permitted because it is just that: counsel's characterization. Beyond that, the limited out-of-context quote being referenced in that filing is itself hearsay. First, Plaintiff's evidence of this statement is a partial transcript transcribed[1] and prepared by Plaintiff's counsel, Loree Stark. ECF No. 1-1. Loree Stark (counsel of record in this case) states, "[t]he following [transcript] is true[.]" This is hearsay (because Plaintiff proffers the transcript for the truthfulness of the recording it purportedly reflects) within no exception. Attorney Stark has no personal knowledge of the actual statements to which Attorney Stark attests, violating Fed. R. Evid. 602.[2] Rather, Attorney Stark prepared the transcript (the "Stark Partial Transcript") based on unattested, unauthenticated[3] recordings prepared by unknown parties, which itself is hearsay and for which Attorney Stark's declaration provides no basis for any exception to Fed. R. Evid. 801 to apply.

Second, to have any relevance, Plaintiff must be offering the statement as an assertion of the Senator's own belief—in other words that the statement is a truthful demonstration of the Senator's belief. That truthfulness cannot be ascertained from the statement itself—it can only by determined by Plaintiff presenting the declarant at trial under oath and subject to cross-examination. Moreover, "[t]he purpose for introducing [the constituent's] statement [as related by the Senator] was to prove the happening of the event that caused [the Senator's] state of mind. The statement [then] is an expression of [the Senator's] 'memory or belief' and is not within the F.R.E.

---

[1] It is unclear if Attorney Stark transcribed the transcript of if an un-named and unidentified person or persons did.
[2] Fed. R. Evid. 602 provides in pertinent part: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."
[3] Plaintiff's submission of the Stark Partial Transcript does not authenticate the recording itself.

3

803(3) exception." *United States v. Sherbondy*, 70 F.3d 1281 (9th Cir. 1995). Thus, this is an additional level of hearsay. This evidentiary submission is triple or quadruple hearsay.

2. "A House Delegate and co-sponsor of the bill stated that she did not 'want all this mixing and matching and whatever' of transgender students with non-transgender students in the locker room." Reply to MSJ. at 17. Plaintiff again utilizes the double-hearsay Stark Partial Transcript to submit this evidence. And the only evidentiary use of the Delegate's statement is to show why the Delegate had an intention to vote a certain way on H.B 3293. "Rule 803(3) 'does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind.'" *United States v. Maes*, 961 F.3d 366, 371 (5th Cir. 2020), *as revised* (June 2, 2020) (cleaned up). Thus, the alleged Delegate's statement is hearsay. This evidence, then, is triple hearsay. Moreover, the only words Plaintiff allegedly quotes is "want all this mixing and matching and whatever." That is an incomplete, out-of-context quote in violation of Fed. R. of Evid. 106.

3. "Another House Delegate who co-sponsored the bill 'liked' comments" placed by others on the Delegate's Facebook post announcing his co-sponsorship. Reply to MSJ. at 17. This is hearsay. Plaintiff claims that the Delegate's alleged "like" of the comment manifests his agreement with the material of that comment, therefore providing it for the truth of the matter asserted. One can only speculate what the Delegate's "like" actually means, especially since it was not under oath let alone subject to cross-examination. In part because of this, courts have found that internet postings are "out of court declarations and present hearsay issues." *People v. Johnson*, 51 Misc.3d 450, 465 (2015); *see also U.S. v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) ("web postings were not statements made by declarants testifying at trial, and they were being offered to prove the truth of the matter asserted").

The Delegate did not post the Facebook comments; rather, he allegedly "liked" them. First, there is no indication on who actually clicked on the "like" button. There is no way of knowing if

it was it the Delegate, the Delegate's staff-member, a hacker, or someone else. As such, they are not even authenticated. *See* Fed. R. Evid. 901.[4] Second, even if actually proven authentic, a "like" by the Delegate could have meant a myriad of things, such as appreciation that a constituent supported the Delegate's co-sponsorship of H.B. 3293, a simple acknowledgement of the comment, or even an accidental "like." While litigants often assume the worst motive to another's actions, assumptions are not evidence. Therefore, without the Delegate's in-court testimony, it is impossible to discern if the "like" "manifests the Delegate's agreement with the online statement." *See* Daniel R. Tilly, *Adopted Statements in the Digital Age: Hearsay Responses*, 93 N.D. L. REV. 277, 346 (2018) ("Unlike the authentication question, however, the standard of proof is somewhat higher. The hearsay decision concerning adoption must be supported by a preponderance of the evidence. Thus, unless and until a court is satisfied that the greater weight of the evidence supports a party's social media 'like' having manifested that party's adoption of an online post, or a belief in the post's veracity, it must be excluded as inadmissible hearsay"). That means not only is Plaintiff offering this to prove the truth of the matter asserted by the "like," but also by the post itself. These statements have multiple levels of hearsay and should be excluded accordingly.

