IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING THE PROPER MEDICAL TREATMENT FOR GENDER DYSPHORIA AND THE PROPRIETY OF PLAINTIFF'S DIAGNOSIS AND TREATMENT AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rules of Evidence 401, 402, 403, and 611, Plaintiff B.P.J., by and through her next friend and mother, Heather Jackson ("Plaintiff"), respectfully moves the Court to exclude any evidence, argument, and/or opinion—including through testimony or exhibits of Defendants' designated expert witnesses, Dr. Stephen Levine and Dr. James Cantor (collectively, "Defendants' Experts")—regarding the proper medical treatment for gender dysphoria and the propriety of Plaintiff B.P.J.'s own diagnosis and treatment. Specifically, Plaintiff moves to exclude

1

(1) any evidence, argument, and/or opinion regarding the efficacy or propriety of standard treatment methods and protocols for gender dysphoria, such as puberty blockers and hormone therapy; and (2) any evidence, argument, and/or opinion regarding the validity of B.P.J.'s gender dysphoria diagnosis by Dr. Gerald Montano and continuing treatment under Dr. Kacie Kidd. As explained below, such testimony, argument, and/or opinions should be excluded because: (1) these issues are irrelevant to the claims and defenses pled in this case and are therefore excludable under Federal Rules of Evidence 401 and 402; (2) the testimony and argument is prejudicial under Federal Rule of Evidence 403; and (3) presentation of this information would be a waste of judicial resources as they are unhelpful under Federal Rule of Evidence 611.

## ARGUMENT

The purpose of a motion *in limine* is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). In doing so, it "narrow[s] the evidentiary issues for trial and . . . eliminate[s] unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F. 2d 1064, 1069 (3d Cir. 1990). All evidence must be relevant to be admissible. *See* Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," and that fact "is of consequence in determining the action." Fed. R. Evid. 401. "[T]he party introducing evidence carries the burden of demonstrating the evidence's relevance." *Dowling v. United States*, 493 U.S. 342, 351 n. 3 (1990). And even if evidence is relevant, it should nevertheless be excluded if its introduction will result in "unfair prejudice, confus[ion of] the issues, [or] misleading the jury." Fed. R. Evid. 403. Rule 611 also charges the Court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a)(3).

Here, the opinions of Defendants, Dr. Levine, and/or Dr. Cantor regarding treatment for gender dysphoria are irrelevant as a general matter, and all the more so for Plaintiff, as Defendants and their experts have no basis on which to question Plaintiff's diagnosis or any treatment she has received. Put simply, this is not a case about the propriety of Plaintiff's medical treatment, and Defendants cannot indirectly put her medical care at issue by offering their musings on that topic. Granting this motion will therefore limit the evidence at trial to issues actually presented by this case, which concerns whether H.B. 3293 unlawfully discriminates against B.P.J. in violation of her rights under the Equal Protection Clause of the Fourteenth Amendment and Title IX.

## I. Defendants' Argument About The Proper Treatment for Gender Dysphoria As A General Matter Should Be Excluded As Irrelevant and Unduly Prejudicial.

Defendants are expected to offer testimony at trial seeking to undermine, as a general matter, the standard of care for gender dysphoria. For example, one of the central claims made by Defendants' purported expert, Dr. Levine, is that "[t]here is no consensus or agreed 'standard of care' concerning therapeutic approaches to child or adolescent gender dysphoria." (Dkt. No. 325-1 (Levine Rep.) at 22; *see also id.* ¶ 78 ("There is likewise no broadly accepted standard of care with respect to use of puberty blockers."); *id.* ¶ 88 ("[T]here is . . . no consensus concerning best practices or a 'standard of care' in this area."); Dkt. No. 324 (Levine *Daubert* Mot.) at 16.) Dr. Cantor similarly proposes to offer the opinion that "affirmation of a transgender identity in minors who suffer from early-onset or adolescent-onset gender dysphoria is not an accepted 'standard of care.'" (Dkt. No. 321-1 (Cantor Rep.) at 3 ¶ 8(e).)

But as this Court has already recognized, "what is or should be the default treatment for transgender youth is not the question before the court" here. (Dkt. No. 67 (PI Op.) at 3 n.4.) This case is an as-applied challenge to H.B. 3293, which unlawfully discriminates against B.P.J. based on her sex and gender identity. Evidence concerning the appropriateness,

3

as a general matter, of medical treatment for transgender children and adolescents is irrelevant to the issues presented by this case, which are whether state-sponsored discrimination against B.P.J. on the basis of her transgender identity violates her rights under the Fourteenth Amendment and Title IX. Defendants themselves admit that H.B. 3293 does not "prohibit or favor any particular treatment for gender dysphoria or deny eligibility for girls' or women's athletics, based on what treatment path for gender dysphoria a particular student may follow." (Dkt. No. 339 (Cantor Opp.) at 14.) Any evidence, argument, or opinions regarding the proper treatment for gender dysphoria should therefore be excluded.

Moreover, the proposed testimony of Defendants' Experts directly contradicts the Fourth Circuit's recognition that "we now have modern accepted treatment protocols for gender dysphoria," which have been "[d]eveloped by the World Professional Association for Transgender Health ("WPATH") . . . [and] represent the consensus approach of the medical and mental health community." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 595 (4th Cir. 2020), as amended (Aug. 28, 2020). The Fourth Circuit recognizes these treatment protocols "as *the authoritative standards of care*," finding that "[t]here are no other competing, evidence-based standards . . . accepted by any nationally or internationally recognized medical professional groups." *Id.* at 595–96 (emphasis added) (quoting *Edmo v. Corizon, Inv.* 935 F.3d 757, 769 (9th Cir. 2019)).

