# Exhibit A



December 20, 2021

+1 (415) 693-2071
khartnett@cooley.com

December 20, 2021

   Re: <u>B.P.J. et al. v. West Virginia State Board of Education et al.</u>, <u>No. 2:21-cv-00316 (S.D.W. Va.)</u>

Counsel:

Thank you all for a productive call on Thursday, December 16. We write to memorialize that conversation, and to confirm the parties' understanding regarding certain deposition logistics.

<u>Deposition Timing</u>

Counsel for Plaintiff and all Defendants (including Intervenor-Defendant) have confirmed that they are available on January 18-21 for the deposition of B.P.J. and her parents. Both of B.P.J.'s parents are willing to appear for deposition voluntarily, but B.PJ.'s father is available only on January 18 and 19. Plaintiff therefore proposes that depositions begin on January 19 with a deposition of B.P.J.'s father, followed by B.P.J.'s mother.  If necessary, the deposition of B.P.J.'s mother could continue on January 20, followed by B.P.J.'s deposition, which would allow B.P.J.'s mother to attend B.P.J.'s deposition with her. As an eleven-year-old child, B.P.J. should be accorded the presence of her parents in the room.  Her parents' silent presence would not influence or impede Defendants' ability to depose B.P.J. Please let us know if Defendants are amenable to this approach.

Based on our conversation, it is Plaintiff's understanding that Defendants intend to depose B.P.J.'s medical providers shortly after deposing B.P.J. and her parents, and that counsel for the State Board will reach out to these medical providers in the first instance to arrange potential dates for deposition. Please let us know potential deposition dates as you receive them so that we can promptly confirm our availability.

Finally, we are awaiting the results of our upcoming conferrals with Defendants concerning their discovery responses before proposing dates for Plaintiff's expected depositions.  We hope to propose deponents and dates by the first week of January, if not sooner.

<u>Deposition Logistics</u>

- <u>Location</u>: Plaintiff appreciates County counsel's offer to host depositions at one of their offices in Morgantown, Charleston, or Bridgeport. Given the proximity to BPJ and her family, it is Plaintiff's preference to hold the depositions of B.P.J. and her family in Bridgeport, West Virginia at County counsel's office. Please confirm that Defendants are amenable to holding the depositions at this location during the week of January 18.

# Cooley

December 20, 2021

- <u>Fact Witnesses</u>: It is Plaintiff's understanding from our call that counsel for all parties are amenable to taking and defending the fact witness depositions via a mixed virtual and in-person approach. Under this approach, a limited number of attorneys from each party can attend the depositions in person if they so desire, while other attorneys may simultaneously attend the deposition via Zoom. It is also Plaintiff's understanding that Defendants have no objection to a counsel questioning a witness virtually.  Please let us know if any of this does not accord with your understanding.

- <u>Experts</u>: Regarding the deposition of expert witnesses, counsel for the State queried whether Plaintiff would be amenable to having all expert witnesses appear for deposition via Zoom. It is Plaintiff's preference to use a mixed virtual and in-person approach, whereby any party may defend or take an expert's deposition in person if they desire, while other attorneys may simultaneously attend the deposition via Zoom. Because many experts live out-of-state, any party who wishes to take or defend an expert's deposition in person must travel to the expert's location, and will bear its own costs to do so. Please let us know Defendants' thoughts on this approach.

  Regarding the timing of expert depositions, one of Plaintiff's experts, Dr. Safer, is available for deposition on March 24, 2022.

- <u>COVID Protocol</u>: Given the ongoing pandemic, Plaintiff proposes the following protocols for those appearing in-person at a deposition in this case, in addition to or concurrently with any COVID protocol in place at the deposition location. Please let us know if Defendants are willing to agree to these procedures.

    o Each party will limit in-person attendance to 1-2 counsel per deposition (in addition to any witness).

    o All individuals who are attending a deposition in person must show evidence of a negative rapid antigen COVID test the morning of the deposition.

    o All individuals who are attending a deposition in person must wear an N95 mask (and not a KN95 mask) throughout the deposition.

