IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND/OR ARGUMENT INTENDED TO QUESTION PLAINTIFF'S GENDER IDENTITY AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rules of Evidence 401, 402, 403, and 611, Plaintiff B.P.J., by and through her next friend and mother, Heather Jackson, respectfully moves the Court to preclude Defendants from offering any evidence, argument, and/or opinion—including through the testimony and exhibits of their designated expert witnesses, Dr. Stephen Levine and Dr. James Cantor (collectively, "Defendant's Experts")—that is intended to question B.P.J.'s gender

1

identity.¹ Specifically, Plaintiff moves to exclude any evidence, argument, and/or opinion suggesting that B.P.J.'s female gender identity is not genuine, or that it reflects mere sex-stereotyped attitudes on B.P.J.'s part. As explained below, such evidence, argument, and/or opinions should be excluded because: (1) these issues are irrelevant to the claims and defenses pled in this case and are therefore excludable under Federal Rules of Evidence 401 and 402; (2) the evidence and/or arguments are prejudicial under Federal Rule of Evidence 403; and (3) presentation of this information would subject B.P.J. to harassment and undue embarrassment under Federal Rule of Evidence Rule 611.

## ARGUMENT

### A. Defendants' Argument That B.P.J.'s Identity Is Not Genuine And/Or Is Based In Sex Stereotypes Should Be Excluded As Irrelevant.

Defendants and their experts have suggested—incorrectly—that B.P.J.'s female gender identity is not real, but rather a misunderstanding or a whim. For example, Defendants' expert, Dr. Cantor, claims with respect to a young person's gender identity that the "far more typical situation is youth who are *mistaken* about their gender identity. These youth are misinterpreting their experiences to indicate they are transgender, or they are exaggerating their descriptions of their experiences in service of attention-seeking or other psychological needs." (Dkt. No. 321-1 (Cantor Rep.) ¶ 13; *see also, e.g.*, Dkt. No. 337 (State's MSJ Reply) at 1 (stating that B.P.J. "must take hormones for life . . . assuming that B.P.J. continues to have the 'understanding' of being a female").)

---

¹ Plaintiff also has moved to exclude testimony from Drs. Levine and Cantor in fully-briefed *Daubert* motions. (Dkt. No. 319 (Cantor *Daubert* Mot.); Dkt. No. 323 (Levine *Daubert* Mot.).) Nothing set forth in this motion *in limine* should be construed as suggesting that Plaintiff believes either Dr. Levine or Dr. Cantor is competent to offer testimony at trial.

Defendant State of West Virginia ("State") also claims that B.P.J.'s deeply rooted identity as female is merely based on stereotypes. For example, the State claims that "B.P.J. identifies as a girl based on numerous stereotypes about girls (*i.e.*, hairstyles, clothing, makeup, etc.)," (Dkt. No. 337 (State's MSJ Reply) at 1), and further asserts that "it has become clear that B.P.J. identifies as a female based on cultural stereotypes," (*id.* at 11; *see also, e.g.*, Dkt. No. 305 (State's MSJ Opp.) at 2 ("B.P.J., influenced in whole or in part by these cultural stereotypes, self-identified as a girl.")).[2] Defendants' expert, Dr. Levine, likewise tries to persuade transgender people to no longer be transgender by discussing sex stereotypes with them—with the implication that if they will simply relinquish their stereotyped attitudes, they can become cisgender. (Dkt. No. 325-1 (Levine Rep.) ¶ 46 (explaining that Dr. Levine performs psychotherapy by "discuss[ing] with his patient . . . that one does not have to become a 'woman' in order to be kind, compassionate, caring, noncompetitive, to love the arts, and to be devoted to others' feelings and needs.").)

