IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J., by her next friend and mother, HEATHER JACKSON,

                      *Plaintiff*,

v.                                               Civil Action No. 2:21-cv-00316
                                             Hon. Joseph R. Goodwin, District Judge

WEST VIRGINIA STATE BOARD OF
EDUCATION, HARRISON COUNTY BOARD
OF EDUCATION, WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION, W. CLAYTON BURCH in his
official capacity as State Superintendent,
DORA STUTLER in her official capacity as
Harrison County Superintendent, and
THE STATE OF WEST VIRGINIA,

                      *Defendants*,

and

LAINEY ARMISTEAD,

                      *Defendant-Intervenor*.

**DEFENDANT STATE OF WEST VIRGINIA'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE DEFENDANT STATE OF WEST VIRGINIA'S EXHIBIT H AND SUPPORTING MEMORANDUM OF LAW**

      Now comes Defendant, State of West Virginia (the "State"), and hereby responds in opposition to the Plaintiff's Motion *in Limine* ("Pl. MIL," ECF No. 408) asking this Court to exclude four charts which serve as a visual aid to Dr. Gregory A. Brown's expert report. These charts are relevant, and their probative value outweighs any potential prejudicial effect. Thus, they are admissible under the Federal Rules of Evidence.

1

## ARGUMENT

Exhibit H of the State's Motion for Summary Judgment ("Exhibit H," ECF No. 285-8) displays four separate charts that concisely and effectively demonstrate some of the data relied on by Dr. Brown. *See* Exhibit H. The four charts compare athletic performance of biological males versus biological females in a variety of settings. *Id.*

Despite Plaintiff's contentions, the State does not intend to introduce Exhibit H under Rule 1006. Pl. MIL at 2. Rule 1006 is used when there are "voluminous records," and the proponent seeks to "reduce the volume of written documents that are introduced into evidence." *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004). Instead, the State intends to introduce Exhibit H as a visual aid of some of the findings in Dr. Brown's expert report under Rule 611(a), not as a summary of "voluminous records." Rule 611(a) gives courts control over "the mode and order of examining witnesses and presenting evidence." Fed. R. Evid. 611(a). And the Fourth Circuit has specifically held that charts which "summariz[e] data on which experts in the case have relied" are allowed under Rule 611(a). *Janati*, 374 F.3d at 273. That is exactly what Exhibit H does.

Exhibit H therefore does not need to meet the requirements of Rule 1006 as long as it is "effective for determining the truth." Fed. R. Evid. 611(a)(3). Under this rule, Exhibit H simply needs to "aid the jury in its understating of" Dr. Brown's report and testimony. *Janati*, 374 F.3d at 273. Exhibit H is a clear and truthful presentation that would certainly help the jury understand the expert report and the data it relied upon.

In advancing an unfounded Rule 1006 theory, Plaintiff seems to suggest that the charts in Exhibit H should have to include all scientific research ever conducted on any subject that could even potentially be relevant here. Pl. MIL at 2. Not so. The charts do not purport to completely summarize all science around any given topic. They do not even purport to summarize all of Dr.

Brown's findings. Instead, the charts simply serve as an aid to help the State present *some* data used in the expert's report in a way that "help[s] the jury understand" the evidence. *United States v. Oloyede*, 933 F.3d 302, 311 (4th Cir. 2019).

Exhibit H is relevant because Dr. Brown's expert report is relevant. The report demonstrates that a "fact [that] is of consequence" is "more or less probable than it would be without the evidence." Fed. R. Evid. 401. This case revolves around the reality that biological boys perform better than biological girls in sports at various levels. Dr. Brown's report helps show this in clear terms, and Plaintiff has done nothing to demonstrate that the report does not apply to B.P.J. Simply saying that B.P.J. is a "transgender girl on puberty blockers" does not scientifically demonstrate that the athletic performance of biological boys and biological girls is irrelevant here. Pl. MIL at 4. Thus, it is the jury's job to decide who to believe on this issue.

