IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J., by her next friend and mother, HEATHER JACKSON,

*Plaintiff*,

v.

Civil Action No. 2:21-cv-00316
Hon. Joseph R. Goodwin, District Judge

WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,

*Defendants*,

and

LAINEY ARMISTEAD,

*Defendant-Intervenor*.

**DEFENDANT STATE OF WEST VIRGINIA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING THE PROPER MEDICAL TREATMENT FOR GENDER DYSPHORIA AND THE PROPRIETY OF PLAINTIFF'S DIAGNOSIS AND TREATMENT AND <u>SUPPORTING MEMORANDUM OF LAW</u>**

## INTRODUCTION

The Defendant State of West Virginia (the "State") hereby opposes the Plaintiff's Motion *In Limine* to Exclude Evidence And/Or Argument Regarding The Proper Medical Treatment For Gender Dysphoria And The Propriety Of Plaintiff's Diagnosis And Treatment And Supporting Memorandum Of Law ("Plaintiff's MIL No. 412," ECF No. 412). Plaintiff's own pleadings and

1

witnesses address the diagnosis and treatment of gender dysphoria, making evidence from B.P.J.'s own doctors regarding these issues presented in response to Plaintiff's pleadings and evidence is relevant, probative, and admissible. Therefore, this Court should deny Plaintiff's MIL No. 412.

## DISCUSSION

Evidence that is relevant and probative is admissible if not otherwise prohibited. Fed. R. Evid. 401. Relevant evidence is anything that "has any tendency to make a fact [at issue] more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *Id.* Probative evidence that is admissible provides value to the factfinder without being "substantially outweighed" by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### A. Evidence Regarding The Diagnosis and Treatment of Gender Dysphoria is Relevant and Not Unduly Prejudicial.

Plaintiff's Amended Complaint ("Am. Compl.," ECF. No. 64) avers that B.P.J. was "diagnosed" with gender dysphoria, (*id*. ¶¶ 24 and 33), with little more than the simple statement of that diagnosis. Plaintiff then avers that the "only treatment for gender dysphoria before puberty is 'social transition.'" *Id*. ¶ 25. *See also, id*. ¶26. Plaintiff also alleges that B.P.J. "does not want to" participate on the boys' team. *Id*. ¶ 82. Plaintiff further alleges that not allowing B.P.J. to play on the girls' team "would undermine her medical treatment for gender dysphoria" and would "undermine" B.P.J.'s "medical care." *Id*. Thus, Plaintiff's Amended Complaint makes it very clear that both the *diagnosis* and the *treatment* of gender dysphoria are relevant to Plaintiff's case.

But this is not all. At least one of Plaintiff's experts addressed the very same things that Plaintiff wants to bar the Defendants from addressing:

2

27. Before puberty, treatment does not include any drug or surgical intervention. For this group of patients, *treatment* is limited to "social transition," which means allowing a transgender child to live and be socially recognized in accordance with their gender identity. This can include allowing children to wear clothing that aligns with their gender identity, to cut or grow their hair, to use new or different names and pronouns, *and to access activities in line with their gender identity instead of the sex assigned to them at birth.* Social transition is a critical part of *treatment* of patients with gender dysphoria of all ages and it is the only *treatment* for pre-pubertal children. There are no known risks to social transition or to *affirming* transgender youth *who have been properly diagnosed* with gender dysphoria by competent medical providers.

28. It undermines social transition – a critical part of gender dysphoria treatment – to force a person with gender dysphoria to live in a manner that does not align with the person's gender identity. For example, *requiring a girl who is transgender to participate in single-sex activities for boys can be deeply harmful and disruptive to treatment.* In the context of activities like athletics, which are typically separated by sex, I know from experience with my patients that it can be extremely harmful for transgender youth to be excluded from the team consistent with their gender identity.

Adkins Decl. ¶¶ 27, 28 (emphasis added), ECF No. 201-4, p. 55-68.  Plaintiff would have Defendants and the Court accept the pleadings and the expert claims without question by now asking the Court to not permit any inquiry or contrary evidence.  But there can be no question that Plaintiff has made these issues relevant.

Plaintiff's allegations and expert testimony raise the following questions:

- What is "gender dysphoria"? (Am. Compl. ¶ 24, ECF No. 64)

- What does it mean to be "diagnosed" with gender dysphoria? (*Id.* ¶¶ 25 and 26)

- What does it mean to be "properly diagnosed" with gender dysphoria (i.e. the "propriety of plaintiff's diagnosis")?  (Adkins Decl. ¶ 27.)

