IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**DEFENDANT-INTERVENOR AND STATE OF WEST VIRGINIA'S COMBINED RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE TO EXCLUDE SOME OF DEFENDANT-INTERVENOR'S REQUESTS FOR ADMISSION AND TESTIMONY ON MULTIPLE GENDERS FROM B.P.J.'S EXPERTS**

B.P.J. moves to exclude certain requests for admission involving the application of B.P.J.'s legal theories to common factual scenarios and testimony from B.P.J.'s doctors about gender identities as irrelevant and prejudicial. *See* Pl.'s Mot. in Lim. to Exclude Evid. and/or Arg. Regarding Def.-Intervenor's Reqs. for Admis. Nos. 13-61 Concerning Hypothetical Individuals and Supporting Mem. of Law (Pl.'s RFA MIL) 3 (Doc. 410); Pl.'s Mot. in Lim. to Exclude Evid. and/or Arg. Regarding the Potential Number of Gender Identities and Supporting Mem. of Law (Pl.'s No. of GI MIL) 2–3 (Doc. 409). This evidence is relevant and admissible to refute B.P.J.'s legal theory and to save the parties time and energy at trial. Therefore, Defendant-

1

Intervenor Lainey Armistead and Defendant, State of West Virginia (collectively "Defendants") ask this Court to deny B.P.J.'s motions.

## ARGUMENT

B.P.J. argues that some of Armistead's requests for admission involving the application of B.P.J.'s legal theories to common factual scenarios are irrelevant because they have "nothing to do with B.P.J.'s gender identity, medical history, or treatment." Pl.'s RFA MIL 3. B.P.J. similarly seeks to exclude evidence from B.P.J.'s own doctors about various gender identities. *See* Pl.'s No. of GI MIL 2–3. But evidence does not have to concern B.P.J. to be relevant to this case.

B.P.J.'s misguided requests flow from an incorrect understanding of the legal standard. When a plaintiff claims that the state has "arbitrarily classified" the plaintiff as a "member[] of an identifiable group," *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008) (internal quotation marks omitted), the Court must evaluate the "basic validity of the legislative classification," *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979). As explained in Armistead's summary-judgment briefing, this inquiry asks whether the differential treatment—based on the general attributes of the affected class—is substantially tied to the governmental objective. Def-Intervenor's Mem. in Supp. of Mot. for Summ. J. (Armistead's SJ Br.) 15 (Doc. 288).

"[T]his question cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity." *United States v. Edge Broad. Co.*, 509 U.S. 418, 427 (1993). It need not be proven that the Act meets its "ultimate objective" in every application. *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001). So B.P.J.'s "individual characteristics" are beside the point. *Harley v. Wilkinson*, 988 F.3d 766, 769 (4th Cir. 2021). And the "as-applied" label does not change the focus of the constitutional inquiry. Armistead's SJ Br. § I.C.; *see also* Def.-Intervenor's Reply. in Supp. of Her Mot. for Summ. J. (Armistead's

Reply Br.) § III.B. (Doc. 347). In sum, the Court cannot cabin its analysis to B.P.J.'s situation to resolve the question before it.

The relevant "question is whether West Virginia can distinguish between females *as a class* and males *as a class*." Armistead's SJ Br. at 16. B.P.J. agrees that sex-separated teams are generally valid but disagrees with West Virginia's choice to do so based on biology. Instead, B.P.J. argues for a different standard based solely on gender identity. *Id.*; *see*, *e.g.*, Mem. in Supp. of Pl.'s Mot. for Summ. J. (Pl.'s SJ Br.) 19 (Doc. 291) (arguing the Act is facially discriminatory based on transgender status). Put another way, B.P.J. contends that what makes individuals "similarly situated" for purposes of sex-separated sports is their gender identity, not their biological sex.

So the parties have offered two competing legal theories for separating sports teams. That makes requests for admission applying facts to B.P.J.'s theory relevant to test whether and how B.P.J.'s proposed theory works. Rule 36(a) explicitly allows a party to serve a request for admission on the "application of law to fact." Fed. R. Civ. P. 36(a); *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 423 (N.D.W. Va. 2006) (straightforward hypotheticals that apply the facts to the law is asking the party to "admit [ ] if a certain factual situation is found to exist"). And the entire purpose of requests for admission are to "narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of litigation." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005).

Armistead's requests for admission do just that. In many instances, the request simply asked whether a particular type of person is similarly situated to B.P.J. with respect to "physiological characteristics associated with athletic performance," a phrase copied from the First Amended Complaint. *See, e.g.*, App. to Def.-Intervenor's Mot. for Summ. J. (App.) 1454 (¶ 27) (Doc. 286-1). When the "Plaintiff expressly injected this issue into the case," identifying similarly situated comparators under B.P.J.'s legal theory is plainly appropriate and designed to narrow and sharpen the

3

issues for trial. *See Meyer v. DG Retail LLC*, No. 13-2115-KHV, 2013 WL 5719508, at *1–3 (D. Kan. Oct. 21, 2013) (request to "identify any employee" that was in a "comparable or similar situation" to defendant was "relevant on its face").

