**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING STATEMENTS OF NON-PARTY WITNESSES IN SUPPLEMENTAL DISCLOSURES AND SUPPORTING MEMORANDUM OF LAW**

Defendant-Intervenor Lainey Armistead attached ten declarations to her summary-judgment motion from female athletes and mothers of female athletes—witnesses identified in Armistead's supplemental disclosures. B.P.J. now moves to exclude them and "any evidence relating to non-party witnesses named in" Armistead's supplemental disclosures. Pl.'s Mot. in Lim. to Exclude Evid. and/or Arg. Regarding Statements of Non-Party Witnesses in Supplemental Disclosures and Supporting Mem. (Pl.'s Non-Party Witnesses MIL) (Doc. 413). Because all of B.P.J.'s objections are meritless, the Court should deny the motion.

1

## ARGUMENT

B.P.J. gives five reasons to exclude the female athletes. This Court should reject each and deny the motion. The female athletes' testimony (1) is relevant, (2) is not unfairly prejudicial, (3) does not contain hearsay, and (4) is not improper expert testimony. And (5) Armistead also timely disclosed these non-party witnesses in her supplemental disclosures.

*First*, B.P.J. mistakenly suggests that the declarations and statements of the female athletes and their mothers are irrelevant. Pl.'s Non-Party Witnesses MIL 3. But the threshold for relevancy is "relatively low." *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014). And proper understanding of the legal standard shows why the female athletes' declarations and testimony pass that threshold.

As explained in Defendant-Intervenor Lainey Armistead's summary-judgment briefing, this Court should begin the equal-protection analysis by examining the "statutory classification itself." Def-Intervenor's Memo. in Supp. of Mot. for Summ. J. 7 (Doc. 288) (quoting *Califano v. Boles*, 443 U.S. 282, 293–94 (1979)). Then the Court applies intermediate scrutiny, considering whether the State's classification is substantially related to an important governmental interest. And to be clear, "this question cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity." *United States v. Edge Broad. Co.*, 509 U.S. 418, 427 (1993).

Here, the female athletes' testimonies tend to show that West Virginia has an important interest in protecting fairness and safety in women's sports. After all, West Virginia doesn't need to wait for men to displace women in sports before acting. It can anticipate a problem based on examples across the country. A legislature may justify a law under heightened scrutiny by looking beyond empirical evidence of harm occurring in the state and to "studies and anecdotes pertaining to different locales altogether." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995); *see also Edenfield*

*v. Fane*, 507 U.S. 761, 771 (1993) (applying intermediate scrutiny in context of commercial speech and suggesting that a law could be justified by anecdotal evidence from the state or another state); *United States v. Carter*, 669 F.3d 411, 418 (4th Cir. 2012) (legislature can satisfy intermediate scrutiny by reference to a "wide range of sources," including "common sense"); *Phillips v. Borough of Keyport*, 107 F.3d 164, 178 (3d Cir. 1997) (en banc) ("[I]ndividual legislators" can "base their judgments on their own study of the subject matter of the legislation, their communications with constituents, and their own life experience and common sense so long as they come forward with the required showing in the courtroom once a challenge is raised."). Excluding the female athletes' testimonies as irrelevant contradicts these cases.

*Second*, B.P.J. asserts that the evidence from the female witnesses is too prejudicial and likely to mislead the jury. Pl.'s Non-Party Witnesses MIL 3. Of course, probative evidence is often prejudicial by nature, but Rule 403 concerns itself with "unfair prejudice." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998). And that "unfair prejudice must 'substantially' outweigh the probative value of the evidence." *Id.* Overall, "Rule 403 is a rule of inclusion" that "generally favor[s] admissibility." *United States v. Udeozor*, 515 F.3d 260, 264–65 (4th Cir. 2008) (cleaned up and citation omitted).

