IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING PRESS REPORTS AND SUPPORTING MEMORANDUM OF LAW**

In separately filed oppositions, the State (Dkt. No. 423 (State Opp.)) and Intervenor (Dkt. No. 430 (Intervenor Opp.), collectively, "Defendants") do not dispute—as they cannot—that press reports are generally inadmissible as hearsay to the extent they are introduced to prove the truth of the matter asserted in the reports, and that the press reports offered by Defendants regarding transgender women participating in national or international competitive athletics do not concern B.P.J. or other juvenile athletes in similar circumstances. Indeed, Defendants assert that the "truth or falsity of specific content [in the articles] is *irrelevant*" to their admissibility, (Dkt. No. 423

1

(State Opp.) at 4), and instead claim that this smattering of news articles is relevant to justifying the passage of H.B. 3293. These arguments lack any merit.

## ARGUMENT

*First*, Defendants concede that the news articles cannot be introduced for the truth of the matter asserted. Defendants argue that the reports are not hearsay because they are merely offered (1) as "background information," (2) to disprove that "no problem exists" underlying Plaintiff's participation in youth athletics, and (3) to show "general awareness" of, and a "national zeitgeist" around the issue of transgender participation in competitive sports. (Dkt. No. 423 (State Opp.) at 2, 3.) Defendants go so far as to claim that the existence of these press reports "is independently relevant, regardless of its truth or falsity." (Dkt. No. 423 (State Opp.) at 5 (quoting *Marr v. Putnam*, 321 P.2d 1061, 1066 (1958).) But these arguments cannot disguise the fact that Defendants are still attempting to—impermissibly—rely on these press reports for the truth of the matter asserted therein. Put differently, Defendants want to introduce hearsay. Indeed, it is unclear how the State could "disprove" that "no problem exists," provide "background info," or show a "national zeitgeist" around the issue of transgender participation in competitive sports without attempting to offer the substance of these articles as true and worthy of consideration by the Court or jury. This attempt flies in the face of clear precedent precluding this "'rank hearsay'" from being used at trial.[1] *Greene v. Scott*, 637 F. App'x 749, 752 (4th Cir. 2016) (quoting *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010)); *see also, e.g.*, *Gantt v. Whitaker*, 57 F. App'x 141, 150 (4th Cir. 2003) (quoting *United States v. ReBrook*, 58 F.3d 961, 967 (4th Cir. 1995)). The cases

---

[1] Intervenor asserts that Plaintiff's reliance on "sport organizations' policies" undermines her argument for exclusion (Dkt. No. 430 (Intervenor Opp.) at 3), but Intervenor mixes apples and oranges by conflating formal sports policies (which are not at issue in Plaintiff's motion) with press reports (which are the subject of Plaintiff's motion).

2

that Defendants rely upon have no bearing on the press reports that Plaintiff seeks to exclude.  Each of the cases concerns either: (i) press reports providing necessary context to other evidence but not introduced for the truth of the matter asserted in the report itself,[2] (ii) reports that were not objected to by any party,[3] or (iii) reports directly involving the parties and facts at issue introduced for the narrow purpose of tending to prove that a party was on notice.[4]

*Second*, in addition to being inadmissible hearsay, the reported anecdotes offered about out-of-state competitions are not relevant to—nor can they justify—West Virginia's adoption of H.B. 3293.  *See, e.g.*, *Sutphin v. Ethicon, Inc.*, 2020 WL 5079170, at *9 (S.D.W. Va. Aug. 27, 2020) (noting agreement that "evidence of media reports and/or documentaries that are critical of [the product] are . . . irrelevant and inadmissible"); *Mayne-Harrison v. Dolgencorp, Inc.*, 2010 WL 3717604, at *17 (N.D.W. Va. Sept. 17, 2010) (striking articles as irrelevant).  Although Intervenor asserts that "West Virginia can look to experiences of other jurisdictions," as well as "common sense and logic" and "studies and anecdotes pertaining to different locales," to craft its own legislation, (Dkt. No. 430 (Intervenor Opp.), at 2 (quoting, among other decisions, *City of Renton*

---

[2] *See United States v. Romer*, 148 F.3d 359, 368 (4th Cir. 1998) (noting article was introduced only to provide "background to a taped conversation that occurred . . . in which . . . conspirators referred to the article and its discussion of convictions"), *abrogation recognized by United States v. Strassini*, 59 F. App'x 550, 552 (4th Cir. 2003).

[3] *See Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 (9th Cir. 2012) (noticing statistics regarding the number of games, after hearing no objection).

[4] *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 626–27 (1995) (referencing anecdotal record involving data from within the state at issue); *Hecox v. Little*, 479 F. Supp. 3d 930, 961 n.16 (D. Idaho 2020) (noticing articles describing specific plaintiff at issue); *Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n*, 2014 WL 12631652, at *2 (C.D. Cal. June 9, 2014) (noticing outcomes of five World Cup soccer matches); *In re Human Genome Scis. Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 758 (D. Md. 2013) (acknowledging ability to notice newspaper articles for narrow purpose of assessing "what the [securities] market knew at particular points in time"); *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 743 (E.D. Va. 2012) (agreeing that the court could admit news articles and advertisements about Plaintiff's brand to show what "others knew of Plaintiff's brand" at the time).

