IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON,<br><br>      *Plaintiff*,<br><br>    v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>      *Defendants*,<br>    and<br><br>LAINEY ARMISTEAD,<br>      *Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**PLAINTIFF'S CONSOLIDATED REPLY TO DEFENDANT STATE OF WEST VIRGINIA'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING THE PROPER MEDICAL TREATMENT FOR GENDER DYSPHORIA AND THE PROPRIETY OF PLAINTIFF'S DIAGNOSIS AND TREATMENT (DKT. NO. 424) AND DEFENDANT STATE OF WEST VIRGINIA AND DEFENDANT-INTERVENOR'S COMBINED RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ON GENDER DYSPHORIA AND B.P.J.'S GENDER IDENTITY (DKT. NO. 433)**

  Plaintiff B.P.J., a minor, by and through her next friend and mother, Heather Jackson, respectfully submits this consolidated Reply memorandum in support of Plaintiff's Motion *in Limine* to Exclude Evidence and/or Argument Regarding the Proper Medical Treatment for Gender Dysphoria and the Propriety of Plaintiff's Diagnosis and Treatment, (Dkt. No. 412), and Motion *in Limine* to Exclude Evidence and/or Argument Intended to Question Plaintiff's Gender Identity, (Dkt. No. 416.)

1

**ARGUMENT**

Defendant the State of West Virginia (the "State") opposes B.P.J.'s request to exclude evidence pertaining to the proper medical treatment for gender dysphoria and the propriety of B.P.J.'s gender dysphoria diagnosis and treatment. (*See* Dkt. No. 424 (State Opp.).) The State and Intervenor (collectively, "Defendants") together oppose B.P.J.'s requested exclusion of evidence suggesting that B.P.J.'s female gender identity is not genuine (unless both B.P.J. and Defendants are entirely precluded from offering evidence as to B.P.J.'s gender identity). (*See* Dkt. No. 433 (Intervenor Opp.).) Defendants' opposition briefs are riddled with inconsistencies and contradiction, and ultimately provide no basis for allowing such evidence to be introduced at trial.

This is a case about whether B.P.J. can participate on the same cross-country and track-and-field teams as other girls at her school. The relevant facts about B.P.J.'s life are that she is a transgender girl who has socially transitioned and is recognized as a girl in her daily life but is barred from playing sports consistent with her gender identity under H.B. 3293, and that, as a result of receiving puberty-delaying medication in June 2020, she has not—and will not—experience the increased levels of circulating testosterone that accompany typical endogenous puberty. What is or is not the proper medical treatment for gender dysphoria writ large; the propriety of B.P.J.'s gender dysphoria diagnosis and treatment; and Defendants' attempts to question B.P.J.'s female gender identity are all irrelevant to the case at hand and unduly prejudicial. (*Cf.* Dkt. No. 67 (PI Order) at 3 n.4 ("[W]hat is or should be the default treatment for transgender youth is not the question before the court").) Thus, any evidence, argument, or opinions on these topics should be excluded from trial.

B.P.J.'s motions *in limine* (Dkt. Nos. 412 and 416) should be granted in full.

I. **The State's Proffered Evidence And Argument Regarding The Proper Treatment For Gender Dysphoria And The Propriety Of B.P.J.'s Diagnosis And Treatment Should Be Excluded.**

B.P.J. is transgender, has been diagnosed with gender dysphoria, and has not experienced her endogenous puberty, facts which Defendants' expert witnesses do not dispute. (*See* Dkt. No. 290 (Pl.'s SUF) ¶¶ 1, 12–18.) B.P.J. has submitted the basic evidence "to demonstrate the fact that [she] was diagnosed with gender dysphoria and received treatment pursuant to that diagnosis"—subjecting her to H.B. 3293's prohibitions—not for the court "to determine whether that diagnosis was medically sound" or "whether it was medically necessary." *Grimm v. Gloucester Cnty. Sch. Bd.*, 400 F. Supp. 3d 444, 454 (E.D. Va. 2019), *aff'd*, 972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020). As this Court previously recognized, "there is an inescapable conclusion that Section 18-2-25d discriminates on the basis of transgender status." (Dkt. No. 67 (PI Op.) at 7.) The discrete evidence presented by Plaintiff establishing her diagnosis and treatment is relevant only to establish that B.P.J. is a transgender girl who is similarly situated to other girls and will not experience the physiological changes accompanying endogenous puberty, and confirms that she is in fact subject to the Act's discrimination.

