# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

| | |
|---|---|
| B.P.J, by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants*<br><br>and<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**STATE OF WEST VIRGINIA AND DEFENDANT-INTERVENOR LAINEY ARMISTEAD'S REPLY IN SUPPORT OF THE JOINT MOTION TO SUPPLEMENT THE EXPERT REPORT OF DR. GREGORY A. BROWN**

**INTRODUCTION**

Expert testimony should be based on the best available science. That's why Defendant West Virginia and Intervenor Defendant Lainey Armistead ask to supplement Dr. Greg Brown's expert report with new peer-reviewed research on the effects of testosterone and puberty suppression on exercise physiology—all published *after* his expert report, *after* his deposition, and *after* discovery closed. Defendants also ask to supplement his report with new athletic policies acknowledging the emerging science. This should be uncontroversial. Everyone should want the factfinder to see the most up-to-date research in this evolving area.

But instead, Plaintiff B.P.J. contends that supplementation is improper because Dr. Brown isn't correcting an erroneous or misleading report. This argument ignores the language of Rule 26(e) and makes the suggestion that supplementation with new science is impermissible unless the expert first erred. That's incorrect. Rule 26(e) allows supplementation when the new information is relevant to the expert's opinions and was not available at the time of the expert report. The proposed supplement satisfies both requirements.

Likewise, B.P.J.'s suggestion that the supplement is untimely ignores that the science presented is brand-new, so it could not have been presented within the original deadlines. As Rule 26(e) requires, Defendants supplemented Dr. Brown's report at a reasonable point before trial based on when the information became available and the economy of avoiding multiple supplements. There is plenty of time for a brief deposition or rebuttal report before trial, and B.P.J. will incur no unfair prejudice or expense in responding to the new science.

B.P.J.'s final objection—that B.P.J. opposes Ms. Armistead's intervention—is a non sequitur since Dr. Brown is also the State of West Virginia's expert and no one objects to the State's participation in this case. So all of B.P.J.'s objections to the proposed supplement are without merit.

ARGUMENT

The proposed supplement (I) meets Rule 26(e)'s requirement to present information that is relevant to Dr. Brown's opinions and was not available when the original report was prepared. There is no requirement that the original report be erroneous. This proposed supplement is also (II) timely in light of the trial date, the newness of the science presented, and the economy of presenting a single supplement. And the only expenses B.P.J. will incur because of the supplement are the ordinary and appropriate expenses of responding to changes in the scientific literature. Finally, B.P.J.'s motion to reconsider Ms. Armistead's intervention (III) provides no basis for denying leave for Dr. Brown to supplement his report, as Dr. Brown was properly named and retained by the State of West Virginia.

## I. The proposed supplement presents relevant science that was not available at the time of the original expert report.

Rule 26(e) requires supplementation when a party learns that its expert report is "in some material respect . . . incomplete . . . ." Fed. R. Civ. P. 26(e). One thing that may make an expert report "incomplete" is the emergence of new information. *Palmetto Pharms., LLC v. AstraZeneca Pharms. LP*, No. 2:11-cv-00807-SB-JDA, 2012 WL 4369259, at *2 (D.S.C. July 18, 2012). Accordingly, Rule 26(e) permits supplementing an expert report to "add[] information that was not available at the time of the initial report." *Id.*

So the key questions in considering a proposed supplement "are (1) does the supplemental information correspond to a prior Rule 26(a) disclosure, and (2) was the supplemental information available at the time set for the initial disclosure." *In re C.R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 2:14-cv-02528, 2017 WL 4248809, at *2 (S.D.W. Va. Sept. 25, 2017). Here, the supplemental information corresponds to Dr. Brown's original report, and none of it was available at the time of the initial disclosure. Nothing more is required to demonstrate that the proposed supplement is proper.

2

### A. The new science is relevant to whether HB 3293 advances the State's interest in promoting equal athletic opportunities for female students.

The proposed supplement provides new scientific evidence that neither testosterone suppression nor puberty suppression eliminates pre-existing male athletic advantages. Brown Supp. Rep. ¶¶ 1–11. This evidence fills research gaps specifically identified in Dr. Brown's initial report. *See, e.g.*, Brown Rep. ¶¶ 113, 151. And it supplements the scientific evidence discussed in the initial report on how testosterone suppression affects a variety of physiological systems. Brown Supp. Rep. ¶¶ 5–7; Brown Rep. 129–33, 145–56, 162–66. It also supplements the initial report's discussion of how athletic policies are evolving by analyzing new policies from eight athletic organizations, all of which specifically tied their policy changes to the emerging science. Brown Supp. Rep. ¶¶ 12–28; Brown Rep. ¶¶ 171–77. So everything in the proposed supplement is directly linked to the original report and "correspond[s] to a prior Rule 26(a) disclosure." *In re C.R. Bard, Inc.*, 2017 WL 4248809, at *2.

