IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin<br><br>RELIEF REQUESTED BY FEBRUARY 3, 2023 |

**PLAINTIFF'S MOTION FOR A STAY PENDING APPEAL OF
<u>JANUARY 5, 2023 ORDERS [DKT. NOS. 512 AND 513]</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. BACKGROUND ............................................................................................................. 1
    A. H.B. 3293 And This Court's Injunction Allowing B.P.J. To Participate .............. 1
    B. This Court's Rulings Against B.P.J. And The Need For A Stay Pending Appeal ................................................................................................................... 3
III. LEGAL STANDARD ..................................................................................................... 4
IV. ARGUMENT ................................................................................................................... 5
    A. B.P.J.'s Substantial Merits Arguments Warrant A Stay Pending Appeal ............. 6
    B. The Equities Strongly Favor A Stay Pending Appeal ........................................ 10
V. CONCLUSION .............................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.M. by E.M. v. Indianapolis Pub. Sch.*,
  No. 1:22-cv-01075-JMS-DLP, 2022 WL 2951430 (S.D. Ind. July 26, 2022),
  appeal dismissed, No. 22-2332 (7th Cir. Jan. 19, 2023)............................................................6

*Doe v. Wood Ctny. Bd. of Educ.*, 888 F. Supp. 2d 771, 778 (S.D. W. Va. 2012) .........................10

*Goldstein v. Miller*,
  488 F. Supp. 156 (D. Md. 1980)..................................................................................................5

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020) ............................................................................................. *passim*

*H.B. Rowe Co. v. Tippett*,
  615 F.3d 233 (4th Cir. 2010) .......................................................................................................7

*Hecox v. Little*,
  479 F. Supp. 3d 930 (D. Idaho 2020), *appeal filed*, 20-35815
  (9th Cir. Sept. 17, 2020)...........................................................................................................6, 7

*Krell v. Queen Anne's Cty.*,
  No. CV JKB-18-0637, 2020 WL 416975 (D. Md. Jan. 27, 2020).............................................6

*Long v. Robinson*,
  432 F.3d 977 (4th Cir. 1970) .......................................................................................................4

*Nken v. Holder*,
  556 U.S. 418 (2009).....................................................................................................................4

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*,
  No. 1:16CV534(JCC/IDD),
  2016 WL 3346349 (E.D. Va. June 16, 2016) .............................................................................5

*Peck v. Upshur Cnty. Bd. of Educ.*,
  941 F. Supp. 1478 (S.D. W. Va. 1996).......................................................................................5

*Soule by Stanescu v. Conn. Ass'n of Schs., Inc. et al.*,
  No. 21-1365-cv, 2022 WL 17724715 (2d Cir. Dec. 16, 2022)...................................................6

*Westfield Ins. Co. v. Mitchell*,
  No. 2:12-cv-00585, 2013 WL 12166340 (S.D.W. Va. Feb. 7, 2013).........................................4

*WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*,
  No. 2:07-cv-00122, 2007 WL 9717802 (S.D. W. Va. Oct. 11, 2007)........................... *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 62(d) ................................................................................................1, 4, 5

I.  Introduction

Plaintiff B.P.J., a minor, by and through her next friend and mother, respectfully moves for a stay of this Court's order dissolving the as-applied preliminary injunction pending appeal of the Orders entered by this Court on January 5, 2023 (Dkt. Nos. 512 and 513 ("Orders")). *See* Fed. R. Civ. P. 62(d). This stay motion is about preserving the status quo for a 12-year-old girl who loves to run and whose participation on her girls' cross-country and track-and-field teams harms no one. A stay of the order dissolving the preliminary injunction pending appeal will allow B.P.J. to continue participating on those teams consistent with her gender identity, as she has—without incident—since this Court's preliminary injunction order was entered on July 21, 2021. Tryouts for spring track-and-field are to take place on February 27, 2023. Absent a stay pending appeal, B.P.J. will be barred from participation—a result that will severely and irreparably harm her and benefit absolutely no one. (*See* Dkt. No. 512 at 9 (explaining that the challenged "statute is at best a solution to a potential, but not yet realized, 'problem'").)

