IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON, | |
| *Plaintiff,* | |
| v. | |
| WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA, | Case No. 2:21-cv-00316  Hon. Joseph R. Goodwin |
| *Defendants,* | |
| and | |
| LAINEY ARMISTEAD, | |
| *Defendant-Intervenor.* | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A STAY PENDING APPEAL OF JANUARY 5, 2023 ORDERS**

TABLE OF CONTENTS

Table of Authorities .................................................................................................. iii

Introduction ............................................................................................................... 1

Background ................................................................................................................. 2

Legal Standard .......................................................................................................... 5

Argument ................................................................................................................... 5

    I.  B.P.J. is not likely to prevail on the merits.......................................... 5

        A.   B.P.J. must show a likelihood of success on the merits, not just a "substantial case." .................................................................................. 6

        B.   B.P.J.'s argument is inherently contradictory and therefore cannot succeed on the merits. .................................................................... 8

    II. B.P.J. seeks to alter the status quo, not preserve it. .................................. 11

    III.The equities—merged with the public interest—weigh against B.P.J. ....... 12

Conclusion ................................................................................................................. 15

Certificate of Service ................................................................................................ 18

TABLE OF AUTHORITIES

**Cases**

*Adams ex rel. Kasper v. School Board of St. Johns County*,
    No. 18-13592, 2022 WL 18003879 (11th Cir. Dec. 30, 2022) .................... 10, 13

*Andino v. Middleton*,
    141 S. Ct. 9 (2020) ................................................................................ 11, 12, 15

*Brown v. Gilmore*,
    533 U.S. 1301 (2001) ......................................................................................... 2

*Bucklew v. Precythe*,
    139 S. Ct. 1112 (2019) ...................................................................................... 9

*Clark v. Arizona Interscholastic Association*,
    695 F.2d 1126 (9th Cir. 1982) .......................................................................... 9

*Clark v. Arizona Interscholastic Association*,
    886 F.2d 1191 (9th Cir. 1989) ........................................................................ 13

*Doe v. Wood County Board of Education*,
    888 F. Supp. 2d 771 (S.D.W. Va. 2012) ......................................................... 13

*Does 1-5 v. Cooper*,
    No. 1:13-cv-711, 2016 WL 10587195 (M.D.N.C. Mar. 2, 2016) ...................... 7

*Goldstein v. Miller*,
    488 F. Supp. 156 (D. Md. 1980) ....................................................................... 6

*Gregor v. West Virginia Secondary School Activities Commission*,
    No. 2:20-cv-00654, 2020 WL 5997057 (S.D.W. Va. Oct. 9, 2020) ................ 14

*Grimm v. Gloucester County School Board*,
    972 F.3d 586 (4th Cir. 2020) .......................................................................... 10

*Kadel v. Folwell*,
    No. 1:19-cv-272, 2022 WL 11166311 (M.D.N.C. Oct. 19, 2022) ..................... 7

*Long v. Robinson*,
    432 F.2d 977 (1970) ...................................................................................... 6, 7

*Neese v. Becerra*,
    No. 2:21-cv-163, 2022 WL 16902425 (N.D. Tex. Nov. 11, 2022) ................... 10

*Nken v. Holder,*
  556 U.S. 418 (2009) ...................................................................................... 5, 11

*Ohio Citizens for Responsible Energy, Inc. v. NRC,*
  479 U.S. 1312 (1986) ........................................................................................ 11

*Ohio Valley Environmental Coalition, Inc. v. U.S. Army Corps of Engineers,*
  890 F. Supp. 2d 688 (S.D.W. Va. 2012) .......................................................... 6, 7

*Peck v. Upshur County Board of Education,*
  941 F. Supp. 1478 (S.D. W. Va. 1996) ............................................................ 6, 7

*Petrie v. Ill. High School Association,*
  394 N.E.2d 855 (1979) ....................................................................................... 10

*Real Truth About Obama, Inc. v. Federal Election Commission,*
  575 F.3d 342 (4th Cir. 2009) ................................................................... 5, 6, 14

*Real Truth About Obama, Inc. v. Federal Election Commission,*
  607 F.3d 355 (4th Cir. 2010) .............................................................................. 5

*Real Truth About Obama, Inc. v. Federal Election Commission,*
  559 U.S. 1089 (2010) .......................................................................................... 5

