IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J., by her next friend and mother, HEATHER JACKSON, <br><br> *Plaintiff*, <br><br> v. <br><br> WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA, <br><br> *Defendants*, <br><br> and <br><br> LAINEY ARMISTEAD, <br><br> *Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316 <br><br> Hon. Joseph R. Goodwin <br><br> RELIEF REQUESTED BY FEBRUARY 3, 2023 |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL OF JANUARY 5, 2023 ORDERS [DKT. NOS. 512 AND 513]**

Defendants' opposition (Dkt. No. 520, "Opp.") to Plaintiff B.P.J.'s motion for a stay pending appeal (Dkt. No. 515, "Mot.") applies the wrong legal standard, under which a stay pending appeal would never be available; severely mischaracterizes B.P.J.'s arguments; flagrantly contradicts *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020) and its application; and fails to identify ***any*** equity favoring the withdrawal of this Court's preliminary injunction pending appeal. In short, Defendants provide no reason to deny the relief that B.P.J. seeks.

In this as-applied challenge to H.B. 3293, B.P.J.'s requested stay of this Court's order dissolving the preliminary injunction would simply preserve the status quo for 12-year-old B.P.J.

1

and allow her to participate in school sports consistent with her gender identity—as she has for the past three sports seasons, without incident. It is notable that despite over a year-and-a-half of litigation, Defendants have identified ***no one*** in West Virginia allegedly harmed by B.P.J.'s participation—underscored by their resort to an isolated quote from a college student in Idaho.

Put simply, B.P.J. will suffer irreparable harm if the dissolution order is not stayed; no one will be cognizably harmed by a stay pending appeal; and B.P.J.'s appeal presents, at a minimum, a substantial case on the merits. Accordingly, the Court should grant the requested stay.

## ARGUMENT

**I.      Defendants Argue The Wrong Standard For A Stay Pending Appeal.**

Despite Defendants' assertions to the contrary,[1] the standard for a stay pending appeal and the standard for a preliminary injunction are not one and the same. (Opp. at 6-7.) As B.P.J. explained in her motion, a party asking a district court to stay its own order pending appeal does not have to convince the district court that its own decision is likely to be reversed. (Mot. at 4-5.) If that were the case, then stays pending appeal would never be granted by district courts, and the requirement that parties seek such stays in the district court would be an empty exercise. *See, e.g.*, *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, No. 2:07-cv-00122, 2007 WL 9717802, at * 1 (S.D. W. Va. Oct. 11, 2007) ("[A] court need not 'harbor serious doubts concerning the correctness of its decision' in order to find that the party seeking a stay has a strong likelihood of success on appeal," because "[i]f that were the case, rule 62[d] relief would rarely be granted.").

Rather, as the Supreme Court explained in *Hilton v. Braunskill*, 481 U.S. 770 (1987), a stay pending appeal should be issued where a party "establishes that it has a strong likelihood of success

---

[1] *See* Opp. at 6-7 (arguing, *inter alia*, that "B.P.J. must show a likelihood of success on the merits" to obtain a stay pending appeal and that preliminary injunction cases provide the controlling standard).

on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits" if the other "factors in the traditional stay analysis militate" in its favor. *Id.* at 778; *see also Foster v. Gilliam*, 515 U.S. 1301, 1303 (1995) (Rehnquist, C.J., in chambers) (staying release order based on substantial case on merits). The Supreme Court reaffirmed the *Hilton* standard for stays in *Nken v. Holder*, 556 U.S. 418, 433–34 (2009), and the Fourth Circuit thereafter explained that, under *Nken*, the "the correct standard" for adjudicating a stay motion "is the 'traditional' four-factor test **that balances** the applicant's likelihood of success on the merits, the injury to the applicant if the stay is denied, the injury to the government if the stay is granted, and the public interest." *Nken v. Holder*, 585 F.3d 818, 821 (4th Cir. 2009) (emphasis added).[2]

