IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

B. P. J., et al.,

          Plaintiffs,

v.                                CIVIL ACTION NO. 2:21-cv-00316

WEST VIRGINIA STATE BOARD OF EDUCATION, et al.,

          Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff's Motion for a Stay Pending Appeal. [ECF No. 515]. For the reasons stated herein, B.P.J.'s motion is **DENIED**.

### I.    Background

This case concerned the lawfulness of West Virginia's Save Women's Sports Act (the "Act"), a law passed by the West Virginia Legislature in April 2021. The Act classifies school athletic teams according to biological sex and prohibits biological males from participating on athletic teams designated for females. W. Va. Code § 18-2-25d(a)(5), (b), (c)(2). B.P.J., a transgender minor seeking to join her middle school's girls' cross country and track teams, filed a Complaint with this court, alleging that the Act violates the Equal Protection Clause of the Fourteenth Amendment and Title IX. [ECF No. 1]. On July 21, 2021, I granted B.P.J. a preliminary injunction enjoining enforcement of the Act against her. [ECF No. 67]. Thus, B.P.J. was able to compete on the girls' cross country and track teams during the pendency of this case.

The parties filed motions for summary judgment on April 21, 2022. [ECF Nos. 276, 278, 283, 285, 286, 289]. On January 5, 2023, I denied B.P.J.'s motion for summary judgment and granted summary judgment in favor of the State of West Virginia, the Harrison County defendants, the State Board defendants, and Intervenor Lainey Armistead (collectively, the "Defendants"). [ECF No. 512]. I also dissolved the preliminary injunction. *Id.*

On January 20, 2023, B.P.J. filed the instant motion requesting that the court stay its January 5, 2023 Order, dissolving the preliminary injunction, until her appeal is resolved. [ECF No. 515]. B.P.J. seeks this relief so that she can "continue participating on those [athletic] teams consistent with her gender identity." *Id.* at 5. Defendants jointly responded on January 27, 2023. [ECF No. 520]. B.P.J. replied on January 30, 2023. [ECF No. 521].

II. **Legal Standard**

Rule 62(d) of the Federal Rules of Civil Procedure permits the court to "restore" an injunction "[w]hile an appeal is pending from . . . final judgment that . . . dissolves . . . [the] injunction." When ruling on a motion to stay an order, the court considers the following four factors: "(1) whether the stay applicant has made a strong showing that [s]he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S.

2

770, 776 (1987)). "The first two factors . . . are the most critical," and a party seeking a stay must demonstrate more than a mere possibility of success on the merits. *Id.* at 434.

### III. Discussion

As the Defendants have acknowledged, this was a novel and difficult case. *See* [ECF No. 520, at 13]. With respect to the instant motion, the second, third, and fourth factors weigh heavily in favor of granting B.P.J.'s motion for a stay. B.P.J. is a twelve-year-old transgender girl in middle school, often considered a memorable and pivotal time in a child's life. For many children, the middle school experience is shaped considerably by their participation on their school's athletic teams. B.P.J.'s experience has been no different. [ECF No. 515-1, ¶¶ 5–6]. Moreover, as I expressed in my previous Orders, not one child has been or is likely to be harmed by B.P.J.'s continued participation on her middle school's cross country and track teams. [ECF No. 67, at 11; ECF No. 512, at 9]. Both cross country and track are non-contact sports, and B.P.J. often finishes near the end of the pack, [ECF Nos. 515-3, 515-4]. I am unpersuaded, as Defendants have argued, that B.P.J. finishing ahead of a few other children, who would have placed one spot higher without her participation, constitutes a substantial injury. In the end, the only person truly injured by the enforcement of the Act against her is B.P.J., who must now watch her teams compete from the sidelines. It is in the public interest that all children who seek to participate in athletics have a genuine opportunity to do so. Moreover, there is a public interest

3

in celebrating not only the unique differences of those who fit into society's binary world but also those who fall outside that box.