    4. Without analyzing every one separately, the same logic applies demonstrating that the other legislators' statements are also hearsay. All are presented via the double hearsay Stark Partial Transcript. And the individual statements are all in some fashion proffered for the truth of the statement or to show that the legislator agrees with another statement or the "why" behind the statements. None of the legislator's actual beliefs can be ascertained by virtue of the statements alone, which is why courts favor sworn testimony over this type of hearsay. All such statements are hearsay and should be excluded on that basis.

---

[4] Internet postings are considered "catalyst for rumor, innuendo, and misinformation." *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999). "Anyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation. . . . [H]ackers can adulterate the content on any web-site from any location at any time. For these reasons, any evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules[.] *Id.* at 775.

### B. The Chief Counsel of the House Committee on Education Statements Are Hearsay.

Plaintiff has also proffered statements of the Chief Counsel of the House Committee on Education ("Chief Counsel"). *See* Pl Reply to MSJ at 16, ECF No. 357. Plaintiff is likely to submit the Chief Counsel's statements regarding the purpose of the statute. Therefore, the statements necessarily would be submitted for the truthfulness thereof, e.g. that H.B. 3293 is a "bill regarding transgender participation in sports." *Id*. at 16. Just as with the various legislators' statements, Plaintiff likely will utilize the double hearsay Stark Partial Transcript to proffer the Chief Counsel's statements. Given that Plaintiff is proffering the Chief Counsel's statements to prove the truth of the matter asserted, these statements are consequently triple hearsay.

### C. The Statements Are Not Statements Of A Party Opponent.

Plaintiff has asserted that the foregoing statements are not hearsay under Fed. R. Evid. 801(d)(3)[5] because they are "statements of a party opponent offered against an opposing party." Reply to MSJ. at 18, ECF No.357. This is off-target. Neither the legislators individually, nor the Legislature itself is a defendant in this case.

The State of West Virginia is a sovereign State consisting of a specific geographic area and the residents therein. The State of West Virginia's Constitution designates three independent branches with multiple officers and officials, who are elected or appointed separately, and typically constituted with multiple agencies or bodies. *See* W. VA. CONST. art. VII, § 1; W. VA. CODE § 5-3-2. The Legislature is a branch, dealing with its own matters. It is not the State. In legal proceedings, agencies and officers are separate entities, and each may have its own counsel. In this case, for example, the State Board of Education, part of the broad executive branch, is represented by separate counsel from that representing the State. The Attorney General intervened

---

[5] "(2) An Opposing Party's Statement. The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy."

on behalf of the State of West Virginia in order to defend the statute. The Attorney General did not intervene on behalf of the Legislature or any individual legislator, and they are not represented nor do they appear in this case.

Further, even if the Legislature were a party, none of the cited statements satisfies any of the elements (A) – (E) for the exception at Fed. R. Evid. Rule 801(d)(3). Since all of the anticipated to-be-proffered statements are hearsay, they must all be excluded.

Similarly, the Chief Counsel's statements are not statements of the State. While it is unclear if they can be attributed as statements of the Legislature or the Education Committee, they are very clearly not the statements of the State. They also do not satisfy any of the elements (A) – (E) of Fed. R. Evid. Rule 801(d)(3).

### D. The Statements Are Not Relevant.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. Rule 401. Plaintiff claims that the foregoing statements are relevant to show that the intent of the *entire* Legislature in enacting H.B. 3293 was based on animus.

The subject statements cannot show that. The Supreme Court has held that, "as a principle of constitutional law," courts cannot "strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *Id*. at 383–84. The Fourth Circuit recently confirmed that when confronted by a facially constitutional law, "*O'Brien* instructs that we not strike it down 'on the basis of an alleged illicit legislative motive[.]'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 468 (4th Cir. 2012) (quoting *O'Brian*, 391 U.S. at 383). Thus, the legality of the language in H.B. 3293 must be examined on its own.

Despite the holding in *O'Brian*, Plaintiff has cited *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) for the proposition that courts look to legislators' statements to determine legislative motive. In fact, *Arlington Heights* teaches no such thing. The Court discouraged the use of legislators' statements to determine the rationale behind a law. "This Court has recognized, ever since *Fletcher v. Peck*, 6 Cranch 87, 130-131 (1810), that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government. Placing a decisionmaker on the stand is therefore 'usually to be avoided.'" *Arlington Heights*, 429 U.S. at 268, n.18 (cleaned up).

The Court further explained that actual legislative history can be relevant, *but not necessarily the legislators' statements*. "The legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Arlington Heights*, 429 U.S. at 268. In other words, while the legislators' statements may indicate the relevance of the actual legislative history, those statements by themselves are generally not useful to show legislative intent outside of the legislative history. The Court allowed that "[i]n some *extraordinary* instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." *Id.* at 268 (emphasis added). This is not one of those extraordinary instances.

To the extent legislative history could be relevant, the only statements that are relevant to show the intent of the Legislature are those which constitute legislative history. When looking to discern legislative intent outside the statute itself, the Court must follow the interpretive laws of the subject state: "Statutory interpretation is a question of law." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 537 (8th Cir. 2006). This Court has adopted the West Virginia Supreme Court of Appeals' holding that "a statute must be construed in accordance with the import of its language." *Hinkle v. Matthews*, 337 F. Supp. 3d 674, 681 (S.D.W. Va. 2018), *aff'd sub nom.*

8

*Hinkle v. Safe-Guard Prod. Int'l, LLC*, 839 F. App'x 770 (4th Cir. 2020) (citing Syl. Pt. 4, *Osborne v. United States*, 211 W. Va. 667, 567 S.E.2d 677 (2002)). *See also, Fargo Women's Health Org. v. Schafer,* 18 F.3d 526, 530-31 (1994) (applying North Dakota principles of statutory interpretation in considering the constitutionality of a North Dakota law).

Individual legislators' statements do not constitute legislative history. The State is unaware of any case in West Virginia which supports the idea that a legislator's statement is legislative history or that such statements are evidence of legislative intent. Rather, the West Virginia Supreme Court of Appeals has affirmatively rejected them for evidentiary purposes. *See Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W.Va. 484, 489, 647 S.E.2d 920, 925 (2007). In that case, the Court rejected sworn affidavits by legislators as to the "intent and meaning" of the subject statute as "[un]corroborated by the legislative history because the Legislature failed to preserve any record of the committee meetings to which the affidavits refer." *Id.* Accordingly, courts have held that even legislators' sworn statements are not considered legislative history. *Id.*

Finally, the binding West Virginia law explains that individual legislators' comments are not relevant to discern the intent behind a statute given that, "the understanding of one or a few members of the legislature is not necessarily determinative of legislative intent" and "no guarantee can issue that those who supported [a legislator's] proposal shared his view of its compass." *Phillips*, 220 W.Va. at 489 (quoting *In re Marriage of Bouquet*, 16 Cal.3d 583, 589-590, 128 Cal.Rptr. 427, 546 P.2d 1371 (1976)). Due to this rule, and consistent with *O'Brian*, the statements of a few individual legislators out of the 134 members of the West Virginia Legislature are not relevant to show the perspective of the whole. Thus, the hearsay statements of the few legislators referenced by Plaintiff are not relevant and must be excluded under Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, the State of West Virginia respectfully requests that this Court grant its Motion in Limine and exclude the statements of any legislator or the Chief Counsel and exclude any discussion of the same.

    Respectfully submitted,

    PATRICK MORRISEY
     *West Virginia Attorney General*

    /s/ *Curtis R. A. Capehart*
    Douglas P. Buffington II (WV Bar # 8157)
     *Chief Deputy Attorney General*
    Curtis R.A. Capehart (WV Bar # 9876)
     *Deputy Attorney General*
    David C. Tryon (WV Bar #14145)
     *Deputy Solicitor General*
    OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
    State Capitol Complex
    1900 Kanawha Blvd. E, Building 1, Room E-26
    Charleston, WV 25305-0220
    Telephone: (304) 558-2021
    Facsimile: (304) 558-0140
    Email:  Curtis.R.A.Capehart@wvago.gov

    *Counsel for Defendant, STATE OF WEST VIRGINIA*

    DATE: June 22, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**B. P. J., by her next friend and mother, HEATHER JACKSON,**

**Plaintiff,**

v.

**WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH, in his official Capacity as State Superintendent, DORA STUTLER, in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,**

    Defendants.

**and LAINEY ARMISTEAD,**

    Intervenor Defendant.

CIVIL ACTION NO. 2:21-cv-00316
Judge Joseph R. Goodwin

## CERTIFICATE OF SERVICE

    I hereby certify that, on this 22nd day of June 2022, I electronically filed the foregoing Memorandum with the Clerk of Court and all parties using the CM/ECF System.

                                        */s/ Curtis R. A. Capehart*
                                        Curtis R. A. Capehart