Any discussion of the aforementioned issues also should be excluded as prejudicial and a waste of time and judicial resources. Arguments intended to call into question the scientific rigor and professionalism with which health care providers treat their transgender patients are a quintessential example of material likely to confuse the issues in this case, which involves an athletics ban, and would subject a twelve-year-old girl and her medical providers to harassment.

4

Put simply—and as this Court has recognized and should confirm—this case is about exclusion from school sports, not what medical care should be provided to people who are transgender.

## II. Arguments Seeking To Undermine Plaintiff's Gender Dysphoria Diagnosis And Treatment Plan Should Be Excluded As Irrelevant And Unduly Prejudicial.

Plaintiff is transgender, has been diagnosed with gender dysphoria, and has not experienced her endogenous puberty. (*See* Dkt. No. 290 (Pl.'s SUF) ¶¶ 12–18.) Defendants' Experts do not dispute such facts. Like Gavin Grimm, B.P.J. has submitted evidence "to demonstrate the fact that [she] was diagnosed with gender dysphoria and received treatment pursuant to that diagnosis"—not for the court "to determine whether that diagnosis was medically sound" or "whether it was medically necessary." *Grimm v. Gloucester Cnty. Sch. Bd.,* 400 F. Supp. 3d 444, 454 (E.D. Va. 2019), *aff'd,* 972 F.3d 586 (4th Cir. 2020).

Yet Defendants have nonetheless propounded discovery and proffered expert testimony intended to call into question B.P.J.'s diagnosis and treatment. For example, without any basis, the State refers to B.P.J. as having "ostensibly been diagnosed with gender dysphoria," insinuating an improper or unfounded diagnosis. (Dkt. No. 305 (State MSJ Opp.) at 25.) The State also makes several false assertions about B.P.J.'s medical care, including by stating that one of B.P.J.'s medical providers, Dr. Montano, "immediately prescribed a body changing puberty blocker treatment, to be inserted at a later date." (*Id.* at 8–9 n.11.) But the medical records make clear that B.P.J.'s doctors did not prescribe puberty-delaying treatment until after the first signs of puberty, which did not occur until June 2020. (Dkt. No. 290 (Pl's SUF) ¶ 13; Dkt. No. 289-21 (Montano Dep. Tr.) at 138:13-18.) The State further falsely asserts that Dr. Kidd at West Virginia University relied solely on Dr. Montano's diagnosis. (Dkt. No. 305 (State MSJ Opp.) at 8–9 n.11.) But the testimony from Dr. Kidd makes clear that she conducted her own intake assessment and that B.P.J.'s responses to that assessment demonstrated that she

met the diagnostic criteria for gender dysphoria. (*See* Dkt. No. 289-20 (Kidd Dep. Tr.) at 75:23–76:7.)

In addition to being unfounded, Defendants' attempts to second-guess the propriety of B.P.J.'s diagnosis is irrelevant, prejudicial, and a waste of this Court's time. The suggestions made by Defendants that B.P.J. should have received a different form of treatment, or that she might no longer identify as transgender in the future are immaterial to the issues before this Court, especially given how Defendants' Experts admit to having no knowledge as to B.P.J.'s gender dysphoria diagnosis nor as to the care that B.P.J. has received and continues to receive in connection with her diagnosis. (Dkt. No. 325-2 (Levine Dep. Tr.) at 142:5-13; Dkt. No. 321-2 (Cantor Dep. Tr.) at 154:5-25.) Neither Defendants nor Defendants' Experts can challenge B.P.J.'s gender dysphoria diagnosis and continuing treatment, and any evidence, argument, and/or opinion presented by Defendants attempting to do so should be excluded.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court preclude Defendants from offering any evidence, argument, and/or opinion regarding the proper medical treatment for gender dysphoria and the propriety of B.P.J.'s personal diagnosis and treatment.

Dated: June 22, 2022

Joshua Block*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: (214) 219-8585
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
ccharles@lambdalegal.org
tborelli@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO 80202-5686
Phone: (720) 566-4000
abarr@cooley.com

Respectfully Submitted,
/s/ Loree Stark

Loree Stark (Bar No. 12936)
Nick Ward (Bar No. 13703)
AMERICAN CIVIL LIBERTIES UNION OF WEST
VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
lstark@acluwv.org
nward@acluwv.ord

Kathleen Hartnett*
Julie Veroff*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com
jveroff@cooley.com
zhelstrom@cooley.com

Katelyn Kang*
Valeria M. Pelet del Toro*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com
vpeletdeltoro@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

*Visiting Attorneys

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Loree Stark, do hereby certify that on this 22nd day of June, 2022, I electronically filed a true and exact copy of the ***Plaintiff's Motion* In Limine *To Exclude Evidence And/Or Argument Regarding The Proper Medical Treatment For Gender Dysphoria And The Propriety Of Plaintiff's Diagnosis and Treatment and Supporting Memorandum of Law*** with the Clerk of Court and all parties using the CM/ECF System.

                    */s/ Loree Stark*
                    Loree Stark
                    West Virginia Bar No. 12936