  During the call, the parties had discussed the possibility of allowing those taking the deposition and those answering to remain unmasked. After further consultation with our clients, and especially given the recent resurgence of infection numbers, Plaintiff would highly prefer if all individuals attending in person would remain masked throughout for just the depositions of B.P.J., her mother, and her father. In future depositions, Plaintiff is amenable to proceeding with the taker and answerer unmasked. Please let us know if Defendants are amenable to this protocol, and/or if they would like to discuss further.



December 20, 2021

Deposition Scope

- Questioning by Multiple Defense Counsel
  Given that there are five sets of defense counsel, we raised during our call the desire to prevent duplicative questioning, particularly of B.P.J. Our expectation is that defense counsel would let us know at the outset of the deposition the order in which they would seek to question the witness, and that counsel questioning after the first questioner would avoid asking questions that already have been asked and answered during prior counsel's questioning. Please confirm your agreement to this proposed approach.

- Scope of B.P.J.'s Deposition
  As discussed on the call, including in light of correspondence with the State to date in this case and lines of inquiry pursued by Defendants' likely experts, Plaintiff has concerns about certain potential lines of questioning at B.P.J.'s deposition that would be unduly harassing, harmful, or distressing to B.P.J. In particular, while Defendants' experts may allege certain improprieties about the diagnosis and treatment for gender dysphoria, Plaintiff does not believe that such lines of questioning are appropriately directed at an eleven-year-old girl undergoing treatment for gender dysphoria; nor are they necessary for Defendants to fully and fairly litigate this case. As noted in previous correspondence, this case concerns whether a state statute prohibiting transgender girls from playing on girls' school sports teams passes muster under federal law. Thus, there is no need for an in-depth probing of B.P.J.'s medical record and gender identity—certainly not during B.P.J.'s deposition—in order to flesh out factual matters relevant to the legal challenge at issue. To the extent that Defendants seek to justify the law by reference to certain viewpoints about transgender individuals and gender dysphoria and its treatment, those are matters that can be covered otherwise—including in expert reports and depositions—rather than through questioning of B.P.J.

  Thus, Plaintiff respectfully requests that all Defendants agree to the following proposed guidelines for B.P.J.'s deposition in order to avoid any unnecessary harm or distress. Plaintiff emphasizes that this proposal would not prevent Defendants from asking basic questions about B.P.J.'s gender identity and medical care; questions regarding B.P.J.'s participation in school or athletics; questions concerning her allegations of harm from being deprived the opportunity to participate on in girls' sports; or any other questions regarding the matters at issue in this lawsuit that do not conflict with the proposed guidelines below.

    o No usage of B.P.J.'s deadname (i.e., her name given at birth) and no showing B.P.J. documents with her deadname unredacted.
    o No reference whatsoever to B.P.J. as a "male" or "boy."
    o Reference to B.P.J. using "she/her" pronouns if a pronoun must be used.

# Cooley

December 20, 2021

- No questioning that refers to or asks B.P.J. about her genitalia or the specifics of her bodily development.
- No questioning that concerns either the legitimacy or appropriateness of her medical and/or mental health treatment.
- No reading directly from B.P.J.'s medical records to B.P.J. or asking B.P.J. about the content of her medical records.
- No questioning that references sexual abuse, assault, or misconduct. As Defendants can see from the provided records, no such conduct has occurred, and it would be inappropriate to ask such questions to an eleven-year old.
- No questions attacking or undermining her mother, her parents, or her family members.

==To the extent that there is any confusion regarding whether a line of questioning is appropriate, Plaintiff is happy to discuss further, including during B.P.J.'s deposition, and as needed. It is Plaintiff's hope that all parties can come to reasonable agreement without court intervention, and thus we would appreciate Defendants letting us know if they agree to this proposal.==

Defendants' Discovery Requests

On the call, counsel for the County queried whether there are additional records that Plaintiff still needs to produce. Other than the ongoing medical record production, Plaintiff has completed her production in response to Defendants' discovery requests. If the County has specific requests presenting a question about whether production is complete, please bring them to our attention as we requested on the call.

In response to the County counsel's question of whether there is a recording reflecting Heather Jackson's conversation with the principal of Bridgeport Middle School, we are not aware of any such recording.

Medical Records

We will provide an update on the status of B.P.J.'s remaining medical records, including records from Dr. Bhatt's office, tomorrow morning.

Sincerely,

Kathleen Hartnett