It is undisputed that B.P.J. identifies as a girl. (*See, e.g.*, Dkt. No. 67 (PI Op.) at 7 (observing that B.P.J. is "similarly situated to other girls," "has lived as a girl for years," "competed on the all-girls cheerleading team at her school," and "changed her name to a name more commonly associated with girls"); Dkt. No. 252 (County Stip.) ¶ 1 (acknowledging B.P.J.'s female gender identity); Dkt. No. 290 (Pl's SUF) ¶¶ 3–11 (describing the gender support plans created at B.P.J.'s elementary and middle schools).) Indeed, the State of West Virginia itself has recognized B.P.J.'s female identity, and the importance it holds for her, by issuing her a corrected birth certificate with a typically female first name. (Borelli Decl., Ex. A (Order Granting Petition for Change of Name,

---

[2] Notably, the State and Defendant-Intervenor themselves elicited the information they now seek to wield against B.P.J.—*e.g.*, asking the then-eleven-year-old Plaintiff at her deposition what it means to be a girl. (Dkt. No. 289-13 (B.P.J. Dep. Tr.) at 29:21–34:5.) Defendants should not be permitted to use a then-eleven-year-old's good-faith answers to irrelevant and harassing questions to undermine her own identity.

June 2, 2022).) B.P.J.'s name change order repeatedly refers to her as the "daughter" of her parents, finds "clear, cogent, and convincing evidence that the [name] change would significantly advance the best interests of" B.P.J., and made the following findings:

> The Court finds that it is the best interest of the minor child to change her name for several reasons. First, children who are allowed to have names conforming to their gender identity feel more accepted by the community as a whole. Second, changing the minor child's name to her gender identity ensures a safe and happy mental state by the child in conforming with her gender identity. Finally, this name change is supported by the parents. Both of whom know the mind of their child.

(*Id.* at 4.)[3]

The State's and Defendant-Intervenor's idiosyncratic, unsupported views about the basis for B.P.J.'s female gender identity do not change the undisputed fact that B.P.J.'s gender identity is female. Moreover, the State's and Defendant-Intervenor's views on this topic are irrelevant to ascertaining the legality of excluding B.P.J. from girls' school sports teams—the issue presented by this case. Such evidence does not have "any tendency to make a fact more or less probable than it would be without the evidence," nor is it "of consequence in determining the action." Fed. R. Evid. 401; *see also United States v. Outlaw*, 941 F.2d 1208, 1208 (4th Cir. 1991) (noting that "evidence must be probative of a fact of consequence in the matter"). Because any argument, testimony, and/or opinions from Defendants questioning B.P.J.'s gender identity is irrelevant, it

---

[3] Plaintiff produced a copy of the Order Granting Petition for Change of Name to Defendants on June 20, 2022. The Court should take judicial notice of the Order. Under Federal Rule of Evidence 201(b)(2), the Court may take judicial notice of facts that are either "(1) . . . generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 10 Civ. 837, 2012 WL 1067941, at *2 (S.D.W. Va. Mar. 29, 2012) (citing Federal Rule of Evidence 201(b)(2)). The fact that B.P.J. has legally changed her name to B.P.J. in order for her name to conform to her gender identity is a fact capable of ready determination by resort to the Order Granting Petition for Change of Name filed by the Circuit Court of Harrison County, West Virginia on June 2, 2022.

should be excluded pursuant to Rules 401 and 402. Doing so will appropriately focus the evidentiary discussion at trial to the issues actually presented by this case.

> **B.  Defendants' Argument That B.P.J.'s Identity Is Not Genuine And/Or Is Based In Sex Stereotypes Should Be Excluded As Unduly Prejudicial.**

Defendants' questioning of B.P.J.'s gender identity is not only irrelevant, but it is unduly prejudicial, and should be excluded as such. Defendants' disparaging descriptions of B.P.J.'s gender identity as disingenuous and/or a mere product of stereotyped attitudes suggest that her female identity is a sham. This argument saddles her with the implication that she is somehow engaging in improper conduct—such as adopting negative sex stereotypes—when in fact it is *H.B. 3293* that subjects B.P.J. to stereotyped attitudes. Accordingly, any argument, testimony, and/or opinions from Defendants questioning B.P.J.'s gender identity should be excluded to avoid risk of confusion and prejudice. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (stating that a motion in *limine* can be used "to exclude anticipated prejudicial evidence before the evidence is actually offered"); *In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 920 (4th Cir. 2016) ("District courts are granted broad discretion to decide whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusion of the issues.") (cleaned up); Fed. R. Evid. 403 (providing that relevant evidence should nevertheless be excluded if its introduction will result in "unfair prejudice, confus[ion of] the issues, [or] misleading the jury").

> **C.  Defendants' Argument That B.P.J.'s Identity Is Not Genuine And/Or Is Based In Sex Stereotypes Should Be Excluded Due To Risk Of Harassment And Undue Embarrassment.**

Federal Rule of Evidence 611 charges the Court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a)(3). Arguments intended to

5

undermine something as fundamental and deeply-held as B.P.J.'s gender identity are likely to subject a twelve-year-old girl to painful embarrassment and harassment, and are thus a quintessential example of material properly excluded under Rule 611.

Courts regularly afford transgender plaintiffs respectful treatment by recognizing the legitimacy of their asserted gender identities. For example, in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020), the U.S. Supreme Court respected the identity of Aimee Stephens, a transgender plaintiff, by referring to her with female pronouns, *see*, *e.g.*, *id.* at 1738 ("When *she* got the job . . .") (emphasis added), and comparing her—a transgender woman—with cisgender women, *id.* at 1741 (stating that where an employer "fires a transgender" woman, but "retains an otherwise identical employee who was identified as female at birth"—*i.e.*, a cisgender woman—that is impermissible discrimination). Likewise, the Fourth Circuit has recognized that gender identity is based on a "deeply felt, inherent sense of [an individual's] gender." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020), as amended (Aug. 28, 2020) (cleaned up).

Courts also have recognized that efforts by litigants to undermine a plaintiff's gender identity are harmful. *See, e.g.*, *Hecox v. Little*, 479 F. Supp. 3d 930, 957 (D. Idaho 2020) (noting that courts "have denounced such misgendering as degrading, mean, and potentially mentally devastating to transgender individuals"); *T.B., Jr. ex rel. T.B. v. Prince George's Cty. Bd. of Educ.*, 897 F.3d 566, 577 (4th Cir. 2018) (describing a student's harassment of a transgender female teacher by referring to her with male gender pronouns as "pure meanness"); *Hampton v. Baldwin*, No. 18 Civ. 550, 2018 WL 5830730, at *2 (S.D. Ill. Nov. 7, 2018) (referencing expert testimony that "misgendering transgender people can be degrading, humiliating, invalidating, and mentally devastating"). The Court should prevent B.P.J. from experiencing this harm by excluding any argument and/or testimony questioning her gender identity.

## CONCLUSION

Plaintiff respectfully requests that the Court preclude Defendants from offering any evidence, argument, and/or opinions suggesting that B.P.J.'s female gender identity is not genuine and/or is a result of her own sex-stereotyped attitudes.

Dated: June 22, 2022

Joshua Block*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: (214) 219-8585
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
ccharles@lambdalegal.org
tborelli@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO 80202-5686
Phone: (720) 566-4000
abarr@cooley.com

Respectfully Submitted,
/s/ Loree Stark

Loree Stark (Bar No. 12936)
Nick Ward (Bar No. 13703)
AMERICAN CIVIL LIBERTIES UNION OF WEST
VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
lstark@acluwv.org
nward@acluwv.ord

Kathleen Hartnett*
Julie Veroff*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com
jveroff@cooley.com
zhelstrom@cooley.com

Katelyn Kang*
Valeria M. Pelet del Toro*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com
vpeletdeltoro@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

*Visiting Attorneys

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Loree Stark, do hereby certify that on this 22nd day of June, 2022, I electronically filed a true and exact copy of the ***Plaintiff's Motion* In Limine *To Exclude Evidence And/Or Argument Intended To Question Plaintiff's Gender Identity And Supporting Memorandum Of Law*** with the Clerk of Court and all parties using the CM/ECF System.

*/s/ Loree Stark*
Loree Stark
West Virginia Bar No. 12936

9