For similar reasons, there is nothing prejudicial about the report. To find undue prejudice, there must be a showing that the probative value is "substantially outweighed" by the prejudicial effect. Fed. R. Evid. 403. The Fourth Circuit says that this means there is "a genuine risk that the emotions of the jury will be excited to irrational behavior." *United States v. Udeozor*, 515 F.3d 260, 264 (4th Cir. 2008) (citation omitted). When deciding whether this risk is present, courts "must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Simpson*, 910 F.2d 154, 157 (4th Cir. 1990) (cleaned up). Plaintiff does not meet this high burden. Dr. Brown's report is scientific and includes peer-reviewed data and competent analysis on a subject directly related to the case. Moreover, Plaintiff will have the opportunity to cross-examine Dr. Brown and can bring in evidence to combat the evidence presented by the State. As such, there is no danger of unfair

prejudice under Rule 403. Because the report is relevant and not prejudicial, charts which simply display some of its findings are as well.

Additionally, Plaintiff's fears of prejudice would be more appropriately resolved by cross-examination than by exclusion of Exhibit H. Pl. MIL at 3-4. The data in the charts are accurate, and the State intends to explain what it shows. If Plaintiff disagrees with the conclusions the charts could lead to, it is Plaintiff's burden to argue otherwise and prove Plaintiff's theory of the case. The State should not be forbidden from presenting factual evidence that "reveal[s] inferences drawn in a way that would assist the jury." *Janati*, 374 F.3d at 273.

Plaintiff also attacks Exhibit H for supposedly not "accurately summariz[ing] the testimony of" Dr. Brown. Pl. MIL at 2. Again, the charts in the exhibit do not need to summarize all of the findings; they are only being used to call attention to specific data that are better and more easily understood visually. And even if Exhibit H was intended to summarize Dr. Brown's report—which it is not—Plaintiff still only offers a single reason why it does not. Pl. MIL at 2-3.

Plaintiff's lone reason is that Exhibit H supposedly contains findings that "Dr. Brown conspicuously failed to include in his expert testimony." Pl. MIL at 2-3. Specifically, Plaintiff says that Dr. Brown does not cite findings by David J. Handelsman and Espen Tonnessen. *Id.* This is false. Dr. Brown explicitly cites and relies on both of the reports Plaintiff claims are missing. Indeed, Dr. Brown's report cites Dr. Handelsman's studies in 26 separate paragraphs and even reproduces one of Dr. Handelsman's charts showing the prepubertal male advantage in multiple sports. *See* Ex. G at ¶¶ 8, 12, 14, 15, 16, 18, 22, 29, 45-48, 50, 52, 54, 55, 64, 66, 110, 115 (including chart), 116, 120, 121, 146, 147, 156 (ECF No. 285-7) (citing David J. Handelsman, *Sex Differences in Athletic Performance Emerge Coinciding with the Onset of Male Puberty*, 87 CLINICAL ENDOCRINOLOGY 68, (2017), David J. Handelsman, et al., *Circulating testosterone as*

*the hormonal basis of sex differences in athletic performance.* Endocrine Reviews 39(5):803-829 (2018)** (2017). In the same vein, Dr. Tonnessen's 2015 study is cited throughout Dr. Brown's report. *See* Ex. G. ¶¶ 29, 59, 115 (citing Espen Tonnessen et al., *Performance Development in Adolescent Track and Field Athletes According to Age, Sex and Sport Discipline*, 10 PLoS ONE 1, 1-10 (2015)). Because these two studies are in Dr. Brown's report, Plaintiff's challenge to the charts fails.

Further, the charts do not improperly confuse units of measurement. The chart on the first page of Exhibit H shows how 11 year-old biological males performed compared to 11 year-old biological females in twelve different events as reported in seven different studies. Plaintiff suggests that shuttle runs measured in stages and sprints in seconds is confusing. In fact, some of these events are measured in seconds to complete the event ("PCQS Shuttle Run", "PCQS 1 Mile Run", "NCYFS 1 Mile Run", "Tambalis 50 Meter", "Catley/Tomkinson 50 Meter Sprint", "Catley/Tomkinson 1 Mile Run, "Tonnessen 60 Meter", "Tonnessen 800 Meter" and "Handlesman 15 Combined Running Events"), while other events are measured in stages completed ("Santos Shuttle Run", "Tambalis Shuttle Run", "Catley/Tomkinson Shuttle Run") as explained in the cited sources. The chart shows the difference between 11-year-old males and females in each of these events in percentages. To clarify, the "NCYFS 1 Mile Run", "Tambalis 50 Meter", "Catley/Tomkinson 50 Meter Sprint", "Catley/Tomkinson 1 Mile Run, "Tonnessen 60 Meter", "Tonnessen 800 Meter," and "Handlesman 15 Combined Running Events" are events timed in second to complete a certain distance. The "PCQS Shuttle Run" involves the students running across two parallel lines that are 30 feet apart with two blocks of wood placed behind one of the lines. Students start behind opposite line. On a signal, the student runs to the blocks, picks one up, runs back to the starting line, places the block behind the line, runs back and picks up the

second block, and runs back across starting line with the time recorded to the nearest tenth of a second. In contrast, the "Santos Shuttle Run", "Tambalis Shuttle Run", and "Catley/Tomkinson Shuttle Run" measure the number of 20-meter straight-line sprints (or laps) between two points the participant is able to complete. The participant must start when one "beep" is sounded and run 20 meters before the next beep. The time between two "beeps" gets shorter and shorter in stages of 7-13 laps per stage, with the number of laps per stage increasing as the duration of the test progresses, until the participant cannot finish in time, and then the number of his/her stages completed is recorded. Initially the beeps are 9.0 seconds apart and they get closer and closer so that they eventually are only 3.89 seconds apart. *See generally,* Brown Report ¶77, ECF No. 285-7. According to the studies, 11-year-old boys can finish more stages than 11-year-old girls and the male advantage, according to the studies, is between 36% and 45%. By contrast, the sprints are measured in seconds, and the charts show the percentage advantage in those events separately. There is no confusion between units of measure. Instead, these charts show the clarity of the 11-year-old male advantage.

Plaintiff also challenges Exhibit H by referencing the pending *Daubert* motion. That motion should be decided separately, and a motion *in limine* is not the proper vehicle to rule on a *Daubert* motion. In response to Plaintiff's claims on this point, the State reiterates its arguments from its opposition to the *Daubert* motion (ECF No. 338).

## CONCLUSION

The State of West Virginia respectfully asks that this Court deny Plaintiff's Motion *in Limine*.

    Respectfully submitted.

    PATRICK MORRISEY
    *West Virginia Attorney General*

/s/ Curtis R. A. Capehart
Douglas P. Buffington II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Curtis R.A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
David C. Tryon (WV Bar #14145)
  *Deputy Solicitor General*
OFFICE OF THE WEST VIRGINIA ATTORNEY
GENERAL
State Capitol Complex
1900 Kanawha Blvd. E, Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email:  Curtis.R.A.Capehart @wvago.gov

*Counsel for Defendant, STATE OF WEST VIRGINIA*

DATE: June 29, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**B. P. J., by her next friend and mother, HEATHER JACKSON,**

    Plaintiff,

v.

**WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH, in his official Capacity as State Superintendent, DORA STUTLER, in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,**

    Defendants.

**and LAINEY ARMISTEAD,**

    Intervenor Defendant.

CIVIL ACTION NO. 2:21-cv-00316
Judge Joseph R. Goodwin

## CERTIFICATE OF SERVICE

    I hereby certify that, on this 29th Day of June, 2022, I electronically filed the foregoing with the Clerk of Court and all parties using the CM/ECF System.

                                              */s/ Curtis R. A. Capehart*

                                              Curtis R. A. Capehart