- Is social transition a medical treatment?  Is it "the" only "proper" treatment?  (Am. Compl. ¶ 25.)

- Is social transition actually a medically prescribed treatment or, as Plaintiff has pled, B.P.J.'s "want" ?  (*Id.* ¶ 82.)

- Should a doctor use cultural stereotypes in "diagnosing" gender dysphoria?

3

On the last question, Plaintiff's expert Dr. Safer says "no," explaining:

> 20. Gender roles are behaviors, attitudes, and personality traits that a society (in a given culture and historical period) designates as masculine or feminine and/or that society associates with or considers typical of the social role of men or women. See Endocrine Society Guidelines Tbl.1. *The convention that girls wear pink and have longer hair, or that boys wear blue and have shorter hair, are examples of socially constructed gender roles* from a particular culture and historical period.
>
> 21. By contrast, "gender identity" does not refer to a set of socially contingent behaviors, attitudes, or personality traits that a society designates as masculine or feminine. It is an internal and largely biological phenomenon.

Safer Decl. ¶¶ 20, 21(emphasis added), ECF No. 201-4, p. 1-18. Yet, Dr. Montano's gender dysphoria diagnosis relies heavily on "socially constructed gender roles." *Id*. The State is entitled, and even obligated, to address this incongruity between Plaintiff's experts' opinions and the diagnosing medical provider, Dr. Montano.

As to social transitioning and affirming care, Dr. Adkins claims: "There are no known risks to social *transition* or to *affirming* transgender youth[.]" Adkins Decl. ¶ 27 (emphasis added), ECF No. 201-4, p. 55-68. Thus, Plaintiff has made both of these relevant. In response, Dr. Cantor asserts, among other things, "affirmation of a transgender identity in minors who suffer from early-onset or adolescent-onset gender dysphoria is not an accepted 'standard of care.'" Cantor Decl. ¶ 8(e), at 3, ECF No. 321-1. Dr. Cantor expounded extensively on the risks and internationally-recognized alternatives to immediate social transition and affirming care. *Id*. ¶¶ 41-59, at 16-23. Plaintiff cannot submit Dr. Adkins testimony and expect to exclude Dr. Cantor's testimony on the very same subject.

Plaintiff also alleges that enforcing H.B. 3293 as to B.P.J. will "undermine" B.P.J.'s "medical care." Am. Compl. ¶ 82, ECF No. 64. Plaintiff finds that issue relevant in the Amended Complaint, but now protests that the State's expertsdispute this allegation. This is relevant evidence on a relevant topic.

4

Plaintiff's experts also reference treatment guidelines of the World Professional Association for Transgender Heath ("WPATH") in support of Plaintiff's claim that affirmation therapy is required here. *See* Adkins Decl. ¶¶ 24, et seq., ECF No. 201-4, 55-68. This makes the State's responsive evidence even more relevant. Even if, as cited in Plaintiff's MIL No. 412, the *Grimm* decision from the district court in Virginia contains dicta considering those standards, that simply proves that evidence Plaintiff wishes to exclude is, in fact, highly relevant. *See* Plaintiff's MIL No. 412, at 4, ECF No. 412 (citing *Grimm v. Gloucester Cnty. Sch. Bd.*, 400 F. Supp. 3d 444, 454 (E.D. Va. 2019), *aff'd* 972 F.3d 586 (4th Cir. 2020)).

While Plaintiff points to the June 22, 2021, Preliminary Injunction Order at 3 n.4 (ECF No. 67), to disclaim the relevance of treatment, Plaintiff's January 21, 2022, Expert Reports discuss the medical treatment of gender dysphoria extensively and repeatedly. *See* Adkins Decl., ECF No. 201-4, p. 55-68, and Safer Decl., ECF No. 201-4, p. 1-18. Plaintiff obviously found it to be relevant for Plaintiff's case, but wishes to exclude any contrary evidence. Since Plaintiff has raised it, the Defendants must be allowed to present evidence on this accordingly.

Plaintiff next accuses the State of making false assertions:

> The State also makes several false assertions about B.P.J.'s medical care, including by stating that one of B.P.J.'s medical providers, Dr. Montano, "immediately prescribed a body changing puberty blocker treatment, to be inserted at a later date." (Id. at 8–9 n.11.) But the medical records make clear that B.P.J.'s doctors did not prescribe puberty-delaying treatment until after the first signs of puberty, which did not occur until June 2020. (Dkt. No. 290 (Pl's SUF) ¶ 13; Dkt. No. 289-21 (Montano Dep. Tr.) at 138:13-18.)

Plaintiff's MIL No. 412, at 5.

In fact, the State's assertions are correct, and Plaintiff's criticism is a matter of semantics. Dr. Montano's records show that on the date of the first appointment, Dr. Montano place on "Today's Orders:" "3) We **will** order the pubertal blocker ONCE she shows signs of puberty (i.e. pubic hair)." Montano Dep. at 96:22-100:22 and Exhibit 4 (emphasis added, CAPS in original),

5

ECF No. 305-2. There is no equivocation or maybes in Dr. Montano's written order; his office "will" order the puberty blocker – just as soon as B.P.J. shows signs of puberty. The fact that no script (as is typically associated with a trip to the pharmacy) was written that day is of no moment. The point is that Dr. Montano wrote the medical directive—prescribing the course of treatment—that day after a mere 45 minute consultation.

Plaintiff next claims the State "falsely asserts that Dr. Kidd at West Virginia University relied solely on Dr. Montano's diagnosis," citing a portion of Dr. Kidd's deposition stating that she did conduct an intake assessment. Plaintiff's MIL No. 412, at 5, ECF No. 412. However, Plaintiff omits the key portion of the deposition, which confirms the State's assertion that Dr. Kidd proceeded on Dr. Montano's diagnosis per the records:

> Q. Did you actually make a diagnosis?
> A. [B.P.J.] already had that diagnosis prior to seeing me.
> Q. And that was --- who made that diagnosis?
> A. I suspect the first person was Dr. Montano, although I don't know that for sure.
> Q. And who told you that she already --- that BPJ already had such a diagnosis?
> A. The medical record.

Kidd Dep. at 76, ¶ ¶ 8-16, ECF No. 285-9.

Regardless, the ultimate point here is the State only seeks to address the issues raised in the Plaintiff's pleadings and by Plaintiff's experts. The State is entitled to do so.

B. **The Proposed Excluded Evidence will not cause unfair prejudice, confusion, or waste of time.**

Plaintiff's proposed excluded testimony is not "substantially outweighed" by the danger of unfair prejudice, confusion, or wasted time. While the proposed evidence certainly tends to disprove the Plaintiff's claims, it is not unfairly prejudicial, and rather than cause confusion or waste time, it plainly helps inform the fact-finder of relevant facts. Indeed, relevant evidence

should be excluded only "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (discussing Fed. R. Evid. 403).[1] The proposed testimony does not come close to exciting the jury's emotions to the point of "irrational behavior." The testimony is highly probative to respond to Plaintiff's allegations and Plaintiff's expert witness testimony. Rule 403 trusts juries with all but the most prejudiced evidence, *Siegel*, 536 F.3d at 319, and the jury in this case should be entrusted with the questioned testimony.

---

[1] The type of cases in which Rule 403 precludes otherwise relevant evidence include (1) introducing the drug-induced deaths of customers in a heroin distribution felony trial, *United States v. Cooper*, 591 F.3d 582 (7th Cir. 2010) and (2) introducing four prior felony convictions to prove defendant's status as a felon, when only one would do. *United States v. Weiland*, 420 F.3d 1062 (9th Cir. 2005).

## **CONCLUSION**

The State of West Virginia respectfully asks that this Court deny Plaintiff's Motion *In Limine..*

        Respectfully submitted.

        PATRICK MORRISEY
         *West Virginia Attorney General*

        /s/ *Curtis R. A. Capehart*
        Douglas P. Buffington II (WV Bar # 8157)
         *Chief Deputy Attorney General*
        Curtis R.A. Capehart (WV Bar # 9876)
         *Deputy Attorney General*
        David C. Tryon (WV Bar #14145)
         *Deputy Solicitor General*
        OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
        State Capitol Complex
        1900 Kanawha Blvd. E, Building 1, Room E-26
        Charleston, WV 25305-0220
        Telephone: (304) 558-2021
        Facsimile: (304) 558-0140
        Email:Curtis.R.A.Capehart @wvago.gov

        *Counsel for Defendant, STATE OF WEST VIRGINIA*

DATE: June 29, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**B. P. J., by her next friend and mother, HEATHER JACKSON,**

    Plaintiff,

v.

**WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH, in his official Capacity as State Superintendent, DORA STUTLER, in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,**

    Defendants.

**and LAINEY ARMISTEAD,**

    Intervenor Defendant.

CIVIL ACTION NO. 2:21-cv-00316
Judge Joseph R. Goodwin

## CERTIFICATE OF SERVICE

    I hereby certify that, on this 29th day of June, 2022, I electronically filed the foregoing with the Clerk of Court and all parties using the CM/ECF System.

    */s/ Curtis R. A. Capehart*

    Curtis R. A. Capehart