Likewise, other requests for admission asked whether certain categories of people are similarly situated under B.P.J.'s legal theory. For example, one request asked whether biologically male high-school students who have received no form of hormone therapy are similarly situated to biologically female high-school students who have received no such therapy with respect to sex-related "physiological characteristics associated with athletic performance," regardless of anyone's gender identity. App. 1481 (¶ 61). This question goes to the heart of the biological classification made by the Sports Act and directly relates to B.P.J.'s contrary allegation that "[g]irls who are transgender are … not similarly situated to cisgender boys with respect to physiological characteristics associated with athletic performance." First Am. Compl. ¶ 40 (Doc. 64).

In response to this request, B.P.J. admitted that "high school students who had a male sex assigned at birth who have not received any form of puberty blocking or other hormone therapy will, on average, have higher levels of circulating testosterone than cisgender girls of the same age who have received no puberty blocking or other hormone therapy." App. 1481 (¶ 61). Thus, the request for admission accomplished its purpose of clarifying where the parties agree: biological sex is relevant to athletic performance, regardless of gender identity.[1] A request like this one that asks a party to provide the legal outcome under its theory of the case given a particular set of facts

---

[1] Though phrased in technical terms, this is an admission that, in the absence of hormonal intervention, high-school boys have an athletic advantage over high-school girls, as B.P.J.'s own expert admits that higher circulating testosterone provides an athletic advantage. Def.-Intervenor's Supp. App. in Supp. of Mot. for Summ. J. (Supp. App.) 124 (¶ 4(b)) (Doc. 300).

4

"is precisely the kind of request contemplated by Rule 36(a)." *Wagner*, 238 F.R.D. at 424.

Evidence about numerous gender identities is also relevant to understanding and testing B.P.J.'s legal theory. B.P.J.'s own doctors testified in deposition that gender moves on a spectrum and that one study identified 72 different genders. Armistead's SJ Br. 13. But B.P.J. believes athletes should be permitted to compete on sports teams based on their gender identity, and that the law is facially discriminatory because it fails to place persons who identify as transgender on the "correct" team. But if B.P.J.'s doctors are correct and there are "in excess of 27 genders, perhaps as many as 100", that is not a realistic means of separating sports teams. Pl.'s No. of GI MIL at 2. If there are more than two possible gender identities, a binary classification is actually impossible. *See* Armistead's SJ Br. 13. These situations could plausibly arise under the Act, and they show that B.P.J.'s theory is unworkable.

This evidence is not prejudicial, confusing, or misleading either. Rule 403 bars evidence with the risk of *unfair* prejudice, but "general prejudice … is not enough to warrant exclusion of otherwise relevant, admissible evidence." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008). But these materials do "not fall under any of [Rule 403's] categories" and they "could save all parties time and energy" by providing the Court with scenarios applying B.P.J.'s theory to facts to show the ramifications of B.P.J.'s arguments. *Wagner*, 238 F.R.D. at 424. Besides, Defendants need not offer evidence about all 72 genders or all the hypothetical scenarios at trial to prove this point, but they are necessary to test B.P.J.'s theory that sports teams should be separated according to gender identity alone. B.P.J. cannot avoid unfavorable materials just because they hurt B.P.J.'s case.

B.P.J.'s motion lacks merit, and Defendants ask this Court to deny B.P.J.'s motion.

5

Respectfully submitted this 29th day of June, 2022.

PATRICK MORRISEY
  *West Virginia Attorney General*

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
Joshua D. Brown, WV Bar No. 12652
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com
joshua_brown05@hotmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Roger G. Brooks, NC Bar No. 16317*
Henry W. Frampton, IV, SC Bar No. 75314*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org
rbrooks@adflegal.org
hframpton@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

*/s/ Curtis R. A. Capehart*
Douglas P. Buffington II, WV Bar # 8157
  *Chief Deputy Attorney General*
Curtis R.A. Capehart, WV Bar # 9876
  *Deputy Attorney General*
David C. Tryon, WV Bar #14145
  *Deputy Solicitor General*
OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
State Capitol Complex
1900 Kanawha Blvd. E, Building 1, Room E-26
Charleston, WV 25305-0220
(304) 558-2021
(304) 558-0140
Curtis.R.A.Capehart@wvago.gov
David.C.Tryon@wvago.gov

*Counsel for Defendant, STATE OF WEST VIRGINIA*

(signatures continued on next page)
Tyson C. Langhofer, VA Bar No.

6

95204*
Rachel A. Csutoros, MA Bar No. 706225*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-2119
(571) 707-4790 Fax
tlanghofer@adflegal.org
rcsutoros@adflegal.org

Travis C. Barham, GA Bar No. 753251*
Alliance Defending Freedom
1000 Hurricane Shoals Road NE, Ste D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-0774 Fax
tbarham@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com


*Visiting Attorneys
Attorneys for Defendant-Intervenor

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Brandon Steele, hereby certify that on June 29, 2022, I electronically filed a true and exact copy of ***Defendant-Intervenor and State of West Virginia's Combined Response to Plaintiff's Motions in Limine to Exclude Some of Defendant-Intervenor's Requests for Admission and Testimony on Multiple Genders from B.P.J.'s Experts*** with the Clerk of Court and all parties using the CM/ECF system.

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com
*Attorney for Defendant-Intervenor*

8