B.P.J. doesn't support this Rule 403 objection with any analysis or identify which of Armistead's "proffered statements and opinion" are supposedly unfairly prejudicial. Pl.'s Non-Party Witnesses MIL 3. "It is not the court's responsibility to comb through the record to determine the basis for the objecting party's cursory objections or to make arguments on its behalf." *Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:18-cvV-01230, 2021 WL 2110876, at *3 (S.D.W. Va. May 25, 2021) (alterations omitted) (quoting *Hoffman v. Bailey*, 257 F. Supp. 3d 801, 824 (E.D. La. 2017)). And there is nothing unfair about hearing the testimony of people directly

affected by the very issue the Sports Act was designed to address: biological males competing in women's sports.

*Third*, B.P.J. objects that the female athletes' declarations contain hearsay. But B.P.J. cites only a single paragraph in Chelsea Mitchell's declaration. Pl.'s Non-Party Witnesses MIL 4. In that paragraph, Mitchell shared how she learned that she would be competing against a second biological male in the 2018 track season. App. to Def.-Intervenor's Mot. for Summ. J. (App.) 13 (Mitchell Decl. ¶ 22) (Doc. 286-1). She noticed in online posting of high school girls' track rankings that Terry Miller—a male who competed three seasons as a boy—topped the list. *Id.* Mitchell then stated in her declaration that her coach told her "that it must be some mistake—perhaps Terry entered in the wrong race." *Id.*

Hearsay by definition involves a "statement," which Rule 801(a) defines as an assertion "if the person intended it as an assertion." Fed. R. Evid. 801(a). "[S]tatements assert propositions that may be true or false." *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017). That's why commands and questions, for example, are not hearsay unless they are code for something else. *Id.*; *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009).

Nothing in this paragraph of the Mitchell's declaration is objectionable. Nobody disputes that Terry Miller is a biological male who identifies as transgender.[1] And Mitchell's coach's comment was not falsifiable; it was just an expression of surprise, a guess at why Terry Miller's name was in the girls' track rankings. Because

---

[1] The Court may take judicial notice of Miller's gender identity. *Soule ex rel. Stanescu v. Conn. Ass'n of Sch., Inc.*, No. 3:20-CV-00201 (RNC), 2021 WL 1617206, at *1 (D. Conn. Apr. 25, 2021) (noting that Miller is transgender); Mem. of Law in Supp. of Mot. to Dismiss at 5, *Soule*, 2021 WL 1617206 (No. 3:20-CV-00201 (RNC) (Doc. 145-1)) (Defendants' noting that Terry Miller was born with "the sex of male"). Mitchell's knowledge of Miller's gender identity also did not rely on her coach's comment.

4

the comment is not an assertion of fact, it can't be used for its truth. So it's not hearsay. The only falsifiable (i.e., assertive) aspect of the coach's comment shows the coach's then-existing state of mind, which is admissible under Rule 803(3).

The comment is also admissible as nonhearsay because it's relevant aside from its truth. Fed. R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). Some statements "have relevance simply because they were made." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 566 (D. Md. 2007). And a statement is not hearsay when it is used to show the effect on the listener. *United States v. Safari*, 849 F.2d 891, 894 (4th Cir. 1988) (a statement is not hearsay if offered to "show [the listener's] knowledge"). Here, Mitchell's coach's comment to Mitchell had an effect on her and was part of her experience competing against males.

"An objecting party must 'spell out the nature of the defects clearly and distinctly.'" *Blasic v. Chugach Support Servs., Inc.*, 673 F. Supp. 2d 389, 395 (D. Md. 2009) (quoting 11 James W. Moore, et al., Moore's Federal Practice, § 56.14(4)(b)). Accordingly, this Court should confine its hearsay analysis of this motion to the single example raised. *See Courtland*, 2021 WL 2110876, at *3 (stating the court should not "comb" through the record and do the parties' jobs).

*Fourth*, B.P.J. generally asserts that some statements made in the female athletes' declarations are in fact improper expert testimony lacking foundation. Pl.'s Non-Party Witnesses MIL 4–5. But despite that broad assertion, B.P.J. identifies only two paragraphs of Cynthia Monteleone's declaration[2] as purported improper expert

---

[2] B.P.J. attributes the allegedly improper statements to Darcy Aschoff, but the quotations B.P.J. cites are from Cynthia Monteleone. App. 55–56 (Monteleone Decl. ¶¶ 11–12).

5

testimony. App. 55–56. While B.P.J. calls this an "example" of improper expert testimony, B.P.J. fails to identify any other examples. Once again, the Court should not do B.P.J.'s job. *Courtland*, 2021 WL 2110876, at *3.

Even so, the challenged portion of Monteleone's declaration has an adequate foundation. The Fourth Circuit frequently upholds lay opinion testimony as having proper foundation when the witness's opinion testimony was obtained through personal work experience. *United States v. Farrell*, 921 F.3d 116, 144–45 (4th Cir. 2019) (lawyer-witnesses could give lay opinion on legal-ethics questions based on personal work experience as attorneys); *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017) (construction employee could give lay opinion about constructions cost estimate based on personal knowledge from years of work experience). Nor does Rule 701 "interdict all inference drawing by lay witnesses." *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006) (quoting *United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000)).

Here, Monteleone's lay opinion was based on her many years' experience as an elite female athlete and coach. Monteleone competed against a male athlete in international competition and witnessed her daughter have a similar experience on the high school track field. App. 55–56 (Monteleone Decl. ¶¶ 8, 14–17). Though the Fourth Circuit has recognized there's often a "fine" line between lay and expert opinion, *Farrell*, 921 F.3d at 145, Monteleone's personal knowledge as an athlete and coach undergirds her lay opinion testimony. And even if two small paragraphs of Monteleone's declaration were indeed improper expert testimony, that would not justify fully excluding Monteleone as a witness.

*Fifth*, B.P.J. once again argues that the Court should strike all witnesses whom Armistead disclosed in her supplemental disclosures for failure to timely disclose those individuals. Pl.'s Non-Party Witnesses MIL 5; *see also* Pl.'s Consol. Mem. in Opp. to Defs.' Mots. for Summ. J. 9–11 (Doc. 331). The Court should deny this request.

6

Armistead's summary-judgment reply brief provided the timeline of events. Def.-Intervenor's Reply in Supp. of Mot. for Summ. J. 9 (Doc. 347). On February 2, 2022, Armistead responded to B.P.J.'s broad interrogatories. Second Supp. App. to Def.-Intervenor's Mot. for Summ. J. (Second Supp. App.) 78–100 (Doc. 344). Armistead then supplemented her initial disclosures with related information on February 11—just over a month after the initial-disclosure deadline and a month and half before discovery closed on March 25. And she has given the same reason for the timing of the supplemental disclosures since February, a month before discovery closed. *Id.* at 103. In a February 25 email to B.P.J.'s counsel, Armistead's counsel explained that the supplemental disclosures were made to align with Armistead's earlier discovery responses. *Id.*

B.P.J. emphasizes that Armistead's disclosures came shortly after the February 8 deadline for written discovery *requests* (Pl.'s Non-Party Witnesses MIL 5), but that deadline was not the discovery deadline, nor did it apply to supplemental disclosures. So B.P.J. had the opportunity to depose the disclosed individuals. In fact, when B.P.J.'s counsel asked about the supplemental disclosures in the February email exchange, Armistead's counsel noted that she "may rely on the declaration or testimony of some of these individuals at summary judgment or trial, but has not yet made this decision." Second Supp. App. 103.

B.P.J. also emphasizes that Armistead's supplemental disclosures came four months after Armistead's initial disclosures. Pl.'s Non-Party Witnesses MIL 5. But that's beside the point. Armistead sent her initial disclosures to B.P.J. on October 4, 2021, before her initial disclosures were even due. The initial-disclosure deadline was 30 days after Armistead joined the case, which here would have been January 3, 2022. Fed. R. Civ. P. 26(a)(1)(D). That deadline has no bearing on supplemental disclosures because it wasn't until February that B.P.J.'s broad discovery requests prompted Armistead to supplement her disclosures. And there isn't even a deadline for

supplemental disclosures—either in the scheduling order or the federal rules. *See* Fed. R. Evid. 26(e).

B.P.J. seems to be arguing under Rule 37(c)(1) of the Federal Rules of Civil Procedure. That rule addresses failures to disclose or supplement per Rule 26. But Rule 37(c)(1) does not apply here precisely because Armistead did supplement her disclosures. This is not a case where a party made supplemental disclosures on the last day of discovery as in *Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 232 (4th Cir. 2019). Here, Armistead's supplemental disclosures came a month and a half before discovery closed. Nor is this a case where a party provided disclosures without any explanation, a year into discovery and just weeks before the close of discovery. *Nance v. Ky. Nat'l Ins. Co.*, Civ. A. No. 2:02-0266, 2005 WL 8159348 (S.D.W. Va. July 28, 2005). That's what happened in *Nance*. *Id.* at *5–6. But unlike Armistead, the plaintiff in *Nance* provided no explanation for the supplemental disclosures. *Id.* at *6. The *Nance* court also found that the defendant didn't have "even a hint" about the identities of the supplementally disclosed witnesses prior to the plaintiff's disclosures. *Id.* at *5. In contrast, B.P.J.'s broad discovery requests prompted broad answers by Armistead, which in turn led to the supplemental disclosures. In sum, Armistead's supplemental disclosures were timely and reasonable.

Moreover, Rule 37(c)(1) does not dictate excluding witnesses in the supplemental disclosures, even untimely ones. Instead, Armistead may rely on the "information or witness to supply evidence on a motion, at a hearing, or at a trial" if "the failure was substantially justified" and "harmless." Fed. R. Civ. P. 37(c)(1). If the Court reaches this analysis, then the following factors should be considered:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

8

*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 397 (4th Cir. 2014). Four of these strongly favor admissibility. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178 (4th Cir. 2017) (relying on late-disclosed evidence was harmless where four of the five factors were shown).

First, relying on the female athletes is not surprising because, as noted above, Armistead disclosed their identities and contact information in her supplemental disclosures in February. It's also not surprising because Armistead's interrogatory responses to plaintiff cited numerous examples of male athletes competing in women's sports, including examples involving the female-athlete witnesses. And B.P.J. also could have cured any surprise by deposing the disclosed athletes. This evidence will not disrupt the trial either, particularly since the trial is now seven months away. Finally, Armistead has explained the timing of the disclosures—in the February email exchange, the summary-judgment briefing, and this response. The only factor that might not weigh in favor of admissibility is the importance of the evidence, because Armistead's legal argument succeeds even without the female-athlete witnesses. But this evidence is vitally important under B.P.J.'s legal theory, which (incorrectly) requires West Virginia to identify past examples of men competing against women to justify the Sports Act. B.P.J. cannot have it both ways, saying the evidence is irrelevant and unimportant but also faulting Defendants for failing to provide evidence like this.

If Armistead had failed to supplement her disclosures with the female athletes' information, she could have been subject to Rule 37(c)(1). Now, months after the supplemental disclosures, B.P.J. still wants Rule 37(c)(1)'s harshest sanction to apply. The Court should not fall for B.P.J.'s gambit.

Respectfully submitted this 29th day of June, 2022.

Tyson C. Langhofer, VA Bar No. 95204*
Rachel A. Csutoros, MA Bar No. 706225*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-2119
(571) 707-4790 Fax
tlanghofer@adflegal.org
rcsutoros@adflegal.org

Travis C. Barham, GA Bar No. 753251*
Alliance Defending Freedom
1000 Hurricane Shoals Road NE, Ste D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-0774 Fax
tbarham@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com

/s/ Brandon S. Steele
Brandon Steele, WV Bar No. 12423
Joshua D. Brown, WV Bar No. 12652
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com
joshua_brown05@hotmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Roger G. Brooks, NC Bar No. 16317*
Henry W. Frampton, IV, SC Bar No. 75314*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org
rbrooks@adflegal.org
hframpton@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

*Visiting Attorneys
Attorneys for Defendant-Intervenor

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants,*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

## CERTIFICATE OF SERVICE

I, Brandon Steele, hereby certify that on June 29, 2022, I electronically filed a true and exact copy of ***Defendant-Intervenor's Response to Plaintiff's Motion in Limine to Exclude Evidence and/or Argument Regarding Statements of Non-Party Witnesses in Supplemental Disclosures and Supporting Memorandum of Law*** with the Clerk of Court and all parties using the CM/ECF system.

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com
*Attorney for Defendant-Intervenor*

11