*v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52 (1986)), Intervenor misconstrues the law. The press reports at issue here hold no relevance to Plaintiff's as-applied challenge. Indeed, these reported accounts are nothing like the commissioned studies or "careful findings" from out-of-state agencies or courts, as permitted in *City of Renton*.[5]

Furthermore, Defendants offer no evidence that the legislature *actually relied* on any of these press statements in passing H.B. 3293. Indeed, several of the articles that Defendants rely on in their briefing were released many months *after* H.B. 3293 was enacted. (*See, e.g.*, Dkt. No. 287 (State MSJ) at 8 (citing from a Jan. 28, 2022 and March 23, 2022 article); Dkt. No. 288 (Intervenor MSJ) at 4 (citing Aug. 2, 2021 article).) Under the heightened standard of review that applies to this case, it is the State's burden to identify an "exceedingly persuasive justification" supporting B.P.J.'s categorical exclusion and such reasoning must have been the *actual reasoning relied upon by the legislature* when enacting HB. 3293. *See United States v. Virginia*, 518 U.S. 515, 531, 536 (1996); *see also Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982). In contrast, the press reports at most represent post hoc rationalizations, which are irrelevant under the governing standard. *Id*.

---

[5] *See also Whalen v. Roe*, 429 U.S. 589, 597 (1977) (commenting that statute was proper result of "rational legislative decision" as "recommended by a specially appointed commission which held extensive hearings," apart from drawing on "experience with similar programs in other States" dealing with patient-identification requirement for certain drugs); *United States v. Carter*, 669 F.3d 411, 418 (4th Cir. 2012) ("To discharge its burden of establishing a reasonable fit between the important goal of reducing gun violence and the prohibition in § 922(g)(3), the government may not rely upon mere 'anecdote and supposition.'" (quoting *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 822 (2000))); *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (finding ban on misdemeanant possession of firearms failed intermediate scrutiny where the government offered only "unsupported intuitions" to justify the ban, and remanding for further factual development (quoted language from *Carter*, 669 F.3d at 418)); *Satellite Broad. & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 355, 360 (4th Cir. 2001) (requiring minimal empirical evidence where intermediate scrutiny applied and Congress' justifications were "both familiar and plausible").

*Third*, Defendants do not meaningfully refute that under Federal Rule of Evidence 403, the unfair prejudice, confusion of the issues, misleading effect, undue delay, waste of time, and needless cumulation of evidence that would result from introducing the numerous press reports about out-of-state competitions—as Defendants seek to do—substantially outweighs any minimal probative value that the evidence might otherwise have. Indeed, even assuming that this evidence is relevant (it is not), the Court has "wide discretion to determine what evidence is admissible [or not] under [this] Rule." *United States v. Udeozor*, 515 F.3d 260, 265 (4th Cir. 2008). Allowing Defendants to interject myriad articles concerning irrelevant topics, non-pertinent sports, faraway places, and women or girls who do not play sports in West Virginia is independently not admissible under each factor listed in Rule 403.

*Finally*, far from making "cursory" or blanket objections, Plaintiff identified numerous instances of Defendants citing and relying upon press reports, which run across decades, countries, and various types of amateur, collegiate, and professional competition. (Dkt. No. 411 (Pl. MIL) at 2 (citing Dkt. No. 287 (State MSJ) at 2 & n.1, 3 n.3, 5 & nn.6–7, 7–8 & nn.9–10; Dkt. No. 288 (Intervenor MSJ) at 2–4 nn. 3–5).) The Court should preclude from trial these and any similar reports because they have no connection to the material issues in this case and would serve no legitimate purpose at trial.

## CONCLUSION

For the foregoing reasons, and for those stated in Plaintiff's opening brief, Plaintiff respectfully moves this Court to enter an Order excluding from trial all evidence and argument regarding the press reports and other accounts of transgender athletes and competitions unaffected by H.B. 3293.

<table>
<tr><td>

Dated: July 11, 2022

Joshua Block*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: (214) 219-8585
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
ccharles@lambdalegal.org
tborelli@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO 80202-5686
Phone: (720) 566-4000
abarr@cooley.com

</td><td>

Respectfully Submitted,
*/s/ Loree Stark*

Loree Stark (Bar No. 12936)
Nick Ward (Bar No. 13703)
AMERICAN CIVIL LIBERTIES UNION OF WEST
VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
lstark@acluwv.org
nward@acluwv.org

Kathleen Hartnett*
Julie Veroff*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com
jveroff@cooley.com
zhelstrom@cooley.com

Katelyn Kang*
Valeria M. Pelet del Toro*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com
vpeletdeltoro@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

*Visiting Attorneys*

*Attorneys for Plaintiff*

</td></tr>
</table>

6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

     I, Loree Stark, do hereby certify that on this 11th day of July, 2022, I electronically filed a true and exact copy of the ***Plaintiff's Reply in Support of Motion* in Limine *to Exclude Evidence and/or Argument Regarding Press Reports and Supporting Memorandum of Law*** with the Clerk of Court and all parties using the CM/ECF System.

                                                                  */s/ Loree Stark*
                                                                   Loree Stark
                                                                   West Virginia Bar No. 12936