At trial, however, Defendants are expected to offer testimony attempting to undermine the standard of care for the treatment of gender dysphoria in children and adolescents writ large. For instance, one of the central claims made by one of Defendants purported expert witnesses, Dr. Levine, is that "[t]here is no consensus or agreed 'standard of care' concerning therapeutic approaches to child or adolescent gender dysphoria." (Dkt. No. 325-1 (Levine Rep.) at 22; *see also id.* ¶ 78 ("There is likewise no broadly accepted standard of care with respect to use of

puberty blockers."); *id.* ¶ 88 ("[T]here is. . . no consensus concerning best practices or a 'standard of care' in this area."); Dkt. No. 324 (Levine *Daubert* Mot.) at 16–17.) Another of Defendants' expert witnesses, Dr. Cantor, similarly proposes to offer the opinion that "affirmation of a transgender identity in minors who suffer from early-onset or adolescent-onset gender dysphoria is not an accepted 'standard of care.'" (Dkt. No. 321-1 (Cantor Rep.) at 3 ¶ 8(e).) Such evidence is not relevant to the issues to be determined at trial. The State should not be permitted to expand the scope of this case by injecting its own irrelevant and prejudicial opinions as to what the standard of care for the treatment of gender dysphoria should be—such evidence is irrelevant under Rules 401 and 402, and this Court has already recognized "what is or should be the default treatment for transgender youth is not the question before the court" here. (Dkt. No. 67 (PI Op.) at 3 n.4.)

The State also contends that "Plaintiff's Amended Complaint[] avers that B.P.J. was 'diagnosed' with gender dysphoria, with little more than the simple statement of that diagnosis." (Dkt. No. 424 (State Opp.) at 2) (internal citations omitted). It is an undisputed fact that B.P.J. was diagnosed with gender dysphoria by duly credentialed medical providers. (*See* Dkt. No. 290 (Pl's SUF) ¶¶ 12–14.) But the State continues to deride B.P.J.'s identity and medical care and uses quotation marks around "diagnosed." Such unsupported questioning has no place at trial. The State then argues that evidence pertaining to the diagnosis and treatment of gender dysphoria is relevant because "Plaintiff[] alleges that not allowing B.P.J. to play on the girls' team 'would undermine her medical treatment for gender dysphoria' and would 'undermine' B.P.J.'s 'medical care.'" (*Id.* at 2.) But Plaintiff's argument that H.B. 3293 is unlawful does not hinge on whether it undermines her medically necessary care or not, and, in any case, evidence and argument about the propriety of treatment for gender dysphoria

4

generally or with respect to B.P.J. specifically is irrelevant to whether H.B. 3293 in fact harms B.P.J.

The State's continued, baseless attempt to question B.P.J.'s gender dysphoria diagnosis should also be rejected and—lacking in support or relevance—has no place at trial. The State argues that "Dr. Montano wrote the medical directive—prescribing the course of treatment—that day after a mere 45 minute consultation." (*Id*. at 6.) But B.P.J. continuously received treatment from Dr. Montano over the course of ***one year*** before she began taking puberty-delaying treatment and was carefully assessed during every visit. (Dkt. No. 290 (Pl.'s SUF) ¶12–13; Dkt. No. 289-21 (Montano Dep. Tr.) at 138:13-18.) And in any case, the propriety of B.P.J.'s gender dysphoria diagnosis is not relevant to the issues in this case. Although the State argues that its "proposed evidence certainly tends to disprove the Plaintiff's claims," (Dkt. No. 424 (State Opp.) at 6), this argument is based on a misapprehension of B.P.J.'s claims, which are simply that her exclusion from girls' sports teams as a transgender girl violates the Equal Protection Clause and Title IX. Neither of these claims requires this Court to evaluate the propriety of B.P.J.'s individualized diagnosis and treatment. Instead of merely defending H.B. 3293 based on the asserted governmental interests in promoting equal athletic opportunity and safety, Defendants seized on the highly personal details B.P.J. has shared to launch a gratuitous attack on B.P.J.'s identity and the care that she receives from her providers. Defendants should not be permitted to use this invasive discovery at the cost of prejudicing and harassing B.P.J.[1]

---

[1] The State further asserts that "Plaintiff's experts also reference treatment guidelines of the World Professional Association for Transgender Health ("WPATH") in support of Plaintiff's claim that affirmation therapy is required here." (Dkt. No. 424 (State Opp.) at 5.) B.P.J., nor her expert witnesses, claim that "affirmation therapy is required here." Again, B.P.J.'s case is not about medical treatment, despite Defendants' effort to transform this case into what it is not. All that is relevant here is the fact of her treatment and diagnosis, and how as a girl who is transgender, she is harmed by Defendants' actions to exclude her from school sports in the state of West Virginia.

Defendants' own inability to agree on whether such evidence is relevant or irrelevant further supports Plaintiff's argument for exclusion. Defendants argue (in direct conflict with the State's individual opposition at Dkt. No. 424) that "B.P.J.'s gender identity—and much less the proper treatment for gender dysphoria—are not necessarily relevant to the constitutional analysis in this case." (Dkt. No. 433 (Defendants' Opp.) at 2–3 ("Because the Sports Act has nothing to do with gender identity, the Court need not consider any evidence about 'gender affirming' care, the proper treatment protocol for gender dysphoria, or B.P.J.'s gender identity."); *see also* Dkt. No. 434 (Intervenor Mot.) at 2 ("Armistead does not believe that B.P.J.'s gender identity is relevant to this case.").) Defendants' conflicting arguments cannot both stand. The diagnosis and treatment of gender dysphoria cannot both be "relevant, probative, and admissible," (Dkt. No. 424 (State Opp.) at 2), and "not necessarily relevant," (Dkt. No. 433 (Defendants' Opp.) at 2, 3). What *is* relevant are the undisputed facts that B.P.J. is a transgender girl barred from playing on girls' teams under H.B. 3293 and that she is on puberty blocking medication. Beyond that, B.P.J.'s motions *in limine* (*see* Dkt. Nos. 412 and 416), identify the evidence that is irrelevant and should not be presented at trial: that which undermines the veracity of Plaintiff's identity and gender dysphoria diagnosis, and the appropriateness of her medical treatment.

Defendants do not—and cannot—rebut Plaintiff's contention that evidence pertaining to the ***fact*** of her individual gender dysphoria diagnosis and treatment is admissible, but evidence, argument, or opinion regarding the proper medical treatment for gender dysphoria ***writ large***, and the ***propriety*** of her diagnosis, treatment, and gender identity, is irrelevant to the issues central to this case and therefore inadmissible.

## II. Defendants' Proffered Evidence And Argument Seeking To Question B.P.J.'s Gender Identity Should Be Excluded.

With respect to B.P.J.'s motion to exclude evidence questioning her gender identity, Defendants claim that "B.P.J.'s entire argument hinges on the assertion that B.P.J. 'is a girl' for the purpose of participating in sports" and that "B.P.J. has made this case about gender identity." (Dkt. No. 433 (Defendants' Opp.) at 3, 5.) Of course this case is about gender identity—to the extent H.B. 3293 targets transgender girls like B.P.J. for exclusion from girls' sports teams. What it is not about—despite Defendants' fixation—is whether gender identity is "real" and whether B.P.J.'s gender identity is genuine. It is an undisputed fact that B.P.J. is a transgender girl who lives her life as a girl and is recognized as such—including by the school where she seeks to participate on girls' sports teams. And yet Defendants seek, through unsupported aspersions, to question B.P.J.'s gender identity by dismissively referring to it as merely a "student's stereotypical notions of self-identified gender." (Dkt. No. 305 (State MSJ Opp.) at 3.) Such argument reflects the "misconception and prejudice" at the heart of H.B. 3293, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 615 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert denied*, (141 S. Ct. 2878 (2021)) (quoting *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001)), and has no place at trial.

Intervenor has taken the same tactic, seeking to reduce B.P.J.'s identity to a question of "how feminine a particular athlete acts off the playing field." (Dkt. No. 302 (Intervenor MSJ Opp.) at 8.) Defendants' disparaging description of B.P.J.'s gender identity as disingenuous and/or a mere product of stereotyped attitudes will not assist any trier of fact in understanding the issues in this case. In addition to being irrelevant, any argument, testimony, or opinions from Defendants on this point should also be excluded to avoid risk of confusion and prejudice. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (stating that a motion in *limine* can be used "to exclude anticipated prejudicial evidence before the evidence is actually offered"); *In re C.R. Bard, Inc.*,

7

*MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 920 (4th Cir. 2016) ("District courts are granted broad discretion to decide whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusion of the issues.") (cleaned up); Fed. R. Evid. 403 (providing that relevant evidence should nevertheless be excluded if its introduction will result in "unfair prejudice, confus[ion of] the issues, [or] misleading the jury").

H.B. 3293 imposes a categorical ban on transgender girls and women from girls' and women's sports teams in West Virginia. Just like the policy in *Grimm*, H.B. 3293 "has the effect of shunting individuals like [B.P.J.]—who may *not* [participate on the girls' team] because of their 'biological [sex],' and who *cannot* [participate on the boys' team] because of their gender identity'—[out of school athletics] altogether." *Grimm*, 972 F.3d at 620 (Wynn, J., concurring). "[H]istorical experience and decades of scientific inquiry have established that transgender individuals have an innate conception of themselves as belonging to one gender," which is "foundational to their essential personhood." *Id*. at 624. H.B. 3293 effectively erases transgender girls by defining them as indistinguishable from cisgender boys. H.B. 3293's text—and the exclusion it mandates—imposes a stigma far beyond athletics and "is an invitation to subject [transgender] persons to discrimination both in the public and in the private spheres." *Lawrence v. Texas*, 539 U.S. 558, 575 (2003).[2]

---

[2] Defendants' citation to *Harley v. Wilkinson* is misplaced. 988 F.3d 766, 769 (4th Cir. 2021) *cert denied sub nom. Harley v. Garland*, 142 S. Ct. 426, *abrogated by New York State Rifle & Pistol Ass., Inc. v. Bruen*, No. 20-843, 2022 WL 2251305 (June 23, 2022). Rather than applying the intermediate scrutiny standard that is used in equal protection cases, *Harley* applied the "reasonable fit" standard that is used by the Fourth Circuit to evaluate restrictions on the Second Amendment. The "reasonable fit" Second Amendment standard is drawn from the Supreme Court's standard for evaluating commercial speech. *See United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (adopting standard from *Bd. Of Trs. of State Univ. of New York v. Fox*, 492

Defendants argue that both Equal Protection and Title IX claims "require[] proof of discriminatory treatment between similarly situated persons," and that "[a] male athlete's gender identity cannot make that athlete similarly situated to females because gender identity is not an informative, relevant consideration when it comes to promoting fairness and safety in sports." (Dkt. No. 433 (Defendants' Opp.) at 2–3.) Defendants' argument disregards this Court's rejection of the contention that B.P.J.'s rights are not being violated "because B.P.J. is being treated the same under this law as those she is similarly situated with: 'biological males' as defined by West Virginia Code § 18-2- 25d(b)(3)." (Dkt. No. 67 (PI Op.) at 7.) This Court stated that such contention "is misleading. Plaintiff is ***not most similarly situated with cisgender boys; she is similarly situated to other girls***." (*Id*.) (emphasis added). Defendants should not be permitted to continue to attack the Court's correct conclusion by introducing irrelevant, prejudicial, and harassing evidence.

Finally, Rule 611 charges the Court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a)(3). Arguments intended to undermine something as fundamental and deeply-held as B.P.J.'s gender identity are likely to subject a 12-

---

U.S. 469, 480 (1989)). Under that test, the government need only "establish[] a reasonable fit between the challenged law and a substantial governmental objective." *Harley v. Wilkinson,* 988 F.3d at 769 (citing *United States v. Staten,* 666 F.3d 154, 161 (4th Cir 2011) ("Moreover, in making this determination, [the Fourth Circuit does] not consider any individual characteristics of the person raising the as-applied challenge but focuse[s] entirely on the statute itself and the evidence addressing statutory purpose and fit."). The standard for intermediate scrutiny for sex and gender discrimination under the Equal Protection Clause, however, requires far more. Sex and gender classifications carry a "strong presumption" of unconstitutionality, *United States v. Virginia*, 518 U.S. 515, 532 (1996) (quoting *J.E.B. v. Alabama ex re. T.B.*, 511 U.S. 127, 152 (1994) (Kennedy, J., concurring)), and impose a "[demanding] . . . burden of justification" on the government, *id*. at 533.

year-old girl to painful embarrassment and harassment, and are a quintessential example of material properly excluded under Rule 611.

Defendants' inconsistent and unpersuasive arguments should be rejected.

## CONCLUSION

For all the reasons in Plaintiff's initial motions and above, Plaintiff respectfully requests that the Court grant Plaintiff's Motion *in Limine* to Exclude Evidence and/or Argument Regarding the Proper Medical Treatment for Gender Dysphoria and the Propriety of Plaintiff's Diagnosis and Treatment (Dkt. No. 412), and Plaintiff's Motion *in Limine* to Exclude Evidence and/or Argument Intended to Question Plaintiff's Gender Identity (Dkt. No. 416).

Dated: July 11, 2022

Joshua Block*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: (214) 219-8585
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
ccharles@lambdalegal.org
tborelli@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO 80202-5686
Phone: (720) 566-4000
abarr@cooley.com

Respectfully Submitted,
/s/ Loree Stark
Loree Stark (Bar No. 12936)
Nick Ward (Bar No. 13703)
AMERICAN CIVIL LIBERTIES UNION OF WEST
VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
lstark@acluwv.org
nward@acluwv.org

Kathleen Hartnett*
Julie Veroff*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com
jveroff@cooley.com
zhelstrom@cooley.com

Katelyn Kang*
Valeria M. Pelet del Toro*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com
vpeletdeltoro@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

*Visiting Attorneys

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

    I, Loree Stark, do hereby certify that on this 11th day of July, 2022, I electronically filed a true and exact copy of the ***Plaintiff's Consolidated Reply To Defendant State Of West Virginia's Opposition To Plaintiff's Motion* In Limine *To Exclude Evidence And/Or Argument Regarding The Proper Medical Treatment For Gender Dysphoria And The Propriety Of Plaintiff's Diagnosis And Treatment (Dkt. No. 424) And Defendant-Intervenor And State Of West Virginia's Combined Response To Plaintiff's Motion* In Limine *To Exclude Evidence On Gender Dysphoria And B.P.J.'S Gender Identity (Dkt. No. 433)*** with the Clerk of Court and all parties using the CM/ECF System.

                                                */s/ Loree Stark*
                                                Loree Stark
                                                West Virginia Bar No. 12936