And the new science is relevant to the question before the Court: whether HB 3293 advances the State's interest in equal athletic opportunity for female students. It provides further evidence that neither testosterone suppression nor puberty suppression eliminates the building blocks of male athletic advantage, which underscores the validity of classifying athletes based on biological sex. Brown Supp. Rep. ¶¶ 1–11. It also details how the athletics community is adjusting to the emerging science on the durability of male performance advantage by strengthening biological classifications, not eliminating them, which further illustrates that biology-based classifications promote fairness and equal opportunity. Brown Supp. Rep. ¶¶ 12–28.

B.P.J.'s personal characteristics have no bearing on the relevance of this material. As discussed in more detail in Defendants' prior briefing, this Court should

3

focus on "the particular classifications being made," and not the specific characteristics of the plaintiff.[1] *United States v. Timms*, 664 F.3d 436, 447–48 (4th Cir. 2012); *Harley v. Wilkinson*, 988 F.3d 766, 769 (4th Cir. 2021) (analysis does not turn on "individual characteristics"). "The broad legislative classification must be judged by reference to characteristics typical of the affected classes rather than by focusing on selected, atypical examples." *Califano v. Jobst*, 434 U.S. 47, 55 (1977).

That is exactly what the proposed supplement does. It cites studies that analyze the differences between biological males as a group and biological females as a group. Brown Supp. Rep. ¶¶ 1–11. And it shows that no medical intervention is proven to make males athletically equivalent to females, and that the sports world increasingly recognizes that biological classifications are critical to equal opportunity and fairness. *Id.* ¶¶ 1–28. It is therefore relevant to the question before the Court.

### B. None of the information in the proposed supplement was available at the time of the initial report.

B.P.J. does not appear to dispute that the proposed supplement focuses exclusively on scientific evidence and athletic policies published *after* Dr. Brown's initial report. Indeed, all of them were published well after the close of discovery. It is therefore established that the information in the proposed supplement was not "available at the time set for the initial disclosure." *In re C.R. Bard*, 2017 WL 4248809, at *2.

### C. Nothing more is required to demonstrate that the proposed supplement properly addresses areas where the original report was rendered "incomplete" by new information.

Misreading the case law, B.P.J. contends that the proposed supplement is improper because it bolsters the opinions expressed in Dr. Brown's original report,

---

[1] *See* Intervenor's Mem. in Supp. of Mot. for Summ. J., ECF No. 288, at 15–19; Intervenor's Resp. in Opp. to Pl.s' Mot. for Summ. J., ECF No. 302, at 14–17; State's Mem. in Supp. of Mot. for Summ. J., ECF No. 287, at 21–22; State's Resp. in Opp. to Pl.'s Mot. for Summ. J., ECF No. 305, at 24–27.

4

rather than correcting mistakes. But none of B.P.J.'s cited cases support that proposition. Instead, B.P.J. cites a slew of cases that address completely different issues.

*First*, B.P.J. cites cases that address the impropriety of "supplementing" an expert report with information that was available at the time the expert report was produced, or at least within the discovery period. *See, e.g.*, *Southern v. Bishoff*, 675 F. App'x 239, 249 (4th Cir. 2017) (party "offered no justification whatsoever for not producing evidence on that point prior to the discovery deadline"); *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 212 (4th Cir. 2017) (Wynn, J., concurring) (new opinions based on information available before the close of discovery); *Gilley v. C.H. Robinson Worldwide, Inc.*, No. 1:18-00563, 2021 WL 2785333, at *3 (S.D.W. Va. July 2, 2021) (supplement based on information available at time of original report); *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941, at *28 (W.D. Wis. Oct. 29, 2012) (party failed to explain why it could not obtain information before original report deadline). These cases are inapposite because the proposed supplement is based entirely on information that was published *after* Dr. Brown's initial report, *after* his deposition, and *after* the discovery deadline.

*Second*, B.P.J. cites cases for the proposition that an expert may not conduct new research outside of the report deadline to address flaws identified in his original report. *See, e.g.*, *Akeva, LLC v. Mizuno Corp.*, 212 F.R.D. 306, 308, 310 (M.D.N.C. 2002) (expert conducted new test after deadline apparently in response to opposing expert's criticism); *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) (attempt to recast expert's opinions after the deadline to comply with Rule 26(a)); *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) (supplement filed "to address the numerous problems in the expert report that plaintiffs discussed in moving for summary judgment"); *EEOC v. Freeman*, 961 F. Supp. 2d 783, 797 (D. Md. 2013) (same); *cf. Mullins v. Ethicon, Inc.*,

No. 2:12-cv-02952, 2017 WL 455938, at *1 (S.D.W. Va. Feb. 2, 2017) (attempt to bolster expert reports outside of deadline based on adverse court order). These cases are also inapposite, as the proposed supplement is not responding to any criticism levelled at Dr. Brown's report, but rather is simply updating the science addressed in his report based on newly published research.

In sum, B.P.J. cites nothing that undermines the propriety of the proposed supplement. It is a true supplement under Rule 26(e) because it provides information relevant to his opinions and the issues before the Court that was not previously available. It should therefore be allowed.[2]

## II. The proposed supplement is timely.

Rule 26(e)(2) requires parties to supplement expert reports before their Rule 26(a)(3) pretrial disclosures come due. Fed. R. Civ. P. 26(e)(2). The proposed supplement beat that deadline by two months, and B.P.J does not argue otherwise.

Instead, B.P.J. contends that the supplement was unduly delayed even though it met the deadline. Not so. The Rule 26 Advisory Committee Notes discourage piecemeal supplementation "as each new item of information is learned," and instead encourage supplementation at "appropriate intervals" and "with special promptness as the trial date approaches." Rule 26(e) advisory committee's note to 1993 amendment. Here, Defendants provided a comprehensive supplement more than 100 days before trial. The supplement includes a peer-reviewed article on the effects of testosterone suppression that was published a mere 17 days before the supplement was filed. Brown Supp. Rep. ¶¶ 8–11. And none of the supplemental

---

[2] B.P.J. cites nothing prohibiting the Court from considering the proposed supplement at summary judgment. Since it is a proper supplement under Rule 26(e), it should be considered as part of Dr. Brown's report for all purposes. *See, e.g., Symington v. Daisy Mfg. Co., Inc.*, 360 F. Supp. 2d 1027, 1031 (D.N.D. 2005) (considering supplemental report on summary judgment).

material was published before June 2022. It was eminently sensible and appropriate to combine all of the new material into a single supplement.

Defendants filed the supplement with plenty of time for B.P.J. to respond by deposing Dr. Brown, publishing a rebuttal report, or otherwise. The supplement is not lengthy: it is just over seven pages of text with a one-page bibliography. And the new materials are not voluminous: three peer-reviewed articles and eight new athletics policies. Questioning Dr. Brown on a handful of new articles and policies or asking one of B.P.J.'s four experts to respond to them should be little trouble.[3] So there is no undue delay or prejudice in the timing of the proposed supplement.

The cases B.P.J. cites are not to the contrary. Again, they address situations where a party tries to end-run the discovery schedule by supplementing late without excuse or in response to opposing arguments. *See, e.g.*, *Gallagher*, 568 F. Supp. 2d at 631 (supplement produced in response to summary judgment motion); *Colony Apartments v. Abacus Proj. Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006) (same); *Freeman*, 961 F. Supp. 2d at 797 (same); *S. States Rack & Fixture, Inc. v. Sherwin-Williams, Co.*, 318 F.3d 592, 594 (4th Cir. 2003) (new opinion disclosed for the first time during direct examination at trial); *Harless v. Pen Coal Corp.*, No. 3:01-0470, 2004 WL 6035175, at *2 (S.D.W. Va. May 26, 2004) (expert conducted additional research after discovery deadline to respond to deposition criticism); *Mullins*, 2017 WL 455938, at *5 (supplement included information available at time of original expert reports). They do not address supplements based entirely on scientific literature that was unavailable during the discovery period.

---

[3] As noted in the motion to supplement, Defendants will make Dr. Brown available at a mutually convenient time to be deposed on the contents of the proposed supplement. And Defendants will not object to B.P.J. producing a rebuttal to the supplement, provided Defendants are given a reasonable opportunity to depose the rebutting expert before trial.

7

Nor is B.P.J. entitled to any fees or costs associated with responding to the supplement. The only case B.P.J. cites for this proposition involved an expert producing a brand-new opinion with no justification or explanation after the expert-report deadline and after his deposition had been taken. *Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc.*, No. 2:09-cv-01278, at \*3 (S.D.W. Va. Jan. 28, 2011). Under those circumstances, all of the expert's opinions should have been disclosed within the original deadline, and it made sense to make the untimely party pay the costs associated with a second deposition. *Id.*

But here, Defendants did nothing wrong. Their proposed supplement is based solely on material that did not exist when Dr. Brown was deposed and thus could not have been discussed with him then. Any costs associated with B.P.J. responding to the new science are simply the ordinary costs associated with expert discovery in a rapidly evolving area of research, and there is no basis for shifting those costs to Defendants.

### III. Ms. Armistead's intervention has no bearing on the propriety of the proposed supplement.

Dr. Brown serves as an expert witness for both the State of West Virginia and Ms. Armistead. The State intervened in this case in June 2021, and *B.P.J. did not object*. State's Mem. of L. in Supp. of Mot. to Intervene, ECF No. 41, at 1–2. Nor has B.P.J. ever objected to the State's status as a party to this case. But B.P.J. argues that the pending objection to *Ms. Armistead's* intervention somehow "weighs against" the proposed supplement. Pl.'s Resp. at 8.

It does not. Regardless of whether Ms. Armistead remains a party—and she should for the reasons set out in her response to B.P.J's motion to remove her—Dr. Brown is the State's expert, and he should be permitted to apprise the factfinder of the best and most recent science on the issues before the Court. B.P.J.'s argument concerning Ms. Armistead's status appears to be little more than an attempt to

8

supplement its briefing on its motion to reconsider her intervention, which is fully briefed elsewhere.[4] It has no bearing on the proposed supplement.

## CONCLUSION

Expert testimony allows the factfinder to draw on "scientific, technical, or other specialized knowledge" to arrive at an "intelligent evaluation of the facts." Fed. R. Evid. 702, advisory committee's notes. In light of this objective, providing the factfinder with the best scientific information available should not be controversial.

And there is no legitimate controversy here. Defendants' proposed supplement updates Dr. Brown's report with the latest scientific research—none of which was available before the close of discovery—in plenty of time for B.P.J. to respond. The supplement easily satisfies the requirement of Rule 26(e) and should be permitted.

---

[4] *See* Intervenor's Resp. in Opp. to Pl.'s Mot. to Reconsider the Grant of Lainey Armistead's Permissive Intervention, ECF No. 380.

Respectfully submitted this 11th day of November, 2022.

PATRICK MORRISEY
  *West Virginia Attorney General*

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
Joshua D. Brown, WV Bar No. 12652
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com
joshua_brown05@hotmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Roger G. Brooks, NC Bar No. 16317*
Henry W. Frampton, IV, SC Bar No. 75314*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@adflegal.org
rbrooks@adflegal.org
hframpton@adflegal.org

Christiana Holcomb, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
cholcomb@adflegal.org

*/s/ Curtis R. A. Capehart*
Douglas P. Buffington II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Curtis R.A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
State Capitol Complex
1900 Kanawha Blvd. E, Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email: curtis.r.a.capehart@wvago.gov

*Counsel for Defendant, STATE OF WEST VIRGINIA*

(signatures continued on next page)

Tyson C. Langhofer, VA Bar No. 95204*
Rachel A. Csutoros, MA Bar No. 706225*
Philip A. Sechler, DC Bar No. 426358*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-2119
(571) 707-4790 Fax
tlanghofer@adflegal.org
rcsutoros@adflegal.org

Travis C. Barham, GA Bar No. 753251*
Alliance Defending Freedom
1000 Hurricane Shoals Road NE, Ste D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-0774 Fax
tbarham@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
(480) 502-2119
(480) 452-0900 Fax
tducar@azlawyers.com


*Visiting Attorneys
*Attorneys for Defendant-Intervenor*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| B.P.J, by her next friend and mother, HEATHER JACKSON<br><br>*Plaintiff,*<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA<br><br>*Defendants*<br><br>v.<br><br>LAINEY ARMISTEAD<br><br>*Defendant-Intervenor.* | Case No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Brandon Steele, hereby certify that on November 10, 2022, I electronically filed a true and exact copy of the foregoing with the Clerk of Court and all parties using the CM/ECF system.

*/s/ Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
(304) 253-1230
(304) 255-1520 Fax
bsteelelawoffice@gmail.com

*Attorney for Defendant-Intervenor*