Plaintiff respectfully requests that this Court rule on this motion by February 3, 2023, so that Plaintiff may try out for spring track and, as necessary, seek relief from the Fourth Circuit Court of Appeals in order to do so. Although Plaintiff respectfully submits that a stay pending appeal should be granted in full, Plaintiff alternatively seeks a stay pending the Fourth Circuit's resolution of a stay motion.

Plaintiff was unable to confirm WVSSAC's position on the stay prior to filing. All other Defendants did not consent to the stay.

II.  Background

A.  H.B. 3293 And This Court's Injunction Allowing B.P.J. To Participate

On April 28, 2021, West Virginia enacted H.B. 3293, a law that categorically bans all transgender girls and women from participating on girls' and women's sports teams within the

1

state. (Dkt. No. 290 (Pl's SUF) ¶¶ 43-44.) As this Court has observed, this enactment was "at best a solution to a potential, but not yet realized, 'problem,'" (Dkt. No. 512 at 9) and was "aimed to politicize participation in school athletics for transgender students," (*id.* at 22).

On July 21, 2021, thirteen days after H.B. 3293 took effect, this Court granted then-11-year-old B.P.J., a narrow, as-applied preliminary injunction prohibiting Defendants from enforcing H.B. 3293 against B.P.J. and allowing B.P.J. to participate on the girls' cross-country and track teams at her middle school. (Dkt. No. 67.) In so ruling, this Court correctly observed that "B.P.J. has not undergone and will not undergo endogenous puberty, the process that most young boys undergo that creates the physical advantages warned about by the State," (*id.* at 10), and that, "[a]s applied to B.P.J., [H.B. 3293] is not substantially related to protecting girls' opportunities in athletics or their physical safety when participating in athletics," (*id.* at 11). This Court also explained that "[i]t is clearly in the public interest to uphold B.P.J.'s constitutional right to not be treated any differently than her similarly situated peers because any harm to B.P.J.'s personal rights is a harm to the share of American rights that we all hold collectively." (*Id.* at 14.)

Pursuant to this Court's preliminary injunction order, B.P.J. has participated without incident on her middle school's girls' cross-country and track teams over the past year and a half. (H. Jackson Decl. ¶ 10.) B.P.J. describes those two years on the girls' teams as "the best of [her] life." (B.P.J. Decl. ¶ 6.) B.P.J.'s mother has "never seen [B.P.J.] happier" than when she "pick[s] her up from practices and take her to meets." (H. Jackson Decl. ¶ 10.) Not only are these sports a passion of B.P.J.'s, but being able to participate on a team has allowed her to make many friends, show sportsmanship towards her team and girls from other schools, and motivate herself and her teammates to try their hardest at practices and meets. (*Id.* ¶ 6.) B.P.J. is far from the most competitive member of her team—consistently finishing near the back of the pack—but is a team

2

player who loves to play sports, have fun with her friends, and try her best during practices and meets. (H. Jackson Decl. ¶ 10.)[1]

There have been no issues caused by B.P.J.'s participation on Bridgeport Middle School's girls' cross-country and track teams. (Dkt. No. 290 (Pl's SUF) ¶ 120, 127; H. Jackson Decl. ¶ 10.) Additionally, no student was physically harmed by B.P.J.'s participation. (Dkt. No. 290 (Pl's SUF) ¶¶ 127-128, 136.)

B.P.J. is now 12 years old and is in seventh grade at Bridgeport Middle School. In June of 2022, after several years of consulting with her team of medical professionals, B.P.J. was prescribed estradiol, an estrogen-based feminizing hormone therapy used to maintain testosterone levels in the typical female range in transgender girls and women. (H. Jackson Decl. ¶ 5.) B.P.J. is currently taking estradiol in conjunction with her puberty delaying treatment. (*Id.*) As a result, B.P.J. will not go through endogenous puberty and will instead develop physiological characteristics consistent with a typical female puberty. (*Id.*)

### B. This Court's Rulings Against B.P.J. And The Need For A Stay Pending Appeal

On January 5, 2023, this Court issued the Orders granting summary judgment to Defendants, dissolving the preliminary injunction, and dismissing the case. (Dkt. Nos. 512, 513.) When B.P.J.'s mother told B.P.J. about this Court's ruling, B.P.J. was devastated. (H. Jackson

---

[1] For example, in the Fall of 2022, B.P.J. participated in five meets as a part of her cross-country season, and her performance was consistent with that in previous seasons. (H. Jackson Decl. ¶ 8.) At the Charles Point Invitation, B.P.J. placed 54 out of 55 participants. (*Id.*) At the Mountain Holler Middle School Invitational, B.P.J. placed 43 out of 53 participants. (*Id.*) At the Taylor County Middle School Invitational, B.P.J. placed 38 out of 46 participants. (*Id.*) At the Elkins Middle School Invitational, B.P.J. placed 78 out of 80 participants. (*Id.*) At B.P.J.'s final race of the season, the Mid-Mountain 10 Conference Middle School Championships, B.P.J. finished 64 out of 65 participants. (*Id.*) During the spring track-and-field season in 2022, B.P.J. placed 36 out of 45 participants in the shotput at the Connect Bridgeport Middle School Invitational. (*Id.* at ¶ 7). At the Ritchie Middle School Pizza Box Invitational, B.P.J. placed 15 out of 25 participants in discus. (*Id.*) At the Harry Green Middle School Invitational, B.P.J. placed 57 out of 61 participants in shotput, and 35 out of 53 participants in discus. (*Id.*)

Decl. ¶ 11; B.P.J. Decl. ¶ 8.) B.P.J. ran upstairs and "cried in [her] bed the whole night," as she "was terrified about not being able to continue doing the thing that she loves with her best friends." (H. Jackson Decl. ¶ 11; B.P.J. Decl. ¶ 8.) B.P.J. was scared to go to school the next day and face the friends and teammates she has spent the last two years becoming close with and who she calls her "second family." (B.P.J. Decl. ¶¶ 9-10.) To her relief, her classmates were frustrated on her behalf, and told her that they think she should be able to continue playing on the girls' teams. (B.P.J. Decl. ¶ 9.) B.P.J. is deeply upset that "West Virginia does not see [B.P.J.] for the girl that [she is] and won't let [her] run with [her] friends and be happy." (B.P.J. Decl. ¶ 9.)

Tryouts for the spring track-and-field season at Bridgeport Middle School begin on February 27, 2023. (H. Jackson Decl. ¶ 9.) Unless the status quo is preserved prior to that date through a stay of this Court's dissolution of the preliminary injunction, B.P.J. will not be able to participate on girls' sports teams at school, including the track team at Bridgeport Middle School this Spring. This will irreparably harm B.P.J.: preventing her from reaping the benefits of school sports on a team with other girls would stigmatize and isolate her as the only student unable to participate consistent with her gender identity, and would erase her from a crucial component of school and community life. (H. Jackson Decl. ¶ 12.)

### III.    Legal Standard

Where, as here, a district court has issued orders "dissolv[ing] . . . an injunction," the court may "restore" such an injunction pending appeal by issuing a stay. Fed. R. Civ. P. 62(d). "To obtain a stay, a party must show '(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay.'" *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, No. 2:07-cv-00122, 2007 WL 9717802, at * 1 (S.D. W. Va. Oct. 11, 2007) (quoting *Long v. Robinson*, 432 F.3d 977, 979 (4th Cir. 1970));

4

*accord Westfield Ins. Co. v. Mitchell*, No. 2:12-cv-00585, 2013 WL 12166340, at *2 (S.D.W. Va. Feb. 7, 2013) (quoting, inter alia, *Nken v. Holder*, 556 U.S. 418, 425-26 (2009)).

As this Court has explained, "a court need not 'harbor serious doubts concerning the correctness of its decision' in order to find that the party seeking a stay has a strong likelihood of success on appeal," because "[i]f that were the case, rule 62[d] relief would rarely be granted." *Musgrave*, 2007 WL 9717802, at *1 (quoting *Peck v. Upshur Cnty. Bd. of Educ.*, 941 F. Supp. 1478, 1481 (S.D. W. Va. 1996)). "Rather, '[w]hat is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained.'" *Musgrave*, 2007 WL 9717802, at *1 (quoting, inter alia, *Goldstein v. Miller*, 488 F. Supp. 156, 172-173 (D. Md. 1980)). Thus, "[t]he upshot is that 'a court, when confronted with a case in which the other three factors strongly favor interim relief, may exercise its discretion to grant a stay if the movant has made a substantial case on the merits.'" *Musgrave*, 2007 WL 9717802, at *1 (quoting *Peck*, 941 F. Supp. at 1481); *accord Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. *1:16CV534(JCC/IDD),* 2016 WL 3346349, at *5 (E.D. Va. June 16, 2016) (granting stay pending appeal because "Plaintiff raises a substantial case with several novel legal issues, the balance of equities weighs in favor of granting the stay, and the public interest lies in granting the stay").

### IV. Argument

This Court should grant a stay pending appeal to maintain the status quo for B.P.J. At a minimum, Plaintiff "has made a substantial case on the merits," *id.*, including in light of this Court's prior determination in its preliminary injunction ruling that B.P.J. was likely to succeed on the merits. All three remaining factors strongly favor a stay: B.P.J. will be irreparably harmed if the Orders are not stayed pending appeal; no one will be harmed if the Orders are stayed; and the public interest favors a stay preserving the status quo.

### A. B.P.J.'s Substantial Merits Arguments Warrant A Stay Pending Appeal

Given that "other three factors strongly favor interim relief,", B.P.J. need only make a "substantial case on the merits" to justify a stay. *Musgrave*, 2007 WL 9717802, at *1; *accord Krell v. Queen Anne's Cty.*, No. CV JKB-18-0637, 2020 WL 416975, at *2 (D. Md. Jan. 27, 2020). B.P.J. has more than satisfied this standard: not only does she have a substantial case on the merits, but she is likely to succeed on appeal. Here, this Court initially concluded that B.P.J. was likely to succeed on the merits of both her Equal Protection Clause and Title IX claims. (Dkt. No. 67 at 11, 13.) Two other district courts have also held that similar categorical bans on transgender girls and women participating in female sports likely violated either the Equal Protection Clause or Title IX. *See Hecox v. Little*, 479 F. Supp. 3d 930, 975 (D. Idaho 2020) (Equal Protection Clause), *appeal filed*, 20-35815 (9th Cir. Sept. 17, 2020); *A.M. by E.M. v. Indianapolis Pub. Sch.*, No. 1:22-cv-01075-JMS-DLP, 2022 WL 2951430 (S.D. Ind. July 26, 2022) (Title IX), appeal dismissed, No. 22-2332 (7th Cir. Jan. 19, 2023); *see also Soule by Stanescu v. Conn. Ass'n of Schs., Inc. et al.*, No. 21-1365-cv, 2022 WL 17724715, at *8 (2d Cir. Dec. 16, 2022) (citing *Grimm*, among other cases, to state that "discrimination based on transgender status is generally prohibited under federal law," including Title IX).

B.P.J. acknowledges that this Court's Orders now reflect a different view of the merits. But, as this Court's preliminary injunction order makes clear, there is at a minimum a substantial case that H.B. 3293 is both unconstitutional and in violation of Title IX, including under the Fourth Circuit's ruling in *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594-597 (4th Cir. 2020), which ruled in favor of a boy who is transgender who brought an as-applied challenge to a restroom policy based on "biological gender." (Dkt. No. 67 at 2.) (relying on *Grimm*). There is at least a substantial case that the Fourth Circuit applying *Grimm* will agree with this Court's analysis from the preliminary injunction stage.

When this Court concluded that B.P.J. was likely to succeed on her as-applied equal protection challenge, it faithfully applied controlling precedent, including *Grimm*. This Court recognized in its injunction order that H.B. 3293 "discriminates on the basis of transgender status." (Dkt. No. 67 at 7.); *accord Hecox*, 479 F. Supp. 3d at 975; (*see also* Dkt. No. 512 at 22 ("I have no doubt that H.B. 3293 aimed to politicize participation in school athletics for transgender students").) This Court then correctly determined that "Plaintiff is not most similarly situated with cisgender boys; she is similarly situated to other girls," including because "Plaintiff has lived as a girl for years . . . She changed her name to a name more commonly associated with girls. And of the girls at her middle school, B.P.J. is the only girl who will be prevented from participating in school-sponsored athletics." (Dkt. No. 67 at 7.) And just as *Grimm* conducted an as-applied analysis as to whether the school's restroom policy satisfied heightened scrutiny as applied to Grimm in particular, so did this Court's preliminary injunction order, explaining that its "inquiry is constrained to whether this statute is unconstitutional as applied to B.P.J.," which must be determined "based on a developed factual record and the application of a statute to a specific person." (Dkt. No. 67 at 9.) As the Fourth Circuit has made clear in the equal protection context, regardless of whether a plaintiff can "mount a successful facial challenge, [a plaintiff] may nonetheless be able to demonstrate that the application or enforcement of a statute is unconstitutional" if "a court has 'the concrete facts necessary' to assess such an as-applied challenge." *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 243 (4th Cir. 2010).

At summary judgment, however, this Court took a quite different approach—one akin to the reasoning of the *Grimm* dissent. *See Grimm*, 972 F. 3d at 628 (Niemeyer, J., dissenting) ("Grimm was born a biological female and identifies as a male, and therefore his circumstances are different from the circumstances of students who were born as biological males. For purposes

7

of restroom usage, he was not similarly situated to students who were born as biological males."). Among other things, this Court's summary judgment ruling analyzed the classification at issue as a distinction between boys and girls in general, not as specific discrimination based on transgender status, (Dkt. No. 512 at 14, 17.); determined that B.P.J. is similarly situated to a hypothetical cisgender boy with low circulating testosterone rather than the other girls on her team, (*id.* at 19); and failed to analyze B.P.J.'s as-applied claim by examining whether excluding B.P.J. in particular was substantially related to an important governmental interest in light of the fact that she has been receiving puberty-delaying medication and will not go through endogenous puberty because *other* girls who are transgender may not receive similar medical treatment (*id*. at 18). In each of these respects, this Court's summary judgement decision departed from the reasoning employed by the *Grimm* majority and employed reasoning more similar to the *Grimm* dissent.

Likewise, when this Court granted B.P.J.'s motion for a preliminary injunction, it faithfully applied *Grimm*'s Title IX holding. This Court stated that "as in *Grimm*, I also have little difficulty finding that B.P.J. is harmed by this law." (Dkt. No. 67 at 12.) "All other students in West Virginia secondary schools—cisgender girls, cisgender boys, transgender boys, and students falling outside of any of these definitions trying to play on the boys' teams—are permitted to play on sports teams that best fit their gender identity." *Id.* "Under this law, B.P.J. would be the only girl at her school, as far as I am aware, that is forbidden from playing on a girls' team and must join the boys' team. Like the discriminatory policy in Grimm, this law both stigmatizes and isolates B.P.J." *Id.* This Court also concluded that the harm to B.P.J. constituted unlawful "discrimination" because "B.P.J. will be treated worse than girls with whom she is similarly situated" since "she alone cannot join the team corresponding to her gender identity." *Id.* at 13.

8

By contrast, this Court's summary judgment decision rejected B.P.J.'s Title IX claim without mentioning *Grimm*. Instead, this Court stated that "despite her repeated argument to the contrary, transgender girls are not excluded from school sports entirely. They are permitted to try out for boys' teams, regardless of how they express their gender." (Dkt. No. 512 at 22.) But—like the rejected argument that Gavin Grimm could have used the girls' restrooms—the statement that B.P.J. can join a boys' team, "fails to 'meaningfully reckon with what it means for [B.P.J.] to be a transgender [girl].'" *Grimm*, 972 F.3d at 610 n.10. "[D]espite the [Defendants'] contention that there is no problem because [B.P.J.] could have" participated on boys' sports teams, "we must take a careful and practical look at the options [she] realistically faced." *Id.* at 624 (Wynn, J., concurring). "Forcing B.P.J. to compete on the boys' cross-country or track teams when girls' teams are available would completely erase who she is, and it would devastate her because she is a girl" and would be "a clear sign to her and others that the state refuses to see her and accept her for the girl that she is." (Dkt. No. 290 (Pl's SUF) ¶ 100.) And in no case would such a theoretical option allow for equal and non-stigmatizing treatment. (*See* Dkt. No. 512 at 12.)

Finally, with respect to whether the harm to B.P.J. constituted unlawful "discrimination" in violation of Title IX, this Court's summary judgment ruling that B.P.J. is similarly situated to other people classified by H.B. 3293 as "biological males," (*id.* at 22), is contrary to *Grimm*'s holding that Gavin Grimm was similarly situated to students of the same gender identity. Moreover, here, as in *Grimm*, just because "the act of creating sex-separated [sports teams] in and of itself is not discriminatory," *Grimm*, 972 F.3d at 618, does not mean that prohibiting students from participating consistent with their gender identity is permitted by Title IX. (*See, e.g.*, Dkt. No. 42 (U.S. Statement of Interest) ("Although the [Title IX] regulations allow recipients to

9

operate or sponsor separate teams based on sex, the regulations do not define 'sex' or address how students who are transgender should be assigned to such teams."))

\*\*\*

B.P.J. does not seek to reargue summary judgment. Rather, she respectfully submits that—regardless of whether the Court "harbor[s] serious doubts concerning the correctness of its decision"—she is likely to succeed on the merits on appeal, including under *Grimm*, and, at a minimum, presents "an admittedly difficult legal question" and "substantial case on the merits." *Musgrave*, 2007 WL 9717802, at \*1 (internal quotation marks and citations omitted). Accordingly, she has satisfied the standard for a stay pending appeal, particularly given the great harm that B.P.J. will suffer pending an appeal absent a stay.

**B.     The Equities Strongly Favor A Stay Pending Appeal**

The non-merits factors all strongly favor a stay pending appeal. B.P.J. "will experience [her] middle school years only once during [her] life," *Doe* v. *Wood Ctny. Bd. of Educ.*, 888 F. Supp. 2d 771, 778 (S.D. W. Va. 2012), and would be irreparably harmed if she is not permitted continue participating on her school's girls' cross-country and track teams. As this Court recognized in its order granting B.P.J. a preliminary injunction, there is "little difficulty finding that B.P.J. is harmed by this law" because "[l]ike the discriminatory policy in *Grimm*, this law both stigmatizes and isolates B.P.J." (Dkt. No. 67 at 12.) This Court also correctly recognized that "[f]orcing a girl to compete on the boys' team when there is a girls' team available would cause her unnecessary distress and stigma [and] would be confusing to coaches and teammates." *Id.* at 13. This Court ultimately found that B.P.J. "will be irreparably harmed if this law were to take full effect." *Id.* B.P.J. respectfully submits that conclusion is just as true today as it was in July 2021. Additional declarations from both B.P.J. and her mother strongly confirm this irrefutable point. (*See* H. Jackson Decl. ¶ 12; B.P.J. Decl. ¶ 9.).

10

In contrast, no harm will befall *anyone* if B.P.J. is permitted to participate in school sports consistent with her gender identity pending resolution of her appeal. *See, e.g.*, *Musgrave*, 2007 WL 9717802, at *2 (comparing "[w]hatever" injury to the defendant versus the harm to the plaintiff which "unquestionably constitutes irreparable injury" and concluding that the equities weighed in plaintiff's favor) (citation omitted). As this Court recognized in its Orders, it is "abundantly clear" that "West Virginia had no 'problem' with transgender students playing school sports and creating unfair competition or unsafe conditions," and thus "the statute is at best a solution to a potential, but not yet realized, 'problem.'" (Dkt. No. 512 at 9.) Indeed, while the preliminary injunction was in place, B.P.J.—the only person known to be impacted by this law—participated without incident on school-sponsored girls' cross-country and track teams alongside her classmates and friends for three seasons. (Dkt. No. 290 (Pl's SUF) ¶ 120, 127); H. Jackson Decl. ¶ 10.) No one was injured as a result of her participation; she did not "dominate" anything (but instead consistently finished at the back of the pack); and her teammates and coaches welcomed her participation on the team. (H. Jackson Decl. ¶ 7.)

Moreover, B.P.J.'s continued medical treatment only confirms this Court's finding in its preliminary order that "B.P.J. has not undergone and will not undergo endogenous puberty, the process that most young boys undergo that creates the physical advantages warned about by the State." (Dkt. No. 67 at 10.) Not only has B.P.J. continued puberty blocking treatment, but as of June 2022, B.P.J. began taking estradiol, an estrogen-based feminizing hormone therapy used to maintain testosterone levels in the typical female range in transgender girls and women. (H.

Jackson Decl. ¶ 5.) As a result, B.P.J. will not go through endogenous puberty and will instead develop physiological characteristics consistent with a typical female puberty.[2] (*Id.*)

Finally, the public interest strongly favors B.P.J.'s ability to participate in girls' sports pending appeal. As this Court explained in its preliminary injunction order, "[i]t is clearly in the public interest to uphold B.P.J.'s constitutional right to not be treated any differently than her similarly situated peers because any harm to B.P.J.'s personal rights is a harm to the share of American rights that we all hold collectively." (Dkt. No. 67 at 14; *See also* Dkt. No. 512 at 10 "B.P.J., like all transgender people, deserves respect and the ability to live free from judgment and hatred for simply being who she is.") The same is true today.

## V. Conclusion

For the foregoing reasons and all others apparent to this Court, B.P.J. respectfully requests that this Court stay the Orders pending appeal.

Dated: January 20, 2023

Joshua Block*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
1776 K Street, N.W., 8th Fl.
Washington, DC 20006-2304
Phone: (202) 804-6245
asmithcarrington@lambdalegal.org

Respectfully Submitted,
*/s/ Nick Ward*

Nick Ward (Bar No. 13703)
Aubrey Sparks (Bar No. 13469)
AMERICAN CIVIL LIBERTIES UNION OF
WEST VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
nward@acluwv.org
asparks@acluwv.org

Kathleen Hartnett*
Julie Veroff*
Zoë Helstrom*
COOLEY LLP

---

[2] Defendants have attempted to offer expert testimony arguing that transgender girls have a quantum of an athletic advantage even if they do not undergo endogenous puberty, but that testimony is subject to several pending *Daubert* challenges. (*See, e.g.*, Dkt. Nos. 316 and 317.)

12

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
ccharles@lambdalegal.org
tborelli@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO 80202-5686
Phone: (720) 566-4000
abarr@cooley.com

3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com
jveroff@cooley.com
zhelstrom@cooley.com

Katelyn Kang*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

*Visiting Attorneys*

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON, <br><br> *Plaintiff*, <br><br> v. <br><br> WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA, <br><br> *Defendants*, <br><br> and <br><br> LAINEY ARMISTEAD, <br><br> *Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316 <br><br> Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Nick Ward, do hereby certify that on this 20th day of January, 2023, I electronically filed a true and exact copy of ***Plaintiff's Motion for a Stay*** with the Clerk of Court and all parties using the CM/ECF System.

*/s/ Nick Ward*
Nick Ward
West Virginia Bar No. 13703

14