*Respect Maine PAC v. McKee,*
  562 U.S. 996 (2010) ............................................................................................ 5

*Tuan Anh Nguyen v. I.N.S.,*
  533 U.S. 53 (2001) .............................................................................................. 9

*Van Wagner v. Atlas Tri-State SPE, LLC,*
  No. 3:11-cv-75, 2011 WL 10621664 (N.D.W. Va. Nov. 1, 2011) ........................ 7

*West v. Radtke,*
  48 F.4th 836 (7th Cir. 2022) ............................................................................. 10

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ......................................................................................... 5, 13

*Wise v. Circosta,*
  978 F.3d 93 (4th Cir. 2020) .............................................................................. 12

## INTRODUCTION

This Court recently ruled in a comprehensive opinion that West Virginia Code § 18-2-25d ("Sports Act") is constitutionally sound and consistent with Title IX's goals of promoting educational opportunities for women and girls. Mem. Op. and Order (Op.) 22 (Doc. 512). In doing so, this Court recognized that this case is *not* about "B.P.J.'s existence as a transgender girl." Op. 10. Instead, this Court considered whether West Virginia may lawfully maintain sex-separated sports based on the Code's definition of "biological sex," which looks to "physical form" based on "reproductive biology and genetics at birth." W. Va. Code § 18-2-25d(b)(1). And given that biology is the reason for separate men's and women's teams, it found the Sports Act to be lawful.

B.P.J. now asks this Court not for a stay but an ongoing injunction, suspending the Sports Act's application to B.P.J. pending appeal. B.P.J.'s Motion asserts that B.P.J. "is likely to succeed on the merits on appeal," that an injunction is necessary to preserve the status quo, and that the equities "strongly favor" an injunction because "no harm will befall anyone if B.P.J. is permitted to participate in school sports consistent with her gender identity." Pl.'s Mot. For a Stay Pending Appeal of Jan. 5, 2023 Orders (Mot. To Stay) 10–11 (Doc. 515).[1] These arguments, however, fail under the clearly applicable legal standard.

In starting with the merits, everyone—including B.P.J.—agrees that separate men's and women's teams exist to accommodate the average physiological differences between men and women. Still, B.P.J. argues that the state should designate athletic teams only according to gender identity even though gender identity does not affect a person's physiology. This argument cannot succeed. It is the biological classification and its effect on athletic performance – not gender identity – that motivates and

---

[1] This brief references page numbers according to a document's original pagination or bates stamp where it differs from the ECF stamp.

justifies the existence of girls' teams.

Far from preserving the status quo, B.P.J. seeks to upend it. B.P.J. is "seeking not merely a stay of [this Court's] judgment, but an injunction against the enforcement of a presumptively valid state statute." *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers). And Supreme Court and Fourth Circuit caselaw explicitly instruct that when a state acts to protect the health and welfare of its citizenry, it is the *state's* actions that set the status quo, not a federal court's intervention. This, too, dooms B.P.J.'s request since B.P.J. gets the relevant stay standard wrong.

Finally, the equities and public interest favor Defendants. West Virginia's statute separates males and females such that female competition is protected, allowing females who desire to compete in sports involving competitive skill or contact to compete fairly and safely against other biological females only. Thus, West Virginia Code § 18-5-25d helps keep biological females safe in contact sports and preserves a level playing field, whether in terms of where females finish in competition against each other or any other sports-related opportunity. Ultimately, this Court must – and did – consider the public's interest, not just the alleged harms to one individual. That public interest is manifest in the statute, which has passed constitutional muster. And it would now be inequitable to require Defendants to suspend application of the Sports Act against *only* B.P.J. while they are enforcing it against all others.

B.P.J.'s arguments cannot meet the heavy burden necessary for an injunction. This Court should deny the motion.

## BACKGROUND

In April 2021, West Virginia passed H.B. 3293, codified as West Virginia Code § 18-2-25d, which requires public schools to designate sports teams "based on

biological sex" and prevents biological male students from intruding into female sports, specifically competitive or contact sports. W. Va. Code § 18-2-25d(c)(1). Lawmakers passed the Sports Act to "promote equal athletic opportunities for the female sex" based on the "inherent differences" between the sexes, aware of occurrences of males competing against (and beating) female athletes in women's track events in other states. *Id*. at (a)(1)–(5); *see* Op. 9, 15.

Shortly before the Sports Act became effective, B.P.J. brought the present litigation. B.P.J. is a 12-year-old biological male who identifies as female. *See* Op. 1, 17–18; Mot. to Stay 3. B.P.J. takes hormones in conjunction with puberty blockers that will (according to B.P.J.) allow B.P.J. to "develop physiological characteristics consistent with a typical female puberty." Mot. to Stay 3. Not all biological males who identify as female elect to take medications to suppress their endogenous hormone production. Some "choose to only transition socially, rather than medically." Op. 18. "[T]he social, medical, and physical transition of each transgender person is unique." *Id*. And "there is much debate over whether and to what extent hormone therapies after puberty can reduce a transgender girl's athletic advantage over cisgender girls." *Id*.

In July 2021, this Court issued a preliminary injunction based on a preliminary and incomplete record, enjoining the Sports Act's application to B.P.J., and allowing B.P.J. to compete in girls' sports as this case proceeded. For three seasons, B.P.J. competed on the Bridgeport middle school's girls' cross-country and track and field teams.

For three seasons, B.P.J. also displaced female competitors. In doing so, B.P.J. sometimes placed near the bottom of the rankings, while in other competitions B.P.J. beat dozens of biological female competitors. And though it "may not seem like a big deal to some, placements matter to athletes." App. to Def.-Intervenor's Mot. for Summ. J. (App.) 61 (¶ 17) (Doc. 286-1); *see also id*. at 7 (¶¶ 40–43). For example,

during the 2022 cross country and track seasons, B.P.J. sometimes placed last or near the bottom of the rankings, while in other competitions B.P.J. beat dozens of competitors. At one track and field invitational, "B.P.J. placed 15 out of 25 participants in discus." Decl. of Heather Jackson ¶ 7 (Doc. 515-2). At another B.P.J. placed "35 out of 53 participants in discus." *Id.* At one cross-country invitational during the fall, "B.P.J. placed 43 out of 53 participants," and at another "B.P.J. placed 38 out of 46 participants." *Id.* ¶ 8.

On January 5, 2023, this Court granted summary judgment to most Defendants after it received a more complete record than at the preliminary-injunction stage.[2] Based on that complete record, including certain important concessions by B.P.J., this Court observed—as B.P.J. concedes—that average circulating testosterone levels give males a biological advantage in athletic performance over their female counterparts. Op. 17. These "inherent physical differences between the sexes" make "biological males [] not similarly situated to biological females for the purposes of athletics." *Id.* at 17, 22. The fact that an individual biological male—whether due to naturally low testosterone or medical interventions—may lack typical levels of circulating testosterone does not negate the State's substantial interest in advancing equitable athletic opportunities for females by designating sports teams according to sex. *Id.* at 17, 19. This Court concluded that the Sports Act is constitutional and consistent with Title IX, dissolved the preliminary injunction, and granted summary judgment. *Id.* at 19, 22.

B.P.J. now seeks an injunction pending appeal so that B.P.J. can try out for girls' spring track. Mot. to Stay 1.

---

[2] The West Virginia Secondary Schools Activities Commission's summary judgment motion was denied. Summary judgment was granted to the remaining Defendants and Defendant-Intervenor Lainey Armistead.

LEGAL STANDARD

Federal Rule of Civil Procedure 62(d) allows courts to "restore, or grant an injunction" pending appeal. Injunctive relief is "an extraordinary remedy that may only be awarded upon *a clear showing* that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added), particularly when a party is "asking for an injunction against enforcement of a presumptively constitutional state legislative act." *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010). Indeed, this type of request "demands a significantly higher justification than a request for a stay." *Id.* (cleaned up)

A party seeking the injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of … relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "And all four requirements must be satisfied." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter*, 555 U.S. at 20), *vacated on other grounds*, 559 U.S. 1089 (2010).[3]

Here, the equities merge with the public interest. *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("harm to the opposing party and weighing the public interest … factors merge when the Government is the opposing party"). And "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

ARGUMENT

## I. B.P.J. is not likely to prevail on the merits.

B.P.J.'s motion fails for at least three reasons—most plainly because B.P.J. is not likely to succeed on the merits of this case.

---

[3] In its subsequent opinion on remand, the Fourth Circuit reaffirmed the injunction standards discussed in the prior opinion. *Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355, 355 (4th Cir. 2010).

## A. B.P.J. must show a likelihood of success on the merits, not just a "substantial case."

To begin, B.P.J. incorrectly asserts that a plaintiff need only show a "substantial case on the merits" to obtain an injunction. Mot. to Stay 5–6. B.P.J. relies on a now-superseded standard that traces back to *Long v. Robinson*, 432 F.2d 977, 979 (1970). According to *Long* and its progeny, courts considering stays pending appeal may balance all the factors to see if the equities make up for a less-than-meritorious case. *See id.* at 981; *Ohio Valley Env't Coal., Inc. v. U.S. Army Corps of Eng'rs*, 890 F. Supp. 2d 688, 692 (S.D.W. Va. 2012) ("the factors are balanced, such that a stronger showing on some of these prongs can make up for a weaker showing on others"). Under this line of cases, a party needed to show only a "substantial case on the merits," or that they "raise difficult and serious questions," if the other three factors weigh in their favor. *Peck v. Upshur Cnty. Bd. of Educ.*, 941 F. Supp. 1478, 1481 (S.D. W. Va. 1996) (quoting *Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980)). Indeed, these cases suggest that a party could obtain relief even if the "chance of prevailing … is only fifty percent or less" when the "balance of equities" weighs in their favor. *Goldstein*, 488 F. Supp. at 172.

But as the Fourth Circuit has explained, this standard "now stands in fatal tension with the Supreme Court's 2008 decision in *Winter*." *Real Truth,* 575 F.3d at 346. *Winter* repudiated the balancing approach that courts like the Fourth Circuit used to apply to preliminary injunction requests. *Id.* at 347. Now, "all four requirements must be satisfied." *Id.* at 346. Since preliminary injunctions are analogous to injunctions pending appeal, B.P.J. must "clearly demonstrate that [B.P.J.] will likely succeed on the merits," which is a "far stricter" standard than the one on which B.P.J. relies. *Id.* at 347 (explaining that "a grave or serious question for litigation" is insufficient for injunctive relief).

To be sure, district courts disagree on whether and to what extent *Real Truth* altered the standard for relief pending appeal because the case only considered preliminary injunctions. *See Kadel v. Folwell*, No. 1:19-cv-272, 2022 WL 11166311, at *2 (M.D.N.C. Oct. 19, 2022) (collecting cases); *Does 1-5 v. Cooper*, No. 1:13-cv-711, 2016 WL 10587195, at *1 (M.D.N.C. Mar. 2, 2016) ("the precise standard in the Fourth Circuit for issuing a stay pending appeal is somewhat unclear"). But *Real Truth* provides the better, more logically-consistent approach. The Fourth Circuit has always demanded a stronger showing to justify relief pending appeal than it has for preliminary injunctions. *Long*, 432 F.2d at 979; *Van Wagner v. Atlas Tri-State SPE, LLC*, No. 3:11-cv-75, 2011 WL 10621664, at *5 (N.D.W. Va. Nov. 1, 2011) ("[A]n applicant for a motion to stay will have more difficulty establishing the likelihood of success on the merits factor." (cleaned up)); *Peck*, 941 F. Supp. at 1481 (party seeking injunction pending appeal bears a "significantly heavier burden ... than they assumed at the preliminary injunction stage").

That approach makes sense. A preliminary injunction asks for relief while the facts and arguments are still developing. After this Court has finally and dispositively considered the issues, it must be harder, not easier, to obtain the same relief. *Peck*, 941 F. Supp. at 1481 ("This heavier burden is, of course, due to the fact that the Court has issued a decision on the merits[.]"). And here, this Court has considered *all* the evidence and arguments at summary judgment.

Even if this court wishes to balance the factors, though, B.P.J. "must make *at least as strong* a showing on the first prong (likelihood of success)—and certainly not a lesser showing—as compared to a party moving for a preliminary injunction." *See Ohio Valley*, 890 F. Supp. 2d at 692 (concluding *Real Truth* "does not apply directly to stays" but is still relevant to the analysis). Thus, it's not enough to "merely show serious questions going to the merits" or a substantial case. *Id.* Instead, B.P.J. must show a likelihood of success on the merits during appeal.

**B. B.P.J.'s argument is inherently contradictory and therefore cannot succeed on the merits.**

In between B.P.J. and the relief that B.P.J. seeks lies a conundrum. The whole reason—indeed, the only constitutionally permissible reason—for designating sports teams by sex is to accommodate the average physiological differences between the sexes, which are rooted in biology. This gives biological females an opportunity to compete on equal footing. So how can it be illegal or unconstitutional, as B.P.J. argues, to separate sports teams based on biology?

This Court correctly recognized that B.P.J.'s argument is internally inconsistent. B.P.J. agrees that laws and policies designating athletic teams by sex are generally lawful because it would not be fair for (the vast majority of) biological males to participate in women's sports because of their (on average) physiological advantages. Yet B.P.J. simultaneously argues that a biology-based classification is unlawful. Indeed, B.P.J. contends that gender identity alone should control whether a person is eligible to participate in male sports or female sports, even though gender identity denotes nothing about a person's physical characteristics or relative athletic abilities. While B.P.J. makes arguments about the effects of puberty blockers and medical interventions, B.P.J. does not argue that biological males with naturally low testosterone levels, or those who lack athleticism, should be allowed to participate on women's sports teams. As this Court has recognized, B.P.J.'s positions are irreconcilable. Op. 19.

In short, B.P.J. advocates for a classification (gender identity) that has no connection to athletic performance. As this Court recognized, B.P.J.'s theory is that "transgender girls are similarly situated to cisgender girls for purposes of athletics at the moment they verbalize their transgender status, regardless of their hormone levels." Op. 19. B.P.J. further argues that the state's preferred classification (biology), which *is* an accurate proxy for average athletic performance, is invalid.

This cat's cradle of contradictions dooms B.P.J.'s case and, more acutely, this particular motion. If designating sports teams based on sex is valid because of the average physiological differences between males and females, it cannot be invalid because it demarcates based on biology. And a sex classification that is validly applied to males *because* they are biologically male must be valid when applied to B.P.J. *because* B.P.J. is biologically male. *See* Op. 18. B.P.J.'s claim may be "novel" and perhaps "difficult," Mot. to Stay 5, but this Court properly rejected it as facially illogical.

B.P.J. pivots on the equal-protection claim by attempting to manipulate the legal standard—arguing that this is an "as-applied" challenge that looks exclusively at how the law affects B.P.J. But "classifying a lawsuit as facial or as-applied ... does not speak at all to the substantive rule of law necessary to establish a constitutional violation." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019). If B.P.J. were correct, and courts must decide "whether excluding B.P.J. in particular was substantially related to an important governmental interest," Mot. to Stay 8, every male with low testosterone or poor athletic skills could mount an as-applied challenge to the Sports Act.

This Court faithfully followed binding Supreme Court and Fourth Circuit precedent affirming that intermediate scrutiny does not require that a classification be "capable of achieving its ultimate objective in every instance." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001). Instead, courts look at the classification itself. B.P.J. fails to explain why B.P.J.'s rule doesn't apply to other males who desire (perhaps with good reason) to participate on women's sports teams. *See Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126 (9th Cir. 1982) (rejecting male's challenge to women's-only volleyball team where school did not offer men's team); *Petrie v. Ill. High Sch. Ass'n*, 394 N.E.2d 855 (1979) (same). To grant B.P.J.'s motion would be to effectively overrule these cases.

It follows that B.P.J.'s Title IX claim also fails. Title IX prohibits schools from treating an "individual worse than others who are similarly situated.'" *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020) (citation omitted). But B.P.J.'s medical interventions do not make B.P.J. similarly situated to biological females in the context of athletics. Otherwise, males with low testosterone or other unique circumstances could make the same claim. And the fact that B.P.J. *must* take puberty blockers to (allegedly) achieve the physiology of a girl proves that gender identity alone does not make B.P.J. similarly situated to biological females either.

Biology also explains why *Grimm* does not control the outcome here. *Grimm* was based on privacy interests that are, according to *Grimm*, tied to a person's gender identity. But gender identity does not affect biology. Op. 22. And because sex-separated sports are based on physical competitiveness rather than privacy interests, a gender identity classification does not work in this context. That makes *Grimm* inapposite.

Furthermore, this Court's ruling on summary judgment is supported by a growing consensus that laws acknowledging biological differences in sports and other areas of life comply with equal protection and Title IX. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, No. 18-13592, 2022 WL 18003879, at *8 (11th Cir. Dec. 30, 2022) (finding bathrooms designated according to biological sex satisfied equal protection and Title IX); *West v. Radtke*, 48 F.4th 836, 852 (7th Cir. 2022) (explaining a "sex-based classification" exempting prisoner from "cross-sex strip searches" by transgender prison guard is lawful); *Neese v. Becerra*, No. 2:21-cv-163, 2022 WL 16902425, at *11 (N.D. Tex. Nov. 11, 2022) (federal government's "reinterpretation of Title IX … imperils the very opportunities for women Title IX was designed to promote and protect — categorically forcing biological women to compete against biological men").

10

B.P.J.'s merits argument is not sound, and therefore, B.P.J.'s request for an injunction pending appeal must fail.

## II.   B.P.J. seeks to alter the status quo, not preserve it.

B.P.J. purports to ask for a "stay pending appeal to maintain the status quo." Mot. to Stay 5. But what B.P.J. actually requests is that this Court "restore … an injunction," prohibiting the enforcement of a law duly enacted by West Virginia's democratically elected Legislature. Fed. R. of Civ. P. 62(d).

"An injunction and a stay have typically been understood to serve different purposes." *Nken*, 556 U.S. at 428. An injunction "is a means by which a court tells someone what to do or not to do." *Id*. Whereas "a stay operates upon the judicial proceeding itself … by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Id*. Though the two may share "some functional overlap," a stay generally "suspends judicial alteration of the status quo." *Id*. at 429 (cleaned up) (quoting *Ohio Citizens for Resp. Energy, Inc. v. NRC,* 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). But a federal court injunction "grants judicial intervention," thereby altering the status quo. *Id*.

That is always the case when a federal court enjoins a duly enacted state law. The Supreme Court recently reaffirmed this principle when it reinstated a state election law that a lower court had enjoined during the Covid-19 pandemic. *Andino v. Middleton*, 141 S. Ct. 9 (2020). States have primary responsibility for protecting the health and safety of their citizens, particularly "in areas fraught with medical and scientific uncertainties" like this one. *Id*. at 10 (Kavanaugh, J., concurring) (citation omitted). "It follows that a State legislature's decision" in these areas "should not be subject to second-guessing by an 'unelected federal judiciary' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id*.

11

Put succinctly, *Andino* instructs that "it is the state's action—not any intervening federal court decision—that establishes the status quo." *Wise v. Circosta*, 978 F.3d 93, 98 (4th Cir. 2020) (en banc) (rejecting request to enjoin state election procedures). So, "even if reasonable minds can disagree on the merits, an injunction is still inappropriate here." *Id.* at 103.

## III.   The equities—merged with the public interest—weigh against B.P.J.

B.P.J. asserts that the remaining factors favor an injunction because (a) an injunction "harms no one," (b) without one B.P.J. cannot participate in sports, and (c) enjoining the law is necessary to respect B.P.J.'s identity. Mot. to Stay 1. For the reasons already explained, these factors make little difference. Moreover, B.P.J.'s arguments are wrong, and none of them favors an injunction in this case.

B.P.J.'s request would lead to more inequities. If this Court reinstates an injunction, what should schools say to the biological male whose gender identity switches "back and forth"? App. 1097 (121:3–6). Or how should schools handle a request from another biological male who identifies as female or a biological male who has some other unique circumstance that makes the girls' team a "better fit"? There is no limiting principle that would justify excluding other males who desire to participate on a girls' team. Rather than promoting the public interest, an exception would create more inequity. The public interest is better served by applying the law consistently to everyone.

Moreover, the Sports Act represents the state's considered judgment about the harms of allowing biological males to compete in women's sports. After legislators debated its pros and cons, they chose to protect fair play for biological females at all public schools (secondary and higher education), whether it was seasoned collegiate athletes like Lainey Armistead, or middle schoolers who are still developing their motor skills. In other words, West Virginia chose to protect biological females no

matter how prestigious or "important" the sporting event. It protects biological females competing in their middle school turkey trot, biological females who do not receive any accolades for their efforts, and even biological females competing for last place. Indeed, girls "who are only average high school athletes ... would fare even worse" than elite athletes if they were forced to compete against biological males. *Adams*, 2022 WL 18003879, at *21 (Lagoa, J., concurring).

Although B.P.J. disagrees with that judgment, B.P.J. wrongly asserts that the harm is one-sided. Importantly, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

Consider the biological females who have already lost to B.P.J. in competitions. *See*, *e.g.*, Mot. to Stay, Ex. A (Doc. 515-3). The Motion to Stay focuses only on how the law affects one person (i.e. B.P.J.) and complains that it would "erase who she is." Mot. to Stay 9. But this Court should consider—indeed, must consider—the interest of every biological female athlete who desires to compete in female-only competition. "If males are permitted to displace females ... even to the extent of one player ... the goal of equal participation by females in interscholastic athletics is set back, not advanced." *Clark v. Ariz. Interscholastic Ass'n*, 886 F.2d 1191, 1193 (9th Cir. 1989). And biological females—no less than B.P.J.—"will experience their middle school years only once during their life." *Doe v. Wood Cnty. Bd. of Educ.*, 888 F. Supp. 2d 771, 778 (S.D.W. Va. 2012). Their lives, interests, and dignity matter, too.

Ironically, B.P.J. minimizes the importance of biological female-only competitions to downplay the effects of B.P.J.'s participation. But placing 16th instead of 15th directly impacts the girl who got bumped. "[It] may not seem like a big deal to some, but placements matter to athletes." App. 61 (¶ 17). They understand that losing is a part of every sport, but they still want to earn their spot "fair and square." *Id.* Also, no one can say how B.P.J.'s finishes will change with continued

13

participation on the girls' team; the fact that B.P.J.'s past performances were not top-tier results does not mean that, as B.P.J. becomes one of the older students on the team and grows and matures, those results could change markedly. This is frequently the case in middle school (and even high school) sports, when motivated young athletes grow, train, and mature: they become the higher finishers and strongest competitors. The fact that B.P.J. has not placed or won up to this point is no reason to prevent enforcement of a law duly enacted nearly two years ago and now adjudged constitutional. B.P.J.'s argument falls short of the "clear showing" necessary for relief. *Real Truth,* 575 F.3d at 346.

Indeed, even now there is an increasing amount of literature affirming that biological males—even those who take puberty blockers and supplement their hormones—will retain physiological advantages over biological females.[4] Despite B.P.J.'s repeated assertions that medical interventions allow B.P.J. to "develop [the] physiological characteristics" of a girl, Mot. to Stay 3, the evidence and peer-reviewed studies do not support this with anything approaching certainty.

Finally, while B.P.J. disclaims the possibility of competing on the boys' team, B.P.J. cannot ignore that sports teams are separated to accommodate the average physiological differences between the sexes, not diverse gender identities. As this Court itself noted, B.P.J. may participate on the boys' team, even if B.P.J. has no desire to do so. Op. 22; *see also Gregor v. W. Va. Secondary Sch. Activities Comm'n*, No. 2:20-cv-00654, 2020 WL 5997057, at *3 (S.D.W. Va. Oct. 9, 2020). And unlike bathrooms, many women and girls throughout West Virginia and the country have long sought to compete on boys' teams because they desire a higher level of

---

[4] *See* Lidewij Sophia Boogers et al., *Transgender Girls Grow Tall: Adult Height Is Unaffected by GnRH Analogue and Estradiol Treatment*, 107 The Journal of Clinical Endocrinology & Metabolism no. 9 (Sept. 2022), https://doi.org/10.1210%2Fclinem%2Fdgac349.

competition. *See O'Connor v. Bd. of Educ. of Sch. Dist. 23*, 449 U.S. 1301 (1980). A girl competing on the boys' team need not be strange or uncomfortable because it is far from a unique occurrence.

Defendants acknowledge that this is a contentious issue fraught with emotions. But that is one more reason for this Court to defer to West Virginia's elected representatives. *See Andino*, 141 S. Ct. at 10 (Kavanaugh, J., concurring). B.P.J. may have a different view of how to balance the equities, but those public policy arguments are better made to West Virginia legislators than this Court.

## CONCLUSION

This Court should deny Plaintiff's motion for stay pending appeal.

15

Respectfully submitted this 27th day of January, 2023.

PATRICK MORRISEY
  *West Virginia Attorney General*

/s/ *Curtis R. A. Capehart*
Douglas P. Buffington II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Curtis R.A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
State Capitol Complex
1900 Kanawha Blvd. E,
Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email: curtis.r.a.capehart@wvago.gov

*Counsel for Defendant, STATE OF
WEST VIRGINIA*

 /s/ *Kelly C. Morgan*
 Kelly C. Morgan
 Michael W. Taylor
 Kristen Vickers Hammond
 BAILEY & WYANT
 P. O. Box 3710
 Charleston, WV 25337-3710
 Telephone: 304-345-4222
 Fax: 304-343-3133
 Email: kmorgan@baileywyant.com
 mtaylor@baileywyant.com
 khammond@baileywyant.com

*Attorneys for Defendants
West Virginia State Board of
Education and Clayton Burch*

/s/ *Brandon S. Steele*
Brandon Steele, WV Bar No. 12423
The Law Offices of Brandon S. Steele
3049 Robert C. Byrd Drive, Suite 100
Beckley, WV 25801
Telephone: 304-253-1230
Fax: 304-255-1520
bsteelelawoffice@gmail.com

Jonathan Scruggs, AZ Bar No. 030505*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: 480-444-0020
Fax: 480- 444-0028
jscruggs@adflegal.org

Christiana Kiefer, DC Bar No. 176922*
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: 202-393-8690
Fax: 202-347-3622
ckiefer@adflegal.org

Johannes Widmalm-Delphonse, VA Bar
No. 96040*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: 571-707-4655
Fax: 571-707-4656
Email:
jwidmalmdelphonse@adflegal.org

Timothy D. Ducar, AZ Bar No. 015307*
Law Offices of Timothy D. Ducar, PLC
7430 E. Butherus Drive, Suite E
Scottsdale, AZ 85260
Telephone: 480-502-2119

*/s/Roberta F. Green*

Roberta F. Green
Kimberly M. Bandy
Shannon M. Rogers
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street East, Suite 200
25301
Charleston, WV 25339
(304) 345-1400
(304) 343-1826 FAX
rgreen@shumanlaw.com
kbandy@shumanlaw.com
srogers@shumanlaw.com

Shannon Marlowe Rogers
MILLER & AMOS
Suite 300
2 Hale Street
Charleston, WV 25301
Telephone: 757-635-8836
Email: srogers@shumanlaw.com

*Attorneys for Defendant*
*West Virginia Secondary School*
*Activities Commission*

Fax: 480) 452-0900
tducar@azlawyers.com

*Visiting Attorneys

Attorneys for Defendant-Intervenor*

*/s/ Susan L. Deniker*

Susan L. Deniker
Jeffrey Mark Cropp
STEPTOE & JOHNSON
400 White Oaks Boulevard
Bridgeport, WV 26330
Telephone: 304-624-8000
Fax: 304-624-8183
Email: susan.deniker@steptoe-
johnson.com
Jeffrey.Cropp@steptoe-johnson.com

*Attorneys for Defendants*
*Harrison County Board of Education*
*and Dora Stutler*

17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

B.P.J., by her next friend and mother,
HEATHER JACKSON,

                                        *Plaintiff,*

        v.

WEST VIRGINIA STATE BOARD OF
EDUCATION, HARRISON COUNTY BOARD
OF EDUCATION, WEST VIRGINIA
SECONDARY SCHOOL ACTIVITIES
COMMISSION, W. CLAYTON BURCH in his
official capacity as State Superintendent,
DORA STUTLER in her official capacity as
Harrison County Superintendent, and THE
STATE OF WEST VIRGINIA,

                                        *Defendants,*

        v.

LAINEY ARMISTEAD,

                                        *Defendant-Intervenor.*

Case No. 2:21-cv-00316

Hon. Joseph R. Goodwin

CERTIFICATE OF SERVICE

        I, Brandon Steele,  hereby certify that on January 27, 2023, I electronically

filed a true and exact copy of *Defendants' Response to Plaintiff's Motion for a Stay*

*Pending Appeal of January 5, 2023 Orders* with the Clerk of Court and all parties

using the CM/ECF system.

                                */s/ Brandon S. Steele*
                                Brandon Steele, WV Bar No. 12423
                                The Law Offices of Brandon S. Steele
                                3049 Robert C. Byrd Drive, Suite 100
                                Beckley, WV 25801
                                Telephone: 304-253-1230
                                Fax: 304-255-1520
                                bsteelelawoffice@gmail.com

                                *Attorney for Defendant-Intervenor*

18