Defendants assert that stay motions are governed by the test for preliminary injunctions in *Winter v. NRDC*, 555 U.S. 7, 22 (2008), and *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009). (Opp. at 6-7.) But the Supreme Court held to the contrary in *Nken* (decided shortly after *Winter*), explaining that, although "[t]here is substantial overlap between" the stay factors and "the factors governing preliminary injunctions," that is "not because the two are one and the same." *Nken*, 556 U.S. at 434 (citing *Winter*). Unlike an injunction, a stay "simply suspends judicial alteration of the status quo" pending appeal "by temporarily suspending the source of authority to act—the order or judgment in question." *Id.* at 428–29 (internal quotation marks, brackets, and citations omitted). In this case, the status quo was this Court's injunction that had been in place for a year-and-a-half (*i.e.*, B.P.J.'s entire middle school experience to date). The Court's dissolution order alters that status quo, and it is **the dissolution order** that B.P.J. seeks to

---

[2] As this Court has explained in describing the stay standard, "[w]hat is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Musgrave*, 2007 WL 9717802, at *1 (internal quotation marks and citation omitted). Defendants concede that "B.P.J.'s claim may be 'novel' and perhaps 'difficult.'" (Opp. at 9.)

3

stay pending appeal. Unlike a brand new injunction, granting a stay would merely "hold [that] ruling in abeyance to allow an appellate court the time necessary to review it." *Id.* at 421.

In sum, the controlling standard for granting a stay pending appeal remains the standard set forth in *Hilton* and *Nken*, under which Plaintiff may—as this Court has recognized—obtain a stay pending appeal by showing a "substantial case on the merits" and "when the equities of the case suggest that the status quo should be maintained." *Musgrave*, 2007 WL 9717802, at *1 (internal quotation marks and citations omitted).[3] B.P.J., at a minimum, satisfies that standard, although she also meets the preliminary injunction standard, as reflected by the Court's initial grant of a preliminary injunction in this case and the controlling framework in *Grimm*.

## II. B.P.J. Presents A Substantial Merits Case And Defendants Mischaracterize Her Arguments And Contradict *Grimm* In Arguing Otherwise.

B.P.J.'s stay motion explained why she is likely to succeed on the merits of her appeal and why, at a minimum, she presents a substantial case on the merits warranting a stay, including under the Fourth Circuit's reasoning in *Grimm* and this Court's reasoning in its preliminary injunction order. (Mot. at 6-10.) B.P.J. will not repeat those arguments here. Instead, B.P.J. notes that Defendants repeatedly mischaracterize her merits arguments in this as-applied challenge, and that it is only through such mischaracterizations—and disagreement with *Grimm* itself—that Defendants attack B.P.J.'s arguments under the Equal Protection Clause and Title IX.

---

[3] Far from being called into question by *Winter*, *Real Truth*, or any other Supreme Court or Fourth Circuit authority, the stay standard articulated by B.P.J. is regularly applied in this Circuit. *See, e.g., Stanley v. Babu,* No. GJH-19-489, 2021 WL 878356, at *3 (D. Md. Mar. 9, 2021); *Krell v. Queen Anne's Cnty.*, No. CV JKB-18-0637, 2020 WL 416975, at *2 (D. Md. Jan. 27, 2020); *Fitzgerald v. Alcorn*, No. 5:17-CV-16, 2018 WL 709979, at *1 (W.D. Va. Feb. 5, 2018); *Moore v. Keller*, No. 5:11-HC-2148-F, 2012 WL 2458605, at *2 (E.D.N.C. June 27, 2012); *Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473, 474 (E.D. Va. 2011); *Bauberger v. Haynes*, 702 F. Supp. 2d 588, 595 (M.D.N.C. 2010).

B.P.J.'s core argument in this case—flowing from *Grimm* and other cited authorities—is that "H.B. 3293 employs a definition of 'biological sex' that, by design and effect, targets and categorically excludes B.P.J. and any other transgender girl from playing sports at the middle school, high school, and collegiate levels." (Dkt. No. 291 (BPJ Mot. for SJ) at 7.) Critically, and as Defendants continue to steadfastly ignore, school sports already were sex-separated in West Virginia prior to H.B. 3293; what H.B. 3293 changed was to define sex-separation to categorically exclude transgender girls from girls' teams. (*Id.* at 19-20.)[4] It is ***that transgender exclusion***—not sex separation in sports—that B.P.J. challenges. This is neither a "conundrum" nor a "cat's cradle of contradictions" (Opp. at 8-9), but the simple reality of what H.B. 3293 does (and was intended to do).

Ultimately, though, Defendants' real disagreement is not with B.P.J.'s arguments, but with *Grimm* itself. Defendants' central argument that B.P.J. is similarly situated to "biological males" (Opp. at 8-10) is that of the ***dissent*** in *Grimm*—not its controlling opinion. *Compare Grimm*, 972 F.3d at 610 (determining that Grimm, a transgender boy, was similarly situated to other boys), *with Grimm*, 972 F.3d at 628 (Niemeyer, J., dissenting) ("Grimm was born a biological female and identifies as a male, and therefore his circumstances are different from the circumstances of students who were born as biological males.").

Defendants fault B.P.J. for arguing that the constitutionality of H.B. 3293 must be analyzed based on whether the law is substantially related to an important governmental interest as applied to B.P.J. in particular. (Opp. at 9.) But B.P.J. is merely applying the same test used in *Grimm*. In analyzing Grimm's as-applied challenge, the Fourth Circuit asked whether the challenged policy

---

[4] *See* Dkt. No. 512 at 22 ("I have no doubt that H.B. 3293 aimed to politicize participation in school athletics for transgender students.").

was "substantially related to the important objective of protecting student privacy" "*as applied to Grimm*." *Grimm*, 972 F.3d at 608 (emphasis added). Specifically, the Fourth Circuit concluded that "the record demonstrates that bodily privacy of cisgender boys using the boys' restrooms did not increase when Grimm was banned from those restrooms. Therefore, the Board's policy was not substantially related to its purported goal." *Id.* at 614. The same analysis applies here.

Defendants also urge the Court to follow an alleged "growing consensus that laws acknowledging biological differences in sports and other areas of life comply with equal protection and Title IX" (Opp. at 10), citing a smattering of decisions from other circuits or out-of-circuit courts that openly conflict with *Grimm* itself (Opp. at 10). These few cases do not represent a "growing consensus," and B.P.J.'s likelihood of success must be assessed under *Grimm*.

Under this Circuit's precedent, because B.P.J. has presented a "substantial case" on the merits that H.B. 3293 unlawfully discriminates on the basis of sex and transgender status, in violation of the Equal Protection Clause and Title IX, the dissolution order should be stayed.

### III. Defendants Identify No Equities Weighing Against A Stay.

The equities strongly favor a stay of the Court's dissolution order, and Defendants have identified nothing to the contrary. B.P.J. will unquestionably suffer irreparable harm. Defendants' only retort is B.P.J. would not be isolated playing on a boys' team because cisgender girls also sometimes seek to compete on boys' teams. (Opp. at 14.) Not only does this ignore the fact that playing on a boys' team would itself irreparably harm B.P.J.—who is a girl, not a boy—but Defendants also ignore the fact that in West Virginia, cisgender girls are prohibited from playing on boys' teams if there is a girls' team available in the same sport. *Gregor v. W. Va. Secondary Sch. Activities Comm'n*, No. 2:20-cv-00654, 2020 WL 5997057, at *3 (S.D.W. Va. Oct. 9, 2020). Accordingly, no cisgender girl participates in boys' cross-country or track in West Virginia.

6

There is also no harm to cisgender girls or to the public interest by maintaining the status quo. Indeed, it is telling that after over a year-and-a-half of litigation, Defendants continue to identify absolutely ***no one*** in West Virginia who will suffer cognizable harm from an injunction allowing B.P.J. to participate on girls' teams. Lainey Armistead—the Intervenor who formerly played college sports in West Virginia, who never competed or was reasonably likely to compete against B.P.J. or any other known transgender athlete, and who stated she was not sure whether she opposed B.P.J.'s participation in girls' sports—graduated from her West Virginia college in May 2022 and now is a law student in Florida. It appears to be for this reason that Defendants have resorted to quoting an Idaho college student as their sole support for the notion that "placing 16th instead of 15th" in a field of 25 participants is the type of "harm" to B.P.J.'s potential competitors that should block her from running altogether. (Opp. at 13.)[5] In contrast, Defendants have not, and cannot, dispute the irreparable harm to B.P.J. from depriving her of the opportunity to play school sports with her peers as the girl she is—an opportunity she will only have once in her life.

Defendants go so far as to resort to imagined inequities by hypothesizing that it would be unfair to maintain the injunction for B.P.J. if other girls who are transgender are not allowed to play, including a hypothetical "biological male whose gender identity switches 'back and forth'" (Opp. at 12), citing the vague and inadmissible hearsay of WVSSAC's Executive Director, (*see* Dkt. No. 331 (BPJ's Opp. to Defs' MSJ) at 5)). To be clear, as far as the record shows, B.P.J. is the ***only*** girl who is transgender currently seeking to play, and there is exactly ***zero*** basis to think that any of Defendants' hypotheticals will arise while this case is on appeal. (*See* Dkt. No. 512

---

[5] Notably, 15th is the highest B.P.J. has ever placed in an event, which was even in the bottom half of the standings for that 25-person event. (Mot. at 3 n.1.)

7

(Order) at 9 ("[I]t is obvious to me that the statute is at best a solution to a potential, but not yet realized, 'problem.'").) And if they did, a stay of the Court's dissolution order—given that the preliminary injunction applies to B.P.J. and B.P.J. alone—would have no bearing on their outcome. The only actual inequity at issue—one entirely unaddressed by Defendants' motion—is depriving B.P.J. the once-in-a-lifetime opportunity to play school sports in middle school as the girl she is. Allowing her to continue to do so preserves the status quo and harms no one.[6]

## CONCLUSION

For the reasons set forth in B.P.J.'s motion and herein, B.P.J. respectfully requests that the Court issue an order staying its order dissolving the preliminary injunction pending appeal by February 3rd.

---

[6] Defendants erroneously suggest that the Court may not grant a stay because a stay would "second-guess[]" the West Virginia legislature's enactment of H.B. 3293. (Opp. at 11.) To the contrary, protecting politically unpopular groups from legislators' unfounded fears are some of "[t]he proudest moments of the federal judiciary." *Grimm*, 972 F.3d at 620.

Dated: January 30, 2023

Joshua Block*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Phone: (212) 549-2569
jblock@aclu.org

Avatara Smith-Carrington*
LAMBDA LEGAL
1776 K Street, N.W., 8th Fl.
Washington, DC 20006-2304
Phone: (202) 804-6245
asmithcarrington@lambdalegal.org

Carl Charles*
Tara Borelli*
LAMBDA LEGAL
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: (404) 897-1880
ccharles@lambdalegal.org
tborelli@lambdalegal.org

Sruti Swaminathan*
LAMBDA LEGAL
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
sswaminathan@lambdalegal.org

Andrew Barr*
COOLEY LLP
1144 15th St. Suite 2300
Denver, CO 80202-5686
Phone: (720) 566-4000
abarr@cooley.com

Respectfully Submitted,
*/s/ Nick Ward*

Nick Ward (Bar No. 13703)
Aubrey Sparks (Bar No. 13469)
AMERICAN CIVIL LIBERTIES UNION OF WEST VIRGINIA FOUNDATION
P.O. Box 3952
Charleston, WV 25339-3952
Phone: (914) 393-4614
nward@acluwv.org
asparks@acluwv.org

Kathleen Hartnett*
Julie Veroff*
Zoë Helstrom*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Phone: (415) 693-2000
khartnett@cooley.com
jveroff@cooley.com
zhelstrom@cooley.com

Katelyn Kang*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
kkang@cooley.com

Elizabeth Reinhardt*
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Phone: (617) 937-2305
ereinhardt@cooley.com

**Visiting Attorneys*

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| B.P.J. by her next friend and mother, HEATHER JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION, WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,<br><br>*Defendants*,<br><br>and<br><br>LAINEY ARMISTEAD,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:21-cv-00316<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

I, Nick Ward, do hereby certify that on this 30th day of January, 2023, I electronically filed a true and exact copy of ***Plaintiff's Reply in Support of Motion for a Stay*** with the Clerk of Court and all parties using the CM/ECF System.

*/s/ Nick Ward*
Nick Ward
West Virginia Bar No. 13703