That said, a law is not deemed unconstitutional simply because it causes harm. When analyzing equal protection claims, courts apply different levels of scrutiny to different types of classifications. In this case, the court applied intermediate scrutiny to the Act because the Act "separates student athletes based on sex." [ECF No. 512, at 14]. This level of scrutiny applied to both B.P.J.'s facial and as-applied challenges. *See Oswald v. Ireland-Imhof*, 599 F. Supp. 3d 211, 218 (D.N.J. 2022) (applying the same level of scrutiny to the plaintiff's facial and as-applied challenges). To pass intermediate scrutiny, a law must be substantially related to an important governmental objective. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982).

As I explained in my Order granting summary judgment to the Defendants, B.P.J. never challenged the well-accepted practice of separating sports by sex; rather, she only challenged the state's definitions of "male" and "female," which determine the athletic team an individual may participate on. [ECF No. 512, at 10]. To achieve sex-separated sports, however, the state needed to adopt some definition to determine eligibility for participation on either team. In this case, the state, claiming an interest in promoting equal athletic opportunities for females, drew the line at biological sex determined at birth. It is common knowledge that "sex, and the physical characteristics that flow from it," are linked "to athletic performance and fairness in sports." *Id.* at 19. Thus, separating athletic teams based on biology is substantially

4

related to the state's important interest in providing equal athletic opportunities to females, who would otherwise be displaced if required to compete with males. The Act, therefore, is not violative of the Equal Protection Clause.

As for Title IX, which authorizes sex-separate sports, "[t]here is no serious debate that [its] endorsement . . . refers to biological sex." *Id.* at 21–22. Like the alleged interest put forth by the state in this case, the goal of Title IX "was to increase opportunities for women and girls in athletics." *Id.* at 21 (citing *Williams v. Sch. Dist. of Bethlehem, Pa.*, 998 F.2d 168, 175 (3d Cir. 1993)). Thus, I could not, and still cannot, find that the Act, "which largely mirrors Title IX, violates Title IX." *Id.* at 22. As such, I am unpersuaded that B.P.J. is likely to succeed on her facial challenge of the Act on appeal.

Under the above analysis, the state is permitted to use biology as the sole criterion in separating school athletic teams. The legislature, of course, could have used less rigid definitions which would allow transgender individuals to play on the athletic team consistent with their gender identity. Indeed, more inclusive definitions might have even furthered the legislature's stated objective. "But it [was] not for the court to impose such a requirement here." *Id.* at 19. The question before the court was whether the Act survives intermediate scrutiny, and intermediate scrutiny does not require the tightest fit between means and ends for a law to withstand constitutional muster.

5

B.P.J.'s as-applied challenge asked the court to consider her gender in lieu of sex and to include her in the state's definition of "female." To do so, the court would have needed to assess B.P.J.'s individual characteristics, which is not appropriate under intermediate scrutiny. The court was required, instead, to consider whether excluding B.P.J. from teams designated as female—because she is biologically male and males consistently outperform females in athletics—is substantially related to the important government interest of providing equal athletic opportunities for females. The court answered that question in the affirmative: intermediate scrutiny permits the line drawing between "males" and "females" adopted here by the state in the context of sports, without individual consideration of occasional outliers. *Id.* The analysis must end there. Had the court looked any further and taken B.P.J.'s gender and sex characteristics into account, it would have been applying strict scrutiny's narrow tailoring requirement. *See id.* That analysis also would have been inconsistent with my decision to uphold the legislature's chosen definitions of "male" and "female" for the purpose of athletics. Accordingly, I cannot find that B.P.J. is likely to succeed on her as-applied challenge of the Act on appeal.

Because B.P.J. cannot satisfy the first prong of the test to obtain a stay, her motion is **DENIED**.

## IV.   Conclusion

For the foregoing reasons, B.P.J.'s Motion for a Stay Pending Appeal [ECF No. 515] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     February 7, 2023

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE